**Party Details**

About | Logout | Pin Screen

| |
|---|
| Home |
| Open Party |
| Open Claim |
| Claim Intake |
| My Tasks |
| My Claims |
| Recent Items |
| Notes Administration |
| Add Contact |
| Close |

**Mr John E Lee - 539254 - Deceased**

Party   Claims   Contact Records   Documents   Payment History   Tasks

**Name**            Mr John E Lee

**Personal Details**

| | | | |
|---|---|---|---|
| **Marital Status** | Unknown | **Date Of Birth** | |
| **Gender** | Male | **Age** | 46 |
| **Preferred Contact Method** | Mail | | |
| **Party Type** | Individual | **Social Security Number** | |
| **Absolute Assignment on File** | ☐ | **Converted Party** | ☐ |

**Address**

| Type | Effective From | Effective To | Address | Method | Detail |
|---|---|---|---|---|---|
| 🖐 Home | - | - | USA. | | |

**Misc. Party Details**

| | | | |
|---|---|---|---|
| **Secured Client** | ☐ | | |
| **Deceased** | ✔ | **Date of Death** | 07/19/2015 |

**Policy Costs**

| Policy # | Check Amount | Benefit Amount | Issue Date | Policy Type | State | Cost Of | |
|---|---|---|---|---|---|---|---|
| | | | | | | | Add |
| | | | | | | | Edit |

↺ ↻ ▦

**Close**

EXHIBIT

4

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 1 of 555   Lincoln/Lee 089

Admin

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 2 of 555    Lincoln/Lee 090

**Claim Details**

About | Logout | Pin Screen

| Home |
| Open Party |
| Open Claim |
| Claim Intake |
| My Tasks |
| My Claims |
| Recent Items |
| Notes Administration |
| Add Contact |
| Close |

**Life Claim**     **Insured - Mr John E Lee**                    **Status: Closed**

**Life Claim 1072315-1127380**

General Claim   Coverages   Insured   Occupation   Claim Map   Tasks   Contact Records   Documents

**Claim Details**

| | | **Description** | |
|---|---|---|---|
| **Claim Type** | Life Claim | | |
| **Status** | Closed | **Referred Date** | 07/23/2015 |
| **Claim Owner** | Carla Larimore (CMRAGOL) | **Assignee** ... | |

**Claim Source Details**

| **Source** | AWD |
|---|---|

**Intake Data**

| | | **Accident/Sickness** | Unknown |
|---|---|---|---|
| **Accident Date** | 07/11/2015 | **Cause of Death** | Injury and Poisoning (800-999) |
| **Claim Received Date** | 07/23/2015 | **Manner of Death** | Accident-Motor Vehicle |
| **Date of Dismemberment** | | **Self Inflicted Terminal Illness** | ☐ |
| | | **Pursuant To Court Order** | ☐ |
| **Amount of Living Benefit Requested** | 0.00 | **Is this a Living Benefit to Death Claim** | ☐ |
| **Life Expectancy > 12 Months** | Unknown | | |

**Statements Received**

| **Employee Statement Received** | | **Employer Statement Received** | |
|---|---|---|---|
| **Physician Statement Received** | | | |

**Overpayment Details**

| **Overpayment Record Totals** | | **Current Net Benefit Amount Balance** | |
|---|---|---|---|
| **Net Benefit Overpayment Amount** | 0.00 | **Total Underpaid Due Amount** | 0.00 |
| **Written Off Amount** | 0.00 | **Total Overpaid Due Amount** | 0.00 |
| **Agreed Recovery Amount** | 0.00 | | |
| **Recovered to Date Amount** | 0.00 | | |
| **Outstanding Amount** | 0.00 | | |

Case 6:18-cv-02063-CJW-MAR     Document 26-4     Filed 02/13/19     Page 3 of 555   Lincoln/Lee 091



Admin

**Party Claim Roles**

| Name | Role Name |
|------|-----------|
| Mr John E Lee | Insured |
| Mr John E Lee | Claimant |

1-3 of 3

Close

Case 6:18-cv-02063-CJW-MAR     Document 26-4     Filed 02/13/19     Page 4 of 555   Lincoln/Lee 092



**Claim Details**

About | Logout | Pin Screen

| | | |
|---|---|---|
| **Life Claim** | **Insured - Mr John E Lee** | **Status: Closed** |

Home

Open Party

Open Claim

Claim Intake

My Tasks

My Claims

Recent Items

Notes Administration

Add Contact

Close

**Life Claim 1072315-1127380**

General Claim   Coverages   Insured   Occupation   Claim Map   Tasks   Contact Records   Documents

**Policies**

| **Incurred Date** | 07/02/2015 | **Incurred Date on last coverage update** | - |
|---|---|---|---|

| Policy Number | Product | Effective Date | Term Date | Last Refresh Date | Plan | Class | Group ID | Group Name | Premium Paid | |
|---|---|---|---|---|---|---|---|---|---|---|
| 00040000100012077 | VLIF | 01/01/2011 | - | - | 1/ALL | 1/All Full-Time Employees | AIM3 | Ashley Industrial Molding, Inc. | Unknown | |
| 00001013208000000 | LIFE | 01/01/2011 | - | - | 1/ALL | 1/All Full-Time | AIM3 | Ashley Industrial | Unknown | |

Update

Details

Change

Edit Plan and Class

**Coverages for selected policy**

| Product Category | Status | Effective Date |
|---|---|---|
| VLIF | Unknown | - |

**Benefit Rights**

| Coverage Codes | Benefit Status | Eligibility Indicator | Claimed Amount | Term Code | Coverage Effective From | Coverage Effective To |
|---|---|---|---|---|---|---|
| VAD | Declined | Passed | 20000.00 | V | 03/01/2011 | 07/19/2015 |
| VLI | Paid | Passed | 20000.00 | V | 03/01/2011 | 07/19/2015 |

Add

Open

Remove

Create Ben

**Close**

Case 6:18-cv-02063-CJW-MAR        Document 26-4        Filed 02/13/19        Page 5 of 555   Lincoln/Lee 093

Admin

**Claim Details**

About | Logout | Pin Screen

| Home | **Life Claim**    **Insured - Mr John E Lee** | **Status: Closed** |
|---|---|---|

Open Party

Open Claim

Claim Intake

My Tasks

My Claims

Recent Items

Notes Administration

Add Contact

Close

**Life Claim 1072315-1127380**

General Claim    Coverages    Insured    Occupation    Claim Map    Tasks    Contact Records    Documents

**Policies**

| **Incurred Date** | 07/02/2015 | **Incurred Date on last coverage update** | - |
|---|---|---|---|

| Policy Number | Product | Effective Date | Term Date | Last Refresh Date | Plan | Class | Group ID | Group Name | Premium Paid | |
|---|---|---|---|---|---|---|---|---|---|---|
| 00040000100012077 | VLIF | 01/01/2011 | - - | 1/ALL | 1/All Full-Time Employees | | AIM3 | Ashley Industrial Molding, Inc. | Unknown | |
| 00001013208000000 | LIFE | 01/01/2011 | - - | 1/ALL | 1/All Full-Time | | AIM3 | Ashley Industrial | Unknown | |

Update

Details

Change

Edit Plan and Class

**Coverages for selected policy**

| Product Category | Status | Effective Date |
|---|---|---|
| LIFE | Unknown | - |

**Benefit Rights**

| Coverage Codes | Benefit Status | Eligibility Indicator | Claimed Amount | Term Code | Coverage Effective From | Coverage Effective To |
|---|---|---|---|---|---|---|
| AD | Declined | Passed | 95000.00 | R | 03/01/2011 | 07/19/2015 |
| LI | Paid | Passed | 48000.00 | R | 03/01/2011 | 07/19/2015 |

Add

Open

Remove

Create Ben

**Close**

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 6 of 555    Lincoln/Lee 094



**Claim Details**

About  | Logout | Pin Screen

Home

Open Party

Open Claim

Claim Intake

My Tasks

My Claims

Recent Items

Notes
Administration

Add Contact

Close

**Life Claim**          **Insured - Mr John E Lee**                                                **Status: Closed**

**Life Claim 1072315-1127380**

General Claim    Coverages    Insured    Occupation    Claim Map    Tasks    Contact Records    **Payment History**

Payments Pending    **Payments Made**

**Payments Made**

**Payment made after:**  03  13  2007        **Payee List:** All        **Payment Status:** All        **Filter**

| Issue Date | Status | Net Payment Amount | Payee Name |
|---|---|---|---|
| 08/04/2015 | Active | 68000.00 | Vanessa Lee |

**View**

**Reverse**

**Total Net Payment based on criteria above :**    0.00        **Calculate**

**Payment Allocations**

| Net Benefit Amount | Allocation Status | Manual |
|---|---|---|
| 48000.00 | Active | Yes |
| 20000.00 | Active | Yes |

**View**

**Open Benefit**

**Close**

Lincoln/Lee 095

| Claim | Document Type | User Created | Date Created | Status | User Last Updated | Context | Updated | Content |
|---|---|---|---|---|---|---|---|---|
| 1072315-1127380 | Comments | Carla Larimore | 8/2/2018 15:03 | Completed | Carla Larimore | | 8/2/2018 15:03 | 08/02/2018 - Rcvd lawsuit information from atty for bene. Sent to legal dept. |
| 1072315-1127380-006 | General Rationale | Carla Larimore | 7/28/2016 12:16 | Completed | Carla Larimore | Uphold Meeting | 7/28/2016 12:16 | See manager's notes regarding decision review. |
| 1072315-1127380-006 | Risk Review Rationale | Carla Larimore | 7/28/2016 12:16 | Completed | Carla Larimore | | 7/28/2016 12:16 | 07/28/2016 - 2ND LEVEL AD/VAD UPHOLD RATIONALE: Based on our review of the information and the reasons indicated in this letter, we are unable to overturn the original denial of benefits. The policy wording states that benefits are not payable if a contributing cause to the Insured Person's accidental injury is driving a vehicle while intoxicated. Your appeal letter indicated that you did not believe an ATV is considered a vehicle. Dictionary.com indicates that the definition of ATV or "All-Terrain Vehicle" is "a vehicle with treads, wheels, or both, designed to traverse varied, uneven terrain as well as roads." Based on this definition and the definitions included in our previous denial letter dated 02/18/2016, the ATV is considered a vehicle. The Death Certificate completed by Medical Examiner Dennis Firchou indicates that the Manner of Death for Mr. Lee is "Accident", the Cause of Death is listed as "Blunt Force Injuries of Head" and the description of his injury is "ATV Crash". The toxicology report completed by the University of Iowa Hospitals & Clinics indicates that Mr. Lee's blood alcohol content was 0.166 BAC. The cause of death is defined as either a disease or injury that starts the chain of events that culminates into the demise of the person. Contributing cause of death is a significant factor and includes pre-existing pathologic conditions or the presence of elevated drugs/medications in the system of the deceased such as alcohol which can impair the CNS and muscular coordination in addition to affecting the ability to operate machinery. Therefore, elevated blood/vitreous ethanol alcohol level is a contributing factor to the demise of Mr. Lee. In summary, based on the fact that Mr. Lee's death was ruled an accident due to blunt force injuries caused by an ATV crash and he was driving the ATV while over the legal limit of 0.08 BAC, we are unable to overturn the original denial of Basic and Voluntary Accidental Death benefits. Sent letters to atty and ER. See phone notes. |
| 1072315-1127380-006 | Comments | James Beyer | 7/27/2016 16:19 | Completed | James Beyer | | 7/27/2016 16:19 | agree with 2nd level appeal uphold. atty was unable to provide any further info and we moved forward with decision. ee BAC was above legal limit for state and all info we have and CDC was ATV accident and ATV is considered a vehicle. this is a limitation on policy. |
| 1072315-1127380-006 | Comments | Carla Larimore | 6/14/2016 10:47 | Completed | Carla Larimore | | 7/15/2016 18:12 | BEGIN TOLLING 06/15/2016 06/14/2016 - Sent extension letter. No addtl call made as last vm to atty explained that extension would be taken. END TOLLING 07/18/2016 |
| 1072315-1127380-006 | General Rationale | Carla Larimore | 4/22/2016 17:59 | Completed | Carla Larimore | Investigate Appeal | 7/15/2016 18:12 | 04/22/2016 – 2ND LEVEL AD/VAD APPEAL –RECEIVED 04/15/2016 SYNOPSIS –John Lee, Age 46 (DOB , DLW was 07/02/2015, DOD was 07/19/2015 due to blunt force injuries of head (atv crash); Accident. LI and VLI were paid on 08/04/2015. AD and VAD were denied on 10/23/2015 and 1st level appeal was denied on 02/18/2016 due to the claimant driving a vehicle (ATV) while intoxicated (BAC 0.166). Initial Appeal Correspondence 1) On 04/15/2016, we received an appeal letter from the atty representing the bene via fax. 2) No additional information was received with appeal. Reasons for Appealing 1) On 10/23/2015, LFG denied the initial AD/VAD benefits due to the claimant driving a vehicle while intoxicated. The LI and VLI were paid on 08/04/2015. 2) On 02/18/2016, 1st level appeal was upheld due to the claimant driving a vehicle while intoxicated. 3) Atty is appealing on bene's behalf stating that LFG's denial reasoning is based on the "ATV crash" for description of injury. Atty states the pictures show there is no indication of a crash, including flipping or rolling over. 4) Atty states that bene is requesting records from Medical Examiner's office which will be submitted if they are received before LFG makes their 2nd level decision. Bene is requesting additional medical information also to provide. 5) Atty states that bene does not have sufficient records to determine why "atv crash" is on CDC Pending Reason & Next Steps Reason 1) Call Completed – See Call Notes 2) Sent Acknowledgement Letters to Atty & Employer 3) Will verify if atty needs addtl time to submit ME records and med recs bene is requesting or if they want me to proceed with review and decision CMRAGOL 05/25/2016 - Per atty's vm, addtl time is needed for addtl info to be sent in. Pending for addtl 30 days. 06/24/2016 - Left vm for atty to verify if addtl time is needed for addtl info. 07/01/2016 - Rcvd vm from atty requesting addtl time. Pending 2 weeks. 07/15/2016 - Left vm for atty advising that I am beginning my review as we are past 90 days and no new info has been recvd. Beginning review on 07/18/2016. END TOLLING 07/18/2016 |
| 1072315-1127380-006 | Comments | Carla Larimore | 4/22/2016 17:59 | Unknown | Carla Larimore | | 4/22/2016 17:59 | |
| 1072315-1127380-006 | Comments | Carla Larimore | 4/22/2016 17:59 | Unknown | Carla Larimore | | 4/22/2016 17:59 | |
| 1072315-1127380-006 | Comments | Ashley Fults | 4/18/2016 16:32 | Completed | Ashley Fults | | 4/18/2016 16:32 | 04/18/2016 - Second level appeal assigned to CMRAGOL for handling. AMFULTS |

Case 6:18-cv-02063-CJW-MAR     Document 26-4     Filed 02/13/19     Page 8 of 555     Lincoln/Lee 096

| Claim ID | Category | User | Date/Time | Status | User | Date/Time | Note |
|---|---|---|---|---|---|---|---|
| 1072315-1127380-005 | Risk Review Rationale | Ashley Fults | 2/18/2016 11:53 | Completed | Ashley Fults | 2/18/2016 11:57 | CONTINUED FROM LAST NOTE.... We understand your client feels that the ATV her husband was driving does not fit within the purview of the policy exclusion related to driving a vehicle while intoxicated; however, an ATV is defined as a motorized, mobile transportation machine. It carries people, requires steering, and operates on wheels, all of which fits within the generally accepted definitions cited above. You've expressed concern that we paraphrased Iowa Code Section 321.1(4) in our initial denial without considering Iowa Code Section 3211.1(1); however, our initial denial letter references information available on your states DMV website, not from these code sections. Our review of both Iowa Code Sections mentioned, one referring to All-Terrain Vehicles and the other to Off-Road Vehicles, confirms that both types are considered vehicles that clearly fit within the general definitions mentioned. You indicate your client also disagrees with the description of the injury which was ruled as an "ATV Crash"; however, the medical examiner has not amended the death certificate to reflect Ms. Lee's theory that her husband fell after exiting the ATV. Unfortunately, all available evidence supports the fact that Mr. Lee was driving the ATV and was later found lying next to the vehicle unresponsive. While there were no objects at the site to "crash" into, we feel this term would also apply to the ATV flipping or rolling, which is supported by the new information from Dr. Leo confirming "the headlight was slightly dislodged" and is also supported by your statement that "the light was hanging loose in front". Since the family did not report the incident until after the fact, there is no accident report supporting what they feel is an accurate version of events. In addition, they did not request an autopsy to look into their version (or another reason) that may have contributed to Mr. Lee's passing. As Dr. Leo states in his letter, neither an autopsy nor a proper forensic accident investigation was undertaken. Without this information being available for us to consider, the facts in this case remain that the state of Iowa concluded Mr. Lee died of blunt force injuries resulting from an ATV Crash. Given that the toxicology results confirm a blood alcohol content well over the legal limit of 0.08 BAC and all evidence points to Mr. Lee driving the All-Terrain Vehicle while intoxicated when the accident occurred; we are unable to provide Basic and Voluntary Accidental Death benefits. Mailed uphold letters today and faxed a copy to the atty office. Completed call, see notes for details. First level appeal is exhausted. Filing deadline for second/final appeal is 04/18/2016. AMFULTS |
| 1072315-1127380-005 | Risk Review Rationale | Ashley Fults | 2/18/2016 11:50 | Completed | Ashley Fults | 2/18/2016 11:51 | 02/18/2016 - FIRST LEVEL APPEAL DECISION: UPHOLD ACCIDENTAL DEATH DENIAL Based on our review of all available information, we are unable to overturn the denial of Basic and Voluntary Accidental Death benefits. Lincoln's policy does not provide a specialized definition for "vehicle" because our definition of the term does not differ from what is described in the dictionary for general purposes. Definitions of the term "vehicle" include: Merriam-Webster: a means of carrying or transporting something <planes, trains, and other vehicles>: as a : motor vehicle b : a piece of mechanized equipment Wikipedia: A vehicle (from Latin: vehiculum[1]) is a mobile machine that transports people or cargo. Most often, vehicles are manufactured, such as wagons, bicycles, motor vehicles (motorcycles, cars, trucks, buses), railed vehicles (trains, trams), watercraft (ships, boats), aircraft and spacecraft.[2] Land vehicles are classified broadly by what is used to apply steering and drive forces against the ground: wheeled, tracked, railed or skied. ISO 3833-1977 is the standard, also internationally used in legislation, for road vehicles types, terms and definitions Dictionary.com: 1. any means in or by which someone travels or something is carried or conveyed; a means of conveyance or transport: a motor vehicle; space vehicles. 2. a conveyance moving on wheels, runners, tracks, or the like, as a cart, sled, automobile, or tractor. CONTINUED IN NEXT NOTE DUE TO SIZE LIMITATIONS..... |
| 1072315-1127380-005 | Comments | Ashley Fults | 2/16/2016 16:59 | Completed | Ashley Fults | 2/16/2016 16:59 | 02/16/2016 - Content of file is under review. AMFULTS |
| 1072315-1127380-005 | Comments | Ashley Fults | 2/10/2016 12:40 | Completed | Ashley Fults | 2/10/2016 12:40 | 02/10/2016 - Mailed ERISA extension letter. AMFULTS |
| 1072315-1127380-005 | Comments | Ashley Fults | 2/10/2016 12:32 | Completed | Ashley Fults | 2/10/2016 12:39 | 02/10/2016 - Rec'd the pictures scanned via email and the MD report with cover letter via fax.. ER records were also included. Called the attorney to confirm but no answer. Left him a voicemail (see contact records for details) advising we will commence the review and be in touch once a decision has been made. Also explained we are taking an extension to decide the appeal since we just received this info and haven't had time to complete a full/fair review. AMFULTS |
| 1072315-1127380-005 | Comments | Ashley Fults | 2/8/2016 16:17 | Unknown | Ashley Fults | 2/8/2016 16:18 | 02/08/2016 - Based on return voicemail from the attorney, will provide an extension to 02/19/2016 to provide additional info. |
| 1072315-1127380-005 | Comments | Ashley Fults | 2/8/2016 16:17 | Completed | Ashley Fults | 2/8/2016 16:17 | AMFULTS |
| 1072315-1127380-005 | Comments | Ashley Fults | 2/8/2016 13:57 | Completed | Ashley Fults | 2/8/2016 13:57 | 02/08/2016 - Attempted call to the attorney, no answer. To date, we have not been able to establish contact with the attorney and we have provided to 02/08/2016 to supplement the file as requested without response. As such, left the attorney a voicemail confirming we are commencing the appeal review with the info already in the file and will be in touch shortly with a decision. Requested a return call if there are any issues with this. Left my direct number. AMFULTS |
| 1072315-1127380-005 | Comments | Ashley Fults | 1/6/2016 8:51 | Completed | Ashley Fults | 1/6/2016 8:51 | 01/06/2016 - Confirmed with support staff that the file copy was mailed. AMFULTS |
| 1072315-1127380-005 | Comments | Ashley Fults | 12/28/2015 16:13 | Unknown | Ashley Fults | 12/28/2015 16:13 | |
| 1072315-1127380-005 | Comments | Ashley Fults | 12/28/2015 16:12 | Unknown | Ashley Fults | 12/28/2015 16:12 | |
| 1072315-1127380-005 | Comments | Ashley Fults | 12/28/2015 16:11 | Unknown | Ashley Fults | 12/28/2015 16:12 | |

Lincoln/Lee 097

| Claim ID | Type | User | Date/Time | Status | User 2 | Action | Date/Time 2 | Notes |
|---|---|---|---|---|---|---|---|---|
| 1072315-1127380-005 | General Rationale | Ashley Fults | 12/28/2015 16:09 | Completed | Ashley Fults | Investigate Appeal | 12/28/2015 16:09 | 12/28/2015 – FIRST LEVEL AD & VAD APPEAL – RECEIVED 12/23/2015 John Lee was a 46 year old male who worked for AIM3 since 11/29/2010. His BLI (48K) & VLI (20K) coverages were paid; however, AD & VAD were denied after review of the CDC indicates he died from blunt force injuries in an ATV accident and the toxicology report confirmed his BAC was twice the legal limit (0.166). Of note, there is no accident report to refer to as it appears the family took him home from the site of the accident presuming he was still intoxicated. When he did not wake up, they brought him to the ED for evaluation. He was intubated at OSH then transported to UIHC for further care. Initial Appeal Correspondence 1) Letter of appeal from attorney 2) Hand drawn diagram of the accident site Reasons for Appealing 1) EE didn't crash the ATV as there was no object to crash in to 2) A cigarette at the sight was found near John's left hand, but he usually smoked with his right hand while driving 3) Lincoln's policy does not define vehicle – ATV is not a vehicle, it is a motorized machine 4) There is a specific definition in Iowa Code section 3211.1(1) for ATV (it appears they are under the impression Lincoln used a portion of Iowa Code Section 321.1(4); however, the information cited in the denial was taken straight from the IA DMV website) Pending Reason & Next Steps Reason 1) Call Completed – Made 2 call attempts to 319-283-3204; however, the phone line gave a fax sound. Could not connect with the attorney on this line. Attempted a call to the fax # listed of 319-283-1838 to see if they were mixed up on the letter and a woman answered but stated we must contact Larry at the other number (she confirmed it was accurate). Made one last attempt but it was still a fax sound. 2) Sent Acknowledgement Letters to Atty & ER 3) Sent file for copy 4) Will pend the claim until 02/08/2016 as requested in the appeal letter so that supplemental info can be provided. |
| 1072315-1127380 | Comments | Nadine Beck | 10/23/2015 10:34 | Completed | Nadine Beck | | 10/23/2015 10:34 | Recd a phone msg task fr CS. Vanessa called in to provide the ME name and phone #. I have already spoke to the MED Exam and also recd the requested med records from Iowa hosp# clinics for Mr Lee. The review is complete and reviewed with life senior. Denial sent. |
| 1072315-1127380-004 | Accidental Death Benefit Denial Reasons | Nadine Beck | 10/23/2015 8:44 | Completed | Nadine Beck | Select Decline Reasons | 10/23/2015 8:44 | |
| 1072315-1127380-001 | Accidental Death Benefit Denial Reasons | Nadine Beck | 10/23/2015 8:42 | Completed | Nadine Beck | Select Decline Reasons | 10/23/2015 8:42 | |
| 1072315-1127380 | Comments | Nadine Beck | 10/23/2015 8:38 | Completed | Nadine Beck | | 10/23/2015 8:38 | Reviewed records with Kerri S lifesenior and she advised to proceed with denial as Insured John E Lee was the driver of the ATV and was over the legal limit of alcohol .08, his reading per tox report was 0.166. ATV is considered a MV and must be registered in the state of IA. The Iowa dep of natural resources states that all All terrain veh must be legally registered unless veh meets one of more of the following- ATV is used for farming or other agri purposes, ATV is owned and used by US gove or political subd of another state. No accident report as the family drove insured home in private veh prior to taking to hosp. Recd med records with detail and interviews from family/spouse of what happened and all records confirm John E Lee was driving the ATV when he was found unconscious laying next to the ATV at the camp site where the family was camping. |
| 1072315-1127380 | Comments | Nadine Beck | 10/22/2015 16:22 | Completed | Nadine Beck | | 10/22/2015 16:22 | BASIC AD DEATH OR DISMEMBERMENT BENEFIT FOR AN INSURED PERSON. The Company will pay the benefit listed below, if: (1) an Insured Person sustains an accidental bodily injury while insured under this provision; and (2) that injury directly causes one of the following losses within 365 days after the date of the accident. The loss must result directly from the injury and from no other causes. LIMITATIONS. Benefits are not payable for any loss to which a contributing cause is: (1) intentional self-inflicted injury or self-destruction; (2) disease, bodily or mental infirmity, or medical or surgical treatment of these; (3) participation in a riot; (4) duty as a member of any military, naval or air force; (5) war or any act of war, declared or undeclared; (6) participation in the commission of a felony; (7) voluntary use of drugs; except when prescribed by a Physician; (8) travel or flight in any aircraft, including balloons and gliders; except as a fare paying passenger on a regularly scheduled flight; or (9) driving a vehicle while intoxicated. VOL AD DEATH OR DISMEMBERMENT BENEFIT FOR AN INSURED PERSON. The Company will pay the benefit listed below, if: (1) you sustain an accidental bodily injury while insured under this provision; and (2) that injury directly causes one of the following losses within 365 days after the date of the accident. The loss must result directly from the injury and from no other causes. LIMITATIONS. Benefits are not payable for any loss to which a contributing cause is: (1) intentional self-inflicted injury or self-destruction, while sane; (2) disease, bodily or mental infirmity, or medical or surgical treatment of these; except for: (a) pyogenic infections resulting from an accidental bodily injury; or (b) the accidental ingestion of contaminated substances; (3) participation in a riot; (4) duty as a member of any military, naval or air force; (5) war or any act of war, declared or undeclared; (6) participation in the commission of a felony; (7) voluntary use of drugs; except when prescribed by a Physician; (8) voluntary inhalation of gas, including carbon monoxide, while sane; (9) travel or flight in any aircraft, including balloons and gliders; except as a fare paying passenger on a regularly scheduled flight; or (10) driving a vehicle while intoxicated. |
| 1072315-1127380 | Comments | Nadine Beck | 8/4/2015 14:55 | Completed | Nadine Beck | | 10/22/2015 16:18 | AD REVIEW 10/7/15 nlb-email fr Kaline Carter states 166 mg is always read as .166 which is 2x over the legal limit of .08. Pending a report from Coroner. Vanessa said no police or incident reports. She drove husband to hospital her self. The coroner questions the 4 people at the scene. Both the basic and Vol policy have limitation #10 Driving a veh while intoxicated. Deny based on tox report and driving an ATV. 10/7/15 nlb-recd corr. Recd Univ of IA tox results for John E Lee has listed 166 mg/dL ethanol Plasma/Blood and NEG for all drug of abuse Urine tests and THC Urine NEG. 9/24/15 nlb-Recd auth from Univ of IA, will complete and send with orig ltr request for tox report f/u 30 days 10/23/15 9/18/15 nlb-No requested accident or tox report recd. CLosed AD FTPP. CDC recd has listed accident, ATV crash on 7/11/2015 8pm. Vol AD-$20,000-Benefits are not payable for any loss to which a contributing cause is: #7Vol use of drugs; except when prescribed by a phys #10 driving a vehicle while intoxicated. Basic AD-Two times BAE rd to the next higher $1000 max of $200,000. EE Basic AD is $95000. Policy - Benefits are not payable for any loss to which a contributing cause is: #7 voluntary use of drugs; except when prescribed by a phys #10 driving a vehicle while intoxicated. In the state of IA an ATV is considered a vehicle and has to be registered unless used for farming/agricultural purposes or US government or a political subdivision of another state. Need copy of accident or incident report Need copy of tox report- Univ of IA 30 pend 9/3/15 final 9/18/15 |

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 10 of 555          Lincoln/Lee 098

| Claim | Type | Person | Date | Status | Person | Category | Date | Notes |
|---|---|---|---|---|---|---|---|---|
| 1072315-1127380 | Comments | Nadine Beck | 10/7/2015 9:22 | Completed | Nadine Beck | | 10/22/2015 16:17 | Per Kaline Carter ee Tox findings .166 which is 2x over legal limit of .08 Recd corr fr Intake this morning late. Not my error. Email tox report and cdc to Kaline to have the tox finding for ethanol converted. 10/7/15 nlb-Cld Venessa back and she will call the coroner and try get a copy of the coroner report as she said 4 people talked to the coroner at the hospital after the accident and they should have some kind of report to sent. No police or incident reports as she drover him to Hosp in personal veh. She will call me back. |
| 1072315-1127380 | Comments | Nadine Beck | 10/22/2015 16:15 | Completed | Nadine Beck | | 10/22/2015 16:15 | 10/22/15 nlb-Recd med records from Univ of IA Hosp & CLinics. Pt John E Lee Adm date 7/12/2015, adm diagn unresponsive, DOD 7/19/15. Glasgow coma scale total score 3-8, obesity, meta acidosis, hypophosphatemia, fall, acute resp failure following trauma and surgery, traumatic brain injury with loss of consciousness, factial bones, closed fracture, acute alcoholic intoxication without complication. Hosp course: The Pt was admitted to the hosp after being evaluated by the trauma team following an ATV accident. He was evaluated by the neurosurgery service and the intracranial pressure monitor was placed. He had multi spikes of high intracranial pressures and was provided with 7.5% sodium for these. The otolaryngology team was consulted for the zygomatic arch fractures and several facial fractures. They elected to not perform any surgical interventions. The ophthalmology team was consulted for an orbital rim fracture and did not elect for any emergent surgical intervention and their recommendations were followed up. The Orthopaedic team was consulted for an osseous density noted on plain film of left wrist which was also managed nonoperatively and a sling was provided for confort only. His neurological exam was poor and did not improve during his hosp course. A continuous EEG was obtained which did not reveal any ongoing seizure activity to explain his poor neurological exam. His poor prognosis and neurological exam were explained to the pt family. The palliative care team was consulted to discuss goals of care. They elected to make the pt Do Not Resuscitate and proceed with compassionate extubation. His bolt was discontinued just prior to compassionate extubation. The pt then subsequently expired. History of present illness: Pt has no med history but this is reportedly due to the fact the pt does nto se drs. Pt was reportedly camping and riding an ATV this past evening, 7/11/15. He did not return, and on search, family found the Pt unconscious lying next to the still running (and upright) ATV. He was ntoed to have blood on his face a the time. He was drinking prior to the reported fall, and was thus taken home by his family to recover. However, when the pt did not effectively recover, the family took the pt to the OSH. The pt was intubated. No imaging was obtained. Pt was subsequently transported to UIHC for further cares. Pt was ntoed to have decerebrate posturing of his upper extremities at UIHC, and will spontaneously move his bilateral lower extremities. ANother History: Pt 46 yo male who presents form the scene. History is obtain form his wife. He was camping with family today. Around 7pm he was found down and unresponsive next to the ATV he was driving. The ATV was running and upright and it appeared that he had collapsed while driving it and fallen to the ground. The family was able to get him home but he remained unresponsive so they took him to loc hosp. He was intubated due to his mental status and sent to UIHC. |
| 1072315-1127380 | Comments | Nadine Beck | 10/7/2015 13:22 | Completed | Nadine Beck | | 10/7/2015 13:22 | Called and spoke to ME office at 319-339-6197. The ME said there is no report that can be released without a supeona. She said the CDC is missing the part she entered on the paper work for the CDC which states John Lee was the driver of the ATV. She said she will look into this and see why her on line paper and the actual printed CDC are not the same. She said since the family drove him to the hospital there would not be any reports form police or ambulance. She agreed that seems odd why they drove him and did not call ambulance. She said if the CDC will change at all and the driver gets listed she will call me so I can get a copy. What I see on my CDC and what her records state are different but only in regards to him being the driver. She said she does not have a lot of info and if she were to get a supeona what she has may not even help. I asked if the Hosp may have some records, she said very possible and would try getting med records from the hosp. Thanked her for her assistance. |
| 1072315-1127380-001 | General Rationale | Nadine Beck | 9/18/2015 8:11 | Completed | Nadine Beck | Review AD Contract Exclusions | 10/7/2015 11:34 | AD closed claim review, requested accident and tox reports not received for claim reviewd. Closed FTPP |
| 1072315-1127380-004 | General Rationale | Nadine Beck | 9/18/2015 8:12 | Completed | Nadine Beck | Review AD Contract Exclusions | 9/24/2015 13:39 | AD closed claim review, requested accident and tox reports not received for claim reviewd. Closed FTPP |
| 1072315-1127380 | Comments | Nadine Beck | 9/24/2015 13:35 | Completed | Nadine Beck | | 9/24/2015 13:35 | Hello, Nadine. There was not an accident report. Based on the information that was told to us, is that Mr. Lee was transported to the hospital and treatment began at the University of Iowa. Mrs. Lee did not provide a contact for case worker. Please let me know if you should need anything else. Thanks. Janelle Smith |
| 1072315-1127380 | Comments | Nadine Beck | 9/24/2015 13:32 | Unknown | Nadine Beck | | 9/24/2015 13:32 | |
| 1072315-1127380-004 | Accidental Death Benefit Denial Reasons | Nadine Beck | 9/18/2015 8:15 | Completed | Nadine Beck | Select Decline Reasons | 9/18/2015 8:15 | |
| 1072315-1127380-001 | Accidental Death Benefit Denial Reasons | Nadine Beck | 9/18/2015 8:13 | Completed | Nadine Beck | Select Decline Reasons | 9/18/2015 8:13 | |
| 1072315-1127380 | Comments | Nadine Beck | 8/4/2015 15:33 | Completed | Nadine Beck | | 8/4/2015 15:33 | Paying $48000 basic and $20000 vol life to Vanessa Lee, wife/primary ovr DP her request. Bank Iowa rt# ckg# Sent grp ptm ltr Sent DP pmt ltr AD Pend for copy of incident/police report and tox report of John Lee. Requested tox report from Univ of Iowa and police/incident report fr Vanessa Lee. |
| 1072315-1127380 | Comments | Nadine Beck | 8/4/2015 14:42 | Completed | Nadine Beck | | 8/4/2015 14:42 | BENEF DESIGN Recd with clm fr grp a copy of insured EE John E Lee orig LFG enrollment for for basic life/AD and vol ee lifeAD has primary beneficiary listed as Vanessa G Lee wife sign/dated by John E LEe 2/22/2011 Located in AWD same enrollment form as grp submitted-GPIMAGING ENRLFORMT 2011 03 16 15 38 17 216221. |
| 1072315-1127380 | Comments | Nadine Beck | 8/4/2015 14:37 | Completed | Nadine Beck | | 8/4/2015 14:37 | DETERMINE IF ENROLLED WITHIN ELIG PERIOD Grp eff LFG 1/1/2011, list bill grp. EE has ardis member record for basic life, basic AD, vol ee life and vol ee AD eff 03/01/2011. VOI ee life and vol ee AD $20,000 eff 3/1/2011. Recd with clm fr grp a copy of ee orig LFG enrollment form has listed DOH 11/29/2010, class SAL, eff 3/1/11 vol ee life/AD election $20,000 sign/dated John E Lee 2/22/2011. Yes enrolled within elig period |
| 1072315-1127380 | Comments | Carla Larimore | 7/30/2015 18:09 | Completed | Carla Larimore | | 7/30/2015 18:09 | 7/30/2015 - Sent pend ltr to er for cdc and bene form. |
| 1072315-1127380 | Comments | Selene Salvatore | 7/24/2015 14:10 | Completed | Selene Salvatore | | 7/24/2015 14:10 | 7/24 - No missing info call made. Claim just recvd, allowing 2 days for cdc. |

Case 6:18-cv-02063-CJW-MAR   Document 26-4   Filed 02/13/19   Page 11 of 555   Lincoln/Lee 099

| Claim Number | Claim Type | Date/Time | Method | Reason | Description |
|---|---|---|---|---|---|
| 1072315-1127380-006 | Life Appeal | 7/28/2016 12:16 | Phone | Appeal | Left vm for atty advising of uphold decision. Left cb # for questions. |
| 1072315-1127380-006 | Life Appeal | 7/15/2016 18:12 | Phone | Appeal | Left vm for atty advising that we are at 90 days since appeal was recvd and no new info has been recvd. Advised I am beginning my review. Left cb # for questions. |
| 1072315-1127380-006 | Life Appeal | 7/5/2016 14:12 | Phone | Appeal | Rcvd vm from atty requesting addtl time to receive info from dr. He will f/u with dr for addtl info to send in to support appeal. CB # is 319-283-3204 or cell #319-283-0220. |
| 1072315-1127380-006 | Life Appeal | 6/24/2016 18:37 | Phone | Appeal | Left vm for atty to verify if addtl time is needed. Left phone # |
| 1072315-1127380-006 | Life Appeal | 5/25/2016 11:40 | Phone | Appeal | Called atty back to advise that I can pend the appeal for 30 days additionally. I advised that would put the next f/u on 06/24/2016. Advised that ERISA 60th day is 06/14/2016, so a letter will be sent out at that time if no addtl info is recvd. Atty stated that he would continue to f/u on addtl info |
| 1072315-1127380-006 | Life Appeal | 5/25/2016 11:33 | Phone | Appeal | Rcvd vm from atty stating that he is still waiting for records. He has requested addtl time to get the needed info to us. CB # 319-283-3204. |
| 1072315-1127380-006 | Life Appeal | 5/20/2016 16:53 | Phone | Appeal | Left vm for atty to verify if addtl time is needed for med recs to be recvd. req'd cb if addtl time is needed or if we can proceed with review. If no response by EOB 05/25/2016, will proceed with review. Left cb #. |
| 1072315-1127380-006 | Life Appeal | 4/28/2016 11:38 | Phone | Appeal | Called Nicki at the atty's office to advise that I recvd her vm and am allowing 30 days for the addtl records to be recvd. Advised that my f/u date is 05/20/2016 and if nothing is recvd by then, I will follow up with them. She will let Mr. Woods know. |
| 1072315-1127380-006 | Life Appeal | 4/28/2016 11:35 | Phone | Appeal | Rcvd vm from atty's office stating that they'd like 30 days to get the records that they have requested from ME. CB # is 319-283-3204 |
| 1072315-1127380-006 | Life Appeal | 4/22/2016 18:03 | Phone | Appeal | Left vm for atty to advise that appeal was recvd. I req'd cb to verify if atty would like addtl time to receive the med recs and ME reports that bene has req'd. If no response by EOB 04/27/2016, will proceed with review and decision. |
| 1072315-1127380-005 | Life Appeal | 2/18/2016 11:54 | Phone | Appeal | Called Larry Woods to discuss the decision which was to deny the AD benefits. I confirmed a letter will go out to him today. He didn't ask for any specifics, stated will review the letter. He did want to know what his next option(s) were. I explained that since the group is ERISA, he must exhaust the appeal process before pursuing litigation. He thanked me for the clarification, states he will reach out to me if he has any questions. AMFULTS |
| 1072315-1127380-005 | Life Appeal | 2/17/2016 8:42 | Phone | Appeal | Received a voicemail from attorney Larry Woods confirming that he received our ERISA extension letter and he consents to the extension. He thanked me for extending time to provide additional info. No call back requested. AMFULTS |
| 1072315-1127380-005 | Life Appeal | 2/11/2016 12:26 | Phone | Appeal | Rec'd a return voicemail from the atty confirming that he mailed the originals but that there is nothing new from what we confirmed was just received. He confirmed it's ok to commence the review and thanked me for assisting. No call back # left and no call back requested; therefore, did not return the call. Commencing review. AMFULTS |
| 1072315-1127380-005 | Life Appeal | 2/10/2016 12:34 | Phone | Appeal | Called attorney to confirm receipt of the information he sent in, no answer. Left a voicemail confirming we received his cover letter, the MD report, the ER records, and the photos via email. Advised we will commence the review and will be in touch once a decision on the appeal has been reached. Also advised that since we are approaching our deadline under ERISA, we are taking an extension of time to decide the appeal so that we can review this new info he just provided. A letter advising of this will go out today. Left my direct line for questions. AMFULTS |
| 1072315-1127380-005 | Life Appeal | 2/8/2016 16:15 | Phone | Appeal | Rec'd a voicemail from the atty advising he does have additional info to submit and is waiting for the medical examiner to sign off on it. He also has some pictures to scan and email if possible. He left his email address and requested I return a message in this fashion. See email in AWD for response details. AMFULTS |
| 1072315-1127380-005 | Life Appeal | 2/8/2016 13:54 | Phone | Appeal Status | Attempted call to the attorney, no answer. To date, we have not been able to establish contact with the attorney and we have provided to 02/08/2016 to supplement the file as requested without response. As such, left the attorney a voicemail confirming we are commencing the appeal review with the info already in the file and will be in touch shortly with a decision. Requested a return call if there were any issues with this. Left my direct number. AMFULTS |
| 1072315-1127380-005 | Life Appeal | 12/28/2015 16:09 | Phone | Appeal | Made 2 call attempts to 319-283-3204; however, the phone line gave a fax sound. Could not connect with the attorney on this line. Attempted a call to the fax # listed of 319-283-1838 to see if they were mixed up on the letter and a woman answered but stated we must contact Larry at the other number (she confirmed it was accurate). Made one last attempt but it was still a fax sound. AMFULTS |
| 1072315-1127380 | Life Claim | 12/4/2015 12:25 | Phone | Claim Status | Cld Vanessa back and left msg with basic AD $95000 and vol AD $20,000 per grp policy. Amt denied and lette sent, follow direction of denial letter if appeal. |
| 1072315-1127380 | Life Claim | 12/4/2015 12:14 | Phone | Other | wants to know what the policy is worth had it not been denied? Adv she needs to speak w/ the CE ext 2894 - sent to VM Caller Type: IS Insured Phone # |
| 1072315-1127380 | Life Claim | 10/27/2015 10:13 | Phone | Claim Status | cld left Vanessa Lee msg to call me. Advised I did send letter dated 10/23 regarding the AD review and claim decision, she should have letter anyday for review. |
| 1072315-1127380 | Life Claim | 10/26/2015 16:51 | Phone | Other | Transferred to CE vm as requested by the caller 2894 Caller Type: AR Authorized Representative Phone # |

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 12 of 555

Lincoln/Lee 100

| | | | | | |
|---|---|---|---|---|---|
| 1072315-1127380 | Life Claim | 10/23/2015 10:21 | Phone | Other | John E Lee would like to speak with Nadine-CE found the med examiner rebecca franklin Ph# 319-339-6197 ph# 319-325-0479-cell spouse called in to provide med examiner's ph numbers listed above. She wanted you to reach out to her in regards to the LI claim Caller Type: IS Insured Phone # |
| 1072315-1127380 | Life Claim | 10/19/2015 9:11 | Phone | Claim Status | cld Venessa back and left msg to call me with questions. Letter sent for med records on 10 8 pending records to arrive. Need get idea of what happended time of accident, Who driver of ATV?? |
| 1072315-1127380 | Life Claim | 10/16/2015 17:08 | Phone | Other | phone- confirmed ce notes from 10-7 , she stated she was waiting for a f/u from CE as what she found out on the accident report- advised her will leave open note for CE to call her back Caller Type: IS Insured Phone # |
| 1072315-1127380 | Life Claim | 10/7/2015 13:22 | Phone | Claim Status | CLd spoke to asst ME. Iowa has ME not Coroners. No reports can be release without a supeona. She said her on line notes for CDC have John Earl Lee as driver but it does not relay onto the CDC and she cannot add it. She will ck and try and find out why the CDC is not exact as her notes on what it should say and read. |
| 1072315-1127380 | Life Claim | 10/7/2015 9:46 | Phone | Claim Status | Cld Venessa back and she will call the coroner and try get a copy of the coroner report as she said 4 people talked to the coroner at the hospital after the accident and they should have some kind of report to sent. No police or incident reports as she drover him to Hosp in personal veh. She will call me back. |
| 1072315-1127380 | Life Claim | 10/6/2015 11:31 | Phone | Other | john lee have we rec'd the accident report yet? adv sent accident report to his work about 2 weeks ago adv we rec'd the auth form wife stated we need to fill out the Auth form letting the hospital know what we are needing and fax the auth form to them Please continue filling out the auth form and fax to the hospital ph# please call with a status update Caller Type: IS Insured Phone # |
| 1072315-1127380 | Life Claim | 9/29/2015 15:33 | Phone | Other | adv acc report not recd yet. closed claim until recd. Caller Type: BY Beneficiary Phone # |
| 1072315-1127380 | Life Claim | 7/23/2015 16:16 | Mail | Enquiry | This contact has been created automatically during the indexing of a document. |



Lincoln/Lee 102

# LAW OFFICE OF
## *LARRY F. WOODS*
**24 NORTH FREDERICK AVENUE**
**OELWEIN, IOWA 50662**
**PH. (319) 283-3204  FAX (319) 283-1838**
lfwoods@trxinc.com

July 30, 2016

The Lincoln National Life Insurance Company
Attn: Risk Departments
P. O. Box 2337
Omaha, Nebraska 68103

     RE:  Policy Holder: Ashley Industrial Molding,  Inc.
           Policy No:     00400001000-12077
                        000010132080-00000
          Claim Number:  1072315-1127380
           Claimant:     John Lee
           Appeal of denial of accidental death benefits

TO WHOM IT MAY CONCERN:

     I  am   the attorney who is representing the  Estate  of John Lee and the designated beneficiary,  Vanessa Lee in  the determination of whether the Life Insurance Policy issued  to John should be paid.   We were unable to resolve this  matter through negotiations.  Thus, I have filed a suit on behalf of both  the John Lee Estate and the beneficiary, Vanessa  Lee. I  have enclosed a copy of the Petition and  Original  Notice that has been prepared and is filed.

     The purpose of this letter is two fold.  First, I wanted to  make your company aware of the pending  litigation.   The second  purpose  is to determine if your company  desires  to accept  service  of  the Original  Notice  and  Petition,  or whether I will need to have the Original Notice and  Petition served in accord with the rules.

     I will be out of state until about August 12.   If  your company  will  accept  service  of  the  Original  Notice  and Petition, please sign the enclosed Acceptance of Service.  If your company requests that I have The Lincoln National Life

Lincoln National Life Insurance Co.
July 27, 2017
Page 2
Suit by John E. Lee Beneficiary & Estate
Your Claim No. 1072315-1127380


Insurance Company served, kindly advise. If I have not received a duly executed Acceptance of Service by August 20, 2018, I will presume that serve of process will be necessary.

Thank you for your time and attention in this matter. I will look forward to hearing from you at your convenience.

Very truly yours,

Larry F. Woods

Enc: Petition &
     Original Notice
     Acceptance of Service
CC:  Client

IN THE DISTRICT COURT OF IOWA, IN AND FOR FAYETTE COUNTY

-----------------------------------------------------------------

| | | |
|---|---|---|
| VANESSA LEE, Individually as Executor of the JOHN LEE ESTATE | ) ) ) | CASE NO. CVCV055206 |
| Plaintiff, | ) | |
| v. | ) ) ) | **ORIGINAL NOTICE FOR FIRST AMENDED PETITION AT LAW** |
| THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, Defendant. | ) ) ) | |

-----------------------------------------------------------------

TO THE ABOVE-NAMED DEFENDANT: THE LINCOLN NATIONAL LIFE INSURANCE COMPANY

YOU ARE HEREBY NOTIFIED that a Petition has been filed in the office of the Clerk of this Court, naming you as he defendant in the action. A copy of the Petition (any documents filed with it) is attached to this Notice. The attorney for the Plaintiff's is Larry F. Woods, whose address is 24 North Frederick Avenue, Oelwein, IA 50662. That the attorney's telephone number is (319) 283-3204; facsimile number is (319) 283-9193, and e-mail address of lfwoods@trxinc.com

YOU must serve a Motion or Answer within 20 days after service of this Original Notice upon you, and within a reasonable time thereafter, file your Motion or Answer with the Clerk of the Iowa District Court for Fayette County, at the County Courthouse P. O. Box 458 in West Union, Iowa. If you do not, judgment by default may be rendered against you for the relief demanded in the Petition.

If you require the assistance of auxiliary aide or services to participate in court because of admissibility, immediately call your district ADA coordinator at (319) 833-3332. (If you are hearing impaired, call Relay Iowa TY at 1-800-735-2942.)

NOTE: YOU ARE ADVISED TO SEEK LEGAL ADVISE AT ONCE TO PROTECT YOUR INTEREST.

# STATE OF IOWA JUDICIARY

*Case No.* CVCV055206

*County* Fayette

*Case Title* VANESSA LEE V THE LINCOLN MUTUAL INS. CO.

**THIS CASE HAS BEEN FILED IN A COUNTY THAT USES ELECTRONIC FILING.**
Therefore, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless you obtain an exemption from the court, you must file your Appearance and Answer electronically.

You must register through the Iowa Judicial Branch website at http://www.iowacourts.state.ia.us/Efile and obtain a log in and password for the purposes of filing and viewing documents on your case and of receiving service and notices from the court.

**FOR GENERAL RULES AND INFORMATION ON ELECTRONIC FILING, REFER TO THE IOWA COURT RULES CHAPTER 16 PERTAINING TO THE USE OF THE ELECTRONIC DOCUMENT MANAGEMENT SYSTEM:**
http://www.iowacourts.state.ia.us/Efile

**FOR COURT RULES ON PROTECTION OF PERSONAL PRIVACY IN COURT FILINGS, REFER TO DIVISION VI OF IOWA COURT RULES CHAPTER 16:** http://www.iowacourts.state.ia.us/Efile



*Scheduled Hearing:*

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at (319) 833-3332 . (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942.)

*Date Issued* 07/27/2018 11:40:51 AM



*District Clerk of* Fayette          *County*
/s/ Katherine Gumm

IN THE DISTRICT COURT OF IOWA, IN AND FOR FAYETTE COUNTY

-----------------------------------------------------------

| | |
|---|---|
| VANESSA LEE, Individually as Executor of the JOHN LEE ESTATE<br>      Plaintiff,<br>v.<br><br><br>THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,<br>      Defendant. | CASE NO. CVCV055206<br><br><br>**FIRST AMENDED**<br>**PETITION AT LAW** |

-----------------------------------------------------------

## COUNT I - BREACH OF CONTRACT

COMES NOW the Plaintiff, Vanessa Lee, Individually and as Executor of the John Lee Estate, and for a cause of action against the Defendant, The Lincoln National Life Insurance Company and states to the Court as follows:

1. That the Plaintiff, Vanessa Lee, Individually and as Executor of the John Lee Estate, is a resident of Quasqueton, Buchanan County, Iowa.

2. That at all times relevant hereto, the Defendant, The Lincoln National Life Insurance Company was an insurance corporation, authorized to and doing business in the State of Iowa.

3. The Defendant, The Lincoln National Life Insurance Company sold an Accidental Death Policy to Ashley Industrial Moldings, Inc., to be provided to said Ashley's employees, as a benefit of said employees employment package.

4. That John Lee was an employee of Ashley Industrial Moldings, Inc., at all time relevant hereto, including up to the time of his death

5. That said policy issued by The Lincoln National Life Insurance Company for Accidental Death was in force and effect while John Lee was in the employment of the Ashley Industrial Moldings, Inc.

6. That John Lee was paying premiums for life insurance coverage by The Lincoln National Life Insurance Company in case of his accidental death.

7. That the Plaintiff, Vanessa Lee, Individually, was a named beneficiary of the Accidental Death Policy issued by The Lincoln National Life Insurance Company , to Ashley Industrial Moldings, Inc., of which John Lee was an employee.

8. The Plaintiff Vanessa Lee, as the Executor of the John Lee Estate, also makes claim on behalf of said John Lee Estate.

9. That on or about the 12th day of July, 2015, John Lee was riding his ATV on private property near Quasqueton, Buchanan County, Iowa.

10. That on said date, John Lee's daughter, Jessica Matthews, went looking for him, when he did not return for dinner.

11. That when Jessica Matthews found John Lee, he was lying on the ground next to the ATV, and was unconscious.

12. John Lee was taken by his daughter back to the campsite, and later he was taken to his home. After being home a short time, John Lee was then transferred to the Buchanan County Health Center or hospital.

13. After examination at the Buchanan County Health Care hospital, John Lee was transferred to the University of Iowa Hospitals and Clinics.

14. As a result of the injuries John Lee sustained when he fell, John Lee died on the 19th day of July, 2015, at the University of Iowa Hospitals and Clinics.

15. The death of John Lee on July 19, 2015, was an accidental death.

16. As a result of the death of John Lee on July 19, 2015, Vanessa Lee, as an Individual and as Executor of the John Lee Estate, she made a claim for benefits under an Insurance Policy issued by the Defendant, The Lincoln National Life Insurance Company .

17. A copy of the insurance policy issued by the Defendant, The Lincoln National Life Insurance Company is attached hereto, marked Exhibit A and made a part of this Petition by this reference as though fully set forth hereat

word for word.

18. The Defendant, The Lincoln National Life Insurance Company , sold the policy to and/or through Ashley Industrial Moldings, Inc., located in Oelwein, Fayette County, Iowa.

19. The deceased, John Lee, worked at the Ashley Industrial Moldings, Inc., factory in Oelwein, Fayette County, Iowa, at all time relevant hereto.

20. That the Defendant, The Lincoln National Life Insurance Company has denied paying the benefits under the insurance policy to Vanessa Lee, both as and Individual and as Executor of the John Lee Estate.

21. None of the exceptions contained the policy are applicable to the cause of death of John Lee.

22. The Defendant, The Lincoln National Life Insurance Company has breached the contract, that is attached hereto, marked Exhibit A, by failing to pay the benefits due to the Plaintiff, Vanessa Lee in here appropriate capacity.

23. As a result of the Defendant, The Lincoln National Life Insurance Company breaching the contract, the Plaintiff, Vanessa Lee has sustained injuries and damages.

24. The Plaintiff, Vanessa Lee damages are the face value of the policy that should have been paid. Said amount is $100,000.

25. The Plaintiff, Vanessa Lee has also been damaged by the loss of the use of the money since the date of death of John Lee.

26. That the Plaintiff, Vanessa Lee, is entitled to damages in amount fair and reasonable to compensate her for the injuries she has sustained, for prefiling interest at the statutory contract rate for breach of contract, and for interest on the judgment as provided for by law. The amount of injuries and damages sustained by the Plaintiff, Vanessa Lee, is in excess of $10,000.

27. That the Plaintiff, Vanessa Lee, Individually and as Executor of the John Lee Estate demands judgment against the Defendant, The Lincoln National Life Insurance Company for the injuries Plaintiff sustained as a result of the named Defendant breaching the Accidental Death Insurance Policy.

WHEREFORE, the Plaintiff, Vanessa Lee, Individually and as Executor of the John Lee Estate demands Judgment against the Defendant, The Lincoln National Life Insurance Company for the damages she has sustained as a result of the Defendant's Breach of Contract.

IT IS FURTHER PRAYED that the Plaintiff, Vanessa Lee, Individually and as Executor of the John Lee Estate, have for judgment against the Defendant, The Lincoln National Life

Insurance Company, in an amount reasonable and fair to compensate the Plaintiff for the injuries sustained by the Plaintiff, for interest thereon as provided by statute and for the costs of this action. The fair and reasonable amount is in excess of $10,000.

Respectfully submitted,

Larry F. Woods
Attorney at Law
24 North Frederick Avenue
Oelwein, IA  50662
lfwoods@trxinc.com
Ph. 319-283-3204
ATTORNEY FOR THE PLAINTIFF,
VANESSA LEE, Individually and
as the Executor of the
JOHN LEE ESTATE

Original filed by EDMS with the Fayette Clerk of Court

IN THE DISTRICT COURT OF IOWA, IN AND FOR FAYETTE COUNTY

|  |  |
|---|---|
| VANESSA LEE, Individually as Executor of the JOHN LEE ESTATE <br>      Plaintiff, <br> v. <br><br> THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, <br>     Defendant. | CASE NO. CVCV055206 <br><br> **ACCEPTANCE OF SERVICE OR ORIGINAL NOTICE AND FIRST AMENDED PETITION AT LAW** |

COMES NOW, _____, (NAME) who is the

_____ (OFFICE HELD IN CORPORATION), a

duly authorized offer and employee of the above-named

Defendant, The Lincoln National Life Insurance Company, the

named Defendant in the above-entitled matter, and hereby

acknowledges receipt of an Original Notice, with a copy of

the Petition at Law attached thereto; I, as duly authorized

agent for said named Defendant, The Lincoln National Life

Insurance Company, do hereby accept service of Original

Notice and waive any defects in the manner of service; I

further surrender to the jurisdiction of the District Court

of Iowa, in and for Fayette County, Iowa.

DATED this _____ day of August, 2018.

THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY


By:_____

IN THE DISTRICT COURT OF IOWA, IN AND FOR FAYETTE COUNTY

| | | |
|---|---|---|
| VANESSA LEE, Individually as Executor of the JOHN LEE ESTATE | ) ) ) | CASE NO. CVCV055206 |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORIGINAL NOTICE FOR** |
| | ) ) | **FIRST AMENDED** **PETITION AT LAW** |
| THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, | ) ) | |
| Defendant. | ) | |

TO THE ABOVE-NAMED DEFENDANT: THE LINCOLN NATIONAL LIFE INSURANCE COMPANY

YOU ARE HEREBY NOTIFIED that a Petition has been filed in the office of the Clerk of this Court, naming you as he defendant in the action. A copy of the Petition (any documents filed with it) is attached to this Notice. The attorney for the Plaintiff's is Larry F. Woods, whose address is 24 North Frederick Avenue, Oelwein, IA 50662. That the attorney's telephone number is (319) 283-3204; facsimile number is (319) 283-9193, and e-mail address of lfwoods@trxinc.com

YOU must serve a Motion or Answer within 20 days after service of this Original Notice upon you, and within a reasonable time thereafter, file your Motion or Answer with the Clerk of the Iowa District Court for Fayette County, at the County Courthouse P. O. Box 458 in West Union, Iowa. If you do not, judgment by default may be rendered against you for the relief demanded in the Petition.

If you require the assistance of auxiliary aide or services to participate in court because of admissibility, immediately call your district ADA coordinator at (319) 833-3332. (If you are hearing impaired, call Relay Iowa TY at 1-800-735-2942.)

NOTE: YOU ARE ADVISED TO SEEK LEGAL ADVISE AT ONCE TO PROTECT YOUR INTEREST.

# STATE OF IOWA JUDICIARY

*Case No.* CVCV055206

*County* Fayette

*Case Title* VANESSA LEE V THE LINCOLN MUTUAL INS. CO.

**THIS CASE HAS BEEN FILED IN A COUNTY THAT USES ELECTRONIC FILING.**
Therefore, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless you obtain an exemption from the court, you must file your Appearance and Answer electronically.

You must register through the Iowa Judicial Branch website at http://www.iowacourts.state.ia.us/Efile and obtain a log in and password for the purposes of filing and viewing documents on your case and of receiving service and notices from the court.

**FOR GENERAL RULES AND INFORMATION ON ELECTRONIC FILING, REFER TO THE IOWA COURT RULES CHAPTER 16 PERTAINING TO THE USE OF THE ELECTRONIC DOCUMENT MANAGEMENT SYSTEM:**
http://www.iowacourts.state.ia.us/Efile

**FOR COURT RULES ON PROTECTION OF PERSONAL PRIVACY IN COURT FILINGS, REFER TO DIVISION VI OF IOWA COURT RULES CHAPTER 16:** http://www.iowacourts.state.ia.us/Efile

*Scheduled Hearing:*

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at **(319) 833-3332** . (If you are hearing impaired, call Relay Iowa TTY at **1-800-735-2942**.)

*Date Issued* 07/27/2018 11:40:51 AM



*District Clerk of* Fayette          *County*

/s/ Katherine Gumm

**SECURITY OF INFORMATION**

We have an important responsibility to keep your information safe. We use safeguards to protect your information from unauthorized disclosure. Our employees are authorized to access your information only when they need it to provide you with products, services, or to maintain your accounts. Employees who have access to your personal information are required to keep it confidential. Employees are trained on the importance of data privacy.

Questions about your personal information should be directed to:

> Lincoln Financial Group
> Attn: Enterprise Compliance and Ethics
> Corporate Privacy Office, 7C-01
> 1300 S. Clinton St.
> Fort Wayne, IN 46802

**Please include all policy/contract/account numbers with your correspondence.**

*This information applies to the following Lincoln Financial Group companies:

First Penn-Pacific Life Insurance Company
Lincoln Financial Group Trust Company, LLC
Lincoln Financial Investment Services Corporation
Lincoln Investment Advisors Corporation

Lincoln Life & Annuity Company of New York
Lincoln Retirement Services Company, LLC
Lincoln Variable Insurance Products Trust
The Lincoln National Life Insurance Company

### ADDITIONAL PRIVACY INFORMATION FOR INSURANCE PRODUCT CUSTOMERS

#### CONFIDENTIALITY OF MEDICAL INFORMATION

We understand that you may be especially concerned about the privacy of your medical information. We do not sell or rent your medical information to anyone; nor do we share it with others for marketing purposes. We only use and share your medical information for the purpose of underwriting insurance, administering your policy or claim and other purposes permitted by law, such as disclosure to regulatory authorities or in response to a legal proceeding.

#### MAKING SURE MEDICAL INFORMATION IS ACCURATE

We want to make sure we have accurate information about you. Upon written request we will tell you, within 30 business days, what personal information we have about you. You may see a copy of your personal information in person or receive a copy by mail, whichever you prefer. We will share with you who provided the information. In some cases we may provide your medical information to your personal physician. We will not provide you with information we have collected in connection with, or in anticipation of, a claim or legal proceeding. If you believe that any of our records are not correct, you may write and tell us of any changes you believe should be made. We will respond to your request within 30 business days. A copy of your request will be kept on file with your personal information so anyone reviewing your information in the future will be aware of your request. If we make changes to your records as a result of your request, we will notify you in writing and we will send the updated information, at your request, to any person who may have received the information within the prior two years. We will also send the updated information to any insurance support organization that gave us the information, and any service provider that received the information within the prior 7 years.

Questions about your personal medical information should be directed to:

> Lincoln Financial Group
> Attn: Medical Underwriting
> P.O. Box 21008
> Greensboro, NC 27420-1008

The CONFIDENTIALITY OF MEDICAL INFORMATION and MAKING SURE INFORMATION IS ACCURATE sections of this Notice apply to the following Lincoln Financial Group companies:

First Penn-Pacific Life Insurance Company
Lincoln Life & Annuity Company of New York
The Lincoln National Life Insurance Company

GB06714

Page 2 of 2
6/12

IN THE DISTRICT COURT OF IOWA, IN AND FOR FAYETTE COUNTY

---

VANESSA LEE, Individually ) 
as Executor of the JOHN )    CASE NO. CVCV055206
LEE ESTATE )
      Plaintiff, )    **ACCEPTANCE OF SERVICE**
v. )    **OR ORIGINAL NOTICE AND**
 )    **FIRST AMENDED**
 )    **PETITION AT LAW**
THE LINCOLN NATIONAL LIFE )
INSURANCE COMPANY, )
      Defendant. )

---

COMES NOW, _____, (NAME) who is the

_____ (OFFICE HELD IN CORPORATION), a

duly authorized offer and employee of the above-named

Defendant, The Lincoln National Life Insurance Company, the

named Defendant in the above-entitled matter, and hereby

acknowledges receipt of an Original Notice, with a copy of

the Petition at Law attached thereto; I, as duly authorized

agent for said named Defendant, The Lincoln National Life

Insurance Company, do hereby accept service of Original

Notice and waive any defects in the manner of service; I

further surrender to the jurisdiction of the District Court

of Iowa, in and for Fayette County, Iowa.

DATED this _____ day of August, 2018.

THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY


By:_____

## NOTICE TO POLICYHOLDERS REGARDING
## FILING COMPLAINTS WITH THE DEPARTMENT OF INSURANCE


**Questions regarding your policy or coverage should be directed to:**

> **The Lincoln National Life Insurance Company**
> **800-423-2765**


We want you to know that you may contact the Indiana Department of Insurance if you have a complaint or seek assistance from the governmental agency that regulates insurance. To contact the Department of Insurance, write or call:

> State of Indiana Department of Insurance
> Consumer Services Division
> 311 West Washington Street, Suite 300
> Indianapolis, Indiana 46204

> Consumer Hotline: (800) 622-4461; (317) 232-2395

> Complaints can be filed electronically at www.in.gov/idoi.


IN NOTICE 05 - P/C

17

01/01/14

## SUMMARY OF INDIANA LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION

The Indiana Life and Health Insurance Guaranty Association provides coverage of claims under some types of policies if the insurer becomes impaired or insolvent. COVERAGE MAY NOT BE AVAILABLE UNDER YOUR POLICY. Even if coverage is provided, there are significant limits and exclusions. Coverage is always conditioned on residence in this state. Other conditions may also preclude coverage.

The Indiana Life and Health Insurance Guaranty Association will respond to any questions you may have which are not answered by this document. Your insurer and agent are prohibited by law from using the existence of the association or its coverage to sell you an insurance policy.

You should not rely of availability of coverage under the Indiana Life and Health Insurance Guaranty Association when selecting an insurer.

You may contact the Indiana Life and Health Insurance Guaranty Association as follows:

Indiana Life and Health Insurance Guaranty Association
251 E. Ohio Street, Suite 1070
Indianapolis, IN 46204
(317) 636-8204
www.inlifega.org

You may contact the Indiana Department of Insurance as follows:

Indiana Department of Insurance
311 W. Washington Street
Indianapolis, IN 46204
(317) 232-2385
www.in.gov/idoi

GAN-GRP-IN NOTICE-P/C 07

18

01/01/14

## CERTIFICATE AMENDMENT

TO BE ATTACHED TO THE CERTIFICATE FOR GROUP POLICY NO.: 000010132080

ISSUED TO: Ashley Industrial Moldings, Inc.

Your Certificate is amended by the addition of the following provisions.

### PRIOR INSURANCE CREDIT UPON TRANSFER OF LIFE INSURANCE CARRIERS

This provision prevents loss of life insurance coverage for you, which could otherwise occur solely because of a transfer of insurance carriers. The Policy will provide the following Prior Insurance Credit, when it replaces a prior plan.

"Prior Plan" means a prior carrier's group life insurance policy, which the Policy replaced within 1 day of the prior plan's termination date.

FAILURE TO SATISFY ACTIVE WORK RULE. Subject to payment of premiums, the Policy will provide life coverage if you:
  (1)   were insured under the prior plan on its termination date;
  (2)   were otherwise eligible under the Policy; but were not Actively-At-Work due to Injury or Sickness on its Effective Date;
  (3)   are not entitled to any extension of life insurance under the prior plan; and
  (4)   are not Totally Disabled (as defined in the Extension of Death Benefit section of the Policy) on the date the Policy takes effect.

AMOUNT OF LIFE INSURANCE. Until you satisfy the Policy's Active Work rule, the amount of your group life insurance under the Policy will not exceed the amount for which you were insured under the prior plan on its termination date.

This Amendment takes effect on your effective date of coverage under the Policy. In all other respects, your Certificate remains the same.

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

_Chals A. Brawley_
Officer of the Company

GL1102-AMEND. PC1

19

Prior Ins. Cred. - Life
01/01/14

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 32 of 555    Lincoln/Lee 120

IN THE DISTRICT COURT OF IOWA, IN AND FOR FAYETTE COUNTY

```
--------------------------------------------------------------
VANESSA LEE, Individually      )
as Executor of the JOHN        )     CASE NO. CVCV055206
LEE ESTATE                     )
        Plaintiff,             )
v.                             )
                               )     FIRST AMENDED
                               )     PETITION AT LAW
THE LINCOLN NATIONAL LIFE      )
INSURANCE COMPANY,             )
        Defendant.             )
--------------------------------------------------------------
```

## COUNT I - BREACH OF CONTRACT

COMES NOW the Plaintiff, Vanessa Lee, Individually and as Executor of the John Lee Estate, and for a cause of action against the Defendant, The Lincoln National Life Insurance Company and states to the Court as follows:

1. That the Plaintiff, Vanessa Lee, Individually and as Executor of the John Lee Estate, is a resident of Quasqueton, Buchanan County, Iowa.

2. That at all times relevant hereto, the Defendant, The Lincoln National Life Insurance Company was an insurance corporation, authorized to and doing business in the State of Iowa.

3. The Defendant, The Lincoln National Life Insurance Company sold an Accidental Death Policy to Ashley Industrial Moldings, Inc., to be provided to said Ashley's employees, as a benefit of said employees employment package.

4. That John Lee was an employee of Ashley Industrial Moldings, Inc., at all time relevant hereto, including up to the time of his death

5. That said policy issued by The Lincoln National Life Insurance Company for Accidental Death was in force and effect while John Lee was in the employment of the Ashley Industrial Moldings, Inc.

6. That John Lee was paying premiums for life insurance coverage by The Lincoln National Life Insurance Company in case of his accidental death.

7. That the Plaintiff, Vanessa Lee, Individually, was a named beneficiary of the Accidental Death Policy issued by The Lincoln National Life Insurance Company , to Ashley Industrial Moldings, Inc., of which John Lee was an employee.

8. The Plaintiff Vanessa Lee, as the Executor of the John Lee Estate, also makes claim on behalf of said John Lee Estate.

9. That on or about the 12th day of July, 2015, John Lee was riding his ATV on private property near Quasqueton, Buchanan County, Iowa.

10. That on said date, John Lee's daughter, Jessica Matthews, went looking for him, when he did not return for dinner.

11. That when Jessica Matthews found John Lee, he was lying on the ground next to the ATV, and was unconscious.

12. John Lee was taken by his daughter back to the campsite, and later he was taken to his home. After being home a short time, John Lee was then transferred to the Buchanan County Health Center or hospital.

13. After examination at the Buchanan County Health Care hospital, John Lee was transferred to the University of Iowa Hospitals and Clinics.

14. As a result of the injuries John Lee sustained when he fell, John Lee died on the 19th day of July, 2015, at the University of Iowa Hospitals and Clinics.

15. The death of John Lee on July 19, 2015, was an accidental death.

16. As a result of the death of John Lee on July 19, 2015, Vanessa Lee, as an Individual and as Executor of the John Lee Estate, she made a claim for benefits under an Insurance Policy issued by the Defendant, The Lincoln National Life Insurance Company .

17. A copy of the insurance policy issued by the Defendant, The Lincoln National Life Insurance Company is attached hereto, marked Exhibit A and made a part of this Petition by this reference as though fully set forth hereat

word for word.

18. The Defendant, The Lincoln National Life Insurance Company , sold the policy to and/or through Ashley Industrial Moldings, Inc., located in Oelwein, Fayette County, Iowa.

19. The deceased, John Lee, worked at the Ashley Industrial Moldings, Inc., factory in Oelwein, Fayette County, Iowa, at all time relevant hereto.

20. That the Defendant, The Lincoln National Life Insurance Company has denied paying the benefits under the insurance policy to Vanessa Lee, both as and Individual and as Executor of the John Lee Estate.

21. None of the exceptions contained the policy are applicable to the cause of death of John Lee.

22. The Defendant, The Lincoln National Life Insurance Company has breached the contract, that is attached hereto, marked Exhibit A, by failing to pay the benefits due to the Plaintiff, Vanessa Lee in here appropriate capacity.

23. As a result of the Defendant, The Lincoln National Life Insurance Company breaching the contract, the Plaintiff, Vanessa Lee has sustained injuries and damages.

24. The Plaintiff, Vanessa Lee damages are the face value of the policy that should have been paid. Said amount is $100,000.

25. The Plaintiff, Vanessa Lee has also been damaged by the loss of the use of the money since the date of death of John Lee.

26. That the Plaintiff, Vanessa Lee, is entitled to damages in amount fair and reasonable to compensate her for the injuries she has sustained, for prefiling interest at the statutory contract rate for breach of contract, and for interest on the judgment as provided for by law. The amount of injuries and damages sustained by the Plaintiff, Vanessa Lee, is in excess of $10,000.

27. That the Plaintiff, Vanessa Lee, Individually and as Executor of the John Lee Estate demands judgment against the Defendant, The Lincoln National Life Insurance Company for the injuries Plaintiff sustained as a result of the named Defendant breaching the Accidental Death Insurance Policy.

WHEREFORE, the Plaintiff, Vanessa Lee, Individually and as Executor of the John Lee Estate demands Judgment against the Defendant, The Lincoln National Life Insurance Company for the damages she has sustained as a result of the Defendant's Breach of Contract.

IT IS FURTHER PRAYED that the Plaintiff, Vanessa Lee, Individually and as Executor of the John Lee Estate, have for judgment against the Defendant, The Lincoln National Life

Insurance Company, in an amount reasonable and fair to compensate the Plaintiff for the injuries sustained by the Plaintiff, for interest thereon as provided by statute and for the costs of this action. The fair and reasonable amount is in excess of $10,000.

Respectfully submitted,

Larry R. Woods
Attorney at Law
24 North Frederick Avenue
Oelwein, IA 50662
lfwoods@trxinc.com
Ph. 319-283-3204
ATTORNEY FOR THE PLAINTIFF,
VANESSA LEE, Individually and
as the Executor of the
JOHN LEE ESTATE

Original filed by EDMS with the Fayette Clerk of Court

# The Lincoln National Life Insurance Company

A Stock Company   Home Office Location: Fort Wayne, Indiana
Group Insurance Service Office:  8801 Indian Hills Drive, Omaha, NE 68114-4066 (402) 361-7300

CERTIFIES THAT Group Policy No.   GL 000010132080   has been issued to
Ashley Industrial Moldings, Inc.
(The Group Policyholder)

The Issue Date of the Policy is January 1, 2011.

The insurance is effective only if the Employee is eligible for insurance and becomes and remains insured as provided in the Group Policy.

Certificate of Insurance for Class 1

{INSURED}
{Schedule of Insurance}
{Coverage}                                                {Insurance Amount}
{BENEFIT_1}
{BENEFIT_2}
{BENEFIT_3}
{BENEFIT_4}
{BENEFIT_5}
{BENEFIT_6}
{BENEFIT_7}
{BENEFIT_8}
{BENEFIT_9}
{BENEFIT_10}

You are entitled to the benefits described in this Certificate if you are eligible for insurance under the provisions of the Policy. This Certificate replaces any other certificates for the benefits described inside. As a Certificate of Insurance, it is not a contract of insurance; it only summarizes the provisions of the Policy and is subject to the Policy's terms.

*Dennis R Glass*
President

EXHIBIT A

## CERTIFICATE OF GROUP LIFE INSURANCE

GL1102 FACE PAGE

{LFGLOGO}        {USER}        {CERT_ID}        01/01/14

**Ashley Industrial Moldings, Inc.**
**000010132080**

## SCHEDULE OF INSURANCE

### CLASS 1

All Full-Time Salaried Employees

WAITING PERIOD:    90 days of continuous Active Work  (For date insurance begins, refer to "Effective Dates of Coverages" section)

MINIMUM HOURS:    32 hours per week

### LIFE AND AD&D INSURANCE

| Amount of Personal Life Insurance | AD&D Insurance Principal Sum |
|---|---|
| One times Basic Annual Earnings, rounded to the next higher $1,000; subject to a minimum of $10,000 and a maximum of $200,000 | Two times Basic Annual Earnings, rounded to the next higher $1,000; subject to a minimum of $10,000 and a maximum of $200,000 |

Personal Life and AD&D Insurance will be reduced as follows:
- At age 65, benefits will reduce by 33% of the original amount:
- At age 70, benefits will reduce an additional 22% of the original amount.
Benefits will terminate when you retire.

If you first enroll for Personal Life and AD&D Insurance at age 65 or older, the above age reductions will apply to:
- Any Guarantee Issue Amount available without evidence of insurability; and
- The maximum amount of insurance for which you are eligible.

**(Effective July 1, 2011) Basic Annual Earnings** means your annual base salary or annualized hourly pay from the Employer before taxes on the Determination Date.  The **"Determination Date"** is the last day worked just prior to the loss.

It does **not** include commissions, bonuses, overtime pay, or any other extra compensation.  It does not include income from a source other than the Employer.  It will not exceed the amount shown in the Employer's financial records or the amount for which premium has been paid; whichever is less.

GL1102-SB

01/01/14

# TABLE OF CONTENTS

Amount of Insurance ................................................................................3

Definitions ...........................................................................................3

Eligibility ............................................................................................4

Effective Dates of Coverages .....................................................................4

Termination of Coverage .........................................................................4

Death Benefit ........................................................................................5

Beneficiary ...........................................................................................5

Assignments .........................................................................................6

Extension of Death Benefit .......................................................................7

Accelerated Death Benefit .......................................................................8

Conversion Privilege ..............................................................................10

Accidental Death and Dismemberment Insurance ..........................................11

Safe Driver Benefit ...............................................................................13

Claims Procedures for Life or Accidental Death and Dismemberment Benefits .......14

Notice ...............................................................................................17

Prior Insurance Credit Provision ...............................................................19

GL1102-TOC

01/01/14

## AMOUNT OF INSURANCE

The amount of your insurance is determined by the Schedule of Insurance in the Policy. The initial amount of coverage is the amount which applies to your class on the day your coverage takes effect. You may become eligible for increases in the amount of insurance in accord with the Schedule of Insurance. Any such increase will take effect on the latest of:

    (1)    the first of the Insurance Month which coincides with or follows the date on which you become eligible for the increase; provided you are Actively at Work on that day;

    (2)    the day you resume Active Work, if you are not Actively at Work on the day the increase would otherwise take effect; or

    (3)    the day any required evidence of insurability is approved by the Company.

Any decrease will take effect on the day of the change; whether or not you are Actively at Work.

## DEFINITIONS

ACTIVE WORK or ACTIVELY AT WORK means an employee's full-time performance of all customary duties of his or her occupation at:

    (1)    the EMPLOYER'S place of business; or

    (2)    any other business location where the employee is required to travel.

Unless disabled on the prior workday or on the day of absence, an employee will be considered Actively at Work on the following days:

    (1)    a Saturday, Sunday or holiday which is not a scheduled workday;

    (2)    a paid vacation day, or other scheduled or unscheduled non-workday; or

    (3)    an excused or emergency leave of absence (except a medical leave).

COMPANY means The Lincoln National Life Insurance Company, an Indiana corporation; whose Group Insurance Service Office address is 8801 Indian Hills Drive, Omaha, Nebraska 68114-4066.

DAY or DATE means at 12:01 A.M., Standard Time, at the Group Policyholder's place of business; when used with regard to eligibility dates and effective dates. It means 12:00 midnight, Standard Time, at the same place; when used with regard to termination dates.

EMPLOYER means the Group Policyholder or the Participating Employer named on the Face Page.

FULL-TIME EMPLOYEE means an employee of the EMPLOYER:

    (1)    whose employment with the EMPLOYER is the employee's principal occupation;

    (2)    who is not a temporary or seasonal employee; and

    (3)    who is regularly scheduled to work at such occupation at least the number of hours as shown in the Schedule of Insurance.

INSURANCE MONTH means:

    (1)    that period of time beginning on the Issue Date of the Policy and extending for one month; and

    (2)    each subsequent month beginning on the same day after that.

PERSONAL INSURANCE means the insurance provided by the Policy on Insured Persons.

PHYSICIAN means a licensed practitioner of the healing arts other than the Insured Person or a relative of the Insured Person.

POLICY means the Group Insurance Policy issued by the Company to the Group Policyholder. A copy of the Policy may be examined upon request at the Group Insurance Service Office of the Group Policyholder.

GL1102-1 91

3

(REV)
01/01/14

## ELIGIBILITY

If you are a Full-Time Employee and a member of an employee class shown in the Schedule of Insurance; then you will become eligible for the coverage provided by the Policy on the later of:

    (1)   the Policy's date of issue; or

    (2)   the day you complete the Waiting Period.

WAITING PERIOD. (See Schedule of Insurance).

## EFFECTIVE DATES OF COVERAGES

Your insurance is effective on the latest of:

    (1)   the day you become eligible for the coverage;

    (2)   the day you resume Active Work, if you are not Actively at Work on the day you become eligible;

    (3)   the day you make written application for coverage; and sign:

        (a)   a payroll deduction order, if you pay any part of the premium; or

        (b)   an order to pay premiums from your Section 125 Plan account, if Employer contributions are paid through a Section 125 Plan; or

    (4)   the day the Company approves your coverage, if evidence of insurability is required.

Evidence of insurability is required if:

    (1)   you apply for coverage more than 31 days after you become eligible; or

    (2)   you make written application to re-enroll for coverage after you have requested:

        (a)   to cancel your coverage;

        (b)   to stop payroll deductions for the coverage; or

        (c)   to stop premium payments from your Section 125 Plan account.

EXCEPTION. If your coverage terminates due to an approved leave of absence or a military leave, any Waiting Period or evidence of insurability requirement will be waived upon your return; provided:

    (1)   you return within six months after the leave begins;

    (2)   you apply or are enrolled within 31 days after resuming Active Work; and

    (3)   the reinstated amount of insurance does not exceed the amount which terminated.

## TERMINATION OF COVERAGE

Your coverage terminates on the earliest of:

    (1)   the day the Policy terminates;

    (2)   the last day of the Insurance Month in which you request termination;

    (3)   the last day of the period for which the premium for your insurance has been paid;

    (4)   the day you cease to be a member of an employee class shown in the Schedule of Insurance;

    (5)   with respect to any particular insurance benefit, the day the part of the Policy providing that benefit terminates;

    (6)   the day your employment with the Employer terminates; or

    (7)   the day you enter the armed services of any state or country on active duty; except for duty of 30 days or less for training in the Reserves or National Guard. (If you send proof of military service, the Company will refund any unearned premium.)

Ceasing Active Work terminates your eligibility. However, it may be possible to continue all or part of your insurance during a temporary layoff, leave of absence or military leave; or while you are unable to work due to sickness or injury. The conditions concerning such a continuance may be found in the Policy. See your Employer for this information.

GL1102-2 93

(FMLA)
01/01/14

E-FILED 2018 JUL 19 11:24 AM FAYETTE - CLERK OF DISTRICT COURT

## DEATH BENEFIT

Upon receipt of satisfactory proof of your death, the Company will pay a death benefit equal to the amount of Personal Life Insurance in effect on the date of your death. The benefit will be paid in accord with the Beneficiary section. Arrangements may be made to have this death benefit paid in installments.

## BENEFICIARY

Your Beneficiary is the person or persons named on your enrollment card. The Beneficiary may be changed in accord with the terms of the Policy. If you have not named a Beneficiary, or if no named Beneficiary is living when you die; then the death benefit will be paid to your:

(1) surviving spouse; or, if none
(2) surviving child or children in equal shares; or, if none
(3) surviving parent or parents in equal shares; or, if none
(4) surviving brothers and sisters in equal shares; or, if none
(5) estate, or in accord with the Facility of Payment section of the Policy.

GL1102-3.0A 96

5

Pref. Bene.-No Ext.
01/01/14

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 44 of 555   Lincoln/Lee 132

## ASSIGNMENTS

Personal Life Insurance and Accidental Death Insurance may be assigned. The assignments allowed under the Policy are absolute assignments and funeral assignments as described below.

No assignment will be binding on the Company unless and until:
    (1)   it is made on a form furnished by the Company;
    (2)   the original is completed and filed with the Company at its Group Insurance Service Office; and
    (3)   it is approved by the Company.
The Company and the Employer do not assume responsibility for the validity or effect of an assignment.

ABSOLUTE ASSIGNMENTS. You may make an irrevocable assignment of your Personal Life Insurance and Accidental Death Insurance as a gift (with no consideration), providing you have the legal capacity and the mental capacity to do so. It may be made to a trust or to one or more of your relatives, their estates, or to a trustee of a trust under which one of the relatives is a beneficiary.

The term "relatives" includes, but is not limited to, your spouse, parents, grandparents, aunts, uncles, siblings, children, adopted children, stepchildren, and grandchildren.

In some states, community property is an established form of ownership that must be considered in making an assignment. If you make an absolute assignment to two or more assignees, such assignees will be joint owners with the right of survivorship between them. You should consult with your own legal advisor before making an assignment.

Once the assignment has been recorded by the Company, you can no longer change the beneficiary and cannot apply for conversion. Only the assignee can change the beneficiary designation if the previous designation is revocable. An assignment will have no effect on a prior irrevocable beneficiary designation. Only the assignee can apply for conversion but only when the Conversion Privilege provision would have been available to you in the absence of the assignment under the Policy.

An absolute assignment cannot be used as a collateral assignment.

FUNERAL ASSIGNMENTS. Upon your death, the beneficiary may assign the Personal Life Insurance benefit and Accidental Death Insurance benefit to a funeral home for payment of burial expenses. After payment has been made for the burial expenses to the assigned funeral home, the remaining death benefit is then paid in accord with the Beneficiary and Settlement Options sections of the Policy.

GL1102-3.0C 01

6

01/01/14

## EXTENSION OF DEATH BENEFIT IF YOU BECOME TOTALLY DISABLED

Your life insurance will be continued, **without payment of premiums**, if:
  (1)   you become Totally Disabled while insured and before reaching age 60;
  (2)   you remain Totally Disabled for at least 6 months in a row; and
  (3)   you submit satisfactory proof within the 7th through 12th months of disability; or:
      (a)   as soon as reasonably possible after that; but
      (b)   not later than the 24th month of disability, unless you were legally incapacitated.

PREMIUM PAYMENT.  Premium payments must continue until you are approved for this benefit, or the Policy terminates, if earlier.  Upon receipt of satisfactory proof, the Company will refund up to 12 months' premium paid for your life insurance, from your 1st day of Total Disability.

DEFINITION.  For this benefit, Total Disability or Totally Disabled means you:
  (1)   are unable, due to sickness or injury, to engage in any employment or occupation for which you are or become qualified by reason of education, training, or experience; and
  (2)   are not engaging in any gainful employment or occupation.

AMOUNT CONTINUED.   The amount of Personal Life Insurance and any Dependent Life Insurance continued will be subject to the reductions and terminations in effect under the Policy on the day your Total Disability begins.  Any Accidental Death and Dismemberment Benefit will not be continued.

ADDITIONAL PROOF.  From time to time, you must submit proof that your Total Disability is continuing.  Proof will be at your expense; unless the Company requests to have you examined by a Physician of its choice.  If you die after submitting proof, further proof must be submitted to the Company showing that you remained continuously and Totally Disabled until death.  If you die within 12 months after Total Disability begins, but before submitting proof; then your death benefit will still be paid under the terms of the Policy.  But the Company must first receive satisfactory proof of your continuous Total Disability, from your last day of Active Work until your date of death.

TERMINATION.  Any life insurance continued under this section will terminate automatically on:
  (1)   the day you cease to be Totally Disabled;
  (2)   the day you fail to take a required medical examination;
  (3)   the 60th day after the Company mails a request for additional proof, if it is not given;
  (4)   the effective date of your individual conversion policy, with respect to any amount of life insurance converted in accord with the Conversion Privilege section; or
  (5)   the day you reach Social Security Normal Retirement Age (SSNRA), as shown in the Schedule of Insurance (whichever occurs first).

If your Total Disability ends, and you **do not return** to a class eligible for Policy coverage; then you may exercise the Conversion Privilege.  If your Total Disability ends, and you **do return** to an eligible class; then your Policy coverage will resume when premium payments are resumed, and any conversion policy is surrendered as provided in the Policy.

GL1102-3.1 97

7

Ext. to SSNRA
01/01/14

## ACCELERATED DEATH BENEFIT

BENEFIT. The Accelerated Death Benefit is an advance payment of part of your Personal Life Insurance. It may be paid to you, in a lump sum, once during your lifetime.

To qualify, you must:
(1)   have satisfied the Active Work requirement under the Policy;
(2)   have been insured under the Policy:
    (a)   on the date of an injury which results in a Terminal condition; or
    (b)   for 30 days before being diagnosed Terminal as a result of sickness; and
(3)   have at least $2,000 of Personal Life Insurance under the Policy on the day before the Accelerated Death Benefit is paid.

Receiving the Accelerated Death Benefit will reduce the Remaining Life Insurance and the Death Benefit payable at death, as shown on the next page.

"Claimant," as used in this section, means the Terminal Insured Person for whom the Accelerated Death Benefit is requested.

"Terminal" means you have a medical condition which is expected to result in death within 12 months, despite appropriate medical treatment.

APPLYING FOR THE BENEFIT. To withdraw the Accelerated Death Benefit, you (or your legal representative) must send the Company:
(1)   written election of the Accelerated Death Benefit, on forms supplied by the Company; and
(2)   satisfactory proof that the Claimant is Terminal, including a Physician's written statement.

The Company reserves the right to decide whether such proof is satisfactory.

Before paying an Accelerated Death Benefit, the Company must also receive the written consent of any irrevocable beneficiary, assignee or bankruptcy court with an interest in the benefit. (See Limitations 3, 4, and 5.)

**NOTE: THIS IS NOT A LONG-TERM CARE POLICY. RECEIVING THIS ACCELERATED DEATH BENEFIT WILL REDUCE THE BENEFIT PAYABLE AT DEATH. ANY AMOUNT WITHDRAWN MAY BE TAXABLE INCOME, SO YOU SHOULD CONSULT A TAX ADVISOR BEFORE APPLYING FOR THIS BENEFIT.**

AMOUNT OF THE BENEFIT. You may elect to withdraw an Accelerated Death Benefit in any $1,000 increment; subject to:
(1)   a minimum of $1,000 or 10% of the Claimant's amount of Life Insurance (whichever is greater); and
(2)   a maximum of $250,000 or 75% of the Claimant's amount of Life Insurance (whichever is less).

To determine the Accelerated Death Benefit, the Company will use the lesser of A or B below:
A.   the Claimant's amount of Life Insurance which is in force on the day before the Accelerated Death Benefit is paid; or
B.   the Claimant's amount of Life Insurance which would be in force 12 months after that date; if the coverage is scheduled to reduce, due to age, within 12 months after the Accelerated Death Benefit is paid.

GL1102-3.8 01 DAY

8

ADB-DEP.
01/01/14

ADMINISTRATIVE CHARGE: NONE

WITHDRAWAL FEE: NONE

EFFECT ON AMOUNT OF LIFE INSURANCE. "Remaining Life Insurance" means the amount of Life Insurance which remains in force on the Claimant's life after an Accelerated Death Benefit is paid. The Remaining Life Insurance will equal:
  (1)   the Claimant's amount of Life Insurance which was used to determine the Accelerated Death Benefit (A or B above); minus
  (2)   any percentage by which the Claimant's coverage is scheduled to reduce, due to age; if the reduction occurs more than 12 months after the Accelerated Death Benefit is paid, and while he or she is still living; minus
  (3)   the amount of the Accelerated Death Benefit withdrawn.

PREMIUM: There is no additional charge for this benefit. Continuation of the Remaining Life Insurance will be subject to timely payment of the premium for the reduced amount; unless you qualify for waiver of premium under the Policy's Extension of Death Benefit provision, if included.

CONDITIONS. If the Claimant exercises the Conversion Privilege after an Accelerated Death Benefit is paid, the amount of the conversion policy will not exceed the amount of his or her Remaining Life Insurance. If the Claimant has Accidental Death and Dismemberment benefits under the Policy, the Principal Sum will not be affected by the payment of an Accelerated Death Benefit.

EFFECT ON DEATH BENEFIT. When the Claimant dies after an Accelerated Death Benefit is paid, the amount of Remaining Life Insurance in force on the date of death will be paid as a Death Benefit. Your Death Benefit will be paid in accord with the Beneficiary section of the Policy. If the Claimant dies after application for an Accelerated Death Benefit has been made, but before the Company has made payment; then the request will be void and no Accelerated Death Benefit will be paid. The amount of Life Insurance in force on the date of death will be paid in accord with Policy provisions.

EFFECT ON TAXES AND GOVERNMENT BENEFITS. Any Accelerated Death Benefit amount withdrawn may be taxable income to you. Receipt of the Accelerated Death Benefit may also affect the Claimant's eligibility for Medicaid, Supplemental Security Income and other government benefits. The Claimant should consult his or her own tax and legal advisor before applying for an Accelerated Death Benefit. The Company is not responsible for any tax owed or government benefit denied, as a result of the Accelerated Death Benefit payment.

LIMITATIONS. No Accelerated Death Benefit will be paid:
  (1)   if any required premium is due and unpaid;
  (2)   on any conversion policy purchased in accord with the Conversion Privilege;
  (3)   without the written approval of the bankruptcy court, if you have filed for bankruptcy;
  (4)   without the written consent of the beneficiary, if you have named an irrevocable beneficiary;
  (5)   without the written consent of the assignee, if you have assigned your rights under the Policy;
  (6)   if any part of the Life Insurance must be paid to your child, spouse or former spouse; pursuant to a legal separation agreement, divorce decree, child support order or other court order;
  (7)   if the Claimant is Terminal due to a suicide attempt, while sane or insane; or due to an intentionally self-inflicted injury;
  (8)   if a government agency requires you or the Claimant to use the Accelerated Death Benefit to apply for, receive or continue a government benefit or entitlement; or
  (9)   if an Accelerated Death Benefit has been previously paid for the Claimant under the Policy.

GL1102-3.8 01 DAY

9

ADB-DEP.
01/01/14

## CONVERSION PRIVILEGE

If your insurance or insurance on a Dependent terminates for any reason except:
  (1)   termination or amendment of the Policy; or
  (2)   your request for:
        (a)   termination of insurance; or
        (b)   cancellation of your payroll deductions,
an individual life policy, known as a conversion policy, may be purchased without evidence of insurability.

To purchase a conversion policy, application and payment of the first premium must be made within 31 days after the life insurance is terminated.

A conversion policy will:
  (1)   be in an amount not to exceed the amount of life insurance which was terminated; less the amount of any group life insurance for which the person becomes eligible within 31 days after insurance terminates;
  (2)   be on any form (except term) then issued by the Company at the age and amount for which application is made;
  (3)   be issued at the person's age at nearest birthday;
  (4)   be issued without disability or other supplemental benefits; and
  (5)   require premiums based on the class of risk to which the person then belongs.

A conversion policy also may be purchased if:
  (1)   all or part of your insurance or insurance on a Dependent terminates due to amendment or termination of the Policy; and
  (2)   the person applying for the conversion policy has been covered continuously under the Policy for at least 5 years.

The amount of the conversion policy may not exceed the lesser of:
  (1)   $10,000; or
  (2)   the amount of life insurance which terminates, less the amount of any group life insurance for which the person becomes eligible within 31 days after the termination.

The conversion policy will take effect on the later of:
  (1)   its date of issue; or
  (2)   31 days after the date the insurance terminated.

If death occurs during the 31 day conversion period, the Company will pay the life insurance which could have been converted even if no one applied for the conversion policy.

When your insurance terminates, written notice of your right to convert will be given to you.

If written notice is not given to you at least 15 days before the end of the 31 day conversion period, an additional period in which to convert will be granted. Any such extension of the conversion period will expire on the earliest of:
  (1)   15 days after you are given the written notice; or
  (2)   60 days after the end of the 31 day conversion period, even if you are never given such notice.

No death benefit will be payable under the Policy after the 31 day conversion period has expired, even though the right to convert may be extended.

GL1102-4 IN

DEP. - $10,000
01/01/14

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

**DEATH OR DISMEMBERMENT BENEFIT FOR AN INSURED PERSON.** The Company will pay the benefit listed below, if:

    (1)   you sustain an accidental bodily injury while insured under this provision; and

    (2)   that injury directly causes one of the following losses within 365 days after the date of the accident.

The loss must result directly from the injury and from no other causes.

| LOSS | BENEFIT FOR COMMON CARRIER ACCIDENT | BENEFIT FOR OTHER COVERED ACCIDENT |
|---|---|---|
| Loss of Life | 2 Times Principal Sum | Principal Sum |
| Loss of One Member (Hand, Foot or Eye) | Principal Sum | 1/2 Principal Sum |
| Loss of Two or More Members | 2 Times Principal Sum | Principal Sum |

The Principal Sum for your class is shown in the Schedule of Insurance.

**MAXIMUM PER PERSON.** If you sustain more than one loss resulting from the same accident, the benefit:

    (1)   will be the one largest amount listed;

    (2)   will not exceed two times the Principal Sum for all of your combined losses resulting from a Common Carrier Accident; and

    (3)   will not exceed the Principal Sum for all of your combined losses resulting from any other covered accident.

**TO WHOM PAYABLE.** Benefits for your loss of life will be paid in accord with the Beneficiary section. All other benefits will be paid to you.

**LIMITATIONS.** Benefits are not payable for any loss to which a contributing cause is:

    (1)   intentional self-inflicted injury or self-destruction;

    (2)   disease, bodily or mental infirmity, or medical or surgical treatment of these;

    (3)   participation in a riot;

    (4)   duty as a member of any military, naval or air force;

    (5)   war or any act of war, declared or undeclared;

    (6)   participation in the commission of a felony;

    (7)   voluntary use of drugs; except when prescribed by a Physician;

    (8)   travel or flight in any aircraft, including balloons and gliders; except as a fare paying passenger on a regularly scheduled flight; or

    (9)   driving a vehicle while intoxicated.

GL1102-6.3A 01 IN

11

COMMON CARRIER
01/01/14

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE
### CONTINUED

### DEFINITIONS.

"Beneficiary" means the person(s) named on your enrollment form. You may change the Beneficiary by filing a written notice of the change with the Company at its Group Insurance Service Office.

"Common Carrier Accident" means a covered accidental bodily injury, which is sustained while riding as a fare paying passenger (not a pilot, operator or crew member) in or on, boarding or getting off from a Common Carrier

"Common Carrier" means any land, air or water conveyance operated under a license to transport passengers for hire.

"Intoxicated" shall be defined by the jurisdiction where the accident occurs. The exclusion will apply whether or not the driver is convicted.

"Loss of a Member" includes the following:
   (1)   "Loss of Hand or Foot," means complete severance through or above the wrist or ankle joint.
   (2)   "Loss of an Eye," means total and irrevocable loss of sight in that eye.

GL1102-6.3A 01 IN

COMMON CARRIER
01/01/14

## SAFE DRIVER BENEFIT

BENEFIT. If you die as a direct result of a covered auto accident, for which Accidental Death and Dismemberment Benefits are payable; then:

    (1)   an additional Seat Belt Benefit will be payable, if you were wearing a properly fastened seat belt at the time of the accident; and

    (2)   an additional Air Bag Benefit will be payable, if the auto was equipped with air bag(s).

The Seat Belt Benefit equals $10,000 or 10% of the Principal Sum, whichever is less; and the Air Bag Benefit equals $10,000 or 10% of the Principal Sum, whichever is less. The Seat Belt Benefit and the Air Bag Benefit will not be less than $1,000. The Principal Sum is the amount payable because of the Insured Person's accidental death.

A copy of the police report must be submitted with the claim. The position of the seat belt or presence of an air bag must be certified by:

    (1)   the official accident report; or

    (2)   the coroner, traffic officer or other investigating officer.

Upon receipt of satisfactory written proof, the additional benefit will be paid in accord with the Beneficiary section.

DEFINITIONS. As used in this provision:

"Auto" means a 4-wheel passenger car, station wagon, jeep, pick-up truck or van-type car. It must be licensed for use on public highways. It includes a car owned or leased by the Employer.

"Intoxicated," "Impaired," or "Under the Influence of Drugs" shall be defined as by the jurisdiction where the accident occurs.

"Seat Belt" means a properly installed:

    (1)   seat belt or lap and shoulder restraint; or

    (2)   other restraint approved by the National Highway Traffic Safety Administration.

LIMITATIONS. Safe Driver Benefits will not be paid if:

    (1)   the Accidental Death and Dismemberment Benefit is not paid under the Policy for your death; or

    (2)   at the time of the accident, you or any other person who was driving the auto in which you were traveling:

        (a)   was driving without a valid drivers' license;

        (b)   was driving in excess of the legal speed limit; or

        (c)   was driving while intoxicated, impaired, or under the influence of drugs (except for drugs taken as prescribed by a Physician for the driver's use).

    The above limitations will apply, whether or not the driver is convicted.

GL1102-6.15A

13

Seat Belt & Air Bag
01/01/14



## LINCOLN FINANCIAL GROUP® PRIVACY PRACTICES NOTICE

The Lincoln Financial Group companies* are committed to protecting your privacy. To provide the products and services you expect from a financial services leader, we must collect personal information about you. **We do not sell your personal information to third parties.** We share your personal information with third parties as necessary to provide you with the products or services you request and to administer your business with us. This Notice describes our current privacy practices. While your relationship with us continues, we will update and send our Privacy Practices Notice as required by law. Even after that relationship ends, we will continue to protect your personal information. **You do not need to take any action because of this Notice, but you do have certain rights as described below.**

## INFORMATION WE MAY COLLECT AND USE

We collect personal information about you to help us identify you as our customer or our former customer; to process your requests and transactions; to offer investment or insurance services to you; to pay your claim; or to tell you about our products or services we believe you may want and use. The type of personal information we collect depends on the products or services you request and may include the following:

- **Information from you:** When you submit your application or other forms, you give us information such as your name, address, Social Security number; and your financial, health, and employment history.

- **Information about your transactions.** We keep information about your transactions with us, such as the products you buy from us; the amount you paid for those products; your account balances; and your payment history.

- **Information from outside our family of companies:** If you are purchasing insurance products, we may collect information from consumer reporting agencies such as your credit history; credit scores; and driving and employment records. With your authorization, we may also collect information, such as medical information from other individuals or businesses.

- **Information from your employer:** If your employer purchases group products from us, we may obtain information about you from your employer in order to enroll you in the plan.

## HOW WE USE YOUR PERSONAL INFORMATION

We may share your personal information within our companies and with certain service providers. They use this information to process transactions you have requested; provide customer service; and inform you of products or services we offer that you may find useful. Our service providers may or may not be affiliated with us. They include financial service providers (for example, third party administrators; broker-dealers; insurance agents and brokers, registered representatives; reinsurers and other financial services companies with whom we have joint marketing agreements). Our service providers also include non-financial companies and individuals (for example, consultants; vendors; and companies that perform marketing services on our behalf). Information we obtain from a report prepared by a service provider may be kept by the service provider and shared with other persons; however, we require our service providers to protect your personal information and to use or disclose it only for the work they are performing for us, or as permitted by law.

When you apply for one of our products, we may share information about your application with credit bureaus. We also may provide information to group policy owners, regulatory authorities and law enforcement officials and to others when we believe in good faith that the law requires disclosure. In the event of a sale of all or part of our businesses, we may share customer information as part of the sale. **We do not sell or share your information with outside marketers who may want to offer you their own products and services; nor do we share information we receive about you from a consumer reporting agency. You do not need to take any action for this benefit.**

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

GB06714

## SECURITY OF INFORMATION

We have an important responsibility to keep your information safe. We use safeguards to protect your information from unauthorized disclosure. Our employees are authorized to access your information only when they need it to provide you with products, services, or to maintain your accounts. Employees who have access to your personal information are required to keep it confidential. Employees are trained on the importance of data privacy.

Questions about your personal information should be directed to:

> Lincoln Financial Group
> Attn: Enterprise Compliance and Ethics
> Corporate Privacy Office, 7C-01
> 1300 S. Clinton St.
> Fort Wayne, IN 46802

**Please include all policy/contract/account numbers with your correspondence.**

*This information applies to the following Lincoln Financial Group companies:

| | |
|---|---|
| First Penn-Pacific Life Insurance Company | Lincoln Life & Annuity Company of New York |
| Lincoln Financial Group Trust Company, LLC | Lincoln Retirement Services Company, LLC |
| Lincoln Financial Investment Services Corporation | Lincoln Variable Insurance Products Trust |
| Lincoln Investment Advisors Corporation | The Lincoln National Life Insurance Company |

## *ADDITIONAL PRIVACY INFORMATION FOR INSURANCE PRODUCT CUSTOMERS*

### CONFIDENTIALITY OF MEDICAL INFORMATION

We understand that you may be especially concerned about the privacy of your medical information. We do not sell or rent your medical information to anyone; nor do we share it with others for marketing purposes. We only use and share your medical information for the purpose of underwriting insurance, administering your policy or claim and other purposes permitted by law, such as disclosure to regulatory authorities or in response to a legal proceeding.

### MAKING SURE MEDICAL INFORMATION IS ACCURATE

We want to make sure we have accurate information about you. Upon written request we will tell you, within 30 business days, what personal information we have about you. You may see a copy of your personal information in person or receive a copy by mail, whichever you prefer. We will share with you who provided the information. In some cases we may provide your medical information to your personal physician. We will not provide you with information we have collected in connection with, or in anticipation of, a claim or legal proceeding. If you believe that any of our records are not correct, you may write and tell us of any changes you believe should be made. We will respond to your request within 30 business days. A copy of your request will be kept on file with your personal information so anyone reviewing your information in the future will be aware of your request. If we make changes to your records as a result of your request, we will notify you in writing and we will send the updated information, at your request, to any person who may have received the information within the prior two years. We will also send the updated information to any insurance support organization that gave us the information, and any service provider that received the information within the prior 7 years.

Questions about your personal medical information should be directed to:

> Lincoln Financial Group
> Attn: Medical Underwriting
> P.O. Box 21008
> Greensboro, NC 27420-1008

The CONFIDENTIALITY OF MEDICAL INFORMATION and MAKING SURE INFORMATION IS ACCURATE sections of this Notice apply to the following Lincoln Financial Group companies:

First Penn-Pacific Life Insurance Company
Lincoln Life & Annuity Company of New York
The Lincoln National Life Insurance Company

GB06714

Page 2 of 2
6/12

# The Lincoln National Life Insurance Company

A Stock Company    Home Office Location: Fort Wayne, Indiana
Group Insurance Service Office:  8801 Indian Hills Drive, Omaha, NE 68114-4066 (402) 361-7300

CERTIFIES THAT Group Policy No.        GL 000400001000-12077        has been issued to
The Commerce Trust Company as Trustee for The Lincoln National Life Insurance Company Voluntary
Insurance Trust

The Issue Date is January 1, 2011 for the Participating Employer.

Participating Employer: Ashley Industrial Moldings, Inc.

The insurance is effective only if the Employee is eligible for insurance and becomes and remains insured as
provided in the Group Policy.

Certificate of Insurance for Class 1

{INSURED}

{Schedule of Insurance}
            {Coverage}                                              {Insurance Amount}
        {BENEFIT_1}
        {BENEFIT_2}
        {BENEFIT_3}
        {BENEFIT_4}
        {BENEFIT_5}

You are entitled to the benefits described in this Certificate if you are eligible for insurance under the
provisions of the Policy. This Certificate replaces any other certificates for the benefits described inside. As
a Certificate of Insurance, it is not a contract of insurance; it only summarizes the provisions of the Policy
and is subject to the Policy's terms.

President

CERTIFICATE OF GROUP LIFE INSURANCE

GL1102 FACE PAGE

{LFGLOGO}            {USER}            {CERT_ID}            01/01/14

## CLAIMS PROCEDURES
## FOR LIFE OR ACCIDENTAL DEATH AND DISMEMBERMENT (AD&D) BENEFITS

**NOTE:** The Policy may include an Extension of Death Benefit, an Accelerated Death Benefit or a Living Benefit. If so, please refer to that section for special claim procedures.

### NOTICE AND PROOF OF CLAIM

**Notice of Claim.** Written notice of an accidental death or dismemberment claim must be given within 20 days after the loss occurs; or as soon as reasonably possible after that.* The notice must be sent to the Company's Group Insurance Service Office. It should include:
    (1)   your name and address; and
    (2)   the number of the Policy.

**Claim Forms.** When notice of claim is received, the Company will send claim forms for filing the required proof. If the Company does not send the forms within 15 days; then you or your Beneficiary (the claimant) may send the Company written proof of claim in a letter. It should state the nature, date and cause of the loss.

**Proof of Claim.** The Company must be given written proof of claim within 90 days after the date of the loss; or as soon as reasonably possible after that.* Proof of claim must be provided at the claimant's own expense. It must show the nature, date and cause of the loss. In addition to the information requested on the claim form, documentation must include:
    (1)   A certified copy of the death certificate, for proof of death.
    (2)   A copy of any police report, for proof of accidental death or dismemberment.
    (3)   A signed authorization for the Company to obtain more information.
    (4)   Any other items the Company may reasonably require in support of the claim.

**\* Exception:** Failure to give notice or furnish proof of claim within the required time period will not invalidate or reduce the claim; if it is shown that it was done:
    (1)   as soon as reasonably possible; and
    (2)   in no event more than one year after it was required.
These time limits will not apply while the claimant lacks legal capacity.

**EXAM OR AUTOPSY.** At anytime while a claim is pending, the Company may have you examined:
    (1)   by a Physician of the Company's choice;
    (2)   as often as reasonably required.
If you fail to cooperate with an examiner or fail to take an exam, without good cause; then the Company may deny benefits, until the exam is completed. In case of death, the Company may also have an autopsy done, where it is not forbidden by law. Any such exam or autopsy will be at the Company's expense.

**TIME OF PAYMENT OF CLAIMS.** Any benefits payable under the Policy will be paid immediately after the Company receives complete proof of claim and confirms liability.

In accord with Indiana law, any accidental death or dismemberment benefits will be paid as follows, when more favorable to the claimant.
    (1)   **Clean Claim.** The Company must pay a clean claim for AD&D benefits within 45 days after receiving the first written proof of claim. A claim is considered "clean" when:
        (a)   the first proof of claim is complete;
        (b)   no part of the claim is contested; and
        (c)   no other defect prevents prompt payment.
        A claim is also considered "clean" when the insurer fails to promptly request more information, or to resolve it, within 45 days after receiving the first written proof of claim.

GL1102-8A 02 IN

14

L/ADD
01/01/14

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

**DEATH OR DISMEMBERMENT BENEFIT FOR AN INSURED PERSON.** The Company will pay the benefit listed below, if:

    (1)    an Insured Person sustains an accidental bodily injury while insured under this provision; and

    (2)    that injury directly causes one of the following losses within 365 days after the date of the accident.

The loss must result directly from the injury and from no other causes.

| LOSS | BENEFIT FOR COMMON CARRIER ACCIDENT | BENEFIT FOR OTHER COVERED ACCIDENT |
|---|---|---|
| Loss of Life | 2 Times Principal Sum | Principal Sum |
| Loss of One Member (Hand, Foot or Eye) | Principal Sum | 1/2 Principal Sum |
| Loss of Two or More Members | 2 Times Principal Sum | Principal Sum |

The Principal Sum for the Insured Person's class is shown in the Schedule of Insurance.

**MAXIMUM PER PERSON.** If an Insured Person sustains more than one loss resulting from the same accident, the benefit:

    (1)    will be the one largest amount listed;

    (2)    will not exceed two times the Principal Sum for all of that person's combined losses resulting from a Common Carrier Accident; and

    (3)    will not exceed the Principal Sum for all of that person's combined losses resulting from any other covered accident.

**TO WHOM PAYABLE.** Benefits for the Insured Person's loss of life will be paid in accord with the Beneficiary section. All other benefits will be paid to the Insured Person.

**LIMITATIONS.** Benefits are not payable for any loss to which a contributing cause is:

    (1)    intentional self-inflicted injury or self-destruction;

    (2)    disease, bodily or mental infirmity, or medical or surgical treatment of these;

    (3)    participation in a riot;

    (4)    duty as a member of any military, naval or air force;

    (5)    war or any act of war, declared or undeclared;

    (6)    participation in the commission of a felony;

    (7)    voluntary use of drugs; except when prescribed by a Physician;

    (8)    travel or flight in any aircraft, including balloons and gliders; except as a fare paying passenger on a regularly scheduled flight; or

    (9)    driving a vehicle while intoxicated.

GL1101-14.3A 01 IN

20

COMMON CARRIER
01/01/14

## CLAIMS PROCEDURES
### (Continued)

(2) **Defective Claim.** The Company must request more information concerning a defective claim for AD&D benefits within 45 days after receiving the first written proof of claim. It must pay such a claim within 45 days after receiving any additional proof it needs to confirm liability. A claim is considered "defective" if:
    (a) the first written proof of claim is not complete;
    (b) all or part of the claim is contested; or
    (c) some other defect prevents prompt payment.

**TO WHOM PAYABLE--Death.** Any benefits payable for your death will be paid in accord with the Beneficiary, Facility of Payment and Settlement Options sections of the Policy. If the Policy includes Dependent Life Insurance; then any benefits payable for an insured Dependent's death will be paid to:
    (1) you, if you survive that Dependent; or
    (2) your Beneficiary, or in accord with the Facility of Payment section; if you do not survive that Dependent.

**Dismemberment.** If the Policy includes Accidental Death and Dismemberment Benefits; then any benefit, other than your death benefit, will be paid to you.

**NOTICE OF CLAIM DECISION.** The Company will send the claimant a written notice of its claim decision. If the Company denies any part of the claim; then the written notice will explain:
    (1) the reason for the denial, under the terms of the Policy and any internal guidelines;
    (2) how the claimant may request a review of the Company's decision; and
    (3) whether more information is needed to support the claim.

The Company will send this notice within 15 days after resolving the claim. If reasonably possible, the Company will send it within:
    (1) 45 days after receiving the first written proof of claim for any accidental death or dismemberment, Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy; or
    (2) 90 days after receiving the first written proof of a claim for any life insurance benefit available under the Policy.

**Delay Notice.** If the Company needs more than 15 days to process a claim, in a special case; then an extension will be permitted. If needed, the Company will send the claimant a written delay notice:
    (1) by the 15th day after receiving the first proof of claim; and
    (2) every 30 days after that, until the claim is resolved.

The notice will explain the special circumstances which require the delay, and when a decision can be expected. In any event, the Company must send written notice of its decision within:
    (1) 180 days after receiving the first proof of a death or dismemberment claim; or
    (2) 105 days after receiving the first proof of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy.
If the Company fails to do so; then there is a right to an immediate review, as if the claim was denied.

**Exception:** If the Company needs more information from the claimant to process a claim; then it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for claim processing.

**REVIEW PROCEDURE.** The claimant may request a claim review, within:
    (1) 60 days after receiving a denial notice of a death or dismemberment claim; or
    (2) 180 days after receiving a denial notice of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy.

To request a review, the claimant must send the Company a written request, and any written comments or other items to support the claim. The claimant may review certain non-privileged information relating to the request for review.

GL1102-8A 02 IN

L/ADD
01/01/14

## CLAIMS PROCEDURES
### (Continued)

**Notice of Decision.** The Company will review the claim and send the claimant a written notice of its decision. The notice will explain the reasons for the Company's decision, under the terms of the Policy and any internal guidelines. If the Company upholds the denial of all or part of the claim; then the notice will also describe:
    (1)   any further appeal procedures available under the Policy;
    (2)   the right to access relevant claim information; and
    (3)   the right to request a state insurance department review, or to bring legal action.
For a death or dismemberment claim, the notice will be sent within 60 days after the Company receives the request for review; or within 120 days, if a special case requires more time. For a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy, the notice will be sent within 45 days after the Company receives the request for review; or within 90 days, if a special case requires more time.

**Delay Notice.** If the Company needs more time to process an appeal, in a special case; then it will send the claimant a written delay notice, by the 30th day after receiving the request for review. The notice will explain:
    (1)   the special circumstances which require the delay;
    (2)   whether more information is needed to review the claim; and
    (3)   when a decision can be expected.

**Exception:** If the Company needs more information from the claimant to process an appeal; then it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for appeal processing.

**Claims Subject to ERISA** (Employee Retirement Income Security Act of 1974). Before bringing a civil legal action under the federal labor law known as ERISA, an employee benefit plan participant or beneficiary must exhaust available administrative remedies. Under the Policy, the claimant must first seek two administrative reviews of the adverse claim decision, in accord with this section. If an ERISA claimant brings legal action under Section 502(a) of ERISA after the required reviews; then the Company will waive any right to assert that he or she failed to exhaust administrative remedies.

**RIGHT OF RECOVERY.** If benefits have been overpaid on any claim; then full reimbursement to the Company is required within 60 days. If reimbursement is not made; then the Company has the right to:
    (1)   reduce future benefits until full reimbursement is made; and
    (2)   recover such overpayments from you, or from your Beneficiary or estate.
Such reimbursement is required whether the overpayment is due to fraud, the Company's error in processing a claim, or any other reason.

**LEGAL ACTIONS.** No legal action to recover any benefits may be brought until 60 days after the required written proof of claim has been given. No such legal action may be brought more than three years after the date written proof of claim is required.

**COMPANY'S DISCRETIONARY AUTHORITY.** Except for the functions that the Policy clearly reserves to the Group Policyholder or Employer, the Company has the authority to:
    (1)   manage the Policy and administer claims under it; and
    (2)   interpret the provisions and resolve questions arising under the Policy.

The Company's authority includes (but is not limited to) the right to:
    (1)   establish and enforce procedures for administering the Policy and claims under it;
    (2)   determine your eligibility for insurance and entitlement to benefits;
    (3)   determine what information the Company reasonably requires to make such decisions; and
    (4)   resolve all matters when a claim review is requested.

Any decision the Company makes, in the exercise of its authority, shall be conclusive and binding; subject to your or your Beneficiary's rights to:
    (1)   request a state insurance department review; or
    (2)   bring legal action.

GL1102-8A 02 IN

16

L/ADD
01/01/14

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE
### CONTINUED

### DEFINITIONS.

"Beneficiary" means the person(s) named on the Insured Person's enrollment form. The Insured Person may change the Beneficiary by filing a written notice of the change with the Company at its Group Insurance Service Office.

"Common Carrier Accident" means a covered accidental bodily injury, which is sustained while riding as a fare paying passenger (not a pilot, operator or crew member) in or on, boarding or getting off from a Common Carrier.

"Common Carrier" means any land, air or water conveyance operated under a license to transport passengers for hire.

"Intoxicated" shall be defined by the jurisdiction where the accident occurs. The exclusion will apply whether or not the driver is convicted.

"Loss of a Member" includes the following:
(1)  "Loss of Hand or Foot," means complete severance through or above the wrist or ankle joint.
(2)  "Loss of an Eye," means total and irrevocable loss of sight in that eye.

GL1101-14.3A 01 IN

21

COMMON CARRIER
01/01/14

# The Lincoln National Life Insurance Company

A Stock Company    Home Office Location: Fort Wayne, Indiana
Group Insurance Service Office: 8801 Indian Hills Drive, Omaha, NE 68114-4066 (402) 361-7300

CERTIFIES THAT Group Policy No.    GL 000010132080    has been issued to
Ashley Industrial Moldings, Inc.
(The Group Policyholder)

The Issue Date of the Policy is January 1, 2011.

The insurance is effective only if the Employee is eligible for insurance and becomes and remains insured as provided in the Group Policy.

Certificate of Insurance for Class 1

```
                {INSURED}
{Schedule of Insurance}
            {Coverage}                              {Insurance Amount}
        {BENEFIT_1}
        {BENEFIT_2}
        {BENEFIT_3}
        {BENEFIT_4}
        {BENEFIT_5}
        {BENEFIT_6}
        {BENEFIT_7}
        {BENEFIT_8}
        {BENEFIT_9}
        {BENEFIT_10}
```

You are entitled to the benefits described in this Certificate if you are eligible for insurance under the provisions of the Policy. This Certificate replaces any other certificates for the benefits described inside. As a Certificate of Insurance, it is not a contract of insurance; it only summarizes the provisions of the Policy and is subject to the Policy's terms.

*Dennis R Glass*
President

EXHIBIT A

## CERTIFICATE OF GROUP LIFE INSURANCE

GL1102 FACE PAGE

{LF CODE}        {ISLR}        {CERT_ID}        01/01/14

**Ashley Industrial Moldings, Inc.**
**000010132080**

**SCHEDULE OF INSURANCE**

CLASS 1

All Full-Time Salaried Employees

WAITING PERIOD: 90 days of continuous Active Work (For date insurance begins, refer to "Effective Dates of Coverages" section)

MINIMUM HOURS: 32 hours per week

**LIFE AND AD&D INSURANCE**

| Amount of Personal Life Insurance | AD&D Insurance Principal Sum |
|---|---|
| One times Basic Annual Earnings, rounded to the next higher $1,000; subject to a minimum of $10,000 and a maximum of $200,000 | Two times Basic Annual Earnings, rounded to the next higher $1,000; subject to a minimum of $10,000 and a maximum of $200,000 |

Personal Life and AD&D Insurance will be reduced as follows:
- At age 65, benefits will reduce by 33% of the original amount;
- At age 70, benefits will reduce an additional 22% of the original amount.
Benefits will terminate when you retire.

If you first enroll for Personal Life and AD&D Insurance at age 65 or older, the above age reductions will apply to:
- Any Guarantee Issue Amount available without evidence of insurability; and
- The maximum amount of insurance for which you are eligible.

**(Effective July 1, 2011) Basic Annual Earnings** means your annual base salary or annualized hourly pay from the Employer before taxes on the Determination Date. The **"Determination Date"** is the last day worked just prior to the loss.

It does **not** include commissions, bonuses, overtime pay, or any other extra compensation. It does **not** include income from a source other than the Employer. It will not exceed the amount shown in the Employer's financial records or the amount for which premium has been paid; whichever is less.

GL1102-SB

01/01/14

## TABLE OF CONTENTS

Amount of Insurance ................................................................................3

Definitions .............................................................................................3

Eligibility ..............................................................................................4

Effective Dates of Coverages .....................................................................4

Termination of Coverage ..........................................................................4

Death Benefit .........................................................................................5

Beneficiary .............................................................................................5

Assignments ...........................................................................................6

Extension of Death Benefit .......................................................................7

Accelerated Death Benefit ........................................................................8

Conversion Privilege ..............................................................................10

Accidental Death and Dismemberment Insurance ........................................11

Safe Driver Benefit ...............................................................................13

Claims Procedures for Life or Accidental Death and Dismemberment Benefits .......14

Notice .................................................................................................17

Prior Insurance Credit Provision ...............................................................19

GL1102-TOC

2

01/01/14

## AMOUNT OF INSURANCE

The amount of your insurance is determined by the Schedule of Insurance in the Policy. The initial amount of coverage is the amount which applies to your class on the day your coverage takes effect. You may become eligible for increases in the amount of insurance in accord with the Schedule of Insurance. Any such increase will take effect on the latest of:

    (1)    the first of the Insurance Month which coincides with or follows the date on which you become eligible for the increase; provided you are Actively at Work on that day;

    (2)    the day you resume Active Work, if you are not Actively at Work on the day the increase would otherwise take effect; or

    (3)    the day any required evidence of insurability is approved by the Company.

Any decrease will take effect on the day of the change; whether or not you are Actively at Work.

## DEFINITIONS

ACTIVE WORK or ACTIVELY AT WORK means an employee's full-time performance of all customary duties of his or her occupation at:

    (1)    the EMPLOYER'S place of business; or

    (2)    any other business location where the employee is required to travel.

Unless disabled on the prior workday or on the day of absence, an employee will be considered Actively at Work on the following days:

    (1)    a Saturday, Sunday or holiday which is not a scheduled workday;

    (2)    a paid vacation day, or other scheduled or unscheduled non-workday; or

    (3)    an excused or emergency leave of absence (except a medical leave).

COMPANY means The Lincoln National Life Insurance Company, an Indiana corporation; whose Group Insurance Service Office address is 8801 Indian Hills Drive, Omaha, Nebraska 68114-4066.

DAY or DATE means at 12:01 A.M., Standard Time, at the Group Policyholder's place of business; when used with regard to eligibility dates and effective dates. It means 12:00 midnight, Standard Time, at the same place; when used with regard to termination dates.

EMPLOYER means the Group Policyholder or the Participating Employer named on the Face Page.

FULL-TIME EMPLOYEE means an employee of the EMPLOYER:

    (1)    whose employment with the EMPLOYER is the employee's principal occupation;

    (2)    who is not a temporary or seasonal employee; and

    (3)    who is regularly scheduled to work at such occupation at least the number of hours as shown in the Schedule of Insurance.

INSURANCE MONTH means:

    (1)    that period of time beginning on the Issue Date of the Policy and extending for one month; and

    (2)    each subsequent month beginning on the same day after that.

PERSONAL INSURANCE means the insurance provided by the Policy on Insured Persons.

PHYSICIAN means a licensed practitioner of the healing arts other than the Insured Person or a relative of the Insured Person.

POLICY means the Group Insurance Policy issued by the Company to the Group Policyholder. A copy of the Policy may be examined upon request at the Group Insurance Service Office of the Group Policyholder.

GL1102-1 91

3

(REV)
01/01/14

## ELIGIBILITY

If you are a Full-Time Employee and a member of an employee class shown in the Schedule of Insurance; then you will become eligible for the coverage provided by the Policy on the later of:
    (1)   the Policy's date of issue; or
    (2)   the day you complete the Waiting Period.

WAITING PERIOD. (See Schedule of Insurance).

## EFFECTIVE DATES OF COVERAGES

Your insurance is effective on the latest of:
    (1)   the day you become eligible for the coverage;
    (2)   the day you resume Active Work, if you are not Actively at Work on the day you become eligible;
    (3)   the day you make written application for coverage; and sign:
        (a)   a payroll deduction order, if you pay any part of the premium; or
        (b)   an order to pay premiums from your Section 125 Plan account, if Employer contributions are paid through a Section 125 Plan; or
    (4)   the day the Company approves your coverage, if evidence of insurability is required.

Evidence of insurability is required if:
    (1)   you apply for coverage more than 31 days after you become eligible; or
    (2)   you make written application to re-enroll for coverage after you have requested:
        (a)   to cancel your coverage;
        (b)   to stop payroll deductions for the coverage; or
        (c)   to stop premium payments from your Section 125 Plan account.

EXCEPTION. If your coverage terminates due to an approved leave of absence or a military leave, any Waiting Period or evidence of insurability requirement will be waived upon your return; provided:
    (1)   you return within six months after the leave begins;
    (2)   you apply or are enrolled within 31 days after resuming Active Work; and
    (3)   the reinstated amount of insurance does not exceed the amount which terminated.

## TERMINATION OF COVERAGE

Your coverage terminates on the earliest of:
    (1)   the day the Policy terminates;
    (2)   the last day of the Insurance Month in which you request termination;
    (3)   the last day of the period for which the premium for your insurance has been paid;
    (4)   the day you cease to be a member of an employee class shown in the Schedule of Insurance;
    (5)   with respect to any particular insurance benefit, the day the part of the Policy providing that benefit terminates;
    (6)   the day your employment with the Employer terminates; or
    (7)   the day you enter the armed services of any state or country on active duty; except for duty of 30 days or less for training in the Reserves or National Guard. (If you send proof of military service, the Company will refund any unearned premium.)

Ceasing Active Work terminates your eligibility. However, it may be possible to continue all or part of your insurance during a temporary layoff, leave of absence or military leave; or while you are unable to work due to sickness or injury. The conditions concerning such a continuance may be found in the Policy. See your Employer for this information.

GL1102-2 93

4

(FMLA)
01/01/14

## DEATH BENEFIT

Upon receipt of satisfactory proof of your death, the Company will pay a death benefit equal to the amount of Personal Life Insurance in effect on the date of your death. The benefit will be paid in accord with the Beneficiary section. Arrangements may be made to have this death benefit paid in installments.

## BENEFICIARY

Your Beneficiary is the person or persons named on your enrollment card. The Beneficiary may be changed in accord with the terms of the Policy. If you have not named a Beneficiary, or if no named Beneficiary is living when you die; then the death benefit will be paid to your:
  (1)  surviving spouse; or, if none
  (2)  surviving child or children in equal shares; or, if none
  (3)  surviving parent or parents in equal shares; or, if none
  (4)  surviving brothers and sisters in equal shares; or, if none
  (5)  estate, or in accord with the Facility of Payment section of the Policy.

GL1102-3.0A 96

Pref. Bene.-No Ext.
01/01/14

5

## ASSIGNMENTS

Personal Life Insurance and Accidental Death Insurance may be assigned. The assignments allowed under the Policy are absolute assignments and funeral assignments as described below.

No assignment will be binding on the Company unless and until:
(1)  it is made on a form furnished by the Company;
(2)  the original is completed and filed with the Company at its Group Insurance Service Office; and
(3)  it is approved by the Company.
The Company and the Employer do not assume responsibility for the validity or effect of an assignment.

ABSOLUTE ASSIGNMENTS. You may make an irrevocable assignment of your Personal Life Insurance and Accidental Death Insurance as a gift (with no consideration), providing you have the legal capacity and the mental capacity to do so. It may be made to a trust or to one or more of your relatives, their estates, or to a trustee of a trust under which one of the relatives is a beneficiary.

The term "relatives" includes, but is not limited to, your spouse, parents, grandparents, aunts, uncles, siblings, children, adopted children, stepchildren, and grandchildren.

In some states, community property is an established form of ownership that must be considered in making an assignment. If you make an absolute assignment to two or more assignees, such assignees will be joint owners with the right of survivorship between them. You should consult with your own legal advisor before making an assignment.

Once the assignment has been recorded by the Company, you can no longer change the beneficiary and cannot apply for conversion. Only the assignee can change the beneficiary designation if the previous designation is revocable. An assignment will have no effect on a prior irrevocable beneficiary designation. Only the assignee can apply for conversion but only when the Conversion Privilege provision would have been available to you in the absence of the assignment under the Policy.

An absolute assignment cannot be used as a collateral assignment.

FUNERAL ASSIGNMENTS. Upon your death, the beneficiary may assign the Personal Life Insurance benefit and Accidental Death Insurance benefit to a funeral home for payment of burial expenses. After payment has been made for the burial expenses to the assigned funeral home, the remaining death benefit is then paid in accord with the Beneficiary and Settlement Options sections of the Policy.

GL1102-3.0C 01

6

01/01/14

## EXTENSION OF DEATH BENEFIT IF YOU BECOME TOTALLY DISABLED

Your life insurance will be continued, **without payment of premiums**, if:
- (1) you become Totally Disabled while insured and before reaching age 60;
- (2) you remain Totally Disabled for at least 6 months in a row; and
- (3) you submit satisfactory proof within the 7th through 12th months of disability; or:
  - (a) as soon as reasonably possible after that; but
  - (b) not later than the 24th month of disability, unless you were legally incapacitated.

PREMIUM PAYMENT. Premium payments must continue until you are approved for this benefit, or the Policy terminates, if earlier. Upon receipt of satisfactory proof, the Company will refund up to 12 months' premium paid for your life insurance, from your 1st day of Total Disability.

DEFINITION. For this benefit, Total Disability or Totally Disabled means you:
- (1) are unable, due to sickness or injury, to engage in any employment or occupation for which you are or become qualified by reason of education, training, or experience; and
- (2) are not engaging in any gainful employment or occupation.

AMOUNT CONTINUED. The amount of Personal Life Insurance and any Dependent Life Insurance continued will be subject to the reductions and terminations in effect under the Policy on the day your Total Disability begins. Any Accidental Death and Dismemberment Benefit will not be continued.

ADDITIONAL PROOF. From time to time, you must submit proof that your Total Disability is continuing. Proof will be at your expense; unless the Company requests to have you examined by a Physician of its choice. If you die after submitting proof, further proof must be submitted to the Company showing that you remained continuously and Totally Disabled until death. If you die within 12 months after Total Disability begins, but before submitting proof; then your death benefit will still be paid under the terms of the Policy. But the Company must first receive satisfactory proof of your continuous Total Disability, from your last day of Active Work until your date of death.

TERMINATION. Any life insurance continued under this section will terminate automatically on:
- (1) the day you cease to be Totally Disabled;
- (2) the day you fail to take a required medical examination;
- (3) the 60th day after the Company mails a request for additional proof, if it is not given;
- (4) the effective date of your individual conversion policy, with respect to any amount of life insurance converted in accord with the Conversion Privilege section; or
- (5) the day you reach Social Security Normal Retirement Age (SSNRA), as shown in the Schedule of Insurance (whichever occurs first).

If your Total Disability ends, and you **do not return** to a class eligible for Policy coverage; then you may exercise the Conversion Privilege. If your Total Disability ends, and you **do return** to an eligible class; then your Policy coverage will resume when premium payments are resumed, and any conversion policy is surrendered as provided in the Policy.

GL1102-3.1 97

7

Ext. to SSNRA
01/01/14

## ACCELERATED DEATH BENEFIT

BENEFIT. The Accelerated Death Benefit is an advance payment of part of your Personal Life Insurance. It may be paid to you, in a lump sum, once during your lifetime.

To qualify, you must:
(1) have satisfied the Active Work requirement under the Policy;
(2) have been insured under the Policy:
(a) on the date of an injury which results in a Terminal condition; or
(b) for 30 days before being diagnosed Terminal as a result of sickness; and
(3) have at least $2,000 of Personal Life Insurance under the Policy on the day before the Accelerated Death Benefit is paid.

Receiving the Accelerated Death Benefit will reduce the Remaining Life Insurance and the Death Benefit payable at death, as shown on the next page.

"Claimant," as used in this section, means the Terminal Insured Person for whom the Accelerated Death Benefit is requested.

"Terminal" means you have a medical condition which is expected to result in death within 12 months, despite appropriate medical treatment.

APPLYING FOR THE BENEFIT. To withdraw the Accelerated Death Benefit, you (or your legal representative) must send the Company:
(1) written election of the Accelerated Death Benefit, on forms supplied by the Company; and
(2) satisfactory proof that the Claimant is Terminal, including a Physician's written statement.

The Company reserves the right to decide whether such proof is satisfactory.

Before paying an Accelerated Death Benefit, the Company must also receive the written consent of any irrevocable beneficiary, assignee or bankruptcy court with an interest in the benefit. (See Limitations 3, 4, and 5.)

**NOTE: THIS IS NOT A LONG-TERM CARE POLICY. RECEIVING THIS ACCELERATED DEATH BENEFIT WILL REDUCE THE BENEFIT PAYABLE AT DEATH. ANY AMOUNT WITHDRAWN MAY BE TAXABLE INCOME, SO YOU SHOULD CONSULT A TAX ADVISOR BEFORE APPLYING FOR THIS BENEFIT.**

AMOUNT OF THE BENEFIT. You may elect to withdraw an Accelerated Death Benefit in any $1,000 increment; subject to:
(1) a minimum of $1,000 or 10% of the Claimant's amount of Life Insurance (whichever is greater); and
(2) a maximum of $250,000 or 75% of the Claimant's amount of Life Insurance (whichever is less).

To determine the Accelerated Death Benefit, the Company will use the lesser of A or B below:
A. the Claimant's amount of Life Insurance which is in force on the day before the Accelerated Death Benefit is paid; or
B. the Claimant's amount of Life Insurance which would be in force 12 months after that date; if the coverage is scheduled to reduce, due to age, within 12 months after the Accelerated Death Benefit is paid.

GL1102-3.8 01 DAY

8

ADB-DEP.
01/01/14

ADMINISTRATIVE CHARGE: NONE

WITHDRAWAL FEE: NONE

EFFECT ON AMOUNT OF LIFE INSURANCE. "Remaining Life Insurance" means the amount of Life Insurance which remains in force on the Claimant's life after an Accelerated Death Benefit is paid. The Remaining Life Insurance will equal:

(1) the Claimant's amount of Life Insurance which was used to determine the Accelerated Death Benefit (A or B above); minus

(2) any percentage by which the Claimant's coverage is scheduled to reduce, due to age; if the reduction occurs more than 12 months after the Accelerated Death Benefit is paid, and while he or she is still living; minus

(3) the amount of the Accelerated Death Benefit withdrawn.

PREMIUM: There is no additional charge for this benefit. Continuation of the Remaining Life Insurance will be subject to timely payment of the premium for the reduced amount; unless you qualify for waiver of premium under the Policy's Extension of Death Benefit provision, if included.

CONDITIONS. If the Claimant exercises the Conversion Privilege after an Accelerated Death Benefit is paid, the amount of the conversion policy will not exceed the amount of his or her Remaining Life Insurance. If the Claimant has Accidental Death and Dismemberment benefits under the Policy, the Principal Sum will not be affected by the payment of an Accelerated Death Benefit.

EFFECT ON DEATH BENEFIT. When the Claimant dies after an Accelerated Death Benefit is paid, the amount of Remaining Life Insurance in force on the date of death will be paid as a Death Benefit. Your Death Benefit will be paid in accord with the Beneficiary section of the Policy. If the Claimant dies after application for an Accelerated Death Benefit has been made, but before the Company has made payment; then the request will be void and no Accelerated Death Benefit will be paid. The amount of Life Insurance in force on the date of death will be paid in accord with Policy provisions.

EFFECT ON TAXES AND GOVERNMENT BENEFITS. Any Accelerated Death Benefit amount withdrawn may be taxable income to you. Receipt of the Accelerated Death Benefit may also affect the Claimant's eligibility for Medicaid, Supplemental Security Income and other government benefits. The Claimant should consult his or her own tax and legal advisor before applying for an Accelerated Death Benefit. The Company is not responsible for any tax owed or government benefit denied, as a result of the Accelerated Death Benefit payment.

LIMITATIONS. No Accelerated Death Benefit will be paid:

(1) if any required premium is due and unpaid;

(2) on any conversion policy purchased in accord with the Conversion Privilege;

(3) without the written approval of the bankruptcy court, if you have filed for bankruptcy;

(4) without the written consent of the beneficiary, if you have named an irrevocable beneficiary;

(5) without the written consent of the assignee, if you have assigned your rights under the Policy;

(6) if any part of the Life Insurance must be paid to your child, spouse or former spouse; pursuant to a legal separation agreement, divorce decree, child support order or other court order;

(7) if the Claimant is Terminal due to a suicide attempt, while sane or insane; or due to an intentionally self-inflicted injury;

(8) if a government agency requires you or the Claimant to use the Accelerated Death Benefit to apply for, receive or continue a government benefit or entitlement; or

(9) if an Accelerated Death Benefit has been previously paid for the Claimant under the Policy.

GL1102-3.8 01 DAY

9

ADB-DEP.
01/01/14

## CONVERSION PRIVILEGE

If your insurance or insurance on a Dependent terminates for any reason except:
    (1)   termination or amendment of the Policy; or
    (2)   your request for:
        (a)   termination of insurance; or
        (b)   cancellation of your payroll deductions,
an individual life policy, known as a conversion policy, may be purchased without evidence of insurability.

To purchase a conversion policy, application and payment of the first premium must be made within 31 days after the life insurance is terminated.

A conversion policy will:
    (1)   be in an amount not to exceed the amount of life insurance which was terminated; less the amount of any group life insurance for which the person becomes eligible within 31 days after insurance terminates;
    (2)   be on any form (except term) then issued by the Company at the age and amount for which application is made;
    (3)   be issued at the person's age at nearest birthday;
    (4)   be issued without disability or other supplemental benefits; and
    (5)   require premiums based on the class of risk to which the person then belongs.

A conversion policy also may be purchased if:
    (1)   all or part of your insurance or insurance on a Dependent terminates due to amendment or termination of the Policy; and
    (2)   the person applying for the conversion policy has been covered continuously under the Policy for at least 5 years.

The amount of the conversion policy may not exceed the lesser of:
    (1)   $10,000; or
    (2)   the amount of life insurance which terminates, less the amount of any group life insurance for which the person becomes eligible within 31 days after the termination.

The conversion policy will take effect on the later of:
    (1)   its date of issue; or
    (2)   31 days after the date the insurance terminated.

If death occurs during the 31 day conversion period, the Company will pay the life insurance which could have been converted even if no one applied for the conversion policy.

When your insurance terminates, written notice of your right to convert will be given to you.

If written notice is not given to you at least 15 days before the end of the 31 day conversion period, an additional period in which to convert will be granted. Any such extension of the conversion period will expire on the earliest of:
    (1)   15 days after you are given the written notice; or
    (2)   60 days after the end of the 31 day conversion period, even if you are never given such notice.

No death benefit will be payable under the Policy after the 31 day conversion period has expired, even though the right to convert may be extended.

GL1102-4 IN

DCP. - $10,000
01/01/14

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

**DEATH OR DISMEMBERMENT BENEFIT FOR AN INSURED PERSON.** The Company will pay the benefit listed below, if:
  (1)  you sustain an accidental bodily injury while insured under this provision; and
  (2)  that injury directly causes one of the following losses within 365 days after the date of the accident.
The loss must result directly from the injury and from no other causes.

| LOSS | BENEFIT FOR COMMON CARRIER ACCIDENT | BENEFIT FOR OTHER COVERED ACCIDENT |
|---|---|---|
| Loss of Life | 2 Times Principal Sum | Principal Sum |
| Loss of One Member (Hand, Foot or Eye) | Principal Sum | 1/2 Principal Sum |
| Loss of Two or More Members | 2 Times Principal Sum | Principal Sum |

The Principal Sum for your class is shown in the Schedule of Insurance.

**MAXIMUM PER PERSON.** If you sustain more than one loss resulting from the same accident, the benefit:
  (1)  will be the one largest amount listed;
  (2)  will not exceed two times the Principal Sum for all of your combined losses resulting from a Common Carrier Accident; and
  (3)  will not exceed the Principal Sum for all of your combined losses resulting from any other covered accident.

**TO WHOM PAYABLE.** Benefits for your loss of life will be paid in accord with the Beneficiary section. All other benefits will be paid to you.

**LIMITATIONS.** Benefits are not payable for any loss to which a contributing cause is:
  (1)  intentional self-inflicted injury or self-destruction;
  (2)  disease, bodily or mental infirmity, or medical or surgical treatment of these;
  (3)  participation in a riot;
  (4)  duty as a member of any military, naval or air force;
  (5)  war or any act of war, declared or undeclared;
  (6)  participation in the commission of a felony;
  (7)  voluntary use of drugs; except when prescribed by a Physician;
  (8)  travel or flight in any aircraft, including balloons and gliders; except as a fare paying passenger on a regularly scheduled flight; or
  (9)  driving a vehicle while intoxicated.

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE
### CONTINUED

### DEFINITIONS.

"Beneficiary" means the person(s) named on your enrollment form. You may change the Beneficiary by filing a written notice of the change with the Company at its Group Insurance Service Office.

"Common Carrier Accident" means a covered accidental bodily injury, which is sustained while riding as a fare paying passenger (not a pilot, operator or crew member) in or on, boarding or getting off from a Common Carrier

"Common Carrier" means any land, air or water conveyance operated under a license to transport passengers for hire.

"Intoxicated" shall be defined by the jurisdiction where the accident occurs. The exclusion will apply whether or not the driver is convicted.

"Loss of a Member" includes the following:
    (1)   "Loss of Hand or Foot," means complete severance through or above the wrist or ankle joint.
    (2)   "Loss of an Eye," means total and irrevocable loss of sight in that eye.

GL1102-6.3A 01 IN

12

COMMON CARRIER
01/01/14

## SAFE DRIVER BENEFIT

BENEFIT. If you die as a direct result of a covered auto accident, for which Accidental Death and Dismemberment Benefits are payable; then:

    (1)   an additional Seat Belt Benefit will be payable, if you were wearing a properly fastened seat belt at the time of the accident; and

    (2)   an additional Air Bag Benefit will be payable, if the auto was equipped with air bag(s).

The Seat Belt Benefit equals $10,000 or 10% of the Principal Sum, whichever is less; and the Air Bag Benefit equals $10,000 or 10% of the Principal Sum, whichever is less. The Seat Belt Benefit and the Air Bag Benefit will not be less than $1,000. The Principal Sum is the amount payable because of the Insured Person's accidental death.

A copy of the police report must be submitted with the claim. The position of the seat belt or presence of an air bag must be certified by:

    (1)   the official accident report; or

    (2)   the coroner, traffic officer or other investigating officer.

Upon receipt of satisfactory written proof, the additional benefit will be paid in accord with the Beneficiary section.

DEFINITIONS. As used in this provision:

"Auto" means a 4-wheel passenger car, station wagon, jeep, pick-up truck or van-type car. It must be licensed for use on public highways. It includes a car owned or leased by the Employer.

"Intoxicated," "Impaired," or "Under the Influence of Drugs" shall be defined as by the jurisdiction where the accident occurs.

"Seat Belt" means a properly installed:

    (1)   seat belt or lap and shoulder restraint; or

    (2)   other restraint approved by the National Highway Traffic Safety Administration.

LIMITATIONS. Safe Driver Benefits will not be paid if:

    (1)   the Accidental Death and Dismemberment Benefit is not paid under the Policy for your death; or

    (2)   at the time of the accident, you or any other person who was driving the auto in which you were traveling:

        (a)   was driving without a valid drivers' license;

        (b)   was driving in excess of the legal speed limit; or

        (c)   was driving while intoxicated, impaired, or under the influence of drugs (except for drugs taken as prescribed by a Physician for the driver's use).

The above limitations will apply, whether or not the driver is convicted.

GL1102-6.15A

13

Seat Belt & Air Bag
01/01/14

## CLAIMS PROCEDURES
## FOR LIFE OR ACCIDENTAL DEATH AND DISMEMBERMENT (AD&D) BENEFITS

**NOTE:** The Policy may include an Extension of Death Benefit, an Accelerated Death Benefit or a Living Benefit. If so, please refer to that section for special claim procedures.

## NOTICE AND PROOF OF CLAIM

**Notice of Claim.** Written notice of an accidental death or dismemberment claim must be given within 20 days after the loss occurs; or as soon as reasonably possible after that.* The notice must be sent to the Company's Group Insurance Service Office. It should include:
(1) your name and address; and
(2) the number of the Policy.

**Claim Forms.** When notice of claim is received, the Company will send claim forms for filing the required proof. If the Company does not send the forms within 15 days; then you or your Beneficiary (the claimant) may send the Company written proof of claim in a letter. It should state the nature, date and cause of the loss.

**Proof of Claim.** The Company must be given written proof of claim within 90 days after the date of the loss; or as soon as reasonably possible after that.* Proof of claim must be provided at the claimant's own expense. It must show the nature, date and cause of the loss. In addition to the information requested on the claim form, documentation must include:
(1) A certified copy of the death certificate, for proof of death.
(2) A copy of any police report, for proof of accidental death or dismemberment.
(3) A signed authorization for the Company to obtain more information.
(4) Any other items the Company may reasonably require in support of the claim.

**\* Exception:** Failure to give notice or furnish proof of claim within the required time period will not invalidate or reduce the claim; if it is shown that it was done:
(1) as soon as reasonably possible; and
(2) in no event more than one year after it was required.
These time limits will not apply while the claimant lacks legal capacity.

**EXAM OR AUTOPSY.** At anytime while a claim is pending, the Company may have you examined:
(1) by a Physician of the Company's choice;
(2) as often as reasonably required.
If you fail to cooperate with an examiner or fail to take an exam, without good cause; then the Company may deny benefits, until the exam is completed. In case of death, the Company may also have an autopsy done, where it is not forbidden by law. Any such exam or autopsy will be at the Company's expense.

**TIME OF PAYMENT OF CLAIMS.** Any benefits payable under the Policy will be paid immediately after the Company receives complete proof of claim and confirms liability.

In accord with Indiana law, any accidental death or dismemberment benefits will be paid as follows, when more favorable to the claimant.
(1) **Clean Claim.** The Company must pay a clean claim for AD&D benefits within 45 days after receiving the first written proof of claim. A claim is considered "clean" when:
(a) the first proof of claim is complete;
(b) no part of the claim is contested; and
(c) no other defect prevents prompt payment.
A claim is also considered "clean" when the insurer fails to promptly request more information, or to resolve it, within 45 days after receiving the first written proof of claim.

GL1102-8A 02 IN

L/ADD
01/01/14

## CLAIMS PROCEDURES
### (Continued)

(2) **Defective Claim.** The Company must request more information concerning a defective claim for AD&D benefits within 45 days after receiving the first written proof of claim. It must pay such a claim within 45 days after receiving any additional proof it needs to confirm liability. A claim is considered "defective" if:
    (a) the first written proof of claim is not complete;
    (b) all or part of the claim is contested; or
    (c) some other defect prevents prompt payment.

**TO WHOM PAYABLE--Death.** Any benefits payable for your death will be paid in accord with the Beneficiary, Facility of Payment and Settlement Options sections of the Policy. If the Policy includes Dependent Life Insurance; then any benefits payable for an insured Dependent's death will be paid to:
    (1) you, if you survive that Dependent; or
    (2) your Beneficiary, or in accord with the Facility of Payment section; if you do not survive that Dependent.

**Dismemberment.** If the Policy includes Accidental Death and Dismemberment Benefits; then any benefit, other than your death benefit, will be paid to you.

**NOTICE OF CLAIM DECISION.** The Company will send the claimant a written notice of its claim decision. If the Company denies any part of the claim; then the written notice will explain:
    (1) the reason for the denial, under the terms of the Policy and any internal guidelines;
    (2) how the claimant may request a review of the Company's decision; and
    (3) whether more information is needed to support the claim.

The Company will send this notice within 15 days after resolving the claim. If reasonably possible, the Company will send it within:
    (1) 45 days after receiving the first written proof of claim for any accidental death or dismemberment, Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy; or
    (2) 90 days after receiving the first written proof of a claim for any life insurance benefit available under the Policy.

**Delay Notice.** If the Company needs more than 15 days to process a claim, in a special case; then an extension will be permitted. If needed, the Company will send the claimant a written delay notice:
    (1) by the 15th day after receiving the first proof of claim; and
    (2) every 30 days after that, until the claim is resolved.

The notice will explain the special circumstances which require the delay, and when a decision can be expected. In any event, the Company must send written notice of its decision within:
    (1) 180 days after receiving the first proof of a death or dismemberment claim; or
    (2) 105 days after receiving the first proof of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy.
If the Company fails to do so; then there is a right to an immediate review, as if the claim was denied.

**Exception:** If the Company needs more information from the claimant to process a claim; then it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for claim processing.

**REVIEW PROCEDURE.** The claimant may request a claim review, within:
    (1) 60 days after receiving a denial notice of a death or dismemberment claim; or
    (2) 180 days after receiving a denial notice of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy.

To request a review, the claimant must send the Company a written request, and any written comments or other items to support the claim. The claimant may review certain non-privileged information relating to the request for review.

GL1102-8A 02 IN

15

L/ADD
01/01/14

## CLAIMS PROCEDURES
### (Continued)

**Notice of Decision.** The Company will review the claim and send the claimant a written notice of its decision. The notice will explain the reasons for the Company's decision, under the terms of the Policy and any internal guidelines. If the Company upholds the denial of all or part of the claim; then the notice will also describe:

    (1)   any further appeal procedures available under the Policy;

    (2)   the right to access relevant claim information; and

    (3)   the right to request a state insurance department review, or to bring legal action.

For a death or dismemberment claim, the notice will be sent within 60 days after the Company receives the request for review; or within 120 days, if a special case requires more time. For a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy, the notice will be sent within 45 days after the Company receives the request for review; or within 90 days, if a special case requires more time.

**Delay Notice.** If the Company needs more time to process an appeal, in a special case; then it will send the claimant a written delay notice, by the 30th day after receiving the request for review. The notice will explain:

    (1)   the special circumstances which require the delay;

    (2)   whether more information is needed to review the claim; and

    (3)   when a decision can be expected.

**Exception:** If the Company needs more information from the claimant to process an appeal; then it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for appeal processing.

**Claims Subject to ERISA** (Employee Retirement Income Security Act of 1974). Before bringing a civil legal action under the federal labor law known as ERISA, an employee benefit plan participant or beneficiary must exhaust available administrative remedies. Under the Policy, the claimant must first seek two administrative reviews of the adverse claim decision, in accord with this section. If an ERISA claimant brings legal action under Section 502(a) of ERISA after the required reviews; then the Company will waive any right to assert that he or she failed to exhaust administrative remedies.

**RIGHT OF RECOVERY.** If benefits have been overpaid on any claim; then full reimbursement to the Company is required within 60 days. If reimbursement is not made; then the Company has the right to:

    (1)   reduce future benefits until full reimbursement is made; and

    (2)   recover such overpayments from you, or from your Beneficiary or estate.

Such reimbursement is required whether the overpayment is due to fraud, the Company's error in processing a claim, or any other reason.

**LEGAL ACTIONS.** No legal action to recover any benefits may be brought until 60 days after the required written proof of claim has been given. No such legal action may be brought more than three years after the date written proof of claim is required.

**COMPANY'S DISCRETIONARY AUTHORITY.** Except for the functions that the Policy clearly reserves to the Group Policyholder or Employer, the Company has the authority to:

    (1)   manage the Policy and administer claims under it; and

    (2)   interpret the provisions and resolve questions arising under the Policy.

The Company's authority includes (but is not limited to) the right to:

    (1)   establish and enforce procedures for administering the Policy and claims under it;

    (2)   determine your eligibility for insurance and entitlement to benefits;

    (3)   determine what information the Company reasonably requires to make such decisions; and

    (4)   resolve all matters when a claim review is requested.

Any decision the Company makes, in the exercise of its authority, shall be conclusive and binding; subject to your or your Beneficiary's rights to:

    (1)   request a state insurance department review; or

    (2)   bring legal action.

GL1102-8A 02 IN

L/ADD

01/01/14

16

## NOTICE TO POLICYHOLDERS REGARDING
## FILING COMPLAINTS WITH THE DEPARTMENT OF INSURANCE

**Questions regarding your policy or coverage should be directed to:**

**The Lincoln National Life Insurance Company**
**800-423-2765**

We want you to know that you may contact the Indiana Department of Insurance if you have a complaint or seek assistance from the governmental agency that regulates insurance. To contact the Department of Insurance, write or call:

State of Indiana Department of Insurance
Consumer Services Division
311 West Washington Street, Suite 300
Indianapolis, Indiana 46204

Consumer Hotline: (800) 622-4461; (317) 232-2395

Complaints can be filed electronically at www.in.gov/idoi.

IN NOTICE 05 - P/C

17

01/01/14

## SUMMARY OF INDIANA LIFE AND HEALTH INSURANCE
## GUARANTY ASSOCIATION

The Indiana Life and Health Insurance Guaranty Association provides coverage of claims under some types of policies if the insurer becomes impaired or insolvent. COVERAGE MAY NOT BE AVAILABLE UNDER YOUR POLICY. Even if coverage is provided, there are significant limits and exclusions. Coverage is always conditioned on residence in this state. Other conditions may also preclude coverage.

The Indiana Life and Health Insurance Guaranty Association will respond to any questions you may have which are not answered by this document. Your insurer and agent are prohibited by law from using the existence of the association or its coverage to sell you an insurance policy.

You should not rely of availability of coverage under the Indiana Life and Health Insurance Guaranty Association when selecting an insurer.

You may contact the Indiana Life and Health Insurance Guaranty Association as follows:

Indiana Life and Health Insurance Guaranty Association
251 E. Ohio Street, Suite 1070
Indianapolis, IN  46204
(317) 636-8204
www.inlifega.org

You may contact the Indiana Department of Insurance as follows:

Indiana Department of Insurance
311 W. Washington Street
Indianapolis, IN 46204
(317) 232-2385
www.in.gov/idoi

GAN-GRP-IN NOTICE-P/C 07

01/01/14

## CERTIFICATE AMENDMENT

### TO BE ATTACHED TO THE CERTIFICATE FOR GROUP POLICY NO.: 000010132080

ISSUED TO: Ashley Industrial Moldings, Inc.

Your Certificate is amended by the addition of the following provisions.

### PRIOR INSURANCE CREDIT UPON TRANSFER OF
### LIFE INSURANCE CARRIERS

This provision prevents loss of life insurance coverage for you, which could otherwise occur solely because of a transfer of insurance carriers. The Policy will provide the following Prior Insurance Credit, when it replaces a prior plan.

"Prior Plan" means a prior carrier's group life insurance policy, which the Policy replaced within 1 day of the prior plan's termination date.

**FAILURE TO SATISFY ACTIVE WORK RULE.** Subject to payment of premiums, the Policy will provide life coverage if you:
(1)  were insured under the prior plan on its termination date;
(2)  were otherwise eligible under the Policy; but were not Actively-At-Work due to Injury or Sickness on its Effective Date;
(3)  are not entitled to any extension of life insurance under the prior plan; and
(4)  are not Totally Disabled (as defined in the Extension of Death Benefit section of the Policy) on the date the Policy takes effect.

**AMOUNT OF LIFE INSURANCE.** Until you satisfy the Policy's Active Work rule, the amount of your group life insurance under the Policy will not exceed the amount for which you were insured under the prior plan on its termination date.

This Amendment takes effect on your effective date of coverage under the Policy. In all other respects, your Certificate remains the same.

### THE LINCOLN NATIONAL LIFE INSURANCE COMPANY

_Chas. A. Brady_
Officer of the Company

GL1102-AMEND. PC1

19

Prior Ins. Cred. - Life
01/01/14


**Lincoln**
Financial Group

## LINCOLN FINANCIAL GROUP⁺ PRIVACY PRACTICES NOTICE

The Lincoln Financial Group companies* are committed to protecting your privacy. To provide the products and services you expect from a financial services leader, we must collect personal information about you. **We do not sell your personal information to third parties.** We share your personal information with third parties as necessary to provide you with the products or services you request and to administer your business with us. This Notice describes our current privacy practices. While your relationship with us continues, we will update and send our Privacy Practices Notice as required by law. Even after that relationship ends, we will continue to protect your personal information. **You do not need to take any action because of this Notice, but you do have certain rights as described below.**

### INFORMATION WE MAY COLLECT AND USE

We collect personal information about you to help us identify you as our customer or our former customer, to process your requests and transactions; to offer investment or insurance services to you; to pay your claim; or to tell you about our products or services we believe you may want and use. The type of personal information we collect depends on the products or services you request and may include the following:

- **Information from you**: When you submit your application or other forms, you give us information such as your name, address, Social Security number; and your financial, health, and employment history.

- **Information about your transactions**. We keep information about your transactions with us, such as the products you buy from us; the amount you paid for those products; your account balances; and your payment history.

- **Information from outside our family of companies**: If you are purchasing insurance products, we may collect information from consumer reporting agencies such as your credit history; credit scores; and driving and employment records. With your authorization, we may also collect information, such as medical information from other individuals or businesses.

- **Information from your employer**: If your employer purchases group products from us, we may obtain information about you from your employer in order to enroll you in the plan.

### HOW WE USE YOUR PERSONAL INFORMATION

We may share your personal information within our companies and with certain service providers. They use this information to process transactions you have requested; provide customer service; and inform you of products or services we offer that you may find useful. Our service providers may or may not be affiliated with us. They include financial service providers (for example, third party administrators; broker-dealers; insurance agents and brokers, registered representatives; reinsurers and other financial services companies with whom we have joint marketing agreements). Our service providers also include non-financial companies and individuals (for example, consultants; vendors; and companies that perform marketing services on our behalf). Information we obtain from a report prepared by a service provider may be kept by the service provider and shared with other persons; however, we require our service providers to protect your personal information and to use or disclose it only for the work they are performing for us, or as permitted by law.

When you apply for one of our products, we may share information about your application with credit bureaus. We also may provide information to group policy owners, regulatory authorities and law enforcement officials and to others when we believe in good faith that the law requires disclosure. In the event of a sale of all or part of our businesses, we may share customer information as part of the sale. **We do not sell or share your information with outside marketers who may want to offer you their own products and services; nor do we share information we receive about you from a consumer reporting agency. You do not need to take any action for this benefit.**

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

GB06714

# The Lincoln National Life Insurance Company

A Stock Company     Home Office Location:  Fort Wayne, Indiana
Group Insurance Service Office:  8801 Indian Hills Drive, Omaha, NE 68114-4066 (402) 361-7300

CERTIFIES THAT Group Policy No.       GL 000400001000-12077       has been issued to
The Commerce Trust Company as Trustee for The Lincoln National Life Insurance Company Voluntary Insurance Trust

The Issue Date is January 1, 2011 for the Participating Employer.

Participating Employer:  Ashley Industrial Moldings, Inc.

The insurance is effective only if the Employee is eligible for insurance and becomes and remains insured as provided in the Group Policy.

Certificate of Insurance for Class 1

{INSURED}

{Schedule of Insurance}
          {Coverage}                                          {Insurance Amount}
     {BENEFIT_1}
     {BENEFIT_2}
     {BENEFIT_3}
      BENEFIT_4}
     {BENEFIT_5}

You are entitled to the benefits described in this Certificate if you are eligible for insurance under the provisions of the Policy.  This Certificate replaces any other certificates for the benefits described inside.  As a Certificate of Insurance, it is not a contract of insurance; it only summarizes the provisions of the Policy and is subject to the Policy's terms.

President

## CERTIFICATE OF GROUP LIFE INSURANCE

GL1102 FACE PAGE

{LF_CODE}          {USE_}          {CERT_ID}          01/01/14

Lincoln/Lee 170

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE
## CONTINUED

### DEFINITIONS.

"Beneficiary" means the person(s) named on the Insured Person's enrollment form. The Insured Person may change the Beneficiary by filing a written notice of the change with the Company at its Group Insurance Service Office.

"Common Carrier Accident" means a covered accidental bodily injury, which is sustained while riding as a fare paying passenger (not a pilot, operator or crew member) in or on, boarding or getting off from a Common Carrier.

"Common Carrier" means any land, air or water conveyance operated under a license to transport passengers for hire.

"Intoxicated" shall be defined by the jurisdiction where the accident occurs. The exclusion will apply whether or not the driver is convicted.

"Loss of a Member" includes the following:
    (1)  "Loss of Hand or Foot," means complete severance through or above the wrist or ankle joint.
    (2)  "Loss of an Eye," means total and irrevocable loss of sight in that eye.

GL1101-14.3A 01 IN

21

COMMON CARRIER
01/01/14

Tola, Monica (MR # 000020775102)                          Encounter Date: 06/12/2018

| BP: (Patient refuses)<br>Pulse : 95<br>Temp: 98.6 °F<br>Resp Rate: 20<br>O2 Sat (%): 93 %<br>O2 Device (Oxygen Therapy): room air | BP:<br>Pulse: 108<br>Heart Rate (monitor):<br>Temp: 98 °F<br>Resp Rate: 20<br>O2 Sat (%): 94<br>O2 Device (Oxygen Therapy): room air<br>Flow (L/min): |
|---|---|

## Mental Health/Substance Abuse Assessment

Is the reason for the admission or visit related to a mental health or substance abuse issue (including detox, chapters, overdoses)?: Yes

1. In the past month, have you wished you were dead or wished you could go to sleep and not wake up? : yes
2. In the past month, have you actually had any thoughts of killing yourself? : yes
3. Have you been thinking about how you might kill yourself? : yes
4. Have you had these thoughts and had some intention of acting on them? : yes
6. Have you ever done anything, started to do anything, or prepared to do anything to end your life?: yes

How long ago did you do any of these? : within the last three months
Suicide Protective Factors: willingness to engage in treatment
Suicide Risk Factors: suicidal ideation or intent, hopelessness, use of alcohol to excess, previous suicide attempt (describe below)

## Physical Exam

Constitutional: She is oriented to person, place, and time. She appears well-nourished. No distress.
HENT:
Head: Normocephalic and atraumatic.
Eyes: Conjunctivae are normal. Pupils are equal, round, and reactive to light.
**Positive nystagmus**
Cardiovascular: Normal rate and regular rhythm.
Pulmonary/Chest: Effort normal and breath sounds normal.
Abdominal: There is tenderness. There is no rebound.
Musculoskeletal: Normal range of motion.
Neurological: She is alert and oriented to person, place, and time.
Skin: Skin is warm.
Psychiatric:
**Agitated, Intoxicated and manipulative**
Nursing note and vitals reviewed.

Results for orders placed or performed during the hospital encounter of 06/12/18
**LAB GLUCOSE**

| Result | Value | Ref Range | Status |
|---|---|---|---|
| GLUCOSE | 137 (H) | 70 - 99 mg/dL | Final |

**LAB BUN**

| Result | Value | Ref Range | Status |
|---|---|---|---|
| BUN | 10 | 8 - 26 mg/dL | Final |

**LAB CREATININE**

| Result | Value | Ref Range | Status |
|---|---|---|---|
| CREATININE | 0.69 | 0.60 - 1.10 mg/dL | Final |
| ESTIMATED GFR | 113 | mL/min/1.73m2 | Final |

**LAB TOTAL PROTEIN**

| Result | Value | Ref Range | Status |
|---|---|---|---|



# LAW OFFICE OF

## *LARRY F. WOODS*

24 NORTH FREDERICK AVENUE
OELWEIN, IOWA 50662
PH. (319) 283-3204   FAX (319) 283-1838
lfwoods@trxinc.com

AUG 0 1 2018

July 30, 2016

The Lincoln National Life Insurance Company
Attn: Risk Departments
P. O. Box 2337
Omaha, Nebraska 68103

RE:   Policy Holder: Ashley Industrial Molding,  Inc.
      Policy No:     00400001000-12077
                    000010132080-00000
      Claim Number:  1072315-1127380
      Claimant:     John Lee
      Appeal of denial of accidental death benefits

TO WHOM IT MAY CONCERN:

I  am   the attorney who is representing the  Estate  of John Lee and the designated beneficiary,  Vanessa Lee in  the determination of whether the Life Insurance Policy issued  to John should be paid.   We were unable to resolve this  matter through negotiations.  Thus, I have filed a suit on behalf of both  the John Lee Estate and the beneficiary, Vanessa  Lee. I  have enclosed a copy of the Petition and  Original  Notice that has been prepared and is filed.

The purpose of this letter is two fold.  First, I wanted to  make your company aware of the pending  litigation.   The second  purpose  is to determine if your company  desires  to accept  service  of  the Original  Notice  and  Petition,  or whether I will need to have the Original Notice and  Petition served in accord with the rules.

I will be out of state until about August 12.   If  your company  will  accept  service  of  the  Original  Notice  and Petition, please sign the enclosed Acceptance of Service.  If your company requests that I have The Lincoln National Life

Lincoln National Life Insurance Co.
July 27, 2017
Page 2
Suit by John E. Lee Beneficiary & Estate
Your Claim No.  1072315-1127380


Insurance Company served, kindly advise.  If I have not received a duly executed Acceptance of Service by August  20, 2018, I will presume that serve of process will be necessary.

Thank you for your time and attention in this matter.  I will look forward to hearing from you at your convenience.

Very truly yours,

Larry F. Woods

Enc:   Petition &
       Original Notice
       Acceptance of Service
CC:    Client

IN THE DISTRICT COURT OF IOWA, IN AND FOR FAYETTE COUNTY

---

| | |
|---|---|
| VANESSA LEE, Individually as Executor of the JOHN LEE ESTATE<br>　　　　　Plaintiff,<br>v.<br><br>THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,<br>　　　　　Defendant. | CASE NO. CVCV055206<br><br>**ORIGINAL NOTICE FOR FIRST AMENDED PETITION AT LAW** |

---

TO THE ABOVE-NAMED DEFENDANT: THE LINCOLN NATIONAL LIFE INSURANCE COMPANY

YOU ARE HEREBY NOTIFIED that a Petition has been filed in the office of the Clerk of this Court, naming you as he defendant in the action. A copy of the Petition (any documents filed with it) is attached to this Notice. The attorney for the Plaintiff's is Larry F. Woods, whose address is 24 North Frederick Avenue, Oelwein, IA 50662. That the attorney's telephone number is (319) 283-3204; facsimile number is (319) 283-9193, and e-mail address of lfwoods@trxinc.com

YOU must serve a Motion or Answer within 20 days after service of this Original Notice upon you, and within a reasonable time thereafter, file your Motion or Answer with the Clerk of the Iowa District Court for Fayette County, at the County Courthouse P. O. Box 458 in West Union, Iowa. If you do not, judgment by default may be rendered against you for the relief demanded in the Petition.

If you require the assistance of auxiliary aide or services to participate in court because of admissibility, immediately call your district ADA coordinator at (319) 833-3332. (If you are hearing impaired, call Relay Iowa TY at 1-800-735-2942.)

NOTE: YOU ARE ADVISED TO SEEK LEGAL ADVISE AT ONCE TO PROTECT YOUR INTEREST.

# STATE OF IOWA JUDICIARY

*Case No.* CVCV055206

*County* Fayette

*Case Title* VANESSA LEE V THE LINCOLN MUTUAL INS. CO.

**THIS CASE HAS BEEN FILED IN A COUNTY THAT USES ELECTRONIC FILING.**
Therefore, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless you obtain an exemption from the court, you must file your Appearance and Answer electronically.

You must register through the Iowa Judicial Branch website at http://www.iowacourts.state.ia.us/Efile and obtain a log in and password for the purposes of filing and viewing documents on your case and of receiving service and notices from the court.

**FOR GENERAL RULES AND INFORMATION ON ELECTRONIC FILING, REFER TO THE IOWA COURT RULES CHAPTER 16 PERTAINING TO THE USE OF THE ELECTRONIC DOCUMENT MANAGEMENT SYSTEM:**
http://www.iowacourts.state.ia.us/Efile

**FOR COURT RULES ON PROTECTION OF PERSONAL PRIVACY IN COURT FILINGS, REFER TO DIVISION VI OF IOWA COURT RULES CHAPTER 16:** http://www.iowacourts.state.ia.us/Efile



*Scheduled Hearing:*

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at **(319) 833-3332**  . (If you are hearing impaired, call Relay Iowa TTY at **1-800-735-2942**.)

*Date Issued* 07/27/2018 11:40:51 AM



*District Clerk of* Fayette          *County*
/s/ Katherine Gumm

IN THE DISTRICT COURT OF IOWA, IN AND FOR FAYETTE COUNTY

```
----------------------------------------------------------------
VANESSA LEE, Individually      )
as Executor of the JOHN        )    CASE NO. CVCV055206
LEE ESTATE                     )
        Plaintiff,             )
v.                             )
                               )    FIRST AMENDED
                               )    PETITION AT LAW
THE LINCOLN NATIONAL LIFE      )
INSURANCE COMPANY,             )
        Defendant.             )
----------------------------------------------------------------
```

## COUNT I - BREACH OF CONTRACT

COMES NOW the Plaintiff, Vanessa Lee, Individually and as Executor of the John Lee Estate, and for a cause of action against the Defendant, The Lincoln National Life Insurance Company and states to the Court as follows:

1. That the Plaintiff, Vanessa Lee, Individually and as Executor of the John Lee Estate, is a resident of Quasqueton, Buchanan County, Iowa.

2. That at all times relevant hereto, the Defendant, The Lincoln National Life Insurance Company was an insurance corporation, authorized to and doing business in the State of Iowa.

3. The Defendant, The Lincoln National Life Insurance Company sold an Accidental Death Policy to Ashley Industrial Moldings, Inc., to be provided to said Ashley's employees, as a benefit of said employees employment package.

4. That John Lee was an employee of Ashley Industrial Moldings, Inc., at all time relevant hereto, including up to the time of his death

5. That said policy issued by The Lincoln National Life Insurance Company for Accidental Death was in force and effect while John Lee was in the employment of the Ashley Industrial Moldings, Inc.

6. That John Lee was paying premiums for life insurance coverage by The Lincoln National Life Insurance Company in case of his accidental death.

7. That the Plaintiff, Vanessa Lee, Individually, was a named beneficiary of the Accidental Death Policy issued by The Lincoln National Life Insurance Company , to Ashley Industrial Moldings, Inc., of which John Lee was an employee.

8. The Plaintiff Vanessa Lee, as the Executor of the John Lee Estate, also makes claim on behalf of said John Lee Estate.

9. That on or about the 12th day of July, 2015, John Lee was riding his ATV on private property near Quasqueton, Buchanan County, Iowa.

10. That on said date, John Lee's daughter, Jessica Matthews, went looking for him, when he did not return for dinner.

11. That when Jessica Matthews found John Lee, he was lying on the ground next to the ATV, and was unconscious.

12. John Lee was taken by his daughter back to the campsite, and later he was taken to his home. After being home a short time, John Lee was then transferred to the Buchanan County Health Center or hospital.

13. After examination at the Buchanan County Health Care hospital, John Lee was transferred to the University of Iowa Hospitals and Clinics.

14. As a result of the injuries John Lee sustained when he fell, John Lee died on the 19th day of July, 2015, at the University of Iowa Hospitals and Clinics.

15. The death of John Lee on July 19, 2015, was an accidental death.

16. As a result of the death of John Lee on July 19, 2015, Vanessa Lee, as an Individual and as Executor of the John Lee Estate, she made a claim for benefits under an Insurance Policy issued by the Defendant, The Lincoln National Life Insurance Company .

17. A copy of the insurance policy issued by the Defendant, The Lincoln National Life Insurance Company is attached hereto, marked Exhibit A and made a part of this Petition by this reference as though fully set forth hereat

word for word.

18.   The Defendant, The Lincoln National Life  Insurance Company , sold the policy to and/or through Ashley Industrial Moldings, Inc., located in Oelwein, Fayette County, Iowa.

19.   The  deceased,  John Lee,  worked  at  the  Ashley Industrial  Moldings,  Inc.,  factory  in  Oelwein,  Fayette County, Iowa, at all time relevant hereto.

20.   That  the  Defendant, The  Lincoln  National  Life Insurance  Company  has denied paying the benefits under  the insurance  policy to Vanessa Lee, both as and Individual  and as Executor of the John Lee Estate.

21.   None  of the exceptions contained the  policy  are applicable to the cause of death of John Lee.

22.   The Defendant, The Lincoln National Life  Insurance Company  has breached the contract,  that is attached hereto, marked Exhibit A,  by failing to pay the benefits due to  the Plaintiff, Vanessa Lee in here appropriate capacity.

23.   As a result of the Defendant,  The Lincoln National Life Insurance Company breaching the contract, the Plaintiff, Vanessa Lee has sustained injuries and damages.

24.   The  Plaintiff,  Vanessa Lee damages are  the  face value of the policy that should have been paid.  Said  amount is $100,000.

25. The Plaintiff, Vanessa Lee has also been damaged by the loss of the use of the money since the date of death of John Lee.

26. That the Plaintiff, Vanessa Lee, is entitled to damages in amount fair and reasonable to compensate her for the injuries she has sustained, for prefiling interest at the statutory contract rate for breach of contract, and for interest on the judgment as provided for by law. The amount of injuries and damages sustained by the Plaintiff, Vanessa Lee, is in excess of $10,000.

27. That the Plaintiff, Vanessa Lee, Individually and as Executor of the John Lee Estate demands judgment against the Defendant, The Lincoln National Life Insurance Company for the injuries Plaintiff sustained as a result of the named Defendant breaching the Accidental Death Insurance Policy.

WHEREFORE, the Plaintiff, Vanessa Lee, Individually and as Executor of the John Lee Estate demands Judgment against the Defendant, The Lincoln National Life Insurance Company for the damages she has sustained as a result of the Defendant's Breach of Contract.

IT IS FURTHER PRAYED that the Plaintiff, Vanessa Lee, Individually and as Executor of the John Lee Estate, have for judgment against the Defendant, The Lincoln National Life

Insurance Company, in an amount reasonable and fair to compensate the Plaintiff for the injuries sustained by the Plaintiff, for interest thereon as provided by statute and for the costs of this action. The fair and reasonable amount is in excess of $10,000.

Respectfully submitted,

Larry F. Woods
Attorney at Law
24 North Frederick Avenue
Oelwein, IA 50662
lfwoods@trxinc.com
Ph. 319-283-3204
ATTORNEY FOR THE PLAINTIFF,
VANESSA LEE, Individually and
as the Executor of the
JOHN LEE ESTATE

Original filed by EDMS with the Fayette Clerk of Court

# The Lincoln National Life Insurance Company

A Stock Company    Home Office Location: Fort Wayne, Indiana
Group Insurance Service Office:  8801 Indian Hills Drive, Omaha, NE 68114-4066 (402) 361-7300

CERTIFIES THAT Group Policy No.        GL 000010132080        has been issued to
Ashley Industrial Moldings, Inc.
(The Group Policyholder)

The Issue Date of the Policy is January 1, 2011.

The insurance is effective only if the Employee is eligible for insurance and becomes and remains insured as provided in the Group Policy.

Certificate of Insurance for Class 1

{INSURED}

{Schedule of Insurance}
{Coverage}                                                    {Insurance Amount}
{BENEFIT_1}
{BENEFIT_2}
{BENEFIT_3}
{BENEFIT_4}
{BENEFIT_5}
{BENEFIT_6}
{BENEFIT_7}
{BENEFIT_8}
{BENEFIT_9}
{BENEFIT_10}

You are entitled to the benefits described in this Certificate if you are eligible for insurance under the provisions of the Policy. This Certificate replaces any other certificates for the benefits described inside. As a Certificate of Insurance, it is not a contract of insurance; it only summarizes the provisions of the Policy and is subject to the Policy's terms.

President

EXHIBIT A

## CERTIFICATE OF GROUP LIFE INSURANCE

GL1102 FACE PAGE

{LFGLOGO}          {USER}          {CERT_ID}          01/01/14

## Ashley Industrial Moldings, Inc.
### 000010132080

## SCHEDULE OF INSURANCE

### CLASS 1

All Full-Time Salaried Employees

WAITING PERIOD: 90 days of continuous Active Work (For date insurance begins, refer to "Effective Dates of Coverages" section)

MINIMUM HOURS: 32 hours per week

### LIFE AND AD&D INSURANCE

| Amount of Personal Life Insurance | AD&D Insurance Principal Sum |
|---|---|
| One times Basic Annual Earnings, rounded to the next higher $1,000; subject to a minimum of $10,000 and a maximum of $200,000 | Two times Basic Annual Earnings, rounded to the next higher $1,000; subject to a minimum of $10,000 and a maximum of $200,000 |

Personal Life and AD&D Insurance will be reduced as follows:
- At age 65, benefits will reduce by 33% of the original amount;
- At age 70, benefits will reduce an additional 22% of the original amount.
Benefits will terminate when you retire.

If you first enroll for Personal Life and AD&D Insurance at age 65 or older, the above age reductions will apply to:
- Any Guarantee Issue Amount available without evidence of insurability; and
- The maximum amount of insurance for which you are eligible.

(Effective July 1, 2011) Basic Annual Earnings means your annual base salary or annualized hourly pay from the Employer before taxes on the Determination Date. The "Determination Date" is the last day worked just prior to the loss.

It does not include commissions, bonuses, overtime pay, or any other extra compensation. It does not include income from a source other than the Employer. It will not exceed the amount shown in the Employer's financial records or the amount for which premium has been paid; whichever is less.

GL1102-SB

01/01/14

# TABLE OF CONTENTS

Amount of Insurance ................................................................................3

Definitions ............................................................................................3

Eligibility .............................................................................................4

Effective Dates of Coverages.......................................................................4

Termination of Coverage............................................................................4

Death Benefit.........................................................................................5

Beneficiary............................................................................................5

Assignments ..........................................................................................6

Extension of Death Benefit .........................................................................7

Accelerated Death Benefit ..........................................................................8

Conversion Privilege...............................................................................10

Accidental Death and Dismemberment Insurance ..............................................11

Safe Driver Benefit.................................................................................13

Claims Procedures for Life or Accidental Death and Dismemberment Benefits .......14

Notice................................................................................................17

Prior Insurance Credit Provision .................................................................19

GLI102-TOC

01/01/14

## AMOUNT OF INSURANCE

The amount of your insurance is determined by the Schedule of Insurance in the Policy. The initial amount of coverage is the amount which applies to your class on the day your coverage takes effect. You may become eligible for increases in the amount of insurance in accord with the Schedule of Insurance. Any such increase will take effect on the latest of:

(1)    the first of the Insurance Month which coincides with or follows the date on which you become eligible for the increase; provided you are Actively at Work on that day;

(2)    the day you resume Active Work, if you are not Actively at Work on the day the increase would otherwise take effect; or

(3)    the day any required evidence of insurability is approved by the Company.

Any decrease will take effect on the day of the change; whether or not you are Actively at Work.

## DEFINITIONS

ACTIVE WORK or ACTIVELY AT WORK means an employee's full-time performance of all customary duties of his or her occupation at:

(1)    the EMPLOYER'S place of business; or

(2)    any other business location where the employee is required to travel.

Unless disabled on the prior workday or on the day of absence, an employee will be considered Actively at Work on the following days:

(1)    a Saturday, Sunday or holiday which is not a scheduled workday;

(2)    a paid vacation day, or other scheduled or unscheduled non-workday; or

(3)    an excused or emergency leave of absence (except a medical leave).

COMPANY means The Lincoln National Life Insurance Company, an Indiana corporation; whose Group Insurance Service Office address is 8801 Indian Hills Drive, Omaha, Nebraska 68114-4066.

DAY or DATE means at 12:01 A.M., Standard Time, at the Group Policyholder's place of business; when used with regard to eligibility dates and effective dates. It means 12:00 midnight, Standard Time, at the same place; when used with regard to termination dates.

EMPLOYER means the Group Policyholder or the Participating Employer named on the Face Page.

FULL-TIME EMPLOYEE means an employee of the EMPLOYER:

(1)    whose employment with the EMPLOYER is the employee's principal occupation;

(2)    who is not a temporary or seasonal employee; and

(3)    who is regularly scheduled to work at such occupation at least the number of hours as shown in the Schedule of Insurance.

INSURANCE MONTH means:

(1)    that period of time beginning on the Issue Date of the Policy and extending for one month; and

(2)    each subsequent month beginning on the same day after that.

PERSONAL INSURANCE means the insurance provided by the Policy on Insured Persons.

PHYSICIAN means a licensed practitioner of the healing arts other than the Insured Person or a relative of the Insured Person.

POLICY means the Group Insurance Policy issued by the Company to the Group Policyholder. A copy of the Policy may be examined upon request at the Group Insurance Service Office of the Group Policyholder.

GL1102-1 91

3

(REV)
01/01/14

## ELIGIBILITY

If you are a Full-Time Employee and a member of an employee class shown in the Schedule of Insurance; then you will become eligible for the coverage provided by the Policy on the later of:
(1) the Policy's date of issue; or
(2) the day you complete the Waiting Period.

WAITING PERIOD. (See Schedule of Insurance).

## EFFECTIVE DATES OF COVERAGES

Your insurance is effective on the latest of:
(1) the day you become eligible for the coverage;
(2) the day you resume Active Work, if you are not Actively at Work on the day you become eligible;
(3) the day you make written application for coverage; and sign:
    (a) a payroll deduction order, if you pay any part of the premium; or
    (b) an order to pay premiums from your Section 125 Plan account, if Employer contributions are paid through a Section 125 Plan; or
(4) the day the Company approves your coverage, if evidence of insurability is required.

Evidence of insurability is required if:
(1) you apply for coverage more than 31 days after you become eligible; or
(2) you make written application to re-enroll for coverage after you have requested:
    (a) to cancel your coverage;
    (b) to stop payroll deductions for the coverage; or
    (c) to stop premium payments from your Section 125 Plan account.

EXCEPTION. If your coverage terminates due to an approved leave of absence or a military leave, any Waiting Period or evidence of insurability requirement will be waived upon your return; provided:
(1) you return within six months after the leave begins;
(2) you apply or are enrolled within 31 days after resuming Active Work; and
(3) the reinstated amount of insurance does not exceed the amount which terminated.

## TERMINATION OF COVERAGE

Your coverage terminates on the earliest of:
(1) the day the Policy terminates;
(2) the last day of the Insurance Month in which you request termination;
(3) the last day of the period for which the premium for your insurance has been paid;
(4) the day you cease to be a member of an employee class shown in the Schedule of Insurance;
(5) with respect to any particular insurance benefit, the day the part of the Policy providing that benefit terminates;
(6) the day your employment with the Employer terminates; or
(7) the day you enter the armed services of any state or country on active duty; except for duty of 30 days or less for training in the Reserves or National Guard. (If you send proof of military service, the Company will refund any unearned premium.)

Ceasing Active Work terminates your eligibility. However, it may be possible to continue all or part of your insurance during a temporary layoff, leave of absence or military leave; or while you are unable to work due to sickness or injury. The conditions concerning such a continuance may be found in the Policy. See your Employer for this information.

GL1102-2 93                                    (FMLA)

4                                         01/01/14

## DEATH BENEFIT

Upon receipt of satisfactory proof of your death, the Company will pay a death benefit equal to the amount of Personal Life Insurance in effect on the date of your death. The benefit will be paid in accord with the Beneficiary section. Arrangements may be made to have this death benefit paid in installments.

## BENEFICIARY

Your Beneficiary is the person or persons named on your enrollment card. The Beneficiary may be changed in accord with the terms of the Policy. If you have not named a Beneficiary, or if no named Beneficiary is living when you die; then the death benefit will be paid to your:

    (1)    surviving spouse; or, if none
    (2)    surviving child or children in equal shares; or, if none
    (3)    surviving parent or parents in equal shares; or, if none
    (4)    surviving brothers and sisters in equal shares; or, if none
    (5)    estate, or in accord with the Facility of Payment section of the Policy.

GL1102-3.0A 96

Pref. Bene.-No Ext.
01/01/14

## ASSIGNMENTS

Personal Life Insurance and Accidental Death Insurance may be assigned. The assignments allowed under the Policy are absolute assignments and funeral assignments as described below.

No assignment will be binding on the Company unless and until:
    (1)   it is made on a form furnished by the Company;
    (2)   the original is completed and filed with the Company at its Group Insurance Service Office; and
    (3)   it is approved by the Company.
The Company and the Employer do not assume responsibility for the validity or effect of an assignment.

ABSOLUTE ASSIGNMENTS. You may make an irrevocable assignment of your Personal Life Insurance and Accidental Death Insurance as a gift (with no consideration), providing you have the legal capacity and the mental capacity to do so. It may be made to a trust or to one or more of your relatives, their estates, or to a trustee of a trust under which one of the relatives is a beneficiary.

The term "relatives" includes, but is not limited to, your spouse, parents, grandparents, aunts, uncles, siblings, children, adopted children, stepchildren, and grandchildren.

In some states, community property is an established form of ownership that must be considered in making an assignment. If you make an absolute assignment to two or more assignees, such assignees will be joint owners with the right of survivorship between them. You should consult with your own legal advisor before making an assignment.

Once the assignment has been recorded by the Company, you can no longer change the beneficiary and cannot apply for conversion. Only the assignee can change the beneficiary designation if the previous designation is revocable. An assignment will have no effect on a prior irrevocable beneficiary designation. Only the assignee can apply for conversion but only when the Conversion Privilege provision would have been available to you in the absence of the assignment under the Policy.

An absolute assignment cannot be used as a collateral assignment.

FUNERAL ASSIGNMENTS. Upon your death, the beneficiary may assign the Personal Life Insurance benefit and Accidental Death Insurance benefit to a funeral home for payment of burial expenses. After payment has been made for the burial expenses to the assigned funeral home, the remaining death benefit is then paid in accord with the Beneficiary and Settlement Options sections of the Policy.

GL1102-3.0C 01

01/01/14

## EXTENSION OF DEATH BENEFIT IF YOU BECOME TOTALLY DISABLED

Your life insurance will be continued, **without payment of premiums**, if:
    (1)   you become Totally Disabled while insured and before reaching age 60;
    (2)   you remain Totally Disabled for at least 6 months in a row; and
    (3)   you submit satisfactory proof within the 7th through 12th months of disability; or:
        (a)   as soon as reasonably possible after that; but
        (b)   not later than the 24th month of disability, unless you were legally incapacitated.

**PREMIUM PAYMENT.** Premium payments must continue until you are approved for this benefit, or the Policy terminates, if earlier. Upon receipt of satisfactory proof, the Company will refund up to 12 months' premium paid for your life insurance, from your 1st day of Total Disability.

**DEFINITION.** For this benefit, Total Disability or Totally Disabled means you:
    (1)   are unable, due to sickness or injury, to engage in any employment or occupation for which you are or become qualified by reason of education, training, or experience; and
    (2)   are not engaging in any gainful employment or occupation.

**AMOUNT CONTINUED.** The amount of Personal Life Insurance and any Dependent Life Insurance continued will be subject to the reductions and terminations in effect under the Policy on the day your Total Disability begins. Any Accidental Death and Dismemberment Benefit will not be continued.

**ADDITIONAL PROOF.** From time to time, you must submit proof that your Total Disability is continuing. Proof will be at your expense; unless the Company requests to have you examined by a Physician of its choice. If you die after submitting proof, further proof must be submitted to the Company showing that you remained continuously and Totally Disabled until death. If you die within 12 months after Total Disability begins, but before submitting proof; then your death benefit will still be paid under the terms of the Policy. But the Company must first receive satisfactory proof of your continuous Total Disability, from your last day of Active Work until your date of death.

**TERMINATION.** Any life insurance continued under this section will terminate automatically on:
    (1)   the day you cease to be Totally Disabled;
    (2)   the day you fail to take a required medical examination;
    (3)   the 60th day after the Company mails a request for additional proof, if it is not given;
    (4)   the effective date of your individual conversion policy, with respect to any amount of life insurance converted in accord with the Conversion Privilege section; or
    (5)   the day you reach Social Security Normal Retirement Age (SSNRA), as shown in the Schedule of Insurance (whichever occurs first).

If your Total Disability ends, and you **do not return** to a class eligible for Policy coverage; then you may exercise the Conversion Privilege. If your Total Disability ends, and you **do return** to an eligible class; then your Policy coverage will resume when premium payments are resumed, and any conversion policy is surrendered as provided in the Policy.

GL1102-3.1 97

7

Ext. to SSNRA
01/01/14

## ACCELERATED DEATH BENEFIT

BENEFIT. The Accelerated Death Benefit is an advance payment of part of your Personal Life Insurance. It may be paid to you, in a lump sum, once during your lifetime.

To qualify, you must:
(1)  have satisfied the Active Work requirement under the Policy;
(2)  have been insured under the Policy:
  (a)  on the date of an injury which results in a Terminal condition; or
  (b)  for 30 days before being diagnosed Terminal as a result of sickness; and
(3)  have at least $2,000 of Personal Life Insurance under the Policy on the day before the Accelerated Death Benefit is paid.

Receiving the Accelerated Death Benefit will reduce the Remaining Life Insurance and the Death Benefit payable at death, as shown on the next page.

"Claimant," as used in this section, means the Terminal Insured Person for whom the Accelerated Death Benefit is requested.

"Terminal" means you have a medical condition which is expected to result in death within 12 months, despite appropriate medical treatment.

APPLYING FOR THE BENEFIT. To withdraw the Accelerated Death Benefit, you (or your legal representative) must send the Company:
(1)  written election of the Accelerated Death Benefit, on forms supplied by the Company; and
(2)  satisfactory proof that the Claimant is Terminal, including a Physician's written statement.

The Company reserves the right to decide whether such proof is satisfactory.

Before paying an Accelerated Death Benefit, the Company must also receive the written consent of any irrevocable beneficiary, assignee or bankruptcy court with an interest in the benefit. (See Limitations 3, 4, and 5.)

**NOTE: THIS IS NOT A LONG-TERM CARE POLICY. RECEIVING THIS ACCELERATED DEATH BENEFIT WILL REDUCE THE BENEFIT PAYABLE AT DEATH. ANY AMOUNT WITHDRAWN MAY BE TAXABLE INCOME, SO YOU SHOULD CONSULT A TAX ADVISOR BEFORE APPLYING FOR THIS BENEFIT.**

AMOUNT OF THE BENEFIT. You may elect to withdraw an Accelerated Death Benefit in any $1,000 increment; subject to:
(1)  a minimum of $1,000 or 10% of the Claimant's amount of Life Insurance (whichever is greater); and
(2)  a maximum of $250,000 or 75% of the Claimant's amount of Life Insurance (whichever is less).

To determine the Accelerated Death Benefit, the Company will use the lesser of A or B below:
A.  the Claimant's amount of Life Insurance which is in force on the day before the Accelerated Death Benefit is paid; or
B.  the Claimant's amount of Life Insurance which would be in force 12 months after that date; if the coverage is scheduled to reduce, due to age, within 12 months after the Accelerated Death Benefit is paid.

GL1102-3.8 01 DAY

ADB-DEP.

8

01/01/14

ADMINISTRATIVE CHARGE: NONE

WITHDRAWAL FEE: NONE

EFFECT ON AMOUNT OF LIFE INSURANCE. "Remaining Life Insurance" means the amount of Life Insurance which remains in force on the Claimant's life after an Accelerated Death Benefit is paid. The Remaining Life Insurance will equal:
  (1)  the Claimant's amount of Life Insurance which was used to determine the Accelerated Death Benefit (A or B above); minus
  (2)  any percentage by which the Claimant's coverage is scheduled to reduce, due to age; if the reduction occurs more than 12 months after the Accelerated Death Benefit is paid, and while he or she is still living; minus
  (3)  the amount of the Accelerated Death Benefit withdrawn.

PREMIUM: There is no additional charge for this benefit. Continuation of the Remaining Life Insurance will be subject to timely payment of the premium for the reduced amount; unless you qualify for waiver of premium under the Policy's Extension of Death Benefit provision, if included.

CONDITIONS. If the Claimant exercises the Conversion Privilege after an Accelerated Death Benefit is paid, the amount of the conversion policy will not exceed the amount of his or her Remaining Life Insurance. If the Claimant has Accidental Death and Dismemberment benefits under the Policy, the Principal Sum will not be affected by the payment of an Accelerated Death Benefit.

EFFECT ON DEATH BENEFIT. When the Claimant dies after an Accelerated Death Benefit is paid, the amount of Remaining Life Insurance in force on the date of death will be paid as a Death Benefit. Your Death Benefit will be paid in accord with the Beneficiary section of the Policy. If the Claimant dies after application for an Accelerated Death Benefit has been made, but before the Company has made payment; then the request will be void and no Accelerated Death Benefit will be paid. The amount of Life Insurance in force on the date of death will be paid in accord with Policy provisions.

EFFECT ON TAXES AND GOVERNMENT BENEFITS. Any Accelerated Death Benefit amount withdrawn may be taxable income to you. Receipt of the Accelerated Death Benefit may also affect the Claimant's eligibility for Medicaid, Supplemental Security Income and other government benefits. The Claimant should consult his or her own tax and legal advisor before applying for an Accelerated Death Benefit. The Company is not responsible for any tax owed or government benefit denied, as a result of the Accelerated Death Benefit payment.

LIMITATIONS. No Accelerated Death Benefit will be paid:
  (1)  if any required premium is due and unpaid;
  (2)  on any conversion policy purchased in accord with the Conversion Privilege;
  (3)  without the written approval of the bankruptcy court, if you have filed for bankruptcy;
  (4)  without the written consent of the beneficiary, if you have named an irrevocable beneficiary;
  (5)  without the written consent of the assignee, if you have assigned your rights under the Policy;
  (6)  if any part of the Life Insurance must be paid to your child, spouse or former spouse; pursuant to a legal separation agreement, divorce decree, child support order or other court order;
  (7)  if the Claimant is Terminal due to a suicide attempt, while sane or insane; or due to an intentionally self-inflicted injury;
  (8)  if a government agency requires you or the Claimant to use the Accelerated Death Benefit to apply for, receive or continue a government benefit or entitlement; or
  (9)  if an Accelerated Death Benefit has been previously paid for the Claimant under the Policy.

GL1102-3.8 01 DAY

9

ADB-DEP.
01/01/14

## CONVERSION PRIVILEGE

If your insurance or insurance on a Dependent terminates for any reason except:
    (1)    termination or amendment of the Policy; or
    (2)    your request for:
        (a)    termination of insurance; or
        (b)    cancellation of your payroll deductions,
an individual life policy, known as a conversion policy, may be purchased without evidence of insurability.

To purchase a conversion policy, application and payment of the first premium must be made within 31 days after the life insurance is terminated.

A conversion policy will:
    (1)    be in an amount not to exceed the amount of life insurance which was terminated; less the amount of any group life insurance for which the person becomes eligible within 31 days after insurance terminates;
    (2)    be on any form (except term) then issued by the Company at the age and amount for which application is made;
    (3)    be issued at the person's age at nearest birthday;
    (4)    be issued without disability or other supplemental benefits; and
    (5)    require premiums based on the class of risk to which the person then belongs.

A conversion policy also may be purchased if:
    (1)    all or part of your insurance or insurance on a Dependent terminates due to amendment or termination of the Policy; and
    (2)    the person applying for the conversion policy has been covered continuously under the Policy for at least 5 years.

The amount of the conversion policy may not exceed the lesser of:
    (1)    $10,000; or
    (2)    the amount of life insurance which terminates, less the amount of any group life insurance for which the person becomes eligible within 31 days after the termination.

The conversion policy will take effect on the later of:
    (1)    its date of issue; or
    (2)    31 days after the date the insurance terminated.

If death occurs during the 31 day conversion period, the Company will pay the life insurance which could have been converted even if no one applied for the conversion policy.

When your insurance terminates, written notice of your right to convert will be given to you.

If written notice is not given to you at least 15 days before the end of the 31 day conversion period, an additional period in which to convert will be granted. Any such extension of the conversion period will expire on the earliest of:
    (1)    15 days after you are given the written notice; or
    (2)    60 days after the end of the 31 day conversion period, even if you are never given such notice.

No death benefit will be payable under the Policy after the 31 day conversion period has expired, even though the right to convert may be extended.

GL1102-4 IN

DEP. - $10,000
01/01/14

10

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

**DEATH OR DISMEMBERMENT BENEFIT FOR AN INSURED PERSON.** The Company will pay the benefit listed below, if:
    (1)   you sustain an accidental bodily injury while insured under this provision; and
    (2)   that injury directly causes one of the following losses within 365 days after the date of the accident.
The loss must result directly from the injury and from no other causes.

| LOSS | BENEFIT FOR COMMON CARRIER ACCIDENT | BENEFIT FOR OTHER COVERED ACCIDENT |
|---|---|---|
| Loss of Life | 2 Times Principal Sum | Principal Sum |
| Loss of One Member (Hand, Foot or Eye) | Principal Sum | 1/2 Principal Sum |
| Loss of Two or More Members | 2 Times Principal Sum | Principal Sum |

The Principal Sum for your class is shown in the Schedule of Insurance.

**MAXIMUM PER PERSON.** If you sustain more than one loss resulting from the same accident, the benefit:
    (1)   will be the one largest amount listed;
    (2)   will not exceed two times the Principal Sum for all of your combined losses resulting from a Common Carrier Accident; and
    (3)   will not exceed the Principal Sum for all of your combined losses resulting from any other covered accident.

**TO WHOM PAYABLE.** Benefits for your loss of life will be paid in accord with the Beneficiary section. All other benefits will be paid to you.

**LIMITATIONS.** Benefits are not payable for any loss to which a contributing cause is:
    (1)   intentional self-inflicted injury or self-destruction;
    (2)   disease, bodily or mental infirmity, or medical or surgical treatment of these;
    (3)   participation in a riot;
    (4)   duty as a member of any military, naval or air force;
    (5)   war or any act of war, declared or undeclared;
    (6)   participation in the commission of a felony;
    (7)   voluntary use of drugs; except when prescribed by a Physician;
    (8)   travel or flight in any aircraft, including balloons and gliders; except as a fare paying passenger on a regularly scheduled flight; or
    (9)   driving a vehicle while intoxicated.

GL1102-6.3A 01 IN

COMMON CARRIER
01/01/14

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE
## CONTINUED

### DEFINITIONS.

"Beneficiary" means the person(s) named on your enrollment form. You may change the Beneficiary by filing a written notice of the change with the Company at its Group Insurance Service Office.

"Common Carrier Accident" means a covered accidental bodily injury, which is sustained while riding as a fare paying passenger (not a pilot, operator or crew member) in or on, boarding or getting off from a Common Carrier

"Common Carrier" means any land, air or water conveyance operated under a license to transport passengers for hire.

"Intoxicated" shall be defined by the jurisdiction where the accident occurs. The exclusion will apply whether or not the driver is convicted.

"Loss of a Member" includes the following:
    (1)    "Loss of Hand or Foot," means complete severance through or above the wrist or ankle joint.
    (2)    "Loss of an Eye," means total and irrevocable loss of sight in that eye.

GL1102-6.3A 01 IN

12

COMMON CARRIER
01/01/14

## SAFE DRIVER BENEFIT

BENEFIT. If you die as a direct result of a covered auto accident, for which Accidental Death and Dismemberment Benefits are payable; then:
  (1)   an additional Seat Belt Benefit will be payable, if you were wearing a properly fastened seat belt at the time of the accident; and
  (2)   an additional Air Bag Benefit will be payable, if the auto was equipped with air bag(s).

The Seat Belt Benefit equals $10,000 or 10% of the Principal Sum, whichever is less; and the Air Bag Benefit equals $10,000 or 10% of the Principal Sum, whichever is less. The Seat Belt Benefit and the Air Bag Benefit will not be less than $1,000. The Principal Sum is the amount payable because of the Insured Person's accidental death.

A copy of the police report must be submitted with the claim. The position of the seat belt or presence of an air bag must be certified by:
  (1)   the official accident report; or
  (2)   the coroner, traffic officer or other investigating officer.
Upon receipt of satisfactory written proof, the additional benefit will be paid in accord with the Beneficiary section.

DEFINITIONS. As used in this provision:

"Auto" means a 4-wheel passenger car, station wagon, jeep, pick-up truck or van-type car. It must be licensed for use on public highways. It includes a car owned or leased by the Employer.

"Intoxicated," "Impaired," or "Under the Influence of Drugs" shall be defined as by the jurisdiction where the accident occurs.

"Seat Belt" means a properly installed:
  (1)   seat belt or lap and shoulder restraint; or
  (2)   other restraint approved by the National Highway Traffic Safety Administration.

LIMITATIONS. Safe Driver Benefits will not be paid if:
  (1)   the Accidental Death and Dismemberment Benefit is not paid under the Policy for your death; or
  (2)   at the time of the accident, you or any other person who was driving the auto in which you were traveling:
       (a)   was driving without a valid drivers' license;
       (b)   was driving in excess of the legal speed limit; or
       (c)   was driving while intoxicated, impaired, or under the influence of drugs (except for drugs taken as prescribed by a Physician for the driver's use).
  The above limitations will apply, whether or not the driver is convicted.

GL1102-6.15A

13

Seat Belt & Air Bag
01/01/14

## CLAIMS PROCEDURES
## FOR LIFE OR ACCIDENTAL DEATH AND DISMEMBERMENT (AD&D) BENEFITS

**NOTE:** The Policy may include an Extension of Death Benefit, an Accelerated Death Benefit or a Living Benefit. If so, please refer to that section for special claim procedures.

### NOTICE AND PROOF OF CLAIM

**Notice of Claim.** Written notice of an accidental death or dismemberment claim must be given within 20 days after the loss occurs; or as soon as reasonably possible after that.* The notice must be sent to the Company's Group Insurance Service Office. It should include:
  (1)   your name and address; and
  (2)   the number of the Policy.

**Claim Forms.** When notice of claim is received, the Company will send claim forms for filing the required proof. If the Company does not send the forms within 15 days; then you or your Beneficiary (the claimant) may send the Company written proof of claim in a letter. It should state the nature, date and cause of the loss.

**Proof of Claim.** The Company must be given written proof of claim within 90 days after the date of the loss; or as soon as reasonably possible after that.* Proof of claim must be provided at the claimant's own expense. It must show the nature, date and cause of the loss. In addition to the information requested on the claim form, documentation must include:
  (1)   A certified copy of the death certificate, for proof of death.
  (2)   A copy of any police report, for proof of accidental death or dismemberment.
  (3)   A signed authorization for the Company to obtain more information.
  (4)   Any other items the Company may reasonably require in support of the claim.

**\* Exception:** Failure to give notice or furnish proof of claim within the required time period will not invalidate or reduce the claim; if it is shown that it was done:
  (1)   as soon as reasonably possible; and
  (2)   in no event more than one year after it was required.
These time limits will not apply while the claimant lacks legal capacity.

**EXAM OR AUTOPSY.** At anytime while a claim is pending, the Company may have you examined:
  (1)   by a Physician of the Company's choice;
  (2)   as often as reasonably required.
If you fail to cooperate with an examiner or fail to take an exam, without good cause; then the Company may deny benefits, until the exam is completed. In case of death, the Company may also have an autopsy done, where it is not forbidden by law. Any such exam or autopsy will be at the Company's expense.

**TIME OF PAYMENT OF CLAIMS.** Any benefits payable under the Policy will be paid immediately after the Company receives complete proof of claim and confirms liability.

In accord with Indiana law, any accidental death or dismemberment benefits will be paid as follows, when more favorable to the claimant.
  (1)   **Clean Claim.** The Company must pay a clean claim for AD&D benefits within 45 days after receiving the first written proof of claim. A claim is considered "clean" when:
    (a)   the first proof of claim is complete;
    (b)   no part of the claim is contested; and
    (c)   no other defect prevents prompt payment.
    A claim is also considered "clean" when the insurer fails to promptly request more information, or to resolve it, within 45 days after receiving the first written proof of claim.

GL1102-8A 02 IN

L/ADD
01/01/14

## CLAIMS PROCEDURES
### (Continued)

(2) **Defective Claim.** The Company must request more information concerning a defective claim for AD&D benefits within 45 days after receiving the first written proof of claim. It must pay such a claim within 45 days after receiving any additional proof it needs to confirm liability. A claim is considered "defective" if:
  (a) the first written proof of claim is not complete;
  (b) all or part of the claim is contested; or
  (c) some other defect prevents prompt payment.

**TO WHOM PAYABLE--Death.** Any benefits payable for your death will be paid in accord with the Beneficiary, Facility of Payment and Settlement Options sections of the Policy. If the Policy includes Dependent Life Insurance; then any benefits payable for an insured Dependent's death will be paid to:
  (1) you, if you survive that Dependent; or
  (2) your Beneficiary, or in accord with the Facility of Payment section; if you do not survive that Dependent.

**Dismemberment.** If the Policy includes Accidental Death and Dismemberment Benefits; then any benefit, other than your death benefit, will be paid to you.

**NOTICE OF CLAIM DECISION.** The Company will send the claimant a written notice of its claim decision. If the Company denies any part of the claim; then the written notice will explain:
  (1) the reason for the denial, under the terms of the Policy and any internal guidelines;
  (2) how the claimant may request a review of the Company's decision; and
  (3) whether more information is needed to support the claim.

The Company will send this notice within 15 days after resolving the claim. If reasonably possible, the Company will send it within:
  (1) 45 days after receiving the first written proof of claim for any accidental death or dismemberment, Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy; or
  (2) 90 days after receiving the first written proof of a claim for any life insurance benefit available under the Policy.

**Delay Notice.** If the Company needs more than 15 days to process a claim, in a special case; then an extension will be permitted. If needed, the Company will send the claimant a written delay notice:
  (1) by the 15th day after receiving the first proof of claim; and
  (2) every 30 days after that, until the claim is resolved.

The notice will explain the special circumstances which require the delay, and when a decision can be expected. In any event, the Company must send written notice of its decision within:
  (1) 180 days after receiving the first proof of a death or dismemberment claim; or
  (2) 105 days after receiving the first proof of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy.
If the Company fails to do so; then there is a right to an immediate review, as if the claim was denied.

**Exception:** If the Company needs more information from the claimant to process a claim; then it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for claim processing.

**REVIEW PROCEDURE.** The claimant may request a claim review, within:
  (1) 60 days after receiving a denial notice of a death or dismemberment claim; or
  (2) 180 days after receiving a denial notice of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy.

To request a review, the claimant must send the Company a written request, and any written comments or other items to support the claim. The claimant may review certain non-privileged information relating to the request for review.

GL1102-8A 02 IN

15

L/ADD
01/01/14

 Lincoln/Lee 199

## CLAIMS PROCEDURES
### (Continued)

**Notice of Decision.** The Company will review the claim and send the claimant a written notice of its decision. The notice will explain the reasons for the Company's decision, under the terms of the Policy and any internal guidelines. If the Company upholds the denial of all or part of the claim; then the notice will also describe:

    (1)   any further appeal procedures available under the Policy;

    (2)   the right to access relevant claim information; and

    (3)   the right to request a state insurance department review, or to bring legal action.

For a death or dismemberment claim, the notice will be sent within 60 days after the Company receives the request for review; or within 120 days, if a special case requires more time. For a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy, the notice will be sent within 45 days after the Company receives the request for review; or within 90 days, if a special case requires more time.

**Delay Notice.** If the Company needs more time to process an appeal, in a special case; then it will send the claimant a written delay notice, by the 30th day after receiving the request for review. The notice will explain:

    (1)   the special circumstances which require the delay;

    (2)   whether more information is needed to review the claim; and

    (3)   when a decision can be expected.

**Exception:** If the Company needs more information from the claimant to process an appeal; then it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for appeal processing.

**Claims Subject to ERISA** (Employee Retirement Income Security Act of 1974). Before bringing a civil legal action under the federal labor law known as ERISA, an employee benefit plan participant or beneficiary must exhaust available administrative remedies. Under the Policy, the claimant must first seek two administrative reviews of the adverse claim decision, in accord with this section. If an ERISA claimant brings legal action under Section 502(a) of ERISA after the required reviews; then the Company will waive any right to assert that he or she failed to exhaust administrative remedies.

**RIGHT OF RECOVERY.** If benefits have been overpaid on any claim; then full reimbursement to the Company is required within 60 days. If reimbursement is not made; then the Company has the right to:

    (1)   reduce future benefits until full reimbursement is made; and

    (2)   recover such overpayments from you, or from your Beneficiary or estate.

Such reimbursement is required whether the overpayment is due to fraud, the Company's error in processing a claim, or any other reason.

**LEGAL ACTIONS.** No legal action to recover any benefits may be brought until 60 days after the required written proof of claim has been given. No such legal action may be brought more than three years after the date written proof of claim is required.

**COMPANY'S DISCRETIONARY AUTHORITY.** Except for the functions that the Policy clearly reserves to the Group Policyholder or Employer, the Company has the authority to:

    (1)   manage the Policy and administer claims under it; and

    (2)   interpret the provisions and resolve questions arising under the Policy.

The Company's authority includes (but is not limited to) the right to:

    (1)   establish and enforce procedures for administering the Policy and claims under it;

    (2)   determine your eligibility for insurance and entitlement to benefits;

    (3)   determine what information the Company reasonably requires to make such decisions; and

    (4)   resolve all matters when a claim review is requested.

Any decision the Company makes, in the exercise of its authority, shall be conclusive and binding; subject to your or your Beneficiary's rights to:

    (1)   request a state insurance department review; or

    (2)   bring legal action.

GL1102-8A 02 IN

16

L/ADD
01/01/14

Lincoln/Lee 200

## NOTICE TO POLICYHOLDERS REGARDING
## FILING COMPLAINTS WITH THE DEPARTMENT OF INSURANCE

**Questions regarding your policy or coverage should be directed to:**

**The Lincoln National Life Insurance Company**
**800-423-2765**

We want you to know that you may contact the Indiana Department of Insurance if you have a complaint or seek assistance from the governmental agency that regulates insurance. To contact the Department of Insurance, write or call:

State of Indiana Department of Insurance
Consumer Services Division
311 West Washington Street, Suite 300
Indianapolis, Indiana 46204

Consumer Hotline: (800) 622-4461; (317) 232-2395

Complaints can be filed electronically at www.in.gov/idoi.

IN NOTICE 05 - P/C

17

01/01/14

## SUMMARY OF INDIANA LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION

The Indiana Life and Health Insurance Guaranty Association provides coverage of claims under some types of policies if the insurer becomes impaired or insolvent. COVERAGE MAY NOT BE AVAILABLE UNDER YOUR POLICY. Even if coverage is provided, there are significant limits and exclusions. Coverage is always conditioned on residence in this state. Other conditions may also preclude coverage.

The Indiana Life and Health Insurance Guaranty Association will respond to any questions you may have which are not answered by this document. Your insurer and agent are prohibited by law from using the existence of the association or its coverage to sell you an insurance policy.

You should not rely of availability of coverage under the Indiana Life and Health Insurance Guaranty Association when selecting an insurer.

You may contact the Indiana Life and Health Insurance Guaranty Association as follows:

Indiana Life and Health Insurance Guaranty Association
251 E. Ohio Street, Suite 1070
Indianapolis, IN 46204
(317) 636-8204
www.inlifega.org

You may contact the Indiana Department of Insurance as follows:

Indiana Department of Insurance
311 W. Washington Street
Indianapolis, IN 46204
(317) 232-2385
www.in.gov/idoi

GAN-GRP-IN NOTICE-P/C 07

18

01/01/14

## CERTIFICATE AMENDMENT

TO BE ATTACHED TO THE CERTIFICATE FOR GROUP POLICY NO.: 000010132080

ISSUED TO: Ashley Industrial Moldings, Inc.

Your Certificate is amended by the addition of the following provisions.

### PRIOR INSURANCE CREDIT UPON TRANSFER OF LIFE INSURANCE CARRIERS

This provision prevents loss of life insurance coverage for you, which could otherwise occur solely because of a transfer of insurance carriers. The Policy will provide the following Prior Insurance Credit, when it replaces a prior plan.

"Prior Plan" means a prior carrier's group life insurance policy, which the Policy replaced within 1 day of the prior plan's termination date.

FAILURE TO SATISFY ACTIVE WORK RULE. Subject to payment of premiums, the Policy will provide life coverage if you:
    (1)    were insured under the prior plan on its termination date;
    (2)    were otherwise eligible under the Policy; but were not Actively-At-Work due to Injury or Sickness on its Effective Date;
    (3)    are not entitled to any extension of life insurance under the prior plan; and
    (4)    are not Totally Disabled (as defined in the Extension of Death Benefit section of the Policy) on the date the Policy takes effect.

AMOUNT OF LIFE INSURANCE. Until you satisfy the Policy's Active Work rule, the amount of your group life insurance under the Policy will not exceed the amount for which you were insured under the prior plan on its termination date.

This Amendment takes effect on your effective date of coverage under the Policy. In all other respects, your Certificate remains the same.

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

_____
Officer of the Company

GL1102-AMEND. PC1

19

Prior Ins. Cred. - Life
01/01/14



## LINCOLN FINANCIAL GROUP® PRIVACY PRACTICES NOTICE

The Lincoln Financial Group companies* are committed to protecting your privacy. To provide the products and services you expect from a financial services leader, we must collect personal information about you. **We do not sell your personal information to third parties.** We share your personal information with third parties as necessary to provide you with the products or services you request and to administer your business with us. This Notice describes our current privacy practices. While your relationship with us continues, we will update and send our Privacy Practices Notice as required by law. Even after that relationship ends, we will continue to protect your personal information. **You do not need to take any action because of this Notice, but you do have certain rights as described below.**

### INFORMATION WE MAY COLLECT AND USE

We collect personal information about you to help us identify you as our customer or our former customer; to process your requests and transactions; to offer investment or insurance services to you; to pay your claim; or to tell you about our products or services we believe you may want and use. The type of personal information we collect depends on the products or services you request and may include the following:

- **Information from you:** When you submit your application or other forms, you give us information such as your name, address, Social Security number; and your financial, health, and employment history.

- **Information about your transactions.** We keep information about your transactions with us, such as the products you buy from us; the amount you paid for those products; your account balances; and your payment history.

- **Information from outside our family of companies:** If you are purchasing insurance products, we may collect information from consumer reporting agencies such as your credit history; credit scores; and driving and employment records. With your authorization, we may also collect information, such as medical information from other individuals or businesses.

- **Information from your employer:** If your employer purchases group products from us, we may obtain information about you from your employer in order to enroll you in the plan.

### HOW WE USE YOUR PERSONAL INFORMATION

We may share your personal information within our companies and with certain service providers. They use this information to process transactions you have requested; provide customer service; and inform you of products or services we offer that you may find useful. Our service providers may or may not be affiliated with us. They include financial service providers (for example, third party administrators; broker-dealers; insurance agents and brokers; registered representatives; reinsurers and other financial services companies with whom we have joint marketing agreements). Our service providers also include non-financial companies and individuals (for example, consultants; vendors; and companies that perform marketing services on our behalf). Information we obtain from a report prepared by a service provider may be kept by the service provider and shared with other persons; however, we require our service providers to protect your personal information and to use or disclose it only for the work they are performing for us, or as permitted by law.

When you apply for one of our products, we may share information about your application with credit bureaus. We also may provide information to group policy owners, regulatory authorities and law enforcement officials and to others when we believe in good faith that the law requires disclosure. In the event of a sale of all or part of our businesses, we may share customer information as part of the sale. **We do not sell or share your information with outside marketers who may want to offer you their own products and services; nor do we share information we receive about you from a consumer reporting agency. You do not need to take any action for this benefit.**

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

GB06714

## SECURITY OF INFORMATION

We have an important responsibility to keep your information safe. We use safeguards to protect your information from unauthorized disclosure. Our employees are authorized to access your information only when they need it to provide you with products, services, or to maintain your accounts. Employees who have access to your personal information are required to keep it confidential. Employees are trained on the importance of data privacy.

Questions about your personal information should be directed to:

Lincoln Financial Group
Attn: Enterprise Compliance and Ethics
Corporate Privacy Office, 7C-01
1300 S. Clinton St.
Fort Wayne, IN 46802

**Please include all policy/contract/account numbers with your correspondence.**

*This information applies to the following Lincoln Financial Group companies:

| | |
|---|---|
| First Penn-Pacific Life Insurance Company | Lincoln Life & Annuity Company of New York |
| Lincoln Financial Group Trust Company. LLC | Lincoln Retirement Services Company. LLC |
| Lincoln Financial Investment Services Corporation | Lincoln Variable Insurance Products Trust |
| Lincoln Investment Advisors Corporation | The Lincoln National Life Insurance Company |

## ADDITIONAL PRIVACY INFORMATION FOR INSURANCE PRODUCT CUSTOMERS

### CONFIDENTIALITY OF MEDICAL INFORMATION

We understand that you may be especially concerned about the privacy of your medical information. We do not sell or rent your medical information to anyone; nor do we share it with others for marketing purposes. We only use and share your medical information for the purpose of underwriting insurance, administering your policy or claim and other purposes permitted by law, such as disclosure to regulatory authorities or in response to a legal proceeding.

### MAKING SURE MEDICAL INFORMATION IS ACCURATE

We want to make sure we have accurate information about you. Upon written request we will tell you, within 30 business days, what personal information we have about you. You may see a copy of your personal information in person or receive a copy by mail, whichever you prefer. We will share with you who provided the information. In some cases we may provide your medical information to your personal physician. We will not provide you with information we have collected in connection with, or in anticipation of, a claim or legal proceeding. If you believe that any of our records are not correct, you may write and tell us of any changes you believe should be made. We will respond to your request within 30 business days. A copy of your request will be kept on file with your personal information so anyone reviewing your information in the future will be aware of your request. If we make changes to your records as a result of your request, we will notify you in writing and we will send the updated information, at your request, to any person who may have received the information within the prior two years. We will also send the updated information to any insurance support organization that gave us the information, and any service provider that received the information within the prior 7 years.

Questions about your personal medical information should be directed to:

Lincoln Financial Group
Attn: Medical Underwriting
P.O. Box 21008
Greensboro, NC 27420-1008

The CONFIDENTIALITY OF MEDICAL INFORMATION and MAKING SURE INFORMATION IS ACCURATE sections of this Notice apply to the following Lincoln Financial Group companies:

First Penn-Pacific Life Insurance Company
Lincoln Life & Annuity Company of New York
The Lincoln National Life Insurance Company

GB06714

# The Lincoln National Life Insurance Company

A Stock Company     Home Office Location: Fort Wayne, Indiana
Group Insurance Service Office: 8801 Indian Hills Drive, Omaha, NE 68114-4066 (402) 361-7300

CERTIFIES THAT Group Policy No.        GL 000400001000-12077        has been issued to
The Commerce Trust Company as Trustee for The Lincoln National Life Insurance Company Voluntary
Insurance Trust

The Issue Date is January 1, 2011 for the Participating Employer.

Participating Employer: Ashley Industrial Moldings, Inc.

The insurance is effective only if the Employee is eligible for insurance and becomes and remains insured as provided in the Group Policy.

Certificate of Insurance for Class 1

{INSURED}

{Schedule of Insurance}
{Coverage}                                                    {Insurance Amount}
{BENEFIT_1}
{BENEFIT_2}
{BENEFIT_3}
{BENEFIT_4}
{BENEFIT_5}

You are entitled to the benefits described in this Certificate if you are eligible for insurance under the provisions of the Policy. This Certificate replaces any other certificates for the benefits described inside. As a Certificate of Insurance, it is not a contract of insurance; it only summarizes the provisions of the Policy and is subject to the Policy's terms.

*Dennis R Glass*
President

## CERTIFICATE OF GROUP LIFE INSURANCE

GL1102 FACE PAGE

{LFGLOGO}        {USER}        {CERT_ID}        01/01/14

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

**DEATH OR DISMEMBERMENT BENEFIT FOR AN INSURED PERSON.** The Company will pay the benefit listed below, if:

    (1)   an Insured Person sustains an accidental bodily injury while insured under this provision; and

    (2)   that injury directly causes one of the following losses within 365 days after the date of the accident.

The loss must result directly from the injury and from no other causes.

| LOSS | BENEFIT FOR COMMON CARRIER ACCIDENT | BENEFIT FOR OTHER COVERED ACCIDENT |
|---|---|---|
| Loss of Life | 2 Times Principal Sum | Principal Sum |
| Loss of One Member (Hand, Foot or Eye) | Principal Sum | 1/2 Principal Sum |
| Loss of Two or More Members | 2 Times Principal Sum | Principal Sum |

The Principal Sum for the Insured Person's class is shown in the Schedule of Insurance.

**MAXIMUM PER PERSON.** If an Insured Person sustains more than one loss resulting from the same accident, the benefit:

    (1)   will be the one largest amount listed;

    (2)   will not exceed two times the Principal Sum for all of that person's combined losses resulting from a Common Carrier Accident; and

    (3)   will not exceed the Principal Sum for all of that person's combined losses resulting from any other covered accident.

**TO WHOM PAYABLE.** Benefits for the Insured Person's loss of life will be paid in accord with the Beneficiary section. All other benefits will be paid to the Insured Person.

**LIMITATIONS.** Benefits are not payable for any loss to which a contributing cause is:

    (1)   intentional self-inflicted injury or self-destruction;

    (2)   disease, bodily or mental infirmity, or medical or surgical treatment of these;

    (3)   participation in a riot;

    (4)   duty as a member of any military, naval or air force;

    (5)   war or any act of war, declared or undeclared;

    (6)   participation in the commission of a felony;

    (7)   voluntary use of drugs; except when prescribed by a Physician;

    (8)   travel or flight in any aircraft, including balloons and gliders; except as a fare paying passenger on a regularly scheduled flight; or

    (9)   driving a vehicle while intoxicated.

GL1101-14.3A 01 IN

COMMON CARRIER
01/01/14

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE
## CONTINUED

### DEFINITIONS.

"Beneficiary" means the person(s) named on the Insured Person's enrollment form. The Insured Person may change the Beneficiary by filing a written notice of the change with the Company at its Group Insurance Service Office.

"Common Carrier Accident" means a covered accidental bodily injury, which is sustained while riding as a fare paying passenger (not a pilot, operator or crew member) in or on, boarding or getting off from a Common Carrier.

"Common Carrier" means any land, air or water conveyance operated under a license to transport passengers for hire.

"Intoxicated" shall be defined by the jurisdiction where the accident occurs. The exclusion will apply whether or not the driver is convicted.

"Loss of a Member" includes the following:
    (1)   "Loss of Hand or Foot," means complete severance through or above the wrist or ankle joint.
    (2)   "Loss of an Eye," means total and irrevocable loss of sight in that eye.

GL1101-14.3A 01 IN

COMMON CARRIER
01/01/14

Case 6:18-cv-02063-CJW-MAR   Document 26-4   Filed 02/13/19   Page 120 of 555   Lincoln/Lee 208

IN THE DISTRICT COURT OF IOWA, IN AND FOR FAYETTE COUNTY

| | |
|---|---|
| VANESSA LEE, Individually as Executor of the JOHN LEE ESTATE<br>            Plaintiff,<br>v.<br><br>THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,<br>            Defendant. | CASE NO. CVCV055206<br><br>**ACCEPTANCE OF SERVICE OR ORIGINAL NOTICE AND FIRST AMENDED PETITION AT LAW** |

COMES NOW, _____, (NAME) who is the _____ (OFFICE HELD IN CORPORATION), a duly authorized offer and employee of the above-named Defendant, The Lincoln National Life Insurance Company, the named Defendant in the above-entitled matter, and hereby acknowledges receipt of an Original Notice, with a copy of the Petition at Law attached thereto; I, as duly authorized agent for said named Defendant, The Lincoln National Life Insurance Company, do hereby accept service of Original Notice and waive any defects in the manner of service; I further surrender to the jurisdiction of the District Court of Iowa, in and for Fayette County, Iowa.

DATED this \_\_\_\_\_ day of August, 2018.

                         THE LINCOLN NATIONAL LIFE
                         INSURANCE COMPANY


                         By:_____

IN THE DISTRICT COURT OF IOWA, IN AND FOR FAYETTE COUNTY

| | | |
|---|---|---|
| VANESSA LEE, Individually | ) | |
| as Executor of the JOHN | ) | CASE NO. CVCV055206 |
| LEE ESTATE | ) | |
| Plaintiff, | ) | |
| v. | ) | **ORIGINAL NOTICE FOR** |
| | ) | **FIRST AMENDED** |
| | ) | **PETITION AT LAW** |
| THE LINCOLN NATIONAL LIFE | ) | |
| INSURANCE COMPANY, | ) | |
| Defendant. | ) | |

TO THE ABOVE-NAMED DEFENDANT: THE LINCOLN NATIONAL LIFE INSURANCE COMPANY

YOU ARE HEREBY NOTIFIED that a Petition has been filed in the office of the Clerk of this Court, naming you as he defendant in the action. A copy of the Petition (any documents filed with it) is attached to this Notice. The attorney for the Plaintiff's is Larry F. Woods, whose address is 24 North Frederick Avenue, Oelwein, IA 50662. That the attorney's telephone number is (319) 283-3204; facsimile number is (319) 283-9193, and e-mail address of lfwoods@trxinc.com

YOU must serve a Motion or Answer within 20 days after service of this Original Notice upon you, and within a reasonable time thereafter, file your Motion or Answer with the Clerk of the Iowa District Court for Fayette County, at the County Courthouse P. O. Box 458 in West Union, Iowa. If you do not, judgment by default may be rendered against you for the relief demanded in the Petition.

If you require the assistance of auxiliary aide or services to participate in court because of admissibility, immediately call your district ADA coordinator at (319) 833-3332. (If you are hearing impaired, call Relay Iowa TY at 1-800-735-2942.)

NOTE: YOU ARE ADVISED TO SEEK LEGAL ADVISE AT ONCE TO PROTECT YOUR INTEREST.

Tola, Monica (MR # 000020775102)                    Encounter Date: 06/12/2018

| BP: (Patient refuses)<br>Pulse : 95<br>Temp: 98.6 °F<br>Resp Rate: 20<br>O2 Sat (%): 93 %<br>O2 Device (Oxygen Therapy): room air | BP:<br>Pulse: 108<br>Heart Rate (monitor):<br>Temp: 98 °F<br>Resp Rate: 20<br>O2 Sat (%): 94<br>O2 Device (Oxygen Therapy): room air<br>Flow (L/min): |
|---|---|

## Mental Health/Substance Abuse Assessment

Is the reason for the admission or visit related to a mental health or substance abuse issue (including detox, chapters, overdoses)?: Yes

1. In the past month, have you wished you were dead or wished you could go to sleep and not wake up? : yes
2. In the past month, have you actually had any thoughts of killing yourself? : yes
3. Have you been thinking about how you might kill yourself? : yes
4. Have you had these thoughts and had some intention of acting on them? : yes
6. Have you ever done anything, started to do anything, or prepared to do anything to end your life?: yes
How long ago did you do any of these? : within the last three months
Suicide Protective Factors: **willingness** to engage in treatment
Suicide Risk Factors: suicidal ideation or intent, hopelessness, use of alcohol to excess, previous suicide attempt (describe below)

## Physical Exam

Constitutional: She is oriented to person, place, and time. She appears well-nourished. No distress.
HENT:
Head: Normocephalic and atraumatic.
Eyes: Conjunctivae are normal. Pupils are equal, round, and reactive to light.
**Positive nystagmus**
Cardiovascular: Normal rate and regular rhythm.
Pulmonary/Chest: Effort normal and breath sounds normal.
Abdominal: There is tenderness. There is no rebound.
Musculoskeletal: Normal range of motion.
Neurological: She is alert and oriented to person, place, and time.
Skin: Skin is warm.
Psychiatric:
**Agitated, Intoxicated and manipulative**
Nursing note and vitals reviewed.

Results for orders placed or performed during the hospital encounter of 06/12/18
LAB GLUCOSE

| Result | Value | Ref Range | Status |
|---|---|---|---|
| GLUCOSE | 137 (H) | 70 - 99 mg/dL | Final |

LAB BUN

| Result | Value | Ref Range | Status |
|---|---|---|---|
| BUN | 10 | 8 - 26 mg/dL | Final |

LAB CREATININE

| Result | Value | Ref Range | Status |
|---|---|---|---|
| CREATININE | 0.69 | 0.60 - 1.10 mg/dL | Final |
| ESTIMATED GFR | 113 | mL/min/1.73m2 | Final |

LAB TOTAL PROTEIN

| Result | Value | Ref Range | Status |
|---|---|---|---|

Tola, Monica (MR # 000020775102) Printed by White, David C, DO [934931] at 6/12/18...   Page 5 of 8

# STATE OF IOWA JUDICIARY

*Case No.* **CVCV055206**

*County* **Fayette**

*Case Title* **VANESSA LEE V THE LINCOLN MUTUAL INS. CO.**

**THIS CASE HAS BEEN FILED IN A COUNTY THAT USES ELECTRONIC FILING.**
Therefore, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless you obtain an exemption from the court, you must file your Appearance and Answer electronically.

You must register through the Iowa Judicial Branch website at http://www.iowacourts.state.ia.us/Efile and obtain a log in and password for the purposes of filing and viewing documents on your case and of receiving service and notices from the court.

**FOR GENERAL RULES AND INFORMATION ON ELECTRONIC FILING, REFER TO THE IOWA COURT RULES CHAPTER 16 PERTAINING TO THE USE OF THE ELECTRONIC DOCUMENT MANAGEMENT SYSTEM:**
http://www.iowacourts.state.ia.us/Efile

**FOR COURT RULES ON PROTECTION OF PERSONAL PRIVACY IN COURT FILINGS, REFER TO DIVISION VI OF IOWA COURT RULES CHAPTER 16:** http://www.iowacourts.state.ia.us/Efile

*Scheduled Hearing:*

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at **(319) 833-3332** . (If you are hearing impaired, call Relay Iowa TTY at **1-800-735-2942**.)

*Date Issued* **07/27/2018 11:40:51 AM**



*District Clerk of* Fayette        *County*
/s/ Katherine Gumm

IN THE DISTRICT COURT OF IOWA, IN AND FOR FAYETTE COUNTY

---------------------------------------------------------------

| | |
|---|---|
| VANESSA LEE, Individually ) | |
| as Executor of the JOHN ) | CASE NO. CVCV055206 |
| LEE ESTATE ) | |
|       Plaintiff, ) | |
| v. ) | |
| ) | **FIRST AMENDED** |
| ) | **PETITION AT LAW** |
| THE LINCOLN NATIONAL LIFE ) | |
| INSURANCE COMPANY, ) | |
|       Defendant. ) | |

---------------------------------------------------------------

### COUNT I - BREACH OF CONTRACT

COMES NOW the Plaintiff, Vanessa Lee, Individually and as Executor of the John Lee Estate, and for a cause of action against the Defendant, The Lincoln National Life Insurance Company and states to the Court as follows:

1. That the Plaintiff, Vanessa Lee, Individually and as Executor of the John Lee Estate, is a resident of Quasqueton, Buchanan County, Iowa.

2. That at all times relevant hereto, the Defendant, The Lincoln National Life Insurance Company was an insurance corporation, authorized to and doing business in the State of Iowa.

3. The Defendant, The Lincoln National Life Insurance Company sold an Accidental Death Policy to Ashley Industrial Moldings, Inc., to be provided to said Ashley's employees, as a benefit of said employees employment package.

4. That John Lee was an employee of Ashley Industrial Moldings, Inc., at all time relevant hereto, including up to the time of his death

5. That said policy issued by The Lincoln National Life Insurance Company for Accidental Death was in force and effect while John Lee was in the employment of the Ashley Industrial Moldings, Inc.

6. That John Lee was paying premiums for life insurance coverage by The Lincoln National Life Insurance Company in case of his accidental death.

7. That the Plaintiff, Vanessa Lee, Individually, was a named beneficiary of the Accidental Death Policy issued by The Lincoln National Life Insurance Company , to Ashley Industrial Moldings, Inc., of which John Lee was an employee.

8. The Plaintiff Vanessa Lee, as the Executor of the John Lee Estate, also makes claim on behalf of said John Lee Estate.

9. That on or about the 12th day of July, 2015, John Lee was riding his ATV on private property near Quasqueton, Buchanan County, Iowa.

10. That on said date, John Lee's daughter, Jessica Matthews, went looking for him, when he did not return for dinner.

11. That when Jessica Matthews found John Lee, he was lying on the ground next to the ATV, and was unconscious.

12. John Lee was taken by his daughter back to the campsite, and later he was taken to his home. After being home a short time, John Lee was then transferred to the Buchanan County Health Center or hospital.

13. After examination at the Buchanan County Health Care hospital, John Lee was transferred to the University of Iowa Hospitals and Clinics.

14. As a result of the injuries John Lee sustained when he fell, John Lee died on the 19th day of July, 2015, at the University of Iowa Hospitals and Clinics.

15. The death of John Lee on July 19, 2015, was an accidental death.

16. As a result of the death of John Lee on July 19, 2015, Vanessa Lee, as an Individual and as Executor of the John Lee Estate, she made a claim for benefits under an Insurance Policy issued by the Defendant, The Lincoln National Life Insurance Company .

17. A copy of the insurance policy issued by the Defendant, The Lincoln National Life Insurance Company is attached hereto, marked Exhibit A and made a part of this Petition by this reference as though fully set forth hereat

word for word.

18. The Defendant, The Lincoln National Life Insurance Company , sold the policy to and/or through Ashley Industrial Moldings, Inc., located in Oelwein, Fayette County, Iowa.

19. The deceased, John Lee, worked at the Ashley Industrial Moldings, Inc., factory in Oelwein, Fayette County, Iowa, at all time relevant hereto.

20. That the Defendant, The Lincoln National Life Insurance Company has denied paying the benefits under the insurance policy to Vanessa Lee, both as and Individual and as Executor of the John Lee Estate.

21. None of the exceptions contained the policy are applicable to the cause of death of John Lee.

22. The Defendant, The Lincoln National Life Insurance Company has breached the contract, that is attached hereto, marked Exhibit A, by failing to pay the benefits due to the Plaintiff, Vanessa Lee in here appropriate capacity.

23. As a result of the Defendant, The Lincoln National Life Insurance Company breaching the contract, the Plaintiff, Vanessa Lee has sustained injuries and damages.

24. The Plaintiff, Vanessa Lee damages are the face value of the policy that should have been paid. Said amount is $100,000.

25. The Plaintiff, Vanessa Lee has also been damaged by the loss of the use of the money since the date of death of John Lee.

26. That the Plaintiff, Vanessa Lee, is entitled to damages in amount fair and reasonable to compensate her for the injuries she has sustained, for prefiling interest at the statutory contract rate for breach of contract, and for interest on the judgment as provided for by law. The amount of injuries and damages sustained by the Plaintiff, Vanessa Lee, is in excess of $10,000.

27. That the Plaintiff, Vanessa Lee, Individually and as Executor of the John Lee Estate demands judgment against the Defendant, The Lincoln National Life Insurance Company for the injuries Plaintiff sustained as a result of the named Defendant breaching the Accidental Death Insurance Policy.

WHEREFORE, the Plaintiff, Vanessa Lee, Individually and as Executor of the John Lee Estate demands Judgment against the Defendant, The Lincoln National Life Insurance Company for the damages she has sustained as a result of the Defendant's Breach of Contract.

IT IS FURTHER PRAYED that the Plaintiff, Vanessa Lee, Individually and as Executor of the John Lee Estate, have for judgment against the Defendant, The Lincoln National Life

Insurance Company, in an amount reasonable and fair to compensate the Plaintiff for the injuries sustained by the Plaintiff, for interest thereon as provided by statute and for the costs of this action. The fair and reasonable amount is in excess of $10,000.

Respectfully submitted,

Larry R. Woods
Attorney at Law
24 North Frederick Avenue
Oelwein, IA  50662
lfwoods@trxinc.com
Ph. 319-283-3204
ATTORNEY FOR THE PLAINTIFF,
VANESSA LEE, Individually and
as the Executor of the
JOHN LEE ESTATE

Original filed by EDMS with the Fayette Clerk of Court

# The Lincoln National Life Insurance Company

A Stock Company    Home Office Location: Fort Wayne, Indiana
Group Insurance Service Office: 8801 Indian Hills Drive, Omaha, NE 68114-4066 (402) 361-7300

CERTIFIES THAT Group Policy No.    GL 000010132080    has been issued to
Ashley Industrial Moldings, Inc.
(The Group Policyholder)

The Issue Date of the Policy is January 1, 2011.

The insurance is effective only if the Employee is eligible for insurance and becomes and remains insured as provided in the Group Policy.

Certificate of Insurance for Class 1

{INSURED}

**{Schedule of Insurance}**
          **{Coverage}**                                                    **{Insurance Amount}**
        {BENEFIT_1}
        {BENEFIT_2}
        {BENEFIT_3}
        {BENEFIT_4}
        {BENEFIT_5}
        {BENEFIT_6}
        {BENEFIT_7}
        {BENEFIT_8}
        {BENEFIT_9}
        {BENEFIT_10}

You are entitled to the benefits described in this Certificate if you are eligible for insurance under the provisions of the Policy. This Certificate replaces any other certificates for the benefits described inside. As a Certificate of Insurance, it is not a contract of insurance; it only summarizes the provisions of the Policy and is subject to the Policy's terms.

*Dennis R Glass*
President

EXHIBIT F

## CERTIFICATE OF GROUP LIFE INSURANCE

GL1102 FACE PAGE

{LF_LOGO}        {ISLR}            {CERT_ID}            01/01/14

**Ashley Industrial Moldings, Inc.**
**000010132080**

**SCHEDULE OF INSURANCE**

CLASS 1

All Full-Time Salaried Employees

WAITING PERIOD:   90 days of continuous Active Work  (For date insurance begins, refer to "Effective Dates of Coverages" section)

MINIMUM HOURS:   32 hours per week

**LIFE AND AD&D INSURANCE**

| Amount of Personal Life Insurance | AD&D Insurance Principal Sum |
|---|---|
| One times Basic Annual Earnings, rounded to the next higher $1,000; subject to a minimum of $10,000 and a maximum of $200,000 | Two times Basic Annual Earnings, rounded to the next higher $1,000; subject to a minimum of $10,000 and a maximum of $200,000 |

Personal Life and AD&D Insurance will be reduced as follows:
- At age 65, benefits will reduce by 33% of the original amount;
- At age 70, benefits will reduce an additional 22% of the original amount.
Benefits will terminate when you retire.

If you first enroll for Personal Life and AD&D Insurance at age 65 or older, the above age reductions will apply to:
- Any Guarantee Issue Amount available without evidence of insurability; and
- The maximum amount of insurance for which you are eligible.

**(Effective July 1, 2011) Basic Annual Earnings** means your annual base salary or annualized hourly pay from the Employer before taxes on the Determination Date.  The **"Determination Date"** is the last day worked just prior to the loss.

It does **not** include commissions, bonuses, overtime pay, or any other extra compensation.  It does **not** include income from a source other than the Employer.  It will not exceed the amount shown in the Employer's financial records or the amount for which premium has been paid; whichever is less.

GL1102-SB

01/01/14

## TABLE OF CONTENTS

Amount of Insurance ................................................................................. 3

Definitions ............................................................................................... 3

Eligibility ................................................................................................ 4

Effective Dates of Coverages .................................................................... 4

Termination of Coverage .......................................................................... 4

Death Benefit ........................................................................................... 5

Beneficiary ............................................................................................... 5

Assignments ............................................................................................. 6

Extension of Death Benefit ........................................................................ 7

Accelerated Death Benefit ......................................................................... 8

Conversion Privilege ............................................................................... 10

Accidental Death and Dismemberment Insurance ..................................... 11

Safe Driver Benefit ................................................................................. 13

Claims Procedures for Life or Accidental Death and Dismemberment Benefits ....... 14

Notice .................................................................................................... 17

Prior Insurance Credit Provision ............................................................. 19

GL1102-TOC

2

01/01/14

## AMOUNT OF INSURANCE

The amount of your insurance is determined by the Schedule of Insurance in the Policy. The initial amount of coverage is the amount which applies to your class on the day your coverage takes effect. You may become eligible for increases in the amount of insurance in accord with the Schedule of Insurance. Any such increase will take effect on the latest of:

    (1)   the first of the Insurance Month which coincides with or follows the date on which you become eligible for the increase; provided you are Actively at Work on that day;

    (2)   the day you resume Active Work, if you are not Actively at Work on the day the increase would otherwise take effect; or

    (3)   the day any required evidence of insurability is approved by the Company.

Any decrease will take effect on the day of the change; whether or not you are Actively at Work.

## DEFINITIONS

ACTIVE WORK or ACTIVELY AT WORK means an employee's full-time performance of all customary duties of his or her occupation at:

    (1)   the EMPLOYER'S place of business; or

    (2)   any other business location where the employee is required to travel.

Unless disabled on the prior workday or on the day of absence, an employee will be considered Actively at Work on the following days:

    (1)   a Saturday, Sunday or holiday which is not a scheduled workday;

    (2)   a paid vacation day, or other scheduled or unscheduled non-workday; or

    (3)   an excused or emergency leave of absence (except a medical leave).

COMPANY means The Lincoln National Life Insurance Company, an Indiana corporation; whose Group Insurance Service Office address is 8801 Indian Hills Drive, Omaha, Nebraska 68114-4066.

DAY or DATE means at 12:01 A.M., Standard Time, at the Group Policyholder's place of business; when used with regard to eligibility dates and effective dates. It means 12:00 midnight, Standard Time, at the same place; when used with regard to termination dates.

EMPLOYER means the Group Policyholder or the Participating Employer named on the Face Page.

FULL-TIME EMPLOYEE means an employee of the EMPLOYER:

    (1)   whose employment with the EMPLOYER is the employee's principal occupation;

    (2)   who is not a temporary or seasonal employee; and

    (3)   who is regularly scheduled to work at such occupation at least the number of hours as shown in the Schedule of Insurance.

INSURANCE MONTH means:

    (1)   that period of time beginning on the Issue Date of the Policy and extending for one month; and

    (2)   each subsequent month beginning on the same day after that.

PERSONAL INSURANCE means the insurance provided by the Policy on Insured Persons.

PHYSICIAN means a licensed practitioner of the healing arts other than the Insured Person or a relative of the Insured Person.

POLICY means the Group Insurance Policy issued by the Company to the Group Policyholder. A copy of the Policy may be examined upon request at the Group Insurance Service Office of the Group Policyholder.

GL1102-1 91

3

(REV)
01/01/14

## ELIGIBILITY

If you are a Full-Time Employee and a member of an employee class shown in the Schedule of Insurance; then you will become eligible for the coverage provided by the Policy on the later of:
    (1)   the Policy's date of issue; or
    (2)   the day you complete the Waiting Period.

WAITING PERIOD. (See Schedule of Insurance).

## EFFECTIVE DATES OF COVERAGES

Your insurance is effective on the latest of:
    (1)   the day you become eligible for the coverage;
    (2)   the day you resume Active Work, if you are not Actively at Work on the day you become eligible;
    (3)   the day you make written application for coverage; and sign:
        (a)   a payroll deduction order, if you pay any part of the premium; or
        (b)   an order to pay premiums from your Section 125 Plan account, if Employer contributions are paid through a Section 125 Plan; or
    (4)   the day the Company approves your coverage, if evidence of insurability is required.

Evidence of insurability is required if:
    (1)   you apply for coverage more than 31 days after you become eligible; or
    (2)   you make written application to re-enroll for coverage after you have requested:
        (a)   to cancel your coverage;
        (b)   to stop payroll deductions for the coverage; or
        (c)   to stop premium payments from your Section 125 Plan account.

EXCEPTION. If your coverage terminates due to an approved leave of absence or a military leave, any Waiting Period or evidence of insurability requirement will be waived upon your return; provided:
    (1)   you return within six months after the leave begins;
    (2)   you apply or are enrolled within 31 days after resuming Active Work; and
    (3)   the reinstated amount of insurance does not exceed the amount which terminated.

## TERMINATION OF COVERAGE

Your coverage terminates on the earliest of:
    (1)   the day the Policy terminates;
    (2)   the last day of the Insurance Month in which you request termination;
    (3)   the last day of the period for which the premium for your insurance has been paid;
    (4)   the day you cease to be a member of an employee class shown in the Schedule of Insurance;
    (5)   with respect to any particular insurance benefit, the day the part of the Policy providing that benefit terminates;
    (6)   the day your employment with the Employer terminates; or
    (7)   the day you enter the armed services of any state or country on active duty; except for duty of 30 days or less for training in the Reserves or National Guard. (If you send proof of military service, the Company will refund any unearned premium.)

Ceasing Active Work terminates your eligibility. However, it may be possible to continue all or part of your insurance during a temporary layoff, leave of absence or military leave; or while you are unable to work due to sickness or injury. The conditions concerning such a continuance may be found in the Policy. See your Employer for this information.

GL1102-2 93

4

(FMLA)
01/01/14

## DEATH BENEFIT

Upon receipt of satisfactory proof of your death, the Company will pay a death benefit equal to the amount of Personal Life Insurance in effect on the date of your death. The benefit will be paid in accord with the Beneficiary section. Arrangements may be made to have this death benefit paid in installments.

## BENEFICIARY

Your Beneficiary is the person or persons named on your enrollment card. The Beneficiary may be changed in accord with the terms of the Policy. If you have not named a Beneficiary, or if no named Beneficiary is living when you die; then the death benefit will be paid to your:

    (1)    surviving spouse; or, if none
    (2)    surviving child or children in equal shares; or, if none
    (3)    surviving parent or parents in equal shares; or, if none
    (4)    surviving brothers and sisters in equal shares; or, if none
    (5)    estate, or in accord with the Facility of Payment section of the Policy.

GL1102-3.0A 96

5

Pref. Bene.-No Ext.
01/01/14

## ASSIGNMENTS

Personal Life Insurance and Accidental Death Insurance may be assigned. The assignments allowed under the Policy are absolute assignments and funeral assignments as described below.

No assignment will be binding on the Company unless and until:
  (1)  it is made on a form furnished by the Company;
  (2)  the original is completed and filed with the Company at its Group Insurance Service Office; and
  (3)  it is approved by the Company.
The Company and the Employer do not assume responsibility for the validity or effect of an assignment.

ABSOLUTE ASSIGNMENTS. You may make an irrevocable assignment of your Personal Life Insurance and Accidental Death Insurance as a gift (with no consideration), providing you have the legal capacity and the mental capacity to do so. It may be made to a trust or to one or more of your relatives, their estates, or to a trustee of a trust under which one of the relatives is a beneficiary.

The term "relatives" includes, but is not limited to, your spouse, parents, grandparents, aunts, uncles, siblings, children, adopted children, stepchildren, and grandchildren.

In some states, community property is an established form of ownership that must be considered in making an assignment. If you make an absolute assignment to two or more assignees, such assignees will be joint owners with the right of survivorship between them. You should consult with your own legal advisor before making an assignment.

Once the assignment has been recorded by the Company, you can no longer change the beneficiary and cannot apply for conversion. Only the assignee can change the beneficiary designation if the previous designation is revocable. An assignment will have no effect on a prior irrevocable beneficiary designation. Only the assignee can apply for conversion but only when the Conversion Privilege provision would have been available to you in the absence of the assignment under the Policy.

An absolute assignment cannot be used as a collateral assignment.

FUNERAL ASSIGNMENTS. Upon your death, the beneficiary may assign the Personal Life Insurance benefit and Accidental Death Insurance benefit to a funeral home for payment of burial expenses. After payment has been made for the burial expenses to the assigned funeral home, the remaining death benefit is then paid in accord with the Beneficiary and Settlement Options sections of the Policy.

GL1102-3.0C 01

6

01/01/14

## EXTENSION OF DEATH BENEFIT IF YOU BECOME TOTALLY DISABLED

Your life insurance will be continued, **without payment of premiums**, if:
- (1) you become Totally Disabled while insured and before reaching age 60;
- (2) you remain Totally Disabled for at least 6 months in a row; and
- (3) you submit satisfactory proof within the 7th through 12th months of disability; or:
  - (a) as soon as reasonably possible after that; but
  - (b) not later than the 24th month of disability, unless you were legally incapacitated.

PREMIUM PAYMENT. Premium payments must continue until you are approved for this benefit, or the Policy terminates, if earlier. Upon receipt of satisfactory proof, the Company will refund up to 12 months' premium paid for your life insurance, from your 1st day of Total Disability.

DEFINITION. For this benefit, Total Disability or Totally Disabled means you:
- (1) are unable, due to sickness or injury, to engage in any employment or occupation for which you are or become qualified by reason of education, training, or experience; and
- (2) are not engaging in any gainful employment or occupation.

AMOUNT CONTINUED. The amount of Personal Life Insurance and any Dependent Life Insurance continued will be subject to the reductions and terminations in effect under the Policy on the day your Total Disability begins. Any Accidental Death and Dismemberment Benefit will not be continued.

ADDITIONAL PROOF. From time to time, you must submit proof that your Total Disability is continuing. Proof will be at your expense; unless the Company requests to have you examined by a Physician of its choice. If you die after submitting proof, further proof must be submitted to the Company showing that you remained continuously and Totally Disabled until death. If you die within 12 months after Total Disability begins, but before submitting proof; then your death benefit will still be paid under the terms of the Policy. But the Company must first receive satisfactory proof of your continuous Total Disability, from your last day of Active Work until your date of death.

TERMINATION. Any life insurance continued under this section will terminate automatically on:
- (1) the day you cease to be Totally Disabled;
- (2) the day you fail to take a required medical examination;
- (3) the 60th day after the Company mails a request for additional proof, if it is not given;
- (4) the effective date of your individual conversion policy, with respect to any amount of life insurance converted in accord with the Conversion Privilege section; or
- (5) the day you reach Social Security Normal Retirement Age (SSNRA), as shown in the Schedule of Insurance (whichever occurs first).

If your Total Disability ends, and you **do not return** to a class eligible for Policy coverage; then you may exercise the Conversion Privilege. If your Total Disability ends, and you **do return** to an eligible class; then your Policy coverage will resume when premium payments are resumed, and any conversion policy is surrendered as provided in the Policy.

GL1102-3.1 97

7

Ext. to SSNRA
01/01/14

## ACCELERATED DEATH BENEFIT

BENEFIT. The Accelerated Death Benefit is an advance payment of part of your Personal Life Insurance. It may be paid to you, in a lump sum, once during your lifetime.

To qualify, you must:
    (1)    have satisfied the Active Work requirement under the Policy;
    (2)    have been insured under the Policy:
        (a)    on the date of an injury which results in a Terminal condition; or
        (b)    for 30 days before being diagnosed Terminal as a result of sickness; and
    (3)    have at least $2,000 of Personal Life Insurance under the Policy on the day before the Accelerated Death Benefit is paid.

Receiving the Accelerated Death Benefit will reduce the Remaining Life Insurance and the Death Benefit payable at death, as shown on the next page.

"Claimant," as used in this section, means the Terminal Insured Person for whom the Accelerated Death Benefit is requested.

"Terminal" means you have a medical condition which is expected to result in death within 12 months, despite appropriate medical treatment.

APPLYING FOR THE BENEFIT. To withdraw the Accelerated Death Benefit, you (or your legal representative) must send the Company:
    (1)    written election of the Accelerated Death Benefit, on forms supplied by the Company; and
    (2)    satisfactory proof that the Claimant is Terminal, including a Physician's written statement.

The Company reserves the right to decide whether such proof is satisfactory.

Before paying an Accelerated Death Benefit, the Company must also receive the written consent of any irrevocable beneficiary, assignee or bankruptcy court with an interest in the benefit. (See Limitations 3, 4, and 5.)

**NOTE: THIS IS NOT A LONG-TERM CARE POLICY. RECEIVING THIS ACCELERATED DEATH BENEFIT WILL REDUCE THE BENEFIT PAYABLE AT DEATH. ANY AMOUNT WITHDRAWN MAY BE TAXABLE INCOME, SO YOU SHOULD CONSULT A TAX ADVISOR BEFORE APPLYING FOR THIS BENEFIT.**

AMOUNT OF THE BENEFIT. You may elect to withdraw an Accelerated Death Benefit in any $1,000 increment; subject to:
    (1)    a minimum of $1,000 or 10% of the Claimant's amount of Life Insurance (whichever is greater); and
    (2)    a maximum of $250,000 or 75% of the Claimant's amount of Life Insurance (whichever is less).

To determine the Accelerated Death Benefit, the Company will use the lesser of A or B below:
    A.    the Claimant's amount of Life Insurance which is in force on the day before the Accelerated Death Benefit is paid; or
    B.    the Claimant's amount of Life Insurance which would be in force 12 months after that date; if the coverage is scheduled to reduce, due to age, within 12 months after the Accelerated Death Benefit is paid.

GL1102-3.8 01 DAY

8

ADB-DEP.
01/01/14

ADMINISTRATIVE CHARGE: NONE

WITHDRAWAL FEE: NONE

EFFECT ON AMOUNT OF LIFE INSURANCE. "Remaining Life Insurance" means the amount of Life Insurance which remains in force on the Claimant's life after an Accelerated Death Benefit is paid. The Remaining Life Insurance will equal:

    (1)    the Claimant's amount of Life Insurance which was used to determine the Accelerated Death Benefit (A or B above); minus

    (2)    any percentage by which the Claimant's coverage is scheduled to reduce, due to age; if the reduction occurs more than 12 months after the Accelerated Death Benefit is paid, and while he or she is still living; minus

    (3)    the amount of the Accelerated Death Benefit withdrawn.

PREMIUM: There is no additional charge for this benefit. Continuation of the Remaining Life Insurance will be subject to timely payment of the premium for the reduced amount; unless you qualify for waiver of premium under the Policy's Extension of Death Benefit provision, if included.

CONDITIONS. If the Claimant exercises the Conversion Privilege after an Accelerated Death Benefit is paid, the amount of the conversion policy will not exceed the amount of his or her Remaining Life Insurance. If the Claimant has Accidental Death and Dismemberment benefits under the Policy, the Principal Sum will not be affected by the payment of an Accelerated Death Benefit.

EFFECT ON DEATH BENEFIT. When the Claimant dies after an Accelerated Death Benefit is paid, the amount of Remaining Life Insurance in force on the date of death will be paid as a Death Benefit. Your Death Benefit will be paid in accord with the Beneficiary section of the Policy. If the Claimant dies after application for an Accelerated Death Benefit has been made, but before the Company has made payment; then the request will be void and no Accelerated Death Benefit will be paid. The amount of Life Insurance in force on the date of death will be paid in accord with Policy provisions.

EFFECT ON TAXES AND GOVERNMENT BENEFITS. Any Accelerated Death Benefit amount withdrawn may be taxable income to you. Receipt of the Accelerated Death Benefit may also affect the Claimant's eligibility for Medicaid, Supplemental Security Income and other government benefits. The Claimant should consult his or her own tax and legal advisor before applying for an Accelerated Death Benefit. The Company is not responsible for any tax owed or government benefit denied, as a result of the Accelerated Death Benefit payment.

LIMITATIONS. No Accelerated Death Benefit will be paid:

    (1)    if any required premium is due and unpaid;

    (2)    on any conversion policy purchased in accord with the Conversion Privilege;

    (3)    without the written approval of the bankruptcy court, if you have filed for bankruptcy;

    (4)    without the written consent of the beneficiary, if you have named an irrevocable beneficiary;

    (5)    without the written consent of the assignee, if you have assigned your rights under the Policy;

    (6)    if any part of the Life Insurance must be paid to your child, spouse or former spouse; pursuant to a legal separation agreement, divorce decree, child support order or other court order;

    (7)    if the Claimant is Terminal due to a suicide attempt, while sane or insane; or due to an intentionally self-inflicted injury;

    (8)    if a government agency requires you or the Claimant to use the Accelerated Death Benefit to apply for, receive or continue a government benefit or entitlement; or

    (9)    if an Accelerated Death Benefit has been previously paid for the Claimant under the Policy.

GL1102-3.8 01 DAY

9

ADB-DEP.
01/01/14

## CONVERSION PRIVILEGE

If your insurance or insurance on a Dependent terminates for any reason except:
    (1)   termination or amendment of the Policy; or
    (2)   your request for:
        (a)   termination of insurance; or
        (b)   cancellation of your payroll deductions,
an individual life policy, known as a conversion policy, may be purchased without evidence of insurability.

To purchase a conversion policy, application and payment of the first premium must be made within 31 days after the life insurance is terminated.

A conversion policy will:
    (1)   be in an amount not to exceed the amount of life insurance which was terminated; less the amount of any group life insurance for which the person becomes eligible within 31 days after insurance terminates;
    (2)   be on any form (except term) then issued by the Company at the age and amount for which application is made;
    (3)   be issued at the person's age at nearest birthday;
    (4)   be issued without disability or other supplemental benefits; and
    (5)   require premiums based on the class of risk to which the person then belongs.

A conversion policy also may be purchased if:
    (1)   all or part of your insurance or insurance on a Dependent terminates due to amendment or termination of the Policy; and
    (2)   the person applying for the conversion policy has been covered continuously under the Policy for at least 5 years.

The amount of the conversion policy may not exceed the lesser of:
    (1)   $10,000; or
    (2)   the amount of life insurance which terminates, less the amount of any group life insurance for which the person becomes eligible within 31 days after the termination.

The conversion policy will take effect on the later of:
    (1)   its date of issue; or
    (2)   31 days after the date the insurance terminated.

If death occurs during the 31 day conversion period, the Company will pay the life insurance which could have been converted even if no one applied for the conversion policy.

When your insurance terminates, written notice of your right to convert will be given to you.

If written notice is not given to you at least 15 days before the end of the 31 day conversion period, an additional period in which to convert will be granted. Any such extension of the conversion period will expire on the earliest of:
    (1)   15 days after you are given the written notice; or
    (2)   60 days after the end of the 31 day conversion period, even if you are never given such notice.

No death benefit will be payable under the Policy after the 31 day conversion period has expired, even though the right to convert may be extended.

GL1102-4 IN

DEP. - $10,000
01/01/14

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

**DEATH OR DISMEMBERMENT BENEFIT FOR AN INSURED PERSON.** The Company will pay the benefit listed below, if:

    (1)   you sustain an accidental bodily injury while insured under this provision; and
    (2)   that injury directly causes one of the following losses within 365 days after the date of the accident.

The loss must result directly from the injury and from no other causes.

| LOSS | BENEFIT FOR COMMON CARRIER ACCIDENT | BENEFIT FOR OTHER COVERED ACCIDENT |
|------|-------------------------------------|------------------------------------|
| Loss of Life | 2 Times Principal Sum | Principal Sum |
| Loss of One Member (Hand, Foot or Eye) | Principal Sum | 1/2 Principal Sum |
| Loss of Two or More Members | 2 Times Principal Sum | Principal Sum |

The Principal Sum for your class is shown in the Schedule of Insurance.

**MAXIMUM PER PERSON.** If you sustain more than one loss resulting from the same accident, the benefit:

    (1)   will be the one largest amount listed;
    (2)   will not exceed two times the Principal Sum for all of your combined losses resulting from a Common Carrier Accident; and
    (3)   will not exceed the Principal Sum for all of your combined losses resulting from any other covered accident.

**TO WHOM PAYABLE.** Benefits for your loss of life will be paid in accord with the Beneficiary section. All other benefits will be paid to you.

**LIMITATIONS.** Benefits are not payable for any loss to which a contributing cause is:

    (1)   intentional self-inflicted injury or self-destruction;
    (2)   disease, bodily or mental infirmity, or medical or surgical treatment of these;
    (3)   participation in a riot;
    (4)   duty as a member of any military, naval or air force;
    (5)   war or any act of war, declared or undeclared;
    (6)   participation in the commission of a felony;
    (7)   voluntary use of drugs; except when prescribed by a Physician;
    (8)   travel or flight in any aircraft, including balloons and gliders; except as a fare paying passenger on a regularly scheduled flight; or
    (9)   driving a vehicle while intoxicated.

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 142 of 555    Lincoln/Lee 230

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE
### CONTINUED

### DEFINITIONS.

"Beneficiary" means the person(s) named on your enrollment form. You may change the Beneficiary by filing a written notice of the change with the Company at its Group Insurance Service Office.

"Common Carrier Accident" means a covered accidental bodily injury, which is sustained while riding as a fare paying passenger (not a pilot, operator or crew member) in or on, boarding or getting off from a Common Carrier

"Common Carrier" means any land, air or water conveyance operated under a license to transport passengers for hire.

"Intoxicated" shall be defined by the jurisdiction where the accident occurs. The exclusion will apply whether or not the driver is convicted.

"Loss of a Member" includes the following:
  (1)  "Loss of Hand or Foot," means complete severance through or above the wrist or ankle joint.
  (2)  "Loss of an Eye," means total and irrevocable loss of sight in that eye.

GL1102-6.3A 01 IN

12

COMMON CARRIER
01/01/14

## SAFE DRIVER BENEFIT

BENEFIT. If you die as a direct result of a covered auto accident, for which Accidental Death and Dismemberment Benefits are payable; then:

    (1)   an additional Seat Belt Benefit will be payable, if you were wearing a properly fastened seat belt at the time of the accident; and

    (2)   an additional Air Bag Benefit will be payable, if the auto was equipped with air bag(s).

The Seat Belt Benefit equals $10,000 or 10% of the Principal Sum, whichever is less; and the Air Bag Benefit equals $10,000 or 10% of the Principal Sum, whichever is less. The Seat Belt Benefit and the Air Bag Benefit will not be less than $1,000. The Principal Sum is the amount payable because of the Insured Person's accidental death.

A copy of the police report must be submitted with the claim. The position of the seat belt or presence of an air bag must be certified by:

    (1)   the official accident report; or

    (2)   the coroner, traffic officer or other investigating officer.

Upon receipt of satisfactory written proof, the additional benefit will be paid in accord with the Beneficiary section.

DEFINITIONS. As used in this provision:

"Auto" means a 4-wheel passenger car, station wagon, jeep, pick-up truck or van-type car. It must be licensed for use on public highways. It includes a car owned or leased by the Employer.

"Intoxicated," "Impaired," or "Under the Influence of Drugs" shall be defined as by the jurisdiction where the accident occurs.

"Seat Belt" means a properly installed:

    (1)   seat belt or lap and shoulder restraint; or

    (2)   other restraint approved by the National Highway Traffic Safety Administration.

LIMITATIONS. Safe Driver Benefits will not be paid if:

    (1)   the Accidental Death and Dismemberment Benefit is not paid under the Policy for your death; or

    (2)   at the time of the accident, you or any other person who was driving the auto in which you were traveling:

        (a)   was driving without a valid drivers' license;

        (b)   was driving in excess of the legal speed limit; or

        (c)   was driving while intoxicated, impaired, or under the influence of drugs (except for drugs taken as prescribed by a Physician for the driver's use).

The above limitations will apply, whether or not the driver is convicted.

Case 6:18-cv-02063-CJW-MAR   Document 26-4   Filed 02/13/19   Page 144 of 555   Lincoln/Lee 232

## CLAIMS PROCEDURES
## FOR LIFE OR ACCIDENTAL DEATH AND DISMEMBERMENT (AD&D) BENEFITS

**NOTE:** The Policy may include an Extension of Death Benefit, an Accelerated Death Benefit or a Living Benefit. If so, please refer to that section for special claim procedures.

## NOTICE AND PROOF OF CLAIM

**Notice of Claim.** Written notice of an accidental death or dismemberment claim must be given within 20 days after the loss occurs; or as soon as reasonably possible after that.* The notice must be sent to the Company's Group Insurance Service Office. It should include:
    (1)   your name and address; and
    (2)   the number of the Policy.

**Claim Forms.** When notice of claim is received, the Company will send claim forms for filing the required proof. If the Company does not send the forms within 15 days; then you or your Beneficiary (the claimant) may send the Company written proof of claim in a letter. It should state the nature, date and cause of the loss.

**Proof of Claim.** The Company must be given written proof of claim within 90 days after the date of the loss; or as soon as reasonably possible after that.* Proof of claim must be provided at the claimant's own expense. It must show the nature, date and cause of the loss. In addition to the information requested on the claim form, documentation must include:
    (1)   A certified copy of the death certificate, for proof of death.
    (2)   A copy of any police report, for proof of accidental death or dismemberment.
    (3)   A signed authorization for the Company to obtain more information.
    (4)   Any other items the Company may reasonably require in support of the claim.

**\* Exception:** Failure to give notice or furnish proof of claim within the required time period will not invalidate or reduce the claim; if it is shown that it was done:
    (1)   as soon as reasonably possible; and
    (2)   in no event more than one year after it was required.
These time limits will not apply while the claimant lacks legal capacity.

**EXAM OR AUTOPSY.** At anytime while a claim is pending, the Company may have you examined:
    (1)   by a Physician of the Company's choice;
    (2)   as often as reasonably required.
If you fail to cooperate with an examiner or fail to take an exam, without good cause; then the Company may deny benefits, until the exam is completed. In case of death, the Company may also have an autopsy done, where it is not forbidden by law. Any such exam or autopsy will be at the Company's expense.

**TIME OF PAYMENT OF CLAIMS.** Any benefits payable under the Policy will be paid immediately after the Company receives complete proof of claim and confirms liability.

In accord with Indiana law, any accidental death or dismemberment benefits will be paid as follows, when more favorable to the claimant.
    (1)   **Clean Claim.** The Company must pay a clean claim for AD&D benefits within 45 days after receiving the first written proof of claim. A claim is considered "clean" when:
        (a)   the first proof of claim is complete;
        (b)   no part of the claim is contested; and
        (c)   no other defect prevents prompt payment.
        A claim is also considered "clean" when the insurer fails to promptly request more information, or to resolve it, within 45 days after receiving the first written proof of claim.

GL1102-8A 02 IN

14

L/ADD
01/01/14

## CLAIMS PROCEDURES
### (Continued)

(2) **Defective Claim.** The Company must request more information concerning a defective claim for AD&D benefits within 45 days after receiving the first written proof of claim. It must pay such a claim within 45 days after receiving any additional proof it needs to confirm liability. A claim is considered "defective" if:
    (a) the first written proof of claim is not complete;
    (b) all or part of the claim is contested; or
    (c) some other defect prevents prompt payment.

**TO WHOM PAYABLE--Death.** Any benefits payable for your death will be paid in accord with the Beneficiary, Facility of Payment and Settlement Options sections of the Policy. If the Policy includes Dependent Life Insurance; then any benefits payable for an insured Dependent's death will be paid to:
    (1) you, if you survive that Dependent; or
    (2) your Beneficiary, or in accord with the Facility of Payment section; if you do not survive that Dependent.

**Dismemberment.** If the Policy includes Accidental Death and Dismemberment Benefits; then any benefit, other than your death benefit, will be paid to you.

**NOTICE OF CLAIM DECISION.** The Company will send the claimant a written notice of its claim decision. If the Company denies any part of the claim; then the written notice will explain:
    (1) the reason for the denial, under the terms of the Policy and any internal guidelines;
    (2) how the claimant may request a review of the Company's decision; and
    (3) whether more information is needed to support the claim.

The Company will send this notice within 15 days after resolving the claim. If reasonably possible, the Company will send it within:
    (1) 45 days after receiving the first written proof of claim for any accidental death or dismemberment, Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy; or
    (2) 90 days after receiving the first written proof of a claim for any life insurance benefit available under the Policy.

**Delay Notice.** If the Company needs more than 15 days to process a claim, in a special case; then an extension will be permitted. If needed, the Company will send the claimant a written delay notice:
    (1) by the 15th day after receiving the first proof of claim; and
    (2) every 30 days after that, until the claim is resolved.

The notice will explain the special circumstances which require the delay, and when a decision can be expected. In any event, the Company must send written notice of its decision within:
    (1) 180 days after receiving the first proof of a death or dismemberment claim; or
    (2) 105 days after receiving the first proof of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy.
If the Company fails to do so; then there is a right to an immediate review, as if the claim was denied.

**Exception:** If the Company needs more information from the claimant to process a claim; then it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for claim processing.

**REVIEW PROCEDURE.** The claimant may request a claim review, within:
    (1) 60 days after receiving a denial notice of a death or dismemberment claim; or
    (2) 180 days after receiving a denial notice of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy.

To request a review, the claimant must send the Company a written request, and any written comments or other items to support the claim. The claimant may review certain non-privileged information relating to the request for review.

GL1102-8A 02 IN

L/ADD
01/01/14

Lincoln/Lee 234

## CLAIMS PROCEDURES
### (Continued)

**Notice of Decision.** The Company will review the claim and send the claimant a written notice of its decision. The notice will explain the reasons for the Company's decision, under the terms of the Policy and any internal guidelines. If the Company upholds the denial of all or part of the claim; then the notice will also describe:

    (1)   any further appeal procedures available under the Policy;
    (2)   the right to access relevant claim information; and
    (3)   the right to request a state insurance department review, or to bring legal action.

For a death or dismemberment claim, the notice will be sent within 60 days after the Company receives the request for review; or within 120 days, if a special case requires more time. For a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy, the notice will be sent within 45 days after the Company receives the request for review; or within 90 days, if a special case requires more time.

**Delay Notice.** If the Company needs more time to process an appeal, in a special case; then it will send the claimant a written delay notice, by the 30th day after receiving the request for review. The notice will explain:

    (1)   the special circumstances which require the delay;
    (2)   whether more information is needed to review the claim; and
    (3)   when a decision can be expected.

**Exception:** If the Company needs more information from the claimant to process an appeal; then it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for appeal processing.

**Claims Subject to ERISA** (Employee Retirement Income Security Act of 1974). Before bringing a civil legal action under the federal labor law known as ERISA, an employee benefit plan participant or beneficiary must exhaust available administrative remedies. Under the Policy, the claimant must first seek two administrative reviews of the adverse claim decision, in accord with this section. If an ERISA claimant brings legal action under Section 502(a) of ERISA after the required reviews; then the Company will waive any right to assert that he or she failed to exhaust administrative remedies.

**RIGHT OF RECOVERY.** If benefits have been overpaid on any claim; then full reimbursement to the Company is required within 60 days. If reimbursement is not made; then the Company has the right to:

    (1)   reduce future benefits until full reimbursement is made; and
    (2)   recover such overpayments from you, or from your Beneficiary or estate.

Such reimbursement is required whether the overpayment is due to fraud, the Company's error in processing a claim, or any other reason.

**LEGAL ACTIONS.** No legal action to recover any benefits may be brought until 60 days after the required written proof of claim has been given. No such legal action may be brought more than three years after the date written proof of claim is required.

**COMPANY'S DISCRETIONARY AUTHORITY.** Except for the functions that the Policy clearly reserves to the Group Policyholder or Employer, the Company has the authority to:

    (1)   manage the Policy and administer claims under it; and
    (2)   interpret the provisions and resolve questions arising under the Policy.

The Company's authority includes (but is not limited to) the right to:

    (1)   establish and enforce procedures for administering the Policy and claims under it;
    (2)   determine your eligibility for insurance and entitlement to benefits;
    (3)   determine what information the Company reasonably requires to make such decisions; and
    (4)   resolve all matters when a claim review is requested.

Any decision the Company makes, in the exercise of its authority, shall be conclusive and binding; subject to your or your Beneficiary's rights to:

    (1)   request a state insurance department review; or
    (2)   bring legal action.

GL1102-8A 02 IN

16

L/ADD
01/01/14

## NOTICE TO POLICYHOLDERS REGARDING
## FILING COMPLAINTS WITH THE DEPARTMENT OF INSURANCE

**Questions regarding your policy or coverage should be directed to:**

**The Lincoln National Life Insurance Company**
**800-423-2765**

We want you to know that you may contact the Indiana Department of Insurance if you have a complaint or seek assistance from the governmental agency that regulates insurance. To contact the Department of Insurance, write or call:

State of Indiana Department of Insurance
Consumer Services Division
311 West Washington Street, Suite 300
Indianapolis, Indiana 46204

Consumer Hotline: (800) 622-4461; (317) 232-2395

Complaints can be filed electronically at www.in.gov/idoi.

IN NOTICE 05 - P/C

17

01/01/14

# SUMMARY OF INDIANA LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION

The Indiana Life and Health Insurance Guaranty Association provides coverage of claims under some types of policies if the insurer becomes impaired or insolvent.  COVERAGE MAY NOT BE AVAILABLE UNDER YOUR POLICY.  Even if coverage is provided, there are significant limits and exclusions.  Coverage is always conditioned on residence in this state.  Other conditions may also preclude coverage.

The Indiana Life and Health Insurance Guaranty Association will respond to any questions you may have which are not answered by this document.  Your insurer and agent are prohibited by law from using the existence of the association or its coverage to sell you an insurance policy.

You should not rely of availability of coverage under the Indiana Life and Health Insurance Guaranty Association when selecting an insurer.

You may contact the Indiana Life and Health Insurance Guaranty Association as follows:

> Indiana Life and Health Insurance Guaranty Association
> 251 E. Ohio Street, Suite 1070
> Indianapolis, IN  46204
> (317) 636-8204
> www.inlifega.org

You may contact the Indiana Department of Insurance as follows:

> Indiana Department of Insurance
> 311 W. Washington Street
> Indianapolis, IN 46204
> (317) 232-2385
> www.in.gov/idoi

GAN-GRP-IN NOTICE-P/C 07

18

01/01/14

## CERTIFICATE AMENDMENT

TO BE ATTACHED TO THE CERTIFICATE FOR GROUP POLICY NO.: 000010132080

ISSUED TO: Ashley Industrial Moldings, Inc.

Your Certificate is amended by the addition of the following provisions.

### PRIOR INSURANCE CREDIT UPON TRANSFER OF
### LIFE INSURANCE CARRIERS

This provision prevents loss of life insurance coverage for you, which could otherwise occur solely because of a transfer of insurance carriers. The Policy will provide the following Prior Insurance Credit, when it replaces a prior plan.

"Prior Plan" means a prior carrier's group life insurance policy, which the Policy replaced within 1 day of the prior plan's termination date.

FAILURE TO SATISFY ACTIVE WORK RULE. Subject to payment of premiums, the Policy will provide life coverage if you:
  (1) were insured under the prior plan on its termination date;
  (2) were otherwise eligible under the Policy; but were not Actively-At-Work due to Injury or Sickness on its Effective Date;
  (3) are not entitled to any extension of life insurance under the prior plan; and
  (4) are not Totally Disabled (as defined in the Extension of Death Benefit section of the Policy) on the date the Policy takes effect.

AMOUNT OF LIFE INSURANCE. Until you satisfy the Policy's Active Work rule, the amount of your group life insurance under the Policy will not exceed the amount for which you were insured under the prior plan on its termination date.

This Amendment takes effect on your effective date of coverage under the Policy. In all other respects, your Certificate remains the same.

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

_(signature)_

Officer of the Company

GL1102-AMEND. PC1

19

Prior Ins. Cred. - Life
01/01/14



**Financial Group**

## LINCOLN FINANCIAL GROUP⁺ PRIVACY PRACTICES NOTICE

The Lincoln Financial Group companies\* are committed to protecting your privacy. To provide the products and services you expect from a financial services leader, we must collect personal information about you. **We do not sell your personal information to third parties.** We share your personal information with third parties as necessary to provide you with the products or services you request and to administer your business with us. This Notice describes our current privacy practices. While your relationship with us continues, we will update and send our Privacy Practices Notice as required by law. Even after that relationship ends, we will continue to protect your personal information. **You do not need to take any action because of this Notice, but you do have certain rights as described below.**

## INFORMATION WE MAY COLLECT AND USE

We collect personal information about you to help us identify you as our customer or our former customer, to process your requests and transactions; to offer investment or insurance services to you; to pay your claim; or to tell you about our products or services we believe you may want and use. The type of personal information we collect depends on the products or services you request and may include the following:

- **Information from you:** When you submit your application or other forms, you give us information such as your name, address, Social Security number; and your financial, health, and employment history.

- **Information about your transactions.** We keep information about your transactions with us, such as the products you buy from us; the amount you paid for those products; your account balances; and your payment history.

- **Information from outside our family of companies:** If you are purchasing insurance products, we may collect information from consumer reporting agencies such as your credit history; credit scores; and driving and employment records. With your authorization, we may also collect information, such as medical information from other individuals or businesses.

- **Information from your employer:** If your employer purchases group products from us, we may obtain information about you from your employer in order to enroll you in the plan.

## HOW WE USE YOUR PERSONAL INFORMATION

We may share your personal information within our companies and with certain service providers. They use this information to process transactions you have requested; provide customer service; and inform you of products or services we offer that you may find useful. Our service providers may or may not be affiliated with us. They include financial service providers (for example, third party administrators; broker-dealers; insurance agents and brokers, registered representatives; reinsurers and other financial services companies with whom we have joint marketing agreements). Our service providers also include non-financial companies and individuals (for example, consultants; vendors; and companies that perform marketing services on our behalf). Information we obtain from a report prepared by a service provider may be kept by the service provider and shared with other persons; however, we require our service providers to protect your personal information and to use or disclose it only for the work they are performing for us, or as permitted by law.

When you apply for one of our products, we may share information about your application with credit bureaus. We also may provide information to group policy owners, regulatory authorities and law enforcement officials and to others when we believe in good faith that the law requires disclosure. In the event of a sale of all or part of our businesses, we may share customer information as part of the sale. **We do not sell or share your information with outside marketers who may want to offer you their own products and services; nor do we share information we receive about you from a consumer reporting agency. You do not need to take any action for this benefit.**

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

GB06714

## SECURITY OF INFORMATION

We have an important responsibility to keep your information safe. We use safeguards to protect your information from unauthorized disclosure. Our employees are authorized to access your information only when they need it to provide you with products, services, or to maintain your accounts. Employees who have access to your personal information are required to keep it confidential. Employees are trained on the importance of data privacy.

Questions about your personal information should be directed to:

> Lincoln Financial Group
> Attn: Enterprise Compliance and Ethics
> Corporate Privacy Office, 7C-01
> 1300 S. Clinton St.
> Fort Wayne, IN 46802

**Please include all policy/contract/account numbers with your correspondence.**

*This information applies to the following Lincoln Financial Group companies:

First Penn-Pacific Life Insurance Company
Lincoln Financial Group Trust Company, LLC
Lincoln Financial Investment Services Corporation
Lincoln Investment Advisors Corporation

Lincoln Life & Annuity Company of New York
Lincoln Retirement Services Company, LLC
Lincoln Variable Insurance Products Trust
The Lincoln National Life Insurance Company

### ADDITIONAL PRIVACY INFORMATION FOR INSURANCE PRODUCT CUSTOMERS

#### CONFIDENTIALITY OF MEDICAL INFORMATION

We understand that you may be especially concerned about the privacy of your medical information. We do not sell or rent your medical information to anyone; nor do we share it with others for marketing purposes. We only use and share your medical information for the purpose of underwriting insurance, administering your policy or claim and other purposes permitted by law, such as disclosure to regulatory authorities or in response to a legal proceeding.

#### MAKING SURE MEDICAL INFORMATION IS ACCURATE

We want to make sure we have accurate information about you. Upon written request we will tell you, within 30 business days, what personal information we have about you. You may see a copy of your personal information in person or receive a copy by mail, whichever you prefer. We will share with you who provided the information. In some cases we may provide your medical information to your personal physician. We will not provide you with information we have collected in connection with, or in anticipation of, a claim or legal proceeding. If you believe that any of our records are not correct, you may write and tell us of any changes you believe should be made. We will respond to your request within 30 business days. A copy of your request will be kept on file with your personal information so anyone reviewing your information in the future will be aware of your request. If we make changes to your records as a result of your request, we will notify you in writing and we will send the updated information, at your request, to any person who may have received the information within the prior two years. We will also send the updated information to any insurance support organization that gave us the information, and any service provider that received the information within the prior 7 years.

Questions about your personal medical information should be directed to:

> Lincoln Financial Group
> Attn: Medical Underwriting
> P.O. Box 21008
> Greensboro, NC 27420-1008

The CONFIDENTIALITY OF MEDICAL INFORMATION and MAKING SURE INFORMATION IS ACCURATE sections of this Notice apply to the following Lincoln Financial Group companies:

First Penn-Pacific Life Insurance Company
Lincoln Life & Annuity Company of New York
The Lincoln National Life Insurance Company

GB06714

Page 2 of 2
6/12

# The Lincoln National Life Insurance Company

A Stock Company    Home Office Location: Fort Wayne, Indiana
Group Insurance Service Office: 8801 Indian Hills Drive, Omaha, NE 68114-4066 (402) 361-7300

CERTIFIES THAT Group Policy No.       GL 000400001000-12077       has been issued to
The Commerce Trust Company as Trustee for The Lincoln National Life Insurance Company Voluntary
Insurance Trust

The Issue Date is January 1, 2011 for the Participating Employer.

Participating Employer: Ashley Industrial Moldings, Inc.

The insurance is effective only if the Employee is eligible for insurance and becomes and remains insured as
provided in the Group Policy.

Certificate of Insurance for Class 1

{INSURED}

{Schedule of Insurance}
        {Coverage}                                              {Insurance Amount}
    {BENEFIT_1}
    {BENEFIT_2}
    {BENEFIT_3}
    BENEFIT_4}
    {BENEFIT_5}

You are entitled to the benefits described in this Certificate if you are eligible for insurance under the
provisions of the Policy. This Certificate replaces any other certificates for the benefits described inside. As
a Certificate of Insurance, it is not a contract of insurance; it only summarizes the provisions of the Policy
and is subject to the Policy's terms.

President

## CERTIFICATE OF GROUP LIFE INSURANCE

GL1102 FACE PAGE

{LF_BLOCK}        {USER}        {CERT_ID}        01/01/14

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE
## CONTINUED

### DEFINITIONS.

"Beneficiary" means the person(s) named on the Insured Person's enrollment form. The Insured Person may change the Beneficiary by filing a written notice of the change with the Company at its Group Insurance Service Office.

"Common Carrier Accident" means a covered accidental bodily injury, which is sustained while riding as a fare paying passenger (not a pilot, operator or crew member) in or on, boarding or getting off from a Common Carrier.

"Common Carrier" means any land, air or water conveyance operated under a license to transport passengers for hire.

"Intoxicated" shall be defined by the jurisdiction where the accident occurs. The exclusion will apply whether or not the driver is convicted.

"Loss of a Member" includes the following:
(1) "Loss of Hand or Foot," means complete severance through or above the wrist or ankle joint.
(2) "Loss of an Eye," means total and irrevocable loss of sight in that eye.

GL1101-14.3A 01 IN

21

COMMON CARRIER
01/01/14

IN THE DISTRICT COURT OF IOWA, IN AND FOR FAYETTE COUNTY

---

| | |
|---|---|
| VANESSA LEE, Individually as Executor of the JOHN LEE ESTATE ) ) ) | CASE NO. CVCV055206 |
| Plaintiff, ) | ACCEPTANCE OF SERVICE |
| v. ) | OR ORIGINAL NOTICE AND |
| ) | FIRST AMENDED |
| ) | PETITION AT LAW |
| THE LINCOLN NATIONAL LIFE ) | |
| INSURANCE COMPANY, ) | |
| Defendant. ) | |

---

COMES NOW, _____, (NAME) who is the

_____ (OFFICE HELD IN CORPORATION), a

duly authorized offer and employee of the above-named

Defendant, The Lincoln National Life Insurance Company, the

named Defendant in the above-entitled matter, and hereby

acknowledges receipt of an Original Notice, with a copy of

the Petition at Law attached thereto; I, as duly authorized

agent for said named Defendant, The Lincoln National Life

Insurance Company, do hereby accept service of Original

Notice and waive any defects in the manner of service; I

further surrender to the jurisdiction of the District Court

of Iowa, in and for Fayette County, Iowa.

DATED this _____ day of August, 2018.

THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY


By:_____



July 28, 2016

**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

THE LAW OFFICE OF
LARRY WOODS
24 NORTH FREDERICK AVE
OELWEIN IA 50662

RE:    PolicyHolder:    Ashley Industrial Molding, Inc
        Policy Number:    000400001000-12077
                       000010132080-00000
        Claim Number:    1072315-1127380
        Claimant:    John E Lee

Dear Mr. Woods :

We have completed our review of your appeal for Basic and Voluntary Accidental Death and Dismemberment.  Based on the information provided, we have determined that we are unable to approve benefits.  In our appeal review process, all information previously submitted as well as any new documentation is used to make a determination.

To be eligible for benefits under the policy issued to the employer, an individual must satisfy all of the provisions of the policy.  The specific terms, conditions and limitations of the applicable policy provisions for the Accidental Death and Dismemberment Insurance portion of your employer's plan include, but are not limited to, the following:

## <u>BASIC ACCIDENTAL DEATH & DISMEMBERMENT</u>

### ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

**DEATH OR DISMEMBERMENT BENEFIT FOR AN INSURED PERSON**.  The Company will pay the benefit listed below, if:
    (1)   an Insured Person sustains an accidental bodily injury while insured under this provision; and
    (2)   that injury directly causes one of the following losses within 365 days after the date of the accident.
The loss must result directly from the injury and from no other causes.

Packet: 347253

©2016 Lincoln National Corporation

www.LincolnFinancial.com

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

**LIMITATIONS**.  Benefits are not payable for any loss to which a contributing cause is:
(1) intentional self-inflicted injury or self-destruction;
(2) disease, bodily or mental infirmity, or medical or surgical treatment of these;
(3) participation in a riot;
(4) duty as a member of any military, naval or air force;
(5) war or any act of war, declared or undeclared;
(6) participation in the commission of a felony;
(7) voluntary use of drugs; except when prescribed by a Physician;
(8) travel or flight in any aircraft, including balloons and gliders; except as a fare paying passenger on a regularly scheduled flight; or
(9) driving a vehicle while intoxicated.

"Intoxicated" shall be defined by the jurisdiction where the accident occurs.  The exclusion will apply whether or not the driver is convicted.


## <u>VOLUNTARY ACCIDENTAL DEATH & DISMEMBERMENT</u>


### ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE


**DEATH OR DISMEMBERMENT BENEFIT FOR AN INSURED PERSON**.  The Company will pay the benefit listed below, if:
(1) you sustain an accidental bodily injury while insured under this provision; and
(2) that injury directly causes one of the following losses within 365 days after the date of the accident.
The loss must result directly from the injury and from no other causes.

**LIMITATIONS**.  Benefits are not payable for any loss to which a contributing cause is:
(1) intentional self-inflicted injury or self-destruction, while sane;
(2) disease, bodily or mental infirmity, or medical or surgical treatment of these; except for:
(a) pyogenic infections resulting from an accidental bodily injury; or
(b) the accidental ingestion of contaminated substances;
(3) participation in a riot;
(4) duty as a member of any military, naval or air force;
(5) war or any act of war, declared or undeclared;
(6) participation in the commission of a felony;
(7) voluntary use of drugs; except when prescribed by a Physician;
(8) voluntary inhalation of gas, including carbon monoxide, while sane;
(9) travel or flight in any aircraft, including balloons and gliders; except as a fare paying passenger on a regularly scheduled flight; or
(10) driving a vehicle while intoxicated.

"Intoxicated" shall be defined by the jurisdiction where the accident occurs.  The exclusion will apply whether or not the driver is convicted.


## <u>Summary of Initial Claim Filing</u>

On 07/22/2015, we received the initial Life Insurance claim for John Lee.  The Basic Life and Voluntary Life Insurance benefits were paid on 08/04/2015.  The Basic and Voluntary Accidental Death & Dismemberment benefits were denied on 10/23/2015 due to the accident report and toxicology reports showing that Mr Lee driving a vehicle while

intoxicated was a contributing cause to the accident and Mr. Lee's death.  For further details regarding this denial, please refer to our letter dated 10/23/2015.

## Summary of First Level Of Appeal

On 12/23/2015, you filed an appeal on behalf of your client, Vanessa Lee, in response to our determination to deny benefits.  During our review, the state of Iowa concluded that Mr. Lee died of blunt force injuries resulting from an ATV crash while driving the ATV with a blood alcohol level of over the legal limit of 0.08 BAC.  For questions regarding this information, please refer to our letter dated 02/18/2016.

## Summary of Second Level Of Appeal

On 04/15/2016, you filed your second and final appeal in response to our determination to uphold our previous decision to deny benefits.  In your appeal letter, you indicated that a request was made to the State of Iowa's Medical Examiner's office for all records on file for Mr. Lee.  The appeal letter also stated that your client does not have sufficient records to determine why the terms "ATV Crash" is contained on the death certificate. To date, we have not received any additional information to review.

## Second Level Appeal Decision

Based on our review of the information and the reasons indicated in this letter, we are unable to overturn the original denial of benefits.

The policy wording states that benefits are not payable if a contributing cause to the Insured Person's accidental injury is driving a vehicle while intoxicated.  Your appeal letter indicated that you did not believe an ATV is considered a vehicle.  Dictionary.com indicates that the definition of ATV or "All-Terrain Vehicle" is "a vehicle with treads, wheels, or both, designed to traverse varied, uneven terrain as well as roads."  Based on this definition and the definitions included in our previous denial letter dated 02/18/2016, the ATV is considered a vehicle.

The Death Certificate completed by Medical Examiner Dennis Firchou indicates that the Manner of Death for Mr. Lee is "Accident", the Cause of Death is listed as "Blunt Force Injuries of Head" and the description of his injury is "ATV Crash".  The toxicology report completed by the University of Iowa Hospitals & Clinics indicates that Mr. Lee's blood alcohol content was 0.166 BAC.

The cause of death is defined as either a disease or injury that starts the chain of events that culminates into the demise of the person. Contributing cause of death is a significant factor and includes pre-existing pathologic conditions or the presence of elevated drugs/medications in the system of the deceased such as alcohol which can impair the CNS and muscular coordination in addition to affecting the ability to operate machinery.  Therefore, elevated blood/vitreous ethanol alcohol level is a contributing factor to the demise of Mr. Lee.

In summary, based on the fact that Mr. Lee's death was ruled an accident due to blunt force injuries caused by an ATV crash and he was driving the ATV while over the legal limit of 0.08 BAC, we are unable to overturn the original denial of Basic and Voluntary Accidental Death benefits.

Lincoln/Lee 246

You have exhausted all rights of appeal for this claim and your client's administrative file is now closed. You have the right to pursue litigation and you may request copies of the pertinent documents.

If your plan is subject to ERISA, you and your plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office and your State insurance regulatory agency.

Please contact our office with any questions you may have at (800)-423-2765.

Sincerely,



Carla Larimore
Sr Claims Examiner, Claims Professional
The Lincoln National Life Insurance Company



July 28, 2016

**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

ASHLEY INDUSTRIAL MOLDING, INC
KAREN MAXWELL
PO BOX 398
ASHLEY IN 46705

RE:  Policy Holder:  Ashley Industrial Molding, Inc
     Policy Number:  000400001000-12077
                     000010132080-00000
     Claim Number:   1072315-1127380
     Claimant:       John E Lee

Dear Ms. Maxwell :

We have completed our review of your employee's appeal for Basic and Voluntary Accidental Death and benefits have been denied.

Upon review of the entire claim file and all additional information provided, it has been determined that we are unable to overturn the original denial of the claim.

We cannot provide you with a copy of the detailed letter sent to the beneficiary's attorney.

Please contact our office with any questions you may have at (800)-423-2765.

Sincerely,

Carla Larimore
Sr Claims Examiner, Claims Professional
The Lincoln National Life Insurance Company

Packet: 347270

©2016 Lincoln National Corporation

www.LincolnFinancial.com

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.



June 14, 2016

**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

THE LAW OFFICE OF
LARRY WOODS
24 NORTH FREDERICK AVE
OELWEIN IA 50662


RE:    PolicyHolder:    Ashley Industrial Molding, Inc
        Policy Number:    000400001000-12077
                        000010132080-00000
        Claim Number:    1072315-1127380
        Claimant:    John E Lee


Dear Mr. Woods :

On 04/22/2016 we acknowledged your appeal and advised that it may be in your best interest to provide additional medical documentation in support of your appeal for the above referenced insured.

Although we recently received the necessary information and as we are approaching our initial deadline for deciding your appeal under the Employee Retirement Income Security Act (ERISA), and have not yet reached a determination, an extension of time to process your appeal is required. We are therefore exercising our right to take a 60-day extension of time to decide your appeal.

We are currently reviewing your appeal and you can expect to receive a decision from us in the next 60 days.


Packet: 340774

©2016 Lincoln National Corporation

www.LincolnFinancial.com

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

If you have any questions please do not hesitate to contact me at (800) 423-2765 ext. 2653.

Sincerely,


Carla Larimore
Senior Claims Examiner, Claims
The Lincoln National Life Insurance Company

Lincoln/Lee 250



April 22, 2016

**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

THE LAW OFFICE OF
LARRY WOODS
24 NORTH FREDERICK AVE
OELWEIN IA 50662

RE:   Policy Holder:    Ashley Industrial Molding, Inc
      Policy Number:    000400001000-12077
                        000010132080-00000
      Claim Number:     1072315-1127380
      Claimant:         John E Lee

Dear Mr. Woods :

We are writing to acknowledge receipt of your letter of appeal.  We received your letter on 04/15/2016 regarding the Basic and Voluntary Accidental Death claim for John E Lee.

We have commenced our review of the file and should have a decision within 60 days. You will be notified in writing of our decision.

Since we want to provide you with every opportunity to submit a complete appeal, please contact us immediately if you will be submitting any additional information.

If you have any questions please do not hesitate to contact me at (800) 423-2765 ext. 2653.

Sincerely,

Carla Larimore
Senior Claims Examiner, Claims
The Lincoln National Life Insurance Company

Packet: 333643

©2016 Lincoln National Corporation

www.LincolnFinancial.com

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.



April 22, 2016

**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

ASHLEY INDUSTRIAL MOLDING, INC
KAREN MAXWELL
PO BOX 398
ASHLEY IN 46705

RE:     PolicyHolder:        Ashley Industrial Molding, Inc
         Policy Number:     000400001000-12077
                                    000010132080-00000
         Claim Number:     1072315-1127380
         Claimant:             John E Lee

Dear Karen Maxwell:

We are writing to acknowledge receipt of a letter of appeal regarding John Lee's Basic and Voluntary Accidental Death claim.

We have commenced our review of your file and should have a decision within 60 days. You will be notified in writing of our decision.

If you have any questions please do not hesitate to contact me at (800) 423-2765 ext. 2653.

Sincerely,

Carla Larimore
Senior Claims Examiner, Claims
The Lincoln National Life Insurance Company

Packet: 333644

©2016 Lincoln National Corporation

www.LincolnFinancial.com

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

LARRY F. WOODS
ATTORNEY AT LAW
24 NORTH FREDERICK AVENUE
OELWEIN, IA 50662

WATERLOO IA 507

15 APR 2016 PM 1 T

The Lincoln National Life Insurance Co.
Att'n: Risk Departments
P.O. Box 2337
Omaha, NB 68103

APR 1 8 2016

68103-2337

# LAW OFFICE OF
## ℒ𝒶𝓇𝓇𝓎 ℱ. 𝒲ℴℴ𝒟𝒮

24 NORTH FREDERICK AVENUE
OELWEIN, IOWA 50662
PH. (319) 283-3204  FAX (319) 283-1838
lfwoods@trxinc.com

April 15, 2016

The Lincoln National Life Insurance Company
Attn: Risk Departments
P. O. Box 2337
Omaha, Nebraska 68103

        RE:   Policy Holder: Ashley Industrial Molding,  Inc.
              Policy No:     00400001000-12077
                             000010132080-00000
              Claim Number:  1072315-1127380
              Claimant:      John Lee
              Appeal of denial of accident death benefits

TO WHOM IT MAY CONCERN:

        Pursuant  to the Notice Contained in a ruling issued  on
February 18,  2016,  the Claim Number:   1072315-1127380  the
Claimant,  John E. Lee, by and through his wife,  Vanessa  Lee
does  hereby  appeals the decision  contained  therein.   The
Claimant  renews each and every of the reasons set   forth   in
the  appeal  notice and the letter from my office,  with   the
attachments dated February 8, 2016. Also, the original Notice
of  Appeal and all allegations and factual information  dated
December 19, 2015, are incorporated as a part of this appeal.
The report of the only medical examiner to view the scene   of
the incident,  Dr.  Anthony Leo is also incorporated by  this
reference.

        It   appears  that  the decision is based,  at  least   in
significant  part,  that  the injury was "ruled  as  an'  ATV
Crash'".   Your definitions of the word "Crash"  now seem  to
include a "rollover and flipping." The pictures specifically
provided showed that there was no rollover or flipping of the
ATV.   There would be some type of markings, paint scrapes or
other  indication on the vehicle handles or  elsewhere,   that

Lincoln National Life Insurance Co.
Appeal of Decision
Page 2
Claimant:   John E. Lee
Claim No.   1072315-1127380

such an incident occurred.  There are simply no such markings on the vehicle.  This fact was clearly confirmed by the photos provided as evidence for the last appeal.

As a result of your company's ruling, a request was made to the State of Iowa Medical Examiner's office for all of the records in that office.  As of this date, Vanessa Lee has not yet obtained copies of those records.  If they are received before your company's decision, copies the records obtained will be forwarded to your office.  At this time, Vanessa does not have sufficient records from the medical examiner's office to determine why the terms "ATV Crash" is contained on the death certificate.  Additional medical information is also attempted to be located.  If there is any relevant additional medical information obtained, it will also be provided to your office.

Thank you for your time and attention.  Please confirm that the appeal is timely filed as it is mailed on the date set forth above.  This appeal will be mailed by my office to the Lincoln Office disclosed in the ruling of February 18, 2016.  Also a copy of this letter will be faxed to 402-361-1460 on the 15th day of April, 2016.

Very truly yours,

Larry F. Woods

CC:    Client

Lincoln/Lee 255

# LARRY F. WOODS  **FAX**

24 North Frederick Ave.

Oelwein, IA 50662

Phone: 319- 283- 3204

Fax: 319 283-9193

To: _Lincoln National Risk Dept_  From: _____

FAX: _402-361-1460_  Date _4/15/2016_

Phone: _____  Pages _3- including this_

RE: _John Lee Claen_  CC: _____

URGENT        FOR REVIEW        PLEASE COMMENT        PLEASE REPLY        PLEASE RECYCLE

*Comments:

Confidential : YES                    Restricted Distribution : YES

IF YOU HAVE ANY PROBLEMS RECEIVING THIS FACSIMILE, PLEASE CONTACT US AT 319-283-3204

This information contained in this facsimile message is attorney privilege and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient you are hereby notified that any dissemination, distribution or copying of this communications is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone, and return original message to the above address via U.S. Postal Service. Thank You

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 168 of 555    Lincoln/Lee 256

# LAW OFFICE OF
# *LARRY F. WOODS*

**24 NORTH FREDERICK AVENUE**
**OELWEIN, IOWA 50662**
PH. (319) 283-3204  FAX (319) 283-1838
lfwoods@trxinc.com

April 15, 2016

The Lincoln National Life Insurance Company
Attn: Risk Departments
P. O. Box 2337
Omaha, Nebraska 68103

RE:   Policy Holder: Ashley Industrial Molding,  Inc.
      Policy No:       00400001000-12077
                       000010132080-00000
      Claim Number:  1072315-1127380
      Claimant:      John Lee
      Appeal of denial of accident death benefits

TO WHOM IT MAY CONCERN:

Pursuant to the Notice Contained in a ruling issued on February 18, 2016, the Claim Number: 1072315-1127380 the Claimant, John E. Lee, by and through his wife, Vanessa Lee does hereby appeals the decision contained therein. The Claimant renews each and every of the reasons set forth in the appeal notice and the letter from my office, with the attachments dated February 8, 2016. Also, the original Notice of Appeal and all allegations and factual information dated December 19, 2015, are incorporated as a part of this appeal. The report of the only medical examiner to view the scene of the incident, Dr. Anthony Leo is also incorporated by this reference.

It appears that the decision is based, at least in significant part, that the injury was "ruled as an' ATV Crash'". Your definitions of the word "Crash" now seem to include a "rollover and flipping." The pictures specifically provided showed that there was no rollover or flipping of the ATV. There would be some type of markings, paint scrapes or other indication on the vehicle handles or elsewhere, that

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 169 of 555   Lincoln/Lee 257

Lincoln National Life Insurance Co.
Appeal of Decision
Page 2
Claimant:   John E. Lee
Claim No.   1072315-1127380

such an incident occurred.  There are simply no such markings on the vehicle.  This fact was clearly confirmed by the photos provided as evidence for the last appeal.

As a result of your company's ruling, a request was made to the State of Iowa Medical Examiner's office for all of the records in that office.  As of this date, Vanessa Lee has not yet obtained copies of those records.  If they are received before your company's decision, copies the records obtained will be forwarded to your office.  At this time, Vanessa does not have sufficient records from the medical examiner's office to determine why the terms "ATV Crash" is contained on the death certificate.  Additional medical information is also attempted to be located.  If there is any relevant additional medical information obtained, it will also be provided to your office.

Thank you for your time and attention.  Please confirm that the appeal is timely filed as it is mailed on the date set forth above.  This appeal will be mailed by my office to the Lincoln Office disclosed in the ruling of February 18, 2016.  Also a copy of this letter will be faxed to 402-361-1460 on the 15th day of April, 2016.

Very truly yours,

Larry F. Woods

CC:   Client

Case 6:18-cv-02063-CJW-MAR   Document 26-4   Filed 02/13/19   Page 170 of 555   Lincoln/Lee 258



February 18, 2016

**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

ASHLEY INDUSTRIAL MOLDING, INC
KAREN MAXWELL
PO BOX 398
ASHLEY IN 46705

RE:   Policy Holder:     Ashley Industrial Molding, Inc
      Policy Number:     000400001000-12077
                         000010132080-00000
      Claim Number:      1072315-1127380
      Claimant:          John E Lee

Dear Ms. Maxwell:

We have completed our review of the appeal for Accidental Death benefits for your former employee, John Lee, as referenced above.

Upon review of the entire claim file and all additional information provided, it has been determined that we are unable to overturn the original denial of the claim.

We cannot provide you with a copy of the detailed letter sent to the beneficiary due to privacy laws.

Please contact our office with any questions you may have at (800)-423-2765, my extension is 7033.

Sincerely,


Ashley Fults
Appeals Consultant, Claims Support
Group Protection – Claims Shared Services
The Lincoln National Life Insurance Company

Packet: 323638

©2016 Lincoln National Corporation

www.LincolnFinancial.com

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.



February 18, 2016

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

THE LAW OFFICE OF
LARRY WOODS
24 NORTH FREDERICK AVE
OELWEIN IA 50662

RE:   Policy Holder:     Ashley Industrial Molding, Inc
      Policy Number:    000400001000-12077 (Voluntary)
                        000010132080-00000 (Basic)
      Insured:          John E Lee
      Claim Number:     1072315-1127380
      Claimant:         John E Lee

Dear Mr. Woods:

We have completed our review of your client's appeal for Basic and Voluntary Accidental Death benefits under the above referenced policies. Based on the information provided, we have determined that we are unable to approve benefits. In our appeal review process, all information previously submitted as well as any new documentation was used to make a determination.

To be eligible for benefits under the policy issued to Mr. Lee's employer, an individual must satisfy all of the provisions that apply to that coverage. The specific terms, conditions and limitations of the Accidental Death provisions for the Basic coverage include, but are not limited to, the following:

**DEATH OR DISMEMBERMENT BENEFIT FOR AN INSURED PERSON**. The Company will pay the benefit listed below, if:
 (1)   an Insured Person sustains an accidental bodily injury while insured under this provision; and
 (2)   that injury directly causes one of the following losses within 365 days after the date of the accident.
The loss must result directly from the injury and from no other causes.

**LIMITATIONS**. Benefits are not payable for any loss to which a contributing cause is:
 (9)   driving a vehicle while intoxicated.

Packet: 323216

©2016 Lincoln National Corporation

www.LincolnFinancial.com

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

The specific terms, conditions and limitations of the Accidental Death provisions that apply to the Voluntary coverage include, but are not limited to:

**DEATH OR DISMEMBERMENT BENEFIT FOR AN INSURED PERSON**.  The Company will pay the benefit listed below, if:
(1) you sustain an accidental bodily injury while insured under this provision; and
(2) that injury directly causes one of the following losses within 365 days after the date of the accident.
The loss must result directly from the injury and from no other causes.

**LIMITATIONS**.  Benefits are not payable for any loss to which a contributing cause is:
(10) driving a vehicle while intoxicated.

Both coverages define intoxication as:

"Intoxicated" shall be defined by the jurisdiction where the accident occurs.  The exclusion will apply whether or not the driver is convicted.

## Summary of Initial Claim

The information provided in connection with the claim indicates John Lee passed away on 07/19/2015 from blunt force injuries to the head after an ATV crash. Basic Life Insurance benefits totaling $48,000 and Voluntary Life Insurance benefits totaling $20,000 were provided on 08/04/2015.

Unfortunately, Accidental Death benefits under both policies were denied upon receipt of the toxicology results which confirmed Mr. Lee's blood alcohol was twice the legal limit registering at 0.166 BAC. For completed details, please refer to our letter dated 10/23/2015.

## Summary of Appeal

On 12/23/2015, you filed an appeal on behalf of your client, Vanessa Lee, in response to our determination to deny benefits indicating that she disagrees with the description of the injury which is stated to be an "ATV crash". Since this was an open area, there were no objects to crash into. Based on the injuries sustained, the placement of the body in relation to the ATV, and the location of the cigarette that was found, your client felt our conclusion was without merit. You also disputed that an ATV is vehicle; instead you considered it a motorized machine.

A hand drawn diagram, photographs of the accident site, a letter authored by Dr. Anthony Leo and records from Buchanan County Health Center were provided for consideration.

## Appeal Decision

Based on our review of all available information, we are unable to overturn the denial of Basic and Voluntary Accidental Death benefits.

Lincoln's policy does not provide a specialized definition for "vehicle" because our definition of the term does not differ from what is described in the dictionary for general purposes. Definitions of the term "vehicle" include:

Merriam-Webster: a means of carrying or transporting something <planes, trains, and other vehicles>: as
a : motor vehicle
b : a piece of mechanized equipment

Wikipedia: A **vehicle** (from Latin: vehiculum[1]) is a mobile machine that transports people or cargo. Most often, vehicles are manufactured, such as wagons, bicycles, motor vehicles (motorcycles, cars, trucks, buses), railed vehicles (trains, trams), watercraft (ships, boats), aircraft and spacecraft.[2] Land vehicles are classified broadly by what is used to apply steering and drive forces against the ground: wheeled, tracked, railed or skied. ISO 3833-1977 is the standard, also internationally used in legislation, for road vehicles types, terms and definitions

Dictionary.com: 1. any means in or by which someone travels or something is carried or conveyed; a means of conveyance or transport: a motor vehicle; space vehicles.
2. a conveyance moving on wheels, runners, tracks, or the like, as a cart, sled, automobile, or tractor.

We understand your client feels that the ATV her husband was driving does not fit within the purview of the policy exclusion related to driving a vehicle while intoxicated; however, an ATV is defined as a motorized, mobile transportation machine. It carries people, requires steering, and operates on wheels, all of which fits within the generally accepted definitions cited above.

You've expressed concern that we paraphrased Iowa Code Section 321.1(4) in our initial denial without considering Iowa Code Section 3211.1(1); however, our initial denial letter references information available on your states DMV website, not from these code sections. Our review of both Iowa Code Sections mentioned, one referring to All-Terrain Vehicles and the other to Off-Road Vehicles, confirms that both types are considered vehicles that clearly fit within the general definitions mentioned.

You indicate your client also disagrees with the description of the injury which was ruled as an "ATV Crash"; however, the medical examiner has not amended the death certificate to reflect Ms. Lee's theory that her husband fell after exiting the ATV. Unfortunately, all available evidence supports the fact that Mr. Lee was driving the ATV and was later found lying next to the vehicle unresponsive. While there were no objects at the site to "crash" into, we feel this term would also apply to the ATV flipping or rolling, which is supported by the new information from Dr. Leo confirming "the headlight was slightly dislodged" and is also supported by your statement that "the light was hanging loose in front". Since the family did not report the incident until after the fact, there is no accident report supporting what they feel is an accurate version of events. In addition, they did not request an autopsy to look into their version (or another reason) that may have contributed to Mr. Lee's passing.

As Dr. Leo states in his letter, neither an autopsy nor a proper forensic accident investigation was undertaken. Without this information being available for us to consider, the facts in this case remain that the state of Iowa concluded Mr. Lee died of blunt force injuries resulting from an ATV Crash. Given that the toxicology results confirm a blood alcohol content well over the legal limit of 0.08 BAC and all evidence points to Mr. Lee driving the All-Terrain Vehicle while intoxicated when the accident occurred; we are unable to provide Basic and Voluntary Accidental Death benefits.

As a reminder, your client has exhausted the first level of appeal. If you disagree with this decision, you may pursue a second and final level of appeal.

You may request a review of your client's denied claim. Such request must be made in writing and submitted to us at the address below within 60 days after you receive this denial notice or by 04/18/2016.

> Risk Services
> The Lincoln National Life Insurance Company
> PO Box 2337
> Omaha, NE 68103
> Fax: 402-361-1460

Please include your reason(s) for appealing and provide any proof documentation, such as office notes, laboratory results, x-rays and any other testing results to support your appeal. We will then provide you with a full written explanation of the decision within 60 days of receipt of your appeal.

Please be sure to include the policy number and claim number. If you wish, you may also submit your comments and views of the issues in writing, and may request copies of the pertinent documents.

If the plan is subject to ERISA, your client and your client's plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local US Department of Labor Office and your State insurance regulatory agency. In addition, once all required reviews of this claim have been completed; you have the right to bring a civil action under applicable law.

Please contact our office with any questions you may have at (800) 423-2765, my extension is 7033.

Sincerely,


Ashley Fults
Appeals Consultant, Claims Support
Group Protection – Claims Shared Services
The Lincoln National Life Insurance Company

Lincoln/Lee 263

Date/Time: Feb. 18. 2016  1:03PM

| File No. Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|
| 2114 Memory TX | 913192831838 | P. 4 | OK | |

--------------------------------------------------------------------------------

Reason for error
E. 1) Hang up or line fail
E. 3) No answer
E. 5) Exceeded max. E-mail size

E. 2) Busy
E. 4) No facsimile connection
E. 6) Destination does not support IP-Fax

Lincoln
Financial Group

February 18, 2016

The Lincoln National Life
Insurance Company
Service Office;
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

THE LAW OFFICE OF
LARRY WOODS
24 NORTH FREDERICK AVE
OELWEIN IA 50662

RE:  Policy Holder:     Ashley Industrial Molding, Inc
     Policy Number:     0004000010000-12077 (Voluntary)
                        000010132080-00000 (Basic)
     Insured:           John E Lee
     Claim Number:      1072316-1127380
     Claimant:          John E Lee

Dear Mr. Woods:

We have completed our review of your client's appeal for Basic and Voluntary Accidental Death benefits under the above referenced policies. Based on the information provided, we have determined that we are unable to approve benefits. In our appeal review process, all information previously submitted as well as any new documentation was used to make a determination.

To be eligible for benefits under the policy issued to Mr. Lee's employer, an individual must satisfy all of the provisions that apply to that coverage. The specific terms, conditions and limitations of the Accidental Death provisions for the Basic coverage include, but are not limited to, the following:

**DEATH OR DISMEMBERMENT BENEFIT FOR AN INSURED PERSON.** The Company will pay the benefit listed below, if:
(1)  an Insured Person sustains an accidental bodily injury while insured under this provision; and
(2)  that injury directly causes one of the following losses within 365 days after the date of the accident.
The loss must result directly from the injury and from no other causes.

**LIMITATIONS.** Benefits are not payable for any loss to which a contributing cause is:
(9)  driving a vehicle while intoxicated.

Form 31311H
©2016 Lincoln National Corporation
www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.



# Fax Transmission

### 8801 Indian Hills Dr., Omaha, NE  68114

**From:**     Name:
            Fax Number:    1460
            Voice Phone:

**To:**       Name:
            Company:
            Fax Number:    18778433950
            Voice Phone:

**Fax Notes :** _____

Date and time of transmission: Monday, February 08, 2016 3:14:40 PM

Number of pages including this cover sheet: 13

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

This facsimile transmission is intended only for the addressee named above.  It contains information that is privileged, confidential or otherwise protected from use and disclosure.  If you are not the intended recipient you are hereby notified that any review, disclosure, copying or dissemination of this transmission, or the taking of any action in reliance on its contents, or other use is strictly prohibited.  If you have received this transmission in error, please notify us by telephone immediately so that we can arrange for its return to us.  Thank you for your cooperation.

\* Nebraska Time1 \* CVD-NFTPWFFAX101/0 \* DNIS:1460 \* CSID:3192831838 \* DURATION (mm-ss):02:34

# FAX

## LARRY F. WOODS

24 North Frederick Ave.

Oelwein, IA 50662

Phone: 319-283-3204

Fax: 319 283-9193

To: Ashley.

FAX: 402-361-1460    Date 2/8/2016.

Phone:_____    Pages_____

RE: John Lee Clari    CC:_____

Clari No. 167-2315-1127380

URGENT    FOR REVIEW    PLEASE COMMENT    PLEASE REPLY    PLEASE RECYCLE

\*Comments:

Confidential : YES            Restricted Distribution : YES

IF YOU HAVE ANY PROBLEMS RECEIVING THIS FACSIMILE, PLEASE CONTACT US AT 319-283-3204

This information contained in this facsimile message is attorney privilege and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient you are hereby notified that any dissemination, distribution or copying of this communications is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone, and return original message to the above address via U.S. Postal Service. Thank You.

LFG Omaha Fax    06/17/2015 02:47    3192831838

LARRY WOODS LAW OFFI    PAGE 01/12

2/8/2016 3:17:40 PM PAGE

PAGE 3/13 * RCVD AT 2/8/2016 3:14:41 PM [Central Standard Time] * SVR:NETIPWFAX101/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

# LAW OFFICE OF
# *LARRY F. WOODS*

## 24 NORTH FREDERICK AVENUE
## OELWEIN, IOWA 50662
## PH. (319) 283-3204
## FAX (319) 283-1838

February 8, 2016

Risk Services
The Lincoln National Life Insurance Company
P. O. Box 2337
Omaha, Nebraska 68103

> RE:   Policy Holder: Ashley Industrial Molding, Inc.
> Policy No:       00400001000-12077
>                  000010132080-00000
> Claim Number:    1072315-1127380
> Claimant:        John Lee
> Appeal:  Additional Evidence

Dear Ashley:

In response to your phone call, I am attaching a copy of the report I have received on this date from Dr. Anthony Leo. I believe his report is timely and addresses many of the issues raised by the Notice of Appeal which has been filed.

I am not sure if your company also has the medical report from Buchanan County Health Center. This hospital was where Vanessa Lee took John Lee for the initial examination. I am attaching a copy of the report.

I would like to draw you attention to the last line full paragraph - "History of Present Illness. The last line states that "They believe he fell down and hit his head."

I also have 3 pictures that I would like to submit. Those have been sent to the e-mail address of LifeClaims@LFG.com. There is a notation on each picture as to why each photo should be considered and what is shown by the photograph.

06/17/2015  02:47   3192831838   LARRY WOODS LAW OFFI   PAGE  02/12

LFG Omaha Fax   2/8/2016 3:17:40 PM  PAGE  3/013   Fax Server

PAGE 3/17 * RCVD AT 2/8/2016 3:14:41 PM [Central Standard Time] * SVR:NE1PWFAX101/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 180 of 555 Lee 268

Lincoln National Life Insurance Co.
Ashley Fultz
Page 2
Claimant:    John E. Lee
Claim No.    1072315-1127380


     There are also issues raised by the initial notice of appeal that should be considered. Specifically, it is noted that ATV are controlled by a separate Chapter of the Iowa Code, as set forth in my Appeal Letter of December 19, 2015.

     Thank you for your time and attention. Please confirm that the attached information, and photos which have been e-mailed are considered as a part of the evidence considered by the person reviewing the record for the appeal.

Very truly yours,

Larry F. Woods

Enc:  Diagram
CC:  Client

PAGE 1/13 * RCVD AT 3/8/2016 4:14:44 PM [Central Standard Time] * SVR:NETIPWFAX10/16 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

# Anthony J. Leo M.D., F.A.C.S.

**General Surgery**
**201 Eighth Avenue Southeast**
**Oelwein, Iowa 50662**
**319-283-4321**

Diplomate, American Board of Surgery                    Fellow, American College of Surgeons

February 7, 2016

To Whom It May Concern,

John Earl Lee, birthdate      , died at University of Iowa Hospitals and Clinics in Iowa City, Iowa, 7-19-15, having been discovered to be unconscious by family members on the evening of 7-11-15.

I am a board-certified general surgeon, a Fellow of the American College of Surgeons, who is involved in acute trauma care, and I have served as a clinical instructor for Advanced Trauma Life Support (ATLS). I also currently serve as the Fayette County Medical Examiner. I have had the opportunity to review medical records from both Buchanan County Health Center and from the University of Iowa Hospitals and Clinics. I have also interviewed the decedent's wife, Vanessa, and her daughter, Randy.

On the evening of 7-11-15, the family was enjoying a camping excursion at a rural site. The decedent left the rest of his family members on his ATV, and family members became concerned when he did not return. He was discovered by his daughter lying next to the ATV, which was still running and was upright, although the headlight was slightly dislodged. He was lying supine, with a cigarette next to his hand, and he was unresponsive, though breathing. It was the impression of family members that he had fallen next to the vehicle.

The site of discovery of the decedent was surveyed personally by me, and it is a large, sandy expanse with a flat surface, with no trees, buildings, fences, or other obstructions in the area. His family members initially felt that he had "passed out" from drinking, and they took him home, but they began to observe that he was demonstrating sonorous respirations and he could not be aroused. After a couple of hours, he was taken to Buchanan County Health Center in Independence by private car, after family members had observed progressive swelling and bruising about his right eye and minimal nasal bleeding. The patient had been drinking alcohol prior to being discovered. In the emergency department, he was evaluated by Jeff Mason, PA. He was unresponsive and demonstrating sonorous respirations, with periorbital ecchymosis and edema involving his right eye. Pupils were pinpoint and unresponsive. He was unresponsive to verbal or painful stimuli. His Glasgow coma score would have been 3, the lowest possible. A serum ethanol level of 0.233 was confirmed. Oral endotracheal intubation was performed and chest x-ray revealed proper placement of the endotracheal tube. He was ultimately transported by ground ambulance to University of Iowa Hospitals and Clinics, receiving intravenous Keppra since he did demonstrate some wrist flexion, and there were concerns regarding seizure

PAGE 4/12 * RCVD AT 7/8/2016 3:14:41 PM [Central Standard Time] * SVR:NETPWRFAX101/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

# Anthony J. Leo M.D., F.A.C.S.

**General Surgery**
201 Eighth Avenue Southeast
Oelwein, Iowa 50662
319-283-4321

Diplomate, American Board of Surgery                    Fellow, American College of Surgeons

He underwent comprehensive evaluation with multidisciplinary care provided in the surgical intensive care unit at UIHC. He was seen by various consultants, including neurosurgeons. He demonstrated decerebrate posturing and consistently had a Glasgow score of 4. A bolt was placed for intracranial pressure monitoring and he demonstrated problems with periodic elevation of intracranial pressure. There was evidence of a right orbital fracture, but there was no evidence of thoracic or abdominal trauma, nor of long bone fractures. The cervical spine was intact as well. Cranial and cervical spine MRI, 7-16-15, revealed findings consistent with diffuse axonal injury. He was begun on nasoduodenal enteric feedings. He did not show any improvement and passionate extubation was performed at the family's request, after thorough consultation, 7-19-15. He was pronounced dead on that date at 0957 hours.

Review of his death certificate indicates that the medical examiner was contacted, and a case number of 15-52-359 was assigned. The certifier was Dennis Firchau, M.D., whom I recognize as a consulting UIHC forensic pathologist. An autopsy was not performed, and the remains were cremated.

The manner of death was ascribed to accident, and the immediate cause of death was ascribed to blunt force injuries of the head.

The medical examiner report is not available for my review at this time.

There is no evidence to indicate that the blunt force injuries imparted to the head with resultant diffuse axonal injury, a lethal form of traumatic brain injury, occurred as a result of the decedent sustaining those injuries while specifically operating the motor vehicle. The events proximate to his injuries were witnessed by no one. Neither staff at Buchanan County Health Center, nor at University of Iowa Hospitals and Clinics, alerted local law enforcement so that a comprehensive (or any) accident investigation could be performed.

It is my opinion, with a reasonable degree of medical certainty, that there is no evidence to indicate that the injuries were sustained while John Earl Lee was actually operating the motor vehicle. He may have dismounted from the vehicle, owing to any of a number of acute medical illnesses, which could have then precipitated an accidental fall, striking his head, producing lethal traumatic brain injury. Neither an autopsy nor a proper forensic accident investigation was undertaken. An autopsy may have identified underlying medical conditions which may have predisposed him to become ill while operating the motor vehicle, causing him to dismount, then to collapse, sustaining the fatal injury.

Sincerely,

Anthony J. Leo, M.D., F.A.C.S.

PAGE 6/13 * RCVD AT 7/8/2014 3:14:41 PM [Central Standard Time] * SVR:NETIPWFAX101/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

Buchanan County Health Center
Emergency Room
1600 1st St E
Independence, IA 50644
319-332-0999

Patient Name: LEE,JOHN E                                    Date of Birth:
Date:07/11/15 Time:2223                    Medical Record #:I000002027
Provider Name:MASON PA-C,JEFFREY A
#:BC0002439008                                                  Account

## History of Present Illness Fal

**- General**
**Source:** family
**Exam Limitations:** clinical condition, intoxication

**- History of Present Illness**
**Initial Comments:**
The patient presented to the emergency room via private vehicle for evaluation of unresponsiveness. His wife and daughter state that they found him tonight at his camp site lying on the ground. They state he was unresponsive and after observing him for 2 hours he did not wake up. They finally brought him in when they noticed he had some blood coming from his mouth and nose.
He had a bruise under his right eye. He was unresponsive. He would not move. They picked the patient up and put him in the back seat of their sedan and drove to the emergency room. Patient was making sonorous respirations and his initial pulse oximetry was in the 70s. Patient was unable to protect his airway. The family state he is not on any current medications. No significant medical history. He was drinking alcohol today. They believe he fell down and hit his head.
**Occurred:** this evening
**Fall Injury Location:** head
**Pain Location:** Head
**Reason for Fall:** unknown
**Loss of Consciousness:** prolonged (minutes)
**Allergies/Adverse Reactions:**
**Allergies**

No Known Allergies Allergy (Verified 07/11/15 23:38)

**Home Medications:**
**Ambulatory Orders**

NK [NK]

## Review of Systems General

**- Review of Systems**
**Constitutional:** no symptoms reported (Patient is unable to give us a review of systems due to his clinical condition)
**EENTM:** epistaxis

06/17/2015  02:47          3192831838          LARRY WOODS LAW OFFI                          PAGE 06/12

LFG Omaha Fax          2/8/2016 3:17:40 PM  PAGE  7/013    Fax Server

PAGE 7/12 * RCVD AT 2/8/2016 3:14:41 PM [Central Standard Time] * SVR:NETIPWFAX101/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02:34

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 184 of 555    Lee 272

Buchanan County Health Center
Emergency Department
Patient Name: LEE,JOHN E          Account number:BC0002439008          Medical Record number:I000002027

**Respiratory:** stridor
**Cardiology:** no symptoms reported
**Gastrointestinal/Abdominal:** no symptoms reported
**Genitourinary:** no symptoms reported
**Musculoskeletal:** no symptoms reported
**Skin:** no symptoms reported
**Neurological:** no symptoms reported
**Psych:** no symptoms reported
**Endocrine:** no symptoms reported
**Hematologic/Lymphatic:** no symptoms reported

**Physical Exam General**

**- Physical Exam**
**General Appearance:** other (An unresponsive male who has sonorous respirations)
**Eyes:** Right Periorbital Swelling
**Fundoscopic Exam:**
Patient has periorbital edema and ecchymosis around the right orbit. Pupils are pinpoint and unresponsive.
**Ears:** normal external exam
**Nose:** no blood
**Throat/Mouth:** other
**Head:** facial swelling
**Respiratory/Chest:** Diminished, other (Patient has sonorous breathing)
**Cardiovascular:** regular rate, rhythm
**Abdominal:** non tender
**Extremities:** other (Pelvis stable)
**Neurological:** other (Unresponsive to verbal and painful stimuli)
**Skin:** normal color

**Course**

**- Course**
**Orders, Labs, Meds:**

### Oxygen Sats

| Oxygen Saturation via Pulse Oximetry | 77 |
|---|---|

### Laboratory Tests

|       | 07/11/15 10:45 | 07/11/15 22:45 |
|-------|----------------|----------------|
| WBC   |                | 11.7 H         |
| RBC   |                | 5.01           |
| Hgb   |                | 15.8           |
| Hct   |                | 45.1           |
| MCV   |                | 90             |
| MCH   |                | 31.5           |
| MCHC  |                | 35.0           |
| RDW   |                | 13.1           |

RACE 01/3 × RCVD AT 2/8/2016 1:14:44 PM [Central Standard Time] * SVR:NETIPMFAX101/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

Buchanan County Health Center
Emergency Department
Patient Name: LEE,JOHN E       Account number:BC0002439008     Medical Record number:I000002027

| | | |
|---|---|---|
| Plt Count | | 160 |
| MPV | | 9.3 L |
| Gran % | | 75.3 H |
| Gran # | | 8.77 H |
| Lymphocytes % | | 14.6 L |
| Monocytes % | | 8.9 |
| Eosinophils % | | 1.00 |
| Basophils % | | 0.20 |
| Lymphocytes # | | 1.70 |
| Monocytes # | | 1.04 H |
| Eosinophils # | | 0.12 |
| Basophils # | | 0.02 |
| PT | 10.7 | |
| INR | 0.97 | |
| APTT | 26.7 | |
| Sodium | | 136 |
| Potassium | | 3.6 |
| Chloride | | 96 L |
| Carbon Dioxide | | 26 |
| Anion Gap | | 17.6 |
| BUN | | 9 |
| Creatinine | | 1.2 |
| GFR Calculation | | > 60 |
| BUN/Creatinine Ratio | | 7.5 L |
| Glucose | | 121 H |
| Lactic Acid | | 2.4 H |
| Calcium | | 8.0 L |
| Total Bilirubin | | 0.3 |
| AST | | 95 H |
| ALT | | 110 H |
| Alkaline Phosphatase | | 76 |
| Total Protein | | 7.6 |
| Albumin | | 4.4 |
| Globulin | | 3.2 |
| Albumin/Globulin Ratio | | 1.4 |
| Ethyl Alcohol | | 233.0 H |

**Radiology Impressions**

07/11/15 22:50
*PORTABLE CHEST (1VIEW) Stat

The patient presented to the emergency room via private vehicle for evaluation of unresponsiveness. Patient was unable to protect his own airway and so we went ahead and did a RSI. He received 100 mg of succinylcholine after a 20 mg dose of etomidate. Using a glide scope I did pass a 7.5 mm ET tube through the vocal cords. Had good breath sounds bilaterally. Oxygenation was good. Tube placement by calorimetric CO monitor and ETCO2. Chest x-ray showed appropriate ET tube placement. Patient remained in the C-spine precautions throughout the intubation and was placed in a cervical collar following the securing of the ET tube.

Date Rec'd: 6/8/2016 4:11:41 PM (Central Standard Time) * SVR:NETIPMFAX101/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

Buchanan County Health Center
Emergency Department
Patient Name: LEE,JOHN E    | Account number:BC0002439008    Medical Record number:I000002027

I did call covenant emergency room for transfer per the patient's wife. However they do not have neurosurgical coverage and therefore I spoke with the attending physician at the University of Iowa and Dr. Schlichting who accepted transfer. Patient did recieve postintubation fentanyl and propofol. Vital signs were stable. We attempted to transfer via air ambulance but unfortunately weather was not permitting. The delay caused the radiology tech to go home and so if I would have known that he was going by ground we would have done a imaging studies here. Unfortunately the delay of information whether or not the helicopter would fly delayed the imaging. The x-ray tech went home for the evening and would have taken half an hour to return. In the meantime we did arrange ground transfer. Patient did remain stable throughout his visit. Had some flexion at the wrist concerning for seizure/posturing so we gave a 1 g dose of Keppra IV.

Spent a considerable amount of time with the family explaining the benefits of airway protection and the need for neurosurgical coverage. Wife did agree to transfer..

**Critical Care Note**

**- Critical Care Note**
**Total Time (mins):** 60
**Necessay to Tx/Prevent Imminent/Life Threatening Detoriation:** Respiratory Failure
**Critical-Care w/time spent personally by me on the following:** Blood Draw for Specimens, Discussion with Consultants, Obtaining Patient History, Ordering and Review of Laboratory Studies, Ordering and Review of Tadiographic Studies, Ordering and Performing Treatments and Interventions

**Departure**

**- Departure**
**Disposition:** ACUTE CARE HOSPITAL (02)
**Clinical Impression:**
 Head injury, Alcohol intoxication, Respiratory failure with hypoxia, Unresponsive state
**Condition:** Serious
**Referrals:**
JASPER,DUANE D, MD [Family Provider] -
**General Information:**
Today you were evaluated in the Buchanan County Health Center Emergency Department. The examination and treatment which you received has been on an emergency basis only. It has not been intended to be a substitute for complete medical care. For your protection, it is advised that you follow up as recommended in the follow up section of this packet.

If complications arise or no improvement, call your doctor (or the doctor who is on-call). If the doctor cannot be reached, return to the emergency department.

Hospital 319-332-0999

Electronically Signed By: <Electronically signed by JEFFREY A MASON PA-C> On:07/12/15 At:0643

06/17/2015 02:47    3192831838    LARRY WOODS LAW OFFI    IPMO FAX OFFI    PAGE 09/12

LFG Omaha Fax    2/8/2016 3:17:40 PM PAGE 10/013    Fax Server

```
RUN DATE: 07/17/15                Buchanan County Hlth Ctr IAB **LIVE**                PAGE 1
RUN TIME: 0004                 ***Summary Discharge Report - Do not Destroy***

                                        LOCATION
```

| | | | | | | |
|---|---|---|---|---|---|---|
| PATIENT: LEE,JOHN E | | | ACCT: BC0002439008 | LOC: BC.ER | | U: I000002027 |
| | | | AGE/SX: 46/M | ROOM: | | REG: 07/11/15 |
| REG DR: MASON PA-C,JEFFREY A | | | STATUS: DEP ER | BED: | | DIS: |

| Test | Day | Date | Time | Result | Reference | Units |
|------|-----|------|------|--------|-----------|-------|
| => WHITE BLOOD COU | 1 | JUL 11 | 2245 | 11.7  H | (4.0-10.5) | 10E3/uL |
| => RED BLOOD COUNT | 1 | JUL 11 | 2245 | 5.01 | (4.00-5.50) | 10E6/uL |
| => HEMOGLOBIN | 1 | JUL 11 | 2245 | 15.8 | (13.0-17.0) | g/dL |
| => HEMATOCRIT | 1 | JUL 11 | 2245 | 45.1 | (38.0-49.0) | % |
| => MEAN CORPUSCULA | 1 | JUL 11 | 2245 | 90 | (82-99) | fL |
| => MEAN CORPUSCULA | 1 | JUL 11 | 2245 | 31.5 | (28.0-34.0) | pg |
| => MEAN CORPUSCULA | 1 | JUL 11 | 2245 | 35.0 | (32.0-36.0) | g/dL |
| => RED CELL DISTRI | 1 | JUL 11 | 2245 | 13.1 | (11.5-14.5) | % |
| => PLATELET COUNT | 1 | JUL 11 | 2245 | 160 | (150-450) | 10E3/uL |
| => MEAN PLATELET V | 1 | JUL 11 | 2245 | 9.3  L | (9.4-12.4) | fL |
| => GRANULOCYTES% | 1 | JUL 11 | 2245 | 75.3  H | (42.0-75.0) | % |
| => LYMPHOCYTES % | 1 | JUL 11 | 2245 | 14.8  L | (15.0-41.0) | % |
| => MONOCYTES % | 1 | JUL 11 | 2245 | 8.9 | (1.0-9.0) | % |
| => EOSINOPHILS % | 1 | JUL 11 | 2245 | 1.00 | (0-6.0) | % |
| => BASOPHILS % | 1 | JUL 11 | 2245 | 0.20 | (0-2.00) | % |
| => Granulocyte # | 1 | JUL 11 | 2245 | 8.77  H | (2.00-8.00) | 10E3/uL |
| => LYMPHOCYTES # | 1 | JUL 11 | 2245 | 1.70 | (1.00-4.00) | 10E3/uL |
| => MONOCYTES # | 1 | JUL 11 | 2245 | 1.04  H | (0-1.0) | 10E3/uL |
| => EOSINOPHILS # | 1 | JUL 11 | 2245 | 0.12 | (0-0.40) | 10E3/uL |
| => BASOPHILS # | 1 | JUL 11 | 2245 | 0.02 | (0.00-0.20) | 10E3/uL |
| => PROTHROMBIN TIM | 1 | JUL 11 | 1045 | 10.7(a) | | SEC |
| => INR | 1 | JUL 11 | 1045 | 0.97(b) | | |
| => PARTIAL THROMBO | 1 | JUL 11 | 1045 | 26.7(c) | | SEC |
| => SODIUM | 1 | JUL 11 | 2245 | 136 | (136-145) | mEq/L |
| => POTASSIUM | 1 | JUL 11 | 2245 | 3.6 | (3.5-5.1) | mEq/L |
| => CHLORIDE | 1 | JUL 11 | 2245 | 96  L | (98-107) | mEq/L |
| => CARBON DIOXIDE | 1 | JUL 11 | 2245 | 26 | (21-32) | mmol/L |
| => ANION GAP | 1 | JUL 11 | 2245 | 17.6 | (10-18) | |
| => GLUCOSE | 1 | JUL 11 | 2245 | 121  H | (74-106) | mg/dL |
| => CALCIUM | 1 | JUL 11 | 2245 | 8.0  L | (8.5-10.1) | mg/dL |
| => TOTAL BILIRUBIN | 1 | JUL 11 | 2245 | 0.3 | (0.1-1.2) | mg/dL |
| => ASPARTATE AMINO | 1 | JUL 11 | 2245 | 95  H | (15-37) | IU/L |
| => ALANINE AMINOTR | 1 | JUL 11 | 2245 | 110  H | (12-78) | IU/L |
| => TOTAL PROTEIN | 1 | JUL 11 | 2245 | 7.6 | (6.4-8.2) | g/dl |
| => ALBUMIN | 1 | JUL 11 | 2245 | 4.4 | (3.4-5.0) | g/dL |
| => GLOBULIN | 1 | JUL 11 | 2245 | 3.2 | (1.5-3.7) | G/DL |

```
NOTES:   (a)   NORMAL PATIENT (NOT ANTI-COAGULATED) MEAN: 10.8 SEC
         (b)   RECOMMENDED INR VALUES:
                    INDICATION-
                         LESS INTENSIVE      2.0 - 3.0
                         CONVENTIONAL        3.0 - 4.5

                    NORMAL PATIENT (NOT ANTI-COAGULATED) INR: 1.0
         (c)   NORMAL PATIENT (NOT ON HEPARIN) RANGE: 24.3 - 31.0
```

| Patient: LEE,JOHN E | Age/Sex: 46/M | AcctBC0002439008 UnitI000002027 |
|---|---|---|

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 188 of 555    Lee 276

RUN DATE: 07/17/15
RUN TIME: 0004

Buchanan County Hlth Ctr LAB **LIVE**
***Summary Discharge Report - Do not Destroy***

LOCATION

| Patient: LEE,JOHN E | | | BC0002439008 | (Continued) | |

| Test | Day | Date | Time | Result | Reference | Units |
|------|-----|------|------|--------|-----------|-------|
| => ALB/GLOB RATIO | 1 | JUL 11 | 2245 | 1.4 | | RATIO |
| => Alkaline Phosph | 1 | JUL 11 | 2245 | 76 | (46-116) | IU/L |
| => LACTIC ACID | 1 | JUL 11 | 2245 | 2.4 H | (0.4-2.0) | mmol/L |
| => BLOOD UREA NITR | 1 | JUL 11 | 2245 | 9 | (7-18) | mg/dL |
| => BUN/CREATININE | 1 | JUL 11 | 2245 | 7.5 L | (8-24) | RATIO |
| => CREATININE | 1 | JUL 11 | 2245 | 1.2 | (0.8-1.3) | mg/dL |
| => GLOMERULAR FILT | 1 | JUL 11 | 2245 | > 60(d) | (>60) | |
| => ETHANOL | 1 | JUL 11 | 2245 | 233.0 H | (0-3.0) | mg/dL |

NOTES:  (d)  The MDRD Study equation has been validated extensively in
white and African-American populations with impared kidney
function (GFR <60mL/min/1.73 m^2). This equation is only
valid on patients between the ages 18 and 70 years.  Results
on patients outside of this age range should be interpreted
with caution. If the patient is African-American, multiply
the GFR result by "1.212".

| Patient: LEE,JOHN E | | Age/Sex: 46/M | AcctBC0002439008 UnitI000002027 |

PAGE 1/17/7 RCVD AT 7/8/2016 3:14:41 PM [Central Standard Time] * SVR:NE1PWFFAX101/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02:34

**BUCHANAN COUNTY HEALTH CENTER**
**1600 1ST STREET**
**INDEPENDENCE, IOWA 50644**
**PH: (319)332-0870**
**FAX: 319 332-0957**
**DIAGNOSTIC IMAGING**
0711-0011

Patient: LEE,JOHN E                           MRN: I000002027
DOB:                                          ACCT NO: BC0002439008
Phone Number:                                 Ordering Physician: MASON PA-C,JEFFREY A
Other Phone:                                  Family Physician: JASPER, DUANE D  MD

Service Date: 07/11/15                         Pt Status: REG ER
Procedure: *PORTABLE CHEST (1VIEW)
Technologist: Becky Boggess, RTR (CT)

HISTORY:  SYMPTOMS: ett placement

EXAM:  *PORTABLE CHEST (1VIEW)

COMPARISON:  None

An AP supine view of the chest was obtained at 2239 hours following ET
tube placement.

The tip of the ET tube is approximately 5 cm above the carina.
Positioning and technique accentuate the cardiomediastinal silhouette.
No signs of CHF are evident. I do not see any focal infiltrates.

**IMPRESSION:**
1. The tip of the ET tube is approximately 5 cm above the carina.
2. No acute cardiopulmonary process is evident.

Dictated By: SCHNEIDER, PAUL 07/11/15 2300
Electronically Signed By: SCHNEIDER, PAUL  DO 07/11/15 2313

CC:

PAGE:1 of 1

LAW OFFICE OF
*LARRY F. WOODS*
24 NORTH FREDERICK AVENUE
OELWEIN, IOWA 50662

FEB 1 2 2016

Lincoln Financial Group,
Att'n: Risk Department.
8801 Indian Hills Dr.
Omaha, Nebraska 68114.

**LAW OFFICE OF**

# *LARRY F. WOODS*

24 NORTH FREDERICK AVENUE
OELWEIN, IOWA 50662
PH. (319) 283-3204  FAX (319) 283-1838
lfwoods@trxinc.com

February 8, 2016

The Lincoln Financial Group
Attn: Risk Departments
8801 Indian Hills Dr.
Omaha, Nebraska 68114

RE:  Policy Holder: Ashley Industrial Molding, Inc.
     Policy No:      00400001000-12077
                     000010132080-00000
     Claim Number:  1072315-1127380
     Claimant:       John Lee
     Appeal:  Additional Evidence

Dear Ashley:

In response to your phone call, I am attaching a copy of the report I have received on this date from Dr. Anthony Leo. I believe his report is timely and addresses many of the issues raised by the Notice of Appeal which has been filed.

I am not sure if your company also has the medical report from Buchanan County Health Center. This hospital was where Vanessa Lee took John Lee for the initial examination. I am attaching a copy of the report.

I would like to draw you attention to the last line full paragraph - "History of Present Illness. The last line states that "They believe he fell down and hit his head."

I also have 3 pictures that I would like to submit. Those have been sent to the e-mail address of LifeClaims@LFG.com. There is a notation on each picture as to why each photo should be considered and what is shown by the photograph.

Lincoln National Life Insurance Co.
Ashley Fultz
Page 2
Claimant:    John E. Lee
Claim No.    1072315-1127380


There are also issues raised by the initial notice of appeal that should be considered. Specifically, it is noted that ATV are controlled by a separate Chapter of the Iowa Code, as set forth in my Appeal Letter of December 19, 2015.

Thank you for your time and attention. Please confirm that the attached information, and photos which have been e-mailed are considered as a part of the evidence considered by the person reviewing the record for the appeal.

Very truly yours,

Larry F. Woods

Enc:    Report
        Photos (3)
CC:     Client

# Anthony J. Leo M.D., F.A.C.S.

General Surgery
201 Eighth Avenue Southeast
Oelwein, Iowa 50662
319-283-4321

Diplomate, American Board of Surgery                                    Fellow, American College of Surgeons

February 7, 2016

To Whom It May Concern,

John Earl Lee, birthdate        , died at University of Iowa Hospitals and Clinics in Iowa City, Iowa, 7-19-15, having been discovered to be unconscious by family members on the evening of 7-11-15.

I am a board-certified general surgeon, a Fellow of the American College of Surgeons, who is involved in acute trauma care, and I have served as a clinical instructor for Advanced Trauma Life Support (ATLS). I also currently serve as the Fayette County Medical Examiner. I have had the opportunity to review medical records from both Buchanan County Health Center and from the University of Iowa Hospitals and Clinics. I have also interviewed the decedent's wife, Vanessa, and her daughter, Randy.

On the evening of 7-11-15, the family was enjoying a camping excursion at a rural site. The decedent left the rest of his family members on his ATV, and family members became concerned when he did not return. He was discovered by his daughter lying next to the ATV, which was still running and was upright, although the headlight was slightly dislodged. He was lying supine, with a cigarette next to his hand, and he was unresponsive, though breathing. It was the impression of family members that he had fallen next to the vehicle.

The site of discovery of the decedent was surveyed personally by me, and it is a large, sandy expanse with a flat surface, with no trees, buildings, fences, or other obstructions in the area. His family members initially felt that he had "passed out" from drinking, and they took him home, but they began to observe that he was demonstrating sonorous respirations and he could not be aroused. After a couple of hours, he was taken to Buchanan County Health Center in Independence by private car, after family members had observed progressive swelling and bruising about his right eye and minimal nasal bleeding. The patient had been drinking alcohol prior to being discovered. In the emergency department, he was evaluated by Jeff Mason, PA. He was unresponsive and demonstrating sonorous respirations, with periorbital ecchymosis and edema involving his right eye. Pupils were pinpoint and unresponsive. He was unresponsive to verbal or painful stimuli. His Glasgow coma score would have been 3, the lowest possible. A serum ethanol level of 0.233 was confirmed. Oral endotracheal intubation was performed and chest x-ray revealed proper placement of the endotracheal tube. He was ultimately transported by ground ambulance to University of Iowa Hospitals and Clinics, receiving intravenous Keppra since he did demonstrate some wrist flexion, and there were concerns regarding seizure

# Anthony J. Leo M.D., F.A.C.S.

### General Surgery
### 201 Eighth Avenue Southeast
### Oelwein, Iowa 50662
### 319-283-4321

**Diplomate, American Board of Surgery**                    **Fellow, American College of Surgeons**

He underwent comprehensive evaluation with multidisciplinary care provided in the surgical intensive care unit at UIHC. He was seen by various consultants, including neurosurgeons. He demonstrated decerebrate posturing and consistently had a Glasgow score of 4. A bolt was placed for intracranial pressure monitoring and he demonstrated problems with periodic elevation of intracranial pressure. There was evidence of a right orbital fracture, but there was no evidence of thoracic or abdominal trauma, nor of long bone fractures. The cervical spine was intact as well. Cranial and cervical spine MRI, 7-16-15, revealed findings consistent with diffuse axonal injury. He was begun on nasoduodenal enteric feedings. He did not show any improvement and passionate extubation was performed at the family's request, after thorough consultation, 7-19 15. He was pronounced dead on that date at 0957 hours.

Review of his death certificate indicates that the medical examiner was contacted, and a case number of 15-52-359 was assigned. The certifier was Dennis Firchau,M.D., whom I recognize as a consulting UIHC forensic pathologist. An autopsy was not performed, and the remains were cremated.

The manner of death was ascribed to accident, and the immediate cause of death was ascribed to blunt force injuries of the head.

The medical examiner report is not available for my review at this time.

There is no evidence to indicate that the blunt force injuries imparted to the head with resultant diffuse axonal injury, a lethal form of traumatic brain injury, occurred as a result of the decedent sustaining those injuries while specifically operating the motor vehicle. The events proximate to his injuries were witnessed by no one. Neither staff at Buchanan County Health Center, nor at University of Iowa Hospitals and Clinics, alerted local law enforcement so that a comprehensive (or any) accident investigation could be performed.

It is my opinion, with a reasonable degree of medical certainty, that there is no evidence to indicate that the injuries were sustained while John Earl Lee was actually operating the motor vehicle. He may have dismounted from the vehicle, owing to any of a number of acute medical illnesses, which could have then precipitated an accidental fall, striking his head, producing lethal traumatic brain injury. Neither an autopsy nor a proper forensic accident investigation was undertaken. An autopsy may have identified underlying medical conditions which may have predisposed him to become ill while operating the motor vehicle, causing him to dismount, then to collapse, sustaining the fatal injury.

Sincerely,

Anthony J. Leo, M.D., F.A.C.S.

Buchanan County Health Center
Emergency Room
1600 1st St E
Independence, IA 50644
319-332-0999

Patient Name: LEE,JOHN E                                    Date of Birth
Date:07/11/15 Time:2223                          Medical Record #:I000002027
Provider Name:MASON PA-C,JEFFREY A                               Account
#:BC0002439008

## History of Present Illness Fal

**- General**
**Source:** family
**Exam Limitations:** clinical condition, intoxication

**- History of Present Illness**
**Initial Comments:**
The patient presented to the emergency room via private vehicle for evaluation of unresponsiveness.
His wife and daughter state that they found him tonight at his camp site lying on the ground. They
state he was unresponsive and after observing him for 2 hours he did not wake up. They finally
brought him in when they noticed he had some blood coming from his mouth and nose.
He had a bruise under his right eye. He was unresponsive. He would not move. They picked the
patient up and put him in the back seat of their sedan and drove to the emergency room. Patient
was making sonorous respirations and his initial pulse oximetry was in the 70s. Patient was unable to
protect his airway. The family state he is not on any current medications. No significant medical
history. He was drinking alcohol today. They believe he fell down and hit his head.
**Occurred:** this evening
**Fall Injury Location:** head
**Pain Location:** Head
**Reason for Fall:** unknown
**Loss of Consciousness:** prolonged (minutes)
**Allergies/Adverse Reactions:**
**Allergies**

No Known Allergies Allergy (Verified 07/11/15 23:38)

**Home Medications:**
**Ambulatory Orders**

NK [NK]

## Review of Systems General

**- Review of Systems**
**Constitutional:** no symptoms reported (Patient is unable to give us a review of systems due to his
clinical condition)
**EENTM:** epistaxis

**Respiratory:** stridor
**Cardiology:** no symptoms reported
**Gastrointestinal/Abdominal:** no symptoms reported
**Genitourinary:** no symptoms reported
**Musculoskeletal:** no symptoms reported
**Skin:** no symptoms reported
**Neurological:** no symptoms reported
**Psych:** no symptoms reported
**Endocrine:** no symptoms reported
**Hematologic/Lymphatic:** no symptoms reported

## Physical Exam General

**- Physical Exam**
**General Appearance:** other (An unresponsive male who has sonorous respirations)
**Eyes:** Right Periorbital Swelling
**Fundoscopic Exam:**
Patient has periorbital edema and ecchymosis around the right orbit.  Pupils are pinpoint and unresponsive.
**Ears:** normal external exam
**Nose:** no blood
**Throat/Mouth:** other
**Head:** facial swelling
**Respiratory/Chest:** Diminished, other (Patient has sonorous breathing)
**Cardiovascular:** regular rate, rhythm
**Abdominal:** non tender
**Extremities:** other (Pelvis stable)
**Neurological:** other (Unresponsive to verbal and painful stimuli)
**Skin:** normal color

## Course

**- Course**
**Orders, Labs, Meds:**

### Oxygen Sats

| Oxygen Saturation via Pulse Oximetry | 77 |
|---|---|

### Laboratory Tests

|      | 07/11/15 10:45 | 07/11/15 22:45 |
|------|----------------|----------------|
| WBC  |                | 11.7 H         |
| RBC  |                | 5.01           |
| Hgb  |                | 15.8           |
| Hct  |                | 45.1           |
| MCV  |                | 90             |
| MCH  |                | 31.5           |
| MCHC |                | 35.0           |
| RDW  |                | 13.1           |

Buchanan County Health Center
Emergency Department
Patient Name: LEE,JOHN E     Account number:BC0002439008     Medical Record number:I000002027

| | | |
|---|---|---|
| Plt Count | | 160 |
| MPV | | 9.3 L |
| Gran % | | 75.3 H |
| Gran # | | 8.77 H |
| Lymphocytes % | | 14.6 L |
| Monocytes % | | 8.9 |
| Eosinophils % | | 1.00 |
| Basophils % | | 0.20 |
| Lymphocytes # | | 1.70 |
| Monocytes # | | 1.04 H |
| Eosinophils # | | 0.12 |
| Basophils # | | 0.02 |
| PT | 10.7 | |
| INR | 0.97 | |
| APTT | 26.7 | |
| Sodium | | 136 |
| Potassium | | 3.6 |
| Chloride | | 96 L |
| Carbon Dioxide | | 26 |
| Anion Gap | | 17.6 |
| BUN | | 9 |
| Creatinine | | 1.2 |
| GFR Calculation | | > 60 |
| BUN/Creatinine Ratio | | 7.5 L |
| Glucose | | 121 H |
| Lactic Acid | | 2.4 H |
| Calcium | | 8.0 L |
| Total Bilirubin | | 0.3 |
| AST | | 95 H |
| ALT | | 110 H |
| Alkaline Phosphatase | | 76 |
| Total Protein | | 7.6 |
| Albumin | | 4.4 |
| Globulin | | 3.2 |
| Albumin/Globulin Ratio | | 1.4 |
| Ethyl Alcohol | | 233.0 H |

**Radiology Impressions**

07/11/15 22:50
*PORTABLE CHEST (1VIEW) Stat


The patient presented to the emergency room via private vehicle for evaluation of unresponsiveness. Patient was unable to protect his own airway and so we went ahead and did a RSI. He received 100 mg of succinylcholine after a 20 mg dose of etomidate. Using a glide scope I did pass a 7.5 mm ET tube through the vocal cords. Had good breath sounds bilaterally. Oxygenation was good. Tube placement by calorimetric CO monitor and ETCO2. Chest x-ray showed appropriate ET tube placement. Patient remained in the C-spine precautions throughout the intubation and was placed in a cervical collar following the securing of the ET tube.

Buchanan County Health Center
Emergency Department
Patient Name: LEE,JOHN E     Account number:BC0002439008     Medical Record number:I000002027

I did call covenant emergency room for transfer per the patient's wife. However they do not have neurosurgical coverage and therefore I spoke with the attending physician at the University of Iowa and Dr. Schlichting who accepted transfer. Patient did recieve postintubation fentanyl and propofol. Vital signs were stable. We attempted to transfer via air ambulance but unfortunately weather was not permitting. The delay caused the radiology tech to go home and so if I would have known that he was going by ground we would have done a imaging studies here. Unfortunately the delay of information whether or not the helicopter would fly delayed the imaging. The x-ray tech went home for the evening and would have taken half an hour to return. In the meantime we did arrange ground transfer. Patient did remain stable throughout his visit. Had some flexion at the wrist concerning for seizure/posturing so we gave a 1 g dose of Keppra IV.

Spent a considerable amount of time with the family explaining the benefits of airway protection and the need for neurosurgical coverage. Wife did agree to transfer..

## Critical Care Note

**- Critical Care Note**      ·
**Total Time (mins):** 60
**Necessay to Tx/Prevent Imminent/Life Threatening Detoriation:** Respiratory Failure
**Critical-Care w/time spent personally by me on the following:** Blood Draw for Specimens, Discussion with Consultants, Obtaining Patient History, Ordering and Review of Laboratory Studies, Ordering and Review of Tadiographic Studies, Ordering and Performing Treatments and Interventions

## Departure

**- Departure**
**Disposition:** ACUTE CARE HOSPITAL (02)
**Clinical Impression:**
 Head injury, Alcohol intoxication, Respiratory failure with hypoxia, Unresponsive state
**Condition:** Serious
**Referrals:**
JASPER,DUANE D, MD [Family Provider] -
**General Information:**
Today you were evaluated in the Buchanan County Health Center Emergency Department. The examination and treatment which you received has been on an emergency basis only. It has not been intended to be a substitute for complete medical care. For your protection, it is advised that you follow up as recommended in the follow up section of this packet.

If complications arise or no improvement, call your doctor (or the doctor who is on-call). If the doctor cannot be reached, return to the emergency department.

Hospital 319-332-0999

Electronically Signed By: <Electronically signed by JEFFREY A MASON PA-C> On:07/12/15 At:0643

<u>LOCATION</u>

PATIENT: LEE,JOHN E       ACCT: BC0002439008 LOC: BC.ER     U: I000002027
                       AGE/SX: 46/M        ROOM:           REG: 07/11/15
REG DR: MASON PA-C,JEFFREY A       STATUS: DEP ER     BED:            DIS:

| Test | Day | Date | Time | Result | Reference | Units |
|------|-----|------|------|--------|-----------|-------|
| => WHITE BLOOD COU | 1 | JUL 11 | 2245 | 11.7 H | (4.0-10.5) | 10E3/uL |
| => RED BLOOD COUNT | 1 | JUL 11 | 2245 | 5.01 | (4.00-5.50) | 10E6/uL |
| => HEMOGLOBIN | 1 | JUL 11 | 2245 | 15.8 | (13.0-17.0) | g/dL |
| => HEMATOCRIT | 1 | JUL 11 | 2245 | 45.1 | (38.0-49.0) | % |
| => MEAN CORPUSCULA | 1 | JUL 11 | 2245 | 90 | (82-99) | fL |
| => MEAN CORPUSCULA | 1 | JUL 11 | 2245 | 31.5 | (28.0-34.0) | pg |
| => MEAN CORPUSCULA | 1 | JUL 11 | 2245 | 35.0 | (32.0-36.0) | g/dL |
| => RED CELL DISTRI | 1 | JUL 11 | 2245 | 13.1 | (11.5-14.5) | % |
| => PLATELET COUNT | 1 | JUL 11 | 2245 | 160 | (150-450) | 10E3/uL |
| => MEAN PLATELET V | 1 | JUL 11 | 2245 | 9.3 L | (9.4-12.4) | fL |
| => GRANULOCYTES% | 1 | JUL 11 | 2245 | 75.3 H | (42.0-75.0) | % |
| => LYMPHOCYTES % | 1 | JUL 11 | 2245 | 14.6 L | (15.0-41.0) | % |
| => MONOCYTES % | 1 | JUL 11 | 2245 | 8.9 | (1.0-9.0) | % |
| => EOSINOPHILS % | 1 | JUL 11 | 2245 | 1.00 | (0-6.0) | % |
| => BASOPHILS % | 1 | JUL 11 | 2245 | 0.20 | (0-2.00) | % |
| => Granulocyte # | 1 | JUL 11 | 2245 | 8.77 H | (2.00-8.00) | 10E3/uL |
| => LYMPHOCYTES # | 1 | JUL 11 | 2245 | 1.70 | (1.00-4.00) | 10E3/uL |
| => MONOCYTES # | 1 | JUL 11 | 2245 | 1.04 H | (0-1.0) | 10E3/uL |
| => EOSINOPHILS # | 1 | JUL 11 | 2245 | 0.12 | (0-0.40) | 10E3/uL |
| => BASOPHILS # | 1 | JUL 11 | 2245 | 0.02 | (0.00-0.20) | 10E3/uL |
| => PROTHROMBIN TIM | 1 | JUL 11 | 1045 | 10.7(a) | | SEC |
| => INR | 1 | JUL 11 | 1045 | 0.97(b) | | |
| => PARTIAL THROMBO | 1 | JUL 11 | 1045 | 26.7(c) | | SEC |
| => SODIUM | 1 | JUL 11 | 2245 | 136 | (136-145) | mEq/L |
| => POTASSIUM | 1 | JUL 11 | 2245 | 3.6 | (3.5-5.1) | mEq/L |
| => CHLORIDE | 1 | JUL 11 | 2245 | 96 L | (98-107) | mEq/L |
| => CARBON DIOXIDE | 1 | JUL 11 | 2245 | 26 | (21-32) | mmol/L |
| => ANION GAP | 1 | JUL 11 | 2245 | 17.6 | (10-18) | |
| => GLUCOSE | 1 | JUL 11 | 2245 | 121 H | (74-106) | mg/dL |
| => CALCIUM | 1 | JUL 11 | 2245 | 8.0 L | (8.5-10.1) | mg/dL |
| => TOTAL BILIRUBIN | 1 | JUL 11 | 2245 | 0.3 | (0.1-1.2) | mg/dL |
| => ASPARTATE AMINO | 1 | JUL 11 | 2245 | 95 H | (15-37) | IU/L |
| => ALANINE AMINOTR | 1 | JUL 11 | 2245 | 110 H | (12-78) | IU/L |
| => TOTAL PROTEIN | 1 | JUL 11 | 2245 | 7.6 | (6.4-8.2) | g/dl |
| => ALBUMIN | 1 | JUL 11 | 2245 | 4.4 | (3.4-5.0) | g/dL |
| => GLOBULIN | 1 | JUL 11 | 2245 | 3.2 | (1.5-3.7) | G/DL |

NOTES:  (a)  NORMAL PATIENT (NOT ANTI-COAGULATED) MEAN: 10.8 SEC
       (b)  RECOMMENDED INR VALUES:
            INDICATION-
               LESS INTENSIVE     2.0 - 3.0
               CONVENTIONAL      3.0 - 4.5

            NORMAL PATIENT (NOT ANTI-COAGULATED) INR: 1.0
       (c)  NORMAL PATIENT (NOT ON HEPARIN) RANGE: 24.3 - 31.0

Patient: LEE,JOHN E             Age/Sex: 46/M       AcctBC0002439008 UnitI000002027

<u>LOCATION</u>

| Patient: LEE,JOHN E | | | BC0002439008 | (Continued) | | |
|---|---|---|---|---|---|---|

| Test | Day | Date | Time | Result | Reference | Units |
|---|---|---|---|---|---|---|
| => ALB/GLOB RATIO | 1 | JUL 11 | 2245 | 1.4 | | RATIO |
| => Alkaline Phosph | 1 | JUL 11 | 2245 | 76 | (46-116) | IU/L |
| => LACTIC ACID | 1 | JUL 11 | 2245 | 2.4 H | (0.4-2.0) | mmol/L |
| => BLOOD UREA NITR | 1 | JUL 11 | 2245 | 9 | (7-18) | mg/dL |
| => BUN/CREATININE | 1 | JUL 11 | 2245 | 7.5 L | (8-24) | RATIO |
| => CREATININE | 1 | JUL 11 | 2245 | 1.2 | (0.8-1.3) | mg/dL |
| => GLOMERULAR FILT | 1 | JUL 11 | 2245 | > 60(d) | (>60) | |
| => ETHANOL | 1 | JUL 11 | 2245 | 233.0 H | (0-3.0) | mg/dL |

NOTES:  (d)  The MDRD Study equation has been validated extensively in
white and African-American populations with impared kidney
function (GFR <60mL/min/1.73 m^2). This equation is only
valid on patients between the ages 18 and 70 years.  Results
on patients outside of this age range should be interpreted
with caution. If the patient is African-American, multiply
the GFR result by "1.212".

| Patient: LEE,JOHN E | Age/Sex: 46/M | AcctBC0002439008 UnitID000002027 |
|---|---|---|

BUCHANAN COUNTY HEALTH CENTER
1600 1ST STREET
INDEPENDENCE, IOWA 50644
PH: (319)332-0870
FAX: 319 332-0957
DIAGNOSTIC IMAGING
0711-0011

Patient: LEE JOHN E
DOB:
Phone Number
Other Phone:

MRN: I000002027
ACCT NO: BC0002439008
Ordering Physician: MASON PA-C,JEFFREY A
Family Physician: JASPER, DUANE D  MD

Service Date: 07/11/15
Procedure: *PORTABLE CHEST (1VIEW)
Technologist: Becky Boggess, RTR (CT)

Pt Status: REG ER

HISTORY:  SYMPTOMS: ett placement

EXAM:  *PORTABLE CHEST (1VIEW)

COMPARISON:  None

An AP supine view of the chest was obtained at 2239 hours following ET
tube placement.

The tip of the ET tube is approximately 5 cm above the carina.
Positioning and technique accentuate the cardiomediastinal silhouette.
No signs of CHF are evident. I do not see any focal infiltrates.

**IMPRESSION:**
1. The tip of the ET tube is approximately 5 cm above the carina.
2. No acute cardiopulmonary process is evident.

Dictated By: SCHNEIDER, PAUL 07/11/15 2300
Electronically Signed By: SCHNEIDER, PAUL  DO 07/11/15 2313

CC:

PAGE:1 of 1





Lincoln/Lee 291



This is the ATV vehicle driven by John Lee.

Lincoln/Lee 292

FEB 1 2 2016

LAW OFFICE OF
*LARRY F. WOODS*
24 NORTH FREDERICK AVENUE
OELWEIN, IOWA 50662

Lincoln Financial Group,
Att'N: Risk Department.
8801 Indian Hills Dr.
Omaha, Nebraska 68114.

# LAW OFFICE OF

## ℒℛℛ𝒴 𝓕. 𝒲𝒪𝒪𝒟𝒮

**24 NORTH FREDERICK AVENUE**
**OELWEIN, IOWA 50662**
**PH. (319) 283-3204  FAX (319) 283-1838**
lfwoods@trxinc.com

February 8, 2016

The Lincoln Financial Group
Attn: Risk Departments
8801 Indian Hills Dr.
Omaha, Nebraska 68114

> RE: Policy Holder: Ashley Industrial Molding,  Inc.
> Policy No:      00400001000-12077
>                 000010132080-00000
> Claim Number:  1072315-1127380
> Claimant:      John Lee
> Appeal:  Additional Evidence

Dear Ashley:

In response to your phone call, I am attaching a copy of the report I have received on this date from Dr. Anthony Leo. I believe his report is timely and addresses many of the issues raised by the Notice of Appeal which has been filed.

I am not sure if your company also has the medical report from Buchanan County Health Center.  This hospital was where Vanessa Lee took John Lee for the initial examination. I am attaching a copy of the report.

I would like to draw you attention to the last line full paragraph - "History of Present Illness.  The last line states that "They believe he fell down and hit his head."

I also have 3 pictures that I would like to submit. Those have been sent to the e-mail address of LifeClaims@LFG.com.  There is a notation on each picture as to why each photo should be considered and what is shown by the photograph.

Lincoln National Life Insurance Co.
Ashley Fultz
Page 2
Claimant:   John E. Lee
Claim No.   1072315-1127380


     There  are also issues raised by the initial  notice  of
appeal that should be considered.   Specifically, it is noted
that  ATV  are controlled by a separate Chapter of  the  Iowa
Code, as set forth in my Appeal Letter of December 19, 2015.

     Thank you for your time and attention.   Please  confirm
that  the attached information,  and photos which  have  been
e-mailed are considered as a part of the evidence  considered
by the person reviewing the record for the appeal.

                              Very truly yours,

                              Larry F. Woods

Enc:   Report
       Photos (3)
CC:    Client

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 207 of 555    Lincoln/Lee 295

# *Anthony J. Leo M.D., F.A.C.S.*

**General Surgery**
**201 Eighth Avenue Southeast**
**Oelwein, Iowa 50662**
**319-283-4321**

**Diplomate, American Board of Surgery**                                          **Fellow, American College of Surgeons**

February 7, 2016

To Whom It May Concern,

John Earl Lee, birthdate          , died at University of Iowa Hospitals and Clinics in Iowa City, Iowa, 7-19-15, having been discovered to be unconscious by family members on the evening of 7-11-15.

I am a board-certified general surgeon, a Fellow of the American College of Surgeons, who is involved in acute trauma care, and I have served as a clinical instructor for Advanced Trauma Life Support (ATLS). I also currently serve as the Fayette County Medical Examiner. I have had the opportunity to review medical records from both Buchanan County Health Center and from the University of Iowa Hospitals and Clinics. I have also interviewed the decedent's wife, Vanessa, and her daughter, Randy.

On the evening of 7-11-15, the family was enjoying a camping excursion at a rural site. The decedent left the rest of his family members on his ATV, and family members became concerned when he did not return. He was discovered by his daughter lying next to the ATV, which was still running and was upright, although the headlight was slightly dislodged. He was lying supine, with a cigarette next to his hand, and he was unresponsive, though breathing. It was the impression of family members that he had fallen next to the vehicle.

The site of discovery of the decedent was surveyed personally by me, and it is a large, sandy expanse with a flat surface, with no trees, buildings, fences, or other obstructions in the area. His family members initially felt that he had "passed out" from drinking, and they took him home, but they began to observe that he was demonstrating sonorous respirations and he could not be aroused. After a couple of hours, he was taken to Buchanan County Health Center in Independence by private car, after family members had observed progressive swelling and bruising about his right eye and minimal nasal bleeding. The patient had been drinking alcohol prior to being discovered. In the emergency department, he was evaluated by Jeff Mason, PA. He was unresponsive and demonstrating sonorous respirations, with periorbital ecchymosis and edema involving his right eye. Pupils were pinpoint and unresponsive. He was unresponsive to verbal or painful stimuli. His Glasgow coma score would have been 3, the lowest possible. A serum ethanol level of 0.233 was confirmed. Oral endotracheal intubation was performed and chest x-ray revealed proper placement of the endotracheal tube. He was ultimately transported by ground ambulance to University of Iowa Hospitals and Clinics, receiving intravenous Keppra since he did demonstrate some wrist flexion, and there were concerns regarding seizure

# Anthony J. Leo M.D., F.A.C.S.

### General Surgery
### 201 Eighth Avenue Southeast
### Oelwein, Iowa 50662
### 319-283-4321

**Diplomate, American Board of Surgery**                    **Fellow, American College of Surgeons**

He underwent comprehensive evaluation with multidisciplinary care provided in the surgical intensive care unit at UIHC. He was seen by various consultants, including neurosurgeons. He demonstrated decerebrate posturing and consistently had a Glasgow score of 4. A bolt was placed for intracranial pressure monitoring and he demonstrated problems with periodic elevation of intracranial pressure. There was evidence of a right orbital fracture, but there was no evidence of thoracic or abdominal trauma, nor of long bone fractures. The cervical spine was intact as well. Cranial and cervical spine MRI, 7-16-15, revealed findings consistent with diffuse axonal injury. He was begun on nasoduodenal enteric feedings. He did not show any improvement and passionate extubation was performed at the family's request, after thorough consultation, 7-19 15. He was pronounced dead on that date at 0957 hours.

Review of his death certificate indicates that the medical examiner was contacted, and a case number of 15-52-359 was assigned. The certifier was Dennis Firchau, M.D., whom I recognize as a consulting UIHC forensic pathologist. An autopsy was not performed, and the remains were cremated.

The manner of death was ascribed to accident, and the immediate cause of death was ascribed to blunt force injuries of the head.

The medical examiner report is not available for my review at this time.

There is no evidence to indicate that the blunt force injuries imparted to the head with resultant diffuse axonal injury, a lethal form of traumatic brain injury, occurred as a result of the decedent sustaining those injuries while specifically operating the motor vehicle. The events proximate to his injuries were witnessed by no one. Neither staff at Buchanan County Health Center, nor at University of Iowa Hospitals and Clinics, alerted local law enforcement so that a comprehensive (or any) accident investigation could be performed.

It is my opinion, with a reasonable degree of medical certainty, that there is no evidence to indicate that the injuries were sustained while John Earl Lee was actually operating the motor vehicle. He may have dismounted from the vehicle, owing to any of a number of acute medical illnesses, which could have then precipitated an accidental fall, striking his head, producing lethal traumatic brain injury. Neither an autopsy nor a proper forensic accident investigation was undertaken. An autopsy may have identified underlying medical conditions which may have predisposed him to become ill while operating the motor vehicle, causing him to dismount, then to collapse, sustaining the fatal injury.

Sincerely,

Anthony J. Leo, M.D., F.A.C.S.

Buchanan County Health Center
Emergency Room
1600 1st St E
Independence, IA 50644
319-332-0999

Patient Name: LEE,JOHN E
Date:07/11/15 Time:2223
Provider Name:MASON PA-C,JEFFREY A
#:BC0002439008

Date of Birth
Medical Record #:I000002027
Account

## History of Present Illness Fal

**- General**
**Source:** family
**Exam Limitations:** clinical condition, intoxication

**- History of Present Illness**
**Initial Comments:**
The patient presented to the emergency room via private vehicle for evaluation of unresponsiveness. His wife and daughter state that they found him tonight at his camp site lying on the ground. They state he was unresponsive and after observing him for 2 hours he did not wake up. They finally brought him in when they noticed he had some blood coming from his mouth and nose.
He had a bruise under his right eye. He was unresponsive. He would not move. They picked the patient up and put him in the back seat of their sedan and drove to the emergency room. Patient was making sonorous respirations and his initial pulse oximetry was in the 70s. Patient was unable to protect his airway. The family state he is not on any current medications. No significant medical history. He was drinking alcohol today. They believe he fell down and hit his head.
**Occurred:** this evening
**Fall Injury Location:** head
**Pain Location:** Head
**Reason for Fall:** unknown
**Loss of Consciousness:** prolonged (minutes)
**Allergies/Adverse Reactions:**
**Allergies**

No Known Allergies Allergy (Verified 07/11/15 23:38)

**Home Medications:**
**Ambulatory Orders**

NK [NK]

## Review of Systems General

**- Review of Systems**
**Constitutional:** no symptoms reported (Patient is unable to give us a review of systems due to his clinical condition)
**EENTM:** epistaxis

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 210 of 555    Lincoln/Lee 298

Buchanan County Health Center
Emergency Department
Patient Name: LEE,JOHN E     Account number:BC0002439008     Medical Record number:I000002027

**Respiratory:** stridor
**Cardiology:** no symptoms reported
**Gastrointestinal/Abdominal:** no symptoms reported
**Genitourinary:** no symptoms reported
**Musculoskeletal:** no symptoms reported
**Skin:** no symptoms reported
**Neurological:** no symptoms reported
**Psych:** no symptoms reported
**Endocrine:** no symptoms reported
**Hematologic/Lymphatic:** no symptoms reported

## Physical Exam General

**- Physical Exam**
**General Appearance:** other (An unresponsive male who has sonorous respirations)
**Eyes:** Right Periorbital Swelling
**Fundoscopic Exam:**
Patient has periorbital edema and ecchymosis around the right orbit.  Pupils are pinpoint and unresponsive.
**Ears:** normal external exam
**Nose:** no blood
**Throat/Mouth:** other
**Head:** facial swelling
**Respiratory/Chest:** Diminished, other (Patient has sonorous breathing)
**Cardiovascular:** regular rate, rhythm
**Abdominal:** non tender
**Extremities:** other (Pelvis stable)
**Neurological:** other (Unresponsive to verbal and painful stimuli)
**Skin:** normal color

## Course

**- Course**
**Orders, Labs, Meds:**

### Oxygen Sats

| Oxygen Saturation via Pulse Oximetry | 77 |
|---|---|

### Laboratory Tests

|  | 07/11/15 10:45 | 07/11/15 22:45 |
|---|---|---|
| WBC |  | 11.7 H |
| RBC |  | 5.01 |
| Hgb |  | 15.8 |
| Hct |  | 45.1 |
| MCV |  | 90 |
| MCH |  | 31.5 |
| MCHC |  | 35.0 |
| RDW |  | 13.1 |

Buchanan County Health Center
Emergency Department
Patient Name: LEE,JOHN E      Account number:BC0002439008      Medical Record number:I000002027

| Plt Count | | 160 |
|---|---|---|
| MPV | | 9.3 L |
| Gran % | | 75.3 H |
| Gran # | | 8.77 H |
| Lymphocytes % | | 14.6 L |
| Monocytes % | | 8.9 |
| Eosinophils % | | 1.00 |
| Basophils % | | 0.20 |
| Lymphocytes # | | 1.70 |
| Monocytes # | | 1.04 H |
| Eosinophils # | | 0.12 |
| Basophils # | | 0.02 |
| PT | 10.7 | |
| INR | 0.97 | |
| APTT | 26.7 | |
| Sodium | | 136 |
| Potassium | | 3.6 |
| Chloride | | 96 L |
| Carbon Dioxide | | 26 |
| Anion Gap | | 17.6 |
| BUN | | 9 |
| Creatinine | | 1.2 |
| GFR Calculation | | > 60 |
| BUN/Creatinine Ratio | | 7.5 L |
| Glucose | | 121 H |
| Lactic Acid | | 2.4 H |
| Calcium | | 8.0 L |
| Total Bilirubin | | 0.3 |
| AST | | 95 H |
| ALT | | 110 H |
| Alkaline Phosphatase | | 76 |
| Total Protein | | 7.6 |
| Albumin | | 4.4 |
| Globulin | | 3.2 |
| Albumin/Globulin Ratio | | 1.4 |
| Ethyl Alcohol | | 233.0 H |

**Radiology Impressions**

07/11/15 22:50
*PORTABLE CHEST (1VIEW) Stat


The patient presented to the emergency room via private vehicle for evaluation of unresponsiveness. Patient was unable to protect his own airway and so we went ahead and did a RSI. He received 100 mg of succinylcholine after a 20 mg dose of etomidate. Using a glide scope I did pass a 7.5 mm ET tube through the vocal cords. Had good breath sounds bilaterally. Oxygenation was good. Tube placement by calorimetric CO monitor and ETCO2. Chest x-ray showed appropriate ET tube placement. Patient remained in the C-spine precautions throughout the intubation and was placed in a cervical collar following the securing of the ET tube.

Lincoln/Lee 300

Buchanan County Health Center
Emergency Department
Patient Name: LEE,JOHN E     Account number:BC0002439008     Medical Record number:I000002027

I did call covenant emergency room for transfer per the patient's wife. However they do not have neurosurgical coverage and therefore I spoke with the attending physician at the University of Iowa and Dr. Schlichting who accepted transfer. Patient did recieve postintubation fentanyl and propofol. Vital signs were stable. We attempted to transfer via air ambulance but unfortunately weather was not permitting. The delay caused the radiology tech to go home and so if I would have known that he was going by ground we would have done a imaging studies here. Unfortunately the delay of information whether or not the helicopter would fly delayed the imaging. The x-ray tech went home for the evening and would have taken half an hour to return. In the meantime we did arrange ground transfer. Patient did remain stable throughout his visit. Had some flexion at the wrist concerning for seizure/posturing so we gave a 1 g dose of Keppra IV.

Spent a considerable amount of time with the family explaining the benefits of airway protection and the need for neurosurgical coverage. Wife did agree to transfer..

## Critical Care Note

**- Critical Care Note**
**Total Time (mins):** 60
**Necessay to Tx/Prevent Imminent/Life Threatening Detoriation:** Respiratory Failure
**Critical-Care w/time spent personally by me on the following:** Blood Draw for Specimens, Discussion with Consultants, Obtaining Patient History, Ordering and Review of Laboratory Studies, Ordering and Review of Tadiographic Studies, Ordering and Performing Treatments and Interventions

## Departure

**- Departure**
**Disposition:** ACUTE CARE HOSPITAL (02)
**Clinical Impression:**
 Head injury, Alcohol intoxication, Respiratory failure with hypoxia, Unresponsive state
**Condition:** Serious
**Referrals:**
JASPER,DUANE D, MD [Family Provider] -
**General Information:**
Today you were evaluated in the Buchanan County Health Center Emergency Department. The examination and treatment which you received has been on an emergency basis only. It has not been intended to be a substitute for complete medical care. For your protection, it is advised that you follow up as recommended in the follow up section of this packet.

If complications arise or no improvement, call your doctor (or the doctor who is on-call). If the doctor cannot be reached, return to the emergency department.

Hospital 319-332-0999

Electronically Signed By: <Electronically signed by JEFFREY A MASON PA-C> On:07/12/15 At:0643

## LOCATION

PATIENT: LEE,JOHN E     ACCT: BC0002439008   LOC: BC.ER     U: I000002027
AGE/SX: 46/M     ROOM:     REG: 07/11/15
REG DR: MASON PA-C,JEFFREY A     STATUS: DEP ER     BED:     DIS:

| Test | Day | Date | Time | Result | | Reference | Units |
|------|-----|------|------|--------|---|-----------|-------|
| => WHITE BLOOD COU | 1 | JUL 11 | 2245 | 11.7 | H | (4.0-10.5) | 10E3/uL |
| => RED BLOOD COUNT | 1 | JUL 11 | 2245 | 5.01 | | (4.00-5.50) | 10E6/uL |
| => HEMOGLOBIN | 1 | JUL 11 | 2245 | 15.8 | | (13.0-17.0) | g/dL |
| => HEMATOCRIT | 1 | JUL 11 | 2245 | 45.1 | | (38.0-49.0) | % |
| => MEAN CORPUSCULA | 1 | JUL 11 | 2245 | 90 | | (82-99) | fL |
| => MEAN CORPUSCULA | 1 | JUL 11 | 2245 | 31.5 | | (28.0-34.0) | pg |
| => MEAN CORPUSCULA | 1 | JUL 11 | 2245 | 35.0 | | (32.0-36.0) | g/dL |
| => RED CELL DISTRI | 1 | JUL 11 | 2245 | 13.1 | | (11.5-14.5) | % |
| => PLATELET COUNT | 1 | JUL 11 | 2245 | 160 | | (150-450) | 10E3/uL |
| => MEAN PLATELET V | 1 | JUL 11 | 2245 | 9.3 | L | (9.4-12.4) | fL |
| => GRANULOCYTES% | 1 | JUL 11 | 2245 | 75.3 | H | (42.0-75.0) | % |
| => LYMPHOCYTES % | 1 | JUL 11 | 2245 | 14.6 | L | (15.0-41.0) | % |
| => MONOCYTES % | 1 | JUL 11 | 2245 | 8.9 | | (1.0-9.0) | % |
| => EOSINOPHILS % | 1 | JUL 11 | 2245 | 1.00 | | (0-6.0) | % |
| => BASOPHILS % | 1 | JUL 11 | 2245 | 0.20 | | (0-2.00) | % |
| => Granulocyte # | 1 | JUL 11 | 2245 | 8.77 | H | (2.00-8.00) | 10E3/uL |
| => LYMPHOCYTES # | 1 | JUL 11 | 2245 | 1.70 | | (1.00-4.00) | 10E3/uL |
| => MONOCYTES # | 1 | JUL 11 | 2245 | 1.04 | H | (0-1.0) | 10E3/uL |
| => EOSINOPHILS # | 1 | JUL 11 | 2245 | 0.12 | | (0-0.40) | 10E3/uL |
| => BASOPHILS # | 1 | JUL 11 | 2245 | 0.02 | | (0.00-0.20) | 10E3/uL |
| => PROTHROMBIN TIM | 1 | JUL 11 | 1045 | 10.7(a) | | | SEC |
| => INR | 1 | JUL 11 | 1045 | 0.97(b) | | | |
| => PARTIAL THROMBO | 1 | JUL 11 | 1045 | 26.7(c) | | | SEC |
| => SODIUM | 1 | JUL 11 | 2245 | 136 | | (136-145) | mEq/L |
| => POTASSIUM | 1 | JUL 11 | 2245 | 3.6 | | (3.5-5.1) | mEq/L |
| => CHLORIDE | 1 | JUL 11 | 2245 | 96 | L | (98-107) | mEq/L |
| => CARBON DIOXIDE | 1 | JUL 11 | 2245 | 26 | | (21-32) | mmol/L |
| => ANION GAP | 1 | JUL 11 | 2245 | 17.6 | | (10-18) | |
| => GLUCOSE | 1 | JUL 11 | 2245 | 121 | H | (74-106) | mg/dL |
| => CALCIUM | 1 | JUL 11 | 2245 | 8.0 | L | (8.5-10.1) | mg/dL |
| => TOTAL BILIRUBIN | 1 | JUL 11 | 2245 | 0.3 | | (0.1-1.2) | mg/dL |
| => ASPARTATE AMINO | 1 | JUL 11 | 2245 | 95 | H | (15-37) | IU/L |
| => ALANINE AMINOTR | 1 | JUL 11 | 2245 | 110 | H | (12-78) | IU/L |
| => TOTAL PROTEIN | 1 | JUL 11 | 2245 | 7.6 | | (6.4-8.2) | g/dl |
| => ALBUMIN | 1 | JUL 11 | 2245 | 4.4 | | (3.4-5.0) | g/dL |
| => GLOBULIN | 1 | JUL 11 | 2245 | 3.2 | | (1.5-3.7) | G/DL |

NOTES:   (a)   NORMAL PATIENT (NOT ANTI-COAGULATED) MEAN: 10.8 SEC
        (b)   RECOMMENDED INR VALUES:
            INDICATION-
               LESS INTENSIVE     2.0 - 3.0
               CONVENTIONAL      3.0 - 4.5

            NORMAL PATIENT (NOT ANTI-COAGULATED) INR: 1.0
        (c)   NORMAL PATIENT (NOT ON HEPARIN) RANGE: 24.3 - 31.0

Patient: LEE,JOHN E       Age/Sex: 46/M     AcctBC0002439008 UnitI000002027

## LOCATION

Patient: LEE,JOHN E                 BC0002439008    (Continued)

| Test | Day | Date | Time | Result | Reference | Units |
|------|-----|------|------|--------|-----------|-------|
| => ALB/GLOB RATIO | 1 | JUL 11 | 2245 | 1.4 | | RATIO |
| => Alkaline Phosph | 1 | JUL 11 | 2245 | 76 | (46-116) | IU/L |
| => LACTIC ACID | 1 | JUL 11 | 2245 | 2.4 H | (0.4-2.0) | mmol/L |
| => BLOOD UREA NITR | 1 | JUL 11 | 2245 | 9 | (7-18) | mg/dL |
| => BUN/CREATININE | 1 | JUL 11 | 2245 | 7.5 L | (8-24) | RATIO |
| => CREATININE | 1 | JUL 11 | 2245 | 1.2 | (0.8-1.3) | mg/dL |
| => GLOMERULAR FILT | 1 | JUL 11 | 2245 | > 60(d) | (>60) | |
| => ETHANOL | 1 | JUL 11 | 2245 | 233.0 H | (0-3.0) | mg/dL |

NOTES:  (d)  The MDRD Study equation has been validated extensively in
white and African-American populations with impared kidney
function (GFR <60mL/min/1.73 m^2). This equation is only
valid on patients between the ages 18 and 70 years. Results
on patients outside of this age range should be interpreted
with caution. If the patient is African-American, multiply
the GFR result by "1.212".

Patient: LEE,JOHN E              Age/Sex: 46/M    AcctBC0002439008 UnitID000002027

**BUCHANAN COUNTY HEALTH CENTER**
**1600 1ST STREET**
**INDEPENDENCE, IOWA 50644**
**PH: (319)332-0870**
**FAX: 319 332-0957**
**DIAGNOSTIC IMAGING**
0711-0011

Patient: LEE.JOHN E
DOB:
Phone Number
Other Phone:

MRN: I000002027
ACCT NO: BC0002439008
Ordering Physician: MASON PA-C,JEFFREY A
Family Physician: JASPER, DUANE D  MD

Service Date: 07/11/15
Procedure: *PORTABLE CHEST (1VIEW)
Technologist: Becky Boggess, RTR (CT)

Pt Status: REG ER

HISTORY: SYMPTOMS: ett placement

EXAM: *PORTABLE CHEST (1VIEW)

COMPARISON: None

An AP supine view of the chest was obtained at 2239 hours following ET
tube placement.

The tip of the ET tube is approximately 5 cm above the carina.
Positioning and technique accentuate the cardiomediastinal silhouette.
No signs of CHF are evident. I do not see any focal infiltrates.

**IMPRESSION:**
1. The tip of the ET tube is approximately 5 cm above the carina.
2. No acute cardiopulmonary process is evident.

Dictated By: SCHNEIDER, PAUL 07/11/15 2300
Electronically Signed By: SCHNEIDER, PAUL  DO 07/11/15 2313

CC:

PAGE:1 of 1


Lincoln/Lee 305



Lincoln/Lee 306



This is the ATV vehicle driven by John Lee.

Lincoln/Lee 307



February 10, 2016

**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

THE LAW OFFICE OF
LARRY WOODS
24 NORTH FREDERICK AVE
OELWEIN IA 50662

RE:    Policy Holder:    Ashley Industrial Molding, Inc
        Policy Number:    000400001000-12077
                        000010132080-00000
        Claim Number:    1072315-1127380
        Claimant:    John E Lee

Dear Mr. Woods:

On 12/28/2015, we acknowledged your appeal and provided additional time to supplement your client's file.

Although we recently received the necessary information, we are approaching our deadline for deciding the appeal under the Employee Retirement Income Security Act (ERISA). As we have not yet reached a determination, an extension of time to process your client's appeal is required. We are therefore exercising our right to take a 60-day extension of time to decide the appeal.

We are currently reviewing your client's appeal. You can expect to receive a decision from us by 04/21/2016.

Packet: 322509

©2016 Lincoln National Corporation

www.LincolnFinancial.com

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

If you have any questions please do not hesitate to contact me at (800) 423-2765 ext. 7033.

Sincerely,


Ashley Fults
Appeals Consultant, Claims Support
Group Protection – Claims Shared Services
The Lincoln National Life Insurance Company

Lincoln/Lee 309

PAGE 4/12 * RCVD AT 2/8/2016 3:14:41 PM [Central Standard Time] * SVR:NE1PWFAX10/16 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

# Anthony J. Leo M.D., F.A.C.S.

**General Surgery**
201 Eighth Avenue Southeast
Oelwein, Iowa 50662
319-283-4321

Diplomate, American Board of Surgery                    Fellow, American College of Surgeons

February 7, 2016

To Whom It May Concern,

John Earl Lee, birthdate            , died at University of Iowa Hospitals and Clinics in Iowa City, Iowa,
7-19-15, having been discovered to be unconscious by family members on the evening of 7-11-15.

I am a board-certified general surgeon, a Fellow of the American College of Surgeons, who is involved in
acute trauma care, and I have served as a clinical instructor for Advanced Trauma Life Support (ATLS). I
also currently serve as the Fayette County Medical Examiner. I have had the opportunity to review
medical records from both Buchanan County Health Center and from the University of Iowa Hospitals
and Clinics. I have also interviewed the decedent's wife, Vanessa, and her daughter, Randy.

On the evening of 7-11-15, the family was enjoying a camping excursion at a rural site. The decedent
left the rest of his family members on his ATV, and family members became concerned when he did not
return. He was discovered by his daughter lying next to the ATV, which was still running and was
upright, although the headlight was slightly dislodged. He was lying supine, with a cigarette next to his
hand, and he was unresponsive, though breathing. It was the impression of family members that he
had fallen next to the vehicle.

The site of discovery of the decedent was surveyed personally by me, and it is a large, sandy expanse
with a flat surface, with no trees, buildings, fences, or other obstructions in the area. His family
members initially felt that he had "passed out" from drinking, and they took him home, but they began
to observe that he was demonstrating sonorous respirations and he could not be aroused. After a
couple of hours, he was taken to Buchanan County Health Center in Independence by private car, after
family members had observed progressive swelling and bruising about his right eye and minimal nasal
bleeding. The patient had been drinking alcohol prior to being discovered. In the emergency
department, he was evaluated by Jeff Mason, PA. He was unresponsive and demonstrating sonorous
respirations, with periorbital ecchymosis and edema involving his right eye. Pupils were pinpoint and
unresponsive. He was unresponsive to verbal or painful stimuli. His Glasgow coma score would have
been 3, the lowest possible. A serum ethanol level of 0.233 was confirmed. Oral endotracheal
intubation was performed and chest x-ray revealed proper placement of the endotracheal tube. He was
ultimately transported by ground ambulance to University of Iowa Hospitals and Clinics, receiving
intravenous Keppra since he did demonstrate some wrist flexion, and there were concerns regarding
seizure

06/17/2015  02:47    3192831838    LARRY WOODS LAW OFFI    PAGE  04/12

PAGE 5/12 * RCVD AT 2/8/2016 3:14:41 PM [Central Standard Time] * SVR:NE1PWFAX101/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 223 of 555 Lee 311

# Anthony J. Leo M.D., F.A.C.S.

### General Surgery
### 201 Eighth Avenue Southeast
### Oelwein, Iowa 50662
### 319-283-4321

**Diplomate, American Board of Surgery**                    **Fellow, American College of Surgeons**

He underwent comprehensive evaluation with multidisciplinary care provided in the surgical intensive care unit at UIHC. He was seen by various consultants, including neurosurgeons. He demonstrated decerebrate posturing and consistently had a Glasgow score of 4. A bolt was placed for intracranial pressure monitoring and he demonstrated problems with periodic elevation of intracranial pressure. There was evidence of a right orbital fracture, but there was no evidence of thoracic or abdominal trauma, nor of long bone fractures. The cervical spine was intact as well. Cranial and cervical spine MRI, 7-16-15, revealed findings consistent with diffuse axonal injury. He was begun on nasoduodenal enteric feedings. He did not show any improvement and passionate extubation was performed at the family's request, after thorough consultation, 7-19-15. He was pronounced dead on that date at 0957 hours.

Review of his death certificate indicates that the medical examiner was contacted, and a case number of 15-52-359 was assigned. The certifier was Dennis Firchau,M.D., whom I recognize as a consulting UIHC forensic pathologist. An autopsy was not performed, and the remains were cremated.

The manner of death was ascribed to accident, and the immediate cause of death was ascribed to blunt force injuries of the head.

The medical examiner report is not available for my review at this time.

There is no evidence to indicate that the blunt force injuries imparted to the head with resultant diffuse axonal injury, a lethal form of traumatic brain injury, occurred as a result of the decedent sustaining those injuries while specifically operating the motor vehicle. The events proximate to his injuries were witnessed by no one. Neither staff at Buchanan County Health Center, nor at University of Iowa Hospitals and Clinics, alerted local law enforcement so that a comprehensive (or any) accident investigation could be performed.

It is my opinion, with a reasonable degree of medical certainty, that there is no evidence to indicate that the injuries were sustained while John Earl Lee was actually operating the motor vehicle. He may have dismounted from the vehicle, owing to any of a number of acute medical illnesses, which could have then precipitated an accidental fall, striking his head, producing lethal traumatic brain injury. Neither an autopsy nor a proper forensic accident investigation was undertaken. An autopsy may have identified underlying medical conditions which may have predisposed him to become ill while operating the motor vehicle, causing him to dismount, then to collapse, sustaining the fatal injury.

Sincerely,

Anthony J. Leo, M.D., F.A.C.S.

PAGE 6/12 * RCVD AT 2/8/2016 3:14:41 PM [Central Standard Time] * SVR:NET19WFAX10/16 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

Buchanan County Health Center
Emergency Room
1600 1st St E
Independence, IA 50644
319-332-0999

Patient Name: LEE,JOHN E
Date:07/11/15 Time:2223
Provider Name:MASON PA-C,JEFFREY A
#:BC0002439008

Date of Birth
Medical Record #:I000002027
Account

**History of Present Illness Fal**

**- General**
**Source:** family
**Exam Limitations:** clinical condition, intoxication

**- History of Present Illness**
**Initial Comments:**
The patient presented to the emergency room via private vehicle for evaluation of unresponsiveness.
His wife and daughter state that they found him tonight at his camp site lying on the ground. They
state he was unresponsive and after observing him for 2 hours he did not wake up. They finally
brought him in when they noticed he had some blood coming from his mouth and nose.
He had a bruise under his right eye. He was unresponsive. He would not move. They picked the
patient up and put him in the back seat of their sedan and drove to the emergency room. Patient
was making sonorous respirations and his initial pulse oximetry was in the 70s. Patient was unable to
protect his airway. The family state he is not on any current medications. No significant medical
history. He was drinking alcohol today. They believe he fell down and hit his head.
**Occurred:** this evening
**Fall Injury Location:** head
**Pain Location:** Head
**Reason for Fall:** unknown
**Loss of Consciousness:** prolonged (minutes)
**Allergies/Adverse Reactions:**
**Allergies**

No Known Allergies Allergy (Verified 07/11/15 23:38)

**Home Medications:**
**Ambulatory Orders**

NK [NK]

**Review of Systems General**

**- Review of Systems**
**Constitutional:** no symptoms reported (Patient is unable to give us a review of systems due to his
clinical condition)
**EENTM:** epistaxis

06/17/2015  02:47       3192831838       LARRY WOODS LAW OFFI                PAGE  06/12

Group 313

Lee 313

Buchanan County Health Center
Emergency Department
Patient Name: LEE,JOHN E      Account number:BC0002439008      Medical Record number:I000002027

**Respiratory:** stridor
**Cardiology:** no symptoms reported
**Gastrointestinal/Abdominal:** no symptoms reported
**Genitourinary:** no symptoms reported
**Musculoskeletal:** no symptoms reported
**Skin:** no symptoms reported
**Neurological:** no symptoms reported
**Psych:** no symptoms reported
**Endocrine:** no symptoms reported
**Hematologic/Lymphatic:** no symptoms reported

**Physical Exam General**

**- Physical Exam**
**General Appearance:** other (An unresponsive male who has sonorous respirations)
**Eyes:** Right Periorbital Swelling
**Fundoscopic Exam:**
Patient has periorbital edema and ecchymosis around the right orbit.  Pupils are pinpoint and unresponsive.
**Ears:** normal external exam
**Nose:** no blood
**Throat/Mouth:** other
**Head:** facial swelling
**Respiratory/Chest:** Diminished, other (Patient has sonorous breathing)
**Cardiovascular:** regular rate, rhythm
**Abdominal:** non tender
**Extremities:** other (Pelvis stable)
**Neurological:** other (Unresponsive to verbal and painful stimuli)
**Skin:** normal color

**Course**

**- Course**
**Orders, Labs, Meds:**

**Oxygen Sats**

| | |
|---|---|
| Oxygen Saturation via Pulse Oximetry | 77 |

**Laboratory Tests**

| | | 07/11/15 10:45 | 07/11/15 22:45 |
|---|---|---|---|
| WBC | | | 11.7 H |
| RBC | | | 5.01 |
| Hgb | | | 15.8 |
| Hct | | | 45.1 |
| MCV | | | 90 |
| MCH | | | 31.5 |
| MCHC | | | 35.0 |
| RDW | | | 13.1 |

PAGE 8/12 * RCVD AT 2/8/2016 3:14:41 PM [Central Standard Time] * SVR:NETIPWFAX101/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 226 of 555/Lee 314

Buchanan County Health Center
Emergency Department
Patient Name: LEE,JOHN E    Account number:BC0002439008    Medical Record number:I000002027

| Plt Count | | 160 |
|---|---|---|
| MPV | | 9.3 L |
| Gran % | | 75.3 H |
| Gran # | | 8.77 H |
| Lymphocytes % | | 14.6 L |
| Monocytes % | | 8.9 |
| Eosinophils % | | 1.00 |
| Basophils % | | 0.20 |
| Lymphocytes # | | 1.70 |
| Monocytes # | | 1.04 H |
| Eosinophils # | | 0.12 |
| Basophils # | | 0.02 |
| PT | 10.7 | |
| INR | 0.97 | |
| APTT | 26.7 | |
| Sodium | | 136 |
| Potassium | | 3.6 |
| Chloride | | 96 L |
| Carbon Dioxide | | 26 |
| Anion Gap | | 17.6 |
| BUN | | 9 |
| Creatinine | | 1.2 |
| GFR Calculation | | > 60 |
| BUN/Creatinine Ratio | | 7.5 L |
| Glucose | | 121 H |
| Lactic Acid | | 2.4 H |
| Calcium | | 8.0 L |
| Total Bilirubin | | 0.3 |
| AST | | 95 H |
| ALT | | 110 H |
| Alkaline Phosphatase | | 76 |
| Total Protein | | 7.6 |
| Albumin | | 4.4 |
| Globulin | | 3.2 |
| Albumin/Globulin Ratio | | 1.4 |
| Ethyl Alcohol | | 233.0 H |

**Radiology Impressions**

07/11/15 22:50
*PORTABLE CHEST (1VIEW) Stat


The patient presented to the emergency room via private vehicle for evaluation of unresponsiveness. Patient was unable to protect his own airway and so we went ahead and did a RSI. He received 100 mg of succinylcholine after a 20 mg dose of etomidate. Using a glide scope I did pass a 7.5 mm ET tube through the vocal cords. Had good breath sounds bilaterally. Oxygenation was good. Tube placement by calorimetric CO monitor and ETCO2. Chest x-ray showed appropriate ET tube placement. Patient remained in the C-spine precautions throughout the intubation and was placed in a cervical collar following the securing of the ET tube.

PAGE 9/17 * RCVD AT 2/8/2016 3:14:41 PM [Central Standard Time] * SVR:NE1PWFAX101/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 227 of 555/Lee 315

Buchanan County Health Center
Emergency Department
Patient Name: LEE,JOHN E        Account number:BC0002439008      Medical Record number:I000002027

I did call covenant emergency room for transfer per the patient's wife. However they do not have neurosurgical coverage and therefore I spoke with the attending physician at the University of Iowa and Dr. Schlichting who accepted transfer. Patient did recieve postintubation fentanyl and propofol. Vital signs were stable. We attempted to transfer via air ambulance but unfortunately weather was not permitting. The delay caused the radiology tech to go home and so if I would have known that he was going by ground we would have done a imaging studies here. Unfortunately the delay of information whether or not the helicopter would fly delayed the imaging. The x-ray tech went home for the evening and would have taken half an hour to return. In the meantime we did arrange ground transfer. Patient did remain stable throughout his visit. Had some flexion at the wrist concerning for seizure/posturing so we gave a 1 g dose of Keppra IV.

Spent a considerable amount of time with the family explaining the benefits of airway protection and the need for neurosurgical coverage. Wife did agree to transfer..

**Critical Care Note**

**- Critical Care Note**
**Total Time (mins):** 60
**Necessay to Tx/Prevent Imminent/Life Threatening Detoriation:** Respiratory Failure
**Critical-Care w/time spent personally by me on the following:** Blood Draw for Specimens, Discussion with Consultants, Obtaining Patient History, Ordering and Review of Laboratory Studies, Ordering and Review of Tadiographic Studies, Ordering and Performing Treatments and Interventions

**Departure**

**- Departure**
**Disposition:** ACUTE CARE HOSPITAL (02)
**Clinical Impression:**
 Head injury, Alcohol intoxication, Respiratory failure with hypoxia, Unresponsive state
**Condition:** Serious
**Referrals:**
JASPER,DUANE D, MD [Family Provider] -
**General Information:**
Today you were evaluated in the Buchanan County Health Center Emergency Department. The examination and treatment which you received has been on an emergency basis only. It has not been intended to be a substitute for complete medical care. For your protection, it is advised that you follow up as recommended in the follow up section of this packet.

If complications arise or no improvement, call your doctor (or the doctor who is on-call). If the doctor cannot be reached, return to the emergency department.

Hospital 319-332-0999

Electronically Signed By: <Electronically signed by JEFFREY A MASON PA-C> On:07/12/15 At:0643

Case 6:18-cv-02063-CJW-MAR   Document 26-4   Filed 02/13/19   Page 228 of 555/Lee 316

```
RUN DATE: 07/17/15              Buchanan County Hlth Ctr LAB **LIVE**              PAGE 1
RUN TIME: 0004                 ***Summary Discharge Report - Do not Destroy***
```

LOCATION

```
PATIENT: LEE,JOHN E                    ACCT: BC0002439008  LOC:  BC.ER        U: I000002027
                                       AGE/SX: 46/M        ROOM:             REG: 07/11/15
REG DR:  MASON PA-C,JEFFREY A          STATUS: DEP ER      BED:              DIS:
```

| Test | Day | Date | Time | Result | Reference | Units |
|------|-----|------|------|--------|-----------|-------|
| => WHITE BLOOD COU | 1 | JUL 11 | 2245 | 11.7  H | (4.0-10.5) | 10E3/uL |
| => RED BLOOD COUNT | 1 | JUL 11 | 2245 | 5.01 | (4.00-5.50) | 10E6/uL |
| => HEMOGLOBIN | 1 | JUL 11 | 2245 | 15.8 | (13.0-17.0) | g/dL |
| => HEMATOCRIT | 1 | JUL 11 | 2245 | 45.1 | (38.0-49.0) | % |
| => MEAN CORPUSCULA | 1 | JUL 11 | 2245 | 90 | (82-99) | fL |
| => MEAN CORPUSCULA | 1 | JUL 11 | 2245 | 31.5 | (28.0-34.0) | pg |
| => MEAN CORPUSCULA | 1 | JUL 11 | 2245 | 35.0 | (32.0-36.0) | g/dL |
| => RED CELL DISTRI | 1 | JUL 11 | 2245 | 13.1 | (11.5-14.5) | % |
| => PLATELET COUNT | 1 | JUL 11 | 2245 | 160 | (150-450) | 10E3/uL |
| => MEAN PLATELET V | 1 | JUL 11 | 2245 | 9.3  L | (9.4-12.4) | fL |
| => GRANULOCYTES% | 1 | JUL 11 | 2245 | 75.3  H | (42.0-75.0) | % |
| => LYMPHOCYTES % | 1 | JUL 11 | 2245 | 14.6  L | (15.0-41.0) | % |
| => MONOCYTES % | 1 | JUL 11 | 2245 | 8.9 | (1.0-9.0) | % |
| => EOSINOPHILS % | 1 | JUL 11 | 2245 | 1.00 | (0-6.0) | % |
| => BASOPHILS % | 1 | JUL 11 | 2245 | 0.20 | (0-2.00) | % |
| => Granulocyte # | 1 | JUL 11 | 2245 | 8.77  H | (2.00-8.00) | 10E3/uL |
| => LYMPHOCYTES # | 1 | JUL 11 | 2245 | 1.70 | (1.00-4.00) | 10E3/uL |
| => MONOCYTES # | 1 | JUL 11 | 2245 | 1.04  H | (0-1.0) | 10E3/uL |
| => EOSINOPHILS # | 1 | JUL 11 | 2245 | 0.12 | (0-0.40) | 10E3/uL |
| => BASOPHILS # | 1 | JUL 11 | 2245 | 0.02 | (0.00-0.20) | 10E3/uL |
| => PROTHROMBIN TIM | 1 | JUL 11 | 1045 | 10.7(a) | | SEC |
| => INR | 1 | JUL 11 | 1045 | 0.97(b) | | |
| => PARTIAL THROMBO | 1 | JUL 11 | 1045 | 26.7(c) | | SEC |
| => SODIUM | 1 | JUL 11 | 2245 | 136 | (136-145) | mEq/L |
| => POTASSIUM | 1 | JUL 11 | 2245 | 3.6 | (3.5-5.1) | mEq/L |
| => CHLORIDE | 1 | JUL 11 | 2245 | 96  L | (98-107) | mEq/L |
| => CARBON DIOXIDE | 1 | JUL 11 | 2245 | 26 | (21-32) | mmol/L |
| => ANION GAP | 1 | JUL 11 | 2245 | 17.6 | (10-18) | |
| => GLUCOSE | 1 | JUL 11 | 2245 | 121  H | (74-106) | mg/dL |
| => CALCIUM | 1 | JUL 11 | 2245 | 8.0  L | (8.5-10.1) | mg/dL |
| => TOTAL BILIRUBIN | 1 | JUL 11 | 2245 | 0.3 | (0.1-1.2) | mg/dL |
| => ASPARTATE AMINO | 1 | JUL 11 | 2245 | 95  H | (15-37) | IU/L |
| => ALANINE AMINOTR | 1 | JUL 11 | 2245 | 110  H | (12-78) | IU/L |
| => TOTAL PROTEIN | 1 | JUL 11 | 2245 | 7.6 | (6.4-8.2) | g/dl |
| -> ALBUMIN | 1 | JUL 11 | 2245 | 4.4 | (3.4-5.0) | g/dL |
| -> GLOBULIN | 1 | JUL 11 | 2245 | 3.2 | (1.5-3.7) | G/DL |

```
NOTES:   (a)   NORMAL PATIENT (NOT ANTI-COAGULATED) MEAN: 10.8 SEC
         (b)   RECOMMENDED INR VALUES:
                   INDICATION-
                       LESS INTENSIVE      2.0 - 3.0
                       CONVENTIONAL        3.0 - 4.5

                   NORMAL PATIENT (NOT ANTI-COAGULATED) INR: 1.0
         (c)   NORMAL PATIENT (NOT ON HEPARIN) RANGE: 24.3 - 31.0
```

```
Patient: LEE,JOHN E              Age/Sex: 46/M      AcctBC0002439008 UnitI000002027
```

RUN DATE: 07/17/15
RUN TIME: 0004

Buchanan County Hlth Ctr LAB **LIVE**
***Summary Discharge Report - Do not Destroy***

PAGE 2

LOCATION

| Patient: LEE,JOHN E | | | | BC0002439008 | | (Continued) | |
|---|---|---|---|---|---|---|---|

| Test | Day | Date | Time | Result | Reference | Units |
|---|---|---|---|---|---|---|
| => ALB/GLOB RATIO | 1 | JUL 11 | 2245 | 1.4 | | RATIO |
| => Alkaline Phosph | 1 | JUL 11 | 2245 | 76 | (46-116) | IU/L |
| => LACTIC ACID | 1 | JUL 11 | 2245 | 2.4 H | (0.4-2.0) | mmol/L |
| => BLOOD UREA NITR | 1 | JUL 11 | 2245 | 9 | (7-18) | mg/dL |
| => BUN/CREATININE | 1 | JUL 11 | 2245 | 7.5 L | (8-24) | RATIO |
| => CREATININE | 1 | JUL 11 | 2245 | 1.2 | (0.8-1.3) | mg/dL |
| => GLOMERULAR FILT | 1 | JUL 11 | 2245 | > 60(d) | (>60) | |
| => ETHANOL | 1 | JUL 11 | 2245 | 233.0 H | (0-3.0) | mg/dL |

NOTES:    (d)    The MDRD Study equation has been validated extensively in white and African-American populations with impared kidney function (GFR <60mL/min/1.73 m^2). This equation is only valid on patients between the ages 18 and 70 years. Results on patients outside of this age range should be interpreted with caution. If the patient is African-American, multiply the GFR result by "1.212".

| Patient: LEE,JOHN E | | | Age/Sex: 46/M | AcctBC0002439008 UnitI000002027 |
|---|---|---|---|---|

PAGE 1/12 * RCVD AT 2/8/2016 3:14:41 PM [Central Standard Time] * SVR:NE1PWFAX101/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

**BUCHANAN COUNTY HEALTH CENTER**
**1600 1ST STREET**
**INDEPENDENCE, IOWA 50644**
**PH: (319)332-0870**
**FAX: 319 332-0957**
**DIAGNOSTIC IMAGING**
0711-0011

Patient: LEE,JOHN E
DOB:
Phone Number::
Other Phone:

MRN: I000002027
ACCT NO: BC0002439008
Ordering Physician: MASON PA-C,JEFFREY A
Family Physician: JASPER, DUANE D  MD

Service Date: 07/11/15
Procedure: *PORTABLE CHEST (1VIEW)
Technologist: Becky Boggess, RTR (CT)

Pt Status: REG ER

HISTORY:  SYMPTOMS: ett placement

EXAM:  *PORTABLE CHEST (1VIEW)

COMPARISON:  None

An AP supine view of the chest was obtained at 2239 hours following ET
tube placement.

The tip of the ET tube is approximately 5 cm above the carina.
Positioning and technique accentuate the cardiomediastinal silhouette.
No signs of CHF are evident. I do not see any focal infiltrates.

**IMPRESSION:**
1. The tip of the ET tube is approximately 5 cm above the carina.
2. No acute cardiopulmonary process is evident.

Dictated By: SCHNEIDER, PAUL 07/11/15 2300
Electronically Signed By: SCHNEIDER, PAUL  DO 07/11/15 2313

CC:

06/17/2015  02:47    3192831838    LARRY WOODS LAW OFFI    PAGE  12/12

SVR:NET1PWFAX101/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

# FAX

## LARRY F. WOODS

24 North Frederick Ave.

Oelwein, IA 50662

Phone: 319- 283- 3204

Fax:  319 283-9193

To: _Ashley._____    From_____

FAX: _402-361-1460_____    Date ___2/8/2016._____

Phone:_____    Pages_____

RE: _John Lee Clem_____    CC:_____
Clem No. 167-2315 - 1127380

URGENT        FOR REVIEW      PLEASE COMMENT        PLEASE REPLY        PLEASE RECYCLE

*Comments:

Confidential : YES                Restricted Distribution : YES

IF YOU HAVE ANY  PROBLEMS RECEIVING THIS FACSIMILE, PLEASE  CONTACT US AT 319-283-3204

This information contained in this facsimile message is attorney privilege and confidential information intended only for the use of the individual or entity named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient you are hereby notified that any dissemination, distribution or copying of this communications is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone, and return original message to the above address via U.S. Postal Service.  Thank You.

PAGE 2/12 * RCVD AT 2/8/2016 3:14:41 PM [Central Standard Time] * SVR:NE1PWFAX101/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

# LAW OFFICE OF

## *LARRY F. WOODS*

### 24 NORTH FREDERICK AVENUE
### OELWEIN, IOWA 50662
### PH. (319) 283-3204
### FAX (319) 283-1838

February 8, 2016

Risk Services
The Lincoln National Life Insurance Company
P. O. Box 2337
Omaha, Nebraska 68103

> RE:  Policy Holder: Ashley Industrial Molding,  Inc.
>      Policy No:     00400001000-12077
>                     000010132080-00000
>      Claim Number:  1072315-1127380
>      Claimant:      John Lee
>      Appeal:  Additional Evidence

Dear Ashley:

In response to your phone call, I am attaching a copy of the report I have received on this date from Dr. Anthony Leo. I believe his report is timely and addresses many of the issues raised by the Notice of Appeal which has been filed.

I am not sure if your company also has the medical report from Buchanan County Health Center. This hospital was where Vanessa Lee took John Lee for the initial examination. I am attaching a copy of the report.

I would like to draw you attention to the last line full paragraph - "History of Present Illness. The last line states that "They believe he fell down and hit his head."

I also have 3 pictures that I would like to submit. Those have been sent to the e-mail address of LifeClaims@LFG.com. There is a notation on each picture as to why each photo should be considered and what is shown by the photograph.

06/17/2015 02:47        3192831838        LARRY WOODS LAW OFFI        PAGE 02/12

PAGE 3/12 * RCVD AT 2/8/2016 3:14:41 PM [Central Standard Time] * SVR:NE1PWFAX101/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

Lincoln National Life Insurance Co.
Ashley Fultz
Page 2
Claimant:   John E. Lee
Claim No.   1072315-1127380


There are also issues raised by the initial notice of appeal that should be considered. Specifically, it is noted that ATV are controlled by a separate Chapter of the Iowa Code, as set forth in my Appeal Letter of December 19, 2015.

Thank you for your time and attention. Please confirm that the attached information, and photos which have been e-mailed are considered as a part of the evidence considered by the person reviewing the record for the appeal.

Very truly yours,

Larry F. Woods

Enc:  Diagram
CC:  Client



This is a closer view of the area where John Lee and the ATV were found.



The red X marks the approximate location that John Lee and the ATV were found.



This is the ATV vehicle driven by John Lee.

# LARRY F. WOODS    FAX

24 North Frederick Ave.

Oelwein, IA 50662

Phone: 319- 283- 3204

Fax:  319 283-9193

To: _Ashley._____     From_____

FAX: _402-361-1460_____     Date __2/8/2016._____

Phone: _____     Pages _____

RE: _John Lee Clem_____     CC: _____
_Clem No. 167-2315-1127380_

URGENT     FOR REVIEW     PLEASE COMMENT     PLEASE REPLY     PLEASE RECYCLE

*Comments:

Confidential : YES                    Restricted Distribution : YES

IF YOU HAVE ANY  PROBLEMS RECEIVING THIS FACSIMILE, PLEASE  CONTACT US AT 319-283-3204

This information contained in this facsimile message is attorney privilege and confidential information intended only for the use of the individual or entity named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient you are hereby notified that any dissemination, distribution or copying of this communications is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone, and return original message to the above address via U.S. Postal Service.  Thank You.

PAGE 2/12 * RCVD AT 2/8/2016 3:14:41 PM [Central Standard Time] * SVR:NE1PWFAX101/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 238 of 555/Lee 326

# LAW OFFICE OF

# LARRY F. WOODS

## 24 NORTH FREDERICK AVENUE
## OELWEIN, IOWA 50662
## PH. (319) 283-3204
## FAX (319) 283-1838

February 8, 2016

Risk Services
The Lincoln National Life Insurance Company
P. O. Box 2337
Omaha, Nebraska 68103

      RE:  Policy Holder: Ashley Industrial Molding, Inc.
           Policy No:    00400001000-12077
                       000010132080-00000
           Claim Number: 1072315-1127380
           Claimant:     John Lee
           Appeal:  Additional Evidence

Dear Ashley:

    In response to your phone call, I am attaching a copy of the report I have received on this date from Dr. Anthony Leo. I believe his report is timely and addresses many of the issues raised by the Notice of Appeal which has been filed.

    I am not sure if your company also has the medical report from Buchanan County Health Center. This hospital was where Vanessa Lee took John Lee for the initial examination. I am attaching a copy of the report.

    I would like to draw you attention to the last line full paragraph - "History of Present Illness. The last line states that "They believe he fell down and hit his head."

    I also have 3 pictures that I would like to submit. Those have been sent to the e-mail address of LifeClaims@LFG.com. There is a notation on each picture as to why each photo should be considered and what is shown by the photograph.

PAGE 3/12 * RCVD AT 2/8/2016 3:14:41 PM [Central Standard Time] * SVR:NE1PWFAX101/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

Lincoln National Life Insurance Co.
Ashley Fultz
Page 2
Claimant:   John E. Lee
Claim No.   1072315-1127380


There are also issues raised by the initial notice of appeal that should be considered. Specifically, it is noted that ATV are controlled by a separate Chapter of the Iowa Code, as set forth in my Appeal Letter of December 19, 2015.

Thank you for your time and attention. Please confirm that the attached information, and photos which have been e-mailed are considered as a part of the evidence considered by the person reviewing the record for the appeal.

Very truly yours,

Larry F. Woods

Enc:  Diagram
CC:  Client

PAGE 4/12 * RCVD AT 2/8/2016 3:14:41 PM [Central Standard Time] * SVR:NE1PWFAX/10/16 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

# Anthony J. Leo M.D., F.A.C.S.

### General Surgery
### 201 Eighth Avenue Southeast
### Oelwein, Iowa 50662
### 319-283-4321

Diplomate, American Board of Surgery                    Fellow, American College of Surgeons

February 7, 2016

To Whom It May Concern,

John Earl Lee, birthdate _____, died at University of Iowa Hospitals and Clinics in Iowa City, Iowa, 7-19-15, having been discovered to be unconscious by family members on the evening of 7-11-15.

I am a board-certified general surgeon, a Fellow of the American College of Surgeons, who is involved in acute trauma care, and I have served as a clinical instructor for Advanced Trauma Life Support (ATLS). I also currently serve as the Fayette County Medical Examiner. I have had the opportunity to review medical records from both Buchanan County Health Center and from the University of Iowa Hospitals and Clinics. I have also interviewed the decedent's wife, Vanessa, and her daughter, Randy.

On the evening of 7-11-15, the family was enjoying a camping excursion at a rural site. The decedent left the rest of his family members on his ATV, and family members became concerned when he did not return. He was discovered by his daughter lying next to the ATV, which was still running and was upright, although the headlight was slightly dislodged. He was lying supine, with a cigarette next to his hand, and he was unresponsive, though breathing. It was the impression of family members that he had fallen next to the vehicle.

The site of discovery of the decedent was surveyed personally by me, and it is a large, sandy expanse with a flat surface, with no trees, buildings, fences, or other obstructions in the area. His family members initially felt that he had "passed out" from drinking, and they took him home, but they began to observe that he was demonstrating sonorous respirations and he could not be aroused. After a couple of hours, he was taken to Buchanan County Health Center in Independence by private car, after family members had observed progressive swelling and bruising about his right eye and minimal nasal bleeding. The patient had been drinking alcohol prior to being discovered. In the emergency department, he was evaluated by Jeff Mason, PA. He was unresponsive and demonstrating sonorous respirations, with periorbital ecchymosis and edema involving his right eye. Pupils were pinpoint and unresponsive. He was unresponsive to verbal or painful stimuli. His Glasgow coma score would have been 3, the lowest possible. A serum ethanol level of 0.233 was confirmed. Oral endotracheal intubation was performed and chest x-ray revealed proper placement of the endotracheal tube. He was ultimately transported by ground ambulance to University of Iowa Hospitals and Clinics, receiving intravenous Keppra since he did demonstrate some wrist flexion, and there were concerns regarding seizure

06/17/2015  02:47    3192831838    LARRY WOODS LAW OFFI    PAGE  04/12

PAGE 5/12 * RCVD AT 2/8/2016 3:14:41 PM [Central Standard Time] * SVR:NET1PWFAX101/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

# *Anthony J. Leo M.D., F.A.C.S.*

**General Surgery**
201 Eighth Avenue Southeast
Oelwein, Iowa 50662
319-283-4321

**Diplomate, American Board of Surgery**                    **Fellow, American College of Surgeons**

He underwent comprehensive evaluation with multidisciplinary care provided in the surgical intensive care unit at UIHC. He was seen by various consultants, including neurosurgeons. He demonstrated decerebrate posturing and consistently had a Glasgow score of 4. A bolt was placed for intracranial pressure monitoring and he demonstrated problems with periodic elevation of intracranial pressure. There was evidence of a right orbital fracture, but there was no evidence of thoracic or abdominal trauma, nor of long bone fractures. The cervical spine was intact as well. Cranial and cervical spine MRI, 7-16-15, revealed findings consistent with diffuse axonal injury. He was begun on nasoduodenal enteric feedings. He did not show any improvement and passionate extubation was performed at the family's request, after thorough consultation, 7-19-15. He was pronounced dead on that date at 0957 hours.

Review of his death certificate indicates that the medical examiner was contacted, and a case number of 15-52-359 was assigned. The certifier was Dennis Firchau, M.D., whom I recognize as a consulting UIHC forensic pathologist. An autopsy was not performed, and the remains were cremated.

The manner of death was ascribed to accident, and the immediate cause of death was ascribed to blunt force injuries of the head.

The medical examiner report is not available for my review at this time.

There is no evidence to indicate that the blunt force injuries imparted to the head with resultant diffuse axonal injury, a lethal form of traumatic brain injury, occurred as a result of the decedent sustaining those injuries while specifically operating the motor vehicle. The events proximate to his injuries were witnessed by no one. Neither staff at Buchanan County Health Center, nor at University of Iowa Hospitals and Clinics, alerted local law enforcement so that a comprehensive (or any) accident investigation could be performed.

It is my opinion, with a reasonable degree of medical certainty, that there is no evidence to indicate that the injuries were sustained while John Earl Lee was actually operating the motor vehicle. He may have dismounted from the vehicle, owing to any of a number of acute medical illnesses, which could have then precipitated an accidental fall, striking his head, producing lethal traumatic brain injury. Neither an autopsy nor a proper forensic accident investigation was undertaken. An autopsy may have identified underlying medical conditions which may have predisposed him to become ill while operating the motor vehicle, causing him to dismount, then to collapse, sustaining the fatal injury.

Sincerely,

Anthony J. Leo, M.D., F.A.C.S.

06/17/2015  02:47        3192831838        LARRY WOODS LAW OFFI        PAGE  05/12

Case 6:18-cv-02063-CJW-MAR   Document 26-4   Filed 02/13/19   Page 242 of 555/Lee 330

PAGE 6/12 * RCVD AT 2/8/2016 3:14:41 PM [Central Standard Time] * SVR:NET19MFAX10/16 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

Buchanan County Health Center
Emergency Room
1600 1st St E
Independence, IA 50644
319-332-0999

Patient Name: LEE,JOHN E
Date:07/11/15 Time:2223
Provider Name:MASON PA-C,JEFFREY A
#:BC0002439008

Date of Birth:
Medical Record #:I000002027
Account

**History of Present Illness Fal**

**- General**
**Source:** family
**Exam Limitations:** clinical condition, intoxication

**- History of Present Illness**
**Initial Comments:**
The patient presented to the emergency room via private vehicle for evaluation of unresponsiveness.
His wife and daughter state that they found him tonight at his camp site lying on the ground. They
state he was unresponsive and after observing him for 2 hours he did not wake up. They finally
brought him in when they noticed he had some blood coming from his mouth and nose.
He had a bruise under his right eye. He was unresponsive. He would not move. They picked the
patient up and put him in the back seat of their sedan and drove to the emergency room. Patient
was making sonorous respirations and his initial pulse oximetry was in the 70s. Patient was unable to
protect his airway. The family state he is not on any current medications. No significant medical
history. He was drinking alcohol today. They believe he fell down and hit his head.
**Occurred:** this evening
**Fall Injury Location:** head
**Pain Location:** Head
**Reason for Fall:** unknown
**Loss of Consciousness:** prolonged (minutes)
**Allergies/Adverse Reactions:**
**Allergies**

No Known Allergies Allergy (Verified 07/11/15 23:38)

**Home Medications:**
**Ambulatory Orders**

NK [NK]

**Review of Systems General**

**- Review of Systems**
**Constitutional:** no symptoms reported (Patient is unable to give us a review of systems due to his
clinical condition)
**EENTM:** epistaxis

06/17/2015  02:47        3192831838        LARRY WOODS LAW OFFI                 PAGE  06/12

PAGE 7/12 * RCVD AT 2/8/2016 3:14:41 PM [Central Standard Time] * SVR:NETIPWFAX101/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

Buchanan County Health Center
Emergency Department
Patient Name: LEE,JOHN E        Account number:BC0002439008        Medical Record number:I000002027

**Respiratory:** stridor
**Cardiology:** no symptoms reported
**Gastrointestinal/Abdominal:** no symptoms reported
**Genitourinary:** no symptoms reported
**Musculoskeletal:** no symptoms reported
**Skin:** no symptoms reported
**Neurological:** no symptoms reported
**Psych:** no symptoms reported
**Endocrine:** no symptoms reported
**Hematologic/Lymphatic:** no symptoms reported

## Physical Exam General

**- Physical Exam**
**General Appearance:** other (An unresponsive male who has sonorous respirations)
**Eyes:** Right Periorbital Swelling
**Fundoscopic Exam:**
Patient has periorbital edema and ecchymosis around the right orbit.  Pupils are pinpoint and unresponsive.
**Ears:** normal external exam
**Nose:** no blood
**Throat/Mouth:** other
**Head:** facial swelling
**Respiratory/Chest:** Diminished, other (Patient has sonorous breathing)
**Cardiovascular:** regular rate, rhythm
**Abdominal:** non tender
**Extremities:** other (Pelvis stable)
**Neurological:** other (Unresponsive to verbal and painful stimuli)
**Skin:** normal color

## Course

**- Course**
**Orders, Labs, Meds:**

### Oxygen Sats

| Oxygen Saturation via Pulse Oximetry | 77 |
|---|---|

### Laboratory Tests

|  |  | 07/11/15 10:45 | 07/11/15 22:45 |
|---|---|---|---|
| WBC |  |  | 11.7 H |
| RBC |  |  | 5.01 |
| Hgb |  |  | 15.8 |
| Hct |  |  | 45.1 |
| MCV |  |  | 90 |
| MCH |  |  | 31.5 |
| MCHC |  |  | 35.0 |
| RDW |  |  | 13.1 |

PAGE 8/12 * RCVD AT 2/8/2016 3:14:41 PM [Central Standard Time] * SVR:NETIPWFAX/01/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 244 of 555 Lee 332

Buchanan County Health Center
Emergency Department
Patient Name: LEE,JOHN E    Account number:BC0002439008    Medical Record number:I000002027

| Plt Count | | 160 |
|---|---|---|
| MPV | | 9.3 L |
| Gran % | | 75.3 H |
| Gran # | | 8.77 H |
| Lymphocytes % | | 14.6 L |
| Monocytes % | | 8.9 |
| Eosinophils % | | 1.00 |
| Basophils % | | 0.20 |
| Lymphocytes # | | 1.70 |
| Monocytes # | | 1.04 H |
| Eosinophils # | | 0.12 |
| Basophils # | | 0.02 |
| PT | 10.7 | |
| INR | 0.97 | |
| APTT | 26.7 | |
| Sodium | | 136 |
| Potassium | | 3.6 |
| Chloride | | 96 L |
| Carbon Dioxide | | 26 |
| Anion Gap | | 17.6 |
| BUN | | 9 |
| Creatinine | | 1.2 |
| GFR Calculation | | > 60 |
| BUN/Creatinine Ratio | | 7.5 L |
| Glucose | | 121 H |
| Lactic Acid | | 2.4 H |
| Calcium | | 8.0 L |
| Total Bilirubin | | 0.3 |
| AST | | 95 H |
| ALT | | 110 H |
| Alkaline Phosphatase | | 76 |
| Total Protein | | 7.6 |
| Albumin | | 4.4 |
| Globulin | | 3.2 |
| Albumin/Globulin Ratio | | 1.4 |
| Ethyl Alcohol | | 233.0 H |

## Radiology Impressions

07/11/15 22:50
*PORTABLE CHEST (1VIEW) Stat


The patient presented to the emergency room via private vehicle for evaluation of unresponsiveness. Patient was unable to protect his own airway and so we went ahead and did a RSI. He received 100 mg of succinylcholine after a 20 mg dose of etomidate. Using a glide scope I did pass a 7.5 mm ET tube through the vocal cords. Had good breath sounds bilaterally. Oxygenation was good. Tube placement by calorimetric CO monitor and ETCO2. Chest x-ray showed appropriate ET tube placement. Patient remained in the C-spine precautions throughout the intubation and was placed in a cervical collar following the securing of the ET tube.

PAGE 9/17 * RCVD AT 2/8/2016 3:14:41 PM [Central Standard Time] * SVR:NE1PWFAX101/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

Buchanan County Health Center
Emergency Department
Patient Name: LEE,JOHN E     Account number:BC0002439008     Medical Record number:I000002027

I did call covenant emergency room for transfer per the patient's wife.  However they do not have neurosurgical coverage and therefore I spoke with the attending physician at the University of Iowa and Dr. Schlichting who accepted transfer.  Patient did recieve postintubation fentanyl and propofol. Vital signs were stable.  We attempted to transfer via air ambulance but unfortunately weather was not permitting.  The delay caused the radiology tech to go home and so if I would have known that he was going by ground we would have done a imaging studies here.  Unfortunately the delay of information whether or not the helicopter would fly delayed the imaging.  The x-ray tech went home for the evening and would have taken half an hour to return.  In the meantime we did arrange ground transfer.  Patient did remain stable throughout his visit.  Had some flexion at the wrist concerning for seizure/posturing so we gave a 1 g dose of Keppra IV.

Spent a considerable amount of time with the family explaining the benefits of airway protection and the need for neurosurgical coverage.  Wife did agree to transfer..

**Critical Care Note**

**- Critical Care Note**
**Total Time (mins): 60**
**Necessay to Tx/Prevent Imminent/Life Threatening Detoriation:** Respiratory Failure
**Critical-Care w/time spent personally by me on the following:** Blood Draw for Specimens, Discussion with Consultants, Obtaining Patient History, Ordering and Review of Laboratory Studies, Ordering and Review of Tadiographic Studies, Ordering and Performing Treatments and Interventions

**Departure**

**- Departure**
**Disposition:** ACUTE CARE HOSPITAL (02)
**Clinical Impression:**
 Head injury, Alcohol intoxication, Respiratory failure with hypoxia, Unresponsive state
**Condition:** Serious
**Referrals:**
JASPER,DUANE D, MD [Family Provider] -
**General Information:**
Today you were evaluated in the Buchanan County Health Center Emergency Department. The examination and treatment which you received has been on an emergency basis only. It has not been intended to be a substitute for complete medical care. For your protection, it is advised that you follow up as recommended in the follow up section of this packet.

If complications arise or no improvement, call your doctor (or the doctor who is on-call). If the doctor cannot be reached, return to the emergency department.

Hospital 319-332-0999

Electronically Signed By: <Electronically signed by JEFFREY A MASON PA-C> On:07/12/15 At:0643

06/17/2015  02:47     3192831838          LARRY WOODS LAW OFFI               PAGE  09/12

PAGE 10/17 * RCVD AT 2/8/2016 3:14:41 PM [Central Standard Time] * SVR:NETIPWFAX101/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 246 of 555Lee 334

```
RUN DATE: 07/17/15              Buchanan County Hlth Ctr LAB **LIVE**                PAGE 1
RUN TIME: 0004             ***Summary Discharge Report - Do not Destroy***
```

## LOCATION

```
PATIENT: LEE,JOHN E                    ACCT: BC000243900B  LOC:  BC.ER      U: I000002027
                                       AGE/SX: 46/M        ROOM:           REG: 07/11/15
REG DR:  MASON PA-C,JEFFREY A          STATUS: DEP ER      BED:            DIS:
```

| Test | Day | Date | Time | Result | Reference | Units |
|------|-----|------|------|--------|-----------|-------|
| => WHITE BLOOD COU | 1 | JUL 11 | 2245 | 11.7  H | (4.0-10.5) | 10E3/uL |
| => RED BLOOD COUNT | 1 | JUL 11 | 2245 | 5.01 | (4.00-5.50) | 10E6/uL |
| => HEMOGLOBIN | 1 | JUL 11 | 2245 | 15.8 | (13.0-17.0) | g/dL |
| => HEMATOCRIT | 1 | JUL 11 | 2245 | 45.1 | (38.0-49.0) | % |
| => MEAN CORPUSCULA | 1 | JUL 11 | 2245 | 90 | (82-99) | fL |
| => MEAN CORPUSCULA | 1 | JUL 11 | 2245 | 31.5 | (28.0-34.0) | pg |
| => MEAN CORPUSCULA | 1 | JUL 11 | 2245 | 35.0 | (32.0-36.0) | g/dL |
| => RED CELL DISTRI | 1 | JUL 11 | 2245 | 13.1 | (11.5-14.5) | % |
| => PLATELET COUNT | 1 | JUL 11 | 2245 | 160 | (150-450) | 10E3/uL |
| => MEAN PLATELET V | 1 | JUL 11 | 2245 | 9.3  L | (9.4-12.4) | fL |
| => GRANULOCYTES% | 1 | JUL 11 | 2245 | 75.3  H | (42.0-75.0) | % |
| => LYMPHOCYTES % | 1 | JUL 11 | 2245 | 14.6  L | (15.0-41.0) | % |
| => MONOCYTES % | 1 | JUL 11 | 2245 | 8.9 | (1.0-9.0) | % |
| => EOSINOPHILS % | 1 | JUL 11 | 2245 | 1.00 | (0-6.0) | % |
| => BASOPHILS % | 1 | JUL 11 | 2245 | 0.20 | (0-2.00) | % |
| => Granulocyte # | 1 | JUL 11 | 2245 | 8.77  H | (2.00-8.00) | 10E3/uL |
| => LYMPHOCYTES # | 1 | JUL 11 | 2245 | 1.70 | (1.00-4.00) | 10E3/uL |
| => MONOCYTES # | 1 | JUL 11 | 2245 | 1.04  H | (0-1.0) | 10E3/uL |
| => EOSINOPHILS # | 1 | JUL 11 | 2245 | 0.12 | (0-0.40) | 10E3/uL |
| => BASOPHILS # | 1 | JUL 11 | 2245 | 0.02 | (0.00-0.20) | 10E3/uL |
| => PROTHROMBIN TIM | 1 | JUL 11 | 1045 | 10.7(a) | | SEC |
| => INR | 1 | JUL 11 | 1045 | 0.97(b) | | |
| => PARTIAL THROMBO | 1 | JUL 11 | 1045 | 26.7(c) | | SEC |
| => SODIUM | 1 | JUL 11 | 2245 | 136 | (136-145) | mEq/L |
| => POTASSIUM | 1 | JUL 11 | 2245 | 3.6 | (3.5-5.1) | mEq/L |
| => CHLORIDE | 1 | JUL 11 | 2245 | 96  L | (98-107) | mEq/L |
| => CARBON DIOXIDE | 1 | JUL 11 | 2245 | 26 | (21-32) | mmol/L |
| => ANION GAP | 1 | JUL 11 | 2245 | 17.6 | (10-18) | |
| => GLUCOSE | 1 | JUL 11 | 2245 | 121  H | (74-106) | mg/dL |
| => CALCIUM | 1 | JUL 11 | 2245 | 8.0  L | (8.5-10.1) | mg/dL |
| => TOTAL BILIRUBIN | 1 | JUL 11 | 2245 | 0.3 | (0.1-1.2) | mg/dL |
| => ASPARTATE AMINO | 1 | JUL 11 | 2245 | 95  H | (15-37) | IU/L |
| => ALANINE AMINOTR | 1 | JUL 11 | 2245 | 110  H | (12-78) | IU/L |
| => TOTAL PROTEIN | 1 | JUL 11 | 2245 | 7.6 | (6.4-8.2) | g/dL |
| => ALBUMIN | 1 | JUL 11 | 2245 | 4.4 | (3.4-5.0) | g/dL |
| => GLOBULIN | 1 | JUL 11 | 2245 | 3.2 | (1.5-3.7) | G/DL |

```
NOTES:   (a)  NORMAL PATIENT (NOT ANTI-COAGULATED) MEAN: 10.8 SEC
         (b)  RECOMMENDED INR VALUES:
                  INDICATION-
                      LESS INTENSIVE       2.0 - 3.0
                      CONVENTIONAL         3.0 - 4.5

                  NORMAL PATIENT (NOT ANTI-COAGULATED) INR: 1.0
         (c)  NORMAL PATIENT (NOT ON HEPARIN) RANGE: 24.3 - 31.0
```

```
Patient: LEE,JOHN E              Age/Sex: 46/M      AcctBC0002439008 UnitI000002027
```

PAGE 11/12 * RCVD AT 2/8/2016 3:14:41 PM [Central Standard Time] * SVR:NETIPWFAX101/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

RUN DATE: 07/17/15                    Buchanan County Hlth Ctr LAB **LIVE**                     PAGE 2
RUN TIME: 0004                     ***Summary Discharge Report - Do not Destroy***

LOCATION

| Patient: LEE,JOHN E | | BC0002439008 | (Continued) | |

| Test | Day | Date | Time | Result | Reference | Units |
|------|-----|------|------|--------|-----------|-------|
| => ALB/GLOB RATIO | 1 | JUL 11 | 2245 | 1.4 | | RATIO |
| => Alkaline Phosph | 1 | JUL 11 | 2245 | 76 | (46-116) | IU/L |
| => LACTIC ACID | 1 | JUL 11 | 2245 | 2.4  H | (0.4-2.0) | mmol/L |
| => BLOOD UREA NITR | 1 | JUL 11 | 2245 | 9 | (7-18) | mg/dL |
| => BUN/CREATININE | 1 | JUL 11 | 2245 | 7.5  L | (8-24) | RATIO |
| => CREATININE | 1 | JUL 11 | 2245 | 1.2 | (0.8-1.3) | mg/dL |
| => GLOMERULAR FILT | 1 | JUL 11 | 2245 | > 60(d) | (>60) | |
| => ETHANOL | 1 | JUL 11 | 2245 | 233.0  H | (0-3.0) | mg/dL |

NOTES:  (d)   The MDRD Study equation has been validated extensively in
              white and African-American populations with impared kidney
              function (GFR <60mL/min/1.73 m^2). This equation is only
              valid on patients between the ages 18 and 70 years.  Results
              on patients outside of this age range should be interpreted
              with caution. If the patient is African-American, multiply
              the GFR result by "1.212".

| Patient: LEE,JOHN E | | Age/Sex: 46/M | AcctBC0002439008 UnitI000002027 |

PAGE 1/12 * RCVD AT 2/8/2016 3:14:41 PM [Central Standard Time] * SVR:NE1PWFAX101/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 248 of 555/Lee 336

**BUCHANAN COUNTY HEALTH CENTER**
**1600 1ST STREET**
**INDEPENDENCE, IOWA 50644**
**PH: (319)332-0870**
**FAX: 319 332-0957**
**DIAGNOSTIC IMAGING**
0711-0011

Patient: LEE,JOHN E
DOB:
Phone Number
Other Phone:

MRN: I000002027
ACCT NO: BC0002439008
Ordering Physician: MASON PA-C,JEFFREY A
Family Physician: JASPER, DUANE D  MD

Service Date: 07/11/15
Procedure: *PORTABLE CHEST (1VIEW)
Technologist: Becky Boggess, RTR (CT)

Pt Status: REG ER

HISTORY:  SYMPTOMS: ett placement

EXAM:  *PORTABLE CHEST (1VIEW)

COMPARISON:  None

An AP supine view of the chest was obtained at 2239 hours following ET
tube placement.

The tip of the ET tube is approximately 5 cm above the carina.
Positioning and technique accentuate the cardiomediastinal silhouette.
No signs of CHF are evident. I do not see any focal infiltrates.

**IMPRESSION:**
1. The tip of the ET tube is approximately 5 cm above the carina.
2. No acute cardiopulmonary process is evident.

Dictated By: SCHNEIDER, PAUL 07/11/15 2300
Electronically Signed By: SCHNEIDER, PAUL  DO 07/11/15 2313

CC:

PAGE:1 of 1



# Fax Transmission

## 8801 Indian Hills Dr., Omaha, NE  68114

**From:**    Name:
Fax Number:    1460
Voice Phone:

**To:**    Name:
Company:
Fax Number:    18778433950
Voice Phone:

**Fax Notes :**

Date and time of transmission: Monday, February 08, 2016 3:14:40 PM

Number of pages including this cover sheet: 13

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

This facsimile transmission is intended only for the addressee named above.  It contains information that is privileged, confidential or otherwise protected from use and disclosure.  If you are not the intended recipient you are hereby notified that any review, disclosure, copying or dissemination of this transmission, or the taking of any action in reliance on its contents, or other use is strictly prohibited.  If you have received this transmission in error, please notify us by telephone immediately so that we can arrange for its return to us.  Thank you for your cooperation.

# FAX

## LARRY F. WOODS

24 North Frederick Ave.

Oelwein, IA 50662

Phone: 319-283-3204

Fax: 319 283-9193

To: Ashley.                          From _____

FAX: 402-361-1460       Date  2/8/2016.

Phone: _____       Pages _____

RE: John Lee Clau                CC: _____
Clau No. 167-2315-1127380

URGENT    FOR REVIEW    PLEASE COMMENT    PLEASE REPLY    PLEASE RECYCLE

*Comments:

Confidential : YES                    Restricted Distribution :  YES

IF YOU HAVE ANY  PROBLEMS RECEIVING THIS FACSIMILE, PLEASE  CONTACT  US AT 319-283-3204

This information contained in this facsimile message is attorney privilege and confidential information intended only for the use of the individual or entity named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient you are hereby notified that any dissemination, distribution or copying of this communications is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone, and return original message to the above address via U.S. Postal Service.  Thank You.

PAGE 2/12 * RCVD AT 7/8/2016 3:14:41 PM [Central Standard Time] * SVR:NETIPWFAX101/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

# LAW OFFICE OF

# *LARRY F. WOODS*

## 24 NORTH FREDERICK AVENUE
## OELWEIN, IOWA 50662
## PH. (319) 283-3204
## FAX (319) 283-1838

February 8, 2016

Risk Services
The Lincoln National Life Insurance Company
P. O. Box 2337
Omaha, Nebraska 68103

> RE: Policy Holder: Ashley Industrial Molding, Inc.
> Policy No: 00400001000-12077
> 000010132080-00000
> Claim Number: 1072315-1127380
> Claimant: John Lee
> Appeal: Additional Evidence

Dear Ashley:

In response to your phone call, I am attaching a copy of the report I have received on this date from Dr. Anthony Leo. I believe his report is timely and addresses many of the issues raised by the Notice of Appeal which has been filed.

I am not sure if your company also has the medical report from Buchanan County Health Center. This hospital was where Vanessa Lee took John Lee for the initial examination. I am attaching a copy of the report.

I would like to draw you attention to the last line full paragraph - "History of Present Illness. The last line states that "They believe he fell down and hit his head."

I also have 3 pictures that I would like to submit. Those have been sent to the e-mail address of LifeClaims@LFG.com. There is a notation on each picture as to why each photo should be considered and what is shown by the photograph.

06/17/2015  02:47      3192831838          LARRY WOODS LAW OFFI                          PAGE  02/12

LFG Omaha Fax          2/8/2016 3:17:40 PM  PAGE  3/013    Fax Server

PAGE 3/17 * RCVD AT 2/8/2016 3:14:41 PM [Central Standard Time] * SVR:NE1PWFAX101/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 252 of 555/Lee 340

Lincoln National Life Insurance Co.
Ashley Fultz
Page 2
Claimant:   John E. Lee
Claim No.   1072315-1127380

     There are also issues raised by the initial notice of appeal that should be considered. Specifically, it is noted that ATV are controlled by a separate Chapter of the Iowa Code, as set forth in my Appeal Letter of December 19, 2015.

     Thank you for your time and attention. Please confirm that the attached information, and photos which have been e-mailed are considered as a part of the evidence considered by the person reviewing the record for the appeal.

              Very truly yours,

              Larry F. Woods

Enc:  Diagram
CC:   Client

# Anthony J. Leo M.D., F.A.C.S.

General Surgery
201 Eighth Avenue Southeast
Oelwein, Iowa 50662
319-283-4321

Diplomate, American Board of Surgery                    Fellow, American College of Surgeons


February 7, 2016

To Whom It May Concern,

John Earl Lee, birthdate          , died at University of Iowa Hospitals and Clinics in Iowa City, Iowa,
7-19-15, having been discovered to be unconscious by family members on the evening of 7-11-15.

I am a board-certified general surgeon, a Fellow of the American College of Surgeons, who is involved in
acute trauma care, and I have served as a clinical instructor for Advanced Trauma Life Support (ATLS). I
also currently serve as the Fayette County Medical Examiner. I have had the opportunity to review
medical records from both Buchanan County Health Center and from the University of Iowa Hospitals
and Clinics. I have also interviewed the decedent's wife, Vanessa, and her daughter, Randy.

On the evening of 7-11-15, the family was enjoying a camping excursion at a rural site. The decedent
left the rest of his family members on his ATV, and family members became concerned when he did not
return. He was discovered by his daughter lying next to the ATV, which was still running and was
upright, although the headlight was slightly dislodged. He was lying supine, with a cigarette next to his
hand, and he was unresponsive, though breathing. It was the impression of family members that he
had fallen next to the vehicle.

The site of discovery of the decedent was surveyed personally by me, and it is a large, sandy expanse
with a flat surface, with no trees, buildings, fences, or other obstructions in the area. His family
members initially felt that he had "passed out" from drinking, and they took him home, but they began
to observe that he was demonstrating sonorous respirations and he could not be aroused. After a
couple of hours, he was taken to Buchanan County Health Center in Independence by private car, after
family members had observed progressive swelling and bruising about his right eye and minimal nasal
bleeding. The patient had been drinking alcohol prior to being discovered. In the emergency
department, he was evaluated by Jeff Mason, PA. He was unresponsive and demonstrating sonorous
respirations, with periorbital ecchymosis and edema involving his right eye. Pupils were pinpoint and
unresponsive. He was unresponsive to verbal or painful stimuli. His Glasgow coma score would have
been 3, the lowest possible. A serum ethanol level of 0.233 was confirmed. Oral endotracheal
intubation was performed and chest x-ray revealed proper placement of the endotracheal tube. He was
ultimately transported by ground ambulance to University of Iowa Hospitals and Clinics, receiving
intravenous Keppra since he did demonstrate some wrist flexion, and there were concerns regarding
seizure

# Anthony J. Leo M.D., F.A.C.S.

**General Surgery**
201 Eighth Avenue Southeast
Oelwein, Iowa 50662
319-283-4321

Diplomate, American Board of Surgery                          Fellow, American College of Surgeons

He underwent comprehensive evaluation with multidisciplinary care provided in the surgical intensive care unit at UIHC. He was seen by various consultants, including neurosurgeons. He demonstrated decerebrate posturing and consistently had a Glasgow score of 4. A bolt was placed for intracranial pressure monitoring and he demonstrated problems with periodic elevation of intracranial pressure. There was evidence of a right orbital fracture, but there was no evidence of thoracic or abdominal trauma, nor of long bone fractures. The cervical spine was intact as well. Cranial and cervical spine MRI, 7-16-15, revealed findings consistent with diffuse axonal injury. He was begun on nasoduodenal enteric feedings. He did not show any improvement and passionate extubation was performed at the family's request, after thorough consultation, 7-19-15. He was pronounced dead on that date at 0957 hours.

Review of his death certificate indicates that the medical examiner was contacted, and a case number of 15-52-359 was assigned. The certifier was Dennis Firchau,M.D., whom I recognize as a consulting UIHC forensic pathologist. An autopsy was not performed, and the remains were cremated.

The manner of death was ascribed to accident, and the immediate cause of death was ascribed to blunt force injuries of the head.

The medical examiner report is not available for my review at this time.

There is no evidence to indicate that the blunt force injuries imparted to the head with resultant diffuse axonal injury, a lethal form of traumatic brain injury, occurred as a result of the decedent sustaining those injuries while specifically operating the motor vehicle. The events proximate to his injuries were witnessed by no one. Neither staff at Buchanan County Health Center, nor at University of Iowa Hospitals and Clinics, alerted local law enforcement so that a comprehensive (or any) accident investigation could be performed.

It is my opinion, with a reasonable degree of medical certainty, that there is no evidence to indicate that the injuries were sustained while John Earl Lee was actually operating the motor vehicle. He may have dismounted from the vehicle, owing to any of a number of acute medical illnesses, which could have then precipitated an accidental fall, striking his head, producing lethal traumatic brain injury. Neither an autopsy nor a proper forensic accident investigation was undertaken. An autopsy may have identified underlying medical conditions which may have predisposed him to become ill while operating the motor vehicle, causing him to dismount, then to collapse, sustaining the fatal injury.

Sincerely,

Anthony J. Leo, M.D., F.A.C.S.

PAGE 6/13 * RCVD AT 7/8/2016 3:14:41 PM [Central Standard Time] * SVR:NETPWFAX101/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

Buchanan County Health Center
Emergency Room
1600 1st St E
Independence, IA 50644
319-332-0999

Patient Name: LEE,JOHN E
Date:07/11/15 Time:2223
Provider Name:MASON PA-C,JEFFREY A
#:BC0002439008

Date of Birth:
Medical Record #:I000002027
Account

## History of Present Illness Fal

**- General**
**Source:** family
**Exam Limitations:** clinical condition, intoxication

**- History of Present Illness**
**Initial Comments:**
The patient presented to the emergency room via private vehicle for evaluation of unresponsiveness.
His wife and daughter state that they found him tonight at his camp site lying on the ground. They
state he was unresponsive and after observing him for 2 hours he did not wake up. They finally
brought him in when they noticed he had some blood coming from his mouth and nose.
He had a bruise under his right eye. He was unresponsive. He would not move. They picked the
patient up and put him in the back seat of their sedan and drove to the emergency room. Patient
was making sonorous respirations and his initial pulse oximetry was in the 70s. Patient was unable to
protect his airway. The family state he is not on any current medications. No significant medical
history. He was drinking alcohol today. They believe he fell down and hit his head.
**Occurred:** this evening
**Fall Injury Location:** head
**Pain Location:** Head
**Reason for Fall:** unknown
**Loss of Consciousness:** prolonged (minutes)
**Allergies/Adverse Reactions:**
**Allergies**

No Known Allergies Allergy (Verified 07/11/15 23:38)

**Home Medications:**
**Ambulatory Orders**

NK [NK]

## Review of Systems General

**- Review of Systems**
**Constitutional:** no symptoms reported (Patient is unable to give us a review of systems due to his
clinical condition)
**EENTM:** epistaxis

PAGE 7/12 * RCVD AT 2/8/2016 3:14:41 PM [Central Standard Time] * SVR:NE1FPWFAX101/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

Buchanan County Health Center
Emergency Department
Patient Name: LEE,JOHN E   |   Account number:BC0002439008   Medical Record number:I000002027

**Respiratory:** stridor
**Cardiology:** no symptoms reported
**Gastrointestinal/Abdominal:** no symptoms reported
**Genitourinary:** no symptoms reported
**Musculoskeletal:** no symptoms reported
**Skin:** no symptoms reported
**Neurological:** no symptoms reported
**Psych:** no symptoms reported
**Endocrine:** no symptoms reported
**Hematologic/Lymphatic:** no symptoms reported

## Physical Exam General

**- Physical Exam**
**General Appearance:** other (An unresponsive male who has sonorous respirations)
**Eyes:** Right Periorbital Swelling
**Fundoscopic Exam:**
Patient has periorbital edema and ecchymosis around the right orbit. Pupils are pinpoint and unresponsive.
**Ears:** normal external exam
**Nose:** no blood
**Throat/Mouth:** other
**Head:** facial swelling
**Respiratory/Chest:** Diminished, other (Patient has sonorous breathing)
**Cardiovascular:** regular rate, rhythm
**Abdominal:** non tender
**Extremities:** other (Pelvis stable)
**Neurological:** other (Unresponsive to verbal and painful stimuli)
**Skin:** normal color

## Course

**- Course**
**Orders, Labs, Meds:**

### Oxygen Sats

| Oxygen Saturation via Pulse Oximetry | 77 |
|---|---|

### Laboratory Tests

|  | 07/11/15 10:45 | 07/11/15 22:45 |
|---|---|---|
| WBC | | 11.7 H |
| RBC | | 5.01 |
| Hgb | | 15.8 |
| Hct | | 45.1 |
| MCV | | 90 |
| MCH | | 31.5 |
| MCHC | | 35.0 |
| RDW | | 13.1 |

Buchanan County Health Center
Emergency Department
Patient Name: LEE,JOHN E    Account number:BC0002439008    Medical Record number:I000002027

| | | |
|---|---|---|
| Plt Count | | 160 |
| MPV | | 9.3 L |
| Gran % | | 75.3 H |
| Gran # | | 8.77 H |
| Lymphocytes % | | 14.6 L |
| Monocytes % | | 8.9 |
| Eosinophils % | | 1.00 |
| Basophils % | | 0.20 |
| Lymphocytes # | | 1.70 |
| Monocytes # | | 1.04 H |
| Eosinophils # | | 0.12 |
| Basophils # | | 0.02 |
| PT | 10.7 | |
| INR | 0.97 | |
| APTT | 26.7 | |
| Sodium | | 136 |
| Potassium | | 3.6 |
| Chloride | | 96 L |
| Carbon Dioxide | | 26 |
| Anion Gap | | 17.6 |
| BUN | | 9 |
| Creatinine | | 1.2 |
| GFR Calculation | | > 60 |
| BUN/Creatinine Ratio | | 7.5 L |
| Glucose | | 121 H |
| Lactic Acid | | 2.4 H |
| Calcium | | 8.0 L |
| Total Bilirubin | | 0.3 |
| AST | | 95 H |
| ALT | | 110 H |
| Alkaline Phosphatase | | 76 |
| Total Protein | | 7.6 |
| Albumin | | 4.4 |
| Globulin | | 3.2 |
| Albumin/Globulin Ratio | | 1.4 |
| Ethyl Alcohol | | 233.0 H |

**Radiology Impressions**

07/11/15 22:50
*PORTABLE CHEST (1VIEW) Stat

The patient presented to the emergency room via private vehicle for evaluation of unresponsiveness.
Patient was unable to protect his own airway and so we went ahead and did a RSI. He received 100
mg of succinylcholine after a 20 mg dose of etomidate. Using a glide scope I did pass a 7.5 mm ET
tube through the vocal cords. Had good breath sounds bilaterally. Oxygenation was good. Tube
placement by calorimetric CO monitor and ETCO2. Chest x-ray showed appropriate ET tube
placement. Patient remained in the C-spine precautions throughout the intubation and was placed in
a cervical collar following the securing of the ET tube.

Date Orig. DCVD AT 7/6/2014 3:44:41 PM (Central Standard Time) * SVR:NETIPWFAX101/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02:34

Buchanan County Health Center
Emergency Department
Patient Name: LEE,JOHN E    Account number:BC0002439008    Medical Record number:I000002027

I did call covenant emergency room for transfer per the patient's wife. However they do not have neurosurgical coverage and therefore I spoke with the attending physician at the University of Iowa and Dr. Schlichting who accepted transfer. Patient did recieve postintubation fentanyl and propofol. Vital signs were stable. We attempted to transfer via air ambulance but unfortunately weather was not permitting. The delay caused the radiology tech to go home and so if I would have known that he was going by ground we would have done a imaging studies here. Unfortunately the delay of information whether or not the helicopter would fly delayed the imaging. The x-ray tech went home for the evening and would have taken half an hour to return. In the meantime we did arrange ground transfer. Patient did remain stable throughout his visit. Had some flexion at the wrist concerning for seizure/posturing so we gave a 1 g dose of Keppra IV.

Spent a considerable amount of time with the family explaining the benefits of airway protection and the need for neurosurgical coverage. Wife did agree to transfer..

**Critical Care Note**

**- Critical Care Note**
**Total Time (mins):** 60
**Necessay to Tx/Prevent Imminent/Life Threatening Detoriation:** Respiratory Failure
**Critical-Care w/time spent personally by me on the following:** Blood Draw for Specimens, Discussion with Consultants, Obtaining Patient History, Ordering and Review of Laboratory Studies, Ordering and Review of Tadiographic Studies, Ordering and Performing Treatments and Interventions

**Departure**

**- Departure**
**Disposition:** ACUTE CARE HOSPITAL (02)
**Clinical Impression:**
 Head injury, Alcohol intoxication, Respiratory failure with hypoxia, Unresponsive state
**Condition:** Serious
**Referrals:**
JASPER,DUANE D, MD [Family Provider] -
**General Information:**
Today you were evaluated in the Buchanan County Health Center Emergency Department. The examination and treatment which you received has been on an emergency basis only. It has not been intended to be a substitute for complete medical care. For your protection, it is advised that you follow up as recommended in the follow up section of this packet.

If complications arise or no improvement, call your doctor (or the doctor who is on-call). If the doctor cannot be reached, return to the emergency department.

Hospital 319-332-0999

Electronically Signed By: <Electronically signed by JEFFREY A MASON PA-C> On:07/12/15 At:0643

RUN DATE: 07/17/15                    Buchanan County Hlth Ctr LAB **LIVE**                    PAGE 1
RUN TIME: 0004                      ***Summary Discharge Report - Do not Destroy***

LOCATION

PATIENT: LEE,JOHN E                    ACCT: BC0002439008  LOC:  BC.ER           U: I000002027
                                       AGE/SX: 46/M         ROOM:                REG: 07/11/15
REG DR:  MASON PA-C,JEFFREY A          STATUS: DEP ER       BED:                 DIS:

| Test | Day | Date | Time | Result | Reference | Units |
|------|-----|------|------|--------|-----------|-------|
| => WHITE BLOOD COU | 1 | JUL 11 | 2245 | 11.7 H | (4.0-10.5) | 10E3/uL |
| => RED BLOOD COUNT | 1 | JUL 11 | 2245 | 5.01 | (4.00-5.50) | 10E6/uL |
| => HEMOGLOBIN | 1 | JUL 11 | 2245 | 15.8 | (13.0-17.0) | g/dL |
| => HEMATOCRIT | 1 | JUL 11 | 2245 | 45.1 | (38.0-49.0) | % |
| => MEAN CORPUSCULA | 1 | JUL 11 | 2245 | 90 | (82-99) | fL |
| => MEAN CORPUSCULA | 1 | JUL 11 | 2245 | 31.5 | (28.0-34.0) | pg |
| => MEAN CORPUSCULA | 1 | JUL 11 | 2245 | 35.0 | (32.0-36.0) | g/dL |
| => RED CELL DISTRI | 1 | JUL 11 | 2245 | 13.1 | (11.5-14.5) | % |
| => PLATELET COUNT | 1 | JUL 11 | 2245 | 160 | (150-450) | 10E3/uL |
| => MEAN PLATELET V | 1 | JUL 11 | 2245 | 9.3 L | (9.4-12.4) | fL |
| => GRANULOCYTES% | 1 | JUL 11 | 2245 | 75.3 H | (42.0-75.0) | % |
| => LYMPHOCYTES % | 1 | JUL 11 | 2245 | 14.5 L | (15.0-41.0) | % |
| => MONOCYTES % | 1 | JUL 11 | 2245 | 8.9 | (1.0-9.0) | % |
| => EOSINOPHILS % | 1 | JUL 11 | 2245 | 1.00 | (0-6.0) | % |
| => BASOPHILS % | 1 | JUL 11 | 2245 | 0.20 | (0-2.00) | % |
| => Granulocyte # | 1 | JUL 11 | 2245 | 8.77 H | (2.00-8.00) | 10E3/uL |
| => LYMPHOCYTES # | 1 | JUL 11 | 2245 | 1.70 | (1.00-4.00) | 10E3/uL |
| => MONOCYTES # | 1 | JUL 11 | 2245 | 1.04 H | (0-1.0) | 10E3/uL |
| => EOSINOPHILS # | 1 | JUL 11 | 2245 | 0.12 | (0-0.40) | 10E3/uL |
| => BASOPHILS # | 1 | JUL 11 | 2245 | 0.02 | (0.00-0.20) | 10E3/uL |
| => PROTHROMBIN TIM | 1 | JUL 11 | 1045 | 10.7(a) | | SEC |
| => INR | 1 | JUL 11 | 1045 | 0.97(b) | | |
| => PARTIAL THROMBO | 1 | JUL 11 | 1045 | 26.7(c) | | SEC |
| => SODIUM | 1 | JUL 11 | 2245 | 136 | (136-145) | mEq/L |
| => POTASSIUM | 1 | JUL 11 | 2245 | 3.6 | (3.5-5.1) | mEq/L |
| => CHLORIDE | 1 | JUL 11 | 2245 | 96 L | (98-107) | mEq/L |
| => CARBON DIOXIDE | 1 | JUL 11 | 2245 | 26 | (21-32) | mmol/L |
| => ANION GAP | 1 | JUL 11 | 2245 | 17.6 | (10-18) | |
| => GLUCOSE | 1 | JUL 11 | 2245 | 121 H | (74-106) | mg/dL |
| => CALCIUM | 1 | JUL 11 | 2245 | 8.0 L | (8.5-10.1) | mg/dL |
| => TOTAL BILIRUBIN | 1 | JUL 11 | 2245 | 0.3 | (0.1-1.2) | mg/dL |
| => ASPARTATE AMINO | 1 | JUL 11 | 2245 | 95 H | (15-37) | IU/L |
| => ALANINE AMINOTR | 1 | JUL 11 | 2245 | 110 H | (12-78) | IU/L |
| => TOTAL PROTEIN | 1 | JUL 11 | 2245 | 7.6 | (6.4-8.2) | g/dL |
| => ALBUMIN | 1 | JUL 11 | 2245 | 4.4 | (3.4-5.0) | g/dL |
| => GLOBULIN | 1 | JUL 11 | 2245 | 3.2 | (1.5-3.7) | G/DL |

NOTES:   (a)   NORMAL PATIENT (NOT ANTI-COAGULATED) MEAN: 10.8 SEC
         (b)   RECOMMENDED INR VALUES:
                  INDICATION-
                     LESS INTENSIVE      2.0 - 3.0
                     CONVENTIONAL        3.0 - 4.5

                  NORMAL PATIENT (NOT ANTI-COAGULATED) INR: 1.0
         (c)   NORMAL PATIENT (NOT ON HEPARIN) RANGE: 24.3 - 31.0

Patient: LEE,JOHN E                    Age/Sex: 46/M        AcctBC0002439008  UnitI000002027

PAGE 11/12 * RCVD AT 3/9/2016 3:44:44 PM [Central Standard Time] * SVR:NE1PWFAX101/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

```
RUN DATE: 07/17/15              Buchanan County Hlth Ctr LAB **LIVE**        PAGE  2
RUN TIME: 0004                ***Summary Discharge Report – Do not Destroy***

                                        LOCATION
```

| | | | | | | |
|---|---|---|---|---|---|---|
| Patient: LEE,JOHN E | | | BC0002439008 | (Continued) | | |

| Test | Day | Date | Time | Result | Reference | Units |
|---|---|---|---|---|---|---|
| => ALB/GLOB RATIO | 1 | JUL 11 | 2245 | 1.4 | | RATIO |
| => Alkaline Phosph | 1 | JUL 11 | 2245 | 76 | (46-116) | IU/L |
| => LACTIC ACID | 1 | JUL 11 | 2245 | 2.4  H | (0.4-2.0) | mmol/L |
| => BLOOD UREA NITR | 1 | JUL 11 | 2245 | 9 | (7-18) | mg/dL |
| => BUN/CREATININE | 1 | JUL 11 | 2245 | 7.5  L | (8-24) | RATIO |
| => CREATININE | 1 | JUL 11 | 2245 | 1.2 | (0.8-1.3) | mg/dL |
| => GLOMERULAR FILT | 1 | JUL 11 | 2245 | > 60(d) | (>60) | |
| => ETHANOL | 1 | JUL 11 | 2245 | 233.0  H | (0-3.0) | mg/dL |

NOTES:   (d)   The MDRD Study equation has been validated extensively in
               white and African-American populations with impared kidney
               function (GFR <60mL/min/1.73 m^2). This equation is only
               valid on patients between the ages 18 and 70 years.  Results
               on patients outside of this age range should be interpreted
               with caution. If the patient is African-American, multiply
               the GFR result by "1.212".

| | | | |
|---|---|---|---|
| Patient: LEE,JOHN E | Age/Sex: 46/M | AcctBC0002439008 | UnitI000002027 |

PAGE 1/17/2015 3:14:41 PM [Central Standard Time] * SVR:NE1PWFAX101/6 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):02-34

**BUCHANAN COUNTY HEALTH CENTER**
**1600 1ST STREET**
**INDEPENDENCE, IOWA 50644**
**PH: (319)332-0870**
**FAX: 319 332-0957**
**DIAGNOSTIC IMAGING**
0711-0011

Patient: LEE, JOHN E
DOB:
Phone Number:
Other Phone:

MRN: I000002027
ACCT NO: BC0002439008
Ordering Physician: MASON PA-C, JEFFREY A
Family Physician: JASPER, DUANE D  MD

Service Date: 07/11/15
Procedure: *PORTABLE CHEST (1VIEW)
Technologist: Becky Boggess, RTR (CT)

Pt Status: REG ER

HISTORY:  SYMPTOMS: ett placement

EXAM:  *PORTABLE CHEST (1VIEW)

COMPARISON:  None

An AP supine view of the chest was obtained at 2239 hours following ET tube placement.

The tip of the ET tube is approximately 5 cm above the carina.
Positioning and technique accentuate the cardiomediastinal silhouette.
No signs of CHF are evident. I do not see any focal infiltrates.

**IMPRESSION:**
1. The tip of the ET tube is approximately 5 cm above the carina.
2. No acute cardiopulmonary process is evident.

Dictated By: SCHNEIDER, PAUL 07/11/15 2300
Electronically Signed By: SCHNEIDER, PAUL  DO 07/11/15 2313

CC:

PAGE:1 of 1

06/17/2015  02:47   3192831838   LARRY WOODS LAW OFFI   PAGE 12/12

2/8/2016 3:17:40 PM PAGE 13/013   Fax Server.          LFG Omaha Fax



December 28, 2015

**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

THE LAW OFFICE OF
LARRY WOODS
24 NORTH FREDERICK AVE
OELWEIN IA 50662

RE:    Policy Holder:    Ashley Industrial Molding, Inc
         Policy Number:    000400001000-12077
                              000010132080-00000
         Claim Number:    1072315-1127380
         Claimant:    John Lee
         Your Client:    Vanessa Lee

Dear Mr. Woods:

We are writing to acknowledge receipt of your letter of appeal. We received your letter on 12/23/2015 regarding your client's claim for Basic and Voluntary Accidental Death benefits for John Lee.

You also included a hand drawn diagram of the accident site with the appeal letter.

As requested, we will provide your office until 02/08/2016 to supplement the appeal. If we do not receive any additional information by 02/08/2016, we will commence the appeal review with the information already contained in the file.

Your request for a file copy is currently being processed and will be mailed under separate cover once available.

Packet: 315850

©2015 Lincoln National Corporation

www.LincolnFinancial.com

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Should you have any questions, please do not hesitate to contact me at (800) 423-2765 ext. 7033.

Sincerely,

Ashley Fults
Appeals Consultant, Claims Support
Group Protection – Claims Shared Services
The Lincoln National Life Insurance Company

Lincoln/Lee 351



December 28, 2015

**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

ASHLEY INDUSTRIAL MOLDING, INC
KAREN MAXWELL
PO BOX 398
ASHLEY IN 46705

RE:   Policy Holder:   Ashley Industrial Molding, Inc
      Policy Number:   000400001000-12077
                       000010132080-00000
      Claim Number:    1072315-1127380
      Claimant:        John E Lee

Dear Ms. Maxwell:

We are writing to acknowledge receipt of a letter of appeal regarding your former employee referenced above. We received the letter on 12/23/2015 regarding Ms. Lee's claim for Basic and Voluntary Accidental Death benefits.

We have commenced our review of the file and should have a decision within 60 days. You will be notified in writing of our decision.

If you have any questions please do not hesitate to contact me at (800) 423-2765 ext. 7033.

Sincerely,

Ashley Fults
Appeals Consultant, Claims Support
Group Protection – Claims Shared Services
The Lincoln National Life Insurance Company

Packet: 315851

©2015 Lincoln National Corporation

www.LincolnFinancial.com

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.





Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

The Lincoln National Life
Insurance Company
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

March 14, 2014

Karen Maxwell
Ashley Industrial Moldings, Inc.
310 So. Wabash Street
Ashley, IN   46705

Re:     Policy No.  000010132080 (Life/AD&D)
                000010132081 (Long Term Disability)
                000400001000-12077 (Voluntary Life)
        Group I.D.  AIM3

Dear Karen Maxwell:

Enclosed you will find Amendments and revised policies.  As requested, we have amended the above referenced policy to reflect a Waiting Period of "90 days" with the Effective Date for the Employee's coverage to be "the day the Person becomes eligible for the coverage".   These amendments were effective January 1, 2014.

Revised certificates are located on The Lincoln National Life Insurance Company website, www.lincoln4benefits.com.  A supply of printed certificates can be requested from Client Services at the telephone number or email address below.

Please note, changes have been incorporated into your policies and certificates due to compliance updates.  This does not change the original intent of your policy.

If you have any questions on this change, please feel free to contact your broker or Customer Service Professional at (800) 423-2765, Option 2; or via email at ClientServices@LFG.com.  Thank you for giving The Lincoln National Life Insurance Company an opportunity to serve you.

Sincerely,

The Lincoln National Life Insurance Company

Enclosures

AMENDMENT NO.  3

TO BE ATTACHED TO AND MADE PART OF GROUP POLICY NO.:  000010132080

ISSUED TO:  Ashley Industrial Moldings, Inc.

It is agreed that the above policy be replaced with the attached Policy, which is revised and dated January 1, 2014.

The effective date of this amendment is January 1, 2014; but only with respect to losses incurred on or after that date.  Nothing contained in this amendment shall change any of the terms and conditions of this Policy; except as stated above.

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

_____
Officer of the Company

GL1100A AMEND.

# The Lincoln National Life Insurance Company

A Stock Company    Home Office Location:  Fort Wayne, Indiana
Group Insurance Service Office:  8801 Indian Hills Drive, Omaha, NE 68114-4066 (402) 361-7300

Group Policyholder:

Ashley Industrial Moldings, Inc.

In Consideration of the Group Policyholder's application for this Policy and payment of all premiums when due, The Lincoln National Life Insurance Company agrees to make the payments provided in this Policy to the persons entitled to them.

The first premium for this Policy is due on its effective date.  Subsequent premiums are due on February 1, 2011, and on the same day of each month after that.  Policy anniversaries will be each January 1st; unless shown otherwise on the Premium Rate Schedule inside.

The provisions and conditions set forth on the following pages are a part of this Policy, as fully as if recited over the signatures below.

The Lincoln National Life Insurance Company has executed this Policy at its Group Insurance Service Office in Omaha, Nebraska.  The issue date of this Policy is January 1, 2011.

SECRETARY                                    PRESIDENT

**GROUP INSURANCE POLICY**
No. 000010132080
PROVIDING
LIFE INSURANCE
ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

GL1101-TITLE PAGE                                                                 95
01/01/14

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 267 of 555    Lincoln/Lee 355

# TABLE OF CONTENTS

Schedule of Insurance…………………………………………………………………3

Definitions ………………………………………………………………………………4

General Provisions …………………………………………………………………5

Eligibility and Effective Dates for Personal Insurance……………………………6

Individual Terminations ……………………………………………………………7

Premiums and Premium Rates ……………………………………………………8

Grace Period…………………………………………………………………………9

Policy Termination …………………………………………………………………9

Beneficiary……………………………………………………………………………10

Assignments …………………………………………………………………………11

Facility of Payment…………………………………………………………………12

Death Benefit…………………………………………………………………………12

Settlement Options …………………………………………………………………12

Extension of Death Benefit …………………………………………………………13

Accelerated Death Benefit …………………………………………………………14

Conversion Privilege…………………………………………………………………16

Claims Procedures for Life or Accidental Death and Dismemberment Benefits …….17

Accidental Death and Dismemberment Insurance ………………………………20

Safe Driver Benefit…………………………………………………………………22

Notice…………………………………………………………………………………23

Prior Insurance Credit Provision …………………………………………………25

GL1101-1

# SCHEDULE OF INSURANCE

The amount of an Insured Person's insurance is determined from the following table.  The initial amount of coverage is the amount which applies to an Insured Person's Class on the date his or her coverage takes effect.  An Insured Person may become eligible for increases in the amount of insurance in accord with the table.  Any such increase will take effect on the latest of:

(1)  the first day of the Insurance Month which coincides with or follows the date on which the Insured Person becomes eligible for the increase; provided he or she is Actively at Work on that day;

(2)  the day the Insured Person resumes Active Work, if not Actively at Work on the day the increase would otherwise take effect; or

(3)  the day any required evidence of insurability is approved by the Company.

Any decrease will take effect on the day of the change; whether or not the Insured Person is Actively at Work.

The amount of an Insured Person's Life Insurance shall be reduced by the amount of any Life Insurance in effect as a result of exercising the rights under the Conversion Privilege section of this Policy.

## CLASSIFICATION

Class 1     All Full-Time Salaried Employees

Class 2     All Full-Time Hourly Employees

WAITING PERIOD:     90 days of continuous Active Work  (For date insurance begins, refer to "Effective Date" section)

GL1101-2

3

01/01/14

Case 6:18-cv-02063-CJW-MAR     Document 26-4     Filed 02/13/19     Page 269 of 555     Lincoln/Lee 357

**LIFE AND AD&D INSURANCE**

| | Amount of Personal<br>Life Insurance | AD&D Insurance<br>Principal Sum |
|---|---|---|
| Class 1 | One times Basic Annual Earnings, rounded to the next higher $1,000; subject to a minimum of $10,000 and a maximum of $200,000. | Two times Basic Annual Earnings, rounded to the next higher $1,000; subject to a minimum of $10,000 and a maximum of $200,000. |
| Class 2 | One times Basic Annual Earnings, rounded to the next higher $1,000; subject to a minimum of $10,000 and a maximum of $200,000. | Two times Basic Annual Earnings, rounded to the next higher $1,000; subject to a minimum of $10,000 and a maximum of $200,000. |

Personal Life and AD&D Insurance will be reduced as follows:
- At age 65, benefits will reduce by 33% of the original amount;
- At age 70, benefits will reduce an additional 22% of the original amount.

Benefits will terminate when the Insured Person retires.

If the Insured Person first enrolls for Personal Life and AD&D Insurance at age 65 or older, the above age reductions will apply to:
- Any Guarantee Issue Amount available without evidence of insurability; and
- The maximum amount of insurance for which he or she is eligible.

**(Effective July 1, 2011) Basic Annual Earnings** means the Insured Person's annual base salary or annualized hourly pay from the Group Policyholder before taxes on the Determination Date. The **"Determination Date"** is the last day worked just prior to the loss.

It does **not** include commissions, bonuses, overtime pay, or any other extra compensation. It does **not** include income from a source other than the Group Policyholder. It will not exceed the amount shown in the Group Policyholder's financial records or the amount for which premium has been paid; whichever is less.

Insured Persons are not required to make contributions for Personal Life Insurance and AD&D Insurance.

GL1101-2

3-2

01/01/14

# SCHEDULE OF INSURANCE (CONTINUED)

The following chart applies to the Extension of Death Benefit provision when benefits end upon attainment of the Social Security Normal Retirement Age:

| Year of Birth | Normal Retirement Age |
|---|---|
| 1937 and prior | 65 |
| 1938 | 65 and 2 months |
| 1939 | 65 and 4 months |
| 1940 | 65 and 6 months |
| 1941 | 65 and 8 months |
| 1942 | 65 and 10 months |
| 1943 - 54 | 66 |
| 1955 | 66 and 2 months |
| 1956 | 66 and 4 months |
| 1957 | 66 and 6 months |
| 1958 | 66 and 8 months |
| 1959 | 66 and 10 months |
| 1960 and later | 67 |

Note: Persons born on January 1 of any year should refer to the Normal Retirement Age for the previous year.

If any evidence of insurability is required, it will be provided at the Person's own expense.

GL1101-2

3-3

01/01/14

Case 6:18-cv-02063-CJW-MAR   Document 26-4   Filed 02/13/19   Page 271 of 555   Lincoln/Lee 359

# DEFINITIONS

ACTIVE WORK or ACTIVELY AT WORK means an employee's full-time performance of all customary duties of his or her occupation at:
(1) the GROUP POLICYHOLDER'S place of business; or
(2) any other business location where the employee is required to travel.

Unless disabled on the prior workday or on the day of absence, an employee will be considered Actively at Work on the following days:
(1) a Saturday, Sunday or holiday which is not a scheduled workday;
(2) a paid vacation day, or other scheduled or unscheduled non-workday; or
(3) an excused or emergency leave of absence (except a medical leave).

COMPANY means The Lincoln National Life Insurance Company, an Indiana corporation, whose Group Insurance Service Office address is 8801 Indian Hills Drive, Omaha, Nebraska 68114-4066.

DAY OR DATE means at 12:01 A.M., Standard Time, at the GROUP POLICYHOLDER'S place of business; when used with regard to eligibility dates and effective dates. It means 12:00 midnight, Standard Time, at the same place; when used with regard to termination dates.

FULL-TIME EMPLOYEE means an employee of the GROUP POLICYHOLDER:
(1) whose employment with the GROUP POLICYHOLDER is the employee's principal occupation;
(2) who is not a temporary or seasonal employee; and
(3) who is regularly scheduled to work at such occupation at least 32 hours each week.

GROUP POLICYHOLDER means the person, partnership, corporation, or trust as shown on the Title Page of this Policy.

INSURANCE MONTH means that period of time:
(1) beginning at 12:01 A.M. Standard Time, at the GROUP POLICYHOLDER'S place of business on the first day of any calendar month; and
(2) ending at 12:00 midnight on the last day of the same calendar month.

INSURED PERSON means a PERSON for whom the coverages provided by this Policy are in effect.

PERSON means a FULL-TIME EMPLOYEE of the GROUP POLICYHOLDER:
(1) who is a member of an employee class which is eligible for coverage under this Policy; and
(2) who has completed an enrollment form.

PERSONAL INSURANCE means the insurance provided by this Policy on Insured Persons.

PHYSICIAN means a licensed practitioner of the healing arts other than the Insured Person or a relative of the Insured Person.

POLICY means this Group Insurance Policy issued by the Company to the Group Policyholder.

GL1101-3 91 (REV)

4

01/01/14

Case 6:18-cv-02063-CJW-MAR   Document 26-4   Filed 02/13/19   Page 272 of 555   Lincoln/Lee 360

# GENERAL PROVISIONS

ENTIRE CONTRACT.  The entire contract between the parties consists of:
- (1)  this Policy and the Group Policyholder's application (a copy is attached); and
- (2)  the Insured Persons' enrollment cards, if any.

All statements made by the Group Policyholder and by Insured Persons are representations and not warranties.  No statement made by an Insured Person will be used to contest the coverage provided by this Policy; unless:
- (1)  it is contained in a written statement signed by that Insured Person; and
- (2)  a copy of the statement is furnished to the Insured Person or Beneficiary.

Only an Officer of the Company may change this Policy or extend the time for payment of any premium.  No change will be valid unless made in writing and signed by an Officer of the Company.  Any change so made will be binding on all persons referred to in this Policy.

INCONTESTABILITY.  Except for the non-payment of premiums, the Company may not contest the validity of this Policy as to any Insured Person after it has been in force for two years during his or her lifetime.  This clause will not affect the Company's right to contest claims made for disability, accidental death, or accidental dismemberment benefits.

NONPARTICIPATION.  This Policy will not be entitled to share in the surplus earnings of the Company.

BASIS OF RESERVE.  The reserve for this Policy will not be less than the reserve computed using:
- (1)  the 1970 Intercompany Group Life Disability Valuation Table; and
- (2)  interest at not less than three percent per annum.

INFORMATION TO BE FURNISHED.  The Group Policyholder may be required to furnish any information needed to administer this Policy.  Clerical error by the Group Policyholder will not:
- (1)  affect the amount of insurance which would otherwise be in effect; or
- (2)  continue insurance which otherwise would be terminated.

Once an error is discovered, an equitable adjustment in premium will be made.  If a premium adjustment involves the return of unearned premium, the amount of the return will be limited to the twelve month period which precedes the date the Company receives proof such an adjustment should be made.

The Company may inspect any of the Group Policyholder's records which relate to this Policy.

MISSTATEMENT OF AGE.  If an Insured Person's age has been misstated, premiums will be subject to an equitable adjustment.  If the amount of benefit depends upon age; then the benefit will be that which would have been payable, based upon the person's correct age.

CERTIFICATES.  The Group Policyholder will be furnished with individual Certificates for delivery to each Insured Person.  These certificates summarize the benefits provided by this Policy.  If there is a conflict between the Policy and the Certificate, the Policy will control.

CONFORMITY WITH STATE STATUTES.  If any provision of this Policy conflicts with any applicable law, the provision will be deemed to conform to the minimum requirements of the law.

WORKER'S COMPENSATION.  This Policy is not to be construed to provide benefits required by Worker's Compensation laws.

GL1101-4 95

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 273 of 555    Lincoln/Lee 361

# ELIGIBILITY AND EFFECTIVE DATES FOR PERSONAL INSURANCE

ELIGIBILITY.  A Person becomes eligible for the coverage provided by this Policy on the later of:
    (1)   the Policy's date of issue; or
    (2)   the date the Waiting Period is completed.

WAITING PERIOD.  (See Schedule of Insurance).

EFFECTIVE DATE.  Personal Insurance becomes effective on the latest of:
    (1)   the date the Person becomes eligible for the coverage;
    (2)   the date the Person resumes Active Work, if not Actively at Work on the day he or she becomes eligible;
    (3)   the date the Person makes written application for Personal Insurance; and signs:
        (a)   a payroll deduction order, if Insured Persons pay any part of the Policy premium; or
        (b)   an order to pay premiums from the Person's Section 125 Plan account, if Employer contributions are made through a Section 125 Plan; or
    (4)   the date the Company approves the Person's coverage, if evidence of insurability is required.

EVIDENCE OF INSURABILITY.  Evidence of insurability satisfactory to the Company must be submitted when:
    (1)   a Person makes written application for Personal Insurance more than 31 days after becoming eligible for the coverage; or
    (2)   a Person makes written application for Personal Insurance after he or she has requested:
        (a)   to cancel Personal Insurance;
        (b)   to stop payroll deductions for the coverage; or
        (c)   to stop premium payments from the Section 125 Plan account.

EXCEPTIONS.  If an Insured Person's coverage terminates due to an approved leave of absence or military leave, the Company will waive any Waiting Period or evidence of insurability requirement upon his or her return; provided:
    (1)   the Person returns within six months after the leave begins;
    (2)   the Person applies or is enrolled within 31 days after resuming Active Work; and
    (3)   the reinstated amount of insurance does not exceed the amount which terminated.

If an Insured Person's coverage terminates due to a lay-off, the Company will waive any Waiting Period or evidence of insurability requirement upon his or her return; provided:
    (1)   the Person returns within 12 months after the date the lay-off begins;
    (2)   the Person applies or is reenrolled within 31 days after resuming Active Work; and
    (3)   the reinstated amount of insurance does not exceed the amount which terminated.
Reinstatement will take effect on the date the Insured Person returns to Active Work.

If an Insured Person's coverage terminates because his or her employment ends, the Company will waive any Waiting Period or evidence of insurability requirement upon his or her return; provided:
    (1)   the Person is rehired within 12 months after employment terminated;
    (2)   the Person applies or is reenrolled within 31 days after resuming Active Work; and
    (3)   the reinstated amount of insurance does not exceed the amount which terminated.
Reinstatement will take effect on the date the Insured Person returns to Active Work.

Case 6:18-cv-02063-CJW-MAR   Document 26-4   Filed 02/13/19   Page 274 of 555   Lincoln/Lee 362

# INDIVIDUAL TERMINATIONS

An Insured Person's coverage will terminate on the earliest of:
(1)  the date this Policy terminates;
(2)  the last day of the Insurance Month in which the Insured Person requests termination;
(3)  the last day of the last Insurance Month for which premium payment is made on the Insured Person's behalf;
(4)  the date the Insured Person ceases to be in a class of employees which is eligible for coverage under this Policy;
(5)  with respect to any particular insurance benefit, the date the portion of the Policy providing that benefit terminates;
(6)  the date on which the Insured Person's employment with the Group Policyholder or Participating Employer terminates; or
(7)  the date the Insured Person enters the armed services of any state or country on active duty; except for duty of 30 days or less for training in the Reserves or National Guard. (If the Insured Person sends proof of military service, the Company will refund any unearned premium.)

Ceasing Active Work results in termination of insurance; but coverage may be continued as follows:
(1)  If the Insured Person is disabled due to illness or injury, then coverage may be continued until the earlier of:
    (a)  12 Insurance Months after the disability begins; or
    (b)  the date the Person is no longer disabled;
    provided premium payments are made on his or her behalf.

    If the Insured Person is totally disabled due to illness or injury, and active employment is a condition of insurance; then Life Insurance may be continued until the earlier of:
    (a)  the date the Insured Person is no longer totally disabled; or
    (b)  the date the Insured Person qualifies for any Extension of Death Benefit under this Policy;
    provided this Policy (or the Participating Employer's participation) remains in effect; and premium payments are made on the Insured Person's behalf. For the first 6 months of continued Life Insurance, the Insured Person will be required to pay the Group Policyholder or Participating Employer only that part of the premium he or she would have been required to pay as an Active Employee. "Total Disability" will be defined in the Extension of Death Benefit section of this Policy.
(2)  If the Insured Person ceases work due to a temporary lay off, an approved leave of absence, or a military leave; then coverage may be continued:
    (a)  for three Insurance Months after the lay off or leave begins;
    (b)  provided premium payments are made on his or her behalf.

GL1101-5 93 IN

(FMLA)
01/01/14

7

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 275 of 555    Lincoln/Lee 363

# PREMIUMS AND PREMIUM RATES

PAYMENT OF PREMIUMS. No coverage provided by this Policy will be in effect until the first premium for such coverage is paid. For coverage to remain in effect, each subsequent premium must be paid on or before its due date. The Group Policyholder is responsible for paying all premiums as they become due. Premiums are payable on or before their due dates at the Company's Group Insurance Service Office. The premium must be paid in U.S. dollars.

PREMIUM RATE CHANGE. The Company may change any premium rate on any of the following dates:
(1) the date this Policy's terms are changed;
(2) the date the Company's liability is changed due to a change in federal, state or local law;
(3) the date the Group Policyholder (or any covered division, subsidiary or affiliated company) relocates, dissolves or merges, or is added to or removed from this Policy;
(4) the date any coverage for one or more classes ceases to be provided under this Policy;
(5) the date the number of Insured Persons changes by 25% or more from the enrollment on the date this Policy took effect, or the most recent Rate Guarantee Date expired, if later; or
(6) on any premium due date on or after this Policy's first anniversary, or any later rate guarantee date agreed upon by the Company.

Unless the Company and the Group Policyholder agree otherwise, the Company will give at least 31 days' advance written notice of any increase in premium rates.

PREMIUM AMOUNT. The amount of premium due on each due date will be the sum of the products obtained by multiplying each rate shown in the Premium Rate Schedule by the amount of insurance to which the rate applies.

Premium adjustments will not be pro-rated daily. Instead, premium will be adjusted as follows.
(1) When an Insured Person's insurance or increase takes effect, premium will be charged from the monthly due date coinciding with or next following that change.
(2) When all or part of an Insured Person's insurance terminates, the applicable premium will cease on the monthly due date coinciding with or next following that termination.
(3) When premiums are paid other than monthly, increases or decreases will result in adjustment from the premium due date coinciding with or next following that change.

The above manner of charging premium is for accounting purposes only. It will not extend coverage beyond a date it would have otherwise terminated. Each premium payment will include any adjustments in past premiums, which are needed due to changes that have not yet been taken into account. If a premium adjustment involves a return of unearned premium, the refund will be limited to the prior 12-month period.

## PREMIUM RATE SCHEDULE

Monthly Group Life Rate                               $.12 per $1,000 of insurance

Monthly AD&D Rate                                     .03 per $1,000 of insurance

GL1101-6 04

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 276 of 555    Lincoln/Lee 364

# GRACE PERIOD

A grace period of 31 days from the due date will be allowed for the payment of each premium after the first. This Policy will remain in effect during the grace period; unless the Group Policyholder gives the Company advance written notice of termination. The Group Policyholder will remain liable for payment of a pro rata premium for the time this Policy remained in force during the grace period.

# POLICY TERMINATION

TERMINATION BY THE COMPANY. To terminate this Policy, the Company must give the Group Policyholder at least 31 days' advance written notice of its intent to do so. The Company may terminate this Policy coverage on the due date of any premium; if:
(1) the total number of Insured Persons is less than ten;
(2) all of the premium is paid by the Group Policyholder and less than 100% of those eligible for coverage are insured;
(3) part of the premium is paid by Insured Persons and less than 75% of those eligible for coverage are insured;
(4) the Group Policyholder, without good cause, fails to:
    (a) promptly furnish any information the Company reasonably requires; or
    (b) perform its duties pertaining to this Policy in good faith;
(5) the Company terminates all other policies where permitted by their terms, which provide life insurance or weekly disability income insurance in the same state in which this Policy was issued; or
(6) state law otherwise requires this Policy to be terminated.

TERMINATION BY GROUP POLICYHOLDER. The Group Policyholder may terminate this Policy at any time, by giving the Company advance written notice. Coverage will then terminate:
(1) on the date the Company receives the notice; or
(2) any later date the Group Policyholder and the Company have agreed upon.

The Group Policyholder remains responsible for the payment of premiums to the date of termination.

AUTOMATIC TERMINATION. If any premium remains unpaid at the end of the Grace Period; then this Policy will automatically terminate, without any action on the Company's part, on the last day of the Grace Period. The Group Policyholder remains responsible for the payment of premiums to the date of termination.

EFFECT ON INCURRED CLAIMS. Termination of this Policy will not affect benefits otherwise payable for a claim incurred while this Policy is in force.

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 277 of 555    Lincoln/Lee 365

# BENEFICIARY

PAYMENTS TO BENEFICIARY.  At an Insured Person's death, the amount of his or her Personal Life Insurance will be paid to the surviving Beneficiary.  If the Insured Person has not named a Beneficiary, or if no named Beneficiary survives the Insured Person; then payment will be made to that Insured Person's:
- (1)  surviving spouse; or, if none
- (2)  surviving child or children in equal shares; or, if none
- (3)  surviving parent or parents in equal shares; or, if none
- (4)  surviving brothers and sisters in equal shares; or, if none
- (5)  estate, or in accord with the Facility of Payment section of this Policy.

The amount payable to anyone shown above will be reduced by any amount paid in accord with the Facility of Payment section.

In determining who is to receive payment, the Company may rely upon an affidavit by a member of the class of relatives to receive payment.  The Company will make payment based upon the affidavit it has; unless it receives notice of a valid claim by some other person, at its Group Insurance Service Office, before paying the proceeds.  Such payment will release the Company from any further obligation for the Insured Person's life insurance benefit.

If an Insured Person's named Beneficiary dies:
- (1)  within 15 days of the Insured Person's death; and
- (2)  before the Company receives satisfactory proof of the Insured Person's death;

then payment will be made as if the Insured Person had survived that Beneficiary; unless other provisions have been made.

NAMING THE BENEFICIARY.  An Insured Person's Beneficiary will be as shown on his or her enrollment card, unless changed.  This Policy may replace a group policy providing similar coverages.  In that event, the Beneficiary which the Insured Person named under the prior policy will be the Beneficiary under this Policy, until changed.

CHANGING THE BENEFICIARY.  Only the Insured Person, or his or her assignee, may change the Beneficiary.  A new Beneficiary may be named by filing a written notice of the change with the Company at its Group Insurance Service Office.  The change will be effective as of the date it was signed; subject to any action the Company takes before receiving notice of the change.

When applying for a conversion policy under the Conversion Privilege Section, an Insured Person must name a Beneficiary.  The Beneficiary named for the conversion policy may be someone other than the person named under this Policy.  In that event, the application for the conversion policy will be treated as a written notice of change of Beneficiary.

GL1101-7.1A 96

Pref. Bene.

10

01/01/14

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 278 of 555    Lincoln/Lee 366

# ASSIGNMENTS

Personal Life Insurance and Accidental Death Insurance may be assigned. The assignments allowed under this Policy are absolute assignments and funeral assignments as described below.

No assignment will be binding on the Company unless and until:
    (1)   it is made on a form furnished by the Company;
    (2)   the original is completed and filed with the Company at its Group Insurance Service Office; and
    (3)   it is approved by the Company.

The Company and the Group Policyholder do not assume responsibility for the validity or effect of an assignment.

ABSOLUTE ASSIGNMENTS. An Insured Person may make an irrevocable assignment of his or her Personal Life Insurance and Accidental Death Insurance as a gift (with no consideration), providing he or she has the legal capacity and the mental capacity to do so. It may be made to a trust or to one or more of the Insured Person's relatives, their estates, or to a trustee of a trust under which one of the relatives is a beneficiary.

The term "relatives" includes, but is not limited to, an Insured Person's spouse, parents, grandparents, aunts, uncles, siblings, children, adopted children, stepchildren, and grandchildren.

In some states, community property is an established form of ownership that must be considered in making an assignment. If an Insured Person makes an absolute assignment to two or more assignees, such assignees will be joint owners with the right of survivorship between them. An Insured Person should consult with his or her own legal advisor before making an assignment.

Once the assignment has been recorded by the Company, the Insured Person can no longer change the beneficiary and cannot apply for conversion. Only the assignee can change the beneficiary designation if the previous designation is revocable. An assignment will have no effect on a prior irrevocable beneficiary designation. Only the assignee can apply for conversion but only when the Conversion Privilege provision would have been available to the Insured Person in the absence of the assignment under this Policy.

An absolute assignment cannot be used as a collateral assignment.

FUNERAL ASSIGNMENTS. Upon an Insured Person's death, the beneficiary may assign the Personal Life Insurance benefit and Accidental Death Insurance benefit to a funeral home for payment of burial expenses. After payment has been made for the burial expenses to the assigned funeral home, the remaining death benefit is then paid in accord with the Beneficiary and Settlement Options sections of this Policy.

GL1101-7.1C 01

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 279 of 555   Lincoln/Lee 367

# FACILITY OF PAYMENT

Policy benefits may become payable to an Insured Person's estate, to a minor, or to a person who the Company does not consider competent to give a valid release. In that event, the Company has the option to pay one or more of the following:
- (1) a person who has assumed the care and support of the Insured Person or Beneficiary;
- (2) a person who has incurred expense as a result of the Insured Person's last illness or death;
- (3) the personal representative of the Insured Person's estate; or
- (4) any person related by blood or marriage to the Insured Person.

No payment made under this section may exceed:
- (1) $2,000 to a nonrelative of the Insured Person; or
- (2) $5,000 to a relative of the Insured Person.

Any payment made in good faith under this section will fully discharge the Company to the extent of the payment. Any remaining amount of benefit will be paid as shown in the Beneficiary section.

# DEATH BENEFIT

AMOUNT PAYABLE ON DEATH. Upon receipt of satisfactory proof of an Insured Person's death, the Company will pay a death benefit equal to the amount of Personal Life Insurance in effect on the date of death. This amount is shown in the Schedule of Insurance. The benefit will be paid as shown in the Beneficiary, Facility of Payment, and Settlement Options sections.

# SETTLEMENT OPTIONS

INSTALLMENTS. All or part of the death benefit may be received in installments, by making written election to the Company.

ELECTION. While living, an Insured Person may direct the Company to pay the death benefit in installments. If no such direction is in effect at the time of the Insured Person's death, the Beneficiary may make such an election.

CONDITIONS. Any election, whether by an Insured Person or a Beneficiary, must comply with the Company's practices at the time it is made. The amount applied under a settlement option must be at least $2,000. It must be sufficient to provide a payment of at least $20 per month.

GL1101-8 96 IN

12                                                                01/01/14

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 280 of 555    Lincoln/Lee 368

# EXTENSION OF DEATH BENEFIT

BENEFIT.  Life insurance will be continued, **without payment of premiums**, for an Insured Person who:
  (1)    becomes Totally Disabled while insured under this policy and before reaching age 60;
  (2)    remains Totally Disabled for at least 6 months in a row; and
  (3)    submits satisfactory proof within the 7th through the 12th months of disability; or:
    (a)    as soon as reasonably possible after that; but
    (b)    not later than the 24th month of disability, unless he or she was legally incapacitated.

PREMIUM PAYMENT.  Premium payments must continue until:
  (1)    the day the Insured Person is approved for this Extension of Death Benefit; or
  (2)    the day this Policy terminates (whichever occurs first).
Upon receipt of satisfactory proof, the Company will refund up to 12 months' premium paid for the Insured Person's life insurance, from the 1st day of Total Disability.

DEFINITION.  For this benefit, Total Disability or Totally Disabled means an Insured Person:
  (1)    is unable, due to sickness or injury, to engage in any employment or occupation for which such Insured Person is or becomes qualified by reason of education, training, or experience; and
  (2)    is not engaging in any gainful employment or occupation.

AMOUNT CONTINUED.  The life insurance continued by this section:
  (1)    will be the amount of Personal Life Insurance and any Dependent Life Insurance in effect on the day the Insured Person's Total Disability begins; and
  (2)    will be subject to the reductions and terminations in effect under this Policy on that day.
If the Insured Person receives an Accelerated Death Benefit, the amount will be reduced in accord with that provision.  Any Accidental Death and Dismemberment Benefit will not be continued.

ADDITIONAL PROOF.  At any time during this continuation, the Company may require the Insured Person:
  (1)    to submit further proof of his or her continued Total Disability; and
  (2)    to be examined by a Physician of the Company's choice, as often as reasonably necessary.
After the first two years of Total Disability, the Company will not request proof or an exam more than once a year.  Proof will be at the Insured Person's expense; unless the Company requests an exam by a Physician of its choice.

When an Insured Person dies after submitting proof, further proof must be submitted to the Company showing that he or she remained continuously and Totally Disabled until death.  When an Insured Person dies within 12 months after Total Disability begins, but before submitting proof; then his or her death benefit will still be paid under the terms of this Policy.  But the Company must first receive satisfactory proof of his or her continuous Total Disability, from the last day of Active Work until the date of death.

TERMINATION.  Any life insurance extended under this section will terminate automatically on:
  (1)    the day the Insured Person ceases to be Totally Disabled;
  (2)    the day the Insured Person fails to take a required medical examination;
  (3)    the 60th day after the Company mails a request for additional proof, if it is not given;
  (4)    the effective date of the Insured Person's individual conversion policy, with respect to any amount of life insurance converted in accord with the Conversion Privilege section; or
  (5)    the day the Insured Person reaches Social Security Normal Retirement Age (SSNRA), as shown in the Schedule of Insurance (whichever occurs first).

RIGHTS AFTER TERMINATION.  If Total Disability ends, and the Insured Person **does not return** to a class eligible for Policy coverage; then he or she may exercise the Conversion Privilege.  If Total Disability ends, and the Insured Person **does return** to an eligible class; then his or her Policy coverage will resume when premium payments are resumed, and any conversion policy is surrendered as provided below.

CONVERSION POLICIES.  If the Insured Person has exercised the Conversion Privilege, and the benefits payable under this Policy and the conversion policy combined would exceed:
  (1)    the Insured Person's original amount of Policy coverage prior to the conversion; or
  (2)    any greater amount for which he or she later becomes insured under this Policy;
then benefits will be payable under the terms of this Policy.  But the conversion policy must first be surrendered to the Company; and no claim may be made under the conversion policy, except for refund of premium less any dividends and policy loans.

GL1101-9 96

13

Stand. Ext. - SSNRA
01/01/14

Lincoln/Lee 369

## ACCELERATED DEATH BENEFIT

BENEFIT. The Accelerated Death Benefit is an advance payment of part of the Insured Person's Personal Life Insurance. It may be paid to the Insured Person, in a lump sum, once during the Insured Person's lifetime.

To qualify, a Terminal Insured Person must:
 (1)   have satisfied the Active Work requirement under this Policy;
 (2)   have been insured under this Policy:
     (a)   on the date of an injury which results in a Terminal condition; or
     (b)   for 30 days before being diagnosed Terminal as a result of sickness; and
 (3)   have at least $2,000 of Personal Life Insurance under this Policy on the day before the Accelerated Death Benefit is paid.

Receiving the Accelerated Death Benefit will reduce the Remaining Life Insurance and the Death Benefit payable at death, as shown on the next page.

"Claimant," as used in this section, means the Terminal Insured Person for whom the Accelerated Death Benefit is requested.

"Terminal" means the Insured Person has a medical condition which is expected to result in death within 12 months, despite appropriate medical treatment.

APPLYING FOR THE BENEFIT. To withdraw the Accelerated Death Benefit, the Insured Person (or his or her legal representative) must send the Company:
 (1)   written election of the Accelerated Death Benefit, on forms supplied by the Company; and
 (2)   satisfactory proof that the Claimant is Terminal, including a Physician's written statement.

The Company reserves the right to decide whether such proof is satisfactory.

Before paying an Accelerated Death Benefit, the Company must also receive the written consent of any irrevocable beneficiary, assignee or bankruptcy court with an interest in the benefit. (See Limitations 3, 4, and 5.)

**NOTE: THIS IS NOT A LONG-TERM CARE POLICY. RECEIVING THIS ACCELERATED DEATH BENEFIT WILL REDUCE THE BENEFIT PAYABLE AT DEATH. ANY AMOUNT WITHDRAWN MAY BE TAXABLE INCOME, SO THE INSURED PERSON SHOULD CONSULT A TAX ADVISOR BEFORE APPLYING FOR THIS BENEFIT.**

AMOUNT OF THE BENEFIT. The Insured Person may elect to withdraw an Accelerated Death Benefit in any $1,000 increment; subject to:
 (1)   a minimum of $1,000 or 10% of the Claimant's amount of Life Insurance (whichever is greater); and
 (2)   a maximum of $250,000 or 75% of the Claimant's amount of Life Insurance (whichever is less).

To determine the Accelerated Death Benefit, the Company will use the lesser of A or B below:
 A.   the Claimant's amount of Life Insurance which is in force on the day before the Accelerated Death Benefit is paid; or
 B.   the Claimant's amount of Life Insurance which would be in force 12 months after that date; if the coverage is scheduled to reduce, due to age, within 12 months after the Accelerated Death Benefit is paid.

ADMINISTRATIVE CHARGE:  NONE

WITHDRAWAL FEE:  NONE

EFFECT ON AMOUNT OF LIFE INSURANCE.  "Remaining Life Insurance" means the amount of Life Insurance which remains in force on the Claimant's life after an Accelerated Death Benefit is paid.  The Remaining Life Insurance will equal:
- (1) the Claimant's amount of Life Insurance which was used to determine the Accelerated Death Benefit (A or B above); minus
- (2) any percentage by which the Claimant's coverage is scheduled to reduce, due to age; if the reduction occurs more than 12 months after the Accelerated Death Benefit is paid, and while he or she is still living; minus
- (3) the amount of the Accelerated Death Benefit withdrawn.

PREMIUM:  There is no additional charge for this benefit.  Continuation of the Remaining Life Insurance will be subject to timely payment of the premium for the reduced amount; unless the Insured Person qualifies for waiver of premium under this Policy's Extension of Death Benefit provision, if included.

CONDITIONS.  If the Claimant exercises the Conversion Privilege after an Accelerated Death Benefit is paid, the amount of the conversion policy will not exceed the amount of his or her Remaining Life Insurance. If the Claimant has Accidental Death and Dismemberment benefits under this Policy, the Principal Sum will not be affected by the payment of an Accelerated Death Benefit.

EFFECT ON DEATH BENEFIT.  When the Claimant dies after an Accelerated Death Benefit is paid, the amount of Remaining Life Insurance in force on the date of death will be paid as a Death Benefit.  The Insured Person's Death Benefit will be paid in accord with the Beneficiary section of this Policy.  If the Claimant dies after application for an Accelerated Death Benefit has been made, but before the Company has made payment; then the request will be void and no Accelerated Death Benefit will be paid.  The amount of Life Insurance in force on the date of death will be paid in accord with Policy provisions.

EFFECT ON TAXES AND GOVERNMENT BENEFITS.  Any Accelerated Death Benefit amount withdrawn may be taxable income to the Insured Person.  Receipt of the Accelerated Death Benefit may also affect the Claimant's eligibility for Medicaid, Supplemental Security Income and other government benefits. The Claimant should consult his or her own tax and legal advisor before applying for an Accelerated Death Benefit.  The Company is not responsible for any tax owed or government benefit denied, as a result of the Accelerated Death Benefit payment.

LIMITATIONS.  No Accelerated Death Benefit will be paid:
- (1) if any required premium is due and unpaid;
- (2) on any conversion policy purchased in accord with the Conversion Privilege;
- (3) without the written approval of the bankruptcy court, if the Insured Person has filed for bankruptcy;
- (4) without the written consent of the beneficiary, if the Insured Person has named an irrevocable beneficiary;
- (5) without the written consent of the assignee, if the Insured Person has assigned his or her rights under this Policy;
- (6) if any part of the Life Insurance must be paid to the Insured Person's child, spouse or former spouse; pursuant to a legal separation agreement, divorce decree, child support order or other court order;
- (7) if the Claimant is Terminal due to a suicide attempt, while sane or insane; or due to an intentionally self-inflicted injury;
- (8) if a government agency requires the Insured Person or the Claimant to use the Accelerated Death Benefit to apply for, receive or continue a government benefit or entitlement; or
- (9) if an Accelerated Death Benefit has been previously paid for the Claimant under this Policy.

GL1101-9.8 01 DAY

ADB-DEP.

01/01/14

15

<h1 style="text-align:center">CONVERSION PRIVILEGE - CONVERSION BENEFITS</h1>

GENERAL CONVERSION BENEFIT.  An individual life policy (known as a conversion policy) may be purchased from the Company without evidence of insurability, if all or part of anyone's life insurance under this Policy terminates for any reason except:

    (1)    termination or amendment of the Policy; or
    (2)    the Insured Person's request to terminate insurance or cancel payroll deductions.

To purchase a conversion policy, application and payment of the first premium must be made within 31 days after the life insurance is terminated.  Any policy issued under the General Conversion Benefit will:

    (1)    be for an amount not to exceed the amount of the life insurance which was terminated; less the amount of any group life insurance for which the person becomes eligible within 31 days after insurance terminates;
    (2)    be on any form (except term) then issued by the Company at the age and amount for which application is made;
    (3)    be issued at the Insured Person's age at nearest birthday;
    (4)    be issued without disability or other supplemental benefits; and
    (5)    require premiums based on the class of risk to which the person then belongs.

CONVERSION BENEFIT-POLICY TERMINATION OR AMENDMENT.  A conversion policy also may be purchased from the Company if:

    (1)    all or a part of anyone's insurance terminates due to amendment or termination of this Policy; and
    (2)    that person has been covered continuously under this Policy for at least five years.

Any conversion policy issued due to Policy termination or amendment will be subject to the same conditions as a policy issued under the General Conversion Benefit except its amount may not exceed the lesser of:

    (1)    $10,000; or
    (2)    the Amount of Life Insurance which terminates less the amount of any group life insurance for which the Insured Person becomes eligible within 31 days after insurance terminates.

<h2 style="text-align:center">PROVISIONS APPLICABLE TO ALL CONVERSION POLICIES</h2>

EFFECTIVE DATES.  The coverage provided by a conversion policy issued under this Section will be effective on the later of:

    (1)    its date of issue; or
    (2)    31 days after the date on which the person's life insurance terminated.

DEATH DURING CONVERSION PERIOD.  The Company will pay a death benefit under this Policy equal to the amount of the life insurance which could have been converted, if the person:

    (1)    was entitled to purchase a conversion policy; and
    (2)    dies within the 31 day conversion period.

This death benefit will be paid even if no one applied for the conversion policy.  If the first premium was paid for the conversion policy, the amount of the premium will be refunded and the conversion policy will be void.

NOTICE OF CONVERSION PRIVILEGES-INSURED PERSONS.  When an Insured Person's Personal Insurance terminates, written notice of the right to convert will be:

    (1)    given personally to the Insured Person; or
    (2)    mailed to the Insured Person at his last known address.

An additional period in which to convert will be granted if this written notice is not given to the Insured Person at least 15 days before the end of the 31 day conversion period. This extension of the conversion period will expire on the earlier of:

    (1)    15 days after the Insured Person is given the written notice; or
    (2)    60 days after the 31 day conversion period ends, even if the Insured Person is never given the notice.

No death benefit will be payable under this Policy after the 31 day conversion period has expired even though the right to convert may be extended.

GL1101-10 IN

DEP.-$10,000

01/01/14

Case 6:18-cv-02063-CJW-MAR   Document 26-4   Filed 02/13/19   Page 284 of 555   Lincoln/Lee 372

# CLAIMS PROCEDURES
## FOR LIFE OR ACCIDENTAL DEATH AND DISMEMBERMENT (AD&D) BENEFITS

**NOTE:  This Policy may include an Extension of Death Benefit, an Accelerated Death Benefit or a Living Benefit.  If so, please refer to that section for special claim procedures.**

## NOTICE AND PROOF OF CLAIM

**Notice of Claim**.  Written notice of an accidental death or dismemberment claim must be given within 20 days after the loss occurs;  or as soon as reasonably possible after that.\*  The notice must be sent to the Company's Group Insurance Service Office.  It should include:
    (1)   the Insured Person's name and address; and
    (2)   the number of this Policy.

**Claim Forms**.  When notice of claim is received, the Company will send claim forms for filing the required proof.  If the Company does not send the forms within 15 days; then the Insured Person or Beneficiary (the claimant) may send the Company written proof of claim in a letter.  It should state the nature, date and cause of the loss.

**Proof of Claim**.  The Company must be given written proof of claim within 90 days after the date of the loss; or as soon as reasonably possible after that.\*  Proof of claim must be provided at the claimant's own expense.  It must show the nature, date and cause of the loss.  In addition to the information requested on the claim form, documentation must include:
    (1)   A certified copy of the death certificate, for proof of death.
    (2)   A copy of any police report, for proof of accidental death or dismemberment.
    (3)   A signed authorization for the Company to obtain more information.
    (4)   Any other items the Company may reasonably require in support of the claim.

**\* Exception:**  Failure to give notice or furnish proof of claim within the required time period will not invalidate or reduce the claim; if it is shown that it was done:
    (1)   as soon as reasonably possible; and
    (2)   in no event more than one year after it was required.
These time limits will not apply while the claimant lacks legal capacity.

**EXAM OR AUTOPSY**.  At anytime while a claim is pending, the Company may have the Insured Person examined:
    (1)   by a Physician of the Company's choice;
    (2)   as often as reasonably required.
If the Insured Person fails to cooperate with an examiner or fails to take an exam, without good cause; then the Company may deny benefits, until the exam is completed.  In case of death, the Company may also have an autopsy done, where it is not forbidden by law.  Any such exam or autopsy will be at the Company's expense.

**TIME OF PAYMENT OF CLAIMS**.  Any benefits payable under this Policy will be paid immediately after the Company receives complete proof of claim and confirms liability.

In accord with Indiana law, any accidental death or dismemberment benefits will be paid as follows, when more favorable to the claimant.
    (1)  **Clean Claim**.  The Company must pay a clean claim for AD&D benefits within 45 days after receiving the first written proof of claim.  A claim is considered "clean" when:
        (a)   the first proof of claim is complete;
        (b)   no part of the claim is contested; and
        (c)   no other defect prevents prompt payment.
        A claim is also considered "clean" when the insurer fails to promptly request more information, or to resolve it, within 45 days after receiving the first written proof of claim.

GL1101-13A 02 IN

17

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 285 of 555    Lincoln/Lee 373

# CLAIMS PROCEDURES
## (Continued)

(2) **Defective Claim**. The Company must request more information concerning a defective claim for AD&D benefits within 45 days after receiving the first written proof of claim. It must pay such a claim within 45 days after receiving any additional proof it needs to confirm liability. A claim is considered "defective" if:
    (a) the first written proof of claim is not complete;
    (b) all or part of the claim is contested; or
    (c) some other defect prevents prompt payment.

**TO WHOM PAYABLE--Death**. Any benefits payable for the Insured Person's death will be paid in accord with the Beneficiary, Facility of Payment, and Settlement Options sections of this Policy. If this Policy includes Dependent Life Insurance; then any benefits payable for an insured Dependent's death will be paid to:
(1) the Insured Person, if he or she survives that Dependent; or
(2) the Insured Person's Beneficiary, or in accord with the Facility of Payment section; if the Insured Person does not survive that Dependent.

**Dismemberment.** If this Policy includes Accidental Death and Dismemberment Benefits; then any benefit, other than the Insured Person's death benefit, will be paid to the Insured Person.

**NOTICE OF CLAIM DECISION.** The Company will send the claimant a written notice of its claim decision. If the Company denies any part of the claim; then the written notice will explain:
(1) the reason for the denial, under the terms of this Policy and any internal guidelines;
(2) how the claimant may request a review of the Company's decision; and
(3) whether more information is needed to support the claim.

The Company will send this notice within 15 days after resolving the claim. If reasonably possible, the Company will send it within:
(1) 45 days after receiving the first written proof of claim for any accidental death or dismemberment, Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under this Policy; or
(2) 90 days after receiving the first written proof of a claim for any life insurance benefits available under this Policy.

**Delay Notice.** If the Company needs more than 15 days to process a claim, in a special case; then an extension will be permitted. If needed, the Company will send the claimant a written delay notice:
(1) by the 15th day after receiving the first proof of claim; and
(2) every 30 days after that, until the claim is resolved.
The notice will explain the special circumstances which require the delay, and when a decision can be expected.

In any event, the Company must send written notice of its decision within:
(1) 180 days after receiving the first proof of a death or dismemberment claim; or
(2) 105 days after receiving the first proof of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under this Policy.
If the Company fails to do so; then there is a right to an immediate review, as if the claim was denied.

**Exception:** If the Company needs more information from the claimant to process a claim; then it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for claim processing.

**REVIEW PROCEDURE.** The claimant may request a claim review, within:
(1) 60 days after receiving a denial notice of a death or dismemberment claim; or
(2) 180 days after receiving a denial notice of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under this Policy.
To request a review, the claimant must send the Company a written request, and any written comments or other items to support the claim. The claimant may review certain non-privileged information relating to the request for review.

GL1101-13A 02 IN

L/ADD

01/01/14

**Notice of Decision.** The Company will review the claim and send the claimant a written notice of its decision. The notice will explain the reasons for the Company's decision, under the terms of this Policy and any internal guidelines. If the Company upholds the denial of all or part of the claim; then the notice will also describe:

    (1)    any further appeal procedures available under this Policy;
    (2)    the right to access relevant claim information; and
    (3)    the right to request a state insurance department review, or to bring legal action.

For a death or dismemberment claim, the notice will be sent within 60 days after the Company receives the request for review; or within 120 days, if a special case requires more time. For a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under this Policy, the notice will be sent within 45 days after the Company receives the request for review; or within 90 days, if a special case requires more time.

**Delay Notice.** If the Company needs more time to process an appeal, in a special case; then it will send the Insured Person a written delay notice, by the 30th day after receiving the request for review. The notice will explain:

    (1)    the special circumstances which require the delay;
    (2)    whether more information is needed to review the claim; and
    (3)    when a decision can be expected.

**Exception:** If the Company needs more information from the claimant to process an appeal; then it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for appeal processing.

**Claims Subject to ERISA** (Employee Retirement Income Security Act of 1974). Before bringing a civil legal action under the federal labor law known as ERISA, an employee benefit plan participant or beneficiary must exhaust available administrative remedies. Under this Policy, the claimant must first seek two administrative reviews of the adverse claim decision, in accord with this section. If an ERISA claimant brings legal action under Section 502(a) of ERISA after the required reviews; then the Company will waive any right to assert that he or she failed to exhaust administrative remedies.

**RIGHT OF RECOVERY**. If benefits have been overpaid on any claim; then full reimbursement to the Company is required within 60 days. If reimbursement is not made; then the Company has the right to:

    (1)    reduce future benefits until full reimbursement is made; and
    (2)    recover such overpayments from the Insured Person, or from his or her Beneficiary or estate.

Such reimbursement is required whether the overpayment is due to fraud, the Company's error in processing a claim, or any other reason.

**LEGAL ACTIONS**. No legal action to recover any benefits may be brought until 60 days after the required written proof of claim has been given. No such legal action may be brought more than three years after the date written proof of claim is required.

**COMPANY'S DISCRETIONARY AUTHORITY**. Except for the functions that this Policy clearly reserves to the Group Policyholder or Employer, the Company has the authority to:

    (1)    manage this Policy and administer claims under it; and
    (2)    interpret the provisions and resolve questions arising under this Policy.

The Company's authority includes (but is not limited to) the right to:

    (1)    establish and enforce procedures for administering this Policy and claims under it;
    (2)    determine Employees' eligibility for insurance and entitlement to benefits;
    (3)    determine what information the Company reasonably requires to make such decisions; and
    (4)    resolve all matters when a claim review is requested.

Any decision the Company makes, in the exercise of its authority, shall be conclusive and binding; subject to the Insured Person's or Beneficiary's rights to:

    (1)    request a state insurance department review; or
    (2)    bring legal action.

GL1101-13A 02 IN                                   L/ADD

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 287 of 555    Lincoln/Lee 375

# ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

**DEATH OR DISMEMBERMENT BENEFIT FOR AN INSURED PERSON**.  The Company will pay the benefit listed below, if:
  (1)    an Insured Person sustains an accidental bodily injury while insured under this provision; and
  (2)    that injury directly causes one of the following losses within 365 days after the date of the accident.
The loss must result directly from the injury and from no other causes.

| LOSS | BENEFIT FOR COMMON CARRIER ACCIDENT | BENEFIT FOR OTHER COVERED ACCIDENT |
|---|---|---|
| Loss of Life | 2 Times Principal Sum | Principal Sum |
| Loss of One Member (Hand, Foot or Eye) | Principal Sum | 1/2 Principal Sum |
| Loss of Two or More Members | 2 Times Principal Sum | Principal Sum |

The Principal Sum for the Insured Person's class is shown in the Schedule of Insurance.

**MAXIMUM PER PERSON**.  If an Insured Person sustains more than one loss resulting from the same accident, the benefit:
  (1)    will be the one largest amount listed;
  (2)    will not exceed two times the Principal Sum for all of that person's combined losses resulting from a Common Carrier Accident; and
  (3)    will not exceed the Principal Sum for all of that person's combined losses resulting from any other covered accident.

**TO WHOM PAYABLE**.  Benefits for the Insured Person's loss of life will be paid in accord with the Beneficiary section.  All other benefits will be paid to the Insured Person.

**LIMITATIONS**.  Benefits are not payable for any loss to which a contributing cause is:
  (1)    intentional self-inflicted injury or self-destruction;
  (2)    disease, bodily or mental infirmity, or medical or surgical treatment of these;
  (3)    participation in a riot;
  (4)    duty as a member of any military, naval or air force;
  (5)    war or any act of war, declared or undeclared;
  (6)    participation in the commission of a felony;
  (7)    voluntary use of drugs; except when prescribed by a Physician;
  (8)    travel or flight in any aircraft, including balloons and gliders; except as a fare paying passenger on a regularly scheduled flight; or
  (9)    driving a vehicle while intoxicated.

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 288 of 555    Lincoln/Lee 376

**DEFINITIONS**.

"Beneficiary" means the person(s) named on the Insured Person's enrollment form.  The Insured Person may change the Beneficiary by filing a written notice of the change with the Company at its Group Insurance Service Office.

"Common Carrier Accident" means a covered accidental bodily injury, which is sustained while riding as a fare paying passenger (not a pilot, operator or crew member) in or on, boarding or getting off from a Common Carrier.

"Common Carrier" means any land, air or water conveyance operated under a license to transport passengers for hire.

"Intoxicated" shall be defined by the jurisdiction where the accident occurs.  The exclusion will apply whether or not the driver is convicted.

"Loss of a Member" includes the following:
    (1)   "Loss of Hand or Foot," means complete severance through or above the wrist or ankle joint.
    (2)   "Loss of an Eye," means total and irrevocable loss of sight in that eye.

GL1101-14.3A 01 IN

COMMON CARRIER

01/01/14

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 289 of 555    Lincoln/Lee 377

# SAFE DRIVER BENEFIT

BENEFIT.  If an Insured Person dies as a direct result of a covered auto accident, for which Accidental Death and Dismemberment Benefits are payable; then:
    (1)   an additional Seat Belt Benefit will be payable, if the Insured Person was wearing a properly fastened seat belt at the time of the accident; and
    (2)   an additional Air Bag Benefit will be payable, if the auto was equipped with air bag(s).

The Seat Belt Benefit equals $10,000 or 10% of the Principal Sum, whichever is less; and the Air Bag Benefit equals $10,000 or 10% of the Principal Sum, whichever is less.  The Seat Belt Benefit and the Air Bag Benefit will not be less than $1,000 per Insured Person.  The Principal Sum is the amount payable because of the Insured Person's accidental death.

A copy of the police report must be submitted with the claim.  The position of the seat belt or presence of an air bag must be certified by:
    (1)   the official accident report; or
    (2)   the coroner, traffic officer or other investigating officer.
Upon receipt of satisfactory written proof, the additional benefit will be paid in accord with the Beneficiary section.

DEFINITIONS.  As used in this provision:

"Auto" means a 4-wheel passenger car, station wagon, jeep, pick-up truck or van-type car.  It must be licensed for use on public highways.  It includes a car owned or leased by the Group Policyholder.

"Intoxicated," "Impaired," or "Under the Influence of Drugs" shall be defined as by the jurisdiction where the accident occurs.

"Seat Belt" means a properly installed:
    (1)   seat belt or lap and shoulder restraint; or
    (2)   other restraint approved by the National Highway Traffic Safety Administration.

LIMITATIONS.  Safe Driver Benefits will not be paid if:
    (1)   the Accidental Death and Dismemberment Benefit is not paid under this Policy for the Insured Person's death; or
    (2)   at the time of the accident, the Insured Person or any other person who was driving the auto in which the Insured Person was traveling:
        (a)   was driving without a valid drivers' license;
        (b)   was driving in excess of the legal speed limit; or
        (c)   was driving while intoxicated, impaired, or under the influence of drugs (except for drugs taken as prescribed by a Physician for the driver's use).
    The above limitations will apply, whether or not the driver is convicted.

GL1101-14.15A

<span style="float:right">Seat Belt & Air Bag<br>01/01/14</span>

22

Lincoln/Lee 378

# NOTICE TO POLICYHOLDERS REGARDING
# FILING COMPLAINTS WITH THE DEPARTMENT OF INSURANCE

**Questions regarding your policy or coverage should be directed to:**

**The Lincoln National Life Insurance Company**
**800-423-2765**

We want you to know that you may contact the Indiana Department of Insurance if you have a complaint or seek assistance from the governmental agency that regulates insurance. To contact the Department of Insurance, write or call:

State of Indiana Department of Insurance
Consumer Services Division
311 West Washington Street, Suite 300
Indianapolis, Indiana 46204

Consumer Hotline: (800) 622-4461; (317) 232-2395

Complaints can be filed electronically at www.in.gov/idoi.

IN NOTICE 05 - P/C

23                                                                01/01/14

Lincoln/Lee 379

# SUMMARY OF INDIANA LIFE AND HEALTH INSURANCE
## GUARANTY ASSOCIATION

The Indiana Life and Health Insurance Guaranty Association provides coverage of claims under some types of policies if the insurer becomes impaired or insolvent. COVERAGE MAY NOT BE AVAILABLE UNDER YOUR POLICY. Even if coverage is provided, there are significant limits and exclusions. Coverage is always conditioned on residence in this state. Other conditions may also preclude coverage.

The Indiana Life and Health Insurance Guaranty Association will respond to any questions you may have which are not answered by this document. Your insurer and agent are prohibited by law from using the existence of the association or its coverage to sell you an insurance policy.

You should not rely of availability of coverage under the Indiana Life and Health Insurance Guaranty Association when selecting an insurer.

You may contact the Indiana Life and Health Insurance Guaranty Association as follows:

Indiana Life and Health Insurance Guaranty Association
251 E. Ohio Street, Suite 1070
Indianapolis, IN 46204
(317) 636-8204
www.inlifega.org

You may contact the Indiana Department of Insurance as follows:

Indiana Department of Insurance
311 W. Washington Street
Indianapolis, IN 46204
(317) 232-2385
www.in.gov/idoi

GAN-GRP-IN NOTICE-P/C 07

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 292 of 555    Lincoln/Lee 380

AMENDMENT TO BE ATTACHED TO AND MADE PART OF GROUP POLICY NO.: 000010132080

ISSUED TO:  Ashley Industrial Moldings, Inc.

The Policy is amended by the addition of the following provisions.

PRIOR INSURANCE CREDIT UPON TRANSFER OF
LIFE INSURANCE CARRIERS

This provision prevents loss of life insurance coverage for an Insured Person, which could otherwise occur solely because of a transfer of insurance carriers.  This Policy will provide the following Prior Insurance Credit, when it replaces a prior plan.

"Prior Plan" means a prior carrier's group life insurance policy, which this Policy replaced within 1 day of the prior plan's termination date.

FAILURE TO SATISFY ACTIVE WORK RULE.  Subject to payment of premiums, this Policy will provide life coverage for a Person who:
- (1)    was insured under the prior plan on its termination date;
- (2)    was otherwise eligible under this Policy; but was not Actively-At-Work due to Injury or Sickness on its Effective Date;
- (3)    is not entitled to any extension of life insurance under the prior plan; and
- (4)    is not Totally Disabled (as defined in the Extension of Death Benefit section of this Policy) on the date this Policy takes effect.

AMOUNT OF LIFE INSURANCE.  Until the Person satisfies this Policy's Active Work rule, the amount of his or her group life insurance under this Policy will not exceed the amount for which the Person was insured under the prior plan on its termination date.

This Amendment takes effect on the effective date of coverage under this Policy.  In all other respects, this Policy remains the same.

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

_____
Officer of the Company

GL1101-AMEND. PC1

Prior Ins. Cred. - Life
01/01/14

Lincoln/Lee 381

# The Lincoln National Life Insurance Company

A Stock Company    Home Office Location:  Fort Wayne, Indiana
Group Insurance Service Office:  8801 Indian Hills Drive, Omaha, NE 68114-4066 (402) 361-7300

CERTIFIES THAT Group Policy No.        GL 000010132080        has been issued to
Ashley Industrial Moldings, Inc.
(The Group Policyholder)

The Issue Date of the Policy is January 1, 2011.

The insurance is effective only if the Employee is eligible for insurance and becomes and remains insured as provided in the Group Policy.

Certificate of Insurance for Class 1

{INSURED}

**{Schedule of Insurance}**

**{Coverage}**                                                 **{Insurance Amount}**

{BENEFIT_1}
{BENEFIT_2}
{BENEFIT_3}
{BENEFIT_4}
{BENEFIT_5}
{BENEFIT_6}
{BENEFIT_7}
{BENEFIT_8}
{BENEFIT_9}
{BENEFIT_10}

You are entitled to the benefits described in this Certificate if you are eligible for insurance under the provisions of the Policy.  This Certificate replaces any other certificates for the benefits described inside.  As a Certificate of Insurance, it is not a contract of insurance; it only summarizes the provisions of the Policy and is subject to the Policy's terms.

President

**CERTIFICATE OF GROUP LIFE INSURANCE**

GL1102 FACE PAGE

{LFGLOGO}          {USER}          {CERT_ID}          01/01/14

Lincoln/Lee 382

Lincoln/Lee 383

## SCHEDULE OF INSURANCE

CLASS 1

All Full-Time Salaried Employees

WAITING PERIOD:    90 days of continuous Active Work  (For date insurance begins, refer to "Effective Dates of Coverages" section)

MINIMUM HOURS:    32 hours per week

### LIFE AND AD&D INSURANCE

| Amount of Personal Life Insurance | AD&D Insurance Principal Sum |
|---|---|
| One times Basic Annual Earnings, rounded to the next higher $1,000; subject to a minimum of $10,000 and a maximum of $200,000 | Two times Basic Annual Earnings, rounded to the next higher $1,000; subject to a minimum of $10,000 and a maximum of $200,000 |

Personal Life and AD&D Insurance will be reduced as follows:
- At age 65, benefits will reduce by 33% of the original amount;
- At age 70, benefits will reduce an additional 22% of the original amount.

Benefits will terminate when you retire.

If you first enroll for Personal Life and AD&D Insurance at age 65 or older, the above age reductions will apply to:
- Any Guarantee Issue Amount available without evidence of insurability; and
- The maximum amount of insurance for which you are eligible.

**(Effective July 1, 2011) Basic Annual Earnings** means your annual base salary or annualized hourly pay from the Employer before taxes on the Determination Date.  The **"Determination Date"** is the last day worked just prior to the loss.

It does **not** include commissions, bonuses, overtime pay, or any other extra compensation.  It does **not** include income from a source other than the Employer.  It will not exceed the amount shown in the Employer's financial records or the amount for which premium has been paid; whichever is less.

GL1102-SB

01/01/14

**SCHEDULE OF INSURANCE (CONTINUED)**

The following chart applies to the Extension of Death Benefit provision when benefits end upon attainment of the Social Security Normal Retirement Age:

| Year of Birth | Normal Retirement Age |
|---|---|
| 1937 and prior | 65 |
| 1938 | 65 and 2 months |
| 1939 | 65 and 4 months |
| 1940 | 65 and 6 months |
| 1941 | 65 and 8 months |
| 1942 | 65 and 10 months |
| 1943 - 54 | 66 |
| 1955 | 66 and 2 months |
| 1956 | 66 and 4 months |
| 1957 | 66 and 6 months |
| 1958 | 66 and 8 months |
| 1959 | 66 and 10 months |
| 1960 and later | 67 |

Note: Persons born on January 1 of any year should refer to the Normal Retirement Age for the previous year.

If any evidence of insurability is required, it will be provided at your own expense.

GL1102-SB

01/01/14

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 297 of 555    Lincoln/Lee 385

# TABLE OF CONTENTS

Amount of Insurance…………………………………………………………………3

Definitions ……………………………………………………………………………3

Eligibility …………………………………………………………………………4

Effective Dates of Coverages…………………………………………………………4

Termination of Coverage………………………………………………………………4

Death Benefit…………………………………………………………………………5

Beneficiary……………………………………………………………………………5

Assignments …………………………………………………………………………6

Extension of Death Benefit ………………………………………………………7

Accelerated Death Benefit ………………………………………………………8

Conversion Privilege……………………………………………………………10

Accidental Death and Dismemberment Insurance ………………………………11

Safe Driver Benefit………………………………………………………………13

Claims Procedures for Life or Accidental Death and Dismemberment Benefits …….14

Notice…………………………………………………………………………17

Prior Insurance Credit Provision …………………………………………………19

GL1102-TOC

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 298 of 555    Lincoln/Lee 386

# AMOUNT OF INSURANCE

The amount of your insurance is determined by the Schedule of Insurance in the Policy. The initial amount of coverage is the amount which applies to your class on the day your coverage takes effect. You may become eligible for increases in the amount of insurance in accord with the Schedule of Insurance. Any such increase will take effect on the latest of:

(1) the first of the Insurance Month which coincides with or follows the date on which you become eligible for the increase; provided you are Actively at Work on that day;

(2) the day you resume Active Work, if you are not Actively at Work on the day the increase would otherwise take effect; or

(3) the day any required evidence of insurability is approved by the Company.

Any decrease will take effect on the day of the change; whether or not you are Actively at Work.

# DEFINITIONS

ACTIVE WORK or ACTIVELY AT WORK means an employee's full-time performance of all customary duties of his or her occupation at:

(1) the EMPLOYER'S place of business; or

(2) any other business location where the employee is required to travel.

Unless disabled on the prior workday or on the day of absence, an employee will be considered Actively at Work on the following days:

(1) a Saturday, Sunday or holiday which is not a scheduled workday;

(2) a paid vacation day, or other scheduled or unscheduled non-workday; or

(3) an excused or emergency leave of absence (except a medical leave).

COMPANY means The Lincoln National Life Insurance Company, an Indiana corporation; whose Group Insurance Service Office address is 8801 Indian Hills Drive, Omaha, Nebraska 68114-4066.

DAY or DATE means at 12:01 A.M., Standard Time, at the Group Policyholder's place of business; when used with regard to eligibility dates and effective dates. It means 12:00 midnight, Standard Time, at the same place; when used with regard to termination dates.

EMPLOYER means the Group Policyholder or the Participating Employer named on the Face Page.

FULL-TIME EMPLOYEE means an employee of the EMPLOYER:

(1) whose employment with the EMPLOYER is the employee's principal occupation;

(2) who is not a temporary or seasonal employee; and

(3) who is regularly scheduled to work at such occupation at least the number of hours as shown in the Schedule of Insurance.

INSURANCE MONTH means:

(1) that period of time beginning on the Issue Date of the Policy and extending for one month; and

(2) each subsequent month beginning on the same day after that.

PERSONAL INSURANCE means the insurance provided by the Policy on Insured Persons.

PHYSICIAN means a licensed practitioner of the healing arts other than the Insured Person or a relative of the Insured Person.

POLICY means the Group Insurance Policy issued by the Company to the Group Policyholder. A copy of the Policy may be examined upon request at the Group Insurance Service Office of the Group Policyholder.

GL1102-1 91

3

(REV)
01/01/14

Lincoln/Lee 387

# ELIGIBILITY

If you are a Full-Time Employee and a member of an employee class shown in the Schedule of Insurance; then you will become eligible for the coverage provided by the Policy on the later of:
- (1) the Policy's date of issue; or
- (2) the day you complete the Waiting Period.

WAITING PERIOD. (See Schedule of Insurance).

## EFFECTIVE DATES OF COVERAGES

Your insurance is effective on the latest of:
- (1) the day you become eligible for the coverage;
- (2) the day you resume Active Work, if you are not Actively at Work on the day you become eligible;
- (3) the day you make written application for coverage; and sign:
  - (a) a payroll deduction order, if you pay any part of the premium; or
  - (b) an order to pay premiums from your Section 125 Plan account, if Employer contributions are paid through a Section 125 Plan; or
- (4) the day the Company approves your coverage, if evidence of insurability is required.

Evidence of insurability is required if:
- (1) you apply for coverage more than 31 days after you become eligible; or
- (2) you make written application to re-enroll for coverage after you have requested:
  - (a) to cancel your coverage;
  - (b) to stop payroll deductions for the coverage; or
  - (c) to stop premium payments from your Section 125 Plan account.

EXCEPTION. If your coverage terminates due to an approved leave of absence or a military leave, any Waiting Period or evidence of insurability requirement will be waived upon your return; provided:
- (1) you return within six months after the leave begins;
- (2) you apply or are enrolled within 31 days after resuming Active Work; and
- (3) the reinstated amount of insurance does not exceed the amount which terminated.

## TERMINATION OF COVERAGE

Your coverage terminates on the earliest of:
- (1) the day the Policy terminates;
- (2) the last day of the Insurance Month in which you request termination;
- (3) the last day of the period for which the premium for your insurance has been paid;
- (4) the day you cease to be a member of an employee class shown in the Schedule of Insurance;
- (5) with respect to any particular insurance benefit, the day the part of the Policy providing that benefit terminates;
- (6) the day your employment with the Employer terminates; or
- (7) the day you enter the armed services of any state or country on active duty; except for duty of 30 days or less for training in the Reserves or National Guard. (If you send proof of military service, the Company will refund any unearned premium.)

Ceasing Active Work terminates your eligibility. However, it may be possible to continue all or part of your insurance during a temporary layoff, leave of absence or military leave; or while you are unable to work due to sickness or injury. The conditions concerning such a continuance may be found in the Policy. See your Employer for this information.

GL1102-2 93 (FMLA)

4

01/01/14

Case 6:18-cv-02063-CJW-MAR   Document 26-4   Filed 02/13/19   Page 300 of 555   Lincoln/Lee 388

## DEATH BENEFIT

Upon receipt of satisfactory proof of your death, the Company will pay a death benefit equal to the amount of Personal Life Insurance in effect on the date of your death. The benefit will be paid in accord with the Beneficiary section. Arrangements may be made to have this death benefit paid in installments.

## BENEFICIARY

Your Beneficiary is the person or persons named on your enrollment card. The Beneficiary may be changed in accord with the terms of the Policy. If you have not named a Beneficiary, or if no named Beneficiary is living when you die; then the death benefit will be paid to your:

(1) surviving spouse; or, if none
(2) surviving child or children in equal shares; or, if none
(3) surviving parent or parents in equal shares; or, if none
(4) surviving brothers and sisters in equal shares; or, if none
(5) estate, or in accord with the Facility of Payment section of the Policy.

# ASSIGNMENTS

Personal Life Insurance and Accidental Death Insurance may be assigned. The assignments allowed under the Policy are absolute assignments and funeral assignments as described below.

No assignment will be binding on the Company unless and until:
   (1)   it is made on a form furnished by the Company;
   (2)   the original is completed and filed with the Company at its Group Insurance Service Office; and
   (3)   it is approved by the Company.
The Company and the Employer do not assume responsibility for the validity or effect of an assignment.

ABSOLUTE ASSIGNMENTS. You may make an irrevocable assignment of your Personal Life Insurance and Accidental Death Insurance as a gift (with no consideration), providing you have the legal capacity and the mental capacity to do so. It may be made to a trust or to one or more of your relatives, their estates, or to a trustee of a trust under which one of the relatives is a beneficiary.

The term "relatives" includes, but is not limited to, your spouse, parents, grandparents, aunts, uncles, siblings, children, adopted children, stepchildren, and grandchildren.

In some states, community property is an established form of ownership that must be considered in making an assignment. If you make an absolute assignment to two or more assignees, such assignees will be joint owners with the right of survivorship between them. You should consult with your own legal advisor before making an assignment.

Once the assignment has been recorded by the Company, you can no longer change the beneficiary and cannot apply for conversion. Only the assignee can change the beneficiary designation if the previous designation is revocable. An assignment will have no effect on a prior irrevocable beneficiary designation. Only the assignee can apply for conversion but only when the Conversion Privilege provision would have been available to you in the absence of the assignment under the Policy.

An absolute assignment cannot be used as a collateral assignment.

FUNERAL ASSIGNMENTS. Upon your death, the beneficiary may assign the Personal Life Insurance benefit and Accidental Death Insurance benefit to a funeral home for payment of burial expenses. After payment has been made for the burial expenses to the assigned funeral home, the remaining death benefit is then paid in accord with the Beneficiary and Settlement Options sections of the Policy.

GL1102-3.0C 01

01/01/14

Case 6:18-cv-02063-CJW-MAR   Document 26-4   Filed 02/13/19   Page 302 of 555   Lincoln/Lee 390

# EXTENSION OF DEATH BENEFIT IF YOU BECOME TOTALLY DISABLED

Your life insurance will be continued, **without payment of premiums**, if:
(1)    you become Totally Disabled while insured and before reaching age 60;
(2)    you remain Totally Disabled for at least 6 months in a row; and
(3)    you submit satisfactory proof within the 7th through 12th months of disability; or:
    (a)    as soon as reasonably possible after that; but
    (b)    not later than the 24th month of disability, unless you were legally incapacitated.

PREMIUM PAYMENT.  Premium payments must continue until you are approved for this benefit, or the Policy terminates, if earlier.  Upon receipt of satisfactory proof, the Company will refund up to 12 months' premium paid for your life insurance, from your 1st day of Total Disability.

DEFINITION.  For this benefit, Total Disability or Totally Disabled means you:
(1)    are unable, due to sickness or injury, to engage in any employment or occupation for which you are or become qualified by reason of education, training, or experience; and
(2)    are not engaging in any gainful employment or occupation.

AMOUNT CONTINUED.  The amount of Personal Life Insurance and any Dependent Life Insurance continued will be subject to the reductions and terminations in effect under the Policy on the day your Total Disability begins.  Any Accidental Death and Dismemberment Benefit will not be continued.

ADDITIONAL PROOF.  From time to time, you must submit proof that your Total Disability is continuing.  Proof will be at your expense; unless the Company requests to have you examined by a Physician of its choice.  If you die after submitting proof, further proof must be submitted to the Company showing that you remained continuously and Totally Disabled until death.  If you die within 12 months after Total Disability begins, but before submitting proof; then your death benefit will still be paid under the terms of the Policy.  But the Company must first receive satisfactory proof of your continuous Total Disability, from your last day of Active Work until your date of death.

TERMINATION.  Any life insurance continued under this section will terminate automatically on:
(1)    the day you cease to be Totally Disabled;
(2)    the day you fail to take a required medical examination;
(3)    the 60th day after the Company mails a request for additional proof, if it is not given;
(4)    the effective date of your individual conversion policy, with respect to any amount of life insurance converted in accord with the Conversion Privilege section; or
(5)    the day you reach Social Security Normal Retirement Age (SSNRA), as shown in the Schedule of Insurance (whichever occurs first).

If your Total Disability ends, and you **do not return** to a class eligible for Policy coverage; then you may exercise the Conversion Privilege.  If your Total Disability ends, and you **do return** to an eligible class; then your Policy coverage will resume when premium payments are resumed, and any conversion policy is surrendered as provided in the Policy.

GL1102-3.1 97

7

Ext. to SSNRA
01/01/14

Case 6:18-cv-02063-CJW-MAR   Document 26-4   Filed 02/13/19   Page 303 of 555   Lincoln/Lee 391

# ACCELERATED DEATH BENEFIT

BENEFIT. The Accelerated Death Benefit is an advance payment of part of your Personal Life Insurance. It may be paid to you, in a lump sum, once during your lifetime.

To qualify, you must:
   (1)   have satisfied the Active Work requirement under the Policy;
   (2)   have been insured under the Policy:
       (a)   on the date of an injury which results in a Terminal condition; or
       (b)   for 30 days before being diagnosed Terminal as a result of sickness; and
   (3)   have at least $2,000 of Personal Life Insurance under the Policy on the day before the Accelerated Death Benefit is paid.

Receiving the Accelerated Death Benefit will reduce the Remaining Life Insurance and the Death Benefit payable at death, as shown on the next page.

"Claimant," as used in this section, means the Terminal Insured Person for whom the Accelerated Death Benefit is requested.

"Terminal" means you have a medical condition which is expected to result in death within 12 months, despite appropriate medical treatment.

APPLYING FOR THE BENEFIT. To withdraw the Accelerated Death Benefit, you (or your legal representative) must send the Company:
   (1)   written election of the Accelerated Death Benefit, on forms supplied by the Company; and
   (2)   satisfactory proof that the Claimant is Terminal, including a Physician's written statement.

The Company reserves the right to decide whether such proof is satisfactory.

Before paying an Accelerated Death Benefit, the Company must also receive the written consent of any irrevocable beneficiary, assignee or bankruptcy court with an interest in the benefit. (See Limitations 3, 4, and 5.)

**NOTE: THIS IS NOT A LONG-TERM CARE POLICY. RECEIVING THIS ACCELERATED DEATH BENEFIT WILL REDUCE THE BENEFIT PAYABLE AT DEATH. ANY AMOUNT WITHDRAWN MAY BE TAXABLE INCOME, SO YOU SHOULD CONSULT A TAX ADVISOR BEFORE APPLYING FOR THIS BENEFIT.**

AMOUNT OF THE BENEFIT. You may elect to withdraw an Accelerated Death Benefit in any $1,000 increment; subject to:
   (1)   a minimum of $1,000 or 10% of the Claimant's amount of Life Insurance (whichever is greater); and
   (2)   a maximum of $250,000 or 75% of the Claimant's amount of Life Insurance (whichever is less).

To determine the Accelerated Death Benefit, the Company will use the lesser of A or B below:
   A.   the Claimant's amount of Life Insurance which is in force on the day before the Accelerated Death Benefit is paid; or
   B.   the Claimant's amount of Life Insurance which would be in force 12 months after that date; if the coverage is scheduled to reduce, due to age, within 12 months after the Accelerated Death Benefit is paid.

Case 6:18-cv-02063-CJW-MAR   Document 26-4   Filed 02/13/19   Page 304 of 555   Lincoln/Lee 392

ADMINISTRATIVE CHARGE:  NONE

WITHDRAWAL FEE:  NONE

EFFECT ON AMOUNT OF LIFE INSURANCE.  "Remaining Life Insurance" means the amount of Life Insurance which remains in force on the Claimant's life after an Accelerated Death Benefit is paid.  The Remaining Life Insurance will equal:
  (1)   the Claimant's amount of Life Insurance which was used to determine the Accelerated Death Benefit (A or B above); minus
  (2)   any percentage by which the Claimant's coverage is scheduled to reduce, due to age; if the reduction occurs more than 12 months after the Accelerated Death Benefit is paid, and while he or she is still living; minus
  (3)   the amount of the Accelerated Death Benefit withdrawn.

PREMIUM:  There is no additional charge for this benefit.  Continuation of the Remaining Life Insurance will be subject to timely payment of the premium for the reduced amount; unless you qualify for waiver of premium under the Policy's Extension of Death Benefit provision, if included.

CONDITIONS.  If the Claimant exercises the Conversion Privilege after an Accelerated Death Benefit is paid, the amount of the conversion policy will not exceed the amount of his or her Remaining Life Insurance. If the Claimant has Accidental Death and Dismemberment benefits under the Policy, the Principal Sum will not be affected by the payment of an Accelerated Death Benefit.

EFFECT ON DEATH BENEFIT.  When the Claimant dies after an Accelerated Death Benefit is paid, the amount of Remaining Life Insurance in force on the date of death will be paid as a Death Benefit.  Your Death Benefit will be paid in accord with the Beneficiary section of the Policy.  If the Claimant dies after application for an Accelerated Death Benefit has been made, but before the Company has made payment; then the request will be void and no Accelerated Death Benefit will be paid.  The amount of Life Insurance in force on the date of death will be paid in accord with Policy provisions.

EFFECT ON TAXES AND GOVERNMENT BENEFITS.  Any Accelerated Death Benefit amount withdrawn may be taxable income to you.  Receipt of the Accelerated Death Benefit may also affect the Claimant's eligibility for Medicaid, Supplemental Security Income and other government benefits.  The Claimant should consult his or her own tax and legal advisor before applying for an Accelerated Death Benefit.  The Company is not responsible for any tax owed or government benefit denied, as a result of the Accelerated Death Benefit payment.

LIMITATIONS.  No Accelerated Death Benefit will be paid:
  (1)   if any required premium is due and unpaid;
  (2)   on any conversion policy purchased in accord with the Conversion Privilege;
  (3)   without the written approval of the bankruptcy court, if you have filed for bankruptcy;
  (4)   without the written consent of the beneficiary, if you have named an irrevocable beneficiary;
  (5)   without the written consent of the assignee, if you have assigned your rights under the Policy;
  (6)   if any part of the Life Insurance must be paid to your child, spouse or former spouse; pursuant to a legal separation agreement, divorce decree, child support order or other court order;
  (7)   if the Claimant is Terminal due to a suicide attempt, while sane or insane; or due to an intentionally self-inflicted injury;
  (8)   if a government agency requires you or the Claimant to use the Accelerated Death Benefit to apply for, receive or continue a government benefit or entitlement; or
  (9)   if an Accelerated Death Benefit has been previously paid for the Claimant under the Policy.

GL1102-3.8 01 DAY

ADB-DEP.

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 305 of 555   Lincoln/Lee 393

# CONVERSION PRIVILEGE

If your insurance or insurance on a Dependent terminates for any reason except:
    (1)    termination or amendment of the Policy; or
    (2)    your request for:
        (a)    termination of insurance; or
        (b)    cancellation of your payroll deductions,
an individual life policy, known as a conversion policy, may be purchased without evidence of insurability.

To purchase a conversion policy, application and payment of the first premium must be made within 31 days after the life insurance is terminated.

A conversion policy will:
    (1)    be in an amount not to exceed the amount of life insurance which was terminated; less the amount of any group life insurance for which the person becomes eligible within 31 days after insurance terminates;
    (2)    be on any form (except term) then issued by the Company at the age and amount for which application is made;
    (3)    be issued at the person's age at nearest birthday;
    (4)    be issued without disability or other supplemental benefits; and
    (5)    require premiums based on the class of risk to which the person then belongs.

A conversion policy also may be purchased if:
    (1)    all or part of your insurance or insurance on a Dependent terminates due to amendment or termination of the Policy; and
    (2)    the person applying for the conversion policy has been covered continuously under the Policy for at least 5 years.

The amount of the conversion policy may not exceed the lesser of:
    (1)    $10,000; or
    (2)    the amount of life insurance which terminates, less the amount of any group life insurance for which the person becomes eligible within 31 days after the termination.

The conversion policy will take effect on the later of:
    (1)    its date of issue; or
    (2)    31 days after the date the insurance terminated.

If death occurs during the 31 day conversion period, the Company will pay the life insurance which could have been converted even if no one applied for the conversion policy.

When your insurance terminates, written notice of your right to convert will be given to you.

If written notice is not given to you at least 15 days before the end of the 31 day conversion period, an additional period in which to convert will be granted. Any such extension of the conversion period will expire on the earliest of:
    (1)    15 days after you are given the written notice; or
    (2)    60 days after the end of the 31 day conversion period, even if you are never given such notice.

No death benefit will be payable under the Policy after the 31 day conversion period has expired, even though the right to convert may be extended.

GL1102-4 IN

10

DEP. - $10,000
01/01/14

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 306 of 555    Lincoln/Lee 394

<h1 style="text-align:center">ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE</h1>

**DEATH OR DISMEMBERMENT BENEFIT FOR AN INSURED PERSON**.  The Company will pay the benefit listed below, if:
- (1)   you sustain an accidental bodily injury while insured under this provision; and
- (2)   that injury directly causes one of the following losses within 365 days after the date of the accident.

The loss must result directly from the injury and from no other causes.

| LOSS | BENEFIT FOR COMMON CARRIER ACCIDENT | BENEFIT FOR OTHER COVERED ACCIDENT |
|---|---|---|
| Loss of Life | 2 Times Principal Sum | Principal Sum |
| Loss of One Member (Hand, Foot or Eye) | Principal Sum | 1/2 Principal Sum |
| Loss of Two or More Members | 2 Times Principal Sum | Principal Sum |

The Principal Sum for your class is shown in the Schedule of Insurance.

**MAXIMUM PER PERSON**.  If you sustain more than one loss resulting from the same accident, the benefit:
- (1)   will be the one largest amount listed;
- (2)   will not exceed two times the Principal Sum for all of your combined losses resulting from a Common Carrier Accident; and
- (3)   will not exceed the Principal Sum for all of your combined losses resulting from any other covered accident.

**TO WHOM PAYABLE**.  Benefits for your loss of life will be paid in accord with the Beneficiary section. All other benefits will be paid to you.

**LIMITATIONS**.  Benefits are not payable for any loss to which a contributing cause is:
- (1)   intentional self-inflicted injury or self-destruction;
- (2)   disease, bodily or mental infirmity, or medical or surgical treatment of these;
- (3)   participation in a riot;
- (4)   duty as a member of any military, naval or air force;
- (5)   war or any act of war, declared or undeclared;
- (6)   participation in the commission of a felony;
- (7)   voluntary use of drugs; except when prescribed by a Physician;
- (8)   travel or flight in any aircraft, including balloons and gliders; except as a fare paying passenger on a regularly scheduled flight; or
- (9)   driving a vehicle while intoxicated.

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 307 of 555    Lincoln/Lee 395

**DEFINITIONS**.

"Beneficiary" means the person(s) named on your enrollment form.  You may change the Beneficiary by filing a written notice of the change with the Company at its Group Insurance Service Office.

"Common Carrier Accident" means a covered accidental bodily injury, which is sustained while riding as a fare paying passenger (not a pilot, operator or crew member) in or on, boarding or getting off from a Common Carrier

"Common Carrier" means any land, air or water conveyance operated under a license to transport passengers for hire.

"Intoxicated" shall be defined by the jurisdiction where the accident occurs.  The exclusion will apply whether or not the driver is convicted.

"Loss of a Member" includes the following:
    (1)    "Loss of Hand or Foot," means complete severance through or above the wrist or ankle joint.
    (2)    "Loss of an Eye," means total and irrevocable loss of sight in that eye.

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 308 of 555    Lincoln/Lee 396

# SAFE DRIVER BENEFIT

BENEFIT. If you die as a direct result of a covered auto accident, for which Accidental Death and Dismemberment Benefits are payable; then:
- (1) an additional Seat Belt Benefit will be payable, if you were wearing a properly fastened seat belt at the time of the accident; and
- (2) an additional Air Bag Benefit will be payable, if the auto was equipped with air bag(s).

The Seat Belt Benefit equals $10,000 or 10% of the Principal Sum, whichever is less; and the Air Bag Benefit equals $10,000 or 10% of the Principal Sum, whichever is less. The Seat Belt Benefit and the Air Bag Benefit will not be less than $1,000. The Principal Sum is the amount payable because of the Insured Person's accidental death.

A copy of the police report must be submitted with the claim. The position of the seat belt or presence of an air bag must be certified by:
- (1) the official accident report; or
- (2) the coroner, traffic officer or other investigating officer.

Upon receipt of satisfactory written proof, the additional benefit will be paid in accord with the Beneficiary section.

DEFINITIONS. As used in this provision:

"Auto" means a 4-wheel passenger car, station wagon, jeep, pick-up truck or van-type car. It must be licensed for use on public highways. It includes a car owned or leased by the Employer.

"Intoxicated," "Impaired," or "Under the Influence of Drugs" shall be defined as by the jurisdiction where the accident occurs.

"Seat Belt" means a properly installed:
- (1) seat belt or lap and shoulder restraint; or
- (2) other restraint approved by the National Highway Traffic Safety Administration.

LIMITATIONS. Safe Driver Benefits will not be paid if:
- (1) the Accidental Death and Dismemberment Benefit is not paid under the Policy for your death; or
- (2) at the time of the accident, you or any other person who was driving the auto in which you were traveling:
  - (a) was driving without a valid drivers' license;
  - (b) was driving in excess of the legal speed limit; or
  - (c) was driving while intoxicated, impaired, or under the influence of drugs (except for drugs taken as prescribed by a Physician for the driver's use).

  The above limitations will apply, whether or not the driver is convicted.

GL1102-6.15A

13

<span>Seat Belt & Air Bag</span>
<span>01/01/14</span>

<h1 style="text-align:center">CLAIMS PROCEDURES<br>FOR LIFE OR ACCIDENTAL DEATH AND DISMEMBERMENT (AD&D) BENEFITS</h1>

**NOTE: The Policy may include an Extension of Death Benefit, an Accelerated Death Benefit or a Living Benefit. If so, please refer to that section for special claim procedures.**

**NOTICE AND PROOF OF CLAIM**

**Notice of Claim**. Written notice of an accidental death or dismemberment claim must be given within 20 days after the loss occurs;  or as soon as reasonably possible after that.*  The notice must be sent to the Company's Group Insurance Service Office.  It should include:
   (1)   your name and address; and
   (2)   the number of the Policy.

**Claim Forms**. When notice of claim is received, the Company will send claim forms for filing the required proof.  If the Company does not send the forms within 15 days; then you or your Beneficiary (the claimant) may send the Company written proof of claim in a letter.  It should state the nature, date and cause of the loss.

**Proof of Claim**. The Company must be given written proof of claim within 90 days after the date of the loss; or as soon as reasonably possible after that.*  Proof of claim must be provided at the claimant's own expense.  It must show the nature, date and cause of the loss.  In addition to the information requested on the claim form, documentation must include:
   (1)   A certified copy of the death certificate, for proof of death.
   (2)   A copy of any police report, for proof of accidental death or dismemberment.
   (3)   A signed authorization for the Company to obtain more information.
   (4)   Any other items the Company may reasonably require in support of the claim.

**\* Exception:** Failure to give notice or furnish proof of claim within the required time period will not invalidate or reduce the claim; if it is shown that it was done:
   (1)   as soon as reasonably possible; and
   (2)   in no event more than one year after it was required.
These time limits will not apply while the claimant lacks legal capacity.

**EXAM OR AUTOPSY**. At anytime while a claim is pending, the Company may have you examined:
   (1)   by a Physician of the Company's choice;
   (2)   as often as reasonably required.
If you fail to cooperate with an examiner or fail to take an exam, without good cause; then the Company may deny benefits, until the exam is completed.  In case of death, the Company may also have an autopsy done, where it is not forbidden by law.  Any such exam or autopsy will be at the Company's expense.

**TIME OF PAYMENT OF CLAIMS**. Any benefits payable under the Policy will be paid immediately after the Company receives complete proof of claim and confirms liability.

In accord with Indiana law, any accidental death or dismemberment benefits will be paid as follows, when more favorable to the claimant.
   (1)   **Clean Claim**.  The Company must pay a clean claim for AD&D benefits within 45 days after receiving the first written proof of claim.  A claim is considered "clean" when:
      (a)   the first proof of claim is complete;
      (b)   no part of the claim is contested; and
      (c)   no other defect prevents prompt payment.
      A claim is also considered "clean" when the insurer fails to promptly request more information, or to resolve it, within 45 days after receiving the first written proof of claim.

Case 6:18-cv-02063-CJW-MAR   Document 26-4   Filed 02/13/19   Page 310 of 555   Lincoln/Lee 398

(2) **Defective Claim**. The Company must request more information concerning a defective claim for AD&D benefits within 45 days after receiving the first written proof of claim. It must pay such a claim within 45 days after receiving any additional proof it needs to confirm liability. A claim is considered "defective" if:
   (a) the first written proof of claim is not complete;
   (b) all or part of the claim is contested; or
   (c) some other defect prevents prompt payment.

**TO WHOM PAYABLE--Death**. Any benefits payable for your death will be paid in accord with the Beneficiary, Facility of Payment and Settlement Options sections of the Policy. If the Policy includes Dependent Life Insurance; then any benefits payable for an insured Dependent's death will be paid to:
   (1) you, if you survive that Dependent; or
   (2) your Beneficiary, or in accord with the Facility of Payment section; if you do not survive that Dependent.

**Dismemberment.** If the Policy includes Accidental Death and Dismemberment Benefits; then any benefit, other than your death benefit, will be paid to you.

**NOTICE OF CLAIM DECISION.** The Company will send the claimant a written notice of its claim decision. If the Company denies any part of the claim; then the written notice will explain:
   (1) the reason for the denial, under the terms of the Policy and any internal guidelines;
   (2) how the claimant may request a review of the Company's decision; and
   (3) whether more information is needed to support the claim.

The Company will send this notice within 15 days after resolving the claim. If reasonably possible, the Company will send it within:
   (1) 45 days after receiving the first written proof of claim for any accidental death or dismemberment, Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy; or
   (2) 90 days after receiving the first written proof of a claim for any life insurance benefit available under the Policy.

**Delay Notice.** If the Company needs more than 15 days to process a claim, in a special case; then an extension will be permitted. If needed, the Company will send the claimant a written delay notice:
   (1) by the 15th day after receiving the first proof of claim; and
   (2) every 30 days after that, until the claim is resolved.

The notice will explain the special circumstances which require the delay, and when a decision can be expected. In any event, the Company must send written notice of its decision within:
   (1) 180 days after receiving the first proof of a death or dismemberment claim; or
   (2) 105 days after receiving the first proof of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy.
If the Company fails to do so; then there is a right to an immediate review, as if the claim was denied.

**Exception:** If the Company needs more information from the claimant to process a claim; then it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for claim processing.

**REVIEW PROCEDURE.** The claimant may request a claim review, within:
   (1) 60 days after receiving a denial notice of a death or dismemberment claim; or
   (2) 180 days after receiving a denial notice of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy.

To request a review, the claimant must send the Company a written request, and any written comments or other items to support the claim. The claimant may review certain non-privileged information relating to the request for review.

GL1102-8A 02 IN

L/ADD

15

01/01/14

**Notice of Decision.** The Company will review the claim and send the claimant a written notice of its decision. The notice will explain the reasons for the Company's decision, under the terms of the Policy and any internal guidelines. If the Company upholds the denial of all or part of the claim; then the notice will also describe:

    (1)    any further appeal procedures available under the Policy;
    (2)    the right to access relevant claim information; and
    (3)    the right to request a state insurance department review, or to bring legal action.

For a death or dismemberment claim, the notice will be sent within 60 days after the Company receives the request for review; or within 120 days, if a special case requires more time. For a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy, the notice will be sent within 45 days after the Company receives the request for review; or within 90 days, if a special case requires more time.

**Delay Notice.** If the Company needs more time to process an appeal, in a special case; then it will send the claimant a written delay notice, by the 30th day after receiving the request for review. The notice will explain:

    (1)    the special circumstances which require the delay;
    (2)    whether more information is needed to review the claim; and
    (3)    when a decision can be expected.

**Exception:** If the Company needs more information from the claimant to process an appeal; then it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for appeal processing.

**Claims Subject to ERISA** (Employee Retirement Income Security Act of 1974). Before bringing a civil legal action under the federal labor law known as ERISA, an employee benefit plan participant or beneficiary must exhaust available administrative remedies. Under the Policy, the claimant must first seek two administrative reviews of the adverse claim decision, in accord with this section. If an ERISA claimant brings legal action under Section 502(a) of ERISA after the required reviews; then the Company will waive any right to assert that he or she failed to exhaust administrative remedies.

**RIGHT OF RECOVERY**. If benefits have been overpaid on any claim; then full reimbursement to the Company is required within 60 days. If reimbursement is not made; then the Company has the right to:

    (1)    reduce future benefits until full reimbursement is made; and
    (2)    recover such overpayments from you, or from your Beneficiary or estate.

Such reimbursement is required whether the overpayment is due to fraud, the Company's error in processing a claim, or any other reason.

**LEGAL ACTIONS**. No legal action to recover any benefits may be brought until 60 days after the required written proof of claim has been given. No such legal action may be brought more than three years after the date written proof of claim is required.

**COMPANY'S DISCRETIONARY AUTHORITY**. Except for the functions that the Policy clearly reserves to the Group Policyholder or Employer, the Company has the authority to:

    (1)    manage the Policy and administer claims under it; and
    (2)    interpret the provisions and resolve questions arising under the Policy.

The Company's authority includes (but is not limited to) the right to:

    (1)    establish and enforce procedures for administering the Policy and claims under it;
    (2)    determine your eligibility for insurance and entitlement to benefits;
    (3)    determine what information the Company reasonably requires to make such decisions; and
    (4)    resolve all matters when a claim review is requested.

Any decision the Company makes, in the exercise of its authority, shall be conclusive and binding; subject to your or your Beneficiary's rights to:

    (1)    request a state insurance department review; or
    (2)    bring legal action.

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 312 of 555    Lincoln/Lee 400

# NOTICE TO POLICYHOLDERS REGARDING
# FILING COMPLAINTS WITH THE DEPARTMENT OF INSURANCE

**Questions regarding your policy or coverage should be directed to:**

**The Lincoln National Life Insurance Company**
**800-423-2765**

We want you to know that you may contact the Indiana Department of Insurance if you have a complaint or seek assistance from the governmental agency that regulates insurance. To contact the Department of Insurance, write or call:

State of Indiana Department of Insurance
Consumer Services Division
311 West Washington Street, Suite 300
Indianapolis, Indiana 46204

Consumer Hotline: (800) 622-4461; (317) 232-2395

Complaints can be filed electronically at www.in.gov/idoi.

IN NOTICE 05 - P/C

17                                                                        01/01/14

Case 6:18-cv-02063-CJW-MAR   Document 26-4   Filed 02/13/19   Page 313 of 555

Lincoln/Lee 401

## SUMMARY OF INDIANA LIFE AND HEALTH INSURANCE
## GUARANTY ASSOCIATION

The Indiana Life and Health Insurance Guaranty Association provides coverage of claims under some types of policies if the insurer becomes impaired or insolvent. COVERAGE MAY NOT BE AVAILABLE UNDER YOUR POLICY. Even if coverage is provided, there are significant limits and exclusions. Coverage is always conditioned on residence in this state. Other conditions may also preclude coverage.

The Indiana Life and Health Insurance Guaranty Association will respond to any questions you may have which are not answered by this document. Your insurer and agent are prohibited by law from using the existence of the association or its coverage to sell you an insurance policy.

You should not rely of availability of coverage under the Indiana Life and Health Insurance Guaranty Association when selecting an insurer.

You may contact the Indiana Life and Health Insurance Guaranty Association as follows:

Indiana Life and Health Insurance Guaranty Association
251 E. Ohio Street, Suite 1070
Indianapolis, IN 46204
(317) 636-8204
www.inlifega.org

You may contact the Indiana Department of Insurance as follows:

Indiana Department of Insurance
311 W. Washington Street
Indianapolis, IN 46204
(317) 232-2385
www.in.gov/idoi

CERTIFICATE AMENDMENT

TO BE ATTACHED TO THE CERTIFICATE FOR GROUP POLICY NO.: 000010132080

ISSUED TO: Ashley Industrial Moldings, Inc.

Your Certificate is amended by the addition of the following provisions.

PRIOR INSURANCE CREDIT UPON TRANSFER OF
LIFE INSURANCE CARRIERS

This provision prevents loss of life insurance coverage for you, which could otherwise occur solely because of a transfer of insurance carriers. The Policy will provide the following Prior Insurance Credit, when it replaces a prior plan.

"Prior Plan" means a prior carrier's group life insurance policy, which the Policy replaced within 1 day of the prior plan's termination date.

FAILURE TO SATISFY ACTIVE WORK RULE. Subject to payment of premiums, the Policy will provide life coverage if you:
   (1)   were insured under the prior plan on its termination date;
   (2)   were otherwise eligible under the Policy; but were not Actively-At-Work due to Injury or Sickness on its Effective Date;
   (3)   are not entitled to any extension of life insurance under the prior plan; and
   (4)   are not Totally Disabled (as defined in the Extension of Death Benefit section of the Policy) on the date the Policy takes effect.

AMOUNT OF LIFE INSURANCE. Until you satisfy the Policy's Active Work rule, the amount of your group life insurance under the Policy will not exceed the amount for which you were insured under the prior plan on its termination date.

This Amendment takes effect on your effective date of coverage under the Policy. In all other respects, your Certificate remains the same.

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

_____
Officer of the Company

GL1102-AMEND. PC1

Prior Ins. Cred. - Life
01/01/14

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 315 of 555    Lincoln/Lee 403



# LINCOLN FINANCIAL GROUP® PRIVACY PRACTICES NOTICE

The Lincoln Financial Group companies* are committed to protecting your privacy. To provide the products and services you expect from a financial services leader, we must collect personal information about you. **We do not sell your personal information to third parties.** We share your personal information with third parties as necessary to provide you with the products or services you request and to administer your business with us. This Notice describes our current privacy practices. While your relationship with us continues, we will update and send our Privacy Practices Notice as required by law. Even after that relationship ends, we will continue to protect your personal information. **You do not need to take any action because of this Notice, but you do have certain rights as described below.**

## INFORMATION WE MAY COLLECT AND USE

We collect personal information about you to help us identify you as our customer or our former customer; to process your requests and transactions; to offer investment or insurance services to you; to pay your claim; or to tell you about our products or services we believe you may want and use. The type of personal information we collect depends on the products or services you request and may include the following:

- **Information from you**: When you submit your application or other forms, you give us information such as your name, address, Social Security number; and your financial, health, and employment history.

- **Information about your transactions**: We keep information about your transactions with us, such as the products you buy from us; the amount you paid for those products; your account balances; and your payment history.

- **Information from outside our family of companies**: If you are purchasing insurance products, we may collect information from consumer reporting agencies such as your credit history; credit scores; and driving and employment records. With your authorization, we may also collect information, such as medical information from other individuals or businesses.

- **Information from your employer**: If your employer purchases group products from us, we may obtain information about you from your employer in order to enroll you in the plan.

## HOW WE USE YOUR PERSONAL INFORMATION

We may share your personal information within our companies and with certain service providers. They use this information to process transactions you have requested; provide customer service; and inform you of products or services we offer that you may find useful. Our service providers may or may not be affiliated with us. They include financial service providers (for example, third party administrators; broker-dealers; insurance agents and brokers, registered representatives; reinsurers and other financial services companies with whom we have joint marketing agreements). Our service providers also include non-financial companies and individuals (for example, consultants; vendors; and companies that perform marketing services on our behalf). Information we obtain from a report prepared by a service provider may be kept by the service provider and shared with other persons; however, we require our service providers to protect your personal information and to use or disclose it only for the work they are performing for us, or as permitted by law.

When you apply for one of our products, we may share information about your application with credit bureaus. We also may provide information to group policy owners, regulatory authorities and law enforcement officials and to others when we believe in good faith that the law requires disclosure. In the event of a sale of all or part of our businesses, we may share customer information as part of the sale. **We do not sell or share your information with outside marketers who may want to offer you their own products and services; nor do we share information we receive about you from a consumer reporting agency. You do not need to take any action for this benefit.**

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 316 of 555    Lincoln/Lee 404

## SECURITY OF INFORMATION

We have an important responsibility to keep your information safe. We use safeguards to protect your information from unauthorized disclosure. Our employees are authorized to access your information only when they need it to provide you with products, services, or to maintain your accounts. Employees who have access to your personal information are required to keep it confidential. Employees are trained on the importance of data privacy.

Questions about your personal information should be directed to:

> Lincoln Financial Group
> Attn: Enterprise Compliance and Ethics
> Corporate Privacy Office, 7C-01
> 1300 S. Clinton St.
> Fort Wayne, IN  46802

**Please include all policy/contract/account numbers with your correspondence.**

*This information applies to the following Lincoln Financial Group companies:

| | |
|---|---|
| First Penn-Pacific Life Insurance Company | Lincoln Life & Annuity Company of New York |
| Lincoln Financial Group Trust Company, LLC | Lincoln Retirement Services Company, LLC |
| Lincoln Financial Investment Services Corporation | Lincoln Variable Insurance Products Trust |
| Lincoln Investment Advisors Corporation | The Lincoln National Life Insurance Company |

## *ADDITIONAL PRIVACY INFORMATION FOR INSURANCE PRODUCT CUSTOMERS*

## CONFIDENTIALITY OF MEDICAL INFORMATION

We understand that you may be especially concerned about the privacy of your medical information. We do not sell or rent your medical information to anyone; nor do we share it with others for marketing purposes. We only use and share your medical information for the purpose of underwriting insurance, administering your policy or claim and other purposes permitted by law, such as disclosure to regulatory authorities or in response to a legal proceeding.

## MAKING SURE MEDICAL INFORMATION IS ACCURATE

We want to make sure we have accurate information about you. Upon written request we will tell you, within 30 business days, what personal information we have about you. You may see a copy of your personal information in person or receive a copy by mail, whichever you prefer. We will share with you who provided the information. In some cases we may provide your medical information to your personal physician. We will not provide you with information we have collected in connection with, or in anticipation of, a claim or legal proceeding. If you believe that any of our records are not correct, you may write and tell us of any changes you believe should be made. We will respond to your request within 30 business days. A copy of your request will be kept on file with your personal information so anyone reviewing your information in the future will be aware of your request. If we make changes to your records as a result of your request, we will notify you in writing and we will send the updated information, at your request, to any person who may have received the information within the prior two years. We will also send the updated information to any insurance support organization that gave us the information, and any service provider that received the information within the prior 7 years.

Questions about your personal medical information should be directed to:

> Lincoln Financial Group
> Attn: Medical Underwriting
> P.O. Box 21008
> Greensboro, NC  27420-1008

The CONFIDENTIALITY OF MEDICAL INFORMATION and MAKING SURE INFORMATION IS ACCURATE sections of this Notice apply to the following Lincoln Financial Group companies:

First Penn-Pacific Life Insurance Company
Lincoln Life & Annuity Company of New York
The Lincoln National Life Insurance Company

# The Lincoln National Life Insurance Company

A Stock Company    Home Office Location:  Fort Wayne, Indiana
Group Insurance Service Office:  8801 Indian Hills Drive, Omaha, NE 68114-4066 (402) 361-7300

CERTIFIES THAT Group Policy No.       GL 000400001000-12077       has been issued to
The Commerce Trust Company as Trustee for The Lincoln National Life Insurance Company Voluntary Insurance Trust

The Issue Date is January 1, 2011 for the Participating Employer.

Participating Employer:  Ashley Industrial Moldings, Inc.

The insurance is effective only if the Employee is eligible for insurance and becomes and remains insured as provided in the Group Policy.

Certificate of Insurance for Class 1

{INSURED}

**{Schedule of Insurance}**
        **{Coverage}**                                          **{Insurance Amount}**
        {BENEFIT_1}
        {BENEFIT_2}
        {BENEFIT_3}
        {BENEFIT_4}
        {BENEFIT_5}

You are entitled to the benefits described in this Certificate if you are eligible for insurance under the provisions of the Policy.  This Certificate replaces any other certificates for the benefits described inside.  As a Certificate of Insurance, it is not a contract of insurance; it only summarizes the provisions of the Policy and is subject to the Policy's terms.

President

**CERTIFICATE OF GROUP LIFE INSURANCE**

GL1102 FACE PAGE

{LFGLOGO}          {USER}              {CERT_ID}              01/01/14

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 318 of 555    Lincoln/Lee 406

## SCHEDULE OF INSURANCE

### CLASS 1

### All Full-Time Employees

**WAITING PERIOD:**   90 days of continuous Active Work  (For date insurance begins, refer to "Effective Dates of Coverages" section)

**MINIMUM HOURS:**   32 hours per week

### LIFE AND AD&D INSURANCE

| Amount of Personal Life Insurance | AD&D Insurance Principal Sum |
|---|---|
| You may elect Life Insurance in any $10,000 increment; subject to a maximum of Five times Basic Annual Earnings (rounded to the next higher $10,000).  Coverage is subject to a minimum of $10,000 and an overall maximum of $500,000.  If you initially become insured after attaining age 70 your benefit is subject to a maximum of $50,000 | The Principal Sum equals the Amount of Personal Life Insurance |

Personal Life and AD&D Insurance will be reduced as follows:
- At age 70, benefits will reduce by 35% of the original amount;
- At age 75, benefits will reduce an additional 25% of the original amount.

Benefits will terminate when you attain age 80 or retire, whichever occurs first.

If you first enroll for Personal Life and AD&D Insurance at age 70 or older, the above age reductions will apply to:
- Any Guarantee Issue Amount available without evidence of insurability; and
- The maximum amount of insurance for which you are eligible.

**(Effective July 1, 2011) Basic Annual Earnings** means your annual base salary or annualized hourly pay from the Employer before taxes on the Determination Date.  The **"Determination Date"** is the last day worked just prior to the loss.

It does **not** include commissions, bonuses, overtime pay, or any other extra compensation.  It does **not** include income from a source other than the Employer.  It will not exceed the amount shown in the Employer's financial records or the amount for which premium has been paid; whichever is less.

GL1102-SB

01/01/14

# SCHEDULE OF INSURANCE (CONTINUED)

Evidence of Insurability must be submitted to and approved by the Company when:

1. Personal Life and AD&D Insurance amounts exceed the guarantee issue amount of $150,000 at initial enrollment;
2. the amount of Personal Life and AD&D Insurance increases after the initial enrollment by more than $10,000 due to salary or benefit increases over a 12-month period based on the month of the policy anniversary;
3. an increased amount of Personal Life and AD&D Insurance coverage is requested and any amount of coverage has been previously withdrawn or declined or is pending underwriting review;
4. Personal Life and AD&D Insurance amounts exceed the guarantee issue amount of $20,000 at initial enrollment or is increased, if enrolled after age 70 through age 74;
5. initial Personal Life and AD&D Insurance is elected or increased after age 75; or
6. initial coverage is elected more than 31 days after first becoming eligible.

Refer to the Evidence of Insurability section for any additional requirements.

GL1102-SB

01/01/14

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 321 of 555    Lincoln/Lee 409

**DEPENDENTS INSURANCE**

| Dependent | Amount of Spouse Life Insurance | Spouse AD&D Insurance Principal Sum |
|---|---|---|
| Spouse | You may elect Spouse Life Insurance in any $5,000 increment; subject to a maximum of 50% of your Life Insurance Benefit (rounded to the next higher $5,000). Coverage is subject to a minimum of $5,000 and an overall maximum of $250,000 | The Principal Sum equals the Amount of Spouse Life Insurance |

Amount of Child Life Insurance

Option 1

Dependent Child                                           $250
(age 14 days to 6 months)

Dependent Child                                           2,000
(age 6 months to 26 years)

Option 2

Dependent Child                                           $250
(age 14 days to 6 months)

Dependent Child                                           4,000
(age 6 months to 26 years)

Option 3

Dependent Child                                           $250
(age 14 days to 6 months)

Dependent Child                                           6,000
(age 6 months to 26 years)

Option 4

GL1102-SB

01/01/14

Dependent Child                                                                          $250
   (age 14 days to 6 months)


Dependent Child                                                                          8,000
   (age 6 months to 26 years)


Option 5

Dependent Child                                                                          $250
   (age 14 days to 6 months)


Dependent Child                                                                          10,000
   (age 6 months to 26 years)


Spouse Life and AD&D Insurance will be reduced as follows:
-   by 35% of the original amount when your Spouse attains age 65.
Spouse Insurance will terminate when your Spouse attains age 70.


Evidence of Insurability must be submitted to and approved by the Company when:
1.  Spouse Life and AD&D Insurance amounts exceed the guarantee issue amount of $25,000 at initial enrollment;
2.  the amount of Spouse Life and AD&D Insurance in excess of the guarantee issue amount, increases after the initial enrollment by more than $5,000 due to salary or benefit increases over a 12-month period based on the month of the policy anniversary;
3.  an increased amount of Spouse Life and AD&D Insurance coverage is requested and any amount of coverage has been previously withdrawn or declined or is pending underwriting review;
4.  initial Spouse Life and AD&D Insurance is elected or increased after you attain age 60; or
5.  initial coverage is elected more than 31 days after first becoming eligible.
Refer to the Evidence of Insurability section for any additional requirements.


You may elect Dependent Life Insurance (Spouse and/or Child), provided you are also enrolled in the Voluntary Life Insurance Program.


Participation in the Voluntary program is based on the Participating Employer's enrollment remaining above:
(1)  the greater of 10 employees or 25% of those employees electing Voluntary Life Insurance; and
(2)  the greater of 5 spouses or 10% of those employees electing Voluntary Spouse Life Insurance.


GL1102-SB

Case 6:18-cv-02063-CJW-MAR     Document 26-4     Filed 02/13/19     Page 323 of 555     Lincoln/Lee 411

**SCHEDULE OF INSURANCE (CONTINUED)**

The following chart applies to the Portability Privilege provision and to the Extension of Death Benefit provision when benefits end upon attainment of the Social Security Normal Retirement Age:

| Year of Birth | Normal Retirement Age |
|---|---|
| 1937 and prior | 65 |
| 1938 | 65 and 2 months |
| 1939 | 65 and 4 months |
| 1940 | 65 and 6 months |
| 1941 | 65 and 8 months |
| 1942 | 65 and 10 months |
| 1943 - 54 | 66 |
| 1955 | 66 and 2 months |
| 1956 | 66 and 4 months |
| 1957 | 66 and 6 months |
| 1958 | 66 and 8 months |
| 1959 | 66 and 10 months |
| 1960 and later | 67 |

Note: Persons born on January 1 of any year should refer to the Normal Retirement Age for the previous year.

Under the Portability Privilege provision, the word "retire" or "retirement" means your attainment of the Social Security Normal Retirement Age. The use of the word "retire" or "retirement" elsewhere in this Certificate means your retirement from employment with the Employer.

If any evidence of insurability is required, it will be provided at your own expense.

GL1102-SB

01/01/14

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 324 of 555    Lincoln/Lee 412

# TABLE OF CONTENTS

Amount of Insurance……………………………………………………………3

Definitions ……………………………………………………………………3

Eligibility ……………………………………………………………………4

Effective Dates of Coverages………………………………………………4

Termination of Coverage……………………………………………………5

Portability Privilege…………………………………………………………6

Death Benefit…………………………………………………………………7

Beneficiary……………………………………………………………………7

Extension of Death Benefit …………………………………………………7

Assignments …………………………………………………………………8

Conversion Privilege…………………………………………………………9

Dependents Life Insurance…………………………………………………10

Accidental Death and Dismemberment Insurance ………………………12

Safe Driver Benefit…………………………………………………………16

Claims Procedures for Life or Accidental Death and Dismemberment Benefits …….17

Accelerated Death Benefit …………………………………………………20

Prior Insurance Credit Provision …………………………………………23

Notice…………………………………………………………………………24

Suicide Exclusion……………………………………………………………26

GL1102-TOC

# AMOUNT OF INSURANCE

The amount of your insurance is determined by the Schedule of Insurance in the Policy. The initial amount of coverage is the amount which applies to your classification on the day your coverage becomes effective. You may become eligible for increases in the amount of insurance in accordance with the Schedule of Insurance. Any such increase will be effective on:

(1) the first of the Insurance Month which coincides with or follows the date on which you become eligible for the increase; provided you are Actively at Work on that day;

(2) the day you resume Active Work, if not Actively at Work on the day the increase otherwise would have been effective; or

(3) the day determined by the Company after any required evidence of insurability is approved by the Company.

Any decrease will take effect on the Policy anniversary date which coincides with or follows the day of the change, whether or not you are Actively at Work.

# DEFINITIONS

ACTIVE WORK OR ACTIVELY AT WORK means the full-time performance of all customary duties of an employee's occupation at the EMPLOYER'S place of business (or other business location to which the EMPLOYER requires the employee to travel.)

COMPANY means The Lincoln National Life Insurance Company, an Indiana corporation, whose Group Insurance Service Office address is 8801 Indian Hills Drive, Omaha, Nebraska 68114-4066.

DAY or DATE means at 12:01 A.M., Standard Time, at the Group Policyholder's place of business when used with regard to eligibility dates and effective dates. It means 12:00 midnight, Standard Time, at the same place, when used with regard to termination dates.

EMPLOYER means the Group Policyholder or the Participating Employer named on the Face Page.

FULL-TIME EMPLOYEE means an employee of the EMPLOYER:

(1) whose employment with the EMPLOYER is the employee's principal occupation;

(2) who is not a temporary or seasonal employee; and

(3) who is regularly scheduled to work at such occupation at least the number of hours as shown in the Schedule of Insurance.

INSURANCE MONTH means:

(1) that period of time beginning on the Issue Date of the Policy and extending for one month; and

(2) each subsequent month beginning on the same day after that.

POLICY means the Group Insurance Policy issued by the Company to the Group Policyholder. A copy of the Policy may be examined upon request at the Group Insurance Service Office of the Group Policyholder.

YOU or YOUR means a FULL-TIME EMPLOYEE who is covered by Personal Insurance, or whose Dependents are covered by Dependents Insurance under the Policy.

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 327 of 555    Lincoln/Lee 415

## ELIGIBILITY

If you are a Full-Time Employee and a member of an employee class shown in the Schedule of Insurance; then you will become eligible for the coverage provided by the Policy on the later of:
(1)   the Policy's date of issue; or
(2)   the day you complete the Waiting Period.

WAITING PERIOD.  (See Schedule of Insurance).

## EFFECTIVE DATES OF COVERAGES

Your insurance is effective on the latest of:
(1)   the day you become eligible for the coverage;
(2)   the day you resume Active Work, if you are not Actively at Work on the day you become eligible;
(3)   the day you make written application for coverage; and sign:
    (a)   a payroll deduction order; or
    (b)   an order to pay premiums from your Flexible Benefit Plan account, if Employer contributions are paid through a Flexible Benefit Plan; or
(4)   the first day of the Insurance Month following the date the Company approves your coverage, if evidence of insurability is required.

Evidence of insurability is required if:
(1)   you apply for coverage in excess of the Guaranteed Acceptance Amount (or in any amount when first applying at age 70 or older);
(2)   you apply to enroll for or increase coverage more than 31 days after you become eligible;
(3)   you make written application to re-enroll for coverage after you have requested:
    (a)   to cancel your coverage;
    (b)   to stop payroll deductions for the coverage; or
    (c)   to stop premium payments from your Flexible Benefit Plan account; or
(4)   you apply to reinstate coverage after it lapses, due to failure to pay premiums when due.

EXCEPTION.  If your coverage terminates due to an approved leave of absence or a military leave, any Waiting Period or evidence of insurability requirement will be waived upon your return; provided:
(1)   you return within six months after the leave begins;
(2)   you apply or are enrolled within 31 days after resuming Active Work; and
(3)   the reinstated amount of insurance does not exceed the amount which terminated.

GL1102-2 VIT

A(L,DEP.L,AD&D)

4

01/01/14

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 328 of 555    Lincoln/Lee 416

# TERMINATION OF COVERAGE

Your coverage terminates on the earliest of:
(1)    the day the Policy terminates or your Employer ceases to be a Participating Employer;
(2)    the last day of the Insurance Month in which you request termination;
(3)    the last day of the period for which the premium for your insurance has been paid;
(4)    the day you cease to be a member of an employee class, attain age 80 or die;
(5)    with respect to any particular insurance benefit, the day the part of the Policy providing that benefit terminates;
(6)    the day your employment with the Employer terminates; or
(7)    the day you enter the armed services of any state or country on active duty; except for duty of 30 days or less for training in the Reserves or National Guard.  (If you send proof of military service, the Company will refund any unearned premium.)

Ceasing Active Work terminates your eligibility.  However, you may continue coverage as follows:
(1)    If you are disabled due to illness or injury, then coverage may be continued until the earliest of:
    (a)    12 Insurance Months after the disability begins;
    (b)    the date you are no longer disabled; or
    (c)    for Life Insurance, the date you qualify for any Extension of Death Benefit under the Policy;
    provided premium payments are made on your behalf.  Throughout the period of continued Life Insurance, you will be required to pay the Employer the premium you would have been required to pay as an Active Employee.
(2)    If you cease active work due to a temporary lay off, an approved leave of absence, or a military leave; then coverage may be continued:
    (a)    for three Insurance Months after the lay off or leave begins;
    (b)    provided premium payments are made on your behalf.

It may be possible to continue insurance for a longer period in accord with the Portability Privilege section of this Certificate.

GL1102-2 VIT

A(L,DEP.L,AD&D)

5

01/01/14

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 329 of 555    Lincoln/Lee 417

# PORTABILITY PRIVILEGE

This section applies to any Personal Life Insurance, Dependent Life Insurance, and Accidental Death and Dismemberment Insurance provided by the Policy. Such insurance may be continued, by paying the required premiums, when:

   (1)   your employment with the Employer ends for a reason other than Total Disability or retirement; and

   (2)   the insurance has been in force for at least 12 months in a row just prior to the date employment ends.

To continue insurance, written application and the first premium payment must be made to the Company, within 31 days of the date insurance would otherwise end.

AMOUNT OF COVERAGE. The amount of continued insurance may not exceed the amount in force when employment ends. During the continuation period:

   (1)   the amount of insurance may not be increased; and

   (2)   additional dependents may not be enrolled for Dependent Life Insurance.

Continued insurance will be subject to any reduction on account of age, as shown in the Schedule of Insurance.

You may decrease the amount of continued insurance at any time, by completing a request form supplied by the Company. The decrease will take effect on the first day of the Insurance Month after the Company receives the request.

PAYMENT OF PREMIUM. Timely payment of premium must be made directly to the Company, throughout the period of continued insurance. The required premium will equal:

   (1)   premium at the group rate which would apply if you remained actively employed with the Employer; plus

   (2)   a direct billing fee based on the premium frequency chosen.

The premium frequency may be changed by sending the Company advance written request on forms supplied by the Company. Such request may be sent at any time while continued insurance is in force; but not during a Grace Period.

TERMINATION OF COVERAGE. Continued insurance will end on the earliest of:

   (1)   the date insurance has been continued until you attain the Social Security Normal Retirement Age; or

   (2)   the date insurance would otherwise end if you remained an Active Employee; but continued coverage will not end when the Policy is discontinued by the Employer.

When continued insurance ends, you or your Dependent may be entitled to purchase an individual life policy, in accord with the Conversion Privilege section of this Certificate.

Case 6:18-cv-02063-CJW-MAR   Document 26-4   Filed 02/13/19   Page 330 of 555   Lincoln/Lee 418

**DEATH BENEFIT**
**For Employees Only**

The amount of your Personal Life Insurance which is in effect on the date of your death will be paid as a death benefit to your Beneficiary. If no named Beneficiary survives you, the death benefit will be paid to your estate or in accord with the terms of the Policy. Arrangements may be made to have this death benefit paid in installments.

EXCLUSION. Benefits will not be payable if your death:
    (1)    results from suicide while sane; and
    (2)    occurs within two years after your Personal Life Insurance takes effect.

However, suicide is no defense to payment of life insurance benefits under the Policy unless the Company can show that you intended suicide when applying for the insurance.

**BENEFICIARY**

Your Beneficiary will be as shown on your enrollment card, unless changed. Only you or your assignee may change the Beneficiary. A new Beneficiary may be named by filing a written notice of the change with the Company at its Group Insurance Service Office. The change will be effective as of the date it was signed; subject to any action taken by the Company before it received notice of the change.

**EXTENSION OF DEATH BENEFIT IF YOU**
**BECOME TOTALLY DISABLED**
**For Employees Only**

Any Personal Life Insurance on your life will be continued, without payment of premiums; if while you are insured:
    (1)    you become Totally Disabled before you reach age 60; and
    (2)    you submit proof of your disability which is received by the Company:
        (a)    within 12 months after your Total Disability begins; or
        (b)    as soon as reasonably possible after that.

Upon receipt of such proof, the Company will refund all premiums paid for your coverage from the date Total Disability began.

The life insurance continued will be subject to the reductions and terminations shown in the Policy.

DEFINITION OF TOTAL DISABILITY. For this benefit, Total Disability:
    (1)    means you are unable, due to sickness or injury, to perform the material and substantial duties of any employment or occupation for which you are or become qualified by reason of education, training, or experience; and
    (2)    must continue for at least 180 days.

From time to time, you must submit proof that your Total Disability is continuing.

Any life insurance which has been continued under this benefit will be terminated automatically on the day:
    (1)    you cease to be Totally Disabled;
    (2)    you fail to take a required medical examination;
    (3)    you fail to submit any required proofs; or
    (4)    you reach Social Security Normal Retirement Age (SSNRA), as shown in the Schedule of Insurance.

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 331 of 555    Lincoln/Lee 419

# ASSIGNMENTS

Personal Life Insurance and Accidental Death Insurance may be assigned. The assignments allowed under the Policy are absolute assignments and funeral assignments as described below.

No assignment will be binding on the Company unless and until:
(1)  it is made on a form furnished by the Company;
(2)  the original is completed and filed with the Company at its Group Insurance Service Office; and
(3)  it is approved by the Company.

The Company and the Employer do not assume responsibility for the validity or effect of an assignment.

ABSOLUTE ASSIGNMENTS. You may make an irrevocable assignment of your Personal Life Insurance and Accidental Death Insurance as a gift (with no consideration), providing you have the legal capacity and the mental capacity to do so. It may be made to a trust or to one or more of your relatives, their estates, or to a trustee of a trust under which one of the relatives is a beneficiary.

The term "relatives" includes, but is not limited to, your spouse, parents, grandparents, aunts, uncles, siblings, children, adopted children, stepchildren, and grandchildren.

In some states, community property is an established form of ownership that must be considered in making an assignment. If you make an absolute assignment to two or more assignees, such assignees will be joint owners with the right of survivorship between them. You should consult with your own legal advisor before making an assignment.

Once the assignment has been recorded by the Company, you can no longer change the beneficiary and cannot apply for conversion. Only the assignee can change the beneficiary designation if the previous designation is revocable. An assignment will have no effect on a prior irrevocable beneficiary designation. Only the assignee can apply for conversion but only when the Conversion Privilege provision would have been available to you in the absence of the assignment under the Policy.

An absolute assignment cannot be used as a collateral assignment.

FUNERAL ASSIGNMENTS. Upon your death, the beneficiary may assign the Personal Life Insurance benefit and Accidental Death Insurance benefit to a funeral home for payment of burial expenses. After payment has been made for the burial expenses to the assigned funeral home, the remaining death benefit is then paid in accord with the Beneficiary and Settlement Options sections of the Policy.

GL1102-3.0C 01

8

01/01/14

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 332 of 555    Lincoln/Lee 420

# CONVERSION PRIVILEGE

GENERAL CONVERSION PRIVILEGE.  If your insurance or insurance on a Dependent terminates due to:
(1)  termination of your employment or membership in an eligible class; or
(2)  a dependent's ceasing to be an eligible family member due to your death or divorce, or a child's marriage or attainment of the limiting age;
then an individual life policy, known as a conversion policy, may be purchased without evidence of insurability.

To purchase a conversion policy, application and payment of the first premium must be made within 31 days after the life insurance is terminated.

The conversion policy issued under this General Conversion Privilege will:
(1)  be in an amount not to exceed the amount of life insurance which was terminated; less the amount of any group life insurance for which the person becomes eligible within 31 days after insurance terminates;
(2)  be on any form (except term) then issued by the Company at the age and amount for which application is made;
(3)  be issued at the person's age at nearest birthday;
(4)  be issued without disability or other supplemental benefits; and
(5)  require premiums based on the class of risk to which the person then belongs.

CONVERSION UPON POLICY TERMINATION OR AMENDMENT.  A conversion policy also may be purchased if:
(1)  all or part of your insurance or insurance on a Dependent terminates due to amendment or termination of the Policy; and
(2)  the person applying for the conversion Policy has been covered continuously under the Policy for at least 5 years.

A conversion policy issued due to Policy termination or amendment will be subject to the same conditions as a policy issued under the General Conversion Privilege; except its amount may not exceed the lesser of:
(1)  $10,000; or
(2)  the amount of life insurance which terminates, less the amount of any group life insurance for which the person becomes eligible within 31 days after the termination.

The conversion policy will take effect on the later of:
(1)  its date of issue; or
(2)  31 days after the date the insurance terminated.

If death occurs during the 31 day conversion period, the Company will pay the life insurance which could have been converted even if no one applied for the conversion policy.

NOTICE.  When your insurance terminates, written notice of your right to convert will be given to you.  If written notice is not given to you at least 15 days before the end of the 31 day conversion period, an additional period in which to convert will be granted.  Any such extension of the conversion period will expire on the earliest of:
(1)  15 days after you are given the written notice; or
(2)  60 days after the end of the 31 day conversion period, even if you are never given such notice.

No death benefit will be payable under the Policy after the 31 day conversion period has expired even though the right to convert may be extended.

GL1102-4 MO

9

01/01/14

Case 6:18-cv-02063-CJW-MAR     Document 26-4     Filed 02/13/19     Page 333 of 555   Lincoln/Lee 421

# DEPENDENTS LIFE INSURANCE

DEATH BENEFIT.  If your Dependent spouse or child dies while insured under the Policy, the Company will pay the amount of Dependents Life Insurance in effect on the date of the death.  This amount is shown in the Schedule of Insurance.  The death benefit will be paid to you.  If you are not living when your Dependent dies, the death benefit will be paid to your beneficiary or in accord with the Facility of Payment section of the Policy.

EXCLUSION.  Benefits will not be payable if your Dependent's death:
(1)  results from suicide while sane; and
(2)  occurs within two years after insurance for that Dependent takes effect.

However, suicide is no defense to payment of life insurance benefits under the Policy unless the Company can show that your Dependent intended suicide when applying for the insurance.

DEPENDENT.  A Dependent means a person who meets the definition of a dependent of yours under the provisions of the U.S. Internal Revenue Code; and is an Insured Person's:
(1)  spouse who is not legally separated from you;
(2)  unmarried child at least 14 days but less than 26 years of age;
(3)  unmarried child less than 26 years of age and a full-time student at an accredited college or university; or
(4)  unmarried child who is totally and permanently disabled and who became so disabled prior to reaching 26 years of age.

A legally adopted child is considered your child from the date of placement in your home for an agency adoption; or from the date the adoption petition is filed, if later, for a private adoption.  In addition to naturally born and legally adopted children, the word "child" includes your stepchild or foster child; provided the child resides in your household and is dependent on you for principal support.  If more than one of a child's parents are insured under the Policy, that child may be insured under only one Certificate.

The term Dependent does not include an Insured Person, or anyone serving in the armed forces of any state or country.

ELIGIBILITY.  You become eligible for Dependents Life Insurance on the later of:
(1)  the date you become eligible for other coverages provided by the Policy;
(2)  the effective date of this section; or
(3)  the date you first acquire a Dependent (as defined by the Policy).

EFFECTIVE DATE.  Your Dependents Life Insurance will become effective on the later of:
(1)  the date you become eligible for Dependents Life Insurance;
(2)  the first day of the Insurance Month following the date you sign your payroll deduction order and apply for the coverage; or
(3)  the first day of the Insurance Month following the date the Company approves any required evidence of insurability on all your Dependents.

If you acquire a new Dependent child while insured for Dependents Life Insurance, his or her insurance will become effective on the date the Dependent child is acquired.

DELAYED EFFECTIVE DATE.  If a Dependent is in a Period of Limited Activity on the day his or her Dependent Life Insurance would otherwise take effect; then insurance for that Dependent will not take effect until the day after:
(1)  his or her final discharge from the health care facility; or
(2)  resuming the normal activities of a healthy person of the same age and sex.

"Period of Limited Activity" means a period when a spouse or child is confined in a health care facility; or, whether confined or not, is unable to perform the regular and usual activities of a healthy person of the same age and sex.

GL1102-5 VIT

10                                                                                                              01/01/14

EVIDENCE OF INSURABILITY.  Each of your Dependents must submit evidence of insurability satisfactory to the Company, if you:
(1) apply for Spouse Life Insurance in excess of the Guaranteed Acceptance Amount (or in any amount for a spouse if you are age 60 or older);
(2) apply to enroll for or increase Spouse Life Insurance more than 31 days after:
    (a) first becoming eligible for Dependent Life Insurance; or
    (b) first acquiring an eligible spouse;
(3) apply to enroll for or increase Children's Life Insurance more than 31 days after:
    (a) first becoming eligible for Dependent Life Insurance; or
    (b) first acquiring an eligible child;
(4) apply for Dependents Life Insurance after requesting:
    (a) to terminate the Dependents Insurance; or
    (b) to cancel premium payments by payroll deduction or through a Flexible Benefits Plan account; or
(5) apply to reinstate continued Dependents Life Insurance after it lapses due to failure to pay premium when due.

TERMINATION OF DEPENDENTS INSURANCE.  Your Dependents Insurance for any spouse or child will cease on the earliest of:
(1) the date the Policy terminates or your Employer ceases to be a Participating Employer;
(2) the date Dependent Insurance is discontinued under the Policy;
(3) the last day of the Insurance Month in which termination is requested;
(4) the last day of the Insurance Month for which premium payment is made for such Dependents Insurance;
(5) the date you cease to be in a class of employees which is eligible for Dependents Insurance or die;
(6) the date your spouse or child ceases to be an eligible Dependent, as defined by this section;
(7) the date your employment with the Participating Employer ends; or
(8) the date you or your Dependent enters the armed services of any state or country; except for duty of 30 days or less in the Reserves or National Guard.  (If you send proof of military service, the Company will refund any unearned premium.)

Dependents Insurance for your Dependent children will also cease on:
(1) the date your Personal Life Insurance ceases, if the child is enrolled under an Employee and Children's Plan; or
(2) the date Spouse Insurance for your spouse ceases, if the child is enrolled under a Spouse and Children's Plan.

When Dependents Insurance ceases because your employment ends, it may be possible to continue coverage in accord with the Portability Privilege section of this Certificate.  When Dependents Insurance ceases for any reason except nonpayment of premium, it may be possible to purchase an individual life policy in accord with the Conversion Privilege section of this Certificate.

MISSTATEMENT OF AGE.  If the age of a Dependent has been misstated, premiums will be subject to an equitable adjustment.  If the amount of benefit is dependent upon age, the benefit will be that which would have been payable based upon the Dependent's correct age.

ASSIGNMENT.  Dependents Insurance may not be assigned.

INCONTESTABILITY.  Except for nonpayment of premiums, the Company may not contest the validity of the Policy as to any Dependent, after it has been in force for two years during the lifetime of that Dependent. This clause will not affect the Company's right to contest claims made for accidental death or dismemberment benefits.

GL1102-5 VIT

Case 6:18-cv-02063-CJW-MAR     Document 26-4     Filed 02/13/19     Page 335 of 555    Lincoln/Lee 423

# ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

**DEATH OR DISMEMBERMENT BENEFIT FOR AN INSURED PERSON**.  The Company will pay the benefit listed below, if:
- (1)  you sustain an accidental bodily injury while insured under this provision; and
- (2)  that injury directly causes one of the following losses within 365 days after the date of the accident.

The loss must result directly from the injury and from no other causes.

| LOSS | BENEFIT FOR COMMON CARRIER ACCIDENT | BENEFIT FOR OTHER COVERED ACCIDENT |
|---|---|---|
| Loss of Life | 2 Times Principal Sum | Principal Sum |
| Loss of One Member (Hand, Foot or Eye) | Principal Sum | 1/2 Principal Sum |
| Loss of Two or More Members | 2 Times Principal Sum | Principal Sum |

The Principal Sum for your class is shown in the Schedule of Insurance.

**MAXIMUM PER PERSON**.  If you sustain more than one loss resulting from the same accident, the benefit:
- (1)  will be the one largest amount listed;
- (2)  will not exceed two times the Principal Sum for all of your combined losses resulting from a Common Carrier Accident; and
- (3)  will not exceed the Principal Sum for all of your combined losses resulting from any other covered accident.

**TO WHOM PAYABLE**.  Benefits for your loss of life will be paid in accord with the Beneficiary section. All other benefits will be paid to you.

**LIMITATIONS**.  Benefits are not payable for any loss to which a contributing cause is:
- (1)  intentional self-inflicted injury or self-destruction, while sane;
- (2)  disease, bodily or mental infirmity, or medical or surgical treatment of these; except for:
  - (a)  pyogenic infections resulting from an accidental bodily injury; or
  - (b)  the accidental ingestion of contaminated substances;
- (3)  participation in a riot;
- (4)  duty as a member of any military, naval or air force;
- (5)  war or any act of war, declared or undeclared;
- (6)  participation in the commission of a felony;
- (7)  voluntary use of drugs; except when prescribed by a Physician;
- (8)  voluntary inhalation of gas, including carbon monoxide, while sane;
- (9)  travel or flight in any aircraft, including balloons and gliders; except as a fare paying passenger on a regularly scheduled flight; or
- (10)  driving a vehicle while intoxicated.

GL1102-6.3A 01 MO

COMMON CARRIER

01/01/14

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 336 of 555    Lincoln/Lee 424

**DEFINITIONS**.

"Beneficiary" means the person(s) named on your enrollment form. You may change the Beneficiary by filing a written notice of the change with the Company at its Group Insurance Service Office.

"Common Carrier Accident" means a covered accidental bodily injury, which is sustained while riding as a fare paying passenger (not a pilot, operator or crew member) in or on, boarding or getting off from a Common Carrier

"Common Carrier" means any land, air or water conveyance operated under a license to transport passengers for hire.

"Intoxicated" shall be defined by the jurisdiction where the accident occurs. The exclusion will apply whether or not the driver is convicted.

"Loss of a Member" includes the following:
    (1)   "Loss of Hand or Foot," means complete severance through or above the wrist or ankle joint.
    (2)   "Loss of an Eye," means total and irrevocable loss of sight in that eye.

GL1102-6.3A 01 MO

COMMON CARRIER

13

01/01/14

Lincoln/Lee 425

# ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

**DEATH OR DISMEMBERMENT BENEFIT FOR A DEPENDENT SPOUSE**.  The Company will pay the benefit listed below, if:
   (1)   your Dependent Spouse sustains an accidental bodily injury while insured under this provision; and
   (2)   that injury directly causes one of the following losses within 365 days after the date of the accident.
The loss must result directly from the injury and from no other causes.

Your Dependent Spouse is eligible for the Accidental Death and Dismemberment Insurance if your Spouse:
   (1)   is insured by this provision on the date of the accident;
   (2)   is not legally separated from you; and
   (3)   is not serving on active duty in the armed forces of any state or country except for duty of 30 days or less for training in the Reserves or National Guard.

| LOSS | BENEFIT FOR COMMON CARRIER ACCIDENT | BENEFIT FOR OTHER COVERED ACCIDENT |
|---|---|---|
| Loss of Life | 2 Times Principal Sum | Principal Sum |
| Loss of One Member (Hand, Foot or Eye) | Principal Sum | 1/2 Principal Sum |
| Loss of Two or More Members | 2 Times Principal Sum | Principal Sum |

The Principal Sum which applies to your Dependent Spouse is shown in the Schedule of Insurance.

**MAXIMUM PER PERSON**.  If your Dependent Spouse sustains more than one loss resulting from the same accident, the benefit:
   (1)   will be the one largest amount listed;
   (2)   will not exceed two times the Principal Sum for all of that person's combined losses resulting from a Common Carrier Accident; and
   (3)   will not exceed the Principal Sum for all of that person's combined losses resulting from any other covered accident.

**TO WHOM PAYABLE**.  Benefits for a Dependent Spouse's loss will be payable:
   (1)   to you; or
   (2)   if you fail to survive your Dependent Spouse, to your Beneficiary or in accord with the Facility of Payment section of the Policy.

**LIMITATIONS**.  Benefits are not payable for any loss to which a contributing cause is:
   (1)   intentional self-inflicted injury or self-destruction, while sane;
   (2)   disease, bodily or mental infirmity, or medical or surgical treatment of these; except for:
      (a)   pyogenic infections resulting from an accidental bodily injury; or
      (b)   the accidental ingestion of contaminated substances;
   (3)   participation in a riot;
   (4)   duty as a member of any military, naval or air force;
   (5)   war or any act of war, declared or undeclared;
   (6)   participation in the commission of a felony;
   (7)   voluntary use of drugs; except when prescribed by a Physician;
   (8)   voluntary inhalation of gas, including carbon monoxide, while sane;
   (9)   travel or flight in any aircraft, including balloons and gliders; except as a fare paying passenger on a regularly scheduled flight; or
   (10)  driving a vehicle while intoxicated.

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 338 of 555    Lincoln/Lee 426

**DEFINITIONS**.

"Common Carrier Accident" means a covered accidental bodily injury, which is sustained while riding as a fare paying passenger (not a pilot, operator or crew member) in or on, boarding or getting off from a Common Carrier.

"Common Carrier" means any land, air or water conveyance operated under a license to transport passengers for hire.

"Intoxicated" shall be defined by the jurisdiction where the accident occurs. The exclusion will apply whether or not the driver is convicted.

"Loss of a Member" includes the following:
    (1)   "Loss of Hand or Foot," means complete severance through or above the wrist or ankle joint.
    (2)   "Loss of an Eye," means total and irrevocable loss of sight in that eye.

**INDIVIDUAL TERMINATION OF INSURANCE FOR A DEPENDENT SPOUSE**. Accidental Death and Dismemberment Insurance for your Dependent Spouse will cease on the earlier of:
    (1)   the date he or she is no longer an eligible spouse; or
    (2)   the date you are no longer eligible for coverage under the Policy.

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 339 of 555    Lincoln/Lee 427

# SAFE DRIVER BENEFIT

BENEFIT. If you die as a direct result of a covered auto accident, for which Accidental Death and Dismemberment Benefits are payable; then:
    (1)    an additional Seat Belt Benefit will be payable, if you were wearing a properly fastened seat belt at the time of the accident; and
    (2)    an additional Air Bag Benefit will be payable, if the auto was equipped with air bag(s).

The Seat Belt Benefit equals $10,000 or 10% of the Principal Sum, whichever is less; and the Air Bag Benefit equals $10,000 or 10% of the Principal Sum, whichever is less. The Seat Belt Benefit and Air Bag Benefit will not be less than $1,000. The Principal Sum is the amount payable because of the Insured Person's accidental death.

A copy of the police report must be submitted with the claim. The position of the seat belt or presence of an air bag must be certified by:
    (1)    the official accident report; or
    (2)    the coroner, traffic officer or other investigating officer.
Upon receipt of satisfactory written proof, the additional benefit will be paid in accord with the Beneficiary section.

DEFINITIONS. As used in this provision:

"Auto" means a 4-wheel passenger car, station wagon, jeep, pick-up truck or van-type car. It must be licensed for use on public highways. It includes a car owned or leased by the Employer.

"Intoxicated," "Impaired," or "Under the Influence of Drugs" shall be defined as by the jurisdiction where the accident occurs.

"Seat Belt" means a properly installed:
    (1)    seat belt or lap and shoulder restraint; or
    (2)    other restraint approved by the National Highway Traffic Safety Administration.

LIMITATIONS. Safe Driver Benefits will not be paid if:
    (1)    the Accidental Death and Dismemberment Benefit is not paid under the Policy for your death; or
    (2)    at the time of the accident, you or any other person who was driving the auto in which you were traveling:
        (a)    was driving without a valid drivers' license;
        (b)    was driving in excess of the legal speed limit; or
        (c)    was driving while intoxicated, impaired, or under the influence of drugs (except for drugs taken as prescribed by a Physician for the driver's use).
    The above limitations will apply, whether or not the driver is convicted.

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 340 of 555    Lincoln/Lee 428

<h1 style="text-align:center">CLAIMS PROCEDURES<br>FOR LIFE OR ACCIDENTAL DEATH AND DISMEMBERMENT BENEFITS</h1>

**NOTE: The Policy may include an Extension of Death Benefit, an Accelerated Death Benefit or a Living Benefit. If so, please refer to that section for special claim procedures.**

## NOTICE AND PROOF OF CLAIM

**Notice of Claim**. Written notice of an accidental death or dismemberment (AD&D) claim must be given within 20 days after the loss occurs; or as soon as reasonably possible after that.* The notice must be sent to the Company's Group Insurance Service Office. It should include your name, address and Policy number.

**Claim Forms**. When notice of claim is received, the Company will send claim forms for filing the required proof. If the Company does not send the forms within 15 days; then you or your Beneficiary (the claimant) may send the Company written proof of claim in a letter. It should state the nature, date and cause of the loss.

**Proof of Claim**. The Company must be given written proof of an AD&D claim within 90 days after the date of the loss; or as soon as reasonably possible after that.* Proof of claim must be provided at the claimant's own expense. It must show the nature, date and cause of the loss. In addition to the information requested on the claim form, documentation must include:
  (1) A certified copy of the death certificate, for proof of death.
  (2) A copy of any police report, for proof of accidental death or dismemberment.
  (3) A signed authorization for the Company to obtain more information.
  (4) Any other items the Company may reasonably require in support of the claim.

**\* Exception:** Failure to give notice or furnish proof of claim within the required time period will not invalidate or reduce the claim; if it is shown that it was done as soon as reasonably possible. These time limits will not apply to a life insurance claim, or to any claim while the claimant lacks legal capacity.

**EXAM OR AUTOPSY**. At anytime while a claim is pending, the Company may have you examined:
  (1) by a Physician of the Company's choice;
  (2) as often as reasonably required.
If you fail to cooperate with an examiner or fail to take an exam, without good cause; then the Company may deny benefits, until the exam is completed. In case of death, the Company may also have an autopsy done, where it is not forbidden by law. Any such exam or autopsy will be at the Company's expense.

**TIME OF PAYMENT OF CLAIMS**. Any benefits payable under the Policy will be paid:
(1) immediately after the Company receives complete proof of claim and confirms liability; and
(2) in no event more than 30 days after the Company receives acceptable proof of claim.

## TO WHOM PAYABLE

**Death**. Any benefits payable for your death will be paid in accord with the Beneficiary, Facility of Payment and Settlement Options sections of the Policy. If the Policy includes Dependent Life Insurance; then any benefits payable for an insured Dependent's death will be paid to:
  (1) you, if you survive that Dependent; or
  (2) your Beneficiary, or in accord with the Facility of Payment section; if you do not survive that Dependent.

**Dismemberment.** If the Policy includes Accidental Death and Dismemberment Benefits; then any benefit, other than your death benefit, will be paid to you.

GL1102-8A 02 MO                                                                 L/ADD

01/01/14

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 341 of 555    Lincoln/Lee 429

**NOTICE OF CLAIM DECISION.** The Company will send the claimant a written notice of its claim decision. If the Company denies any part of the claim; then the written notice will explain:
  (1)   the reason for the denial, under the terms of the Policy and any internal guidelines;
  (2)   how the claimant may request a review of the Company's decision; and
  (3)   whether more information is needed to support the claim.

The Company will send this notice:
  (1)   within 15 days after resolving the claim;
  (2)   within 30 days after receiving acceptable proof of claim; and
  (3)   if reasonably possible, within:
      (a)   90 days after receiving the first proof of a death or dismemberment claim; or
      (b)   45 days after receiving the first proof of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy.

**Delay Notice.** If the Company needs more than 15 days to process a claim, in a special case; then an extension will be permitted. If needed, the Company will send the claimant a written delay notice:
  (1)   by the 15th day after receiving the first proof of claim; and
  (2)   every 30 days after that, until the claim is resolved.

The notice will explain the special circumstances which require the delay, and when a decision can be expected. In any event, the Company must send written notice of its decision within:
  (1)   180 days after receiving the first proof of a death or dismemberment claim; or
  (2)   105 days after receiving the first proof of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy.
If the Company fails to do so; then there is a right to an immediate review, as if the claim was denied.

**Exception:** If the Company needs more information from the claimant to process a claim; then it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for claim processing.

**REVIEW PROCEDURE.** The claimant may request a claim review, within:
  (1)   60 days after receiving a denial notice of a death or dismemberment claim; or
  (2)   180 days after receiving a denial notice of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy.

To request a review, the claimant must send the Company a written request, and any written comments or other items to support the claim. The claimant may review certain non-privileged information relating to the request for review.

**Notice of Decision.** The Company will review the claim and send the claimant a written notice of its decision. The notice will explain the reasons for the Company's decision, under the terms of the Policy and any internal guidelines. If the Company upholds the denial of all or part of the claim; then the notice will also describe:
  (1)   any further appeal procedures available under the Policy;
  (2)   the right to access relevant claim information; and
  (3)   the right to request a state insurance department review, or to bring legal action.

For a death or dismemberment claim, the notice will be sent within 60 days after the Company receives the request for review; or within 120 days, if a special case requires more time. For a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy, the notice will be sent within 45 days after the Company receives the request for review; or within 90 days, if a special case requires more time.

GL1102-8A 02 MO                                                                      L/ADD
                                                                                     01/01/14
18

**Delay Notice.**  If the Company needs more time to process an appeal, in a special case; then it will send the claimant a written delay notice, by the 30th day after receiving the request for review.  The notice will explain:

(1) the special circumstances which require the delay;
(2) whether more information is needed to review the claim; and
(3) when a decision can be expected.

**Exception:**  If the Company needs more information from the claimant to process an appeal; then it must be supplied within 45 days after the Company requests it.  The resulting delay will not count towards the above time limits for appeal processing.

**Claims Subject to ERISA** (Employee Retirement Income Security Act of 1974).  Before bringing a civil legal action under the federal labor law known as ERISA, an employee benefit plan participant or beneficiary must exhaust available administrative remedies.  Under the Policy, the claimant must first seek two administrative reviews of the adverse claim decision, in accord with this section.  If an ERISA claimant brings legal action under Section 502(a) of ERISA after the required reviews; then the Company will waive any right to assert that he or she failed to exhaust administrative remedies.

**RIGHT OF RECOVERY**.  If benefits have been overpaid on any claim; then full reimbursement to the Company is required within 60 days.  If reimbursement is not made; then the Company has the right to:

(1) reduce future benefits until full reimbursement is made; and
(2) recover such overpayments from you, or from your Beneficiary or estate.

Such reimbursement is required whether the overpayment is due to fraud, the Company's error in processing a claim, or any other reason.

**LEGAL ACTIONS**.  No legal action to recover any AD&D benefits may be brought until 60 days after the required written proof of claim has been given.  No such legal action may be brought more than three years after the date written proof of claim is required.  These time limits will not apply to a life insurance claim, however.

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 343 of 555    Lincoln/Lee 431

# CERTIFICATE AMENDMENT

## Your Certificate is amended by the addition of the following provision.

### ACCELERATED DEATH BENEFIT

BENEFIT. The Accelerated Death Benefit is an advance payment of part of your Personal Life Insurance or Spouse Life Insurance. It may be paid to you, in a lump sum, once during your lifetime.

To qualify, you must:
(1) have satisfied the Active Work requirement under the Policy;
(2) have been insured under the Policy:
    (a) on the date of an injury which results in a Terminal condition; or
    (b) for 30 days before being diagnosed Terminal as a result of sickness; and
(3) have at least $2,000 of Personal Life Insurance under the Policy on the day before the Accelerated Death Benefit is paid.

To qualify, your Terminal Dependent spouse must:
(1) have satisfied the Nonconfinement or Period of Limited Activity requirement under the Policy;
(2) have been insured under the Policy:
    (a) on the date of an injury which results in a Terminal condition; or
    (b) for 30 days before being diagnosed Terminal as a result of sickness; and
(3) have at least $2,000 of Spouse Life Insurance under the Policy on the day before the Accelerated Death Benefit is paid.

Receiving the Accelerated Death Benefit will reduce the Remaining Life Insurance and the Death Benefit payable at death, as shown on the next page.

"Claimant," as used in this section, means the Terminal Insured Person or Terminal Dependent spouse for whom the Accelerated Death Benefit is requested.

"Terminal" means you or your Dependent spouse has a medical condition which is expected to result in death within 12 months, despite appropriate medical treatment.

APPLYING FOR THE BENEFIT. To withdraw the Accelerated Death Benefit, you (or your legal representative) must send the Company:
(1) written election of the Accelerated Death Benefit, on forms supplied by the Company; and
(2) satisfactory proof that the Claimant is Terminal, including a Physician's written statement.

The Company reserves the right to decide whether such proof is satisfactory.

Before paying an Accelerated Death Benefit, the Company must also receive the written consent of any irrevocable beneficiary, assignee or bankruptcy court with an interest in the benefit. Before paying an Accelerated Death Benefit for your Dependent spouse, the Company must also receive your written consent. (See Limitations 3, 4, 5, and 6.)

**NOTE: THIS IS NOT A LONG-TERM CARE POLICY. RECEIVING THIS ACCELERATED DEATH BENEFIT WILL REDUCE THE BENEFIT PAYABLE AT DEATH. ANY AMOUNT WITHDRAWN MAY BE TAXABLE INCOME, SO YOU SHOULD CONSULT A TAX ADVISOR BEFORE APPLYING FOR THIS BENEFIT.**

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 344 of 555   Lincoln/Lee 432

AMOUNT OF THE BENEFIT. You may elect to withdraw an Accelerated Death Benefit in any $1,000 increment; subject to:
(1) a minimum of $1,000 or 10% of the Claimant's amount of Life Insurance (whichever is greater); and
(2) a maximum of $250,000 or 75% of the Claimant's amount of Life Insurance (whichever is less).

To determine the Accelerated Death Benefit, the Company will use the lesser of A or B below:
A. the Claimant's amount of Life Insurance which is in force on the day before the Accelerated Death Benefit is paid; or
B. the Claimant's amount of Life Insurance which would be in force 12 months after that date; if the coverage is scheduled to reduce, due to age, within 12 months after the Accelerated Death Benefit is paid.

ADMINISTRATIVE CHARGE: NONE

WITHDRAWAL FEE: NONE

EFFECT ON AMOUNT OF LIFE INSURANCE. "Remaining Life Insurance" means the amount of Life Insurance which remains in force on the Claimant's life after an Accelerated Death Benefit is paid. The Remaining Life Insurance will equal:
(1) the Claimant's amount of Life Insurance which was used to determine the Accelerated Death Benefit (A or B above); minus
(2) any percentage by which the Claimant's coverage is scheduled to reduce, due to age; if the reduction occurs more than 12 months after the Accelerated Death Benefit is paid, and while he or she is still living; minus
(3) the amount of the Accelerated Death Benefit withdrawn.

PREMIUM: There is no additional charge for this benefit. Continuation of the Remaining Life Insurance will be subject to timely payment of the premium for the reduced amount; unless you qualify for waiver of premium under the Policy's Extension of Death Benefit provision, if included.

CONDITIONS. If the Claimant exercises the Conversion Privilege after an Accelerated Death Benefit is paid, the amount of the conversion policy will not exceed the amount of his or her Remaining Life Insurance. If the Claimant has Accidental Death and Dismemberment benefits under the Policy, the Principal Sum will not be affected by the payment of an Accelerated Death Benefit.

EFFECT ON DEATH BENEFIT. When the Claimant dies after an Accelerated Death Benefit is paid, the amount of Remaining Life Insurance in force on the date of death will be paid as a Death Benefit. Your Death Benefit will be paid in accord with the Beneficiary section of the Policy. Your Dependent spouse's Death Benefit will be paid to you, or in accord with the Dependent Life Insurance section of the Policy. If the Claimant dies after application for an Accelerated Death Benefit has been made, but before the Company has made payment; then the request will be void and no Accelerated Death Benefit will be paid. The amount of Life Insurance in force on the date of death will be paid in accord with Policy provisions.

EFFECT ON TAXES AND GOVERNMENT BENEFITS. Any Accelerated Death Benefit amount withdrawn may be taxable income to you. Receipt of the Accelerated Death Benefit may also affect the Claimant's eligibility for Medicaid, Supplemental Security Income and other government benefits. The Claimant should consult his or her own tax and legal advisor before applying for an Accelerated Death Benefit. The Company is not responsible for any tax owed or government benefit denied, as a result of the Accelerated Death Benefit payment.

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 345 of 555   Lincoln/Lee 433

LIMITATIONS. No Accelerated Death Benefit will be paid:
  (1)  if any required premium is due and unpaid;
  (2)  on any conversion policy purchased in accord with the Conversion Privilege;
  (3)  without the written approval of the bankruptcy court, if you have filed for bankruptcy;
  (4)  without the written consent of the beneficiary, if you have named an irrevocable beneficiary;
  (5)  without your written consent, if the Claimant is your Terminal Dependent spouse;
  (6)  without the written consent of the assignee, if you have assigned your rights under the Policy;
  (7)  if any part of the Life Insurance must be paid to your child, spouse or former spouse; pursuant to a legal separation agreement, divorce decree, child support order or other court order;
  (8)  if the Claimant is Terminal due to a suicide attempt, while sane; or due to an intentionally self-inflicted injury;
  (9)  if a government agency requires you or the Claimant to use the Accelerated Death Benefit to apply for, receive or continue a government benefit or entitlement; or
  (10) if an Accelerated Death Benefit has been previously paid for the Claimant under the Policy.

**This amendment takes effect on your effective date of coverage under the Policy. However, if you are not Actively at Work on that date, the change will not take effect until the date you resume Active Work. In all other respects, the Policy remains the same.**

**The Lincoln National Life Insurance Company**

_____
Officer of the Company

CERTIFICATE AMENDMENT

TO BE ATTACHED TO THE CERTIFICATE FOR GROUP POLICY NO.:  000400001000-12077

ISSUED TO:  Ashley Industrial Moldings, Inc.

Your Certificate is amended by the addition of the following provisions.

PRIOR INSURANCE CREDIT UPON TRANSFER OF<br>LIFE INSURANCE CARRIERS

This provision prevents loss of life insurance coverage for you, which could otherwise occur solely because of a transfer of insurance carriers.  The Policy will provide the following Prior Insurance Credit, when it replaces a prior plan.

"Prior Plan" means a prior carrier's group life insurance policy, which the Policy replaced within 1 day of the prior plan's termination date.

FAILURE TO SATISFY ACTIVE WORK RULE.  Subject to payment of premiums, the Policy will provide life coverage if you:
   (1)   were insured under the prior plan on its termination date;
   (2)   were otherwise eligible under the Policy; but were not Actively-At-Work due to Injury or Sickness on its Effective Date;
   (3)   are not entitled to any extension of life insurance under the prior plan; and
   (4)   are not Totally Disabled (as defined in the Extension of Death Benefit section of the Policy) on the date the Policy takes effect.

AMOUNT OF LIFE INSURANCE.  Until you satisfy the Policy's Active Work rule, the amount of your group life insurance under the Policy will not exceed the amount for which you were insured under the prior plan on its termination date.

This Amendment takes effect on your effective date of coverage under the Policy.  In all other respects, your Certificate remains the same.

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

_____<br>Officer of the Company

GL1102-AMEND. PC1

23

Prior Ins. Cred. - Life
01/01/14

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 347 of 555    Lincoln/Lee 435

## NOTICE TO POLICYHOLDERS REGARDING
## FILING COMPLAINTS WITH THE DEPARTMENT OF INSURANCE

**Questions regarding your policy or coverage should be directed to:**

**The Lincoln National Life Insurance Company**
**800-423-2765**

We want you to know that you may contact the Indiana Department of Insurance if you have a complaint or seek assistance from the governmental agency that regulates insurance. To contact the Department of Insurance, write or call:

State of Indiana Department of Insurance
Consumer Services Division
311 West Washington Street, Suite 300
Indianapolis, Indiana 46204

Consumer Hotline: (800) 622-4461; (317) 232-2395

Complaints can be filed electronically at www.in.gov/idoi.

IN NOTICE 05 - P/C

24

01/01/14

## SUMMARY OF INDIANA LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION

The Indiana Life and Health Insurance Guaranty Association provides coverage of claims under some types of policies if the insurer becomes impaired or insolvent. COVERAGE MAY NOT BE AVAILABLE UNDER YOUR POLICY. Even if coverage is provided, there are significant limits and exclusions. Coverage is always conditioned on residence in this state. Other conditions may also preclude coverage.

The Indiana Life and Health Insurance Guaranty Association will respond to any questions you may have which are not answered by this document. Your insurer and agent are prohibited by law from using the existence of the association or its coverage to sell you an insurance policy.

You should not rely of availability of coverage under the Indiana Life and Health Insurance Guaranty Association when selecting an insurer.

You may contact the Indiana Life and Health Insurance Guaranty Association as follows:

Indiana Life and Health Insurance Guaranty Association
251 E. Ohio Street, Suite 1070
Indianapolis, IN 46204
(317) 636-8204
www.inlifega.org

You may contact the Indiana Department of Insurance as follows:

Indiana Department of Insurance
311 W. Washington Street
Indianapolis, IN 46204
(317) 232-2385
www.in.gov/idoi

GAN-GRP-IN NOTICE-P/C 07

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 349 of 555    Lincoln/Lee 437

**CERTIFICATE AMENDMENT**

**TO BE ATTACHED TO THE CERTIFICATE FOR GROUP POLICY NO.: 000400001000**

**ISSUED TO: The Commerce Trust Company as Trustee for The Lincoln National Life Insurance Company Voluntary Insurance Trust**

**For Participating Employer: Ashley Industrial Moldings, Inc. (12077)**

It is agreed that the above policy be amended as follows.

Any exclusion for suicide for a death benefit under life insurance coverage is amended to read as follows:

EXCLUSION. Benefits will not be payable if your death or the death of your Dependent:
    (1)   results from suicide while sane or insane; and
    (2)   occurs within one year after your Personal Life Insurance or insurance for that Dependent takes effect.

If benefits are not payable as a result of your or your Dependent's suicide, the Company will promptly refund any premium from your or your Dependent's Effective Date of coverage.

If there is an increase to your amount of Personal Life Insurance or your Dependent's amount of life insurance following the Effective Date of coverage, the one-year period will apply; but only for the increased Amount of Personal Life Insurance or the increased amount of Dependent's life insurance.

If you or your Dependent were covered under any prior group life insurance policy that the Policy replaced within 1 day of the prior plan's termination date, the continuous months of coverage under the prior plan just before it terminated will count toward the one-year period.

The effective date of this Certificate Amendment is January 1, 2011 or your effective date of coverage under the Policy (whichever is later); but only with respect to losses incurred on or after that date. Nothing contained in this Certificate Amendment shall change any of the terms and conditions of the Policy, except as stated above.

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

*Chals A. Brawley*
Officer of the Company

Case 6:18-cv-02063-CJW-MAR     Document 26-4     Filed 02/13/19     Page 350 of 555    Lincoln/Lee 438



## LINCOLN FINANCIAL GROUP® PRIVACY PRACTICES NOTICE

The Lincoln Financial Group companies* are committed to protecting your privacy. To provide the products and services you expect from a financial services leader, we must collect personal information about you. **We do not sell your personal information to third parties.** We share your personal information with third parties as necessary to provide you with the products or services you request and to administer your business with us. This Notice describes our current privacy practices. While your relationship with us continues, we will update and send our Privacy Practices Notice as required by law. Even after that relationship ends, we will continue to protect your personal information. **You do not need to take any action because of this Notice, but you do have certain rights as described below.**

## INFORMATION WE MAY COLLECT AND USE

We collect personal information about you to help us identify you as our customer or our former customer; to process your requests and transactions; to offer investment or insurance services to you; to pay your claim; or to tell you about our products or services we believe you may want and use. The type of personal information we collect depends on the products or services you request and may include the following:

- **Information from you**: When you submit your application or other forms, you give us information such as your name, address, Social Security number; and your financial, health, and employment history.

- **Information about your transactions**: We keep information about your transactions with us, such as the products you buy from us; the amount you paid for those products; your account balances; and your payment history.

- **Information from outside our family of companies**: If you are purchasing insurance products, we may collect information from consumer reporting agencies such as your credit history; credit scores; and driving and employment records. With your authorization, we may also collect information, such as medical information from other individuals or businesses.

- **Information from your employer**: If your employer purchases group products from us, we may obtain information about you from your employer in order to enroll you in the plan.

## HOW WE USE YOUR PERSONAL INFORMATION

We may share your personal information within our companies and with certain service providers. They use this information to process transactions you have requested; provide customer service; and inform you of products or services we offer that you may find useful. Our service providers may or may not be affiliated with us. They include financial service providers (for example, third party administrators; broker-dealers; insurance agents and brokers, registered representatives; reinsurers and other financial services companies with whom we have joint marketing agreements). Our service providers also include non-financial companies and individuals (for example, consultants; vendors; and companies that perform marketing services on our behalf). Information we obtain from a report prepared by a service provider may be kept by the service provider and shared with other persons; however, we require our service providers to protect your personal information and to use or disclose it only for the work they are performing for us, or as permitted by law.

When you apply for one of our products, we may share information about your application with credit bureaus. We also may provide information to group policy owners, regulatory authorities and law enforcement officials and to others when we believe in good faith that the law requires disclosure. In the event of a sale of all or part of our businesses, we may share customer information as part of the sale. **We do not sell or share your information with outside marketers who may want to offer you their own products and services; nor do we share information we receive about you from a consumer reporting agency. You do not need to take any action for this benefit.**

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

Case 6:18-cv-02063-CJW-MAR   Document 26-4   Filed 02/13/19   Page 351 of 555   Lincoln/Lee 439

## SECURITY OF INFORMATION

We have an important responsibility to keep your information safe. We use safeguards to protect your information from unauthorized disclosure. Our employees are authorized to access your information only when they need it to provide you with products, services, or to maintain your accounts. Employees who have access to your personal information are required to keep it confidential. Employees are trained on the importance of data privacy.

Questions about your personal information should be directed to:

> Lincoln Financial Group
> Attn: Enterprise Compliance and Ethics
> Corporate Privacy Office, 7C-01
> 1300 S. Clinton St.
> Fort Wayne, IN 46802

**Please include all policy/contract/account numbers with your correspondence.**

*This information applies to the following Lincoln Financial Group companies:

First Penn-Pacific Life Insurance Company  
Lincoln Financial Group Trust Company, LLC  
Lincoln Financial Investment Services Corporation  
Lincoln Investment Advisors Corporation  

Lincoln Life & Annuity Company of New York  
Lincoln Retirement Services Company, LLC  
Lincoln Variable Insurance Products Trust  
The Lincoln National Life Insurance Company  

## *ADDITIONAL PRIVACY INFORMATION FOR INSURANCE PRODUCT CUSTOMERS*

### CONFIDENTIALITY OF MEDICAL INFORMATION

We understand that you may be especially concerned about the privacy of your medical information. We do not sell or rent your medical information to anyone; nor do we share it with others for marketing purposes. We only use and share your medical information for the purpose of underwriting insurance, administering your policy or claim and other purposes permitted by law, such as disclosure to regulatory authorities or in response to a legal proceeding.

### MAKING SURE MEDICAL INFORMATION IS ACCURATE

We want to make sure we have accurate information about you. Upon written request we will tell you, within 30 business days, what personal information we have about you. You may see a copy of your personal information in person or receive a copy by mail, whichever you prefer. We will share with you who provided the information. In some cases we may provide your medical information to your personal physician. We will not provide you with information we have collected in connection with, or in anticipation of, a claim or legal proceeding. If you believe that any of our records are not correct, you may write and tell us of any changes you believe should be made. We will respond to your request within 30 business days. A copy of your request will be kept on file with your personal information so anyone reviewing your information in the future will be aware of your request. If we make changes to your records as a result of your request, we will notify you in writing and we will send the updated information, at your request, to any person who may have received the information within the prior two years. We will also send the updated information to any insurance support organization that gave us the information, and any service provider that received the information within the prior 7 years.

Questions about your personal medical information should be directed to:

> Lincoln Financial Group
> Attn: Medical Underwriting
> P.O. Box 21008
> Greensboro, NC 27420-1008

The CONFIDENTIALITY OF MEDICAL INFORMATION and MAKING SURE INFORMATION IS ACCURATE sections of this Notice apply to the following Lincoln Financial Group companies:

First Penn-Pacific Life Insurance Company  
Lincoln Life & Annuity Company of New York  
The Lincoln National Life Insurance Company  

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 352 of 555    Lincoln/Lee 440

| Claim | Document Type | User Created | Date Created | Status | User Last Updated | Context | Updated | Content |
|---|---|---|---|---|---|---|---|---|
| 1072315-1127380-005 | Comments | Ashley Fults | 12/28/2015 16:13 | Unknown | Ashley Fults | | 12/28/2015 16:13 | |
| 1072315-1127380-005 | Comments | Ashley Fults | 12/28/2015 16:12 | Unknown | Ashley Fults | | 12/28/2015 16:12 | |
| 1072315-1127380-005 | Comments | Ashley Fults | 12/28/2015 16:11 | Unknown | Ashley Fults | | 12/28/2015 16:12 | |
| 1072315-1127380-005 | General Rationale | Ashley Fults | 12/28/2015 16:09 | Completed | Ashley Fults | Investigate Appeal | 12/28/2015 16:09 | 12/28/2015 – FIRST LEVEL AD & VAD APPEAL – RECEIVED 12/23/2015 John Lee was a 46 year old male who worked for AIM3 since 11/29/2010. His BLI (48K) & VLI (20K) coverages were paid; however, AD & VAD were denied after review of the CDC indicates he died from blunt force injuries in an ATV accident and the toxicology report confirmed his BAC was twice the legal limit (0.166). Of note, there is no accident report to refer to as it appears the family took him home from the site of the accident presuming he was still intoxicated. When he did not wake up, they brought him to the ED for evaluation. He was intubated at OSH then transported to UIHC for further care. Initial Appeal Correspondence 1) Letter of appeal from attorney 2) Hand drawn diagram of the accident site Reasons for Appealing 1) EE didn't crash the ATV as there was no object to crash in to 2) A cigarette at the sight was found near John's left hand, but he usually smoked with his right hand while driving 3) Lincoln's policy does not define vehicle – ATV is not a vehicle, it is a motorized machine 4) There is a specific definition in Iowa Code section 3211.1(1) for ATV (it appears they are under the impression Lincoln used a portion of Iowa Code Section 321.1(4); however, the information cited in the denial was taken straight from the IA DMV website) Pending Reason & Next Steps Reason 1) Call Completed – Made 2 call attempts to 319-283-3204; however, the phone line gave a fax sound. Could not connect with the attorney on this line. Attempted a call to the fax # listed of 319-283-1838 to see if they were mixed up on the letter and a woman answered but stated we must contact Larry at the other number (she confirmed it was accurate). Made one last attempt but it was still a fax sound. 2) Sent Acknowledgement Letters to Atty & ER 3) Sent file for copy 4) Will pend the claim until 02/08/2016 as requested in the appeal letter so that supplemental info can be provided. |
| 1072315-1127380 | Comments | Nadine Beck | 10/23/2015 10:34 | Completed | Nadine Beck | | 10/23/2015 10:34 | Recd a phone msg task fr CS. Vanessa called in to provide the ME name and phone #. I have already spoke to the MED Exam and also recd the requested med records from Iowa hosp# clinics for Mr Lee. The review is complete and reviewed with life senior. Denial sent. |
| 1072315-1127380-004 | Accidental Death Benefit Denial Reasons | Nadine Beck | 10/23/2015 8:44 | Completed | Nadine Beck | Select Decline Reasons | 10/23/2015 8:44 | |
| 1072315-1127380-001 | Accidental Death Benefit Denial Reasons | Nadine Beck | 10/23/2015 8:42 | Completed | Nadine Beck | Select Decline Reasons | 10/23/2015 8:42 | |
| 1072315-1127380 | Comments | Nadine Beck | 10/23/2015 8:38 | Completed | Nadine Beck | | 10/23/2015 8:38 | Reviewed records with Kerri S lifesenior and she advised to proceed with denial as Insured John E Lee was the driver of the ATV and was over the legal limit of alcohol .08, his reading per tox report was 0.166. ATV is considered a MV and must be registered in the state of IA. The Iowa dep of natural resources states that all All terrain veh must be legally registered unless veh meets one of more of the following- ATV is used for farming or other agri purposes, ATV is owned and used by US gove or political subd of another state. No accident report as the family drove insured home in private veh prior to taking to hosp. Recd med records with detail and interviews from family/spouse of what happened and all records confirm John E Lee was driving the ATV when he was found unconscious laying next to the ATV at the camp site where the family was camping. |
| 1072315-1127380 | Comments | Nadine Beck | 10/22/2015 16:22 | Completed | Nadine Beck | | 10/22/2015 16:22 | BASIC AD DEATH OR DISMEMBERMENT BENEFIT FOR AN INSURED PERSON. The Company will pay the benefit listed below, if: (1) an Insured Person sustains an accidental bodily injury while insured under this provision; and (2) that injury directly causes one of the following losses within 365 days after the date of the accident. The loss must result directly from the injury and from no other causes. LIMITATIONS. Benefits are not payable for any loss to which a contributing cause is: (1) intentional self-inflicted injury or self-destruction; (2) disease, bodily or mental infirmity, or medical or surgical treatment of these; (3) participation in a riot; (4) duty as a member of any military, naval or air force; (5) war or any act of war, declared or undeclared; (6) participation in the commission of a felony; (7) voluntary use of drugs; except when prescribed by a Physician; (8) travel or flight in any aircraft, including balloons and gliders; except as a fare paying passenger on a regularly scheduled flight; or (9) driving a vehicle while intoxicated. VOL AD DEATH OR DISMEMBERMENT BENEFIT FOR AN INSURED PERSON. The Company will pay the benefit listed below, if: (1) you sustain an accidental bodily injury while insured under this provision; and (2) that injury directly causes one of the following losses within 365 days after the date of the accident. The loss must result directly from the injury and from no other causes. LIMITATIONS. Benefits are not payable for any loss to which a contributing cause is: (1) intentional self-inflicted injury or self-destruction, while sane; (2) disease, bodily or mental infirmity, or medical or surgical treatment of these; except for: (a) pyogenic infections resulting from an accidental bodily injury; or (b) the accidental ingestion of contaminated substances; (3) participation in a riot; (4) duty as a member of any military, naval or air force; (5) war or any act of war, declared or undeclared; (6) participation in the commission of a felony; (7) voluntary use of drugs; except when prescribed by a Physician; (8) voluntary inhalation of gas, including carbon monoxide, while sane; (9) travel or flight in any aircraft, including balloons and gliders; except as a fare paying passenger on a regularly scheduled flight; or (10) driving a vehicle while intoxicated. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1072315-1127380 | Comments | Nadine Beck | 10/22/2015 16:15 | Completed | Nadine Beck | | 10/22/2015 16:15 | 10/22/15 nlb-Recd med records from Univ of IA Hosp & CLinics. Pt John E Lee Adm date 7/12/2015, adm diagn unresponsive, DOD 7/19/15. Glasgow coma scale total score 3-8, obesity, meta acidosis, hypophosphatemia, fall, acute resp failure following trauma and surgery, traumatic brain injury with loss of consciousness, facial bones, closed fracture, acute alcoholic intoxication without complication. Hosp course: The Pt was admitted to the hosp after being evaluated by the trauma team following an ATV accident. He was evaluated by the neurosurgery service and the intracranial pressure monitor was placed. He had multi spikes of high intracranial pressures and was provided with 7.5% sodium for these. The otolaryngology team was consulted for the zygomatic arch fractures and several facial fractures. They elected to not perform any surgical interventions. The ophthalmology team was consulted for an orbital rim fracture and did not elect for any emergent surgical intervention and their recommendations were followed up. The Orthopaedic team was consulted for an osseous density noted on plain film of left wrist which was also managed nonoperatively and a sling was provided for confort only. His neurological exam was poor and did not improve during his hosp course. A continuous EEG was obtained which did not reveal any ongoing seizure activity to explain his poor neurological exam. His poor prognosis and neurological exam were explained to the pt family. The palliative care team was consulted to discuss goals of care. They elected to make the pt Do Not Resuscitate and proceed with compassionate extubation. His bolt was discontinued just prior to compassionate extubation. The pt then subsequently expired. History of present illness: Pt has no med history but this is reportedly due to the fact the pt does nto se drs. Pt was reportedly camping and riding an ATV this past evening, 7/11/15. He did not return, and on search, family found the Pt unconscious lying next to the still running (and upright) ATV. He was ntoed to have blood on his face a the time. He was drinking prior to the reported fall, and was thus taken home by his family to recover. However, when the pt did not effectively recover, the family took the pt to the OSH. The pt was intubated. No imaging was obtained. Pt was subsequently transported to UIHC for further cares. Pt was ntoed to have decerebrate posturing of his upper extremities at UIHC, and will spontaneously move his bilateral lower extremities. ANother History: Pt 46 yo male who presents form the scene. History is obtain form his wife. He was camping with family today. Around 7pm he was found down and unresponsive next to the ATV he was driving. The ATV was running and upright and it appeared that he had collapsed while driving it and fallen to the ground. The family was able to get him home but he remained unresponsive so they took him to loc hosp. He was intubated due to his mental status and sent to UIHC. |
| 1072315-1127380 | Comments | Nadine Beck | 10/7/2015 13:22 | Completed | Nadine Beck | | 10/7/2015 13:22 | Called and spoke to ME office at 319-339-6197. The ME said there is no report that can be released without a supeona. She said the CDC is missing the part she entered on the paper work for the CDC which states John Lee was the driver of the ATV. She said she will look into this and see why her on line paper and the actual printed CDC are not the same. She said since the family drove him to the hospital there would not be any reports form police or ambulance. She agreed that seems odd why they drove him and did not call ambulance. She said if the CDC will change at all and the driver gets listed she will call me so I can get a copy. What I see on my CDC and what her records state are different but only in regards to him being the driver. She said she does not have a lot of info and if she were to get a supeona what she has may not even help. I asked if the Hosp may have some records, she said very possible and would try getting med records from the hosp. Thanked her for her assistance. |
| 1072315-1127380 | Comments | Nadine Beck | 10/7/2015 9:22 | Completed | Nadine Beck | | 10/22/2015 16:17 | Per Kaline Carter ee Tox findings .166 which is 2x over legal limit of .08 Recd corr fr Intake this morning late. Not my error. Email tox report and cdc to Kaline to have the tox finding for ethanol converted. 10/7/15 nlb-Cld Venessa back and she will call the coroner and try get a copy of the coroner report as she said 4 people talked to the coroner at the hospital after the accident and they should have some kind of report to sent. No police or incident reports as she drover him to Hosp in personal veh. She will call me back. |
| 1072315-1127380 | Comments | Nadine Beck | 9/24/2015 13:35 | Completed | Nadine Beck | | 9/24/2015 13:35 | Hello, Nadine. There was not an accident report. Based on the information that was told to us, is that Mr. Lee was transported to the hospital and treatment began at the University of Iowa. Mrs. Lee did not provide a contact for case worker. Please let me know if you should need anything else. Thanks. Janelle Smith |
| 1072315-1127380 | Comments | Nadine Beck | 9/24/2015 13:32 | Unknown | Nadine Beck | | 9/24/2015 13:32 | |
| 1072315-1127380-004 | Accidental Death Benefit Denial Reasons | Nadine Beck | 9/18/2015 8:15 | Completed | Nadine Beck | Select Decline Reasons | 9/18/2015 8:15 | |
| 1072315-1127380-001 | Accidental Death Benefit Denial Reasons | Nadine Beck | 9/18/2015 8:13 | Completed | Nadine Beck | Select Decline Reasons | 9/18/2015 8:13 | |
| 1072315-1127380-004 | General Rationale | Nadine Beck | 9/18/2015 8:12 | Completed | Nadine Beck | Review AD Contract Exclusions | 9/24/2015 13:39 | AD closed claim review, requested accident and tox reports not received for claim reviewd. Closed FTPP |
| 1072315-1127380-001 | General Rationale | Nadine Beck | 9/18/2015 8:11 | Completed | Nadine Beck | Review AD Contract Exclusions | 10/7/2015 11:34 | AD closed claim review, requested accident and tox reports not received for claim reviewd. Closed FTPP |
| 1072315-1127380 | Comments | Nadine Beck | 8/4/2015 15:33 | Completed | Nadine Beck | | 8/4/2015 15:33 | Paying $48000 basic and $20000 vol life to Vanessa Lee, wife/primary via DP her request. Bank Iowa rt#          ckg#          Sent grp ptm ltr Sent DP pmt ltr AD Pend for copy of incident/police report and tox report of John Lee. Requested tox report from Univ of Iowa and police/incident report fr Vanessa Lee. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1072315-1127380 | Comments | Nadine Beck | 8/4/2015 14:55 | Completed | Nadine Beck | | 10/22/2015 16:18 | AD REVIEW 10/7/15 nlb-email fr Kaline Carter states 166 mg is always read as .166 which is 2x over the legal limit of .08. Pending a report from Coroner. Vanessa said no police or incident reports. She drove husband to hospital her self. The coroner questions the 4 people at the scene. Both the basic and Vol policy have limitation #10 Driving a veh while intoxicated. Deny based on tox report and driving an ATV. 10/7/15 nlb-recd corr. Recd Univ of IA tox results for John E Lee has listed 166 mg/dL ethanol Plasma/Blood and NEG for all drug of abuse Urine tests and THC Urine NEG. 9/24/15 nlb-Recd auth from Univ of IA, will complete and send with orig ltr request for tox report f/u 30 days 10/23/15 9/18/15 nlb-No requested accident or tox report recd. CLosed AD FTPP. CDC recd has listed accident, ATV crash on 7/11/2015 8pm. Vol AD-$20,000-Benefits are not payable for any loss to which a contributing cause is: #7Vol use of drugs; except when prescribed by a phys #10 driving a vehicle while intoxicated. Basic AD-Two times BAE rd to the next higher $1000 max of $200,000. EE Basic AD is $95000. Policy - Benefits are not payable for any loss to which a contributing cause is: #7 voluntary use of drugs; except when prescribed by a phys #10 driving a vehicle while intoxicated. In the state of IA an ATV is considered a vehicle and has to be registered unless used for farming/agricultural purposes or US government or a political subdivision of another state. Need copy of accident or incident report Need copy of tox report- Univ of IA 30 pend 9/3/15 final 9/18/15 |
| 1072315-1127380 | Comments | Nadine Beck | 8/4/2015 14:42 | Completed | Nadine Beck | | 8/4/2015 14:42 | BENEF DESIGN Recd with clm fr grp a copy of insured EE John E Lee orig LFG enrollment for for basic life/AD and vol ee lifeAD has primary beneficiary listed as Vanessa G Lee wife sign/dated by John E LEe 2/22/2011 Located in AWD same enrollment form as grp submitted-GPIMAGING ENRLFORMT 2011 03 16 15 38 17 216221. |
| 1072315-1127380 | Comments | Nadine Beck | 8/4/2015 14:37 | Completed | Nadine Beck | | 8/4/2015 14:37 | DETERMINE IF ENROLLED WITHIN ELIG PERIOD Grp eff LFG 1/1/2011, list bill grp. EE has ardis member record for basic life, basic AD, vol ee life and vol ee AD eff 03/01/2011. VOI ee life and vol ee AD $20,000 eff 3/1/2011. Recd with clm fr grp a copy of ee orig LFG enrollment form has listed DOH 11/29/2010, class SAL, eff 3/1/11 vol ee life/AD election $20,000 sign/dated John E Lee 2/22/2011. Yes enrolled within elig period |
| 1072315-1127380 | Comments | Carla Larimore | 7/30/2015 18:09 | Completed | Carla Larimore | | 7/30/2015 18:09 | 7/30/2015 - Sent pend ltr to er for cdc and bene form. |
| 1072315-1127380 | Comments | Selene Salvatore | 7/24/2015 14:10 | Completed | Selene Salvatore | | 7/24/2015 14:10 | 7/24 - No missing info call made. Claim just recvd, allowing 2 days for cdc. |

| Claim Number | Claim Type | Date/Time | Method | Reason | Description |
|---|---|---|---|---|---|
| 1072315-1127380 | Life Claim | 7/23/2015 16:16 | Mail | Enquiry | This contact has been created automatically during the indexing of a document. |
| 1072315-1127380 | Life Claim | 9/29/2015 15:33 | Phone | Other | adv acc report not recd yet. closed claim until recd. Caller Type: BY Beneficiary Phone # |
| 1072315-1127380 | Life Claim | 10/6/2015 11:31 | Phone | Other | john lee have we rec'd the accident report yet? adv sent accident report to his work about 2 weeks ago adv we rec'd the auth form wife stated we need to fill out the Auth form letting the hospital know what we are needing and fax the auth form to them Please continue filling out the auth form and fax to the hospital ph#    -     please call with a status update Caller Type: IS Insured Phone # |
| 1072315-1127380 | Life Claim | 10/7/2015 9:46 | Phone | Claim Status | Cld Venessa back and she will call the coroner and try get a copy of the coroner report as she said 4 people talked to the coroner at the hospital after the accident and they should have some kind of report to sent. No police or incident reports as she drover him to Hosp in personal veh. She will call me back. |
| 1072315-1127380 | Life Claim | 10/7/2015 13:22 | Phone | Claim Status | CLd spoke to asst ME. Iowa has ME not Coroners. No reports can be release without a supeona. She said her on line notes for CDC have John Earl Lee as driver but it does not relay onto the CDC and she cannot add it. She will ck and try and find out why the CDC is not exact as her notes on what it should say and read. |
| 1072315-1127380 | Life Claim | 10/16/2015 17:08 | Phone | Other | phone-                confirmed ce notes from 10-7 , she stated she was waiting for a f/u from CE as what she found out on the accident report- advised her will leave open note for CE to call her back Caller Type: IS Insured Phone # |

| 1072315-1127380 | Life Claim | 10/19/2015 9:11 | Phone | Claim Status | cld Venessa back and left msg to call me with questions. Letter sent for med records on 10 8 pending records to arrive. Need get idea of what happended time of accident, Who driver of ATV?? |
|---|---|---|---|---|---|
| 1072315-1127380 | Life Claim | 10/23/2015 10:21 | Phone | Other | John E Lee would like to speak with Nadine-CE found the med examiner rebecca franklin Ph# 319-339-6197 ph# 319-325-0479-cell spouse called in to provide med examiner's ph numbers listed above. She wanted you to reach out to her in regards to the LI claim Caller Type: IS Insured Phone # |
| 1072315-1127380 | Life Claim | 10/26/2015 16:51 | Phone | Other | Transferred to CE vm as requested by the caller 2894 Caller Type: AR Authorized Representative Phone # |
| 1072315-1127380 | Life Claim | 10/27/2015 10:13 | Phone | Claim Status | cld left Vanessa Lee msg to call me. Advised I did send letter dated 10/23 regarding the AD review and claim decision, she should have letter anyday for review. |
| 1072315-1127380 | Life Claim | 12/4/2015 12:14 | Phone | Other | wants to know what the policy is worth had it not been denied? Adv she needs to speak w/ the CE ext 2894 - sent to VM Caller Type: IS Insured Phone # |
| 1072315-1127380 | Life Claim | 12/4/2015 12:25 | Phone | Claim Status | Cld Vanessa back and left msg with basic AD $95000 and vol AD $20,000 per grp policy. Amt denied and lette sent, follow direction of denial letter if appeal. |

| | | | | | |
|---|---|---|---|---|---|
| 1072315-1127380-005 | Life Appeal | 12/28/2015 16:09 | Phone | Appeal | Made 2 call attempts to 319-283-3204; however, the phone line gave a fax sound. Could not connect with the attorney on this line. Attempted a call to the fax # listed of 319-283-1838 to see if they were mixed up on the letter and a woman answered but stated we must contact Larry at the other number (she confirmed it was accurate). Made one last attempt but it was still a fax sound. AMFULTS |

LARRY F. WOODS
ATTORNEY AT LAW
24 NORTH FREDERICK AVENUE
OELWEIN, IA 50662

REC'D DEC 23 2015

6810GX2337

WATERLOO IA 507
19 DEC 2015 PM 2 L



# *LARRY F. WOODS*

**24 NORTH FREDERICK AVENUE**
**OELWEIN, IOWA 50662**
**PH. (319) 283-3204**
**FAX (319) 283-1838**

December 19, 2015

Risk Services
The Lincoln National Life Insurance Company
P. O. Box 2337
Omaha, Nebraska 68103

> RE: Policy Holder: Ashley Industrial Molding, Inc.
> Policy No: 00400601000-12077
> 000010132080-00000
> Claim Number: 1072315-1127380
> Claimant: John Lee

TO WHOM IT MAY CONCERN:

My office has been retained by Mrs. John (Vanessa) Lee regarding the denial of her claim for Accidental Death benefits. Your company's denial of claim letter is date October 23, 2015, and was received by Vanessa Lee on October 26, 2015. At this time, Mrs. Lee disagrees with your denial of the claim. This letter should be considered as an appeal of the Lincoln Financial Group's decision denying the accidental death benefits to Vanessa Lee.

At this time, the additional information is provided in support of Vanessa Lee's appeal of the denial of her claim. The information is being provided, and will be supplemented as additional information becomes available.

1. The description of the injury on the death certificate is listed as an ATV crash. Vanessa Lee disagrees with the description of the injury. There are several reasons for the disagreement. In a crash, there is must be some object or thing for the ATV to have crashed into. The ATV was found running. The area it was found running was an open area. The area is a sand pit. There were no solid objects for the vehicle to have crashed into within several hundred feet of where the vehicle and John Lee were found. The general area where the ATV was operated is a totally open

Lincoln National Life Insurance Co.
December 19, 2015
Page 2
Claimant:    John E. Lee
Claim No.    1072315-1127380

area.    Pictures will be taken and furnished this appeal of
the approximate location of the vehicle.  Those pictures will
show  that there is nothing for the vehicle to  have  crashed
into  near the location where both John Lee and  the  vehicle
was found.

2.    The  second reason for the dispute is  that  the  a
crash that would cause the blunt force head injuries to  John
Lee  would have had to show some type of significant  damage.
The  only  damage to the ATV was that the light  was  hanging
loose in front.    It was not broke, and had only a scratch on
it.    The  light  is located between the  handle  bars.    The
condition  of the light strongly indicated that  the  vehicle
came  did  not come in contact with any type of  object  that
would head trauma.

3.    The  location of John Lee when he  was  found  also
indicates  that the blunt force trauma did not come from  the
ATV  striking some object resulting in him hitting his  head.
John  Lee was found lying on the ground with the top  of  his
head at approximately the same latitude as the handle bars on
the ATV.  His body was about parallel with the ATV,  and  his
feet located parallel to the back of the ATV.    John's  right
leg was not straight, with his foot more toward the step.   It
appears that John Lee may have been stepping off the  vehicle
when he slipped and fell.    There is no indication that  John
was thrown from the ATV by striking any object or collapsing.
Since the ATV was still running and upright,  the ATV did not
flip or throw John Lee off from it.  A diagram is attached to
this letter and made a part of this appeal by this reference.

4.    In  response to the conclusion  contained  in  the
denial of "The ATV was running and upright,  and it  appeared
that  he  had  collapse while driving it and  fallen  to  the
ground", Vanessa Lee also believes that there is an important
fact not set forth.  At the time John Lee was found, he had a
cigarette  located in or near his hand.    John usually  drove
with a cigarette located in his hand.    Vanessa believes that
John  normally  drove  with a cigarette in  his  right  hand.
However, the cigarette was near his left hand as he was lying
on  the ground.    For the cigarette to in or near  his  hand,
John  Lee  had  to be conscious at the time he  got  off  the

Lincoln National Life Insurance Co.
December 19, 2015
Page 3
Claimant:   John E. Lee
Claim No.   1072315-1127380

vehicle, and appears to have transferred he cigarette. It appeared to Vanessa Lee that there was some bleeding on John Lee's face and/or head. However, she never found any trace of blood on the ATV. Thus, the conclusion that John Lee collapsed while driving the ATV is without merit.

5. Also, the denial of benefits made the finding that vehicle is an ATV requiring to be registered. The language cited appears to be an attempt to paraphrase Iowa Code Section 321.1(4). However, there is a specific definition of an All Terrain Vehicle contained in Iowa Code Section 3211.1(1). That definition is different. Further, there is a separate chapter on All Terrain Vehicle in the Iowa Code. From your use of this statutory language, I assume that the insurance policy does not contain a definition of the word "vehicle" in it. Vanessa Lee does not believe that the Department of Natural Resources requirement make the vehicle being driven by John Lee as a vehicle within the definition of the policy. (Note: While the terms ATV and All Terrain Vehicle(s) are used in this appeal letter, Vanessa Lee does not concede that the motorized machine driven by John Lee is a vehicle that comes within the purview of the insurance policy exclusion related to "Driving a vehicle while intoxicated")

At this time Vanessa Lee requests that your company provide my office with a copy of the complete insurance policy number 00400001000-12077 000010132080-00000. She also requests that a copy of all of the records relied on by the person or group who made the decision to deny the claim be furnished to my office. She may also have additional information to provide as it become available. She would request until February 8, 2016. to supplement the facts set forth in this appeal letter.

I will be looking forward to obtaining a copy of the policy and a copy of the medical and other records contained in your file regarding this matter. If you have any questions regarding the contents of this letter, this appeal or any other related matter, please contact me. Thank you for your time, and attention. I will be looking forward to obtaining the requested policy. and records at your convenience.

Lincoln National Life Insurance Co.
December 19, 2015
Page 4
Claimant:    John E. Lee
Claim No.    1072315-1127380


        Thank you for your time and attention.    Please   confirm
the   date that your office finds that this notice   of   appeal
has been provided to your office.

                              Very truly yours,

                              _[signature]_
                              Larry F. Woods

Enc:   Diagram
CC:    Client
LFW/km



# LARRY F. WOODS  FAX

24 North Frederick Ave.

Oelwein, IA 50662

Phone: 319- 283- 3204

Fax:  319 283-9193

To: _Risk Service_       From _Larry Woods_

FAX: _402-361-1460_      Date _12/19/2015_

Phone: _____   Pages _7 including this_

RE: _John Lee Claim_     CC: _____

URGENT    FOR REVIEW    PLEASE COMMENT    PLEASE REPLY    PLEASE RECYCLE

*Comments: _This is an appeal by Vanessa Lee of the denial of her claim._

Confidential : YES                Restricted Distribution : YES

IF YOU HAVE ANY PROBLEMS RECEIVING THIS FACSIMILE, PLEASE CONTACT US AT 319-283-3204

This information contained in this facsimile message is attorney privilege and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient you are hereby notified that any dissemination, distribution or copying of this communications is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone, and return original message to the above address via U.S. Postal Service. Thank You

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 365 of 555    Lincoln/Lee 453

# LAW OFFICE OF
# *LARRY F. WOODS*
## 24 NORTH FREDERICK AVENUE
## OELWEIN, IOWA 50662
## PH. (319) 283-3204
## FAX (319) 283-1838

December 19, 2015

Risk Services
The Lincoln National Life Insurance Company
P. O. Box 2337
Omaha, Nebraska 68103

     RE:   Policy Holder: Ashley Industrial Molding,  Inc.
          Policy No:        00400001000-12077
                    000010132080-00000
          Claim Number:     1072315-1127380
          Claimant:         John Lee

TO WHOM IT MAY CONCERN:

My office has been retained by Mrs.  John (Vanessa) Lee regarding the denial of her claim for Accidental Death benefits.   Your company's denial of claim letter is date October 23, 2015, and was received by Vanessa Lee on October 26, 2015.   At this time, Mrs. Lee disagrees with your denial of the claim.   This letter should be considered as an appeal of the Lincoln Financial Group's decision denying the accidental death benefits to Vanessa Lee.

At this time, the additional information is provided in support of Vanessa Lee's appeal of the denial of her claim. The information is being provided, and will be supplemented as additional information becomes available.

1.    The description of the injury on the death certificate is listed as an ATV crash. Vanessa Lee disagrees with the description of the injury.  There are several reasons for the disagreement.  In a crash, there is must be some object or thing for the ATV to have crashed into.  The ATV was found running.  The area it was found running was an open area.  The area is a sand pit.  There were no solid objects for the vehicle to have crashed into within several hundred feet of where the vehicle and John Lee were found. The general area where the ATV was operated is a totally open

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 366 of 555    Lincoln/Lee 454

Lincoln National Life Insurance Co.
December 19, 2015
Page 2
Claimant:   John E. Lee
Claim No.   1072315-1127380

area.   Pictures will be taken and furnished this  appeal  of
the approximate location of the vehicle.  Those pictures will
show  that there is nothing for the vehicle to  have  crashed
into  near the location where both John Lee and  the  vehicle
was found.

     2.   The  second reason for the dispute is  that  the  a
crash that would cause the blunt force head injuries to  John
Lee  would have had to show some type of significant  damage.
The  only  damage to the ATV was that the light  was  hanging
loose in front.   It was not broke, and had only a scratch on
it.   The  light  is located between the  handle  bars.   The
condition  of the light strongly indicated that  the  vehicle
came  did  not come in contact with any type of  object  that
would head trauma.

     3.   The  location of John Lee when he  was  found  also
indicates  that the blunt force trauma did not come from  the
ATV  striking some object resulting in him hitting his  head.
John  Lee was found lying on the ground with the top  of  his
head at approximately the same latitude as the handle bars on
the ATV.  His body was about parallel with the ATV,  and  his
feet located parallel to the back of the ATV.   John's  right
leg was not straight, with his foot more toward the step.  It
appears that John Lee may have been stepping off the  vehicle
when he slipped and fell.   There is no indication that  John
was thrown from the ATV by striking any object or collapsing.
Since the ATV was still running and upright,  the ATV did not
flip or throw John Lee off from it.  A diagram is attached to
this letter and made a part of this appeal by this reference.

     4.   In  response to the conclusion  contained  in  the
denial of "The ATV was running and upright,  and it  appeared
that  he  had  collapse while driving it and  fallen  to  the
ground", Vanessa Lee also believes that there is an important
fact not set forth.  At the time John Lee was found, he had a
cigarette  located in or near his hand.   John usually  drove
with a cigarette located in his hand.  Vanessa believes that
John  normally  drove  with a cigarette in  his  right  hand.
However, the cigarette was near his left hand as he was lying
on  the ground.   For the cigarette to in or near  his  hand,
John  Lee  had  to be conscious at the time he  got  off  the

Lincoln National Life Insurance Co.
December 19, 2015
Page 3
Claimant:   John E. Lee
Claim No.   1072315-1127380

vehicle,  and appears to have transferred he  cigarette.   It
appeared to Vanessa Lee that there was some bleeding on  John
Lee's face and/or head.   However, she never found any  trace
of  blood on the ATV.   Thus,  the conclusion that  John Lee
collapsed while driving the ATV is without merit.

     5.    Also,  the denial of benefits made the finding that
vehicle is an ATV requiring to be registered.   The  language
cited  appears  to  be an attempt  to  paraphrase  Iowa  Code
Section 321.1(4).   However, there is a specific definition of
an  All  Terrain  Vehicle  contained  in  Iowa  Code  Section
321I.1(1).   That definition is different.   Further, there is
a  separate chapter on All Terrain Vehicle in the Iowa  Code.
From your use of this statutory language,  I assume that  the
insurance  policy does not contain a definition of  the  word
"vehicle"  in  it.   Vanessa Lee does not  believe  that  the
Department of Natural Resources requirement make the  vehicle
being  driven by John Lee as a vehicle within the  definition
of the policy.   (Note:   While the terms ATV and All Terrain
Vehicle(s) are used in this appeal letter,  Vanessa Lee  does
not concede that the motorized machine driven by John Lee  is
a  vehicle  that comes within the purview  of  the  insurance
policy  exclusion  related  to  "Driving  a vehicle  while
intoxicated")

     At  this  time Vanessa Lee requests  that  your  company
provide  my  office  with a copy of  the  complete  insurance
policy number 00400001000-12077 000010132080-00000.   She also
requests  that a copy of all of the records relied on by  the
person  or group who made the decision to deny the  claim  be
furnished  to  my  office.   She may  also  have  additional
information  to  provide as it become available.   She  would
request until February 8,  2016, to supplement the facts  set
forth in this appeal letter.

     I  will  be looking forward to obtaining a copy  of  the
policy and a copy of the medical and other records  contained
in your file regarding this matter. If you have any questions
regarding  the contents of this letter,  this appeal  or  any
other related matter,  please contact me.  Thank you for your
time,  and attention.  I will be looking forward to obtaining
the requested policy and records at your convenience.

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 368 of 555    Lincoln/Lee 456

Lincoln National Life Insurance Co.
December 19, 2015
Page 4
Claimant: John E. Lee
Claim No. 1072315-1127380


    Thank you for your time and attention. Please confirm the date that your office finds that this notice of appeal has been provided to your office.

                Very truly yours,


                Larry F. Woods

Enc: Diagram
CC: Client
LFW/km

Case 6:18-cv-02063-CJW-MAR Document 26-4 Filed 02/13/19 Page 369 of 555 Lincoln/Lee 457



PAGE 6/6 * RCVD AT 12/19/2015 3:06:23 PM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:3192831838 * DURATION (mm-ss):01-48



October 23, 2015

**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

ASHLEY INDUSTRIAL MOLDING INC
KAREN MAXWELL
310 SOUTH WABASH
ASHLEY IN 46705

RE:    Policy Number:    000400001000-12077
                         000010132080-00000
       Claim Number:     1072315-1127380
       Claimant:         John E Lee

Dear Ms. Maxwell:

We have completed a full review of the above referenced claim for Accidental Death insurance benefits.  Unfortunately, we are unable to pay proceeds on the following benefits:

The policy issued to Ashley Industrial Molding, Inc by The Lincoln National Life Insurance Company states the following:

Basic Accidental Death
DEATH OR DISMEMBERMENT BENEFIT FOR AN INSURED PERSON. The Company will pay the benefit listed below, if:
(1) an Insured Person sustains an accidental bodily injury while insured under this provision; and
(2) that injury directly causes one of the following losses within 365 days after the date of the accident.
The loss must result directly from the injury and from no other causes.

LIMITATIONS. Benefits are not payable for any loss to which a contributing cause is:
(1) intentional self-inflicted injury or self-destruction;
(2) disease, bodily or mental infirmity, or medical or surgical treatment of these;
(3) participation in a riot;
(4) duty as a member of any military, naval or air force;
(5) war or any act of war, declared or undeclared;
(6) participation in the commission of a felony;

Packet: 306183

©2015 Lincoln National Corporation

www.LincolnFinancial.com

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

(7) voluntary use of drugs; except when prescribed by a Physician;
(8) travel or flight in any aircraft, including balloons and gliders; except as a fare paying passenger on a regularly scheduled flight; or
(9) driving a vehicle while intoxicated.

Voluntary Accidental Death
**DEATH OR DISMEMBERMENT BENEFIT FOR AN INSURED PERSON**. The Company will pay the benefit listed below, if:
(1) you sustain an accidental bodily injury while insured under this provision; and
(2) that injury directly causes one of the following losses within 365 days after the date of the accident.
The loss must result directly from the injury and from no other causes.

LIMITATIONS. Benefits are not payable for any loss to which a contributing cause is:
(1) intentional self-inflicted injury or self-destruction, while sane;
(2) disease, bodily or mental infirmity, or medical or surgical treatment of these; except for:
(a) pyogenic infections resulting from an accidental bodily injury; or
(b) the accidental ingestion of contaminated substances;
(3) participation in a riot;
(4) duty as a member of any military, naval or air force;
(5) war or any act of war, declared or undeclared;
(6) participation in the commission of a felony;
(7) voluntary use of drugs; except when prescribed by a Physician;
(8) voluntary inhalation of gas, including carbon monoxide, while sane;
(9) travel or flight in any aircraft, including balloons and gliders; except as a fare paying passenger on a regularly scheduled flight; or
(10) driving a vehicle while intoxicated.

We have responded directly to Vanessa Lee with a letter explaining why we have denied this claim. We are unable to provide you with a copy of our correspondence due to the confidential nature of the information contained in the letter.

Vanessa Lee has been provided with appeal rights should shet disagree with our decision.

If you should have any questions regarding this matter, please contact our office at 1-800-423-2765.

Sincerely,


Nadine Beck
Claims Examiner II, Claims
The Lincoln National Life Insurance Company

Lincoln/Lee 460



October 23, 2015

**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

VANESSA LEE

RE:    PolicyHolder:    Ashley Industrial Molding, Inc
        Policy Number:    000400001000-12077
                     000010132080-00000
        Claim Number:    1072315-1127380
        Claimant:    John E Lee

Dear Ms. Lee:

We have completed a full review of the above referenced claim for Accidental Death insurance benefits. Unfortunately, we are unable to pay the proceeds.

Basic Accidental Death
DEATH OR DISMEMBERMENT BENEFIT FOR AN INSURED PERSON. The Company will pay the benefit listed below, if:
(1) an Insured Person sustains an accidental bodily injury while insured under this provision; and
(2) that injury directly causes one of the following losses within 365 days after the date of the accident.
The loss must result directly from the injury and from no other causes.

LIMITATIONS. Benefits are not payable for any loss to which a contributing cause is:
(1) intentional self-inflicted injury or self-destruction;
(2) disease, bodily or mental infirmity, or medical or surgical treatment of these;
(3) participation in a riot;
(4) duty as a member of any military, naval or air force;
(5) war or any act of war, declared or undeclared;
(6) participation in the commission of a felony;
(7) voluntary use of drugs; except when prescribed by a Physician;
(8) travel or flight in any aircraft, including balloons and gliders; except as a fare paying passenger on a regularly scheduled flight; or
(9) driving a vehicle while intoxicated.

Packet: 306180

©2015 Lincoln National Corporation

www.LincolnFinancial.com

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Lincoln/Lee 461

Voluntary Accidental Death
DEATH OR DISMEMBERMENT BENEFIT FOR AN INSURED PERSON. The Company will pay the benefit listed below, if:
(1) you sustain an accidental bodily injury while insured under this provision; and
(2) that injury directly causes one of the following losses within 365 days after the date of the accident.
The loss must result directly from the injury and from no other causes.

LIMITATIONS. Benefits are not payable for any loss to which a contributing cause is:
(1) intentional self-inflicted injury or self-destruction, while sane;
(2) disease, bodily or mental infirmity, or medical or surgical treatment of these; except for:
(a) pyogenic infections resulting from an accidental bodily injury; or
(b) the accidental ingestion of contaminated substances;
(3) participation in a riot;
(4) duty as a member of any military, naval or air force;
(5) war or any act of war, declared or undeclared;
(6) participation in the commission of a felony;
(7) voluntary use of drugs; except when prescribed by a Physician;
(8) voluntary inhalation of gas, including carbon monoxide, while sane;
(9) travel or flight in any aircraft, including balloons and gliders; except as a fare paying passenger on a regularly scheduled flight; or
(10) driving a vehicle while intoxicated.

According to the State of Iowa Department of Public Health Certificate of Death received for John E Lee it has listed the cause and manner of death as Blunt Force Injuries of the Head, accidental ATV Crash. The University of Iowa Hospitals & Clinics lab report for John E Lee final result dated 07/12/2015 has a positive Blood Ethanol reading of 166 mg/dL or 0.166 BAC which is over the legal limit of .08. The medical records received from University of Iowa Hospitals & Clinics state the patient John E Lee was reportedly camping and riding an ATV on 07/11/2015, he did not return and on search the family found the patient unconscious lying next to the still running ATV. He was noted to have blood on his face at the time. He was drinking prior to the reported fall, and was thus taken home by his family to recover. When the patient did not effectively recover, the family took the patient to the OSH and he was intubated. The patient was subsequently transported to UIHC for further care. The medical records stated the history was obtained from John E Lee's wife which further state he was camping with family and around 7pm he was found down and unresponsive next to the ATV he was driving. The ATV was running and upright and it appeared that he had collapsed while driving it and fallen to the ground. The Family was able to get him home but he remained unresponsive so they took him to local hospital. The Iowa Department of Natural resources state that all all-terrain vehicles (ATV's) must be legally registered unless the vehicle meets one or more of the following criteria:
The ATV is used for farming or other agricultural purposes or the ATV is owned and used by the United States government or a political subdivision of another state. Per the above policy wording and the fact John E Lee was driving the ATV with a BAC level of 0.166 which is over the legal limit of .08 this claim is being denied.

You or your authorized representative may request a review of your denied claim. Such request must be made in writing and submitted to us at the address below within 60 days after you receive this denial notice.

Risk Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE  68103
Fax: 402-361-1460

Please include your reason(s) for appealing and provide any proof, including pertinent medical information, to support your appeal.  We will then provide you with a full written explanation of the decision within 60 days of receipt of your appeal.

Please be sure to include your policy number and claim number.  If you wish, you may also submit your comments and views of the issues in writing, and may request copies of the pertinent documents.

If your plan is subject to ERISA, you and your plan may have other voluntary alternative dispute resolution options, such as mediation.  One way to find out what may be available is to contact your local U. S. Department of Labor Office and your State insurance regulatory agency.  In addition, once all required reviews of your claim have been completed; you have the right to bring a civil action under applicable law.

If you have any questions regarding this matter, please contact our office at 1-800-423-2765.

Sincerely,


Nadine Beck
Claims Examiner II, Claims
The Lincoln National Life Insurance Company

Lincoln/Lee 463



**UNIVERSITY OF IOWA**
**HOSPITALS & CLINICS**
University of Iowa Health Care

*Health Information Management*
*200 Hawkins Drive, 2040 SRF*
*Iowa City, Iowa 52242-1009*

REC'D OCT 21 2015

October 16, 2015

LINCOLN FINANCIAL GROUP
8801 INDIAN HILLS DR.
OMAHA, NE 68114-4066



*University of Iowa Hospitals and Clinics*

*Health Information Management*
*Release of Information*
*2072 SRF*
*200 Hawkins Drive*
*Iowe City, IA 52242-1085*
*319-356-1719*
*319-356-3079 Fax*

University of Iowa Health Care

October 16, 2015

LINCOLN FINANCIAL GROUP
8801 INDIAN HILLS DR.
OMAHA, NE 68114-4066

REC'U OCT 21 2015

RE: Mr. John E Lee
MRN: 78149176
BD:

In accordance with the signed authorization and in response to a recent request, please find enclosed copies of University of Iowa Hospitals and Clinics medical record on the above named patient.

The enclosed information has been disclosed to you from records whose confidentiality is protected by state law. State and/or Federal law prohibits you from making any further disclosure of the information without specific written consent of the patient to whom it pertains, or as otherwise permitted by law. A general authorization for the release of medical or other information is not sufficient for this purpose.

Please confidentially destroy the enclosed copies after the stated need has been fulfilled.

If you have any questions, please contact this office at the above address or by telephone at 319/356-1719.

Sincerely,

Karen R. Kelly
Supervisor
Release of Information Office

Enc.



**Lincoln** Financial Group®

October 07, 2015

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

UNIVERSITY OF IOWA HOSPITALS & CLINICS
ATTN MEDICAL RECORDS
200 HAWKINS DR
IOWA CITY IA 52242



RECEIVED
OCT 1 4 2015
By Health Info Mgmt

RE:    PolicyHolder:    Ashley Industrial Molding, Inc
       Policy Number:   000400001000-12077
                        000010132080-00000
       Claim Number:    1072315-1127380
       Claimant:        John E Lee

Dear Medical Records :

We are processing the Accidental Death and Dismemberment coverage for a life claim received on behalf of John E Lee, but there is information needed to complete our review.

To complete the review of this claim, we are asking that you please provide:

Please provide all Medical Records for John E Lee for period 07/11/2015-07/19/2015. We have under review 2 accidental death benefits and there is not an accident report available and we need to review medical records to determine what happened regarding the accident involving John E Lee.

We have enclosed an authorization form completed by the beneficiary of this policy for your reference.

You can either fax this information directly to me at 1-800-462-4660, email to LifeClaims@LFG.com, or mail it to the address listed above. Please provide this documentation within the next 30 days to ensure timely processing of this claim.

Packet: 303615

©2015 Lincoln National Corporation

www.LincolnFinancial.com

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates. Affiliates are seperately responsible for their own financial and contractuel obligations.

If you have any questions regarding this request, please call me directly at 1-800-423-2765, ext 2894. If there is a fee for these records, please notify me prior to processing this request. Your assistance is greatly appreciated.

Sincerely,

Nadine Beck
Claims Examiner II, Claims
The Lincoln National Life Insurance Company

Lincoln/Lee 467

**Form 1959**          **CONSENT TO RELEASE OF INFORMATION**          Hosp. #_____
University of Iowa Hospitals and Clinics (UIHC)
Health Information Management Department; 200 Hawkins Drive, Iowa City, IA 52242
Release of Information Office (Telephone 319-356-1718; FAX 319-356-3079)

Please neatly PRINT (except signature) and provide complete information in each section.

Patient's Legal Name ___John E Lee___          Birth Date _____

By signing this form, I am allowing UIHC to release medical information concerning the above named patient to the person or facility listed below. This information may be shared by: Viewing ___ Verbal ___ Copies ___ CD ___ CareLink ___
(Please note, burning to a CD is only possible when transferring electronic information. Copies of paper documents will be provided on paper.)

___Lincoln Financial Group___
Name of Person and/or Institution who will receive information
___8801 Indian Hills Dr Omaha Ne___ ___68114-4066___
Complete Mailing Address/Street/P.O. Box                    City, State, Zip Code

Check the information to be disclosed (include dates if known);  ___Minimum necessary or specify as follows:
___ Medication list   ___ Allergy list   ___ Immunization record   ___ Problem List (Pt. Summary list)
___ History and Physical, specify clinic or date_____
___ Discharge summary, specify clinic or date_____
___ Laboratory results, specify type or date_____
___ X-ray and imaging reports, specify type or date_____
X Consultation reports, specify doctor or clinic ___7/11/2015 - 7/19/2015 - UIHC___
X Test results (e.g. EKG, PFT, etc.), specify type or date ___7/11/2015 - 7/19/2015 - UIHC___
___ Billing information, specify_____
X Other, specify___All Dr notes during stay 7/11/2015 - 7/19/2015 - UIHC all of mental records___

Please check the reason for release below; and provide a date by which the info is needed: _____

Insurance _X_  2nd opinion ___  Rehab/disability ___  Personal file ___  Moving out of area ___  Legal ___

Other medical care ___  Transferring care ___If transferring care, may we confidentially discuss with you? YES ___ NO___

If yes, please indicate the best time and telephone number to reach you: _____

This consent is voluntary. If I cancel this consent at a later date, I must send written notification to the Director of Health Information Management at the above address. If this consent is cancelled, I understand that information may have been released prior to the cancellation, and that action would not be considered a breach of confidentiality. I also acknowledge that: 1) recipients of this information may possibly re-release the information without proper authorization, and 2) once information is disclosed it may no longer be protected by federal privacy regulations. I understand that I may review the disclosed information or ask questions by contacting the Director of Health Information Management at the above address.

UIHC does not require completion of this form as a condition of evaluation or treatment. However, when the requested evaluation or treatment is solely for the purpose of creating a medical report for a third party, if authorization to release the information to that third party is not provided, it may result in the cancellation of those services.

I understand that the information may be released electronically, and may include information in the following categories unless I specifically deny the release (initial any category not to be released).

Substance Abuse_____  Mental Health _____  HIV-related information _____  *Genetic tests/info_____
*Refers to genetic testing to screen for possible future health issues, does not refer to testing to diagnose or treat current health conditions.

This agreement will expire two years from the date of signature, or as indicated (specify number of days or months)
_____ unless cancelled by the patient/guardian.

_____          _____          _____
Signature of Patient or Legal Guardian          Printed name          Date

_____          _____
Complete Mailing Address/Street/P.O. Box          City, State, Zip Code
___Vanessa Lee___ ___Wife___          ___Annette Yearous___
Relationship, If Not the Patient                    Witness Signature

UIHC use only: Upon satisfying this release, date & sign; record on the Release of Information Tracking (ROIT) system and scan the form in to Epic. If unable to satisfy this release or if unable to enter/scan this information on the ROIT system, complete the following as appropriate and then forward to the Release of Information Office, Health Information Management (HIM) Department, 2 SRF.

Info. sent: _____          Recorded on ROIT System: _____
          Name/Department    Date                    Operator Name/Department    Date

Revised: 1-2014                    Write Original: Scan into Epic    Copy: Patient



## Discharge Summaries

### Discharge Summaries by Viljoen, Stephanus, MD at 7/19/2015  1:00 AM

| | | |
|---|---|---|
| Author: Viljoen, Stephanus, MD | Service: NEUROSURGERY | Author Type: Physician-Fellow Associate |
| Filed: 7/20/2015  8:30 AM | Note Time: 7/19/2015  1:00 AM | Status: Signed |
| Editor: Viljoen, Stephanus, MD (Physician-Fellow Associate) | | |
| Related Notes:    Original Note by Holland, Marshall, MD (Physician-Resident) filed at 7/20/2015  5:00 AM | | |

# Neurosurgery Discharge Summary of a Deceased Patient

**Admission Date:** 7/12/2015

**Deceased Date (required):** 7/19/15

**Principal Admission Diagnosis:** unresponsive

**Medical/Surgical Complications:** None

**Primary Cause of Death:**   Traumatic Brain Injury

**Other Pertinent Diagnoses:**
**Patient Active Problem List**

| Diagnosis | Date Noted |
|---|---|
| • Glasgow coma scale total score 3-8 | 07/13/2015 |
| • Obesity | 07/13/2015 |
| • Metabolic acidosis | 07/13/2015 |
| • Hypophosphatemia | 07/13/2015 |
| • Fall | 07/12/2015 |
| • Acute respiratory failure following trauma and surgery | 07/12/2015 |
| • Traumatic brain injury with loss of consciousness | 07/12/2015 |
| • Facial bones, closed fracture | 07/12/2015 |
| • Acute alcoholic intoxication without complication | 07/12/2015 |

**Reason for Admission:**
**Active Hospital Problems**

| Diagnosis | POA |
|---|---|
| • Glasgow coma scale total score 3-8 | Yes |

*Overview Note:*
Patient intubated. Will continue to monitor neurological status

| | |
|---|---|
| • Obesity | Yes |

*Overview Note:*
Will continue to monitor

| | |
|---|---|
| • Metabolic acidosis | Yes |

*Overview Note:*
Will continue to monitor labs

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Lincoln/Lee 469



UNIVERSITY *of* IOWA
HOSPITALS&CLINICS
University of Iowa Health Care

## Discharge Summaries (continued)

### Discharge Summaries by Viljoen, Stephanus, MD at 7/19/2015  1:00 AM (continued)

- Hypophosphatemia                                                                                 Yes
  *Overview Note:*
  Will continue to monitor labs and replace with IV phos

- Fall                                                                                             Yes
- Acute respiratory failure following trauma and surgery                                           Yes
  *Overview Note:*
  Intubated due to poor GCS locally

- Traumatic brain injury with loss of consciousness                                                Yes
  *Overview Note:*
  GCS 4T; monitor neuro status, ICP monitoring

- Facial bones, closed fracture                                                                    Yes
  *Overview Note:*
  Right orbital wall, maxillary and zygoma fractures
  OTO consulted

- Acute alcoholic intoxication without complication                                                Yes
  *Overview Note:*
  Monitor for withdrawal

**Resolved Hospital Problems**

| Diagnosis | Date Noted | Date Resolved | POA |
|---|---|---|---|
| No resolved problems to display. | | | |

Problem List not reviewed this encounter.

**HOSPITAL COURSE:**
The patient was admitted to the hospital after being evaluated by the Trauma Team  following an ATV accident. He was evaluated by the Neurosurgery Service and the intracranial pressure monitor was placed. He had multiple spikes of high intracranial pressures and was provided with 7.5% sodium for these. The Otolaryngology Team was consulted for the zygomatic arch fractures and several facial fractures. They elected to not perform any surgical interventions. The Ophthalmology Team was consulted for an orbital rim fracture and did not elect for any emergent surgical intervention and their recommendations were followed up. The Orthopaedic team was consulted for an osseous density noted on plain film of left wrist, which was also managed nonoperatively and a sling was provided for comfort only. His neurological exam was poor and did not improve during his hospital course. A continuous EEG was obtained, which did not reveal any ongoing seizure activity to explain his poor neurological examination. His poor prognosis and neurological examination were explained to the patient's family. The Palliative Care Team was consulted to discuss goals of care. They elected to make the patient DO NOT RESUSCITATE and proceed with compassionate extubation. His bolt was discontinued just prior to compassionate extubation. The patient then subsequently expired.

**Consults:** Palliative Care, Ophthalmology, Orthopedic Surgery, Trauma Surgery, Neurosurgery, Otolaryngology.

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name. Lee, John E
HOSP.# 78149176
Printed by KDOUGHER at 10/16/15  4:35 AM

Page 2



## Discharge Summaries (continued)

### Discharge Summaries by Viljoen, Stephanus, MD at 7/19/2015  1:00 AM (continued)

**Significant Diagnostic Studies:**

**Lab Results**

| Component | Value | Date |
|---|---|---|
| WBC | 8.7 | 7/19/2015 |
| HB | 12.1* | 7/19/2015 |
| HCT | 36* | 7/19/2015 |
| PLT | 136* | 7/19/2015 |
| MCV | 93 | 7/19/2015 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| NA | 141 | 7/19/2015 |
| K | 3.8 | 7/19/2015 |
| CL | 107 | 7/19/2015 |
| CO2 | 23 | 7/19/2015 |
| EBAL | 11 | 7/19/2015 |
| BUN | 21* | 7/19/2015 |
| CRT | 0.7 | 7/19/2015 |
| GLU | 140* | 7/19/2015 |

**Operations/Procedures Performed:** 7/12/15: Placement of Intracranial Pressure Monitor,

**DATA REVIEWED:**
Head CT obtained upon the patient's arrival revealed multiple foci of hyperdensity with a small hemorrhagic focus. This study also demonstrated a right intraorbital hemorrhage and multiple facial fractures. A head CT obtained on the patient's arrival was negative for any acute fractures or dislocations. CTs of the thoracic and lumbar spine obtained upon the patient's arrival revealed no acute fractures or dislocations. A CT maxillofacial protocol CT revealed facial fractures, as previously described, as well as a right zygomatic fracture. Left wrist plain films obtained upon the patient's arrival revealed a well-corticated osseous density medial aspect of the ulnar styloid process, which could represent a small avulsion versus calcification. Left knee plain films obtained on the patient's arrival revealed no acute fractures or dislocations. A follow-up head CT obtained on the same day as patient's arrival showed interval placement of intracranial pressure monitor and a focus of intraparenchymal hemorrhage in the right lateral ventricle, right corpus callosum and right thalamus to be stable. MRI of the brain obtained on July 16, 2015, was consistent with diffuse axonal injury with abnormal signal noted in the bilateral cerebral hemispheres, basal ganglia and midbrain and pons. A cervical spine MRI obtained on the same date showed no acute fractures, dislocations or ligamentous injury and was essentially normal.

**Advance Directive Charting:** DO NOT RESUSCITATE

**Summary - Advance Directive Patient Conversation:** The nature of the patient's disorder, current neurological status, and overall poor prognosis were discussed with the family in conjunction with the palliative care team. All questions were answered. The family then elected to make the patient DO NOT RESUSCITATE for a code status. The family then elected to proceed with comfort care only and compassionate extubation.

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP.#:78149176
Printed by KDOUGHER at 10/16/15  4:35 AM



## Discharge Summaries (continued)

### Discharge Summaries by Viljoen, Stephanus, MD at 7/19/2015 1:00 AM (continued)

**Autopsy:** Offered to patient's family, declined by patient's family.

**Signed:**
Marshall Holland, MD

## History & Physicals

### H&P by Kealey, Gerald P, MD at 7/12/2015 2:25 AM

Author: Kealey, Gerald P, MD          Service: CRITICAL CARE SICU       Author Type: Physician-Staff
Filed: 7/19/2015 11:13 AM             Note Time: 7/12/2015 2:25 AM      Status: Signed
Editor: Kealey, Gerald P, MD (Physician-Staff)
Related Notes:    Original Note by Obr, Brooks J, MD (Physician-Resident) filed at 7/12/2015 3:20 AM

### SNICU Admission Note

Date: 7/12/2015
Time: 2:25 AM

**Subjective:**
Chief complaint: <principal problem not specified>
John E Lee is a 46 y.o. male, admitted 7/12/2015, Hospital Day: 1.

**History of Present Illness:**
Patient has no medical history but this is reportedly due to the fact that the patient does not see doctors. Patient was reportedly camping and riding an ATV this past evening, 7/11/15. He did not return, and on search, family found the patient unconscious lying next to the still running (and upright) ATV. He was noted to have blood on his face at the time. He was drinking prior to the reported fall, and was thus taken home by his family to recover. However, when the patient did not effectively recover, the family took the patient to the OSH. There, the patient was intubated. No imaging was obtained. The patient was subsequently transported to UIHC for further cares. The patient was noted to have decerebrate posturing of his upper extremities at UIHC, and will spontaneously move his bilateral lower extremities.

**7/12/2015:** Hospital Day: 1. Patient presents to SNICU intubated, hemodynamically stable.

Not on File

No past medical history on file.
No past surgical history on file.
**History**

Page 4

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP.#:78149176
Printed by KDOUGHER at 10/16/15 4:35 AM

UNIVERSITY of IOWA
HOSPITALS&CLINICS
University of Iowa Health Care

## History & Physicals (continued)

### H&P by Kealey, Gerald P, MD at 7/12/2015  2:25 AM (continued)

Social History
- Marital Status:                        N/A
     Spouse Name:                     N/A
     Number of Children:             N/A
- Years of Education:                 N/A

Occupational History
- Not on file.

Social History Main Topics
- Smoking status:            Not on file
- Smokeless tobacco:      Not on file
- Alcohol Use:                 Not on file
- Drug Use:                     Not on file
- Sexual Activity:             Not on file

Other Topics                                                         Concern
- Not on file

Social History Narrative
- No narrative on file

## History
Drug Use                                                             Not on file

## Patient Active Problem List
| Diagnosis | Date Noted |
|-----------|-----------|
| • Fall | 07/12/2015 |

No family history on file.
ROS
**Objective:**

## Min/Max/Ave Statistics (last 24 hours)

| Flowsheet Row Name | Min | Max | Average |
|---|---|---|---|
| Temp | 37.9 °C (100.2 °F) | 37.9 °C (100.2 °F) | 37.9 °C (100.2 °F) |

## Physical Exam:
Vitals: Temp(Src) 37.9 °C (100.2 °F) (Tympanic) | Ht 1.778 m (5' 10") | Wt 103 kg (227 lb 1.2 oz) | BMI 32.58 kg/m2
Pain: N/A
Appearance: In C-collar, intubated, appears stated age.
Head exam: Echymoses to left eye, dried blood below nares/across face.

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242



UNIVERSITY of IOWA
HOSPITALS&CLINICS
University of Iowa Health Care

## History & Physicals (continued)

### H&P by Kealey, Gerald P, MD at 7/12/2015  2:25 AM (continued)

Ear exam: Normal: Clear w/o Pathology
Eye exam: Normal: Pupils equal, sclera clear, conjunctiva pink - both eyes
Nose exam: Normal: Clear mucus membranes, no deviated septum, no septal hematoma
Throat exam: Normal: Moist mucus membranes w/o erythema
Neck exam: Normal: Atraumatic w/o laceration, abrasion, contusion, difficult exam given presence of C-collar.
Chest exam: Normal: Good chest cage excursion, clear to auscultation in all lung fields
Heart/Cardio exam: Normal: Heart rate - regular rate and rhythm without murmur, S1, S2
Abdomen exam: Normal: soft, non-tender, bowel sounds (+)
Genitourinary exam: Foley
Extremities exam: Left knee echymotic. Old-appearing abrasion on left shin. Otherwise normal: Atraumatic and all present, pulses normal. No gross malalignment.
Neurological exam: Patient intubated, displays decerebrate posturing.

Riker: 3 - Sedated

Glasgow coma score:
Eye opening: (1) no response
Best motor response: (1) with painful stimulation - no response
Best verbal response: (1) no response
 **Total Glasgow (E + M + V) = 3**

### Hemodynamics:

Intake/Output Summary (Last 24 hours) at 07/12/15 0238
Last data filed at 07/12/15 0200

|        | Gross per 24 hour |
|--------|-------------------|
| Intake | 0 ml              |
| Output | 1000 ml           |
| **Net**| -1000 ml          |

Vasoactive drugs: None
Hemodynamic monitor: None

### Results Reviewed
CBC:
Lab Results

| Component | Value | Date |
|-----------|-------|------|
| WBC | 12.1* | 7/12/2015 |
| RBC | 4.89  | 7/12/2015 |
| HB  | 15.5  | 7/12/2015 |
| HCT | 45    | 7/12/2015 |
| PLT | 119*  | 7/12/2015 |

BMP:

Page 6

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt Name: Lee, John E
HOSP.#:78149176
Printed by KDOUGHER at 10/16/15  4:35 AM

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 386 of 555 Lincoln/Lee 474


**UNIVERSITY of IOWA
HOSPITALS & CLINICS**
University of Iowa Health Care

## History & Physicals (continued)

**H&P by Kealey, Gerald P, MD at 7/12/2015  2:25 AM (continued)**

**Lab Results**

| Component | Value | Date |
|---|---|---|
| BUN | 9* | 7/12/2015 |
| CL | 104 | 7/12/2015 |
| CO2 | 20* | 7/12/2015 |
| CRT | 0.9 | 7/12/2015 |
| GLU | 96 | 7/12/2015 |
| K | 4.8 | 7/12/2015 |
| NA | 141 | 7/12/2015 |
| EBAL | 17 | 7/12/2015 |

Coagulation:
**Lab Results**

| Component | Value | Date |
|---|---|---|
| PT | 10 | 7/12/2015 |
| PTT | 21* | 7/12/2015 |
| INR | 1.0 | 7/12/2015 |

Cardiac markers:
No results found for this basename: TROPT, MYO

ABGs:
**Lab Results**

| Component | Value | Date |
|---|---|---|
| PCO2ART | 41 | 7/12/2015 |
| PO2ART | 101* | 7/12/2015 |
| BICARBONATEA | 21* | 7/12/2015 |
| TOTALCO2ARTE | 22* | 7/12/2015 |
| TEMPERATUREA | 37.0 | 7/12/2015 |

Critical Care:
**Lab Results**

| Component | Value | Date |
|---|---|---|
| LACTC | 1.7 | 7/12/2015 |

**Radiology:**
Multiple studies pending, including left knee x-ray, chest x-ray, pelvis x-ray, left wrist x-ray, CT-chest, CT brain, CT max/face, CT cervical/thoracic/lumbar spine

**Nutrition:**
**NPO**

**Infection History:**
**None known**

**Procedures:**
**None**

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt Name  Lee, John E
HOSP.#.78149176
Printed by KDOUGHER at 10/16/15  4.35 AM



## History & Physicals (continued)

### H&P by Kealey, Gerald P, MD at 7/12/2015  2:25 AM (continued)

**Assessment:**
John E Lee is a 46 y.o. male, Hospital Day: 1. Patient presents to SNICU intubated, sedated, hemodynamically stable. Displays decerebrate posturing. Awaiting return of imaging, and will consult appropriate teams accordingly.

Condition: Critically ill

Problem list:
**Active Problem List with Overview Notes**

| Diagnosis | Date Noted |
|---|---|
| • Fall | 07/12/2015 |

Reason for Extending Antibiotics: Antibiotics not extended

Reason to Continue Indwelling Urinary Catheter: Accurate I/O's
**Plan:**
**Diagnostic Studies:**
Yes, labs, radiology.

**Therapeutic Plan:**
Maintain comfort/analgesia, await return of imaging, consult appropriate teams, work-up cause of fall.

**Neuro:**
Neuro checks per ICU protocol
Sedation: Yes, propofol
Pain: IV opioid analgesia
Temperature Prophylaxis: acetaminophen and cooling blanket PRN
 Await radiology results above.

**CV:**
Invasive hemodynamic monitoring: No
Goals: MAPs greater than 65.
Pressors/Antihpyertensives: Not required at this time.
Perioperative Beta blockade: Not indicated

**Respiratory:**
Therapy: Patient ventilated, SIMV 16 23/5 PS 10
We have assessed the requirement for mechanical ventilation. Extubation: Is precluded, secondary to: unknown nature of injury.
Pneumonia Prophylaxis: oral care and oral chlorhexidine

**GI:**
NG tube: No
Bowel Regimen: No

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP.#:78149176
Printed by KDOUGHER at 10/16/15  4:35 AM

**UNIVERSITY of IOWA
HOSPITALS&CLINICS**
University of Iowa Health Care

## History & Physicals (continued)

### H&P by Kealey, Gerald P, MD at 7/12/2015  2:25 AM (continued)

Stress ulcer Prophylaxis: H2 blocker
Diet: npo

**FEN/GU:**
Strict I/O's
Follow electrolytes, replace as needed
Foley Catheter: Yes,
Estimated fluid intake for the next 24 hours: 1-2 L.
Goals for fluid balance: Input equal to output

**Heme/ID:**
Daily CBC
Cultures: No
Deep vein Thrombosis Prophylaxis: No Prophylaxis done

**Endocrine:**
SICU insulin protocol ordered: Yes

**Code Full**

**Staff Involved**
Staff and Resident/Fellow

Brooks J. Obr, MD
Department of Emergency Medicine
Pager 2267

**Attending Documentation:**
i did  evaluate this patient he is intubated ventilated and posturing his labs are pending we do not know the
cause of his injury and will evaluate him over time contact family and monitor him closely he has been seen by
nsg
**Staff Physician / PA / ARNP Statement**
Patient seen and history/physical exam/and/or medical decisions regarding assessment and treatment by final
reviewer, with assistance from  PA/ARNP/Resident/Fellow MD contributors as listed below: Gerald Kealey, MD

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 389 of 555   Lincoln/Lee 477



University of Iowa Health Care

## History & Physicals (continued)

### H&P by Skeete, Dionne A, MD at 7/12/2015  1:07 AM

| | | |
|---|---|---|
| Author: Skeete, Dionne A, MD | Service. SRG TRAUMA | Author Type: Physician-Associate |
| Filed· 7/12/2015  5:53 AM | Note Time: 7/12/2015  1:07 AM | Status: Signed |
| Editor: Skeete, Dionne A, MD (Physician-Associate) | | |
| Related Notes: Original Note by Deets, Ryan, MD (Physician-Resident) filed at 7/12/2015  3:18 AM | | |

## History and Physical

**Admit Date:** 7/12/2015

**Subjective**

**Chief Complaint:** unresponsive

**History of Present Illness:**
Patient is a 46 y.o. male who presents from the scene. History is obtain from his wife. He was camping with family today. Around 7 pm he was found down and unresponsive next to the ATV he was driving. The ATV was running and upright and it appeared that he had collapsed while driving it and fallen to the ground. The family was able to get him home but he remained unresponsive so they took him to local hospital. He was intubated d/t his mental status and sent to UIHC.

Allergies: NKDA
Meds: None
PMH/PSH: None, he didn't see doctors
Last meal: Noon yesterday.

**Fall:** LOC (unknown amount of time).

Tetanus status unknown and not administered
Allergies not on file

(Not in a hospital admission)
There is no problem list on file for this patient.

No past surgical history on file.

There is no immunization history on file for this patient.

History
Substance Use Topics
  • Smoking status:              Not on file
  • Smokeless tobacco:        Not on file
  • Alcohol Use:                  Not on file

No family history on file.

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP # 78149176
Printed by KDOUGHER at 10/16/15  4.35 AM



## History & Physicals (continued)

### H&P by Skeete, Dionne A, MD at 7/12/2015  1:07 AM (continued)

**Objective**
Please see the ED vitals report under the media tab in Epic.

**Primary Survey:**
Airway: Intubated
Breathing: clear and equal breath sounds bilaterally
Circulation: 2+ radial, femoral, posterior tibial, and dorsalis pedis pulses equal bilaterally; no obvious sources of hemorrhage on external examination

**Secondary Survey:**

**General Appearance** intubated

**Head** Ecchymosis of right eye.

**Eyes** Pinpoint pupils b/l, non reactive to light

**Ears** No blood behind TMs

**Nose** Blood in nares

**Throat** ET tube present

**Neck** cervical collar in place

**Back/Spine** No step offs, no lacerations.

**Lungs** clear to auscultation bilaterally

**Chest Wall** normal ribcage without tenderness to palpation, crepitus or emphysema

**Heart** regular rate and rhythm, S1, S2 normal, no murmur, click, rub or gallop

**Abdomen** soft, non-tender. Bowel sounds normal. No masses,  no organomegaly

**Pelvic** stable

**Genitourinary** external genitalia normal and Foley in place

**Rectal** normal tone
no blood

**Extremities** Crepitus of left wrist.  Otherwise there are no gross bony deformities or joint laxity.

**Pulses** 2+ and symmetric

**Skin** Skin color, texture, turgor normal. No rashes or lesions

**Neurologic**

Eye opening: (1) no response
Best motor response: (2) with painful stimulation - extension
Best verbal response: (1) no responseT
**Total Glasgow (E + M + V) = 4T**

**Substance Abuse - EVS:**

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP.#:78149176
Printed by KDOUGHER at 10/16/15  4:35 AM

Page 11


**UNIVERSITY of IOWA HOSPITALS&CLINICS**
University of Iowa Health Care

## History & Physicals (continued)

### H&P by Skeete, Dionne A, MD at 7/12/2015  1:07 AM (continued)

**Lab Results**

| Component | Value | Date |
|-----------|-------|------|
| ETHANOL | 166 | 7/12/2015 |

## Substance Abuse - UDS:
**Lab Results**

| Component | Value | Date |
|-----------|-------|------|
| AMPU | Negative | 7/12/2015 |
| BZOU | Negative | 7/12/2015 |
| COCU | Negative | 7/12/2015 |
| OPIU | Negative | 7/12/2015 |
| OXYCU | Negative | 7/12/2015 |
| THCU | Negative | 7/12/2015 |

## Coagulation:
**Lab Results**

| Component | Value | Date |
|-----------|-------|------|
| PT | 10 | 7/12/2015 |
| INR | 1.0 | 7/12/2015 |
| PTT | 21* | 7/12/2015 |

## CBC:
**Lab Results**

| Component | Value | Date |
|-----------|-------|------|
| WBC | 12.1* | 7/12/2015 |
| RBC | 4.89 | 7/12/2015 |
| HB | 15.5 | 7/12/2015 |
| HCT | 45 | 7/12/2015 |
| MCV | 92 | 7/12/2015 |
| MCH | 32 | 7/12/2015 |
| MCHC | 35 | 7/12/2015 |
| PLT | 119* | 7/12/2015 |
| MEANPLATEVOL | 9.1* | 7/12/2015 |
| RDWSD | 43.5 | 7/12/2015 |
| RDW | 13.0 | 7/12/2015 |
| NRBC | 0 | 7/12/2015 |

## BMP:
**Lab Results**

| Component | Value | Date |
|-----------|-------|------|
| NA | 141 | 7/12/2015 |
| K | 4.8 | 7/12/2015 |
| CL | 104 | 7/12/2015 |
| CO2 | 20* | 7/12/2015 |
| EBAL | 17 | 7/12/2015 |
| BUN | 9* | 7/12/2015 |
| CRT | 0.9 | 7/12/2015 |
| GLU | 96 | 7/12/2015 |

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP.#:78149176
Printed by KDOUGHER at 10/16/15  4:35 AM



## History & Physicals (continued)

### H&P by Skeete, Dionne A, MD at 7/12/2015  1:07 AM (continued)

### ABG (Blood Gas):
Lab Results

| Component | Value | Date |
|---|---|---|
| PHARTERIAL | 7.32* | 7/12/2015 |
| PCO2ART | 41 | 7/12/2015 |
| PO2ART | 101* | 7/12/2015 |
| BASEEXCESSAR | -5* | 7/12/2015 |
| BICARBONATEA | 21* | 7/12/2015 |
| TOTALCO2ARTE | 22* | 7/12/2015 |
| TEMPERATUREA | 37.0 | 7/12/2015 |

### Urine Analysis:
Lab Results

| Component | Value | Date |
|---|---|---|
| UPH | 5.0 | 7/12/2015 |
| USGI | 1.015 | 7/12/2015 |

### Critical Care:
Lab Results

| Component | Value | Date |
|---|---|---|
| LACTC | 1.7 | 7/12/2015 |

**FAST:** Negative

**ED Course**

**Radiology Scans Ordered:**
CT brain, neck, face, chest, abd, pelvis, spine

**Plain Films Ordered:**
Chest
Pelvis
Left wrist

**Consults Obtained:**
ENT
NSG

**Assessment/Plan**
46 yoM found down after ATV crash
-Admit to SNICU
**-consult neurosurgery for TBI**

**Injuries Identified:**
Right ZMC fx

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP.#:78149176
Printed by KDOUGHER at 10/16/15  4:35 AM

Case 6:18-cv-02063-CJW-MAR     Document 26-4     Filed 02/13/19     Page 393 of 555     Lincoln/Lee 481



## History & Physicals (continued)

### H&P by Skeete, Dionne A, MD at 7/12/2015  1:07 AM (continued)
Possible hemorrhagic focus in right frontal horn
Facial fractures

**Disposition:**  SNICU

No orders of the defined types were placed in this encounter.

**Staff Physician Comments:**   I have interviewed and examined the patient and confirm the pertinent findings.  I have discussed the case with the resident/fellow/physician extender and agree with the findings and plan as documented.
This is a critically ill patient with acute respiratory failure and severe TBI with GCS of 4T.

**Dionne Skeete, MD**

**Staff Critical Care Time:**   30 minutes

**Time Spent:**

**Functional Screen:**

**Staff Involved:**
Staff and Resident/Fellow

## ED Notes

Stilley, Joshua D, MD 7/13/2015 05:51
No chief complaint on file.

**HPI:**
46 y.o. male with no known medical history presenting via ambulance after being brought to the outside emergency department in an unresponsive condition.  While at the outside hospital, the patient was intubated and sedated.  Blood alcohol level was elevated.  He was transferred to our facility immediately for further evaluation and treatment.

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP #:78149176
Printed by KDOUGHER at 10/16/15  4:35 AM

Page 14



**ED Notes (continued)**

After the family arrived, the family admitted that the patient had been involved in an ATV rollover accident.

Review of systems, current medication list, allergies, past medical history, past surgical history could not be accomplished due to the patient's condition: Unresponsiveness, intubated and sedated. No family member, colleague or friend was available to provide this information at the initial interview.

**Physical Examination:**

**Primary Exam**
A: Intubated with endotracheal tube, size 7.5, 25 cm at the teeth.
B: Equal mechanical breath sounds bilaterally
C: Pulses intact in all extremities, no active bleeding
D: The patient was unresponsive but sedated.

**Secondary Exam**
Vital signs and nursing notes reviewed
Constitutional: No acute distress.
HEENT: Patient in c-collar. Normocephalic. No abrasions, lacerations, or hematomas appreciated. No sinus, zygomatic, or mandible pain. Pupils fixed at 1 mm and not responsive to light. Right-sided periorbital edema and ecchymosis present. No conjunctival injection or hemorrhage. No retroauricular ecchymosis. Nares appear normal without bleeding or hematoma. Midline septum. TM intact but hemotympanum bilaterally.
Neck: C-collar in place.Trachea midline. Supple with no JVD. No cervical spine tenderness.
CV: Regular rate and rhythm, no murmur. Peripheral pulses intact.
Abdomen: Soft, non-distended
Back: No step-offs or crepitus
Neuro: Intubated, 4T with decerebrate posturing
Extremities: Echymosis over left knee


FAST: Negative

**RESULTS REVIEWED**
**Lab Results:**
Labs Reviewed
CBC (COMPLETE BLOOD COUNT) - Abnormal; Notable for the following:
    WBC Count                      12.1 (*)
    Platelet Count                 119 (*)
    MPV (Mean Platelet Volume)     9.1 (*)
    All other components within normal limits
CO2 - Abnormal; Notable for the following:
    CO2                         20 (*)
    All other components within normal limits
BLOOD UREA NITROGEN - Abnormal; Notable for the following:
    BUN                         9 (*)
    All other components within normal limits
PTT (PARTIAL THROMBOPLASTIN TIME) - Abnormal; Notable for the following:
    PTT                         21 (*)

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

**UNIVERSITY of IOWA
HOSPITALS & CLINICS**
University of Iowa Health Care

## ED Notes (continued)

All other components within normal limits
URINALYSIS - Abnormal; Notable for the following:

| | |
|---|---|
| Blood, Urine | 1+ (*) |

All other components within normal limits
ARTERIAL BLOOD GAS (CRITICAL CARE LABORATORY) - Abnormal; Notable for the following:

| | |
|---|---|
| pH, Arterial | 7.32 (*) |
| pO2, Arterial | 101 (*) |
| Base Excess, Arterial | -5 (*) |
| Bicarbonate, Arterial | 21 (*) |
| Total CO2, Arterial | 22 (*) |

All other components within normal limits
CBC (COMPLETE BLOOD COUNT) - Abnormal; Notable for the following:

| | |
|---|---|
| RBC Count | 4.08 (*) |
| Hemoglobin | 12.6 (*) |
| Hematocrit | 38 (*) |
| Platelet Count | 105 (*) |
| MPV (Mean Platelet Volume) | 9.1 (*) |

All other components within normal limits
SODIUM - Normal
POTASSIUM - Normal
CHLORIDE - Normal
CREATININE - Normal
GLUCOSE - Normal
PT/INR (PROTHROMBIN TIME/INR) VENOUS - Normal
URINE MICROSCOPIC - Normal
DRUGS OF ABUSE - URINE - Normal
THC-URINE SCREEN - Normal
ETHANOL, PLASMA - Normal
LACTIC ACID, WHOLE BLOOD (CRITICAL CARE LABORATORY) - Normal
TROPONIN T - Normal
LACTIC ACID, WHOLE BLOOD (CRITICAL CARE LABORATORY) - Normal
TYPE AND SCREEN ORDER
ABORH
RBC ANTIBODY SCREEN
BASIC METABOLIC PANEL (W/ CALCIUM TOTAL)
ETHANOL, PLASMA
ARTERIAL BLOOD GAS (CRITICAL CARE LABORATORY)
BLOOD GLUCOSE, POINT OF CARE
BLOOD GLUCOSE, POINT OF CARE
BLOOD GLUCOSE, POINT OF CARE

**Radiology Results:**
CT THORACIC & LUMBAR SPINE (REPROCESS IMAGES) (72131, 72128)
Preliminary Result
Procedure:CT THORACIC & LUMBAR SPINE (REPROCESS IMAGES) (72131,
72128)

Indication: Unresponsive with decreased and

Technique: Axial CT images of the thoracolumbar spine were obtained
from C7-T1 to S1-S2 disc space without administration of intravenous
contrast. Coronal and sagittal reformatted images were generated

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP.#:78149176
Printed by KDOUGHER at 10/16/15 4:35 AM

Page 16



## ED Notes (continued)

reviewed.

Comparison: none

Findings: The osseous structures are normal in alignment. There is no evidence of fracture. Vertebral body heights and intervertebral disc heights are well maintained. Bilateral dependent patchy consolidations, worse on the left. Prevertebral soft tissues are normal.

IMPRESSION
Impression: * RADIOLOGY RESIDENT PRELIMINARY INTERPRETATION *
Negative for acute thoracolumbar spine findings.

CT CHEST ABDOMEN PELVIS W CONTRAST (74177, 71260)
**Preliminary Result**
Procedure: CT CHEST ABDOMEN PELVIS W CONTRAST (74177, 71260)

Clinical Indication: Unresponsive

Technique: CT exam of the chest, abdomen, and pelvis is performed following the uneventful administration of 121 cc Isovue-370 IV contrast.

Comparison: None.

Findings:

Neck base and axilla: No lymphadenopathy.
Mediastinum and hila: No lymphadenopathy.
Heart and thoracic aorta: Normal.

Airway: ET tube noted. No masses identified.
Lungs and pleura: Bilateral dependent airspace disease. Patchy consolidations in the biapical regions, more prominent on the right.
Esophagus: Normal.
Chest wall soft tissues: Normal

Liver: Enlarged measuring 19 cm.
Bile ducts: Not dilated.
Gallbladder: Normal.
Pancreas: Normal
Spleen: Normal

Adrenal glands: Normal
Kidneys: Normal
Ureters: Normal
Bladder: Decompressed with Foley catheter

Aorta: Normal

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name. Lee, John E
HOSP #:78149176
Printed by KDOUGHER at 10/16/15 4:35 AM


UNIVERSITY of IOWA
HOSPITALS & CLINICS
University of Iowa Health Care

## ED Notes (continued)

Retroperitoneum: No lymphadenopathy.
Peritoneum: No ascites.

Mesentery: Normal
Stomach: Not distended.
Small bowel: Not distended.
Colon: Not distended.
Appendix: Normal.

Extraperitoneal pelvis: No lymphadenopathy.
Prostate: Normal

Abdominal wall: Normal
Bones: No acute fracture or destructive bone lesion.

IMPRESSION
Impression: * RADIOLOGY RESIDENT PRELIMINARY INTERPRETATION *
1. Bilateral upper lobe patchy airspace disease. Left lower lobe
consolidation which may represent atelectasis versus aspiration.
2. Mild hepatomegaly. No evidence of abdominal or pelvic solid organ
injury.

CT BRAIN WO CONTRAST (70450)
**Preliminary Result**
Procedure: CT BRAIN WO CONTRAST (70450), CT MAXILLOFACIAL WO CONTRAST
(70486), CT CERVICAL SPINE WO INCL T-3 (72125)

Indication: Unresponsive with decreased

Technique:
1. Axial CT of the brain without IV contrast. Sagittal and coronal
reformations are also provided for review.
2. Axial CT of the face without IV contrast. Sagittal and coronal
reformations are also provided for review.
3. Axial CT of the cervical spine without IV contrast. Sagittal and
coronal reformations are also provided for review.

Comparison: None.

Findings:

- Brain: Focus of hyperdensity adjacent to the right frontal horn seen
on series 3-15 and 5-19. No evidence of mass effect. There is no
evidence of acute large vascular distribution infarct or mass lesion.
The ventricles, cortical sulci and basal cisterns are symmetric and
age appropriate. Normal brainstem and posterior fossa. The scalp and
calvarium are unremarkable.

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP # 78149176
Printed by KDOUGHER at 10/16/15 4:35 AM



## ED Notes (continued)

- Face: Acute fractures involving the right zygomatic arch. Anterior, lateral and medial maxillary sinus fractures. Acute fracture involving the inferior orbital rim at (4-29) and lateral orbital wall (4-39). Acute fracture involving the right side, at the junction of the sphenoid. Acute fracture involving the ethmoid bone medially. Fluid opacification of the right maxillary sinus. Mucosal thickening left maxillary sinus. Left maxillary sinus polyp versus mucous retention cyst. Mild right intraorbital fat stranding. After nerve appears intact Pterygoid plates are intact bilaterally. The skull base is normal.

- C-Spine: The spine is visualized from the skull base through T3. There is loss of the normal cervical lordosis, otherwise alignment is grossly within normal limits. There is no evidence of acute fracture or dislocation. Craniovertebral junction relationships are well maintained. Vertebral body heights are within normal limits. There are mild to moderate multilevel degenerative changes without significant spinal stenosis. Prevertebral soft tissues are unremarkable. Biapical airspace disease. Grossly normal thyroid.

IMPRESSION
Impression: * RADIOLOGY RESIDENT PRELIMINARY INTERPRETATION *
1. Focal hyperdensity adjacent to the right frontal horn (3-15 and 5-19) may represent small hemorrhagic focus. No evidence of mass effect.
2. Facial fractures as described above. Right ZMC fracture. Mild right intraorbital fat stranding. No evidence of right globe rupture.
3. Negative C-spine CT.
4. Negative limited upper thoracic spine CT.
5. Biapical airspace disease better evaluated on dedicated chest CT.

CT CERVICAL SPINE WO INCL T-3 (72125)
Preliminary Result
Procedure: CT BRAIN WO CONTRAST (70450), CT MAXILLOFACIAL WO CONTRAST (70486), CT CERVICAL SPINE WO INCL T-3 (72125)

Indication: Unresponsive with decreased

Technique:
1. Axial CT of the brain without IV contrast. Sagittal and coronal reformations are also provided for review.
2. Axial CT of the face without IV contrast. Sagittal and coronal reformations are also provided for review.
3. Axial CT of the cervical spine without IV contrast. Sagittal and coronal reformations are also provided for review.

Comparison: None.

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP.#:78149176
Printed by KDOUGHER at 10/16/15  4:35 AM



University of Iowa Health Care

## ED Notes (continued)

Findings:

- Brain: Focus of hyperdensity adjacent to the right frontal horn seen on series 3-15 and 5-19. No evidence of mass effect. There is no evidence of acute large vascular distribution infarct or mass lesion. The ventricles, cortical sulci and basal cisterns are symmetric and age appropriate. Normal brainstem and posterior fossa. The scalp and calvarium are unremarkable.

- Face: Acute fractures involving the right zygomatic arch. Anterior, lateral and medial maxillary sinus fractures. Acute fracture involving the inferior orbital rim at (4-29) and lateral orbital wall (4-39). Acute fracture involving the right side, at the junction of the sphenoid. Acute fracture involving the ethmoid bone medially. Fluid opacification of the right maxillary sinus. Mucosal thickening left maxillary sinus. Left maxillary sinus polyp versus mucous retention cyst. Mild right intraorbital fat stranding. After nerve appears intact Pterygoid plates are intact bilaterally. The skull base is normal.

- C-Spine: The spine is visualized from the skull base through T3. There is loss of the normal cervical lordosis, otherwise alignment is grossly within normal limits. There is no evidence of acute fracture or dislocation. Craniovertebral junction relationships are well maintained. Vertebral body heights are within normal limits. There are mild to moderate multilevel degenerative changes without significant spinal stenosis. Prevertebral soft tissues are unremarkable. Biapical airspace disease. Grossly normal thyroid.

IMPRESSION
Impression: * RADIOLOGY RESIDENT PRELIMINARY INTERPRETATION *
1. Focal hyperdensity adjacent to the right frontal horn (3-15 and 5-19) may represent small hemorrhagic focus. No evidence of mass effect.
2. Facial fractures as described above. Right ZMC fracture. Mild right intraorbital fat stranding. No evidence of right globe rupture.
3. Negative C-spine CT.
4. Negative limited upper thoracic spine CT.
5. Biapical airspace disease better evaluated on dedicated chest CT.

CT MAXILLOFACIAL WO CONTRAST (70486)
Preliminary Result
Procedure: CT BRAIN WO CONTRAST (70450), CT MAXILLOFACIAL WO CONTRAST (70486), CT CERVICAL SPINE WO INCL T-3 (72125)

Indication: Unresponsive with decreased

Technique:
1. Axial CT of the brain without IV contrast. Sagittal and coronal

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Page 20

Pt. Name: Lee, John E
HOSP.#:78149176
Printed by KDOUGHER at 10/16/15 4.35 AM



University of Iowa Health Care

## ED Notes (continued)

reformations are also provided for review.
2. Axial CT of the face without IV contrast. Sagittal and coronal
reformations are also provided for review.
3. Axial CT of the cervical spine without IV contrast. Sagittal and
coronal reformations are also provided for review.

Comparison: None.

Findings:

- Brain: Focus of hyperdensity adjacent to the right frontal horn seen
on series 3-15 and 5-19. No evidence of mass effect. There is no
evidence of acute large vascular distribution infarct or mass lesion.
The ventricles, cortical sulci and basal cisterns are symmetric and
age appropriate. Normal brainstem and posterior fossa. The scalp and
calvarium are unremarkable.

- Face: Acute fractures involving the right zygomatic arch. Anterior,
lateral and medial maxillary sinus fractures. Acute fracture involving
the inferior orbital rim at (4-29) and lateral orbital wall (4-39).
Acute fracture involving the right side, at the junction of the
sphenoid. Acute fracture involving the ethmoid bone medially. Fluid
opacification of the right maxillary sinus. Mucosal thickening left
maxillary sinus. Left maxillary sinus polyp versus mucous retention
cyst. Mild right intraorbital fat stranding. After nerve appears
intact Pterygoid plates are intact bilaterally. The skull base is
normal.

- C-Spine: The spine is visualized from the skull base through T3.
There is loss of the normal cervical lordosis, otherwise alignment is
grossly within normal limits. There is no evidence of acute fracture
or dislocation. Craniovertebral junction relationships are well
maintained. Vertebral body heights are within normal limits. There
are mild to moderate multilevel degenerative changes without
significant spinal stenosis. Prevertebral soft tissues are
unremarkable. Biapical airspace disease. Grossly normal thyroid.

IMPRESSION
Impression: * RADIOLOGY RESIDENT PRELIMINARY INTERPRETATION *
1. Focal hyperdensity adjacent to the right frontal horn (3-15 and
5-19) may represent small hemorrhagic focus. No evidence of mass
effect.
2. Facial fractures as described above. Right ZMC fracture. Mild right
intraorbital fat stranding. No evidence of right globe rupture.
3. Negative C-spine CT.
4. Negative limited upper thoracic spine CT.
5. Biapical airspace disease better evaluated on dedicated chest CT.

LEFT WRIST PA, LATERAL & OBL

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP.#:78149176
Printed by KDOUGHER at 10/16/15 4:35 AM



**UNIVERSITY of IOWA**
**HOSPITALS & CLINICS**
University of Iowa Health Care

## ED Notes (continued)

Preliminary Result
Procedure: LEFT WRIST PA, LATERAL & OBL

Clinical Indication: Evaluate for fracture, fall

Comparison: None.

IMPRESSION
Findings/impression: Small density adjacent to the medial aspect of
the ulnar styloid process, this may represent small avulsion fracture
versus calcification. Otherwise, bones are normal in appearance
without evidence of acute fracture or dislocation. No soft tissue
abnormalities identified.

PELVIS AP
Preliminary Result
Procedure: PELVIS AP

Clinical Indication: Unresponsive and bruised head

Comparison: None.

Findings: No evidence of acute fracture or dislocation. Anatomic
alignment of osseous structures. No soft tissue abnormalities
identified.

IMPRESSION
Impression: Negative.

CHEST - AP/PA    (Results Pending)
LEFT KNEE AP & LATERAL    (Results Pending)

Results for orders placed during the hospital encounter of 07/12/15
**-PELVIS AP**

Procedure: PELVIS AP

Clinical Indication: Unresponsive and bruised head

**Narrative:**    Comparison: None.

Findings: No evidence of acute fracture or dislocation. Anatomic
alignment of osseous structures. No soft tissue abnormalities
identified.

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name. Lee, John E
HOSP.#:78149176
Printed by KDOUGHER at 10/16/15  4:35 AM



**ED Notes (continued)**

**Impression:**       Impression: Negative.

**ED Medications Administered:**
Medications
fentanyl (pf) (SUBLIMAZE) 50 mcg/mL injection 50 mcg (not administered)
propofol (DIPRIVAN) 10 mg/mL infusion (25 mcg/kg/min × 70 kg (Order-Specific) Intravenous
New Bag 7/12/15 0112)
iopamidol (ISOVUE 370) injection 125 mL (121 mL Intravenous Given 7/12/15 0123)

**Consults:**
Trauma Surgery
Neurosurgery
Otolaryngology

**Emergency Department Course:**
Admitted to the Emergency Department and evaluated by resident and staff along with trauma team as trauma activation. C-collar in place on arrival, c-spine precautions maintained. Patient rolled off of back board and back examined.  The sedation was turned off to perform a neurologic exam.

Neurologic exam demonstrated Glascow 4T.

Labs: Bicarbonate 20, WBC 12.1, ABG 7.32/41/101, lactic acid 1.7

Imaging: Per above.  Multiple facial fractures and hyperdense area in right frontal horn.

The patient was transferred to the SNICU in stable condition.

**Impression:**
Respiratory failure requiring prior intubation
Right zygomatic fracture
ATV accident causing injury

**Plan:**
Admit to SNICU

David Baumgartner, MD
Department of Emergency Medicine
University of Iowa Healthcare

Staff and Resident/Fellow

**Teaching Statement**

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP.#:78149176
Printed by KDOUGHER at 10/16/15 4:35 AM



University of Iowa Health Care

**ED Notes (continued)**

I have interviewed and examined the patient and confirm the pertinent findings. I have discussed the case with the resident/fellow and agree with the findings and plan as documented.

Joshua D Stilley, MD
Staff Physician
University of Iowa Department of Emergency Medicine

Original note by Baumgartner, David, MD at 7/12/2015 05:11

Baumgartner, David, MD 7/12/2015 05:11

**Cosign Required**
No chief complaint on file.

**HPI:**
46 y.o. male with no known medical history presenting via ambulance after being brought to the outside emergency department in an unresponsive condition. While at the outside hospital, the patient was intubated and sedated. Blood alcohol level was elevated. He was transferred to our facility immediately for further evaluation and treatment.

After the family arrived, the family admitted that the patient had been involved in an ATV rollover accident.

Review of systems, current medication list, allergies, past medical history, past surgical history could not be accomplished deep to the patient's condition: Unresponsiveness, intubated and sedated. No family member, colleague or friend was available to provide this information at the initial interview.

Not on File

**Previous Medications**
No medications on file

No past medical history on file.

No past surgical history on file.

There are no active problems to display for this patient.

**History**
Substance Use Topics
• Smoking status:              Not on file
• Smokeless tobacco:          Not on file
• Alcohol Use:                Not on file

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP.#:78149176
Printed by KDOUGHER at 10/16/15  4:35 AM

Page 24

Case 6:18-cv-02063-CJW-MAR   Document 26-4   Filed 02/13/19   Page 404 of 555   Lincoln/Lee 492


## UNIVERSITY of IOWA
## HOSPITALS & CLINICS
University of Iowa Health Care

**ED Notes (continued)**

---

No family history on file.

## Physical Examination:
There were no vitals taken for this visit.

## Primary Exam
A: Intubated with endotracheal tube, size 7.5, 25 cm at the teeth.
B: Equal mechanical breath sounds bilaterally
C: Pulses intact in all extremities, no active bleeding
D:  The patient was unresponsive but sedated.

## Secondary Exam
Vital signs and nursing notes reviewed
Constitutional:  No acute distress.
HEENT:  Patient in c-collar.  Normocephalic. No abrasions, lacerations, or hematomas appreciated.
No sinus, zygomatic, or mandible pain.  Pupils fixed at 1 mm and not responsive to light.  Right-sided
periorbital edema and ecchymosis present.  No conjunctival injection or hemorrhage.  No retroauricular
ecchymosis. Nares appear normal without bleeding or hematoma.  Midline septum.  TM intact but
hemotympanum bilaterally.
Neck:  C-collar in place.Trachea midline. Supple with no JVD.  No cervical spine tenderness.
CV:  Regular rate and rhythm, no murmur. Peripheral pulses intact.

See trauma note for full, detailed physical exam.

FAST: Negative

## RESULTS REVIEWED
### Lab Results:
Labs Reviewed
CBC (COMPLETE BLOOD COUNT) - Abnormal; Notable for the following:
| | |
|---|---|
| WBC Count | 12.1 (*) |
| Platelet Count | 119 (*) |
| MPV (Mean Platelet Volume) | 9.1 (*) |
| All other components within normal limits | |

CO2 - Abnormal; Notable for the following:
| | |
|---|---|
| CO2 | 20 (*) |
| All other components within normal limits | |

BLOOD UREA NITROGEN - Abnormal; Notable for the following:
| | |
|---|---|
| BUN | 9 (*) |
| All other components within normal limits | |

PTT (PARTIAL THROMBOPLASTIN TIME) - Abnormal; Notable for the following:
| | |
|---|---|
| PTT | 21 (*) |
| All other components within normal limits | |

URINALYSIS - Abnormal; Notable for the following:
| | |
|---|---|
| Blood, Urine | 1+ (*) |
| All other components within normal limits | |

ARTERIAL BLOOD GAS (CRITICAL CARE LABORATORY) - Abnormal; Notable for the following:
| | |
|---|---|
| pH, Arterial | 7.32 (*) |
| pO2, Arterial | 101 (*) |

---

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP.#:78149176
Printed by KDOUGHER at 10/16/15 4:35 AM



## ED Notes (continued)

| | |
|---|---|
| Base Excess, Arterial | -5 (*) |
| Bicarbonate, Arterial | 21 (*) |
| Total CO2, Arterial | 22 (*) |

All other components within normal limits

CBC (COMPLETE BLOOD COUNT) - Abnormal; Notable for the following:

| | |
|---|---|
| RBC Count | 4.08 (*) |
| Hemoglobin | 12.6 (*) |
| Hematocrit | 38 (*) |
| Platelet Count | 105 (*) |
| MPV (Mean Platelet Volume) | 9.1 (*) |

All other components within normal limits

SODIUM - Normal
POTASSIUM - Normal
CHLORIDE - Normal
CREATININE - Normal
GLUCOSE - Normal
PT/INR (PROTHROMBIN TIME/INR) VENOUS - Normal
URINE MICROSCOPIC - Normal
DRUGS OF ABUSE - URINE - Normal
THC-URINE SCREEN - Normal
ETHANOL, PLASMA - Normal
LACTIC ACID, WHOLE BLOOD (CRITICAL CARE LABORATORY) - Normal
TROPONIN T - Normal
LACTIC ACID, WHOLE BLOOD (CRITICAL CARE LABORATORY) - Normal
TYPE AND SCREEN ORDER
ABORH
RBC ANTIBODY SCREEN
BASIC METABOLIC PANEL (W/ CALCIUM TOTAL)
ETHANOL, PLASMA
ARTERIAL BLOOD GAS (CRITICAL CARE LABORATORY)
BLOOD GLUCOSE, POINT OF CARE
BLOOD GLUCOSE, POINT OF CARE
BLOOD GLUCOSE, POINT OF CARE

**Radiology Results:**
CT THORACIC & LUMBAR SPINE (REPROCESS IMAGES) (72131, 72128)
Preliminary Result
Procedure:CT THORACIC & LUMBAR SPINE (REPROCESS IMAGES) (72131, 72128)

Indication: Unresponsive with decreased and

Technique: Axial CT images of the thoracolumbar spine were obtained from C7-T1 to S1-S2 disc space without administration of intravenous contrast. Coronal and sagittal reformatted images were generated reviewed.

Comparison: none

Findings: The osseous structures are normal in alignment. There is no evidence of fracture. Vertebral body heights and intervertebral disc heights are well maintained. Bilateral dependent patchy

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Page 26

Pt. Name: Lee, John E
HOSP.#.78149176
Printed by KDOUGHER at 10/16/15 4:35 AM



## ED Notes (continued)

consolidations, worse on the left. Prevertebral soft tissues are normal.

IMPRESSION
Impression: * RADIOLOGY RESIDENT PRELIMINARY INTERPRETATION *
Negative for acute thoracolumbar spine findings.

CT CHEST ABDOMEN PELVIS W CONTRAST (74177, 71260)
**Preliminary Result**
Procedure: CT CHEST ABDOMEN PELVIS W CONTRAST (74177, 71260)

Clinical Indication: Unresponsive

Technique: CT exam of the chest, abdomen, and pelvis is performed following the uneventful administration of 121 cc Isovue-370 IV contrast.

Comparison: None.

Findings:

Neck base and axilla: No lymphadenopathy.
Mediastinum and hila: No lymphadenopathy.
Heart and thoracic aorta: Normal.

Airway: ET tube noted. No masses identified.
Lungs and pleura: Bilateral dependent airspace disease. Patchy consolidations in the biapical regions, more prominent on the right.
Esophagus: Normal.
Chest wall soft tissues: Normal

Liver: Enlarged measuring 19 cm.
Bile ducts: Not dilated.
Gallbladder: Normal.
Pancreas: Normal
Spleen: Normal

Adrenal glands: Normal
Kidneys: Normal
Ureters: Normal
Bladder: Decompressed with Foley catheter

Aorta: Normal
Retroperitoneum: No lymphadenopathy.
Peritoneum: No ascites.

Mesentery: Normal
Stomach: Not distended.
Small bowel: Not distended.
Colon: Not distended.

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP # 78149176
Printed by KDOUGHER at 10/16/15 4:35 AM



## ED Notes (continued)

Appendix: Normal.

Extraperitoneal pelvis: No lymphadenopathy.
Prostate: Normal

Abdominal wall: Normal
Bones: No acute fracture or destructive bone lesion.

IMPRESSION
Impression: * RADIOLOGY RESIDENT PRELIMINARY INTERPRETATION *
1. Bilateral upper lobe patchy airspace disease. Left lower lobe
consolidation which may represent atelectasis versus aspiration.
2. Mild hepatomegaly. No evidence of abdominal or pelvic solid organ
injury.


CT BRAIN WO CONTRAST (70450)
Preliminary Result
Procedure: CT BRAIN WO CONTRAST (70450), CT MAXILLOFACIAL WO CONTRAST
(70486), CT CERVICAL SPINE WO INCL T-3 (72125)

Indication: Unresponsive with decreased

Technique:
1. Axial CT of the brain without IV contrast. Sagittal and coronal
reformations are also provided for review.
2. Axial CT of the face without IV contrast. Sagittal and coronal
reformations are also provided for review.
3. Axial CT of the cervical spine without IV contrast. Sagittal and
coronal reformations are also provided for review.

Comparison: None.

Findings:

- Brain: Focus of hyperdensity adjacent to the right frontal horn seen
on series 3-15 and 5-19. No evidence of mass effect. There is no
evidence of acute large vascular distribution infarct or mass lesion.
The ventricles, cortical sulci and basal cisterns are symmetric and
age appropriate. Normal brainstem and posterior fossa. The scalp and
calvarium are unremarkable.

- Face: Acute fractures involving the right zygomatic arch. Anterior,
lateral and medial maxillary sinus fractures. Acute fracture involving
the inferior orbital rim at (4-29) and lateral orbital wall (4-39).
Acute fracture involving the right side, at the junction of the
sphenoid. Acute fracture involving the ethmoid bone medially. Fluid
opacification of the right maxillary sinus. Mucosal thickening left

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242



University of Iowa Health Care

## ED Notes (continued)

maxillary sinus. Left maxillary sinus polyp versus mucous retention cyst. Mild right intraorbital fat stranding. After nerve appears intact Pterygoid plates are intact bilaterally. The skull base is normal.

- C-Spine: The spine is visualized from the skull base through T3. There is loss of the normal cervical lordosis, otherwise alignment is grossly within normal limits. There is no evidence of acute fracture or dislocation. Craniovertebral junction relationships are well maintained. Vertebral body heights are within normal limits. There are mild to moderate multilevel degenerative changes without significant spinal stenosis. Prevertebral soft tissues are unremarkable. Biapical airspace disease. Grossly normal thyroid.

IMPRESSION
Impression: * RADIOLOGY RESIDENT PRELIMINARY INTERPRETATION *
1. Focal hyperdensity adjacent to the right frontal horn (3-15 and 5-19) may represent small hemorrhagic focus. No evidence of mass effect.
2. Facial fractures as described above. Right ZMC fracture. Mild right intraorbital fat stranding. No evidence of right globe rupture.
3. Negative C-spine CT.
4. Negative limited upper thoracic spine CT.
5. Biapical airspace disease better evaluated on dedicated chest CT.

CT CERVICAL SPINE WO INCL T-3 (72125)
**Preliminary Result**
Procedure: CT BRAIN WO CONTRAST (70450), CT MAXILLOFACIAL WO CONTRAST (70486), CT CERVICAL SPINE WO INCL T-3 (72125)

Indication: Unresponsive with decreased

Technique:
1. Axial CT of the brain without IV contrast. Sagittal and coronal reformations are also provided for review.
2. Axial CT of the face without IV contrast. Sagittal and coronal reformations are also provided for review.
3. Axial CT of the cervical spine without IV contrast. Sagittal and coronal reformations are also provided for review.

Comparison: None.

Findings:

- Brain: Focus of hyperdensity adjacent to the right frontal horn seen on series 3-15 and 5-19. No evidence of mass effect. There is no evidence of acute large vascular distribution infarct or mass lesion. The ventricles, cortical sulci and basal cisterns are symmetric and age appropriate. Normal brainstem and posterior fossa. The scalp and

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP # 78149176
Printed by KDOUGHER at 10/16/15 4:35 AM



## ED Notes (continued)

calvarium are unremarkable.

- Face: Acute fractures involving the right zygomatic arch. Anterior, lateral and medial maxillary sinus fractures. Acute fracture involving the inferior orbital rim at (4-29) and lateral orbital wall (4-39). Acute fracture involving the right side, at the junction of the sphenoid. Acute fracture involving the ethmoid bone medially. Fluid opacification of the right maxillary sinus. Mucosal thickening left maxillary sinus. Left maxillary sinus polyp versus mucous retention cyst. Mild right intraorbital fat stranding. After nerve appears intact Pterygoid plates are intact bilaterally. The skull base is normal.

- C-Spine: The spine is visualized from the skull base through T3. There is loss of the normal cervical lordosis, otherwise alignment is grossly within normal limits. There is no evidence of acute fracture or dislocation. Craniovertebral junction relationships are well maintained. Vertebral body heights are within normal limits. There are mild to moderate multilevel degenerative changes without significant spinal stenosis. Prevertebral soft tissues are unremarkable. Biapical airspace disease. Grossly normal thyroid.

IMPRESSION
Impression: * RADIOLOGY RESIDENT PRELIMINARY INTERPRETATION *
1. Focal hyperdensity adjacent to the right frontal horn (3-15 and 5-19) may represent small hemorrhagic focus. No evidence of mass effect.
2. Facial fractures as described above. Right ZMC fracture. Mild right intraorbital fat stranding. No evidence of right globe rupture.
3. Negative C-spine CT.
4. Negative limited upper thoracic spine CT.
5. Biapical airspace disease better evaluated on dedicated chest CT.

CT MAXILLOFACIAL WO CONTRAST (70486)
Preliminary Result
Procedure: CT BRAIN WO CONTRAST (70450), CT MAXILLOFACIAL WO CONTRAST (70486), CT CERVICAL SPINE WO INCL T-3 (72125)

Indication: Unresponsive with decreased

Technique:
1. Axial CT of the brain without IV contrast. Sagittal and coronal reformations are also provided for review.
2. Axial CT of the face without IV contrast. Sagittal and coronal reformations are also provided for review.
3. Axial CT of the cervical spine without IV contrast. Sagittal and coronal reformations are also provided for review.

Comparison: None.

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242


**UNIVERSITY of IOWA
HOSPITALS&CLINICS**
University of Iowa Health Care

## ED Notes (continued)

Findings:

- Brain: Focus of hyperdensity adjacent to the right frontal horn seen
on series 3-15 and 5-19. No evidence of mass effect. There is no
evidence of acute large vascular distribution infarct or mass lesion.
The ventricles, cortical sulci and basal cisterns are symmetric and
age appropriate. Normal brainstem and posterior fossa. The scalp and
calvarium are unremarkable.

- Face: Acute fractures involving the right zygomatic arch. Anterior,
lateral and medial maxillary sinus fractures. Acute fracture involving
the inferior orbital rim at (4-29) and lateral orbital wall (4-39).
Acute fracture involving the right side, at the junction of the
sphenoid. Acute fracture involving the ethmoid bone medially. Fluid
opacification of the right maxillary sinus. Mucosal thickening left
maxillary sinus. Left maxillary sinus polyp versus mucous retention
cyst. Mild right intraorbital fat stranding. After nerve appears
intact Pterygoid plates are intact bilaterally. The skull base is
normal.

- C-Spine: The spine is visualized from the skull base through T3.
There is loss of the normal cervical lordosis, otherwise alignment is
grossly within normal limits. There is no evidence of acute fracture
or dislocation. Craniovertebral junction relationships are well
maintained. Vertebral body heights are within normal limits. There
are mild to moderate multilevel degenerative changes without
significant spinal stenosis. Prevertebral soft tissues are
unremarkable. Biapical airspace disease. Grossly normal thyroid.

IMPRESSION
Impression: * RADIOLOGY RESIDENT PRELIMINARY INTERPRETATION *
1. Focal hyperdensity adjacent to the right frontal horn (3-15 and
5-19) may represent small hemorrhagic focus. No evidence of mass
effect.
2. Facial fractures as described above. Right ZMC fracture. Mild right
intraorbital fat stranding. No evidence of right globe rupture.
3. Negative C-spine CT.
4. Negative limited upper thoracic spine CT.
5. Biapical airspace disease better evaluated on dedicated chest CT.

LEFT WRIST PA, LATERAL & OBL
Preliminary Result
Procedure: LEFT WRIST PA, LATERAL & OBL

Clinical Indication: Evaluate for fracture, fall

Comparison: None.

IMPRESSION

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name. Lee, John E
HOSP #:78149176
Printed by KDOUGHER at 10/16/15 4:35 AM



**ED Notes (continued)**

Findings/impression: Small density adjacent to the medial aspect of the ulnar styloid process, this may represent small avulsion fracture versus calcification. Otherwise, bones are normal in appearance without evidence of acute fracture or dislocation. No soft tissue abnormalities identified.

PELVIS AP
**Preliminary Result**
Procedure: PELVIS AP

Clinical Indication: Unresponsive and bruised head

Comparison: None.

Findings: No evidence of acute fracture or dislocation. Anatomic alignment of osseous structures. No soft tissue abnormalities identified.

IMPRESSION
Impression: Negative.

CHEST - AP/PA   (Results Pending)
LEFT KNEE AP & LATERAL   (Results Pending)

Results for orders placed during the hospital encounter of 07/12/15
**-PELVIS AP**

Procedure: PELVIS AP

Clinical Indication: Unresponsive and bruised head

**Narrative:**    Comparison: None.

Findings: No evidence of acute fracture or dislocation. Anatomic alignment of osseous structures. No soft tissue abnormalities identified.

**Impression:**    Impression: Negative.

**ED Medications Administered:**
Medications

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP # 78149176
Printed by KDOUGHER at 10/16/15 4:35 AM

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 412 of 555   Lincoln/Lee 500



University of Iowa Health Care

## ED Notes (continued)

fentanyl (pf) (SUBLIMAZE) 50 mcg/mL injection 50 mcg (not administered)
propofol (DIPRIVAN) 10 mg/mL infusion (25 mcg/kg/min × 70 kg (Order-Specific) Intravenous New Bag 7/12/15 0112)
iopamidol (ISOVUE 370) injection 125 mL (121 mL Intravenous Given 7/12/15 0123)

**Consults:**
Trauma Surgery
Neurosurgery
Otolaryngology

**Emergency Department Course:**
Admitted to the Emergency Department and evaluated by resident and staff along with trauma team as trauma activation. C-collar in place on arrival, c-spine precautions maintained. Patient rolled off of back board and back examined.  The sedation was turned off to perform a neurologic exam.

Neurologic exam demonstrated Glascow 4T.

Labs: Bicarbonate 20, WBC 12.1, ABG 7.32/41/101, lactic acid 1.7

Imaging: Per above.  Multiple facial fractures and hyperdense area in right frontal horn.

The patient was transferred to the SNICU in stable condition.

**Impression:**
ATV accident causing injury
Right zygomatic fracture
Unresponsiveness

**Plan:**
Admit to SNICU

David Baumgartner, MD
Department of Emergency Medicine
University of Iowa Healthcare

Staff and Resident/Fellow

Addendum to note by Stilley, Joshua D. MD at 7/13/2015 05.51

## Consult Notes

**Consults by Kozishek, David M at 7/18/2015  4:49 PM**

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name. Lee, John E
HOSP.#:78149176
Printed by KDOUGHER at 10/16/15  4.35 AM



PT. NAME: LEE,JOHN E
MRN: 78149176
DOB: ⠀⠀⠀⠀ Sex: M
ADM: 7/12/2015  D/C: 7/19/2015

## Consult Notes (continued)

### Consults by Kozishek, David M at 7/18/2015  4:49 PM (continued)

| | | |
|---|---|---|
| Author: Kozishek, David M | Service: PALLIATIVE CARE | Author Type: Chaplain |
| Filed: 7/18/2015  4:54 PM | Note Time: 7/18/2015  4:49 PM | Status: Signed |
| Editor: Kozishek, David M (Chaplain) | | |

**Spiritual Services Consult Note**

**Today's Date:** 7/18/2015

**Encounter Date:** 7/11/2015

**Reason for Visit:**
This was an attempted initial visit to assess patient/family's emotional and spiritual needs as Palliative Care Team chaplain.

No family present at bedside at time of chaplain's visit.  Per nursing staff, pt has a large family who have been present earlier today - chaplain looked for family in unit waiting area, but none of pt's family present at the time. Per nursing staff, pt will probably be compassionately extubated sometime tomorrow. Nursing staff reports that pt's family members were asked if they would like a chaplain to visit pt/family, and family declined the offer at the time they were asked.

**Spiritual Follow-Up:**
No follow-up needed at this time
Chaplain on-call remains available on pager 3437

David Kozishek
Chaplain, UIHC Spiritual Services and Palliative Care Consult Service

### Consults by Thomsen, Timothy A, MD at 7/17/2015  6:46 PM

| | | |
|---|---|---|
| Author: Thomsen, Timothy A, MD | Service: PALLIATIVE CARE | Author Type: Physician-Staff |
| Filed: 7/17/2015  7:00 PM | Note Time: 7/17/2015  6:46 PM | Status: Signed |
| Editor: Thomsen, Timothy A, MD (Physician-Staff) | | |

**Palliative care initial note July 17, 2015:**

Approximately a week ago, John sustained a severe traumatic brain injury while riding an ATV and was down for an undetermined period of time. His neurologic examination has been labile and steadily deteriorating since the time of his admission, he respect the above efforts to allow for improvement.

Palliative care was asked to participate in a family meeting which included the patient's wife, son, daughter and 15 additional family numbers. Additionally Dr. Garcia, intensive care unit fellow, neurosurgery resident, members of the intensive care unit nursing staff and I attended.

Initial discussion was focused on the clinical condition and in answering questions which the family had

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP.# 78149176
Printed by KDOUGHER at 10/16/15  4:35 AM

Case 6:18-cv-02063-CJW-MAR     Document 26-4     Filed 02/13/19     Page 414 of 555     Lincoln/Lee 502



## Consult Notes (continued)

### Consults by Thomsen, Timothy A, MD at 7/17/2015  6:46 PM (continued)

regarding his ability to recover. At that stage, family members were allowed to ask questions and the patient's son offered confident and clear insight into the desires of his father and the manner in which his father would make decisions if he was able to be present to do so.  He was very clear that the patient lived a very active and patient lifestyle and clinical situation which would result in profound impairment and disability would be acceptable to him. Although there were many questions, it became apparent that every family member recognized the reality of John's wishes.

We discussed the process of compassionate extubation and the anticipated clinical scenarios which might unfold. Family members had many questions all of which we answered thoroughly.  We discussed the manner in which differential would occur and the options of transfer to the palliative care unit for prolonged support if this does not occur medially following extubation. We stressed the importance of managing his symptoms and providing dignity with no suffering.

Family members indicated that they would spend time with him this evening and hope to make a decision within the next several hours to days. He did agree to DO NOT RESUSCITATE order they understand and we will continue to support him in the current manner until a decision has been made.

Palliative care we'll continue to follow him, make recommendations as indicated and to accept him as a transfer to the palliative care unit if he survives the early period of extubation.


**TIME**

63 minutes spent in <u>critical care</u> from 1640 to 1745  face to face with the patient's family, explaining diagnosis, prognosis, goals of care, resuscitation options, rationale for current therapies, and process of compassionate extubation. This conversation occurred in the surgical intensive care unit, with patient unable to participate because he was neurologically devastated, on a ventilator and unable to speak for himself. **2-**The patient was critically ill due to traumatic brain injury **3-**Time spent included discussion with family members and/or surrogate decision-makers regarding potential care options.

Timothy A. Thomsen MD
Interim Director,  Palliative Care
Pager 7856
Cell phone:  319 331 2472


### Consults by Hansen, Marlan R, MD at 7/12/2015  3:06 AM

Author:  Hansen, Marlan R, MD          Service: OTOLARYNGOLOGY          Author Type:  Physician-Staff
Filed: 7/14/2015 10:02 AM          Note Time: 7/12/2015  3:06 AM          Status:  Signed
Editor:  Hansen, Marlan R, MD (Physician-Staff)
Related Notes:     Original Note by Roche, Joseph P, MD (Physician-Fellow) filed at 7/12/2015  3:24 PM
    Consult Orders:
    1. INPATIENT CONSULT OTOLARYNGOLOGY - DIVISION UNSPECIFIED [229347526] ordered by Deets,
    Ryan, MD at 07/12/15 0300

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242



## Consult Notes (continued)

### Consults by Hansen, Marlan R, MD at 7/12/2015  3:06 AM (continued)

## Consult Note

**Current Date:** 7/12/2015

**Name of Requesting Clinical Staff:** Jeffrey Mason

**Subjective:**

Mr. Lee is a 46yo M s/p ATV accident earlier this evening at ~7pm. The patient reportedly was drinking earlier in the evening and went out on his ATV. After he did not return after a while the family looked for him and he was found down next to a running ATV. He was unconscious. The family brought him back to the house to observe him, but when he remained unresponsive they brought him to a local ED where he was emergently intubated and transferred to UIHC.

As per family he has no PMH, PSH, Meds.

Patient Active Problem List
Diagnosis                                                                Date Noted
• Fall                                                                       07/12/2015

No family history on file.
History
Substance Use Topics
• Smoking status:                        Not on file
• Smokeless tobacco:                 Not on file
• Alcohol Use:                            Not on file

No past surgical history on file.
Not on File
No prescriptions prior to admission

**Review of Systems**
Complete ROS negative unless noted in HPI

**Objective:**

BP 133/71 mmHg | Temp(Src) 37.9 °C (100.2 °F) (Tympanic) | Ht 1.778 m (5' 10") | Wt 103 kg (227 lb 1.2 oz) | BMI 32.58 kg/m2 | SpO2 94%

|  |  |
|---|---|
| ***General appearance*** | Intubated male, not responsive to noxious stimuli |
| ***Head*** | Normocephalic, R eye ecchymosis |
| **Lacerations:** | None |
| ***Eyes*** | R eye ecchymosis<br>Pupils constricted but PERRLA |

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt Name: Lee, John E
HOSP.#:78149176
Printed by KDOUGHER at 10/16/15 4:35 AM

Page 36

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 416 of 555    Lincoln/Lee 504



## Consult Notes (continued)

### Consults by Hansen, Marlan R, MD at 7/12/2015  3:06 AM (continued)

Orbital rims: R sided orbital rim stepoffs

**Ears** No hemotypanum; No blood in AU EAC; TM intact AU, normal auricles

**Nose** Nares normal. Blood with anterior cavity/ Septum midline. Mucosa normal
No septal hematoma, No rhinnorrhea

**Oral** No malocclusion; no maxillary mobility; partial plate in place on maxillary teeth with gross caries; No salty taste

**Neck** C-collar on, trachea midline, Thyroid Cartilage intact; No lymphadenopathy

**Lungs** clear to auscultation bilaterally

**Heart** regular rate and rhythm, no m/r/g

**Abdomen** Soft NT/ND, normoactive bowel sounds

**Extremities** Warm and well perfused, no edema

**Cranial Nerve** Unable to assess

+ Gag, corneal and cough reflex

CT: Extensive R sided facial fractures including- Zygomatic arch, anterior, lateral, medial maxillary sinus fractures, inferior orbital rim, lateral orbital rim, junction of the sphenoid
- opacification of maxillary sinus (R)

**Assessment:**

46yo M s/p ATV accident. Minimally responsive to noxious stimuli. Patient seems to have anoxic brain injury, and also has multiple facial fractures.

**Plan:**

- No acute ENT surgical intervention
- Recommend ophtho consult with orbital rim fractures
- ENT will continue to follow

**Staff Involved**
Staff and Resident/Fellow

Andrew Davis, MD

I have seen am examined the patient personally. He is intubated and minimally responsive. No maxillary dentition on CT. As such, no acute intervention is required regarding his facial fractures. If he is stable for surgery and he desires cosmetic repair (midfacial width mainly), surgery can be considered at a later time. ENT will continue to follow while he is in house.

Joseph Roche, MD.

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City  IA 52242

Pt. Name. Lee, John E
HOSP.#:78149176
Printed by KDOUGHER at 10/16/15  4:35 AM



## Consult Notes (continued)

### Consults by Hansen, Marian R, MD at 7/12/2015 3:06 AM (continued)

### Consults by Raecker, Matthew E, MD at 7/13/2015 12:13 PM

Author: Raecker, Matthew E, MD       Service: OPHTHALMOLOGY       Author Type: Physician-Fellow Associate
Filed: 7/13/2015 10:19 PM            Note Time: 7/13/2015 12:13 PM   Status: Signed
Editor: Raecker, Matthew E, MD (Physician-Fellow Associate)
Related Notes:    Original Note by Myers, Lorraine A, MD (Physician-Resident) filed at 7/13/2015 6:50 PM
    Consult Orders:
    1. INPATIENT CONSULT OPHTHALMOLOGY - DIVISION UNSPECIFIED [229347966] ordered by Skeete,
    Dionne A, MD at 07/12/15 0616

## Ophthalmology Consult Note

**Current Date:** 7/13/2015

**Name of Requesting Clinical Staff:** Jeffrey Mason
John E Lee is a 46 y.o. male.

**Assessment:**

46 y.o. male with facial trauma after ATV accident.

**Right ZMC fracture:** No evidence of extraocular muscle entrapment or globe injury.

**Punctate Epitheliopathy, bilateral:** Likely due to ocular surface exposure while unconscious.

**Plan:**
- Please provide ocular lubrication to protect the ocular surface while intubated.
- Otherwise, no ophthalmic indication for emergent surgical intervention.
- Avoid blowing nose.
- Ice or cold packs to the area x 48 hours.
- Please contact us for increased pain or redness around the eye, decreased vision, and double vision.
- We will return for a dilated exam once cleared by the primary team.

Oculoplastics team notified of patient.  Will arrange for follow-up in 10-14 days, pending his inpatient course.

**\*\*ATTENTION:  We will continue to follow his clinical course. Please contact us once it is OK to dilate the patient.\*\***

Please contact me with any questions or concerns (pager #4923).

Page 38

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP.#:78149176
Printed by KDOUGHER at 10/16/15 4:35 AM


**UNIVERSITY of IOWA HOSPITALS & CLINICS**
University of Iowa Health Care

## Consult Notes (continued)

### Consults by Raecker, Matthew E, MD at 7/13/2015 12:13 PM (continued)

Lorraine A. Myers, MD
*Resident Physician, PGY-1*
*Internal Medicine & Ophthalmology*
*University of Iowa Hospitals and Clinics*
Pager #4923

## Faculty Comments:

Agree with resident assessment and plan. Complete exam with dilation is needed when the patient is cleared.

I did not personally examine this patient, cosigning only.

Matthew Raecker, MD
University of Iowa Department of Ophthalmology

**Subjective:**

**History of Present Illness:**
46 year old male with no previous medical diagnoses who sustained unwitnessed ATV accident on the night of 7/11/15, found unconscious by family, intubated at OSH, and transferred to UIHC on 7/12 for further care. Since admission, he has been hemodynamically stable and intubated with continuous ICP monitoring. Ophthalmology was consulted, as CT maxillofacial imaging revealed R intraorbital hemorrhage and R ZMC fracture.

(Per family)
PMHx: no prior diganoses
POHx: wear spectacles
FamHx: no family history of eye disease

**Patient Active Problem List**

| Diagnosis | Date Noted |
|---|---|
| • Glasgow coma scale total score 3-8 | 07/13/2015 |
| • Obesity | 07/13/2015 |
| • Metabolic acidosis | 07/13/2015 |
| • Hypophosphatemia | 07/13/2015 |
| • Fall | 07/12/2015 |
| • Acute respiratory failure following trauma and surgery | 07/12/2015 |
| • Traumatic brain injury with loss of consciousness | 07/12/2015 |
| • Facial bones, closed fracture | 07/12/2015 |
| • Acute alcoholic intoxication without complication | 07/12/2015 |

**Review of Systems**
Unable to obtain, intubated and sedated patient.

No family history on file.
History
Substance Use Topics

| | |
|---|---|
| • Smoking status: | Not on file |
| • Smokeless tobacco: | Not on file |
| • Alcohol Use: | Not on file |

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP #:78149176
Printed by KDOUGHER at 10/16/15 4:35 AM

Page 39

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 419 of 555    Lincoln/Lee 507



## Consult Notes (continued)

### Consults by Raecker, Matthew E, MD at 7/13/2015 12:13 PM (continued)

No prescriptions prior to admission

**Current Facility-Administered Medications**

| Medication | Dose | Route | Frequency | Provider | Last Rate | Last Dose |
|---|---|---|---|---|---|---|
| • acetaminophen (TYLENOL) 325 mg/10 mL solution 650 mg | 650 mg | Oral | Q4H PRN | Lemere, Ashley M, MD | | 650 mg at 07/13/15 1406 |
| • artificial tears (TEARS NATURALE II) ophthalmic solution 1 Drop | 1 Drop | Both Eyes | PRN | Fath, Colin T, MD | | |
| • ceFAZolin (ANCEF) 2000 mg/60 mL RTU IV bag | 2,000 mg | Intravenous | Q8H | Close, Liesl, MD | | |
| • chlorhexidine 0.12 % oral rinse (alcohol free) 5 mL | 5 mL | Oral | 2X/Day | Obr, Brooks J, MD | | 5 mL at 07/13/15 1000 |
| • D50W injection syringe 12.5 g | 12.5 g | Intravenous | PRN | Obr, Brooks J, MD | | |
| • dexmedetomidine (PRECEDEX) 400 mcg/100 mL RTU continuous infusion | 0.2-0.7 mcg/kg/hr | Intravenous | Continuous | Chazhikattu, Anita J, MD | 5.2 mL/hr at 07/13/15 1412 | 0.2 mcg/kg/hr at 07/13/15 1412 |
| • famotidine (PEPCID) 8 mg/mL liquid 20 mg | 20 mg | Oral | 2X/Day | Chazhikattu, Anita J, MD | | 20 mg at 07/13/15 0757 |
| • fentanyl (pf) (SUBLIMAZE) 50 mcg/mL injection 50 mcg | 50 mcg | Intravenous | Q5Min PRN | He, Jane J, MD | | 50 mcg at 07/12/15 1320 |
| • fentanyl (SUBLIMAZE) 1000 mcg/100 mL NS continuous infusion And | 10-100 mcg/hr | Intravenous | Continuous | Obr, Brooks J, MD | | |
| • fentanyl BOLUS from currently infusing BAG 25 mcg | 25 mcg | Intravenous | Q10Min PRN | Obr, Brooks J, MD | | |
| • insulin regular (HumuLIN R) injection 2-8 Units | 2-8 Units | Subcutaneous | Q2H PRN | Obr, Brooks J, MD | | |
| • levETIRAcetam (KEPPRA) 500 mg/5 mL liquid 500 mg | 500 mg | GI Tube | 2X/Day | Close, Liesl, MD | | 500 mg at 07/13/15 0756 |
| • norepinephrine (LEVOPHED) 8 mg in sodium chloride 0.9% 500 mL continuous infusion | 0.01-0.2 mcg/kg/min | Intravenous | Continuous | Rogers, William K, MD | | 0.01 mcg/kg/min at 07/12/15 2041 |

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP.#:78149176
Printed by KDOUGHER at 10/16/15 4:35 AM

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 420 of 555    Lincoln/Lee 508



**UNIVERSITY of IOWA HOSPITALS & CLINICS**
University of Iowa Health Care

## Consult Notes (continued)

### Consults by Raecker, Matthew E, MD at 7/13/2015 12:13 PM (continued)

| | | | | | |
|---|---|---|---|---|---|
| • propofol (DIPRIVAN) 10 mg/mL infusion | 5-100 mcg/kg/min (Order-Specific) | Intravenous | Continuous | He, Jane J, MD | 25 mcg/kg/min at 07/12/15 0112 |
| • propofol (DIPRIVAN) 10 mg/mL infusion | 5-50 mcg/kg/min (Order-Specific) | Intravenous | Continuous | Obr, Brooks J, MD | 30 mcg/kg/min at 07/12/15 1415 |
| And | | | | | |
| • propofol BOLUS from currently infusing BOTTLE 10 mg | 10 mg | Intravenous | Q1H PRN | Obr, Brooks J, MD | |
| • propofol BOLUS from currently infusing BOTTLE 40 mg | 40 mg | Intravenous | Q5Min PRN | Chazhikattu, Anita J, MD | |
| • sodium chloride 0.9% continuous infusion | | Intravenous | Continuous PRN | Obr, Brooks J, MD | |
| • sodium chloride 0.9% continuous infusion | | Intravenous | Continuous PRN | Obr, Brooks J, MD | |
| • sodium chloride 0.9% continuous infusion | | Intravenous | Continuous | Chazhikattu, Anita J, MD | 75 mL/hr at 07/13/15 1418 |
| • sodium chloride 7.5% injection 100 mL | 100 mL | Intravenous | Once | Helland, Logan, MD | |
| • thiamine (VITAMIN B-1) 100 mg, folic acid 1 mg in sodium chloride 0.9% 50 mL IV bag | 100 mg | Intravenous | Daily | Skeete, Dionne A, MD | |

Not on File

**Objective:**
BP 122/58 mmHg | Temp(Src) 37.1 °C (98.8 °F) (Tympanic) | Ht 1.778 m (5' 10") | Wt 103 kg (227 lb 1.2 oz) | BMI 32.58 kg/m2 | SpO2 97%

Examination performed at the bedside

## Base Eye Exam

### Visual Acuity
Patient was intubated and unresponsive.

### Tonometry (Applanation, 1:34 PM)

| | Right | Left |
|---|---|---|
| Pressure | 18 | 18 |

### Pupils

| | Dark | Light | React | APD |
|---|---|---|---|---|
| Right | 1.5 | 1 | Brisk | None |

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP.#:78149176
Printed by KDOUGHER at 10/16/15 4:35 AM

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 421 of 555    Lincoln/Lee 509


**UNIVERSITY*of*IOWA**
**HOSPITALS&CLINICS**
University of Iowa Health Care

## Consult Notes (continued)

### Consults by Raecker, Matthew E, MD at 7/13/2015 12:13 PM (continued)

| Left | 1.5 | 1 | Brisk | None |
|------|-----|---|-------|------|

**Extraocular Movement**
OD: Forced ductions with topical anesthetic were full and smooth in all directions. Supraduction was mildly limited by upper lid swelling.
OS: Patient moved spontaneously in all 4 directions of gaze.

## Slit Lamp and Fundus Exam

External Exam

| | Right | Left |
|---|-------|------|
| External | Normal | Normal |

Slit Lamp Exam

| | Right | Left |
|---|-------|------|
| Lids/Lashes | periocular ecchymosis and edema | Normal |
| Conjunctiva/Sclera | Temporal subconjunctival hemorrhage with small area of clotted blood 4 mm from limbus. No evidence of laceration. Seidel negative. | Clear and quiet |
| Cornea | diffuse PEE, with small <1 mm paracentral corneal abrasion | diffuse PEE |
| Anterior Chamber | Formed | Deep and quiet |
| Iris | Normal architecture; round pupil | Normal architecture; round pupil |
| Lens | clear | clear |
| Vitreous | undilated | undilated |

Fundus Exam

| | Right | Left |
|---|-------|------|
| Disc | undilated | undilated |
| Macula | undilated | undilated |
| Vessels | undilated | undilated |
| Periphery | undilated | undilated |

Edited by: Myers, Lorraine A. MD

Results Reviewed:
Inpatient results and imaging reviewed.

CT Brain and CT Maxillofacial: Consistent with R ZMC fracture. No evidence of muscle entrapment or globe injury.

**Staff Involved**
Staff and Resident/Fellow

Lorraine Myers, MD

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name. Lee, John E
HOSP.#.78149176
Printed by KDOUGHER at 10/16/15 4:35 AM



## Consult Notes (continued)

### Consults by Raecker, Matthew E, MD at 7/13/2015 12:13 PM (continued)

### Consults by Willey, Michael C, MD at 7/13/2015  8:13 AM

Author: Willey, Michael C, MD        Service: ORTHOPAEDIC        Author Type: Physician-Associate
Filed: 7/13/2015 12:55 PM        Note Time. 7/13/2015  8:13 AM        Status. Signed
Editor: Willey, Michael C, MD (Physician-Associate)
Related Notes:    Original Note by Wilkinson, Brandon G, MD (Physician-Resident) filed at 7/13/2015  8:50 AM
    Consult Orders:
    1. INPATIENT CONSULT ORTHOPAEDICS - TRAUMA [229354055] ordered by de Andrade, James P, MD at
    07/13/15 0545

## Consult Note

**Current Date:** 7/13/2015

Referring Provider: Mason

**CHIEF COMPLAINT:**
L ulnar styloid avulsion fx

**HISTORY OF PRESENT ILLNESS:**
46 yo M s/p ATV accident while intoxicated who sustained TBI s/p bolt placement by neurosurgery. GCS 4 on
arrival with intracranial bleed. C and T spine cleared of fx/dislocation, but concern for L ulnar styloid avulsion fx
noted on plain films.  He is intubated and sedated and does respond to voice or withdraw to pain.

**REVIEW OF SYSTEMS:**
Unable to assess

**PAST MEDICAL HISTORY:**
Unable to assess

**ALLERGIES:**
Unable to assess

**MEDICATIONS:**
Unable to assess

**FAMILY HISTORY:**
Unable to assess

**SOCIAL HISTORY:**

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP.#:78149176
Printed by KDOUGHER at 10/16/15  4:35 AM


**UNIVERSITY of IOWA HOSPITALS & CLINICS**
University of Iowa Health Care

PT. NAME: LEE,JOHN E
MRN: 78149176
DOB:            Sex: M
ADM: 7/12/2015   D/C:  7/19/2015

## Consult Notes (continued)

### Consults by Willey, Michael C, MD at 7/13/2015  8:13 AM (continued)
Unable to assess

**PHYSICAL EXAMINATION:**
GENERAL: Intubated and sedated
MUSCULOSKELETAL: There is no gross deformity of bilateral upper or lower extremities. Full passive ROM at all joints bilaterally. No swelling over left wrist and patient does not withdraw to palpation over ulnar styloid. 1+ palpable radial pulse bilaterally. Unable to assess motor and sensory. No clonus, no babinski.

**IMAGING: L wrist XR**
IMPRESSION
Findings/impression: Small fairly well corticated osseous density is present adjacent to the medial aspect of the ulnar styloid process; this may represent small avulsion fracture versus cartilaginous calcification. Otherwise, bones are normal in appearance without evidence of acute fracture or dislocation. No soft tissue abnormalities identified.

**ASSESSMENT:**
46 yo M ATV + LOC, GCS4, intracranial bleed, ICH s/p bolt placement who is intubated and sedated in critical condition. There is a small corticated osseous density on plain film of L wrist. This could be avulsion fx vs calcification vs normal variant. Difficult to asses given physical exam is limited and pain cannot be evaluated. Regardless, however, there is no indication for surgical intervention and we recommend non-operative management
- Non-operative management
- Cock-up wrist splint for comfort
- Please do not hesitate to call with further orthopaedic questions.
- Please page 3151with questions regarding this patient's care.

Brandon Wilkinson, MD

**Teaching Statement**
I have interviewed and examined the patient and confirm the pertinent findings.  I have discussed the case with the resident/fellow and agree with the findings and plan as documented.

**Staff Involved**
Staff and Resident/Fellow

Dr. Michael Willey

### Consults by Viljoen, Stephanus, MD at 7/12/2015  3:19 AM

Page 44

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP.# 78149176
Printed by KDOUGHER at 10/16/15  4:35 AM

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 424 of 555    Lincoln/Lee 512

**UNIVERSITY of IOWA HOSPITALS&CLINICS**
University of Iowa Health Care

PT. NAME: LEE,JOHN E
MRN: 78149176
DOB:          Sex: M
ADM: 7/12/2015  D/C: 7/19/2015

## Consult Notes (continued)

### Consults by Viljoen, Stephanus, MD at 7/12/2015  3:19 AM (continued)

| Author: Viljoen, Stephanus, MD | Service: NEUROSURGERY | Author Type: Physician-Fellow Associate |
|---|---|---|
| Filed: 7/13/2015 11:02 AM | Note Time: 7/12/2015  3:19 AM | Status: Signed |

Editor: Viljoen, Stephanus, MD (Physician-Fellow Associate)
Related Notes:    Original Note by Close, Liesl, MD (Physician-Resident) filed at 7/12/2015  8:04 AM
Consult Orders:
1. INPATIENT CONSULT NEUROSURGERY [229347936] ordered by Deets, Ryan, MD at 07/12/15 0306

## Consult Note

**Current Date:** 7/12/2015

**Name of Requesting Clinical Staff:** Jeffrey Mason

**Subjective:**

Patient is a 46 y.o. male who was camping with family. He reportedly was drinking and decided to ride his ATV. His family then found him down and took him home, presuming he was still intoxicated. When he did not wake up, they brought him to the ED for evaluation.

Per family, no significant PMH, no medications.

Patient Active Problem List
Diagnosis                                                                                          Date Noted
• Fall                                                                                                   07/12/2015

No past medical history on file.
No family history on file.
History
Substance Use Topics
• Smoking status:                              Not on file
• Smokeless tobacco:                       Not on file
• Alcohol Use:                                  Not on file

No past surgical history on file.
Not on File
No prescriptions prior to admission

**Review of Systems**
Unobtainable due to patient's mental status

**Objective:**

BP 133/71 mmHg | Temp(Src) 37.9 °C (100.2 °F) (Tympanic) | Ht 1.778 m (5' 10") | Wt 103 kg (227 lb 1.2 oz) | BMI 32.58 kg/m2 | SpO2 94%

University of Iowa Hospitals and Clinics
200 Hewkins Drive, Iowa City, IA 52242

Pt Name: Lee, John E
HOSP # 78149176
Printed by KDOUGHER at 10/16/15 4:35 AM



## Consult Notes (continued)

### Consults by Viljoen, Stephanus, MD at 7/12/2015 3:19 AM (continued)

**Exam:**
Intubated, not sedated
PERRL
+ cough, gag, corneals
Weak extension in BUE to central and peripheral noxious
Weak flexion in BLE to peripheral noxious

*GCS 4T (E1+V1T+M2)*

**Imaging:**
-Head CT shows small focus of hemorrhage adjacent to the right lateral ventricle. Multiple midface fractures
-CT C spine shows no obvious fracture or dislocation
-CT T and L spine shows no obvious fracture or dislocation

**Assessment:**

46 yo male with traumatic brain injury s/p presumed ATV accident

**Plan:**

-Management per Trauma primary
-Keppra 1000mg load, then 500mg BID for seizure prophylaxis
-Will place bolt given poor exam and lack of significant findings on head CT
-EEG after bolt
-Fit for MJC, will clear C spine when able
-HOB > 30


This patient was discussed with Chief Resident on call, Dr. Abode-Iyamah

Please page 3268 with any questions or concerns.


Liesl Close, MD



## Procedure Notes

### Procedures by Howard, Matthew A III, MD at 7/16/2015 7:54 PM

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt Name. Lee, John E
HOSP # 78149176
Printed by KDOUGHER at 10/16/15 4:35 AM



PT. NAME: LEE,JOHN E
MRN: 78149176
DOB:        Sex: M
ADM: 7/12/2015   D/C: 7/19/2015

## Procedure Notes (continued)

### Procedures by Howard, Matthew A III, MD at 7/16/2015  7:54 PM (continued)

Author: Howard, Matthew A III, MD   Service: NEUROSURGERY     Author Type: Physician-Staff
Filed: 7/30/2015 10:25 AM         Note Time: 7/16/2015  7:54 PM     Status: Signed
Editor: Howard, Matthew A III, MD (Physician-Staff)
Related Notes:    Original Note by Zanaty, Mario, MD (Physician-Resident) filed at 7/30/2015  9:16 AM

### Neurosurgery Procedure Note

**Procedure:** Intracranial Pressure monitor placed on 7/16/2015 at approximately 7pm
**Diagnosis pre- and postporocedure:** Traumatic brain injury
**Indications**: Patient not following commands with poor neurologic exam
**Consent:** An attempt was made at obtaining a consent from family member.

**Procedure Description :**
The patient was sedated. Following shaving of the forehead, Kocher's point was properly marked on the R forehead. The patient was prepped and draped in the usual manner. 3cc of 1% lidocaine  was injected to the surgical site.The bolt was screwed into place over the previously drilled hole, until it was tight. Next, the ICP monitor was connected and zeroed. The ICP monitor was inserted through the bolt to the double line and secured in place. The pressure was measured at 9 with good waveform shape. The monitor was covered and secured in place.
The patient tolerated the procedure well. There was no blood loss or hematoma. A bandage was placed over procedure site.
Dr. Matthew Howard  was immediately available during the entire procedure

**Estimated Blood Loss:** ~ 0 ml
**Antibiotics:** Ancef  2g Q8 hrs for infection prophylaxis is recommended

Mario Zanaty- MD
Department of Neurological Surgery

### Procedures by Rogers, William K, MD at 7/13/2015  3:19 AM

Author: Rogers, William K, MD      Service: CRITICAL CARE SICU     Author Type: Anesthesiologist
Filed: 7/16/2015 9:21 AM         Note Time: 7/13/2015  3:19 AM     Status: Signed
Editor: Rogers, William K, MD (Anesthesiologist)
Related Notes:    Original Note by Chazhikattu, Anita J, MD (Physician-Resident) filed at 7/13/2015  9:29 AM
    Procedure Orders:
    1. NON-OR PROCEDURE: Bronchoscopy [229354039] ordered by Chazhikattu, Anita J, MD at 07/13/15 0318

### Bronchoscopy Procedure Note

**Procedure Date:** 7/13/2015

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP.#:78149176
Printed by KDOUGHER at 10/16/15  4:35 AM


**UNIVERSITY of IOWA**
**HOSPITALS&CLINICS**
University of Iowa Health Care

## Procedure Notes (continued)

### Procedures by Rogers, William K, MD at 7/13/2015  3:19 AM (continued)

**Pre-operative Diagnosis:** Suspected aspiration

**Post-operative Diagnosis:** Same as Pre-Op Diagnosis

**Attending Staff:** Dr.Rogers

**Location:** ICU

**Anesthesia:** IV sedation.

**Consent:** Per ICU protocol.

**Description of Operation/Procedure:**
After proper identification, the patient was placed in a supine position with assistance from nursing staff. The patient was given Propofol intravenously for sedation. Lidocaine was instilled. The bronchoscope was inserted via endotracheal tub into the trachea. The scope inserted findings consisted of ET tube patent. The mucosa appeared to be healthy with no evidence of aspration  There was a bronchial alveolar lavage performed,sample obtained from right lower bronchus. The patient tolerated the entire procedure well and there was no complications. Post-procedure X-ray results showed no pneumothorax. Blood loss was estimated to be 0 cc.

**Teaching Statement:**
Dr. Rogers was present for the entire procedure.

Anita J Chazhikattu, MD

I was present for the entire procedure. We were unable to obtain adequate samples for BAL because of elevated ICPs with stimulation.
**W. Kirke Rogers, MD**
Anesthesia / Critical Care
*pager: 2512*
*office phone: 64959*

### Procedures by Viljoen, Stephanus, MD at 7/12/2015  4:29 AM

Author: Viljoen, Stephanus, MD          Service: NEUROSURGERY          Author Type: Physician-Fellow Associate
Filed: 7/13/2015 11:02 AM          Note Time: 7/12/2015  4:29 AM          Status: Signed
Editor: Viljoen, Stephanus, MD (Physician-Fellow Associate)
Related Notes:    Original Note by Close, Liesl, MD (Physician-Resident) filed at 7/12/2015  8:07 AM
   Pre-procedure Diagnoses
   1. TBI (traumatic brain injury), initial encounter [854.00]

   Post-procedure Diagnoses
   1. TBI (traumatic brain injury), initial encounter [854.00]


**UNIVERSITY of IOWA**
**HOSPITALS&CLINICS**
University of Iowa Health Care

## Procedure Notes (continued)

### Procedures by Viljoen, Stephanus, MD at 7/12/2015  4:29 AM (continued)

Procedures
1. PLACEMENT, INTRACRANIAL PRESSURE MONITOR [IMO16286 (CPT®)]

## Procedure Note

**Procedure Date:** 07/12/2015

**Pre-operative Diagnosis**: Traumatic Brain Injury

**Post-operative Diagnosis**: same

**Attending Staff**: Steve Viljoen, MD

**Resident/Fellow**: Liesl Close, MD

**Indications**: patient is a 46 yo male who was found unresponsive by his family after an ATV ride.  He has a poor neurologic exam, which is not explained by head findings on head CT.  Intracranial pressure monitor is indicated.

**Description of Operation/Procedure:**
The risks, benefits, indications, potential complications, and alternatives were explained to the patient's family. and informed consent obtained.  The patient was positioned supine on the bed with the head elevated. The right frontal scalp hair was clipped. Kocher's point was approximated and marked using measurements and anatomic landmarks. The site was prepped and draped in the usual sterile fashion. The marked site was infiltrated with lidocaine. A stab incision was made with a #15 blade down to the calvarium, and the periosteum was elevated. A small burr hole was fashioned with a twist drill. A spinal needle was used to perforate the dura. The bolt was screwed in place at the burr hole. The ICP monitor was connected and zeroed. The probe was then inserted through the bolt to the appropriate depth and secured in place. The pressure was initially measured in the teens, with good biphasic waves. Betadine soaked gauze was then applied around the base of the bolt, and elastoplast was used to secure the system.

**Complications**:  None.  The patient tolerated the procedure well and there were no immediate complications

**Estimated Blood Loss**: minimal

Dr Viljoen was not present for the proceedure, but was immediately available.

Liesl N Close, MD

### Procedures by Rogers, William K, MD at 7/12/2015  1:30 PM

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP.#:78149176
Printed by KDOUGHER at 10/16/15  4:35 AM



## Procedure Notes (continued)

### Procedures by Rogers, William K, MD at 7/12/2015  1:30 PM (continued)

| | | |
|---|---|---|
| Author: Rogers, William K, MD | Service: CRITICAL CARE SICU | Author Type: Anesthesiologist |
| Filed: 7/12/2015  3:09 PM | Note Time: 7/12/2015  1:30 PM | Status: Signed |

Editor:  Rogers, William K, MD (Anesthesiologist)

Related Notes:    Original Note by Chazhikattu, Anita J, MD (Physician-Resident) filed at 7/12/2015  1:32 PM
Procedure Orders:
1. NON-OR PROCEDURE: Arterial Line Placement [229347975] ordered by Chazhikattu, Anita J, MD at 07/12/15 0834

**Radial Arterial Line**

This procedure was performed emergently due to patient's overall medical condition.

Indications:  Need for close monitoring of blood pressure.

The patients left wrist was prepped with chlorhexidine and draped in sterile fashion and an Arrow art line needle was advanced to his radial artery with immediate flash of blood and the wire was easily advanced.  The catheter was also easily placed and sutured in place with successful waveform upon arterial line setup.   No complications

Anita Chazhikattu MD
PGY4
Anesthesia
Pager #1132.

I was present for the entire procedure.
**W. Kirke Rogers, MD**
Anesthesia / Critical Care
*pager: 2512*
*office phone: 64959*

•

### Procedures by Rogers, William K, MD at 7/12/2015  1:32 PM

| | | |
|---|---|---|
| Author: Rogers, William K, MD | Service: CRITICAL CARE SICU | Author Type: Anesthesiologist |
| Filed: 7/12/2015  3:09 PM | Note Time: 7/12/2015  1:32 PM | Status: Signed |

Editor:  Rogers, William K, MD (Anesthesiologist)

Related Notes:    Original Note by Chazhikattu, Anita J, MD (Physician-Resident) filed at 7/12/2015  1:34 PM
Procedure Orders:
1. NON-OR PROCEDURE: Central Line [229347973] ordered by Chazhikattu, Anita J, MD at 07/12/15 0834

## Central Line Placement Procedure Note

**Procedure Date:** 7/12/2015

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242


University of Iowa Health Care

## Procedure Notes (continued)

**Procedures by Rogers, William K, MD at 7/12/2015  1:32 PM (continued)**

**Pre-operative Diagnosis**: TBI

**Post-operative Diagnosis**: Same as Pre-Op diagnosis

**Attending Staff**: Dr.Rogers

**Location**: ICU

**Anesthesia**: Local with sedation.

**Indications**: Intravenous access.

**Consent:** Per ICU protocol.

**Description of Operation/Procedure:**
The patient was placed in the supine position.  The right neck was prepped and draped in the usual sterile fashion.  The anatomical landmark was identified.  A triple lumen 7 French catheter was successfully placed using the Seldinger technique via the right internal jugular vein.  The catheter was advanced to the 15 cm mark at the skin entrance.  All lumens flushed and aspirated easily.  The catheter was secured to the skin with sutures.  A sterile dressing was applied.  There were no complications apparent.  A total of 1 attempt(s) were made.  A chest x-ray was done and showed no pneumothorax with the catheter tip in the right atrium.

**Teaching Statement:**
I was present for sonographic identification of the vessel, puncture, and immediately available just outside the room the entire resent of the procedure.
**W. Kirke Rogers, MD**
Anesthesia / Critical Care
*pager: 2512*
*office phone: 64959*

## Results (07/17/15 - 07/12/15)

Resulted: 07/17/15 0839, Result status: Final result

**MRI SPINE CERVICAL WO CONTRAST (72141) [229546170]**

| | | | |
|---|---|---|---|
| Ordering provider: | Zanaty, Mario, MD  07/16/15 1608 | Resulted by: | Policeni, Bruno A, MD<br>Roh, Simon, MD |
| Performed: | 07/16/15 1624 - 07/16/15 1729 | Resulting lab: | UIHC RADIOLOGY |
| Narrative: | Procedure: MRI SPINE CERVICAL WO CONTRAST (72141) | | |

Indication: Diffuse axonal injury

Technique: Multisequence, multiplanar MRI of the cervical spine without IV contrast using a trauma protocol.

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP # 78149176
Printed by KDOUGHER at 10/16/15  4 35 AM

Case 6:18-cv-02063-CJW-MAR     Document 26-4     Filed 02/13/19     Page 431 of 555     Lincoln/Lee 519


University of Iowa Health Care

## Results (07/17/15 - 07/12/15) (continued)

**MRI SPINE CERVICAL WO CONTRAST (72141) [229546170] (continued)**

Resulted: 07/17/15 0839, Result status: Final result

Comparison: C-spine CT dated 7/12/2015

Findings: The spine is visualized from the skull base through T4. There is grossly anatomic alignment. Vertebral body heights are within normal limits.. Craniovertebral junction relationships are well-maintained. Visualized cord is normal. The longitudinal ligaments and ligamentum flavum are intact. No epidural collections. Prevertebral soft tissues are unremarkable. Major cervical flow voids are intact. There are mild multilevel degenerative changes without significant stenosis. Normal marrow signal.

Impression:          Impression:

Normal MRI C-spine.

This final report is in agreement with the critical and emergent preliminary findings reported by the radiology resident on call.

Specimen Information

| Type | Source | Collected On |
|------|--------|--------------|

**MRI BRAIN WO CONTRAST (70551) [229546169]**

Resulted: 07/17/15 0836, Result status: Final result

| | | | |
|---|---|---|---|
| Ordering provider. | Zanaty, Mario, MD  07/16/15 1608 | Resulted by: | Policeni, Bruno A, MD<br>Roh, Simon, MD |
| Performed: | 07/16/15 1623 - 07/16/15 1706 | Resulting lab: | UIHC RADIOLOGY |
| Narrative: | Procedure: MRI BRAIN WO CONTRAST (70551) | | |

Indication: Diffuse axonal injury.

Technique: Multisequence, multiplanar MRI of the brain without IV contrast.

Comparison: CT brain dated 7/12/2015

Findings:
There are multiple foci of susceptibility artifacts in bilateral frontal temporal parietal lobes, basal ganglia, midbrain, and pons, right greater than left. Multiple foci of diffusion restriction in the right frontal lobe, right temporal lobe, splenium of corpus callosum, left midbrain. Mild high FLAIR signal in the right frontal and temporal lobes, left basal ganglia, splenium of corpus callosum. Right frontal approach intracranial pressure monitoring system remains in place.

No gross evidence of intracranial mass lesion. The ventricles, cortical sulci and basal cisterns are symmetric and appropriate in size. The pituitary and suprasellar region are unremarkable. The major

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP.#.78149176
Printed by KDOUGHER at 10/16/15  4:35 AM

Page 52

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 432 of 555    Lincoln/Lee 520


UNIVERSITY *of* IOWA
HOSPITALS & CLINICS
University of Iowa Health Care

## Results (07/17/15 - 07/12/15) (continued)

Resulted: 07/17/15 0836, Result status: Final
result

### MRI BRAIN WO CONTRAST (70551) [229546169] (continued)

intracranial flow-voids are preserved. Normal orbits. Paranasal sinus disease. Fluid in bilateral mastoid air cells. Normal bone marrow signal.

.

Impression:        Impression:

1. Abnormal signal in bilateral cerebral hemispheres, basal ganglia, midbrain, and pons consistent with diffuse axonal injury, right greater than left.
2. Right frontal approach intracranial pressure monitor system remains in place.

Results of the procedure paged to:

PERSON CONTACTED: Woodroffe
DATE: 7/16/2015
TIME CALLED: 17:32 hrs
PHONE/PAGER: 3268

This final report is in agreement with the critical and emergent preliminary findings reported by the radiology resident on call.

Specimen Information

| Type | Source | Collected On |
|---|---|---|

Resulted: 07/15/15 0850, Result status: Final
result

### CHEST - AP/PA [229546133]

| Ordering provider: | Obr, Brooks J, MD  07/15/15 0421 | Resulted by: | Thompson, Brad H, MD |
|---|---|---|---|
| Performed: | 07/15/15 0430 - 07/15/15 0530 | Resulting lab: | UIHC RADIOLOGY |
| Narrative: | Procedure: CHEST - AP/PA | | |

Technique: Portable AP chest radiograph

Comparison: Chest radiograph(s) dated: 7/13/2015.

Clinical Indication: Traumatic brain injury

Findings /
Impression:        Impression: Stable low lung volumes.  Interval improvement of the pre-existing bibasilar areas of atelectasis.  No new lung infiltrates. No pleural abnormalities demonstrated.  Cardiac size and pulmonary vasculature appear normal.  Endotracheal tube remains in place terminating 4.5 cm above the carina.  Right internal jugular central line remains positioned in the SVC.  NG tube extends into the stomach with sidehole projecting at the GE junction.  The remainder of the exam is otherwise unchanged.

Specimen Information

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP.#:78149176
Printed by KDOUGHER at 10/16/15 4:35 AM

Case 6:18-cv-02063-CJW-MAR   Document 26-4   Filed 02/13/19   Page 433 of 555   Lincoln/Lee 521



**Results (07/17/15 - 07/12/15) (continued)**

Resulted: 07/15/15 0850, Result status: Final result

**CHEST - AP/PA [229546133] (continued)**

| Type | Source | Collected On |
|------|--------|--------------|
| . |  |  |

Resulted: 07/13/15 1147, Result status: Final result

**CT BRAIN WO CONTRAST (70450) [229347983]**

| Ordering provider: | Chazhikattu, Anita J, MD  07/12/15 0847 | Resulted by: | Moritani, Toshio, MD<br>Roh, Simon, MD<br>Policeni, Bruno A, MD |
|---|---|---|---|
| Performed: | 07/12/15 0912 - 07/12/15 0938 | Resulting lab: | UIHC RADIOLOGY |
| Narrative: | Procedure: CT BRAIN WO CONTRAST (70450) | | |

Indication: s/p bolt please assess, interval assessment of punctate hemorrhages

Technique: Axial CT of the brain without IV contrast. Sagittal and coronal reformations are also provided for review.

Comparison: CT brain dated 7/12/2015 at 01:27. CT maxillofacial dated 7/12/2015.

Findings:
There has been interval placement of an intracranial pressure monitoring device into the right frontal lobe cortex. There are stable focal hyperdensities adjacent to the right lateral ventricle in the right corpus callosum and right thalamus.  There is no evidence of acute large vascular distribution infarct. The cortical sulci and basal cisterns are symmetric and age appropriate. Normal brainstem and posterior fossa. Multiple facial fractures are better visualized on comparison CT maxillofacial.

| Impression: | Impression:<br>1. Interval placement of intracranial pressure monitoring device into the right frontal lobe cortex.<br>2. Stable focal IPH adjacent to the right lateral ventricle in the right corpus callosum and right thalamus. |
|---|---|

Specimen Information

| Type | Source | Collected On |
|------|--------|--------------|
|  |  |  |

Resulted: 07/13/15 0830, Result status: Final result

**CHEST - AP/PA [229354051]**

| Ordering provider: | Chazhikattu, Anita J, MD  07/13/15 0400 | Resulted by: | Moritani, Toshio, MD<br>Dennhardt, Joel, MD |
|---|---|---|---|
| Performed: | 07/13/15 0413 - 07/13/15 0440 | Resulting lab: | UIHC RADIOLOGY |
| Narrative: | Procedure: CHEST - AP/PA | | |

Technique: Portable AP chest radiograph

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP #:78149176
Printed by KDOUGHER at 10/16/15  4 35 AM



## Results (07/17/15 - 07/12/15) (continued)

Resulted: 07/13/15 0830, Result status: Final
result

### CHEST - AP/PA [229354051] (continued)

Comparison: Chest radiograph(s) dated: 7/12/2015.

Clinical Indication: assess lung fields

Findings / Impression:

Slight increase in lung volumes compared to prior exam. Still mild
bibasilar atelectasis There is no evidence of infiltrate, effusion, or
pneumothorax. Cardiomediastinal silhouette and pulmonary vasculature
are stable. No acute bony abnormalities are appreciated. Lines and
tubes are in stable position.

Specimen Information

| Type | Source | Collected On |
|---|---|---|
|  |  |  |

Resulted: 07/13/15 0804, Result status: Final
result

### LEFT KNEE AP & LATERAL [229347941]

| Ordering provider: | Obr, Brooks J, MD  07/12/15 0403 | Resulted by: | Thompson, Brad H, MD Vijapura, Charmi, MD |
|---|---|---|---|
| Performed: Narrative: | 07/12/15 0430 - 07/12/15 0548 Procedure: LEFT KNEE AP & LATERAL | Resulting lab: | UIHC RADIOLOGY |

Clinical Indication: Status post trauma

Comparison: None.

Findings / Impression: No acute fracture or dislocation. No capsular
distention.

Specimen Information

| Type | Source | Collected On |
|---|---|---|
|  |  |  |

Resulted: 07/13/15 0520, Result status: Final
result

### CHEST - AP/PA [229354013]

| Ordering provider | Chazhikattu, Anita J, MD  07/12/15 1239 | Resulted by: | Moritani, Toshio, MD Roh, Simon, MD |
|---|---|---|---|
| Performed: Narrative: | 07/12/15 1240 - 07/12/15 1304 Procedure: CHEST - AP/PA | Resulting lab: | UIHC RADIOLOGY |

Technique: Portable AP chest radiograph

Comparison: Chest radiograph(s) dated: 7/12/2015 at 01:05.

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP.#:78149176
Printed by KDOUGHER at 10/16/15 4:35 AM



**UNIVERSITY of IOWA HOSPITALS & CLINICS**
University of Iowa Health Care

## Results (07/17/15 - 07/12/15) (continued)

Resulted: 07/13/15 0520, Result status: Final
result

### CHEST - AP/PA [229354013] (continued)

Clinical Indication: please assess position of central line and post bronchoscopy

Findings / Impression: The right IJ central line terminates in the SVC. Endotracheal tube terminates 4.4 cm above the carina. NG tube courses below the diaphragm and terminates in the gastric fundus. The cardiomediastinal silhouette and pulmonary vasculature are normal. There are low lung volumes with bibasilar atelectasis and crowding of interstitial lung markings. There is no pleural effusion or pneumothorax.

Specimen Information

| Type | Source | Collected On |
|------|--------|--------------|
|      |        |              |

### CT CHEST ABDOMEN PELVIS W CONTRAST (74177, 71260) [229346711]

Resulted: 07/12/15 1659, Result status: Final
result

| | | | |
|---|---|---|---|
| Ordering provider: | He, Jane J, MD  07/12/15 0111 | Resulted by: | Clark, Eve D, MD<br>Vijapura, Charmi, MD |
| Performed: | 07/12/15 0116 - 07/12/15 0155 | Resulting lab: | UIHC RADIOLOGY |
| Narrative: | Procedure: CT CHEST ABDOMEN PELVIS W CONTRAST (74177, 71260) | | |

Clinical Indication: Unresponsive

Technique: CT exam of the chest, abdomen, and pelvis is performed following the uneventful administration of 121 cc Isovue-370 IV contrast.

Comparison: None.

Findings:

Neck base and axilla: No lymphadenopathy.
Mediastinum and hila: No lymphadenopathy.
Heart and thoracic aorta: Normal.

Airway: ET tube noted. No masses identified.
Lungs and pleura: Bilateral consolidative airspace disease in the lower lobes dependently.  Mild patchy airspace disease in the apices
Esophagus: Normal.
Chest wall soft tissues: Normal

Liver: Enlarged measuring 19 cm.
Bile ducts: Not dilated.
Gallbladder: Normal.
Pancreas: Normal

Page 56

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP.#:78149176
Printed by KOOUGHER at 10/16/15 4:35 AM

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 436 of 555    Lincoln/Lee 524



## Results (07/17/15 - 07/12/15) (continued)

**CT CHEST ABDOMEN PELVIS W CONTRAST (74177, 71260) [229346711] (continued)**

Resulted: 07/12/15 1659, Result status: Final result

Spleen: Normal

Adrenal glands: Normal
Kidneys: Normal
Ureters: Normal
Bladder: Decompressed with Foley catheter

Aorta: Normal
Retroperitoneum: No lymphadenopathy.
Peritoneum: No ascites.

Mesentery: Normal
Stomach: Not distended.
Small bowel: Not distended.
Colon: Not distended.
Appendix: Normal.

Extraperitoneal pelvis: No lymphadenopathy.
Prostate: Normal

Abdominal wall: Normal
Bones: No acute fracture or destructive bone lesion.

| Impression: | Impression:
1. Consolidative dependent airspace disease, left greater than right, concerning for pneumonia, possibly aspiration.
2. Mild hepatomegaly. No evidence of abdominal or pelvic solid organ injury. |
| --- | --- |

This final report is in agreement with the critical and emergent preliminary findings reported by the radiology resident on call.

### Specimen Information

| Type | Source | Collected On |
| --- | --- | --- |

**CT THORACIC & LUMBAR SPINE (REPROCESS IMAGES) (72131, 72128) [229346763]**

Resulted: 07/12/15 0935, Result status: Final result

| Ordering provider: | He, Jane J, MD  07/12/15 0111 | Resulted by: | Pinzon Jimenez, Oscar Enrique, MD
Vijapura, Charmi, MD
Moritani, Toshio, MD |
| --- | --- | --- | --- |
| Performed: | 07/12/15 0117 - 07/12/15 0158 | Resulting lab: | UIHC RADIOLOGY |
| Narrative: | Procedure:CT THORACIC & LUMBAR SPINE (REPROCESS IMAGES) (72131, 72128) | | |

Indication: Unresponsive with decreased and

Technique: Axial CT images of the thoracolumbar spine were obtained from C7-T1 to S1-S2 disc space without administration of intravenous



**UNIVERSITY of IOWA**
**HOSPITALS & CLINICS**
University of Iowa Health Care

PT. NAME: LEE,JOHN E
MRN: 78149176
DOB          Sex: M
ADM: 7/12/2015  D/C: 7/19/2015

## Results (07/17/15 - 07/12/15) (continued)

**CT THORACIC & LUMBAR SPINE (REPROCESS IMAGES) (72131, 72128) [229346763] (continued)**

Resulted: 07/12/15 0935, Result status: Final result

contrast. Coronal and sagittal reformatted images were generated reviewed.

Comparison: none

Findings: The osseous structures are normal in alignment. There is no evidence of fracture. Vertebral body heights and intervertebral disc heights are well maintained. Bilateral dependent patchy consolidations, worse on the left. Prevertebral soft tissues are normal.

Impression:                Impression:
                           Negative for acute thoracolumbar spine findings.

This final report is in agreement with the critical and emergent preliminary findings reported at 350am hrs on 7/12/15 by the radiology resident on call.

Specimen Information

| Type | Source | Collected On |
|------|--------|--------------|
|      |        |              |

**CT BRAIN WO CONTRAST (70450) [229346708]**

Resulted: 07/12/15 0913, Result status: Final result

| | | | |
|---|---|---|---|
| Ordering provider; | He, Jane J, MD  07/12/15 0111 | Resulted by: | Moritani, Toshio, MD<br>Vijapura, Charmi, MD |
| Performed: | 07/12/15 0112 - 07/12/15 0149 | Resulting lab: | UIHC RADIOLOGY |
| Narrative: | Procedure: CT BRAIN WO CONTRAST (70450), CT MAXILLOFACIAL WO CONTRAST<br>(70486), CT CERVICAL SPINE WO INCL T-3 (72125) | | |

Indication: Unresponsive with decreased

Technique:
1. Axial CT of the brain without IV contrast. Sagittal and coronal reformations are also provided for review.
2. Axial CT of the face without IV contrast. Sagittal and coronal reformations are also provided for review.
3. Axial CT of the cervical spine without IV contrast. Sagittal and coronal reformations are also provided for review.

Comparison: None.

Findings:

- Brain: Foci of hyperdensity adjacent to the right frontal horn seen on series 3-15 and 5-19. No evidence of mass effect. There is no evidence of acute large vascular distribution infarct or mass lesion. The ventricles, cortical sulci and basal cisterns are symmetric and age appropriate. Normal brainstem and posterior fossa. right periorbital edema seen.

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP # 78149176
Printed by KDOUGHER at 10/16/15  4:35 AM



## Results (07/17/15 - 07/12/15) (continued)

Resulted: 07/12/15 0913, Result status: Final result

### CT BRAIN WO CONTRAST (70450) [229346708] (continued)

- Face: Acute fractures involving the right zygomatic arch. Anterior, lateral and medial maxillary sinus fractures. Acute fracture involving the inferior orbital rim at (4-29) and lateral orbital wall (4-39). There is right intraorbital fat stranding likely mild hemorrhage. Acute fracture involving the ethmoid bone medially. Fluid opacification of the right maxillary sinus with multiple fractures. Left maxillary sinus polyp versus mucous retention cyst. Pterygoid plates are intact bilaterally. The skull base is normal.

- C-Spine: The spine is visualized from the skull base through T3. There is loss of the normal cervical lordosis, otherwise alignment is grossly within normal limits. There is no evidence of acute fracture or dislocation. Craniovertebral junction relationships are well maintained. Vertebral body heights are within normal limits. There are mild to moderate multilevel degenerative changes without significant spinal stenosis. Prevertebral soft tissues are unremarkable. Biapical airspace disease. Grossly normal thyroid.

Impression:

Impression:
1. Focal hyperdensities adjacent to the right frontal horn (3-15 and 5-19) may represent small hemorrhagic focus.
2. Facial fractures as described above. Right ZMC fractures.
3. Right intraorbital hemorrhage.
4. Negative C-spine CT.
5. Negative limited upper thoracic spine CT.
6. Biapical airspace disease better evaluated on dedicated chest CT.

This final report is in agreement with the critical and emergent preliminary findings reported at 219am hrs on 7/12/15 by the radiology resident on call.

Specimen Information

| Type | Source | Collected On |
|------|--------|--------------|

Resulted: 07/12/15 0913, Result status: Final result

### CT CERVICAL SPINE WO INCL T-3 (72125) [229346709]

| Ordering provider: | He, Jane J, MD  07/12/15 0111 | Resulted by: | Moritani, Toshio, MD |
|---|---|---|---|
| | | | Vijapura, Charmi, MD |
| Performed: | 07/12/15 0112 - 07/12/15 0150 | Resulting lab: | UIHC RADIOLOGY |

Narrative:    Procedure: CT BRAIN WO CONTRAST (70450), CT MAXILLOFACIAL WO CONTRAST (70486), CT CERVICAL SPINE WO INCL T-3 (72125)

Indication: Unresponsive with decreased

Technique:
1. Axial CT of the brain without IV contrast. Sagittal and coronal reformations are also provided for review.
2. Axial CT of the face without IV contrast. Sagittal and coronal

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt Name: Lee, John E
HOSP # 78149176
Printed by KDOUGHER at 10/16/15 4:35 AM


University of Iowa Health Care

## Results (07/17/15 - 07/12/15) (continued)

Resulted: 07/12/15 0913, Result status: Final
result

### CT CERVICAL SPINE WO INCL T-3 (72125) [229346709] (continued)

reformations are also provided for review.
3. Axial CT of the cervical spine without IV contrast. Sagittal and
coronal reformations are also provided for review.

Comparison: None.

Findings:

- Brain: Foci of hyperdensity adjacent to the right frontal horn seen
on series 3-15 and 5-19. No evidence of mass effect. There is no
evidence of acute large vascular distribution infarct or mass lesion.
The ventricles, cortical sulci and basal cisterns are symmetric and
age appropriate. Normal brainstem and posterior fossa. right
periorbital edema seen.

- Face: Acute fractures involving the right zygomatic arch. Anterior,
lateral and medial maxillary sinus fractures. Acute fracture involving
the inferior orbital rim at (4-29) and lateral orbital wall (4-39).
There is right intraorbital fat stranding likely mild hemorrhage.
Acute fracture involving the ethmoid bone medially. Fluid
opacification of the right maxillary sinus with multiple fractures.
Left maxillary sinus polyp versus mucous retention cyst. Pterygoid
plates are intact bilaterally. The skull base is normal.

- C-Spine: The spine is visualized from the skull base through T3.
There is loss of the normal cervical lordosis, otherwise alignment is
grossly within normal limits. There is no evidence of acute fracture
or dislocation. Craniovertebral junction relationships are well
maintained. Vertebral body heights are within normal limits. There
are mild to moderate multilevel degenerative changes without
significant spinal stenosis. Prevertebral soft tissues are
unremarkable. Biapical airspace disease. Grossly normal thyroid.

Impression:

Impression:
1. Focal hyperdensities adjacent to the right frontal horn (3-15 and
5-19) may represent small hemorrhagic focus.
2. Facial fractures as described above. Right ZMC fractures.
3. Right intraorbital hemorrhage.
4. Negative C-spine CT.
5. Negative limited upper thoracic spine CT.
6. Biapical airspace disease better evaluated on dedicated chest CT.

This final report is in agreement with the critical and emergent
preliminary findings reported at 219am hrs on 7/12/15 by the radiology
resident on call.

### Specimen Information

| Type | Source | Collected On |
|------|--------|--------------|

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP.#:78149176
Printed by KDOUGHER at 10/16/15 4:35 AM

Case 6:18-cv-02063-CJW-MAR   Document 26-4   Filed 02/13/19   Page 440 of 555   Lincoln/Lee 528



## Results (07/17/15 - 07/12/15) (continued)

Resulted: 07/12/15 0913, Result status: Final
result

**CT MAXILLOFACIAL WO CONTRAST (70486) [229346710]**

| | | | |
|---|---|---|---|
| Ordering provider: | He, Jane J, MD  07/12/15 0111 | Resulted by: | Moritani, Toshio, MD |
| | | | Vijapura, Charmi, MD |
| Performed: | 07/12/15 0116 - 07/12/15 0151 | Resulting lab: | UIHC RADIOLOGY |

Narrative:     Procedure: CT BRAIN WO CONTRAST (70450), CT MAXILLOFACIAL WO CONTRAST (70486), CT CERVICAL SPINE WO INCL T-3 (72125)

Indication: Unresponsive with decreased

Technique:
1. Axial CT of the brain without IV contrast. Sagittal and coronal reformations are also provided for review.
2. Axial CT of the face without IV contrast. Sagittal and coronal reformations are also provided for review.
3. Axial CT of the cervical spine without IV contrast. Sagittal and coronal reformations are also provided for review.

Comparison: None.

Findings:

- Brain: Foci of hyperdensity adjacent to the right frontal horn seen on series 3-15 and 5-19. No evidence of mass effect. There is no evidence of acute large vascular distribution infarct or mass lesion. The ventricles, cortical sulci and basal cisterns are symmetric and age appropriate. Normal brainstem and posterior fossa. right periorbital edema seen.

- Face: Acute fractures involving the right zygomatic arch. Anterior, lateral and medial maxillary sinus fractures. Acute fracture involving the inferior orbital rim at (4-29) and lateral orbital wall (4-39). There is right intraorbital fat stranding likely mild hemorrhage. Acute fracture involving the ethmoid bone medially. Fluid opacification of the right maxillary sinus with multiple fractures. Left maxillary sinus polyp versus mucous retention cyst. Pterygoid plates are intact bilaterally. The skull base is normal.

- C-Spine: The spine is visualized from the skull base through T3. There is loss of the normal cervical lordosis, otherwise alignment is grossly within normal limits. There is no evidence of acute fracture or dislocation. Craniovertebral junction relationships are well maintained. Vertebral body heights are within normal limits. There are mild to moderate multilevel degenerative changes without significant spinal stenosis. Prevertebral soft tissues are unremarkable. Biapical airspace disease. Grossly normal thyroid.

Impression:     Impression:
1. Focal hyperdensities adjacent to the right frontal horn (3-15 and 5-19) may represent small hemorrhagic focus.
2. Facial fractures as described above. Right ZMC fractures.
3. Right intraorbital hemorrhage.

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP # 78149176
Printed by KOOUGHER at 10/16/15 4:35 AM

Case 6:18-cv-02063-CJW-MAR     Document 26-4     Filed 02/13/19     Page 441 of 555     Lincoln/Lee 529



## Results (07/17/15 - 07/12/15) (continued)

**CT MAXILLOFACIAL WO CONTRAST (70486) [229346710]**          Resulted: 07/12/15 0913, Result status: Final
**(continued)**                                                                                              result

    4. Negative C-spine CT.
    5. Negative limited upper thoracic spine CT.
    6. Biapical airspace disease better evaluated on dedicated chest CT.

    This final report is in agreement with the critical and emergent
    preliminary findings reported at 219am hrs on 7/12/15 by the radiology
    resident on call.

Specimen Information

| Type | Source | Collected On |
|------|--------|--------------|
|      |        |              |

                         Resulted: 07/12/15 0617, Result status: Final
**PELVIS AP [229346706]**                                                                              result

| Ordering provider: | He, Jane J, MD  07/12/15 0110 | Resulted by: | Thompson, Brad H, MD |
|---|---|---|---|
| | | | Vijapura, Charmi, MD |
| Performed: | 07/12/15 0100 - 07/12/15 0115 | Resulting lab: | UIHC RADIOLOGY |
| Narrative: | Procedure: PELVIS AP | | |

    Clinical Indication: Unresponsive and bruised head

    Comparison: None.

    Findings: No evidence of acute fracture or dislocation. Anatomic
    alignment of osseous structures. No soft tissue abnormalities
    identified.  Bone island incidentally noted in the right femoral neck.

Impression:    Impression: Negative plain film examination of the pelvis.

Specimen Information

| Type | Source | Collected On |
|------|--------|--------------|
|      |        |              |

                         Resulted: 07/12/15 0617, Result status: Final
**LEFT WRIST PA, LATERAL & OBL [229346774]**                                                  result

| Ordering provider: | Deets, Ryan, MD  07/12/15 0138 | Resulted by: | Thompson, Brad H, MD |
|---|---|---|---|
| | | | Vijapura, Charmi, MD |
| Performed: | 07/12/15 0138 - 07/12/15 0143 | Resulting lab: | UIHC RADIOLOGY |
| Narrative: | Procedure: LEFT WRIST PA, LATERAL & OBL | | |

    Clinical Indication: Status post fall.  Evaluate for
    fracture/dislocations

    Comparison: None.

Impression:    Findings/impression: Small fairly well corticated osseous density is
    present adjacent to the medial aspect of the ulnar styloid process;
    this may represent small avulsion fracture versus cartilaginous
    calcification. Otherwise, bones are normal in appearance without

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP # 78149176
Printed by KDOUGHER at 10/16/15 4:35 AM



UNIVERSITY of IOWA
HOSPITALS & CLINICS
University of Iowa Health Care

## Results (07/17/15 - 07/12/15) (continued)

Resulted: 07/12/15 0617, Result status: Final result

### LEFT WRIST PA, LATERAL & OBL [229346774] (continued)

evidence of acute fracture or dislocation. No soft tissue abnormalities identified.

### Specimen Information

| Type | Source | Collected On |
|------|--------|--------------|

Resulted: 07/12/15 0611, Result status: Final result

### CHEST - AP/PA [229346707]

| | | | |
|---|---|---|---|
| Ordering provider: | He, Jane J, MD  07/12/15 0110 | Resulted by: | Vijapura, Charmi, MD<br>Thompson, Brad H, MD |
| Performed: | 07/12/15 0100 - 07/12/15 0115 | Resulting lab: | UIHC RADIOLOGY |
| Narrative: | Procedure: CHEST - AP/PA | | |

Technique: Portable AP chest radiograph

Comparison: None

Clinical Indication: Unresponsive with bruise to head

Impression:

Findings /
Impression: ET tube approximately 3.5 cm from the carina. Cardiac size and pulmonary vasculature are normal. Airspace disease involving the bilateral upper lobes concerning for pulmonary contusions or aspiration. Retrocardiac opacity may represent atelectasis versus aspiration. Calcified granuloma is present in the right upper lobe. No pleural abnormalities. Mediastinal and hilar contours are normal. No acute fractures identified.

### Specimen Information

| Type | Source | Collected On |
|------|--------|--------------|

### Testing Performed By

| Lab - Abbreviation | Name | Director | Address | Valid Date Range |
|--------------------|------|----------|---------|------------------|
| 697 - Unknown | UIHC RADIOLOGY | Unknown | 200 Hawkins Dr<br>3500 JCP<br>IOWA CITY IA 52242 | 04/09/13 0824 - Present |

## END OF REPORT

Page 63

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name  Lee, John E
HOSP.#:78149176
Printed by KDOUGHER at 10/16/15  4:35 AM

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 443 of 555   Lincoln/Lee 531



October 07, 2015

**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

UNIVERSITY OF IOWA HOSPITALS & CLINICS
ATTN MEDICAL RECORDS
200 HAWKINS DR
IOWA CITY IA 52242

RE:     PolicyHolder:      Ashley Industrial Molding, Inc
        Policy Number:     000400001000-12077
                           000010132080-00000
        Claim Number:      1072315-1127380
        Claimant:          John E Lee

Dear Medical Records :

We are processing the Accidental Death and Dismemberment coverage for a life claim
received on behalf of John E Lee, but there is information needed to complete our
review.

To complete the review of this claim, we are asking that you please provide:

Please provide all Medical Records for John E Lee for period 07/11/2015-07/19/2015.
We have under review 2 accidental death benefits and there is not an accident report
available and we need to review medical records to determine what happened
regarding the accident involving John E Lee.

We have enclosed an authorization form completed by the beneficiary of this policy for
your reference.

You can either fax this information directly to me at 1-800-462-4660, email to
LifeClaims@LFG.com, or mail it to the address listed above.  Please provide this
documentation within the next 30 days to ensure timely processing of this claim.

Packet: 303615

©2015 Lincoln National Corporation

www.LincolnFinancial.com

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

If you have any questions regarding this request, please call me directly at 1-800-423-2765, ext 2894.  If there is a fee for these records, please notify me prior to processing this request. Your assistance is greatly appreciated.

Sincerely,


Nadine Beck
Claims Examiner II, Claims
The Lincoln National Life Insurance Company

Lincoln/Lee 533



University of Iowa Health Care

Resulted: 07/12/15 0153, Result status: Final result

## ETHANOL, PLASMA [229346697] (Normal)

| Ordering provider: | He, Jane J, MD  07/12/15 0104 | Resulting lab | EMORY WARNER PATHOLOGY LABORATORIES (UIHC) |
|---|---|---|---|

### Specimen Information

| Type | Source | Collected On |
|---|---|---|
| Blood | | 07/12/15 0116 |

### Components

| | Value | Ref range | Flag | Comment | Lab |
|---|---|---|---|---|---|
| Ethanol | 166 | mg/dL | | | UIHC |
| Comment | | | | | |

Ethanol values less than 10 mg/dL cannot be distinguished from zero.

## Testing Performed By

| Lab - Abbreviation | Name | Director | Address | Valid Date Range |
|---|---|---|---|---|
| **51 - UIHC** | EMORY WARNER PATHOLOGY LABORATORIES (UIHC) | Unknown | 200 Hawkins Dr C660 GH Iowa City IA 52242-1009 | 06/13/14 1037 - Present |

Resulted: 07/12/15 0259, Result status: Final result

## DRUGS OF ABUSE - URINE [229346695] (Normal)

| Ordering provider: | He, Jane J, MD  07/12/15 0104 | Resulting lab: | EMORY WARNER PATHOLOGY LABORATORIES (UIHC) |
|---|---|---|---|

### Specimen Information

| Type | Source | Collected On |
|---|---|---|
| Urine | | 07/12/15 0218 |

### Components

| | Value | Ref range | Flag | Comment | Lab |
|---|---|---|---|---|---|
| Amphetamines, Urine | Negative | Negative | | | UIHC |
| Comment | Test cut-off: 1000 ng/mL for d-methamphetamine. | | | | |
| Benzodiazepine, Urine | Negative | Negative | | | UIHC |
| Comment | Test cut-off: 100 ng/mL | | | | |
| Cocaine, Urine | Negative | Negative | | | UIHC |
| Comment | Test cut-off: 300 ng/mL | | | | |
| Opiate, Urine | Negative | Negative | | | UIHC |
| Comment | Test cut-off: 300 ng/mL for morphine | | | | |
| Oxycodone, Urine | Negative | Negative | | | UIHC |
| Comment | Test cut-off: 300 ng/mL | | | | |

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP.# 78149176
Printed by LAKERM at 10/1/15 3:50 PM

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 446 of 555/Lee 534


**UNIVERSITY of IOWA
HOSPITALS & CLINICS**
University of Iowa Health Care

Resulted: 07/12/15 0259, Result status: Final result

### DRUGS OF ABUSE - URINE [229346695] (Normal) (continued)

Amphetamines assay cross-reacts well with amphetamine and methamphetamine, as well as the "designer" amphetamines MDMA ("Ecstasy"), MDA, MDEA ("Eve"), and MBDB. Labetalol may also produce false positives due to cross-reactivity of a metabolite. The amphetamines assay has little or no cross-reactivity with ephedrine, pseudoephedrine, phentermine, and methylphenidate. Opiates assay has low cross-reactivity for buprenorphine, fentanyl, meperidine, methadone, oxycodone, and propoxyphene (all have cut-offs greater than 75,000 ng/mL).

Please see Laboratory Services Handbook (http://healthcare.uiowa.edu/path_handbook.index.html) for more detailed information on assay cross-reactivity.

Drug of abuse screening tests are to be used for medical purposes only and not for non-medical purposes (e.g., employee, competitive athlete, or forensic testing). Questions to Clinical Chemistry medical director at 319-384-9380.

### Testing Performed By

| Lab - Abbreviation | Name | Director | Address | Valid Date Range |
|---|---|---|---|---|
| **51 - UIHC** | EMORY WARNER PATHOLOGY LABORATORIES (UIHC) | Unknown | 200 Hawkins Dr C660 GH Iowa City IA 52242-1009 | 06/13/14 1037 - Present |

Resulted: 07/12/15 0259, Result status: Final result

### THC-URINE SCREEN [229346696] (Normal)

| Ordering provider: | He, Jane J, MD 07/12/15 0104 | Resulting lab. | EMORY WARNER PATHOLOGY LABORATORIES (UIHC) |
|---|---|---|---|

Specimen Information

| Type | Source | Collected On |
|---|---|---|
| Urine | | 07/12/15 0218 |

Components

| | Value | Ref range | Flag | Comment | Lab |
|---|---|---|---|---|---|
| THC, Urine Comment | Negative | Negative | | | UIHC |

Test-cut off:  50 ng/mL

Drug of abuse screening tests are to be used for medical purposes only and not for non-medical purposes (e.g., employee or forensic testing). Questions to Clinical Chemistry medical director at 319-384-9380.

### Testing Performed By

| Lab - Abbreviation | Name | Director | Address | Valid Date Range |
|---|---|---|---|---|
| **51 - UIHC** | EMORY WARNER PATHOLOGY LABORATORIES (UIHC) | Unknown | 200 Hawkins Dr C660 GH Iowa City IA 52242-1009 | 06/13/14 1037 - Present |

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP.#:78149176
Printed by LAKERM at 10/1/15 3:50 PM

Page 2



**UNIVERSITY of IOWA HOSPITALS & CLINICS**
University of Iowa Health Care

## Testing Performed By (continued)

Resulted: 07/12/15 0502, Result status: Final result

**ETHANOL, PLASMA [229347943] (Normal)**

| Ordering provider | Obr, Brooks J, MD  07/12/15 0414 | Resulting lab | EMORY WARNER PATHOLOGY LABORATORIES (UIHC) |

### Specimen Information

| Type | Source | Collected On |
|------|--------|--------------|
| Blood | | 07/12/15 0423 |

### Components

| | Value | Ref range | Flag | Comment | Lab |
|------|-------|-----------|------|---------|-----|
| Ethanol | 76 | mg/dL | | | UIHC |
| Comment | | | | | |

Ethanol values less than 10 mg/dL cannot be distinguished from zero.

### Testing Performed By

| Lab - Abbreviation | Name | Director | Address | Valid Date Range |
|--------------------|------|----------|---------|------------------|
| **51 - UIHC** | EMORY WARNER PATHOLOGY LABORATORIES (UIHC) | Unknown | 200 Hawkins Dr C660 GH Iowa City IA 52242-1009 | 06/13/14 1037 - Present |

## END OF REPORT

Page 3

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP.#.78149176
Printed by LAKERM at 10/1/15  3:50 PM

Form 1955

# CONSENT TO RELEASE OF INFORMATION

University of Iowa Hospitals and Clinics (UIHC)

Health Information Management Department; 200 Hawkins Drive, Iowa City, IA 52242

Release of Information Office (Telephone 319-356-1719; FAX 319-356-3079)

Hosp. #_____

**Please neatly PRINT (except signature) and provide complete information in each section.**

Patient's Legal Name ___John F Lee___          Birth Date _____

By signing this form, I am allowing UIHC to release medical information concerning the above named patient to the person or facility listed below. This information may be shared by: Viewing ___ Verbal ___ Copies ___ CD ___ CareLink ____

(Please note, burning to a CD is only possible when transferring electronic information. Copies of paper documents will be provided on paper.)

___Lincoln Financial Group___

<u>Name of Person and/or Institution who will receive information</u>

___8801 Indian Hills Dr   Omaha   Ne  68114-4066___

<u>Complete Mailing Address/Street/P.O. Box</u>          City, State, Zip Code

Check the information to be disclosed (include dates if known);   ___ Minimum necessary or specify as follows:

___ Medication list     ___ Allergy list     ___ Immunization record     ___ Problem List (Pt. Summary list)

___ History and Physical, specify clinic or date_____

___ Discharge summary, specify clinic or date_____

___ Laboratory results, specify type or date_____

___ X-ray and imaging reports, specify type or date_____

___ Consultation reports, specify doctor or clinic _____

___ Test results (e.g. EKG, PFT, etc.), specify type or date _____   DOO 7/19/2015

___ Billing information, specify_____

_✓_ Other, specify___Toxicology Report Accident 7/11/2015=ATV___

Please check the reason for release below, and provide a date by which the info is needed: _____

Insurance _X_   2nd opinion ___   Rehab/disability ___   Personal file ___   Moving out of area ___   Legal ___

Other medical care ___   Transferring care ___ If transferring care, may we confidentially discuss with you? YES ___ NO ___

If yes, please indicate the best time and telephone number to reach you: _____

This consent is voluntary. If I cancel this consent at a later date, I must send written notification to the Director of Health Information Management at the above address. If this consent is cancelled, I understand that information may have been released prior to the cancellation, and that action would not be considered a breach of confidentiality. I also acknowledge that: 1) recipients of this information may possibly re-release the information without proper authorization, and 2) once information is disclosed it may no longer be protected by federal privacy regulations. I understand that I may review the disclosed information or ask questions by contacting the Director of Health Information Management at the above address.

UIHC does not require completion of this form as a condition of evaluation or treatment. However, when the requested evaluation or treatment is solely for the purpose of creating a medical report for a third party, if authorization to release the information to that third party is not provided, it may result in the cancellation of those services.

I understand that the information may be released electronically, and may include information in the following categories unless I specifically deny the release (initial any category not to be released).

Substance Abuse_____   Mental Health _____   HIV-related information _____   *Genetic tests/info_____

*Refers to genetic testing to screen for possible future health issues, does not refer to testing to diagnose or treat current health conditions.

This agreement will expire two years from the date of signature, or as indicated (specify number of days or months) _____ unless cancelled by the patient/guardian.

_____          _____          _____
Signature of Patient or Legal Guardian          Printed name          Date

_____          _____
Complete Mailing Address/Street/P.O. Box          City, State, Zip Code

___Vanessa Lee   Wife___          ___Annette Yearous___
Relationship, If Not the Patient          Witness Signature

UIHC use only: Upon satisfying this release, date & sign; record on the Release of Information Tracking (ROIT) system and scan the form in to Epic. If unable to satisfy this release or if unable to enter/scan this information on the ROIT system, complete the following as appropriate and then forward to the Release of Information Office, Health Information Management (HIM) Department, 2 SRP.

Info. sent: _____          Recorded on ROIT System: _____
          Name/Department     Date                    Operator Name/Department          Date

Revised: 1-2014          White Original: Scan into Epic     Copy: Patient

EV03283 Rev. 12/10

REC'D OCT 0 5 2015

LIFE CLAIMS
LINCOLN FINANCIAL GROUP
PO BOX 2649
OMAHA NE 68103-2649





UNIVERSITY OF IOWA
HOSPITALS & CLINICS

University of Iowa Health Care

RECD OCT 0 5 2015

University of Iowa Hospitals and Clinics

Health Information Management
Release of Information
2072 SRF
200 Hawkins Drive
Iowa City, IA 52242-1085
319-356-1719
319-356-3079 Fax

October 01, 2015

THE LINCOLN NATIONAL LIFE INS CO
NADINE BECK, CLAIMS
8801 INDIAN HILLS DR
PO BOX 2609
OMAHA, NE 68103-2609

RE: Mr. John E Lee
MRN: 78149176
BD:

In accordance with the signed authorization and in response to a recent request, please find enclosed copies of University of Iowa Hospitals and Clinics medical record on the above named patient.

The enclosed information has been disclosed to you from records whose confidentiality is protected by state law. State and/or Federal law prohibits you from making any further disclosure of the information without specific written consent of the patient to whom it pertains, or as otherwise permitted by law. A general authorization for the release of medical or other information is not sufficient for this purpose.

Please confidentially destroy the enclosed copies after the stated need has been fulfilled.

If you have any questions, please contact this office at the above address or by telephone at 319/356-1719.

Sincerely,

Karen R. Kelly
Supervisor
Release of Information Office

Enc.



August 04, 2015

**The Lincoln National Life**
**Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

UNIVERSITY OF IOWA HOSPTIALS AND CLINICS
MEDICAL RECORDS
200 HAWKINS DR
IOWA CITY IA 52242

RE:  PolicyHolder:      Ashley Industrial Moldings, Inc
     Policy Number:     000400001000-12077
                        000010132080-00000
     Claim Number:      1072315-1127380
     Claimant:          John E Lee

Dear Medical Records:

We are processing the Accidental Death and Dismemberment coverage for a life claim
received on behalf of John E Lee, but there is information needed to complete our
review.

To complete the review of this claim, we are asking that you please provide:

A copy of John E Lee's Toxicology report with results

If a toxicology report was not completed, please contact our office to advise of this.  We
have enclosed an authorization form completed by the beneficiary of this policy for your
reference.

You can either fax this information directly to me at 1-800-462-4660, email to
LifeClaims@LFG.com, or mail it to the address listed above.  Please provide this
documentation within the next 30 days to ensure timely processing of this claim.

Packet: 294691

©2015 Lincoln National Corporation

www.LincolnFinancial.com

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

If you have any questions regarding this request, please call me directly at 1-800-423-2765, ext 2894. Your assistance is greatly appreciated.

Sincerely,

Nadine Beck
Claims Examiner II, Claims
The Lincoln National Life Insurance Company

EV03283  Rev. 12/10

CEDAR RAPIDS IA 52

02 OCT 2015 PM

US POSTAGE >> PITNEY

STAMP
HERE

ZIP 52242    $ 000.70⁵
02  1W
0001396626 OCT  02  2015

RECD OCT 0 6 2015

LIFE CLAIMS
LINCOLN FINANCIAL GROUP
PO BOX 2649
OMAHA NE 68103-2649



RECD OCT 0 5 2015

# UNIVERSITY OF IOWA
# HOSPITALS & CLINICS

University of Iowa Health Care

University of Iowa Hospitals and Clinics

Health Information Management
Release of Information
2072 SRF
200 Hawkins Drive
Iowa City, IA 52242-1085
319-356-1719
319-356-3079 Fax

October 01, 2015

THE LINCOLN NATIONAL LIFE INS CO
NADINE BECK, CLAIMS
8801 INDIAN HILLS DR
PO BOX 2609
OMAHA, NE 68103-2609

> RE: Mr. John E Lee
> MRN: 78149176
> BD:

In accordance with the signed authorization and in response to a recent request, please find enclosed copies of University of Iowa Hospitals and Clinics medical record on the above named patient.

The enclosed information has been disclosed to you from records whose confidentiality is protected by state law. State and/or Federal law prohibits you from making any further disclosure of the information without specific written consent of the patient to whom it pertains, or as otherwise permitted by law. A general authorization for the release of medical or other information is not sufficient for this purpose.

Please confidentially destroy the enclosed copies after the stated need has been fulfilled.

If you have any questions, please contact this office at the above address or by telephone at 319/356-1719.

Sincerely,

Karen R. Kelly
Supervisor
Release of Information Office

Enc.



August 04, 2015

The Lincoln National Life
Insurance Company
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

UNIVERSITY OF IOWA HOSPTIALS AND CLINICS
MEDICAL RECORDS
200 HAWKINS DR
IOWA CITY IA 52242

RE:    PolicyHolder:    Ashley Industrial Moldings, Inc
        Policy Number:    000400001000-12077
                       000010132080-00000
        Claim Number:    1072315-1127380
        Claimant:    John E Lee

Dear Medical Records:

We are processing the Accidental Death and Dismemberment coverage for a life claim
received on behalf of John E Lee, but there is information needed to complete our
review.

To complete the review of this claim, we are asking that you please provide:

A copy of John E Lee's Toxicology report with results

If a toxicology report was not completed, please contact our office to advise of this. We
have enclosed an authorization form completed by the beneficiary of this policy for your
reference.

You can either fax this information directly to me at 1-800-462-4660, email to
LifeClaims@LFG.com, or mail it to the address listed above. Please provide this
documentation within the next 30 days to ensure timely processing of this claim.

Packet: 294691

©2015 Lincoln National Corporation

www.LincolnFinancial.com

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

If you have any questions regarding this request, please call me directly at 1-800-423-2765, ext 2894. Your assistance is greatly appreciated.

Sincerely,

Nadine Beck
Claims Examiner II, Claims
The Lincoln National Life Insurance Company

Lincoln/Lee 545

Form 1956

**CONSENT TO RELEASE OF INFORMATION**
University of Iowa Hospitals and Clinics (UIHC)
Health Information Management Department; 200 Hawkins Drive, Iowa City, IA 52242
Release of Information Office (Telephone 319-356-1719; FAX 319-356-3079)

Hosp. # _____

Please neatly PRINT (except signature) and provide complete information in each section.

Patient's Legal Name ___John F Lee___          Birth Date ___/___/___

By signing this form, I am allowing UIHC to release medical information concerning the above named patient to the person or facility listed below. This information may be shared by: Viewing ___ Verbal ___ Copies ___ CD ___ CareLink ___
(Please note, burning to a CD is only possible when transferring electronic information. Copies of paper documents will be provided on paper.)

___Lincoln Financial Group___
Name of Person and/or Institution who will receive information

___8801 Indian Hills Dr   Omaha   Ne   68114-4066___
Complete Mailing Address/Street/P.O. Box                    City, State, Zip Code

Check the information to be disclosed (include dates if known);   ___Minimum necessary   or specify as follows:
___ Medication list      ___ Allergy list      ___ Immunization record      ___ Problem List (Pt. Summary list)
___ History and Physical, specify clinic or date_____
___ Discharge summary, specify clinic or date_____
___ Laboratory results, specify type or date_____
___ X-ray and imaging reports, specify type or date_____
___ Consultation reports, specify doctor or clinic _____
___ Test results (e.g. EKG, PFT, etc.), specify type or date _____ DOD 7/19/2015
___ Billing information, specify_____
✓ Other, specify___Toxicology Report Accident 7/11/2015 = ATV___

Please check the reason for release below; and provide a date by which the info is needed: _____

Insurance _X_   2nd opinion ___   Rehab/disability ___   Personal file ___   Moving out of area ___   Legal ___

Other medical care ___   Transferring care ___ If transferring care, may we confidentially discuss with you? YES ___ NO ___

If yes, please indicate the best time and telephone number to reach you: _____

This consent is voluntary. If I cancel this consent at a later date, I must send written notification to the Director of Health Information Management at the above address. If this consent is cancelled, I understand that information may have been released prior to the cancellation, and that action would not be considered a breach of confidentiality. I also acknowledge that: 1) recipients of this information may possibly re-release the information without proper authorization, and 2) once information is disclosed it may no longer be protected by federal privacy regulations. I understand that I may review the disclosed information or ask questions by contacting the Director of Health Information Management at the above address.

UIHC does not require completion of this form as a condition of evaluation or treatment. However, when the requested evaluation or treatment is solely for the purpose of creating a medical report for a third party, if authorization to release the information to that third party is not provided, it may result in the cancellation of those services.

I understand that the information may be released electronically, and may include information in the following categories unless I specifically deny the release (initial any category not to be released).

Substance Abuse_____   Mental Health _____   HIV-related Information _____   *Genetic tests/info_____
*Refers to genetic testing to screen for possible future health issues, does not refer to testing to diagnose or treat current health conditions.

This agreement will expire two years from the date of signature, or as indicated (specify number of days or months)
_____ unless cancelled by the patient/guardian.

_____          _____          _____
Signature of Patient or Legal Guardian                    Printed name                              Date

_____          _____
Complete Mailing Address/Street/P.O. Box                    City, State, Zip Code
___Vanessa Lee___   wife          ___Annette Yearous___
Relationship, if Not the Patient                              Witness Signature

UIHC use only: Upon satisfying this release, date & sign; record on the Release of Information Tracking (ROIT) system, and scan the form in to Epic. If unable to satisfy this release or if unable to enter/scan this information on the ROIT system, complete the following as appropriate and then forward to the Release of Information Office, Health Information Management (HIM) Department, 2 SRP.

Info. sent: _____          Recorded on ROIT System: _____
              Name/Department          Date                    Operator Name/Department          Date

Revised: 1-2014                                                                    White: Original: Scan into Epic   Copy: Patient


**UNIVERSITY of IOWA HOSPITALS & CLINICS**
University of Iowa Health Care

Resulted: 07/12/15 0153, Result status: Final result

## ETHANOL, PLASMA [229346697] (Normal)

Ordering provider:  He, Jane J, MD  07/12/15 0104        Resulting lab:  EMORY WARNER PATHOLOGY LABORATORIES (UIHC)

### Specimen Information

| Type | Source | Collected On |
|---|---|---|
| Blood | | 07/12/15 0116 |

### Components

| | Value | Ref range | Flag | Comment | Lab |
|---|---|---|---|---|---|
| Ethanol | 166 | mg/dL | | | UIHC |
| Comment | | | | | |

Ethanol values less than 10 mg/dL cannot be distinguished from zero.

### Testing Performed By

| Lab - Abbreviation | Name | Director | Address | Valid Date Range |
|---|---|---|---|---|
| **51 - UIHC** | EMORY WARNER PATHOLOGY LABORATORIES (UIHC) | Unknown | 200 Hawkins Dr C660 GH Iowa City IA 52242-1009 | 06/13/14 1037 - Present |

Resulted: 07/12/15 0259, Result status: Final result

## DRUGS OF ABUSE - URINE [229346695] (Normal)

Ordering provider:  He, Jane J, MD  07/12/15 0104        Resulting lab:  EMORY WARNER PATHOLOGY LABORATORIES (UIHC)

### Specimen Information

| Type | Source | Collected On |
|---|---|---|
| Urine | | 07/12/15 0218 |

### Components

| | Value | Ref range | Flag | Comment | Lab |
|---|---|---|---|---|---|
| Amphetamines, Urine | Negative | Negative | | | UIHC |
| Comment | Test cut-off: 1000 ng/mL for d-methamphetamine. | | | | |
| Benzodiazepine, Urine | Negative | Negative | | | UIHC |
| Comment | Test cut-off: 100 ng/mL | | | | |
| Cocaine, Urine | Negative | Negative | | | UIHC |
| Comment | Test cut-off: 300 ng/mL | | | | |
| Opiate, Urine | Negative | Negative | | | UIHC |
| Comment | Test cut-off: 300 ng/mL for morphine | | | | |
| Oxycodone, Urine | Negative | Negative | | | UIHC |
| Comment | Test cut-off: 300 ng/mL | | | | |

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP.# 78149176
Printed by LAKERM at 10/1/15 3:50 PM



**UNIVERSITY of IOWA HOSPITALS & CLINICS**
University of Iowa Health Care

Resulted: 07/12/15 0259, Result status: Final result

## DRUGS OF ABUSE - URINE [229346695] (Normal) (continued)

Amphetamines assay cross-reacts well with amphetamine and methamphetamine, as well as the "designer" amphetamines MDMA ("Ecstasy"), MDA, MDEA ("Eve"), and MBDB. Labetalol may also produce false positives due to cross-reactivity of a metabolite. The amphetamines assay has little or no cross-reactivity with ephedrine, pseudoephedrine, phentermine, and methylphenidate. Opiates assay has low cross-reactivity for buprenorphine, fentanyl, meperidine, methadone, oxycodone, and propoxyphene (all have cut-offs greater than 75,000 ng/mL).

Please see Laboratory Services Handbook (http://healthcare.uiowa.edu/path_handbook.index.html) for more detailed information on assay cross-reactivity.

Drug of abuse screening tests are to be used for medical purposes only and not for non-medical purposes (e.g., employee, competitive athlete, or forensic testing). Questions to Clinical Chemistry medical director at 319-384-9380.

### Testing Performed By

| Lab - Abbreviation | Name | Director | Address | Valid Date Range |
|---|---|---|---|---|
| 51 - UIHC | EMORY WARNER PATHOLOGY LABORATORIES (UIHC) | Unknown | 200 Hawkins Dr C660 GH Iowa City IA 52242-1009 | 06/13/14 1037 - Present |

Resulted: 07/12/15 0259. Result status: Final result

## THC-URINE SCREEN [229346696] (Normal)

| Ordering provider: | He, Jane J, MD  07/12/15 0104 | | Resulting lab. | EMORY WARNER PATHOLOGY LABORATORIES (UIHC) |
|---|---|---|---|---|

### Specimen Information

| Type | Source | Collected On |
|---|---|---|
| Urine | | 07/12/15 0218 |

### Components

| | Value | Ref range | Flag | Comment | Lab |
|---|---|---|---|---|---|
| THC, Urine Comment | Negative | Negative | | | UIHC |

Test-cut off:  50 ng/mL

Drug of abuse screening tests are to be used for medical purposes only and not for non-medical purposes (e.g., employee or forensic testing). Questions to Clinical Chemistry medical director at 319-384-9380.

### Testing Performed By

| Lab - Abbreviation | Name | Director | Address | Valid Date Range |
|---|---|---|---|---|
| 51 - UIHC | EMORY WARNER PATHOLOGY LABORATORIES (UIHC) | Unknown | 200 Hawkins Dr C660 GH Iowa City IA 52242-1009 | 06/13/14 1037 - Present |

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt. Name: Lee, John E
HOSP.#:78149176
Printed by LAKERM at 10/1/15 3:50 PM


UNIVERSITY *of* IOWA
HOSPITALS & CLINICS
University of Iowa Health Care

**Testing Performed By (continued)**

Resulted: 07/12/15 0502, Result status: Final result

**ETHANOL, PLASMA [229347943] (Normal)**

| Ordering provider | Obr, Brooks J, MD 07/12/15 0414 | Resulting lab | EMORY WARNER PATHOLOGY LABORATORIES (UIHC) |

Specimen Information

| Type | Source | Collected On |
|------|--------|--------------|
| Blood | | 07/12/15 0423 |

Components

| | Value | Ref range | Flag | Comment | Lab |
|---|-------|-----------|------|---------|-----|
| Ethanol | 76 | mg/dL | | | UIHC |
| Comment | | | | | |

Ethanol values less than 10 mg/dL cannot be distinguished from zero.

**Testing Performed By**

| Lab - Abbreviation | Name | Director | Address | Valid Date Range |
|--------------------|------|----------|---------|------------------|
| **51 - UIHC** | EMORY WARNER PATHOLOGY LABORATORIES (UIHC) | Unknown | 200 Hawkins Dr C660 GH Iowa City IA 52242-1009 | 06/13/14 1037 - Present |

## END OF REPORT

Page 3

University of Iowa Hospitals and Clinics
200 Hawkins Drive, Iowa City, IA 52242

Pt Name: Lee, John E
HOSP.#.78149176
Printed by LAKERM at 10/1/15 3:50 PM

Form 1989

**CONSENT TO RELEASE OF INFORMATION**
University of Iowa Hospitals and Clinics (UIHC)
Health Information Management Department; 200 Hawkins Drive, Iowa City, IA 52242
Release of Information Office (Telephone 319-356-1719; FAX 319-356-3079)

Hosp. # _____

Please neatly PRINT (except signature) and provide complete information in each section.

Patient's Legal Name _____ John E Lee _____     Birth Date _____

By signing this form, I am allowing UIHC to release medical information concerning the above named patient to the person or facility listed below. This information may be shared by: Viewing ___ Verbal ___ Copies ___ CD ___ CareLink ___
(Please note, burning to a CD is only possible when transferring electronic information. Copies of paper documents will be provided on paper.)

_____
Name of Person and/or Institution who will receive Information

_____          _____
Complete Mailing Address/Street/P.O. Box              City, State, Zip Code

Check the information to be disclosed (include dates if known);     ___ Minimum necessary, or specify as follows:
___ Medication list    ___ Allergy list    ___ Immunization record    ___ Problem List (Pt. Summary list)
___ History and Physical, specify clinic or date_____
___ Discharge summary, specify clinic or date_____
___ Laboratory results, specify type or date_____
___ X-ray and imaging reports, specify type or date_____
___ Consultation reports, specify doctor or clinic _____
___ Test results (e.g. EKG, PFT, etc.), specify type or date _____
___ Billing information, specify_____
___ Other, specify_____

Please check the reason for release below; and provide a date by which the info is needed: _____

Insurance ____   2nd opinion ____   Rehab/disability _____   Personal file _____   Moving out of area _____   Legal _____

Other medical care _____   Transferring care _____ If transferring care, may we confidentially discuss with you? YES ___ NO___

If yes, please indicate the best time and telephone number to reach you: _____

This consent is voluntary. If I cancel this consent at a later date, I must send written notification to the Director of Health Information Management at the above address. If this consent is cancelled, I understand that information may have been released prior to the cancellation, and that action would not be considered a breach of confidentiality. I also acknowledge that: 1) recipients of this information may possibly re-release the information without proper authorization, and 2) once information is disclosed it may no longer be protected by federal privacy regulations. I understand that I may review the disclosed information or ask questions by contacting the Director of Health Information Management at the above address.

UIHC does not require completion of this form as a condition of evaluation or treatment. However, when the requested evaluation or treatment is solely for the purpose of creating a medical report for a third party, if authorization to release the information to that third party is not provided, it may result in the cancellation of those services.

I understand that the information may be released electronically, and may include information in the following categories unless I specifically deny the release (initial any category not to be released).

Substance Abuse_____    Mental Health _____    HIV-related Information _____   *Genetic tests/info_____
*Refers to genetic testing to screen for possible future health issues, does not refer to testing to diagnose or treat current health conditions.

This agreement will expire two years from the date of signature, or as indicated (specify number of days or months)
_____ unless cancelled by the patient/guardian.

_____          _____          _____
Signature of Patient or Legal Guardian              Printed name                      Date

_____          _____
Complete Mailing Address/Street/P.O. Box              City, State, Zip Code
Vanessa Lee    wife                       Annette yearous
Relationship, if Not the Patient                          Witness Signature

UIHC use only: Upon satisfying this release, date & sign; record on the Release of Information Tracking (ROIT) system and scan the form in to Epic. If unable to satisfy this release or if unable to enter/scan this information on the ROIT system, complete the following as appropriate and then forward to the Release of Information Office, Health Information Management (HIM) Department, 2 SRF.

Info. sent: _____   _____   Recorded on ROIT System: _____   _____
              Name/Department         Date                                      Operator Name/Department        Date

Revised: 1-2014

White Original: Scan into Epic    Copy: Patient

 **Lincoln**
**Financial Group**®

 **received**
9-23-15

September 18, 2015

The Lincoln National Life
Insurance Company
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

ASHLEY INDUSTRIAL MOLDING INC
KAREN MAXWELL
310 SOUTH WABASH
ASHLEY IN 46705

RE:                 Accidental Death
     Policy Number:     000400001000-12077
                              000010132080-00000
     Claim Number:     1072315-1127380
     Claimant:           John E Lee

Dear Ms. Maxwell:

In order to review John E Lee's eligibility for the above referenced claim, we have requested additional information from Vanessa Lee on August 4, 2015 and September 3, 2015.

As of this date, we have not received a copy of John E Lee's Accident or Incident report or Toxicology report.

Therefore, the file is being closed due to insufficient information. If our office is provided with the requested documentation at a later date, we will be able to continue with our review. A separate letter has been mailed to, Vanessa Lee advising of this closure along with their rights to appeal this decision.

If you should have any questions regarding this matter, please contact our office at 1-800-423-2765.

Sincerely,



Nadine Beck
Claims Examiner II, Claims
The Lincoln National Life Insurance Company

©2015 Lincoln National Corporation

www.LincolnFinancial.com

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Form 1989

**CONSENT TO RELEASE OF INFORMATION**
University of Iowa Hospitals and Clinics (UIHC)
Health Information Management Department; 200 Hawkins Drive, Iowa City, IA 52242
Release of Information Office (Telephone 319-356-1719; FAX 319-356-3079)

Hosp. # _____

Please neatly PRINT (except signature) and provide complete information in each section.

Patient's Legal Name _____John E Lee_____          Birth Date _____

By signing this form, I am allowing UIHC to release medical information concerning the above named patient to the person or facility listed below. This information may be shared by: Viewing ___ Verbal ___ Copies ___ CD ___ CareLink _____
(Please note, burning to a CD is only possible when transferring electronic information. Copies of paper documents will be provided on paper.)

_____
Name of Person and/or Institution who will receive information

_____
Complete Mailing Address/Street/P.O. Box                    City, State, Zip Code

Check the information to be disclosed (include dates if known):          ___ Minimum necessary, or specify as follows:
___ Medication list      ___ Allergy list      ___ Immunization record      ___ Problem List (Pt. Summary list)
___ History and Physical, specify clinic or date_____
___ Discharge summary, specify clinic or date_____
___ Laboratory results, specify type or date_____
___ X-ray and imaging reports, specify type or date_____
___ Consultation reports, specify doctor or clinic _____
___ Test results (e.g. EKG, PFT, etc.), specify type or date _____
___ Billing Information, specify_____
___ Other, specify_____

Please check the reason for release below; and provide a date by which the info is needed: _____

Insurance _____  2nd opinion _____  Rehab/disability _____  Personal file _____  Moving out of area _____  Legal _____

Other medical care _____  Transferring care _____ If transferring care, may we confidentially discuss with you? YES ___ NO___

If yes, please indicate the best time and telephone number to reach you: _____

This consent is voluntary. If I cancel this consent at a later date, I must send written notification to the Director of Health Information Management at the above address. If this consent is cancelled, I understand that information may have been released prior to the cancellation, and that action would not be considered a breach of confidentiality. I also acknowledge that: 1) recipients of this information may possibly re-release the information without proper authorization, and 2) once information is disclosed it may no longer be protected by federal privacy regulations. I understand that I may review the disclosed information or ask questions by contacting the Director of Health Information Management at the above address.

UIHC does not require completion of this form as a condition of evaluation or treatment. However, when the requested evaluation or treatment is solely for the purpose of creating a medical report for a third party, if authorization to release the information to that third party is not provided, it may result in the cancellation of those services.

I understand that the information may be released electronically, and may include information in the following categories unless I specifically deny the release (initial any category not to be released).

Substance Abuse_____ Mental Health _____ HIV-related information _____ *Genetic tests/info_____
*Refers to genetic testing to screen for possible future health issues, does not refer to testing to diagnose or treat current health conditions.

This agreement will expire two years from the date of signature, or as indicated (specify number of days or months) _____ unless cancelled by the patient/guardian.

_____     _____     _____
Signature of Patient or Legal Guardian          Printed name                    Date

_____     _____     _____
Complete Mailing Address/Street/P.O. Box                    City, State, Zip Code
_____Vanessa Lee_____ wife                              _____Annette Yearous_____
Relationship, if Not the Patient                              Witness Signature

UIHC use only: Upon satisfying this release, date & sign; record on the Release of Information Tracking (ROIT) system and scan the form in to Epic. If unable to satisfy this release or if unable to enter/scan this information on the ROIT system, complete the following as appropriate and then forward to the Release of Information Office, Health Information Management (HIM) Department, 2 SRF.

Info. sent: _____  _____     Recorded on ROIT System: _____
          Name/Department          Date                              Operator Name/Department          Date

Revised: 1-2014

White Original: Scan into Epic          Copy. Patient

 **Lincoln**
**Financial Group®**

 received
9-23-15

September 18, 2015

**The Lincoln National Life**
**Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

ASHLEY INDUSTRIAL MOLDING INC
KAREN MAXWELL
310 SOUTH WABASH
ASHLEY IN 46705

RE:                   Accidental Death
    Policy Number:       000400001000-12077
                        000010132080-00000
    Claim Number:        1072315-1127380
    Claimant:             John E Lee

Dear Ms. Maxwell:

In order to review John E Lee's eligibility for the above referenced claim, we have
requested additional information from Vanessa Lee on August 4, 2015 and September
3, 2015.

As of this date, we have not received a copy of John E Lee's Accident or Incident report
or Toxicology report.

Therefore, the file is being closed due to insufficient information. If our office is provided
with the requested documentation at a later date, we will be able to continue with our
review. A separate letter has been mailed to, Vanessa Lee
advising of this closure along with their rights to appeal this decision.

If you should have any questions regarding this matter, please contact our office at 1-
800-423-2765.

Sincerely,



Nadine Beck
Claims Examiner II, Claims
The Lincoln National Life Insurance Company

©2015 Lincoln National Corporation

www.LincolnFinancial.com

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.



September 18, 2015

**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

ASHLEY INDUSTRIAL MOLDING INC
KAREN MAXWELL
310 SOUTH WABASH
ASHLEY IN 46705

RE:                             Accidental Death
        Policy Number:    000400001000-12077
                                000010132080-00000
        Claim Number:    1072315-1127380
        Claimant:            John E Lee

Dear Ms. Maxwell:

In order to review John E Lee's eligibility for the above referenced claim, we have requested additional information from Vanessa Lee on August 4, 2015 and September 3, 2015.

As of this date, we have not received a copy of John E Lee's Accident or Incident report or Toxicology report.

Therefore, the file is being closed due to insufficient information.  If our office is provided with the requested documentation at a later date, we will be able to continue with our review.  A separate letter has been mailed to, Vanessa Lee
advising of this closure along with their rights to appeal this decision.

If you should have any questions regarding this matter, please contact our office at 1-800-423-2765.

Sincerely,


Nadine Beck
Claims Examiner II, Claims
The Lincoln National Life Insurance Company

Packet: 300792

©2015 Lincoln National Corporation

www.LincolnFinancial.com

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.



September 18, 2015

**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

VANESSA LEE

RE:   Voluntary Life Insurance and Basic Life Insurance
      Policy Holder:     Ashley Industrial Molding, Inc
      Policy Number:     000400001000-12077
                         000010132080-00000
      Claim Number:      1072315-1127380
      Claimant:          John E Lee

Dear Ms. Lee:

In order to review the claim referenced above, we have requested additional information from you on August 4, 2015 and September 3, 2015.

As of this date, we have not received a copy of John E Lee's Accident or Incident report or toxicology report.

Therefore, the file is being closed due to insufficient information.  If our office is provided with the requested documentation at a later date, we will be able to continue our review.

There are two options available to you at this time regarding this notice.

- If you are providing the requested information, please send it to my attention at the address listed on the letterhead, email to LifeClaims@LFG.com, or you may fax the information directly to my attention at 1-800-462-4660.  Once received, we will immediately reconsider your benefits.

- If you do not intend to send us any new information such as the information described above and you disagree with our decision, you may also appeal our determination by following the steps outlined below.

## **Appeal Rights**

Packet: 300791

©2015 Lincoln National Corporation

www.LincolnFinancial.com

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

You, your attorney or a person legally authorized as your representative may request a review of your denied claim. Such request must be made in writing and submitted to us at the address below within 60 days after you receive this denial notice:

Risk Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 402-361-1460

Your request for an appeal needs to include the following:

- A letter of appeal outlining the reason(s) for your appeal. This letter needs to include your policy number and claim number.
- Medical records to support your appeal such as office and treatment notes, laboratory results, x-rays and testing results.

You and your plan may have other voluntary alternative dispute resolution options such as mediation, if your plan is subject to ERISA. One way to find out what may be available is to contact your local U.S. Department of Labor Office and your State insurance regulatory agency. In addition, once all required reviews of your claim have been completed; you have the right to bring a civil action under applicable law.

If you wish, you may also request copies of the pertinent documents. We will then provide you with a full written explanation of the decision within 60 days of receipt of your appeal.

If you have any questions regarding this matter, please contact our office at 1-800-423-2765.

Sincerely,


Nadine Beck
Claims Examiner II, Claims
The Lincoln National Life Insurance Company

Lincoln/Lee 556



September 03, 2015

**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

VANESSA LEE

**\*\*FINAL REQUEST\*\***

RE:    PolicyHolder:    Ashley Industrial Moldings, Inc
       Policy Number:    000400001000-12077
                  000010132080-00000
       Claim Number:    1072315-1127380
       Claimant:    John E Lee

Dear VANESSA LEE:

On August 4, 2015, we sent a letter to you requesting additional information in order to consider John E Lee's claim for life insurance benefits. In order for us to continue our review of their claim, we ask that you please forward the information listed below within the next 15 days.

-Copy of John E Lee's Police Accident or Incident Report
-Copy of John E Lee's Toxicology Report

If you would like to fax this information, please fax to 1-800-462-4660 or email to LifeClaims@LFG.com. Once we have received all of the requested information, we will continue our review of John E Lee's claim.

If we do not receive this information within the next 15 days, we will be unable to continue our review and the claim file will be closed. If the requested information is submitted at a later date, we'll continue our review at that time.

Packet: 298674

©2015 Lincoln National Corporation

www.LincolnFinancial.com

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

If you should have any questions regarding this matter, please contact our office at 1-800-423-2765.

Sincerely,


Nadine Beck
Claims Examiner II, Claims
The Lincoln National Life Insurance Company

Lincoln/Lee 558



August 04, 2015

**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

VANESSA LEE

RE:     PolicyHolder:       Ashley Industrial Moldings, Inc
        Policy Number:      000400001000-12077
                            000010132080-00000
        Claim Number:       1072315-1127380
        Claimant:           John E Lee

Dear Ms. Lee:

We have received the above referenced claim for John E Lee.  Please accept our sincere sympathy for the loss of your spouse.  At this time, the claim has been placed into a pending status for additional information.

Before benefits can be considered, the following information must be forwarded to our office within the next 30 days:

-Copy of John E Lee's Accident or incident report
-Copy of John E Lee's Toxicology report- A letter has been sent to University of Iowa Hospitals & Clinics.  If you have a copy of this report please forward to me.

Please forward all of the documentation requested above within the next 30 days.

Once all of the requested information has been received, we will continue our review of John E Lee's claim.

Packet: 294682

©2015 Lincoln National Corporation

www.LincolnFinancial.com

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

If you should have any questions regarding this matter, please contact our office at 1-800-423-2765.

Sincerely,

Nadine Beck
Claims Examiner II, Claims
The Lincoln National Life Insurance Company

CC
ASHLEY INDUSTRIAL MOLDING INC
ATTN KAREN MAXWELL
310 SOUTH WABASH
PO BOX 398
ASHLEY IN 46705

Lincoln/Lee 560



August 04, 2015

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

VANESSA LEE

RE:   Claim Number:      1072315-1127380
      Claimant:          John E Lee
      Policy Holder:     Ashley Industrial Moldings, Inc
      Policy Number:     000400001000-12077
                         000010132080-00000

Dear Ms. Lee:

We are very sorry to learn of the loss of John E Lee and please accept our sincere sympathy. The above referenced life insurance claim filed on behalf of John E Lee has been approved for the following benefits:

**Explanation of Benefits for Vanessa Lee**

| | | |
|---|---|---|
| Basic Life Insurance | Amount $48,000.00 | Interest $0.00 |
| Accidental Death and Dismemberment Insurance | Pending | |
| Voluntary Life Insurance | Amount $20,000.00 | Interest $0.00 |
| Voluntary Accidental Death and Dismemberment Insurance | Pending | |

Per your request, policy proceeds have been issued as a direct deposit and should be reflected into the account provided within 2-3 business days.

Packet: 294680

©2015 Lincoln National Corporation

www.LincolnFinancial.com

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Lincoln Financial offers at no cost, assistance to help you during this difficult and emotional period.  These services include:

- Unlimited phone contact with counselors and legal/financial resources.
- Up to six sessions or equivalent professional time for counseling/legal or financial consultation.
- Information on memorial planning.
- Child and elder care referrals.
- Additional resource information based on your individual need.

To utilize *LifeKeys*$_{SM}$, please call (855) 891-3684.  You may also access the website at www.guidanceresources.com.  During the login process you will enter the Web ID:  LifeKeys.

If you should have any questions regarding this claim payment, you may contact our office at 1-800-423-2765.

Sincerely,


Nadine Beck
Claims Examiner II, Claims
The Lincoln National Life Insurance Company



August 04, 2015

**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

ASHLEY INDUSTRIAL MOLDING INC
KAREN MAXWELL
310 SOUTH WABASH
ASHLEY IN 46705

RE:  Claim Number:    1072315-1127380
     Claimant:        John E Lee
     Policy Holder:   Ashley Industrial Moldings, Inc
     Policy Number:   000400001000-12077
                      000010132080-00000

Dear KAREN MAXWELL:

This letter is to notify you that The Lincoln National Life Insurance Company has
completed the review of the above referenced claim for benefits.  The following benefits
have been approved:

**Explanation of Benefits:  Vanessa Lee**

| | | |
|---|---|---|
| Basic Life Insurance | Amount $48,000.00 | Interest $0.00 |
| Accidental Death and Dismemberment Insurance | Pending-Accident report and Toxicology report | |
| Voluntary Life Insurance | Amount $20,000.00 | Interest $0.00 |
| Voluntary Accidental Death and Dismemberment Insurance | Pending-Accident report and Toxicology report | |

Payment Method:  Direct Deposit

A letter request has been sent to Vanessa Lee for a copy of the accident or incident
report and a separate letter has been sent of University of Iowa Hospitals & Clinics for a
copy of John E Lee's Toxicology report.

Packet: 294679

©2015 Lincoln National Corporation

www.LincolnFinancial.com

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 475 of 555    Lincoln/Lee 563

Please note that the benefit payment has been sent directly to the payee(s) according to their requested method of payment.

If you have any questions regarding this payment, please contact our office at 1-800-423-2765.

Sincerely,


Nadine Beck
Claims Examiner II, Claims
The Lincoln National Life Insurance Company

Lincoln/Lee 564



August 04, 2015

**The Lincoln National Life**
**Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

UNIVERSITY OF IOWA HOSPTIALS AND CLINICS
MEDICAL RECORDS
200 HAWKINS DR
IOWA CITY IA 52242

RE:    PolicyHolder:    Ashley Industrial Moldings, Inc
        Policy Number:    000400001000-12077
                      000010132080-00000
        Claim Number:    1072315-1127380
        Claimant:    John E Lee

Dear Medical Records:

We are processing the Accidental Death and Dismemberment coverage for a life claim received on behalf of John E Lee, but there is information needed to complete our review.

To complete the review of this claim, we are asking that you please provide:

A copy of John E Lee's Toxicology report with results

If a toxicology report was not completed, please contact our office to advise of this. We have enclosed an authorization form completed by the beneficiary of this policy for your reference.

You can either fax this information directly to me at 1-800-462-4660, email to LifeClaims@LFG.com, or mail it to the address listed above. Please provide this documentation within the next 30 days to ensure timely processing of this claim.

Packet: 294691

©2015 Lincoln National Corporation

www.LincolnFinancial.com

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

If you have any questions regarding this request, please call me directly at 1-800-423-2765, ext 2894.  Your assistance is greatly appreciated.

Sincerely,


Nadine Beck
Claims Examiner II, Claims
The Lincoln National Life Insurance Company

Lincoln/Lee 566



August 04, 2015

**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

UNIVERSITY OF IOWA HOSPITALS & CLINICS
ATTN MEDICAL RECORDS
200 HAWKINS DR
IOWA CITY IA 52242

RE:     PolicyHolder:        Ashley Industrial Moldings, Inc
        Policy Number:       000400001000-12077
                             000010132080-00000
        Claim Number:        1072315-1127380
        Claimant:            John E Lee

Dear Medial Records :

We are processing the Accidental Death and Dismemberment coverage for a life claim
received on behalf of John E Lee, but there is information needed to complete our
review.

To complete the review of this claim, we are asking that you please provide:

A copy of John E Lee's Toxicology report with results

If a toxicology report was not completed, please contact our office to advise of this.  We
have enclosed an authorization form completed by the beneficiary of this policy for your
reference.

You can either fax this information directly to me at 1-800-462-4660, email to
LifeClaims@LFG.com, or mail it to the address listed above.  Please provide this
documentation within the next 30 days to ensure timely processing of this claim.

Packet: 294686

©2015 Lincoln National Corporation

www.LincolnFinancial.com

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

If you have any questions regarding this request, please call me directly at 1-800-423-2765, ext 2894. Your assistance is greatly appreciated.

Sincerely,

Nadine Beck
Claims Examiner II, Claims
The Lincoln National Life Insurance Company

Lincoln/Lee 568

# Ashley
# Industrial
# Molding, Inc. *"AIM for Excellence"*

104 Progressive Drive W
Kendallville, IN 46755
Phone: 260-349-1982 ext. 427
Fax: 260-349-1987

## *Fax*

**TO:   Lincoln Financial Group**
  **LifeClaims@lfg.com**

**Attn:    Carla Larimore**

**FROM:    Janelle Smith**

**FAX#:   (800)462-4660   Pages:   10**

**RE:    Life Insurance Claim-John Lee   Claim #1072315-1127380**

**Date: 08/03/2015**

## COMMENTS:

Please review the following information for Claim # 1072315-1127380

Please contact me with any questions at (260) 587-9155 ext. 427

Thank you,

Janelle Smith

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 481 of 555    Lincoln/Lee 569

 **Lincoln**
Financial Group®

July 30, 2015        

**The Lincoln National Life**
**Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

ASHLEY INDUSTRIAL MOLDING INC
KAREN MAXWELL
310 SOUTH WABASH
ASHLEY IN 46705



RE:    Life and Accidental Death Claim – INCOMPLETE CLAIM

| | |
|---|---|
| Claimant: | John E Lee |
| Policy Holder: | Ashley Industrial Moldings Inc |
| Policy Number: | 000400001000-12077 |
| | 000010132080-00000 |
| Claim Number: | 1072315-1127380 |

Dear Karen Maxwell:

We have received an incomplete Life and Accidental Death claim for John E Lee. We are sorry to hear of your loss and express our condolences. In order to continue the review of this claim, we need the following information:

- Copy of the Certified Death Certificate including final cause and manner of death
- Copy of the last beneficiary designation form completed by John Lee

Please submit the requested information by August 10, 2015. If it is not submitted by that date we will close the claim. However, we will reopen and continue the claim review upon receipt of the above information. To expedite the claim processing, please feel free to fax this information to our office at 1-800-462-4660 or email LifeClaims@lfg.com.

©2015 Lincoln National Corporation

www.LincolnFinancial.com

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 482 of 555   Lincoln/Lee 570

If you should have any questions regarding this matter, please contact our office at 1-800-423-2765.

Sincerely,


Carla Larimore
**Claims Examiner II, Claims**
The Lincoln National Life Insurance Company



PAGE 3/11 * RCVD AT 8/3/2015 2:59:19 PM [Central Daylight Time] * SVR:NE1PWFAX101/2 * DNIS:1047 * CSID:260 347 1987 * DURATION (mm-ss):05-10

# The Lincoln National Life Insurance Company

A Stock Company      Home Office Location: Fort Wayne, Indiana
Group Insurance Service Office: P.O. Box 2616, Omaha, NE 68103-2616
Phone: (800) 423-2765 Fax: (877) 573-6177

## ENROLLMENT FORM FOR GROUP INSURANCE

| Please Use Ink or Type | GROUP ID: AIM3 | GROUP POLICY #: 10132080, 10132081, 400001000-12077 | Billing Division or Location: Oelwein |
|---|---|---|---|

### A. Employee Information (Complete for ALL Enrollments)

| Employer Name/Company Name (Please Print) Ashley Industrial Moldings, Inc. | | County Fayette | Employer ZIP 50ava | State IA |
|---|---|---|---|---|
| Employee Last Name Lee | First Name John | Middle Initial E. | Social Security Number | Date of Birth |
| Spouse Last Name Lee | First Name Vanessa | Middle Initial G. | Social Security Number | Date of Birth |
| Street Address | | City | State | Zip |

| Gender: ☒Male ☐Female | Marital Status: ☒Married ☐Single | Home Phone | Work Phone |
|---|---|---|---|

### Completed By Employer

| Average Hours Worked Per Week: 40 | Occupation: Supervisor | | |
|---|---|---|---|
| Earnings: ☐ Hourly ☐ Monthly ☐ Weekly ☒ Yearly $ 40,000 | | Date of Full-Time Employment: 11-29-10 | Rehire Date: |

### B. Product Selection (Complete for ALL Enrollments)

Basic Coverage  NOTE: Please mark the box or boxes for each coverage you are applying for.
All coverage amounts are subject to the limitations and exclusions as stated in the policy.

| Class | Effective Date | Type of Coverage | | Amount of Coverage | Total Premium |
|---|---|---|---|---|---|
| Sal | 3-1-11 | Basic Group Life/AD&D | ☒Yes ☐No | $ | Employer Paid |
| Sal | 3-1-11 | Long Term Disability | ☒Yes ☐No | $ | Employer Paid |

Voluntary Coverage  NOTE: Please mark the box or boxes for each coverage you are applying for.
All coverage amounts are subject to the limitations and exclusions as stated in the policy.

| TYPE OF COVERAGE | | AMOUNT OF COVERAGE | TOTAL PREMIUM |
|---|---|---|---|
| Voluntary Employee Life/AD&D Insurance | ☒Yes ☐No | $ 20,000 | $ 4.22 |
| Voluntary Spouse Life/AD&D Insurance | ☒Yes ☐No | $ 10,000 | $ 2.11 |
| Voluntary Dependent Child Benefit | ☐Yes ☐No | ☐ varies | $ |

Has Employee or Spouse used any type of tobacco in the past 12 months?   Employee: ☒Yes ☐No      Spouse: ☐Yes ☒No

### C. Beneficiary Information (Complete ONLY for Life or AD&D Enrollments)

| Primary Beneficiary's Last Name Lee | First Vanessa | MI G | Relationship of Beneficiary WIFE | Social Security Number |
|---|---|---|---|---|
| Street Address | | City | State | Zip |
| Contingent Beneficiary's Last Name Lee | First RANDEE | MI T | Relationship of Beneficiary Daughter | Social Security Number |
| Street Address | | City | State | Zip |

Note: A Contingent Beneficiary will receive benefits only if the Primary Beneficiary does not survive you. If you wish to designate more than one Primary or Contingent Beneficiary, please attach a separate sheet of paper.

GLAD 4 · 11/00                                                                                           Rev. 04/07 IN

### E. Request for Coverages

This coverage has been offered to me and after careful consideration of the benefits, I have decided to:

☒ **REQUEST COVERAGE** for which I am or may become eligible under the group policies issued by The Lincoln National Life Insurance Company. I hereby apply for group insurance, for which I am eligible or may become eligible. If contributions are required, I authorize my employer to deduct premiums from my salary.

☐ **NOT ENROLL myself in the Program.** I understand that if I apply for coverage at a later date, and if a physical examination or further medical information is required, it will be at my own expense.

☐ **NOT ENROLL my dependents in the Program.** I understand that if I apply for coverage for my dependents at a later date, and if a physical examination or further medical information is required, it will be at my own expense.

**NOTICE: A PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD AN INSURER FILES A STATEMENT OF CLAIM CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION COMMITS A FELONY.**

The insurance requested on this enrollment form will not be effective until approved by the Group Insurance Service Office of The Lincoln National Life Insurance Company, and the initial premium is paid to The Lincoln National Life Insurance Company. A delayed effective date will apply if the employee is not actively at work, or a dependent is in a period of limited activity on the date insurance would otherwise take effect.

Employee Full Name: _John C. Lee_       Employee Signature: _John E. Lee_ Date: _2-22-11_

. GLAD 4 11/00

PAGE 5/11 * RCVD AT 8/3/2015 2:59:19 PM [Central Daylight Time] * SVR:NE1PWFAX101/2 * DNIS:1047 * CSID:260 347 1987 * DURATION (mm-ss):05-10


**Lincoln**
Financial Group®

The Lincoln National Life Insurance Company, PO Box 2649, Omaha, NE 68103-2649
toll free (800) 423-2765  Fax (800) 462-4660
www.LincolnFinancial.com
LifeClaims@lfg.com - For claims submission
Claims@lfg.com - For direct claim status inquiries and questions on existing claims

## BENEFICIARY'S STATEMENT:

Please type or print legibly—name and address as stated will appear on checks

Name _Vanessa_ _G_ _Lee_               Sex:  ☐ Male  ☒ Female
_First_          _Middle Initial_     _Last_

Beneficiary's Social Security Number or Taxpayer Identification Number _____

Date of Birth (MM/DD/YY) _____   Home Phone _Cell_ _____   Daytime Phone _____
_work_

Address _____

City _____                        State _Oa_   Zip __

E-mail Address _____

Name of Deceased _John Lee_            Relationship to Deceased _husband_

If the beneficiary is one of the following:  ☐ Minor   ☐ Estate   ☐ Incompetent   ☐ Organization   ☐ Trust

Please provide contact name and phone number of the personal or legal representative of that beneficiary:

_____

**PAYMENT OPTIONS: Please select one of the following three options (One Single Check, Direct Deposit, or SecureLine Interest-Bearing Checking Account) and please also make sure to sign and date on page 3.**

☐ One Single Check - This is the default payment option if no option is selected.

☒ Direct Deposit - Complete the following information to allow the benefit amount to be directed deposited to your account.

Bank Name _Bank Iowa_

Address _230 First E_

Routing # __                           Bank Account # _____

Type of Account (Select One):  ☒ Checking   ☐ Savings

I (we) authorize and request The Lincoln National Life Insurance Company, and its subsidiaries, to make payment of any amounts owing to me (either of us) by initiating credit entries or adjustment entries to my account indicated above in the bank named above, hereinafter called BANK, and I (we) authorize and request BANK to accept any credit entries or adjustment entries initiated by Lincoln Financial Group to such account without responsibility for the correctness thereof. It is understood that this agreement may be terminated by me (either of us) at any time by written notification to The Lincoln National Life Insurance Company or BANK. Any such notification to The Lincoln National Life Insurance Company shall be effective only with respect to entries initiated by The Lincoln National Life Insurance Company after receipt of such notification and a reasonable opportunity to act on it. I understand that The Lincoln National Life Insurance Company is required to send a notification and a reasonable opportunity to act on it. I understand that The Lincoln National Life Insurance Company is required to send a notification to BANK before the first transaction. Any such notification to BANK shall be effective only with respect to entries credited to my (our) account by BANK after receipt of such notification and a reasonable time to act on it. It is also understood that this agreement shall not modify or alter the other provisions of the policy(ies) or supplementary contract which provides for any payment due me.

**Please sign on Page 3.**

\* If the Insured Person previously designated a payment option available under the policy, we are required to disburse funds pursuant to that designation.

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
GLC-01253   CLMFRM

Page 2 of 8
5/14

PAGE 8/11 * RCVD AT 8/3/2015 2:59:19 PM [Central Daylight Time] * SVR:NE1PWFAX101/2 * DNIS:1047 * CSID:260 347 1987 * DURATION (mm-ss):05-10

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 486 of 555   Lincoln/Lee 574

☐ **SecureLine Interest-Bearing Checking Account (Not available in New York).**

SecureLine is a service offered to help you manage insurance proceeds. With SecureLine, an account is established from the proceeds payable on a policy administered by a Lincoln Financial Group® company (Lincoln). Lincoln's contractual obligation to pay those proceeds is satisfied by depositing the proceeds into your account. The Northern Trust Bank (Northern Trust) administers your account on Lincoln's behalf and the funds supporting your account are held within Lincoln's general account. Once your SecureLine account is opened, you will receive a personalized checkbook. If you decide you want the entire proceeds immediately, you just need to write one check for the entire balance. Otherwise you can use this account for paying expenses as they occur – while earning interest on your money. You can write as many checks as you wish. Each check must be for at least $250 and the total of all checks written may not exceed your balance.

- Interest Rates – Your SecureLine account starts earning interest the day the account is opened. Interest is compounded daily and credited to your account on the last day of each month. The minimum rate credited is equal to the national average for interest-bearing checking accounts as published daily by Bloomberg, plus 1%. The Company may update that minimum rate at our discretion. The interest will be updated monthly. You can find the current interest rate that will becredited to your account at www.lfg.com by clicking on the Quick Link "File a Claim". You begin to earn interest the day the account is opened and continue to earn interest until all the funds are withdrawn. The interest rate credited to your SecureLine account may be more or less than the rate earned on funds held in Lincoln's general account. Consider comparing this interest rate to your bank account interest rate or consult your financial professional to compare interest rates on comparable bank or mutual fund accounts. Interest earned on your account balance may be taxable; IRS form 1099-INT will be sent in January of each year to report taxable income. You should consult your tax advisor for more information.
- Protection Of Deposits – Your money in your SecureLine account is protected because it is held in Lincoln's general account and is guaranteed by the full faith and credit of the Lincoln Financial Group® company that established your account. Because your funds are not held in a federally-regulated bank, your funds are not protected by the Federal Deposit Insurance Corporate (FDIC). However, in the unlikely case of insolvency of Lincoln, your funds are protected by your state's insurance guaranty system. Contact the National Organization of Life and Health Guaranty Associations (http://nolhga.com; 703-481-5206) to learn more about what limits might exist related to state insurance guaranty protection.
- Monthly Statements – Each month you will receive a statement showing your current balance, withdrawals, interest credited and any other activity. Cancelled checks are not returned with your statement.
- Fees or Administrative Charges – There are no special fees for checks and no fees for monthly checking account service. You will be charged a fee of $15 if you stop a payment and $10 if you present a check for payment without sufficient funds. Additional checks may be ordered at no cost. Just contact a Customer Service Representative at Northern Trust at 1-800-343-2551.
- Minimum Balance – Your SecureLine account will remain open until your balance drops below $1000, at which time your account will be automatically closed and a check for the remaining funds plus interest will be mailed to you.
- Settlement Options - The Lincoln policy may provide you with other benefit settlement options. You may choose to withdraw the balance of your account and place it in another payment option offered by Lincoln. Contact a Customer Service Representative at 800-423-2765 for more information.
- Inactive Accounts - If there is no activity on your account and we have not heard from you for a prolonged period (2-7 years depending on your State's unclaimed property act), Lincoln will write you to verify your continued interest in the account and to confirm your contact information. If you do not respond to that correspondence, the funds in your account will be reported to your State as unclaimed property in accordance with your State's unclaimed property act.
- Louisiana Department of Insurance, PO Box 94214, Baton Rouge, LA 70804, (225) 342-1226

**FOR FURTHER INFORMATION, PLEASE CONTACT YOUR STATE DEPARTMENT OF INSURANCE.**

If you are electing a Secureline Interest-Bearing Account, please complete the Beneficiary Designation section below. If there is a SecureLine Interest-Bearing Account balance remaining at the time of your death, it will be paid to the beneficiary(ies) you designate below.

### PRIMARY BENEFICIARY(IES)

| Primary Beneficiary's Name and Address | Social Security Number | Relationship to You | Date of Birth | Percentage: Must equal 100% |
|---|---|---|---|---|
| Name: | | | | |
| Address: | | | | |
| Name: | | | | |
| Address: | | | | |

I understand that The Lincoln National Life Insurance Company furnishes this form without waiving any defense the Company may have or admitting that any insurance is in force.

I have completed and attached the Authorization for Release of Information. A photocopy of this authorization shall be as valid as the original.

I certify, under penalty of perjury, that the Social Security Number or other Taxpayer Identification Number information listed above is correct. I understand that my signature may be used for signature verification for my SecureLine Account and other purposes.

**Signature** _____    **Date** _____
(Sign as you would a check as signature may be used for check verification)

PAGE 9/11 * RCVD AT 8/3/2015 2:59:19 PM [Central Daylight Time] * SVR:NE1PWFAX101/2 * DNIS:1047 * CSID:260 347 1987 * DURATION (mm-ss):05-10

## AUTHORIZATION FOR RELEASE OF INFORMATION

1. **I (the undersigned) authorize** any physician, medical professional, pharmacist or other provider of health care services, hospital, clinic, other medical or medically related facility; coroner's office; insurance or reinsurance company; government agency; department of labor; law enforcement or public safety department; group policyholder; employer; or policy or benefit plan administrator to release information from the records of:

Claimant/Insured Name: _____*Lee*_____      _____*Vanessa*_____      _____*Gene*_____
                   (Last)                          (First)

Date of Birth: _____      Social Security Number: _____

2. Claimant/Insured Information to be released:
   - data or records regarding medical history, treatment, prescriptions, consultations, autopsy [including medical and psychological reports, records, charts, notes (excluding psychotherapy notes), x-rays, films or correspondence, and any medical condition(s)];
   - any information regarding insurance coverage; and
   - accident report or any official investigative reports (such as police, fire, FAA, OSHA, or toxicology report).

3. Information to be released to:      The Lincoln National Life Insurance Company
                                    PO Box 2649
                                    Omaha, NE 68103-2649

4. I understand the information obtained by use of this Authorization will be used by The Lincoln National Life Insurance Company ("Company") to evaluate my claim for death benefits. The Company will only release such information:
   - to its reinsurer, or other persons or organizations performing business or legal services in connection with my claim(s); or
   - as otherwise may be required by law or as I may further authorize.
   I further understand that refusal to sign this Authorization may result in the denial of benefits.

5. I understand the information used or disclosed may be subject to re-disclosure by the recipient and may no longer be protected by federal law. For Colorado claims, the disclosed information may **not** be redisclosed or reused by the recipient under Colorado law.

6. I understand that I may revoke this Authorization in writing at any time, except to the extent:
   1) the Company has taken action in reliance on this Authorization; or
   2) the Company is using this Authorization in connection with a contestable claim.
   If written revocation is not received, this Authorization will be considered valid for a period of time not to exceed 24 months from the date of my signature below. To initiate revocation of this Authorization, direct all correspondence to the Company at the above address.

7. A photocopy of this Authorization is to be considered as valid as the original.

8. I understand I am entitled to receive a copy of this Authorization.

SIGNATURE: _____*Vanessa Lee*_____      DATE: ___*6/30/15*___
Claimant/legal Representative (Nearest relative, legal guardian, or appointed representative to sign only if claimant/insured is a minor, legally incompetent, or deceased.) Power of attorney or guardianship must be attached.

PRINT NAME: _____*Vanessa Lee*_____

Relationship to Claimant/Insured of personal/legal representative signing for Claimant/Insured: _____

ADDRESS: _____      PHONE NO: _____
      (Str

      (Cit

GLC-01253   CLMFRM

PAGE 10/11 * RCVD AT 8/3/2015 2:59:19 PM [Central Daylight Time] * SVR:NE1PWFAX101/2 * DNIS:1047 * CSID:260 347 1987 * DURATION (mm-ss):05-10

## ACCIDENTAL DEATH BENEFIT INFORMATION

A beneficiary or the personal/legal representative of the deceased will only complete this page when applying for Accidental Death Benefits.

1. Group Name: _Ashley Industrie Molding_

2. Name of Insured: _John Lee_

3. Name of Deceased (If different from above): _____ Relationship to Insured: _husband_

4. On what date did the Accident occur? (MM/DD/YY) _July 11 2015_

   Where did the Accident Occur? (Address, City, State): _Otterville Camp Site_

   Describe in detail how the Accident occurred:

5. Did the Deceased have any disease or physical defect?    ☐ Yes  ☒ No

   If Yes, please describe in detail:

6. Was a police or other investigative report completed?    ☐ Yes  ☒ No

   If Yes, please provide a copy of the official investigative report (i.e. police, accident, OSHA, etc) and/or provide contact information:

7. List name/address/phone number of all physicians who treated the deceased in connection with the accident:

   _University of Iowa_

8. List name/address/phone number of all hospitals who treated the deceased in connection with the accident:

9. Was an Autopsy performed? ☐ Yes  ☒ No

   If Yes, please submit copy of the Autopsy report and/or provide contact information:

Person completing form: _Vanessa Lee_                                    Phone: _____

Address: _____

City: _____            State: _____    Zip: _____

Relationship to Deceased: _husband_

Signature of Person Completing this form: _Vanessa Lee_                Date: _6/30/15_

GLC-01253   CLMFRM

PAGE 11/11 * RCVD AT 8/3/2015 2:59:19 PM [Central Daylight Time] * SVR:NE1PWFAX101/2 * DNIS:1047 * CSID:260 347 1987 * DURATION (mm-ss):05-10

CERTIFICATION OF VITAL RECORD

## STATE OF IOWA
IOWA DEPARTMENT OF PUBLIC HEALTH
# CERTIFICATE OF DEATH

**114-2015-016014**

### DECEDENT INFORMATION

BIRTH NUMBER: *Not Available*

NAME: *John Earl Lee*

DATE FILED: *07/23/2015*

SSN:

PLACE OF BIRTH: Iowa

SEX: *Male*

ARMED FORCES: *Yes*

DATE OF BIRTH/AGE: *46 Years*

#### NAMES (PRIOR TO ANY MARRIAGE):

DECEDENT LAST: *Lee*

FATHER'S NAME: *Richard Wayne Lee*

MOTHER'S NAME: *Lavonne Eleanor Jennings*

RESIDENTIAL ADDRESS:

CITIZENSHIP: *United States*

MARITAL STATUS: *Married*

SURVIVING SPOUSE: *Vanessa Gene Yearous*

RESIDENCE COUNTY: *Buchanan*

COUNTY OF DEATH: *Johnson*

INFORMANT NAME: *Vanessa G Lee*

INFORMANT RELATIONSHIP: *Spouse*

INFORMANT ADDRESS:

DATE/TIME OF DEATH: *07/19/2015 (Actual)*
*09:57 AM (Actual)*

PLACE OF DEATH: *Inpatient*

FACILITY/ADDRESS: *University of Iowa Hospitals & Clinics Iowa City, Iowa 52242*

M.E. CONTACTED: *Yes*

### MEDICAL CAUSE OF DEATH INFORMATION

INTERVAL    UNITS

IMMEDIATE CAUSE OF DEATH: *Blunt Force Injuries Of The Head*    *Days*

DUE TO OR AS A CONSEQUENCE OF:

DUE TO OR AS A CONSEQUENCE OF:

UNDERLYING CAUSE, IF ANY:

OTHER SIGNIFICANT CONDITIONS:

MANNER OF DEATH: *Accident*

AUTOPSY PERFORMED/FINDINGS: *No*

DATE/TIME OF INJURY: *07/11/2015 08:00 PM*

PLACE OF INJURY: *Private property*

LOCATION OF INJURY: *1664 198th Street*
*Independence, Iowa 50644*

DESCRIPTION OF INJURY: *Atv Crash*

TOBACCO CONTRIBUTED TO DEATH: *No*

ME CASE #: *15-52-359*

INJURY AT WORK: *No*

TRANSPORTATION INJURY: *Yes*

CERTIFIER: *Dennis Firchau*

DATE CERTIFIED: *07/23/2015*

CERTIFIER ADDRESS: *913 South Dubuque Iowa City, Iowa 52240*

### DISPOSITION

FUNERAL HOME: *White Funeral Home-Independence*
*Independence, Iowa 50644*

METHOD: *Cremation*

FUNERAL DIRECTOR: *Mark A. White*

PLACE: *Wilbert Vault Co, Inc. - Roland Crematory-Marion*

LOCATION: *Marion, Iowa*

This is to certify that this is a true and correct reproduction of the original record as recorded in this office, issued under the authority of Chapter 144, Code of Iowa.
This copy is not valid unless prepared on engraved border displaying state seal and signature of the Registrar.

07/24/2015
DATE ISSUED

Terry E. Branstad
GOVERNOR, STATE OF IOWA
Kim Reynolds, Lt. Governor

DEPUTY STATE REGISTRAR

S004630961C

FORM #588-032BS (Rev 2014)

WARNING: IT IS ILLEGAL TO DUPLICATE THIS COPY

IOWA

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 490 of 555    Lincoln/Lee 578

2nd Contingent Beneficiary ~~Last Name~~

| LAST NAME | First | MI | Relationship | SSN |
|-----------|-------|----|--------------| ----|
| Lee, Jr. | John | E | SON | |

PAGE 6/11 * RCVD AT 8/3/2015 2:59:19 PM [Central Daylight Time] * SVR:NE1PWFAX101/2 * DNIS:1047 * CSID:260 347 1987 * DURATION (mm-ss):05-10

# Ashley
# Industrial
# Molding, Inc. *"AIM for Excellence"*

104 Progressive Drive W
Kendallville, IN 46755
Phone: 260-349-1982 ext. 427
Fax: 260-349-1987

# *Fax*

**TO:   Lincoln Financial Group**
 **LifeClaims@lfg.com**

**Attn:**   **Carla Larimore**

**FROM:**   **Janelle Smith**

**FAX#:  (800)462-4660   Pages:   10**

**RE:    Life Insurance Claim-John Lee  Claim #1072315-1127380**

**Date: 08/03/2015**

## COMMENTS:

Please review the following information for Claim # 1072315-1127380

Please contact me with any questions at (260) 587-9155 ext. 427

Thank you,

Janelle Smith

Case 6:18-cv-02063-CJW-MAR     Document 26-4     Filed 02/13/19     Page 492 of 555    Lincoln/Lee 580

 **Lincoln**
**Financial Group®**

July 30, 2015



The Lincoln National Life
Insurance Company
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

ASHLEY INDUSTRIAL MOLDING INC
KAREN MAXWELL
310 SOUTH WABASH
ASHLEY IN 46705

RE:    Life and Accidental Death Claim – INCOMPLETE CLAIM
        Claimant:          John E Lee
        Policy Holder:     Ashley Industrial Moldings Inc
        Policy Number:     000400001000-12077
                           000010132080-00000
        Claim Number:      1072315-1127380

Dear Karen Maxwell:

We have received an incomplete Life and Accidental Death claim for John E Lee.  We
are sorry to hear of your loss and express our condolences. In order to continue the
review of this claim, we need the following information:

- Copy of the Certified Death Certificate including final cause and manner of death
- Copy of the last beneficiary designation form completed by John Lee

Please submit the requested information by August 10, 2015. If it is not submitted by
that date we will close the claim. However, we will reopen and continue the claim
review upon receipt of the above information. To expedite the claim processing, please
feel free to fax this information to our office at 1-800-462-4660 or email
LifeClaims@lfg.com.



©2015 Lincoln National Corporation

www.LincolnFinancial.com

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

If you should have any questions regarding this matter, please contact our office at 1-800-423-2765.

Sincerely,


Carla Larimore
**Claims Examiner II, Claims**
The Lincoln National Life Insurance Company



PAGE 3/11 * RCVD AT 8/3/2015 2:59:19 PM [Central Daylight Time] * SVR:NE1PWFAX101/2 * DNIS:1047 * CSID:260 347 1987 * DURATION (mm-ss):05-10

# The Lincoln National Life Insurance Company
A Stock Company    Home Office Location: Fort Wayne, Indiana
Group Insurance Service Office: P.O. Box 2616, Omaha, NE 68103-2616
Phone: (800) 423-2765 Fax: (877) 573-6177

## ENROLLMENT FORM FOR GROUP INSURANCE

| Please Use Ink or Type | GROUP ID: AIM3 | GROUP POLICY #: 10132080, 10132081, 400001000-12077 | | Billing Division or Location: Oelwein |
|---|---|---|---|---|

**A.  Employee Information (Complete for ALL Enrollments)**

| Employer Name/Company Name (Please Print) Ashley Industrial Moldings, Inc. | | County Fayette | Employer ZIP 50602 | State IA |
|---|---|---|---|---|

| Employee Last Name Lee | First Name John | Middle Initial E. | Social Security Number | Date of Birth |
|---|---|---|---|---|
| Spouse Last Name Lee | First Name Vanessa | Middle Initial G. | Social Security Number | Date of Birth |

| Street Address | | City | State | Zip |
|---|---|---|---|---|

| Gender: ☒Male ☐Female | Marital Status: ☒Married ☐Single | Home Phone | Work Phone |
|---|---|---|---|

**Completed By Employer**

| Average Hours Worked Per Week: 40 | Occupation: Supervisor |
|---|---|

| Earnings: ☐ Hourly  ☐ Monthly  ☐ Weekly  ☒ Yearly  $ 40,000 | Date of Full-Time Employment: 11-29-10 | Rehire Date: |
|---|---|---|

**B.  Product Selection (Complete for ALL Enrollments)**

Basic Coverage  NOTE: Please mark the box or boxes for each coverage you are applying for.
All coverage amounts are subject to the limitations and exclusions as stated in the policy.

| Class | Effective Date | Type of Coverage | | Amount of Coverage | Total Premium |
|---|---|---|---|---|---|
| Sal | 3-1-11 | Basic Group Life/AD&D | ☒Yes ☐No | $ | Employer Paid |
| Sal | 3-1-11 | Long Term Disability | ☒Yes ☐No | $ | Employer Paid |

Voluntary Coverage  NOTE: Please mark the box or boxes for each coverage you are applying for.
All coverage amounts are subject to the limitations and exclusions as stated in the policy.

| TYPE OF COVERAGE | | | AMOUNT OF COVERAGE | | TOTAL PREMIUM |
|---|---|---|---|---|---|
| Voluntary Employee Life/AD&D Insurance | ☒Yes | ☐No | $ 20,000 | | $ 4.22 |
| Voluntary Spouse Life/AD&D Insurance | ☒Yes | ☐No | $ 10,000 | | $ 2.11 |
| Voluntary Dependent Child Benefit | ☐Yes | ☐No | ☐ varies | | $ |

Has Employee or Spouse used any type of tobacco in the past 12 months?   Employee: ☒Yes ☐No      Spouse: ☐Yes ☒No

**C.  Beneficiary Information (Complete ONLY for Life or AD&D Enrollments)**

| Primary Beneficiary's Last Name Lee | First Vanessa | MI G | Relationship of Beneficiary WIFE | Social Security Number |
|---|---|---|---|---|
| Street Address | | | City | State | Zip |

| Contingent Beneficiary's Last Name Lee | First RANDEE | MI T | Relationship of Beneficiary Daughter | Social Security Number |
|---|---|---|---|---|
| Street Address | | | City | State | Zip |

Note: A Contingent Beneficiary will receive benefits only if the Primary Beneficiary does not survive you.  If you wish to designate more than one Primary or Contingent Beneficiary, please attach a separate sheet of paper.

GLAD 4 · 11/00                                                                                                    Rev. 04/07 IN

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 495 of 555    Lincoln/Lee 583

**E. Request for Coverages**

This coverage has been offered to me and after careful consideration of the benefits, I have decided to:

☒ **REQUEST COVERAGE** for which I am or may become eligible under the group policies issued by The Lincoln National Life Insurance Company. I hereby apply for group insurance, for which I am eligible or may become eligible. If contributions are required, I authorize my employer to deduct premiums from my salary.

☐ **NOT ENROLL myself in the Program.** I understand that if I apply for coverage at a later date, and if a physical examination or further medical information is required, it will be at my own expense.

☐ **NOT ENROLL my dependents in the Program.** I understand that if I apply for coverage for my dependents at a later date, and if a physical examination or further medical information is required, it will be at my own expense.

**NOTICE:  A PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD AN INSURER FILES A STATEMENT OF CLAIM CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION COMMITS A FELONY.**

The insurance requested on this enrollment form will not be effective until approved by the Group Insurance Service Office of The Lincoln National Life Insurance Company, and the initial premium is paid to The Lincoln National Life Insurance Company. A delayed effective date will apply if the employee is not actively at work, or a dependent is in a period of limited activity on the date insurance would otherwise take effect.

Employee Full Name: _John C. Lee_          Employee Signature: _John E. Lee_  Date: _2-22-11_

. GLAD 4 11/00

Case 6:18-cv-02063-CJW-MAR     Document 26-4     Filed 02/13/19     Page 496 of 555   Lincoln/Lee 584

2nd Contingent Beneficiary ~~Last Name~~

LAST NAME                    First        MI      Relationship    SSN

Lee, Jr.                     John         E       SON

PAGE 6/11 * RCVD AT 8/3/2015 2:59:19 PM [Central Daylight Time] * SVR:NE1PWFAX101/2 * DNIS:1047 * CSID:260 347 1987 * DURATION (mm-ss):05-10

Lincoln/Lee 585

## CERTIFICATION OF VITAL RECORD

### STATE OF IOWA
IOWA DEPARTMENT OF PUBLIC HEALTH
# CERTIFICATE OF DEATH

**114-2015-016014**

#### DECEDENT INFORMATION

BIRTH NUMBER: *Not Available*

NAME: *John Earl Lee*

DATE FILED: *07/23/2015*

SSN:

PLACE OF BIRTH: Iowa                    SEX: *Male*
ARMED FORCES: *Yes*                    DATE OF BIRTH/AGE: *46 Years*

##### NAMES (PRIOR TO ANY MARRIAGE):

DECEDENT LAST: *Lee*                    CITIZENSHIP: *United States*
FATHER'S NAME: *Richard Wayne Lee*        MARITAL STATUS: *Married*
MOTHER'S NAME: *Lavonne Eleanor Jennings*    SURVIVING SPOUSE: *Vanessa Gene Yearous*
RESIDENTIAL ADDRESS:                    RESIDENCE COUNTY: *Buchanan*
                                        COUNTY OF DEATH: *Johnson*

INFORMANT NAME: *Vanessa G Lee*            INFORMANT ADDRESS:
INFORMANT RELATIONSHIP: *Spouse*

DATE/TIME OF DEATH: *07/19/2015 (Actual)*    PLACE OF DEATH: *Inpatient*
                    *09:57 AM (Actual)*      FACILITY/ADDRESS: *University of Iowa Hospitals & Clinics*
                                                              *Iowa City, Iowa 52242*

M.E. CONTACTED: *Yes*

#### MEDICAL CAUSE OF DEATH INFORMATION                    INTERVAL    UNITS

IMMEDIATE CAUSE OF DEATH: *Blunt Force Injuries Of The Head*                            *Days*
DUE TO OR AS A CONSEQUENCE OF:
DUE TO OR AS A CONSEQUENCE OF:
UNDERLYING CAUSE, IF ANY:
OTHER SIGNIFICANT CONDITIONS:

MANNER OF DEATH: *Accident*                    TOBACCO CONTRIBUTED TO DEATH: *No*
AUTOPSY PERFORMED/FINDINGS: *No*            ME CASE #: *15-52-359*
DATE/TIME OF INJURY: *07/11/2015 08:00 PM*    INJURY AT WORK: *No*
PLACE OF INJURY: *Private property*            TRANSPORTATION INJURY: *Yes*
LOCATION OF INJURY: *1664 198th Street*
                    *Independence, Iowa 50644*
DESCRIPTION OF INJURY: *Atv Crash*

CERTIFIER: *Dennis Firchau*                    CERTIFIER ADDRESS: *913 South Dubuque*
DATE CERTIFIED: *07/23/2015*                                      *Iowa City, Iowa 52240*

#### DISPOSITION

FUNERAL HOME: *White Funeral Home-Independence*
              *Independence, Iowa 50644*        FUNERAL DIRECTOR: *Mark A. White*
METHOD: *Cremation*                            PLACE: *Wilbert Vault Co, Inc. - Roland Crematory-Marion*
                                              LOCATION: *Marion, Iowa*

This is to certify that this is a true and correct reproduction of the original record as recorded
in this office, issued under the authority of Chapter 144, Code of Iowa.
This copy is not valid unless prepared on engraved border displaying state seal and signature of the Registrar.

07/24/2015                    Terry E. Branstad
DATE ISSUED                GOVERNOR, STATE OF IOWA
                            Kim Reynolds, Lt. Governor              DEPUTY STATE REGISTRAR

S0046309610

FORM #588-032BS (Rev 2014)        **WARNING: IT IS ILLEGAL TO DUPLICATE THIS COPY**

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 498 of 555    Lincoln/Lee 586


Lincoln
Financial Group

The Lincoln National Life Insurance Company, PO Box 2649, Omaha, NE 68103-2649
toll free (800) 423-2765  Fax (800) 462-4660
www.LincolnFinancial.com
LifeClaims@lfg.com - For claims submission
Claims@lfg.com - For direct claim status inquiries and questions on existing claims

## BENEFICIARY'S STATEMENT:

Please type or print legibly—name and address as stated will appear on checks

Name _Vanessa     G     Lee_    Sex:  ☐ Male  ☒ Female
      First          Middle Initial    Last

Beneficiary's Social Security Number or Taxpayer Identification Number _____

Date of Birth (MM/DD/YY) _11-15-64_    Home Phone _Cell_____    Daytime Phone _____

Address ___

City _____

E-mail Address ___ _D_

Name of Deceased __John Eleed__    Relationship to Deceased _husben d_

If the beneficiary is one of the following: ☐ Minor  ☐ Estate  ☐ Incompetent  ☐ Organization  ☐ Trust

Please provide contact name and phone number of the personal or legal representative of that beneficiary:

_____

**PAYMENT OPTIONS: Please select one of the following three options (One Single Check, Direct Deposit, or SecureLine Interest-Bearing Checking Account) and please also make sure to sign and date on page 3.**

☐ One Single Check - This is the default payment option if no option is selected.

☒ Direct Deposit - Complete the following information to allow the benefit amount to be directed deposited to your account.

Bank Name _Bank Iowa_

Address _230 First E_

Routing # ___    Bank Account # ___

Type of Account (Select One): ☒ Checking    ☐ Savings

I (we) authorize and request The Lincoln National Life Insurance Company, and its subsidiaries, to make payment of any amounts owing to me (either of us) by initiating credit entries or adjustment entries to my account indicated above in the bank named above, hereinafter called BANK, and I (we) authorize and request BANK to accept any credit entries or adjustment entries initiated by Lincoln Financial Group to such account without responsibility for the correctness thereof. It is understood that this agreement may be terminated by me (either of us) at any time by written notification to The Lincoln National Life Insurance Company or BANK. Any such notification to The Lincoln National Life Insurance Company shall be effective only with respect to entries initiated by The Lincoln National Life Insurance Company after receipt of such notification and a reasonable opportunity to act on it. I understand that The Lincoln National Life Insurance Company is required to send a notification and a reasonable opportunity to act on it. I understand that The Lincoln National Life Insurance Company is required to send a notification to BANK before the first transaction. Any such notification to BANK shall be effective only with respect to entries credited to my (our) account by BANK after receipt of such notification and a reasonable time to act on it. It is also understood that this agreement shall not modify or alter the other provisions of the policy(ies) or supplementary contract which provides for any payment due me.

Please sign on Page 3.

\* If the Insured Person previously designated a payment option available under the policy, we are required to disburse funds pursuant to that designation.

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.    Page 2 of 8
GLC-01253   CLMFRM    5/14

PAGE 8/11 * RCVD AT 8/3/2015 2:59:19 PM [Central Daylight Time] * SVR:NE1PWFAX101/2 * DNIS:1047 * CSID:260 347 1987 * DURATION (mm-ss):05-10

☐ **SecureLine Interest-Bearing Checking Account (Not available in New York).**

SecureLine is a service offered to help you manage insurance proceeds. With SecureLine, an account is established from the proceeds payable on a policy administered by a Lincoln Financial Group® company (Lincoln). Lincoln's contractual obligation to pay those proceeds is satisfied by depositing the proceeds into your account. The Northern Trust Bank (Northern Trust) administers your account on Lincoln's behalf and the funds supporting your account are held within Lincoln's general account. Once your SecureLine account is opened, you will receive a personalized checkbook. If you decide you want the entire proceeds immediately, you just need to write one check for the entire balance. Otherwise you can use this account for paying expenses as they occur – while earning interest on your money. You can write as many checks as you wish. Each check must be for at least $250 and the total of all checks written may not exceed your balance.

- Interest Rates – Your SecureLine account starts earning interest the day the account is opened. Interest is compounded daily and credited to your account on the last day of each month. The minimum rate credited is equal to the national average for interest-bearing checking accounts as published daily by Bloomberg, plus 1%. The Company may update that minimum rate at our discretion. The interest will be updated monthly. You can find the current interest rate that will becredited to your account at www.lfg.com by clicking on the Quick Link "File a Claim". You begin to earn interest the day the account is opened and continue to earn interest until all the funds are withdrawn. The interest rate credited to your SecureLine account may be more or less than the rate earned on funds held in Lincoln's general account. Consider comparing this interest rate to your bank account interest rate or consult your financial professional to compare interest rates on comparable bank or mutual fund accounts. Interest earned on your account balance may be taxable; IRS form 1099-INT will be sent in January of each year to report taxable income. You should consult your tax advisor for more information.
- Protection Of Deposits – Your money in your SecureLine account is protected because it is held in Lincoln's general account and is guaranteed by the full faith and credit of the Lincoln Financial Group® company that established your account. Because your funds are not held in a federally-regulated bank, your funds are not protected by the Federal Deposit Insurance Corporate (FDIC). However, in the unlikely case of insolvency of Lincoln, your funds are protected by your state's insurance guaranty system. Contact the National Organization of Life and Health Guaranty Associations (http://nolhga.com; 703-481-5206) to learn more about what limits might exist related to state insurance guaranty protection.
- Monthly Statements – Each month you will receive a statement showing your current balance, withdrawals, interest credited and any other activity. Cancelled checks are not returned with your statement.
- Fees or Administrative Charges – There are no special fees for checks and no fees for monthly checking account service. You will be charged a fee of $15 if you stop a payment and $10 if you present a check for payment without sufficient funds. Additional checks may be ordered at no cost. Just contact a Customer Service Representative at Northern Trust at 1-800-343-2551.
- Minimum Balance – Your SecureLine account will remain open until your balance drops below $1000, at which time your account will be automatically closed and a check for the remaining funds plus interest will be mailed to you.
- Settlement Options - The Lincoln policy may provide you with other benefit settlement options. You may choose to withdraw the balance of your account and place it in another payment option offered by Lincoln. Contact a Customer Service Representative at 800-423-2765 for more information.
- Inactive Accounts - If there is no activity on your account and we have not heard from you for a prolonged period (2-7 years depending on your State's unclaimed property act), Lincoln will write you to verify your continued interest in the account and to confirm your contact information. If you do not respond to that correspondence, the funds in your account will be reported to your State as unclaimed property in accordance with your State's unclaimed property act.
- Louisiana Department of Insurance, PO Box 94214, Baton Rouge, LA 70804, (225) 342-1226

**FOR FURTHER INFORMATION, PLEASE CONTACT YOUR STATE DEPARTMENT OF INSURANCE.**

**If you are electing a Secureline Interest-Bearing Account, please complete the Beneficiary Designation section below. If there is a SecureLine Interest-Bearing Account balance remaining at the time of your death, it will be paid to the beneficiary(ies) you designate below.**

**PRIMARY BENEFICIARY(IES)**

| Primary Beneficiary's Name and Address | Social Security Number | Relationship to You | Date of Birth | Percentage: Must equal 100% |
|---|---|---|---|---|
| Name:<br>Address: | | | | |
| Name:<br>Address: | | | | |

I understand that The Lincoln National Life Insurance Company furnishes this form without waiving any defense the Company may have or admitting that any insurance is in force.

I have completed and attached the Authorization for Release of Information. A photocopy of this authorization shall be as valid as the original.

I certify, under penalty of perjury, that the Social Security Number or other Taxpayer Identification Number information listed above is correct. I understand that my signature may be used for signature verification for my SecureLine Account and other purposes.

Signature_____  Date _____
(Sign as you would a check as signature may be used for check verification)

GLC-01253    CLMFRM

PAGE 9/11 * RCVD AT 8/3/2015 2:59:19 PM [Central Daylight Time] * SVR:NE1PWFAX101/2 * DNIS:1047 * CSID:260 347 1987 * DURATION (mm-ss):05-10

# AUTHORIZATION FOR RELEASE OF INFORMATION

1.  **I (the undersigned) authorize** any physician, medical professional, pharmacist or other provider of health care services, hospital, clinic, other medical or medically related facility; coroner's office; insurance or reinsurance company; government agency; department of labor; law enforcement or public safety department; group policyholder; employer; or policy or benefit plan administrator to release information from the records of:

    Claimant/Insured Name:  ___*Lee*___       ___*Vanessa*___       ___*Gene*___
                            (Last)                  (First)                 (Middle)

    Date of Birth:  ___*11-15-64*___       Social Security Number: _____

2.  Claimant/Insured Information to be released:
    -   data or records regarding medical history, treatment, prescriptions, consultations, autopsy [including medical and psychological reports, records, charts, notes (excluding psychotherapy notes), x-rays, films or correspondence, and any medical condition(s)];
    -   any information regarding insurance coverage; and
    -   accident report or any official investigative reports (such as police, fire, FAA, OSHA, or toxicology report).

3.  Information to be released to:       The Lincoln National Life Insurance Company
                                         PO Box 2649
                                         Omaha, NE 68103-2649

4.  I understand the information obtained by use of this Authorization will be used by The Lincoln National Life Insurance Company ("Company") to evaluate my claim for death benefits. The Company will only release such information:
    -   to its reinsurer, or other persons or organizations performing business or legal services in connection with my claim(s); or
    -   as otherwise may be required by law or as I may further authorize.
    I further understand that refusal to sign this Authorization may result in the denial of benefits.

5.  I understand the information used or disclosed may be subject to re-disclosure by the recipient and may no longer be protected by federal law. For Colorado claims, the disclosed information may **not** be redisclosed or reused by the recipient under Colorado law.

6.  I understand that I may revoke this Authorization in writing at any time, except to the extent:
    1)  the Company has taken action in reliance on this Authorization; or
    2)  the Company is using this Authorization in connection with a contestable claim.
    If written revocation is not received, this Authorization will be considered valid for a period of time not to exceed 24 months from the date of my signature below. To initiate revocation of this Authorization, direct all correspondence to the Company at the above address.

7.  A photocopy of this Authorization is to be considered as valid as the original.

8.  I understand I am entitled to receive a copy of this Authorization.

SIGNATURE: ___*Vanessa Lee*___                          DATE: ___*6/30/15*___
Claimant/legal Representative (Nearest relative, legal guardian, or appointed representative to sign only if claimant/insured is a minor, legally incompetent, or deceased.) Power of attorney or guardianship must be attached.

PRINT NAME: ___*Vanessa Lee*___

Relationship to Claimant/Insured of personal/legal representative signing for Claimant/Insured: _____

ADDRESS: ___                                            PHONE NO: _____
         (Street)

         ___
         (City)

GLC-01253   CLMFRM                                                       Page 4 of 8
                                                          Death Claim           5/14

## ACCIDENTAL DEATH BENEFIT INFORMATION

A beneficiary or the personal/legal representative of the deceased will only complete this page when applying for Accidental Death Benefits.

1. Group Name: _Ashley Industrie Molding_

2. Name of Insured: _John Lee_

3. Name of Deceased (If different from above): _____ Relationship to Insured: _husband_

4. On what date did the Accident occur? (MM/DD/YY) _July 11 2015_

   Where did the Accident Occur? (Address, City, State): _Otterville Camp Site_

   Describe in detail how the Accident occurred:

5. Did the Deceased have any disease or physical defect?   ☐ Yes  ☒ No

   If Yes, please describe in detail:

6. Was a police or other investigative report completed?   ☐ Yes  ☒ No

   If Yes, please provide a copy of the official investigative report (i.e. police, accident, OSHA, etc) and/or provide contact information:

7. List name/address/phone number of all physicians who treated the deceased in connection with the accident:

   _University of Iowa_

8. List name/address/phone number of all hospitals who treated the deceased in connection with the accident:

9. Was an Autopsy performed?  ☐ Yes  ☒ No

   If Yes, please submit copy of the Autopsy report and/or provide contact information:

Person completing form: _Vanessa Lee_                    Phone: _____

Address: _

City: _____                              ____ State: __

Relationship to Deceased: _husband_

Signature of Person Completing this form: _Vanessa Lee_            Date: _6/30/15_

GLC-01253   CLMFRM

Page 5 of 8
5/14

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 502 of 555    Lincoln/Lee 590



The Lincoln National Life Insurance Company, PO Box 2649, Omaha, NE 68103-2649
toll free (800) 423-2765  Fax (800) 462-4660
www.LincolnFinancial.com
LifeClaims@lfg.com - For claims submission
Claims@lfg.com - For direct claim status inquiries and questions on existing claims

## BENEFICIARY'S STATEMENT:

Please type or print legibly—name and address as stated will appear on checks

Name __*Vanessa G Lee*__
   First    Middle Initial    Last

Sex:  ☐ Male  ☒ Female

Beneficiary's Social Security Number or Taxpayer Identification Number _____

Date of Birth (MM/DD/YY) *11-15-64*   Cell: *219.222.0167*   Daytime Phone _____   work

Address _____

City _____   State ____   Zip _____

E-mail Address _____

Name of Deceased __*John Eleel*__   Relationship to Deceased *husband*

If the beneficiary is one of the following: ☐ Minor  ☐ Estate  ☐ Incompetent  ☐ Organization  ☐ Trust

Please provide contact name and phone number of the personal or legal representative of that beneficiary:

**PAYMENT OPTIONS: Please select one of the following three options (One Single Check, Direct Deposit, or SecureLine Interest-Bearing Checking Account) and please also make sure to sign and date on page 3.**

☐ One Single Check - This is the default payment option if no option is selected.

☒ **Direct Deposit - Complete the following information to allow the benefit amount to be directed deposited to your account.**

Bank Name __*Bank Iowa*__

Address __*230 First E*__

Routing # _____   Bank Account # _____

Type of Account (Select One):  ☒ Checking   ☐ Savings

I (we) authorize and request The Lincoln National Life Insurance Company, and its subsidiaries, to make payment of any amounts owing to me (either of us) by initiating credit entries or adjustment entries to my account indicated above in the bank named above, hereinafter called BANK, and I (we) authorize and request BANK to accept any credit entries or adjustment entries initiated by Lincoln Financial Group to such account without responsibility for the correctness thereof. It is understood that this agreement may be terminated by me (either of us) at any time by written notification to The Lincoln National Life Insurance Company or BANK. Any such notification to The Lincoln National Life Insurance Company shall be effective only with respect to entries initiated by The Lincoln National Life Insurance Company after receipt of such notification and a reasonable opportunity to act on it. I understand that The Lincoln National Life Insurance Company is required to send a notification and a reasonable opportunity to act on it. I understand that The Lincoln National Life Insurance Company is required to send a notification to BANK before the first transaction. Any such notification to BANK shall be effective only with respect to entries credited to my (our) account by BANK after receipt of such notification and a reasonable time to act on it. It is also understood that this agreement shall not modify or alter the other provisions of the policy(ies) or supplementary contract which provides for any payment due me.

**Please sign on Page 3.**

* If the Insured Person previously designated a payment option available under the policy, we are required to disburse funds pursuant to that designation.
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
GLC-01263    CLMFRM

Page 2 of 8
5/14

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 503 of 555    Lincoln/Lee 591

Lincoln/Lee 592

☐ **SecureLine Interest-Bearing Checking Account (Not available in New York).**

SecureLine is a service offered to help you manage insurance proceeds. With SecureLine, an account is established from the proceeds payable on a policy administered by a Lincoln Financial Group® company (Lincoln). Lincoln's contractual obligation to pay those proceeds is satisfied by depositing the proceeds into your account. The Northern Trust Bank (Northern Trust) administers your account on Lincoln's behalf and the funds supporting your account are held within Lincoln's general account. Once your SecureLine account is opened, you will receive a personalized checkbook. If you decide you want the entire proceeds immediately, you just need to write one check for the entire balance. Otherwise you can use this account for paying expenses as they occur – while earning interest on your money. You can write as many checks as you wish. Each check must be for at least $250 and the total of all checks written may not exceed your balance.

- Interest Rates – Your SecureLine account starts earning interest the day the account is opened. Interest is compounded daily and credited to your account on the last day of each month. The minimum rate credited is equal to the national average for interest-bearing checking accounts as published daily by Bloomberg, plus 1%. The Company may update that minimum rate at our discretion. The interest will be updated monthly. You can find the current interest rate that will becredited to your account at www.lfg.com by clicking on the Quick Link "File a Claim". You begin to earn interest the day the account is opened and continue to earn interest until all the funds are withdrawn. The interest rate credited to your SecureLine account may be more or less than the rate earned on funds held in Lincoln's general account. Consider comparing this interest rate to your bank account interest rate or consult your financial professional to compare interest rates on comparable bank or mutual fund accounts. Interest earned on your account balance may be taxable; IRS form 1099-INT will be sent in January of each year to report taxable income. You should consult your tax advisor for more information.

- Protection Of Deposits – Your money in your SecureLine account is protected because it is held in Lincoln's general account and is guaranteed by the full faith and credit of the Lincoln Financial Group® company that established your account. Because your funds are not held in a federally-regulated bank, your funds are not protected by the Federal Deposit Insurance Corporate (FDIC). However, in the unlikely case of insolvency of Lincoln, your funds are protected by your state's insurance guaranty system. Contact the National Organization of Life and Health Guaranty Associations (http://nolhga.com; 703-481-5206) to learn more about what limits might exist related to state insurance guaranty protection.

- Monthly Statements – Each month you will receive a statement showing your current balance, withdrawals, interest credited and any other activity. Cancelled checks are not returned with your statement.

- Fees or Administrative Charges – There are no special fees for checks and no fees for monthly checking account service. You will be charged a fee of $15 if you stop a payment and $10 if you present a check for payment without sufficient funds. Additional checks may be ordered at no cost. Just contact a Customer Service Representative at Northern Trust at 1-800-343-2551.

- Minimum Balance – Your SecureLine account will remain open until your balance drops below $1000, at which time your account will be automatically closed and a check for the remaining funds plus interest will be mailed to you.

- Settlement Options - The Lincoln policy may provide you with other benefit settlement options. You may choose to withdraw the balance of your account and place it in another payment option offered by Lincoln. Contact a Customer Service Representative at 800-423-2765 for more information.

- Inactive Accounts - If there is no activity on your account and we have not heard from you for a prolonged period (2-7 years depending on your State's unclaimed property act), Lincoln will write you to verify your continued interest in the account and to confirm your contact information. If you do not respond to that correspondence, the funds in your account will be reported to your State as unclaimed property in accordance with your State's unclaimed property act.

- Louisiana Department of Insurance, PO Box 94214, Baton Rouge, LA 70804, (225) 342-1226

## FOR FURTHER INFORMATION, PLEASE CONTACT YOUR STATE DEPARTMENT OF INSURANCE.

If you are electing a Secureline Interest-Bearing Account, please complete the Beneficiary Designation section below. If there is a SecureLine Interest-Bearing Account balance remaining at the time of your death, it will be paid to the beneficiary(ies) you designate below.

### PRIMARY BENEFICIARY(IES)

| Primary Beneficiary's Name and Address | Social Security Number | Relationship to You | Date of Birth | Percentage: Must equal 100% |
|---|---|---|---|---|
| Name: | | | | |
| Address: | | | | |
| Name: | | | | |
| Address: | | | | |

I understand that The Lincoln National Life Insurance Company furnishes this form without waiving any defense the Company may have or admitting that any insurance is in force.

I have completed and attached the Authorization for Release of Information. A photocopy of this authorization shall be as valid as the original.

I certify, under penalty of perjury, that the Social Security Number or other Taxpayer Identification Number information listed above is correct. I understand that my signature may be used for signature verification for my SecureLine Account and other purposes.

**Signature** _____ **Date** _____

(Sign as you would a check as signature may be used for check verification)

GLC-01253    CLMFRM

Page 3 of 8
5/14

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 505 of 555    Lincoln/Lee 593

Lincoln/Lee 594

# AUTHORIZATION FOR RELEASE OF INFORMATION

1. **I (the undersigned) authorize** any physician, medical professional, pharmacist or other provider of health care services, hospital, clinic, other medical or medically related facility; coroner's office; insurance or reinsurance company; government agency; department of labor; law enforcement or public safety department; group policyholder; employer; or policy or benefit plan administrator to release information from the records of:

Claimant/Insured Name: _Lee_ _Vanessa_ _Gene_
                              (Last)                       (First)            (Middle)

Date of Birth: _____    Social Security Number: ___

2. Claimant/Insured Information to be released:
   - data or records regarding medical history, treatment, prescriptions, consultations, autopsy [including medical and psychological reports, records, charts, notes (excluding psychotherapy notes), x-rays, films or correspondence, and any medical condition(s)];
   - any information regarding insurance coverage; and
   - accident report or any official investigative reports (such as police, fire, FAA, OSHA, or toxicology report).

3. Information to be released to:    The Lincoln National Life Insurance Company
                                           PO Box 2649
                                           Omaha, NE 68103-2649

4. I understand the information obtained by use of this Authorization will be used by The Lincoln National Life Insurance Company ("Company") to evaluate my claim for death benefits. The Company will only release such information:
   - to its reinsurer, or other persons or organizations performing business or legal services in connection with my claim(s); or
   - as otherwise may be required by law or as I may further authorize.
   I further understand that refusal to sign this Authorization may result in the denial of benefits.

5. I understand the information used or disclosed may be subject to re-disclosure by the recipient and may no longer be protected by federal law. For Colorado claims, the disclosed information may <u>not</u> be redisclosed or reused by the recipient under Colorado law.

6. I understand that I may revoke this Authorization in writing at any time, except to the extent:
   1) the Company has taken action in reliance on this Authorization; or
   2) the Company is using this Authorization in connection with a contestable claim.
   If written revocation is not received, this Authorization will be considered valid for a period of time not to exceed 24 months from the date of my signature below. To initiate revocation of this Authorization, direct all correspondence to the Company at the above address.

7. A photocopy of this Authorization is to be considered as valid as the original.

8. I understand I am entitled to receive a copy of this Authorization.

SIGNATURE: _Vanessa Lee_            DATE: _6/30/15_
Claimant/legal Representative (Nearest relative, legal guardian, or appointed representative to sign only if claimant/insured is a minor, legally incompetent, or deceased.) Power of attorney or guardianship must be attached.

PRINT NAME: _Vanessa Lee_

Relationship to Claimant/Insured of personal/legal representative signing for Claimant/Insured: _____

ADDRESS: ___
    (Stree                                     PHONE NO: _____

    __
    (City)

Case 6:18-cv-02063-CJW-MAR   Document 26-4   Filed 02/13/19   Page 507 of 555   Lincoln/Lee 595

Lincoln/Lee 596

## ACCIDENTAL DEATH BENEFIT INFORMATION

A beneficiary or the personal/legal representative of the deceased will only complete this page when applying for Accidental Death Benefits.

1. Group Name: _Ashley Inewslie Molding_

2. Name of Insured: _John Lee_

3. Name of Deceased (If different from above): _____ Relationship to Insured: _husband_

4. On what date did the Accident occur? (MM/DD/YY) _July 11 2015_

   Where did the Accident Occur? (Address, City, State): _Otterville Camp Site_

   Describe in detail how the Accident occurred:

5. Did the Deceased have any disease or physical defect?   ☐ Yes   ☒ No

   If Yes, please describe in detail:

6. Was a police or other investigative report completed?   ☐ Yes   ☒ No

   If Yes, please provide a copy of the official investigative report (i.e. police, accident, OSHA, etc) and/or provide contact information:

7. List name/address/phone number of all physicians who treated the deceased in connection with the accident:

   _University of Iowa_

8. List name/address/phone number of all hospitals who treated the deceased in connection with the accident:

9. Was an Autopsy performed? ☐ Yes ☒ No

   If Yes, please submit copy of the Autopsy report and/or provide contact information:

Person completing form: _Vanissa Lee_                          Phone: _____

Address: __

City: ____                                           State: _____   Zip: _____

Relationship to Deceased: _husband_

Signature of Person Completing this form: _Vanessa Lee_                  Date: _6/30/15_

Lincoln/Lee 598



# STATE OF IOWA
## IOWA DEPARTMENT OF PUBLIC HEALTH
# CERTIFICATE OF DEATH

**114-2015-016014**

BIRTH NUMBER. *Not Available*

### DECEDENT INFORMATION

NAME: *John Earl Lee*

DATE FILED: *07/23/2015*

SSN:

PLACE OF BIRTH: Iowa

SEX: *Male*

ARMED FORCES: *Yes*

DATE OF BIRTH/AGE: *46 Years*

### NAMES (PRIOR TO ANY MARRIAGE):

DECEDENT LAST: *Lee*

CITIZENSHIP: *United States*

FATHER'S NAME: *Richard Wayne Lee*

MARITAL STATUS: *Married*

MOTHER'S NAME: *Lavonne Eleanor Jennings*

SURVIVING SPOUSE: *Vanessa Gene Yearous*

RESIDENTIAL ADDRESS:

RESIDENCE COUNTY: *Buchanan*

COUNTY OF DEATH: *Johnson*

INFORMANT NAME: *Vanessa G Lee*

INFORMANT ADDRESS:

INFORMANT RELATIONSHIP: *Spouse*

DATE/TIME OF DEATH: *07/19/2015 (Actual)* *09:57 AM (Actual)*

PLACE OF DEATH: *Inpatient*

FACILITY/ADDRESS: *University of Iowa Hospitals & Clinics Iowa City, Iowa 52242*

M.E. CONTACTED: *Yes*

### MEDICAL CAUSE OF DEATH INFORMATION

INTERVAL UNITS

IMMEDIATE CAUSE OF DEATH: *Blunt Force Injuries Of The Head*

*Days*

DUE TO OR AS A CONSEQUENCE OF:

DUE TO OR AS A CONSEQUENCE OF:

UNDERLYING CAUSE, IF ANY:

OTHER SIGNIFICANT CONDITIONS:

MANNER OF DEATH: *Accident*

TOBACCO CONTRIBUTED TO DEATH: *No*

AUTOPSY PERFORMED/FINDINGS: *No*

ME CASE #: *15-52-359*

DATE/TIME OF INJURY: *07/11/2015 08:00 PM*

INJURY AT WORK: *No*

PLACE OF INJURY: *Private property*

TRANSPORTATION INJURY: *Yes*

LOCATION OF INJURY: *1664 198th Street Independence, Iowa 50644*

DESCRIPTION OF INJURY: *Atv Crash*

CERTIFIER: *Dennis Firchau*

CERTIFIER ADDRESS: *913 South Dubuque Iowa City, Iowa 52240*

DATE CERTIFIED: *07/23/2015*

### DISPOSITION

FUNERAL HOME: *White Funeral Home-Independence Independence, Iowa 50644*

FUNERAL DIRECTOR: *Mark A. White*

METHOD: *Cremation*

PLACE: *Wilbert Vault Co, Inc. - Roland Crematory-Marion*

LOCATION: *Marion, Iowa*

This is to certify that this is a true and correct reproduction of the original record as recorded in this office, issued under the authority of Chapter 144, Code of Iowa. This copy is not valid unless prepared on engraved border displaying state seal and signature of the Registrar.

07/24/2015

DATE ISSUED

Terry E. Branstad

GOVERNOR, STATE OF IOWA

Kim Reynolds, Lt. Governor

DEPUTY STATE REGISTRAR

S0046309610

FORM #568-0328S (Rev 2014)

WARNING: IT IS ILLEGAL TO DUPLICATE THIS COPY

Lincoln/Lee 600



July 30, 2015

**The Lincoln National Life**
**Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

ASHLEY INDUSTRIAL MOLDING INC
KAREN MAXWELL
310 SOUTH WABASH
ASHLEY IN 46705


RE:     Life and Accidental Death Claim – INCOMPLETE CLAIM
         Claimant:          John E Lee
         Policy Holder:     Ashley Industrial Moldings Inc
         Policy Number:     000400001000-12077
                            000010132080-00000
         Claim Number:      1072315-1127380

Dear Karen Maxwell:


We have received an incomplete Life and Accidental Death claim for John E Lee.  We are sorry to hear of your loss and express our condolences. In order to continue the review of this claim, we need the following information:

- Copy of the Certified Death Certificate including final cause and manner of death
- Copy of the last beneficiary designation form completed by John Lee

Please submit the requested information by August 10, 2015. If it is not submitted by that date we will close the claim. However, we will reopen and continue the claim review upon receipt of the above information. To expedite the claim processing, please feel free to fax this information to our office at 1-800-462-4660 or email LifeClaims@lfg.com.

Packet: 294065

©2015 Lincoln National Corporation

www.LincolnFinancial.com

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

If you should have any questions regarding this matter, please contact our office at 1-800-423-2765.

Sincerely,


Carla Larimore
Claims Examiner II, Claims
The Lincoln National Life Insurance Company

Lincoln/Lee 602



The Lincoln National Life Insurance Company, PO Box 2649, Omaha, NE 68103-2649
toll free (800) 423-2765  Fax (800) 462-4660
www.LincolnFinancial.com
LifeClaims@lfg.com - For claims submission
Claims@lfg.com - For direct claim status inquiries and questions on existing claims

## BENEFICIARY'S STATEMENT:

Please type or print legibly—name and address as stated will appear on checks

Name _Vanessa_  _G_  _Lee_   Sex:  ☐ Male  ☒ Female
First          Middle Initial      Last

Beneficiary's Social Security Number or Taxpayer Identification Number __

Date of Birth (MM/DD/YY) _11 -15 - 64_   Home Phone: _Cell_   Daytime Phone: _____  _work_

Address ___

City ___   State _____  Zip _____

E-mail Addre _____  _m_

Name of Deceased _John Lee_   Relationship to Deceased _husband_

If the beneficiary is one of the following: ☐ Minor  ☐ Estate  ☐ Incompetent  ☐ Organization  ☐ Trust

Please provide contact name and phone number of the personal or legal representative of that beneficiary:

---

PAYMENT OPTIONS: Please select one of the following three options (One Single Check, Direct Deposit, or SecureLine Interest-Bearing Checking Account) and please also make sure to sign and date on page 3.

☐ One Single Check - This is the default payment option if no option is selected.

☒ Direct Deposit - Complete the following information to allow the benefit amount to be directed deposited to your account.

Bank Name _Bank Iowa_

Address _230 First E_

Routing # _____   Bank Account # _____

Type of Account (Select One):  ☒ Checking  ☐ Savings

I (we) authorize and request The Lincoln National Life Insurance Company, and its subsidiaries, to make payment of any amounts owing to me (either of us) by initiating credit entries or adjustment entries to my account indicated above in the bank named above, hereinafter called BANK, and I (we) authorize and request BANK to accept any credit entries or adjustment entries initiated by Lincoln Financial Group to such account without responsibility for the correctness thereof. It is understood that this agreement may be terminated by me (either of us) at any time by written notification to The Lincoln National Life Insurance Company or BANK. Any such notification to The Lincoln National Life Insurance Company shall be effective only with respect to entries initiated by The Lincoln National Life Insurance Company after receipt of such notification and a reasonable opportunity to act on it. I understand that The Lincoln National Life Insurance Company is required to send a notification and a reasonable opportunity to act on it. I understand that The Lincoln National Life Insurance Company is required to send a notification to BANK before the first transaction. Any such notification to BANK shall be effective only with respect to entries credited to my (our) account by BANK after receipt of such notification and a reasonable time to act on it. It is also understood that this agreement shall not modify or alter the other provisions of the policy(ies) or supplementary contract which provides for any payment due me.

**Please sign on Page 3.**

---

\* If the Insured Person previously designated a payment option available under the policy, we are required to disburse funds pursuant to that designation.
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
GLC-01253   CLMFRM   Page 2 of 8
5/14

Lincoln/Lee 604

☐ **SecureLine Interest-Bearing Checking Account (Not available in New York).**

SecureLine is a service offered to help you manage insurance proceeds. With SecureLine, an account is established from the proceeds payable on a policy administered by a Lincoln Financial Group® company (Lincoln). Lincoln's contractual obligation to pay those proceeds is satisfied by depositing the proceeds into your account. The Northern Trust Bank (Northern Trust) administers your account on Lincoln's behalf and the funds supporting your account are held within Lincoln's general account. Once your SecureLine account is opened, you will receive a personalized checkbook. If you decide you want the entire proceeds immediately, you just need to write one check for the entire balance. Otherwise you can use this account for paying expenses as they occur – while earning interest on your money. You can write as many checks as you wish. Each check must be for at least $250 and the total of all checks written may not exceed your balance.

- Interest Rates – Your SecureLine account starts earning interest the day the account is opened. Interest is compounded daily and credited to your account on the last day of each month. The minimum rate credited is equal to the national average for interest-bearing checking accounts as published daily by Bloomberg, plus 1%. The Company may update that minimum rate at our discretion. The interest will be updated monthly. You can find the current interest rate that will becredited to your account at www.lfg.com by clicking on the Quick Link "File a Claim". You begin to earn interest the day the account is opened and continue to earn interest until all the funds are withdrawn. The interest rate credited to your SecureLine account may be more or less than the rate earned on funds held in Lincoln's general account. Consider comparing this interest rate to your bank account interest rate or consult your financial professional to compare interest rates on comparable bank or mutual fund accounts. Interest earned on your account balance may be taxable; IRS form 1099-INT will be sent in January of each year to report taxable income. You should consult your tax advisor for more information.

- Protection Of Deposits – Your money in your SecureLine account is protected because it is held in Lincoln's general account and is guaranteed by the full faith and credit of the Lincoln Financial Group® company that established your account. Because your funds are not held in a federally-regulated bank, your funds are not protected by the Federal Deposit Insurance Corporate (FDIC). However, in the unlikely case of insolvency of Lincoln, your funds are protected by your state's insurance guaranty system. Contact the National Organization of Life and Health Guaranty Associations (http://nolhga.com; 703-481-5206) to learn more about what limits might exist related to state insurance guaranty protection.

- Monthly Statements – Each month you will receive a statement showing your current balance, withdrawals, interest credited and any other activity. Cancelled checks are not returned with your statement.

- Fees or Administrative Charges – There are no special fees for checks and no fees for monthly checking account service. You will be charged a fee of $15 if you stop a payment and $10 if you present a check for payment without sufficient funds. Additional checks may be ordered at no cost. Just contact a Customer Service Representative at Northern Trust at 1-800-343-2551.

- Minimum Balance – Your SecureLine account will remain open until your balance drops below $1000, at which time your account will be automatically closed and a check for the remaining funds plus interest will be mailed to you.

- Settlement Options - The Lincoln policy may provide you with other benefit settlement options. You may choose to withdraw the balance of your account and place it in another payment option offered by Lincoln. Contact a Customer Service Representative at 800-423-2765 for more information.

- Inactive Accounts - If there is no activity on your account and we have not heard from you for a prolonged period (2-7 years depending on your State's unclaimed property act), Lincoln will write you to verify your continued interest in the account and to confirm your contact information. If you do not respond to that correspondence, the funds in your account will be reported to your State as unclaimed property in accordance with your State's unclaimed property act.

- Louisiana Department of Insurance, PO Box 94214, Baton Rouge, LA 70804, (225) 342-1226

**FOR FURTHER INFORMATION, PLEASE CONTACT YOUR STATE DEPARTMENT OF INSURANCE.**

**If you are electing a Secureline Interest-Bearing Account, please complete the Beneficiary Designation section below. If there is a SecureLine Interest-Bearing Account balance remaining at the time of your death, it will be paid to the beneficiary(ies) you designate below.**

### PRIMARY BENEFICIARY(IES)

| Primary Beneficiary's Name and Address | Social Security Number | Relationship to You | Date of Birth | Percentage: Must equal 100% |
|---|---|---|---|---|
| Name: | | | | |
| Address: | | | | |
| Name: | | | | |
| Address: | | | | |

I understand that The Lincoln National Life Insurance Company furnishes this form without waiving any defense the Company may have or admitting that any insurance is in force.

I have completed and attached the Authorization for Release of Information. A photocopy of this authorization shall be as valid as the original.

I certify, under penalty of perjury, that the Social Security Number or other Taxpayer Identification Number information listed above is correct. I understand that my signature may be used for signature verification for my SecureLine Account and other purposes.

Signature _____  Date _____

(Sign as you would a check as signature may be used for check verification)

GLC-01253   CLMFRM

Case 6:18-cv-02063-CJW-MAR   Document 26-4   Filed 02/13/19   Page 517 of 555   Lincoln/Lee 605

# AUTHORIZATION FOR RELEASE OF INFORMATION

1. **I (the undersigned) authorize** any physician, medical professional, pharmacist or other provider of health care services, hospital, clinic, other medical or medically related facility; coroner's office; insurance or reinsurance company; government agency; department of labor; law enforcement or public safety department; group policyholder; employer; or policy or benefit plan administrator to release information from the records of:

Claimant/Insured Name: _Lee_ _Vanessa_ _Gene_
                               (Last)                                        (First)                (Middle)

Date of Birth: _11-15-64_          Social Security Number: ____

2. Claimant/Insured Information to be released:
   - data or records regarding medical history, treatment, prescriptions, consultations, autopsy [including medical and psychological reports, records, charts, notes (excluding psychotherapy notes), x-rays, films or correspondence, and any medical condition(s)];
   - any information regarding insurance coverage; and
   - accident report or any official investigative reports (such as police, fire, FAA, OSHA, or toxicology report).

3. Information to be released to:    The Lincoln National Life Insurance Company
   PO Box 2649
   Omaha, NE 68103-2649

4. I understand the information obtained by use of this Authorization will be used by The Lincoln National Life Insurance Company ("Company") to evaluate my claim for death benefits. The Company will only release such information:
   - to its reinsurer, or other persons or organizations performing business or legal services in connection with my claim(s); or
   - as otherwise may be required by law or as I may further authorize.

   I further understand that refusal to sign this Authorization may result in the denial of benefits.

5. I understand the information used or disclosed may be subject to re-disclosure by the recipient and may no longer be protected by federal law. For Colorado claims, the disclosed information may <u>not</u> be redisclosed or reused by the recipient under Colorado law.

6. I understand that I may revoke this Authorization in writing at any time, except to the extent:
   1) the Company has taken action in reliance on this Authorization; or
   2) the Company is using this Authorization in connection with a contestable claim.

   If written revocation is not received, this Authorization will be considered valid for a period of time not to exceed 24 months from the date of my signature below. To initiate revocation of this Authorization, direct all correspondence to the Company at the above address.

7. A photocopy of this Authorization is to be considered as valid as the original.

8. I understand I am entitled to receive a copy of this Authorization.

SIGNATURE: _Vanessa Lee_         DATE: _6/30/15_
Claimant/legal Representative (Nearest relative, legal guardian, or appointed representative to sign only if claimant/insured is a minor, legally incompetent, or deceased.) Power of attorney or guardianship must be attached.

PRINT NAME: _Vanessa Lee_

Relationship to Claimant/Insured of personal/legal representative signing for Claimant/Insured: ____

ADDRESS: ____                                   PHONE NO: ____
      (Street

_E_
(City)

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 519 of 555    Lincoln/Lee 607

Lincoln/Lee 608

## ACCIDENTAL DEATH BENEFIT INFORMATION

A beneficiary or the personal/legal representative of the deceased will only complete this page when applying for Accidental Death Benefits.

1. Group Name: _Ashley Industie Molding_

2. Name of Insured: _John Lee_

3. Name of Deceased (If different from above): _____ Relationship to Insured: _husband_

4. On what date did the Accident occur? (MM/DD/YY) _July 11 2015_

   Where did the Accident Occur? (Address, City, State): _Otterville lamp site_

   Describe in detail how the Accident occurred:

5. Did the Deceased have any disease or physical defect? ☐ Yes ☒ No

   If Yes, please describe in detail:

6. Was a police or other investigative report completed? ☐ Yes ☒ No

   If Yes, please provide a copy of the official investigative report (i.e. police, accident, OSHA, etc) and/or provide contact information:

7. List name/address/phone number of all physicians who treated the deceased in connection with the accident:

   _University of Iowa_

8. List name/address/phone number of all hospitals who treated the deceased in connection with the accident:

9. Was an Autopsy performed? ☐ Yes ☒ No

   If Yes, please submit copy of the Autopsy report and/or provide contact information:

Person completing form: _Vanessa Lee_          Phone: _____

Address: ____

City: ____          State: __

Relationship to Deceased: _husband_

Signature of Person Completing this form: _Vanessa Lee_          Date: _6/30/15_

Case 6:18-cv-02063-CJW-MAR   Document 26-4   Filed 02/13/19   Page 521 of 555   Lincoln/Lee 609



## STATE OF IOWA
### IOWA DEPARTMENT OF PUBLIC HEALTH
## CERTIFICATE OF DEATH

114-2015-016014

### DECEDENT INFORMATION

BIRTH NUMBER: *Not Available*

NAME: *John Earl Lee*

DATE FILED: *07/23/2015*

SSN:

PLACE OF BIRTH: Iowa

SEX: *Male*

ARMED FORCES: *Yes*

DATE OF BIRTH/AGE: I                46 Years

**NAMES (PRIOR TO ANY MARRIAGE):**

DECEDENT LAST: *Lee*

FATHER'S NAME: *Richard Wayne Lee*

MOTHER'S NAME: *Lavonne Eleanor Jennings*

RESIDENTIAL ADDRESS:

CITIZENSHIP: *United States*

MARITAL STATUS: *Married*

SURVIVING SPOUSE: *Vanessa Gene Yearous*

RESIDENCE COUNTY: *Buchanan*

COUNTY OF DEATH: *Johnson*

INFORMANT NAME: *Vanessa G Lee*

INFORMANT RELATIONSHIP: *Spouse*

INFORMANT ADDRESS

DATE/TIME OF DEATH:  *07/19/2015 (Actual)*
*09:57 AM (Actual)*

PLACE OF DEATH: *Inpatient*

FACILITY/ADDRESS: *University of Iowa Hospitals & Clinics Iowa City, Iowa 52242*

M.E. CONTACTED:            *Yes*

### MEDICAL CAUSE OF DEATH INFORMATION

INTERVAL          UNITS

IMMEDIATE CAUSE OF DEATH: *Blunt Force Injuries Of The Head*

*Days*

DUE TO OR AS A CONSEQUENCE OF:

DUE TO OR AS A CONSEQUENCE OF:

UNDERLYING CAUSE, IF ANY:

OTHER SIGNIFICANT CONDITIONS:

MANNER OF DEATH:            *Accident*

AUTOPSY PERFORMED/FINDINGS:  *No*

DATE/TIME OF INJURY:        *07/11/2015 08:00 PM*

PLACE OF INJURY:            *Private property*

LOCATION OF INJURY:         *1664 198th Street*
*Independence, Iowa 50644*

DESCRIPTION OF INJURY:      *Atv Crash*

TOBACCO CONTRIBUTED TO DEATH:  *No*

ME CASE #:                  *15-52-359*

INJURY AT WORK:             *No*

TRANSPORTATION INJURY:      *Yes*

CERTIFIER:                  *Dennis Firchau*

DATE CERTIFIED:             *07/23/2015*

CERTIFIER ADDRESS:  *913 South Dubuque Iowa City, Iowa 52240*

### DISPOSITION

FUNERAL HOME:               *White Funeral Home-Independence*
*Independence, Iowa 50644*

METHOD:                     *Cremation*

FUNERAL DIRECTOR: *Mark A. White*

PLACE:      *Wilbert Vault Co, Inc. - Roland Crematory-Marion*

LOCATION:   *Marion, Iowa*

This is to certify that this is a true and correct reproduction of the original record as recorded
in this office, issued under the authority of Chapter 144, Code of Iowa.
This copy is not valid unless prepared on engraved border displaying state seal and signature of the Registrar.

07/24/2015
DATE ISSUED

S0046309610

FORM #588-0328S (Rev. 2014)

Terry E. Branstad
GOVERNOR, STATE OF IOWA
Kim Reynolds, Lt. Governor

DEPUTY STATE REGISTRAR

WARNING: IT IS ILLEGAL TO DUPLICATE THIS COPY

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

Lincoln/Lee 612


**The Lincoln National Life Insurance Company,** PO Box 2649, Omaha, NE 68103-2649
toll free (800) 423-2765  Fax (800) 462-4660
www.LincolnFinancial.com
LifeClaims@lfg.com - For claims submission
Claims@lfg.com - For direct claim status inquiries and questions on existing claims

## GROUP LIFE INSURANCE CLAIM FORM

### EMPLOYER OR PLAN ADMINISTRATOR STATEMENT

**To avoid delays or denial of benefits, please complete all questions.**

Group Name  Ashley Industrial Molding, Inc.

Address 310 South Wabash, PO BOx 398          City Ashley          State IN     Zip 46705

Group Policy Number 10132080  -          400001000          -     12077

Billing Location Oelwein, Iowa

Certificate Holder John E Lee
(Employee Name or Member Name)

The Deceased is insured as:          Employee ✓          Spouse _____          Child _____          Member _____

1.  Name of Deceased  John E Lee                                         State of Residence _____

2.  Date of Death 07/19/2015                     Date of Birth                              Age 46

3.  Social Security Number or Certificate # _____
                                          (Employee's SSN)                              (Dependent SSN)

Insurance Class (Refer to policy schedule of insurance) Salary

4.  Amount of Life Benefit:

Basic $ 48,000          Optional Life $ _____          Voluntary Life $ 20,000

Dependent Life $ _____          Other Life Benefit Claimed: _____          Amount $ _____

If death is due to an Accident, amount of Accidental Death (AD) Benefit:

AD Basic $ 95,000          Optional AD $ _____          Voluntary AD $ 20,000

Dependent AD $ _____          Other AD Benefit Claimed: _____          Amount $ _____

5.  Date Employed: Full Time 11/29/2010          Part Time _____

Annual Salary (if salary based) $  47,347.00          Date Of Last Salary Increase 2/1/2015

6.  Effective Date of Insurance with Lincoln Financial Group 03/01/2011
                                                          (Certificate Holder)

7.  Date on which the Employee was last present at Work? 07/02/2015

8.  REASON FOR CEASING WORK
☐ Illness (including disability leave of absence)          ☐ Leave of Absence (other than disability)          ☐ Accident
☐ Quit          ☐ Dismissed          ■ Vacation          ☐ Temporary Layoff  ☐ Retired          ☐ Deceased

9.  Employee Was:          ■ Full-time          ☐ Union          ☐ Hourly          ■ Exempt          ☐ Commissioned
(Check All That Apply)          ☐ Part-time          ☐ Non-Union          ■ Salaried          ☐ Non-Exempt
                              ☐ Other (Explain) _____

10. Average Hours Worked Per Week: 40          Occupation Supervisor
                                                          (Certificate Holder)
Completed by _____          Date  7-21-15

Title HR Coordinator          Phone Number 260-587-9155 ext. 373

E-mail Address kmaxwell@ashinmold.com          Fax Number 260-587-3042

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.          Page 1 of 8
GLC-01253    CLMFRM          5/14

Lincoln/Lee 613







**The Lincoln National Life Insurance Company,** PO Box 2649, Omaha, NE 68103-2649
toll free (800) 423-2765  Fax (800) 462-4660
www.LincolnFinancial.com
LifeClaims@lfg.com - For claims submission
Claims@lfg.com - For direct claim status inquiries and questions on existing claims

## GROUP LIFE INSURANCE CLAIM FORM

### EMPLOYER OR PLAN ADMINISTRATOR STATEMENT

**To avoid delays or denial of benefits, please complete all questions.**

Group Name Ashley Industrial Molding, Inc.

Address 310 South Wabash, PO BOx 398    City Ashley    State IN    Zip 46705

Group Policy Number 10132080 - 400001000 - 12077

Billing Location Oelwein, Iowa

Certificate Holder John E Lee
(Employee Name or Member Name)

The Deceased is insured as:    Employee ✓    Spouse _____    Child _____    Member _____

1.  Name of Deceased  John E Lee                    State of Residence _____

2.  Date of Death 07/19/2015          Date of Birth                Age 46

3.  Social Security Number or Certificate # _____
    (Employee's SSN)                         (Dependent SSN)

    Insurance Class (Refer to policy schedule of insurance) Salary

4.  Amount of Life Benefit:

    Basic $ 48,000          Optional Life $ _____          Voluntary Life $ 20,000

    Dependent Life $ _____          Other Life Benefit Claimed: _____          Amount $ _____

    If death is due to an Accident, amount of Accidental Death (AD) Benefit:

    AD Basic $ 95,000          Optional AD $ _____          Voluntary AD $ 20,000

    Dependent AD $ _____          Other AD Benefit Claimed: _____          Amount $ _____

5.  Date Employed: Full Time 11/29/2010          Part Time _____

    Annual Salary (if salary based) $ 47,347.00          Date Of Last Salary Increase 2/1/2015

6.  Effective Date of Insurance with Lincoln Financial Group 03/01/2011
                                                              (Certificate Holder)

7.  Date on which the Employee was last present at Work? 07/02/2015

8.  REASON FOR CEASING WORK
    ☐ Illness (including disability leave of absence)    ☐ Leave of Absence (other than disability)    ☐ Accident
    ☐ Quit        ☐ Dismissed              ■ Vacation        ☐ Temporary Layoff    ☐ Retired        ☐ Deceased

9.  Employee Was:          ■ Full-time    ☐ Union        ☐ Hourly        ■ Exempt        ☐ Commissioned
    (Check All That Apply)    ☐ Part-time    ☐ Non-Union    ■ Salaried        ☐ Non-Exempt
                              ☐ Other (Explain) _____

10. Average Hours Worked Per Week: 40          Occupation Supervisor
                                                              (Certificate Holder)
Completed by _Karen Maxwell_                    Date 7-21-15

Title HR Coordinator                            Phone Number 260-587-9155 ext. 373

E-mail Address kmaxwell@ashinmold.com          Fax Number 260-587-3042

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
GLC-01253    CLMFRM

Page 1 of 8
5/14

Lincoln/Lee 616

**Gabrie, Samantha**

| | |
|---|---|
| **From:** | Janelle Smith <jsmith@ashinmold.com> |
| **Sent:** | Thursday, September 24, 2015 12:33 PM |
| **To:** | Beck, Nadine |
| **Subject:** | RE: Claim #1072315-1127380 |

Hello, Nadine.

There was not an accident report. Based on the information that was told to us, is that Mr. Lee was transported to the hospital and treatment began at the University of Iowa.  Mrs. Lee did not provide a contact for case worker.

Please let me know if you should need anything else.

Thanks.

Janelle Smith
Human Resources Manager
Ashley Industrial Molding
(319) 283-6627 ext. 427
(319) 283-1052 – Fax

*"AIM" for Excellence*



---

**From:** Beck, Nadine [mailto:Nadine.Beck@lfg.com]
**Sent:** Thursday, September 24, 2015 1:25 PM
**To:** Janelle Smith
**Subject:** RE: Claim #1072315-1127380

Good Afternoon Janelle
I closed the AD review a while ago.   I have requested multiple times for a copy of the accident report and toxicology report.   I also called the family and no assistance with trying to obtain the reports needed for the AD review.  Do you know if there is an accident/incident report available yet or who this can be requested from?  I will fill out this auth and send with a letter for the tox report.

**Thank you,**
**Nadine Beck**

**Life Claims Examiner II**
**Group Protection Claim Solutions**
Lincoln Financial Group
8801 Indian Hills Drive
Omaha, NE  68114
Toll Free Phone: (800)423-2765 x2894

Phone: (402)361-2894
Fax: (402)361-1474
Nadine.Beck@lfg.com

**You're In ChargeSM**
**Find us on facebook:** www.facebook.com/LincolnFinancialGroup
Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

---

**From:** Janelle Smith [mailto:jsmith@ashinmold.com]
**Sent:** Thursday, September 24, 2015 11:13 AM
**To:** Life Claims
**Cc:** Beck, Nadine
**Subject:** Claim #1072315-1127380

Nadine,

Please see the attached documentation provided on this claim number.

Thank you.


*Janelle Smith*
*Human Resources*
*Ashley Industrial Molding*
*(319) 283-6627 ext. 427*


*"AIM" for Excellence*

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

## Gabrie, Samantha

| | |
|---|---|
| **From:** | Carter, Kaline |
| **Sent:** | Wednesday, October 07, 2015 9:52 AM |
| **To:** | Beck, Nadine |
| **Subject:** | FW: Clm 1127380 |
| **Attachments:** | John E Lee  tox report.pdf; j lee cdc.pdf |

166 mg is always read as .166 which is 2x over the legal limit

**Kaline Carter**
**Senior Claims Examiner**
**Group Protection Claim Solutions**
Lincoln Financial Group
8801 Indian Hills Drive
Omaha, NE 68114

Toll Free Phone: 800-423-2765
Phone: 402-361-7485
Fax: 402-361-1233
Email: kaline.carter@lfg.com

**You're In Charge**SM

**Find us on facebook:** www.facebook.com/LincolnFinancialGroup

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York.  Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**From:** Beck, Nadine
**Sent:** Wednesday, October 07, 2015 8:34 AM
**To:** Carter, Kaline
**Subject:** Clm 1127380

Hi
I have an accidental claim under review.  Just recd the attached tox report.  Can you convert the reading for me?  I get them messed up.  This accident happened in IA.  CDC has listed accident ATV crash on 7/11/2015 at 8pm.  Kerri did some searching a while ago and found out in the State of IA and ATV is considered a vehicle and has to be registered unless used for farming/agricultural purposes or US govt or a political subdivision of another state.

I have not recd any accident or incident reports, was told non done.   There has to be some kind of incident or accident report.  I will call the wife today once I have the tox ethanol reading confirmed.  Thanks

**Thank you,**
**Nadine Beck**

**Life Claims Examiner II**
**Group Protection Claim Solutions**
Lincoln Financial Group
8801 Indian Hills Drive

1

Omaha, NE  68114
Toll Free Phone: (800)423-2765 x2894
Phone: (402)361-2894
Fax: (402)361-1474
Nadine.Beck@lfg.com

**You're In ChargeSM**
**Find us on facebook:** www.facebook.com/LincolnFinancialGroup
Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

2

Lincoln/Lee 620

**Gabrie, Samantha**

**From:** LFGAppeals
**Sent:** Monday, February 08, 2016 3:23 PM
**To:** SA-EMLRIP112-P
**Subject:** FW: RE: John & Vanessa Lee - Appeal 1072315-1127380 (secure)

**From:** Fults, Ashley M.
**Sent:** Monday, February 08, 2016 4:22:48 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** lfwoods@trxinc.com
**Subject:** RE: John & Vanessa Lee - Appeal 1072315-1127380 (secure)

Good Afternoon Larry,

I am writing in follow up to your voicemail from earlier today. Thank you for returning my call, we will hold off on commencing the review. Can you have any additional information you wish to submit to us by Friday, 02/19/2016?

You are welcome to scan/respond to my email with the photos you mentioned as well as the report, or you can mail them to the address listed below my signature.

Thanks,

**Ashley Fults**
**Appeals Consultant, Claims Support**
**Group Protection - Claims Shared Services**
Lincoln Financial Group
8801 Indian Hills Drive
Omaha, NE 68114
Toll Free Phone: (800) 423-2765
Phone: (402) 361-7033
Fax: (402) 361-1460
Email: Ashley.Fults@lfg.com
**You're In Charge**SM
**Find us on facebook:** www.facebook.com/LincolnFinancialGroup
Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 533 of 555    Lincoln/Lee 621

## Gabrie, Samantha

| | |
|---|---|
| **From:** | Life Claims |
| **Sent:** | Monday, February 08, 2016 3:35 PM |
| **To:** | SA-EMLRIP112-P |
| **Subject:** | FW: Picture ie: John Lee |
| **Attachments:** | IMG_0662.jpg; IMG_0657.jpg; IMG_0648.jpg |

**From:** Larry Woods
**Sent:** Monday, February 08, 2016 4:33:49 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Life Claims
**Subject:** Fw: Picture ie: John Lee

Dear Asjhley Fultz:

Attached are 3 pictures.  One picture is of the ATV which did not show any significant damage.

Also attached are two photos of the general area where the ATV and John were found.

If you have any questions related to the pictures or any of the other information provided, please contact me

Thank you for your time and attention.

Larry F. Woods
Attorney at Law
(319() 283-3204
lfwoods@trxinc.com

**From:** Kasi Maakestad
**Sent:** Monday, February 08, 2016 2:07 PM
**To:** lfwoods@trxinc.com
**Subject:** Picture ie: John Lee

1

# Gabrie, Samantha

| | |
|---|---|
| **From:** | LFGAppeals |
| **Sent:** | Tuesday, February 09, 2016 9:03 AM |
| **To:** | SA-EMLRIP112-P |
| **Subject:** | FW: John & Vanessa Lee - Appeal 1072315-1127380 (secure) |

**From:** Fults, Ashley M.
**Sent:** Tuesday, February 09, 2016 10:03:21 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Larry Woods
**Subject:** RE: John & Vanessa Lee - Appeal 1072315-1127380 (secure)

Thanks Larry!

You can mail them to:

Lincoln Financial Group
Attn: Risk Dept.
8801 Indian Hills Dr.
Omaha NE  68114

**Ashley Fults**
**Appeals Consultant, Claims Support**
**Group Protection - Claims Shared Services**
Lincoln Financial Group
8801 Indian Hills Drive
Omaha, NE 68114
Toll Free Phone: (800) 423-2765
Phone: (402) 361-7033
Fax: (402) 361-1460
Email: Ashley.Fults@lfg.com

**From:** Larry Woods [mailto:lfwoods@trxinc.com]
**Sent:** Tuesday, February 09, 2016 8:34 AM
**To:** Fults, Ashley M.
**Subject:** Re: John & Vanessa Lee - Appeal 1072315-1127380 (secure)

Ashley:

    Thank you for the extension.   I have faxed a copy of all of the written documents to a 402 number.  I am not in the office.  Will get you the number I faxed it to.

    I also sent the 3 pictures by e-mail to Lifeclaims@LFG.com

    I will place all of these in the mail to you.  Do you have a specific address & person or group to mail these items to.

    Again THANK YOU

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 535 of 555    Lincoln/Lee 623

Larry Woods

**From:** Fults, Ashley M.
**Sent:** Monday, February 08, 2016 3:22 PM
**To:** lfwoods@trxinc.com
**Subject:** RE: John & Vanessa Lee - Appeal 1072315-1127380 (secure)

| This message was sent securely using ZixCorp. |
|---|

Good Afternoon Larry,

I am writing in follow up to your voicemail from earlier today. Thank you for returning my call, we will hold off on commencing the review. Can you have any additional information you wish to submit to us by Friday, 02/19/2016?

You are welcome to scan/respond to my email with the photos you mentioned as well as the report, or you can mail them to the address listed below my signature.

Thanks,

**Ashley Fults**
**Appeals Consultant, Claims Support**
**Group Protection - Claims Shared Services**
Lincoln Financial Group
8801 Indian Hills Drive
Omaha, NE 68114
Toll Free Phone: (800) 423-2765
Phone: (402) 361-7033
Fax: (402) 361-1460
Email: Ashley.Fults@lfg.com
**You're In Charge**SM
**Find us on facebook:** www.facebook.com/LincolnFinancialGroup
Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

2

------------------------------------------------------------------------
This message was secured by **ZixCorp**[R].

## Gabrie, Samantha

| | |
|---|---|
| **From:** | Life Claims |
| **Sent:** | Thursday, September 24, 2015 11:14 AM |
| **To:** | SA-EMLRIP112-P |
| **Subject:** | FW: Claim #1072315-1127380 |
| **Attachments:** | Scan0020.pdf; Lincoln Letter closed file Acccidental Death Claim.pdf |

**From:** Janelle Smith
**Sent:** Thursday, September 24, 2015 12:12:42 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Life Claims
**Cc:** Beck, Nadine
**Subject:** Claim #1072315-1127380

Nadine,

Please see the attached documentation provided on this claim number.

Thank you.


*Janelle Smith*
*Human Resources*
*Ashley Industrial Molding*
*(319) 283-6627 ext. 427*


*"AIM" for Excellence*

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 538 of 555    Lincoln/Lee 626

# Gabrie, Samantha

| | |
|---|---|
| **From:** | Stege, Kerri |
| **Sent:** | Tuesday, August 04, 2015 3:04 PM |
| **To:** | Beck, Nadine |
| **Subject:** | RE: ATV in Iowa |

Yes, ATV is a motor-vehicle.  The same exclusions would apply.  I would request a copy of the accident/police report (even though they say one wasn't done…that is incorrect as anytime there's an accident involving death there's a report) and copy of the tox/autopsy.

**Kerri Stege**
**Senior Life Claims Examiner**
**Group Protection Claim Solutions**
**Lincoln Financial Group**
**8801 Indian Hills Drive**
**Omaha, NE 68114**
**Toll free phone: (800) 423-2765**
**Phone: (402) 361-2825**
**Fax:  (800) 462-4660**
**Email:  Kerri.stege@lfg.com**

**You're In Charge**SM

**Find us on Facebook: www.facebook.com/LincolnFinancialGroup**

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York.  Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**From:** Beck, Nadine
**Sent:** Tuesday, August 04, 2015 2:26 PM
**To:** Stege, Kerri
**Subject:** ATV in Iowa

I am reviewing an accidental claim for the state of Iowa.  All I have is the CDC which states Accident, blunt force injuries of the head, ATV crash at private property.  The policy wording is general for basic and vol – Benefits are not payable for any loss to which a contributing cause is: #7 vol use of drugs except when prescribed by a phys and #10 driving a vehicle while intoxicated.  So, I should treat the ATV as a Vehicle for the AD review? The accidental claim form received states the accident occurred at Otterville camp site.   I am guessing insured was on vac and driving ATV crashed and later died.  The form states no police report done but I find that hard to believe.   The insured was taken to Univ of IA.

I searched on line and found this for ATV in Iowa.

1

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 539 of 555    Lincoln/Lee 627



## Registering an ATV

The Iowa Department of Natural Resources states th[...] must be legally registered unless the vehicle meets o[...]

- The ATV is used for farming or other agricultura[...]
- The ATV is owned and used by the United State[...] subdivision of another state.

## Fees and Forms

To register your ATV, you must complete an application at the nearest county recorder's office.

The fee for registering your ATV is $17.75.

The fee to receive a title for a newly purchased ATV is $11.50. All ATVs must be titled in your county of residence within 30 days of purchase from a private party (only if it has a valid registration where required) and 45 days from a dealer.

N[...]
4-YEAR[...]

CADIL[...]
M[...]
PLUS[...]

Certified[...]

## Registering a Trailer

**Thank you,**
**Nadine Beck**

**Life Claims Examiner II**
**Group Protection Claim Solutions**
Lincoln Financial Group
8801 Indian Hills Drive
Omaha, NE  68114
Toll Free Phone: (800)423-2765 x2894
Phone: (402)361-2894
Fax: (402)361-1474
Nadine.Beck@lfg.com

**You're In ChargeSM**
**Find us on facebook:** www.facebook.com/LincolnFinancialGroup
Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

3

## Gabrie, Samantha

| | |
|---|---|
| **From:** | Janelle Smith <jsmith@ashinmold.com> |
| **Sent:** | Thursday, September 24, 2015 11:13 AM |
| **To:** | Life Claims |
| **Cc:** | Beck, Nadine |
| **Subject:** | Claim #1072315-1127380 |
| **Attachments:** | Scan0020.pdf; Lincoln Letter closed file Acccidental Death Claim.pdf |

Nadine,

Please see the attached documentation provided on this claim number.

Thank you.


*Janelle Smith*
*Human Resources*
*Ashley Industrial Molding*
*(319) 283-6627 ext. 427*

*"AIM" for Excellence*

1

**Gabrie, Samantha**

| | |
|---|---|
| **From:** | Beck, Nadine |
| **Sent:** | Tuesday, August 04, 2015 2:14 PM |
| **To:** | Beck, Nadine |
| **Subject:** | John Lee obit |

1

Lincoln/Lee 631



**Thank you,**
**Nadine Beck**

**Life Claims Examiner II**
**Group Protection Claim Solutions**
Lincoln Financial Group
8801 Indian Hills Drive
Omaha, NE 68114
Toll Free Phone: (800)423-2765 x2894
Phone: (402)361-2894
Fax: (402)361-1474
Nadine.Beck@lfg.com

**You're In ChargeSM**
**Find us on facebook:** www.facebook.com/LincolnFinancialGroup
Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

3

## Gabrie, Samantha

| | |
|---|---|
| **From:** | Life Claims |
| **Sent:** | Thursday, September 24, 2015 12:20 PM |
| **To:** | SA-EMLRIP112-P |
| **Subject:** | FW: Claim #1072315-1127380 |
| **Attachments:** | Scan0020.pdf; Lincoln Letter closed file Acccidental Death Claim.pdf |

---

**From:** Beck, Nadine
**Sent:** Thursday, September 24, 2015 1:19:46 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Life Claims
**Subject:** FW: Claim #1072315-1127380

Corr clm 1072315-1127380

**Thank you,**
**Nadine Beck**
**Life Claims Examiner II**
**Group Protection Claim Solutions**
Lincoln Financial Group
8801 Indian Hills Drive
Omaha, NE  68114
Toll Free Phone: (800)423-2765 x2894
Phone: (402)361-2894
Fax: (402)361-1474
Nadine.Beck@lfg.com

**You're In ChargeSM**
**Find us on facebook:** www.facebook.com/LincolnFinancialGroup
Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

---

**From:** Janelle Smith [mailto:jsmith@ashinmold.com]
**Sent:** Thursday, September 24, 2015 11:13 AM
**To:** Life Claims
**Cc:** Beck, Nadine
**Subject:** Claim #1072315-1127380

Nadine,

Please see the attached documentation provided on this claim number.

Thank you.

*Janelle Smith*
*Human Resources*
*Ashley Industrial Molding*
*(319) 283-6627 ext. 427*

## Gabrie, Samantha

| | |
|---|---|
| **From:** | Life Claims |
| **Sent:** | Thursday, July 23, 2015 2:36 PM |
| **To:** | SA-EMLRIP112-P |
| **Subject:** | FW: AIM3 / Re: FW: Ashley Industrial Molding, Inc. AIM 3- Group Life Insurance Claim Form-John Lee        <oma_30840> |
| **Attachments:** | Group Life Insuarnce Claim Form.John Lee.pdf |

---

**From:** Claims
**Sent:** Thursday, July 23, 2015 3:36:08 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Cougill, Dean
**Cc:** Whited, Christopher; Johnson, Sue
**Subject:** AIM3 / Re: FW: Ashley Industrial Molding, Inc. AIM 3- Group Life Insurance Claim Form-John Lee <oma_30840>

Hello Dean,

I have forwarded this to our Life Claims area for processing.

Thank you,

**Denise Adams**
**Customer Care and Field Support**
Lincoln Financial Group
8801 Indian Hills Drive
Omaha, NE 68114

Toll Free Phone: 800-423-2765

**Administration**
Fax: 877-573-6177
Email: clientservices@lfg.com

**Claims**
Disability Fax: 877-843-3950
Dental Fax: 877-843-3945
Life Fax: 800-462-4660
Email: claims@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York.  Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

1

Lincoln/Lee 636

On 7/22/2015 9:15 AM, From: Dean.Cougill@lfg.com, To: Claims@lfg.com; , Subject: FW: Ashley Industrial Molding, Inc. AIM 3- Group Life Insurance Claim Form-John Lee CTI_CALL, Dean Cougill wrote:

Life Claims- Please find attached a Life claim for AIM3. Please confirm receipt. Thank you!

**From:** Karen Maxwell [mailto:kmaxwell@ashinmold.com]
**Sent:** Wednesday, July 22, 2015 8:08 AM
**To:** Cougill, Dean
**Cc:** Johnson, Sue
**Subject:** Ashley Industrial Molding, Inc. AIM 3- Group Life Insurance Claim Form-John Lee
**Sensitivity:** Confidential

Good Morning Dean,

Attached is the Group Life Insurance Claim Form- Employer Statement for John Lee. I appreciate you speaking with Holly Nix from DeHayes in regards to the passing of our employee, John Lee. I have mailed to his spouse-Vanessa the Beneficiary's Statement forms. On the cover letter I explained that she can mail them to Lincoln Financial or email the forms once completed. I also told her that she will need to contact Lincoln if she would elect to convert her voluntary life coverage.

Again, thank you for taking the time to explain the process in regards to the abrupt passing of the employee due to the unforeseen accident. We will plan to reach out to you if we have any further questions as well if the spouse contacts us.

Best regards,

*Karen Maxwell*
Human Resources Coordinator
**Ashley Industrial Molding, Inc.**
Ph: 260-587-9155 ext. 373
Fax: 260-587-3042

***"AIM" for Excellence***



## Gabrie, Samantha

| | |
|---|---|
| **From:** | Life Claims |
| **Sent:** | Wednesday, July 22, 2015 11:03 AM |
| **To:** | SA-EMLRIP112-P |
| **Subject:** | FW: Ashley Industrial Molding, Inc. AIM 3- Group Life Insurance Claim Form-John Lee |
| **Sensitivity:** | Confidential |

---

**From:** Cougill, Dean
**Sent:** Wednesday, July 22, 2015 12:03:17 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Whited, Christopher; Life Claims
**Cc:** Johnson, Sue; Claims
**Subject:** RE: Ashley Industrial Molding, Inc. AIM 3- Group Life Insurance Claim Form-John Lee

I couldn't find the Life Claims address in Outlook so I'm glad I cc'd you. Thanks for getting this to the right place! I let the group know we will need the death cert too. As always…we appreciate your help Chris!

---

**From:** Whited, Christopher
**Sent:** Wednesday, July 22, 2015 11:53 AM
**To:** Life Claims
**Cc:** Cougill, Dean; Johnson, Sue; Claims
**Subject:** FW: Ashley Industrial Molding, Inc. AIM 3- Group Life Insurance Claim Form-John Lee
**Sensitivity:** Confidential

Hi Dean,
I am forwarding the claim to Life Claims which is the email address for which to send new claims. This group information will get the claim entered, however we will need to receive a death certificate to move the claim through to have a claim examiner review. If this information isn't provided we will reach out to the group or beneficiary to request.
Let me know if any questions.
Thanks!
Chris

---

**From:** Cougill, Dean
**Sent:** Wednesday, July 22, 2015 9:15 AM
**To:** Claims
**Cc:** Whited, Christopher; Johnson, Sue
**Subject:** FW: Ashley Industrial Molding, Inc. AIM 3- Group Life Insurance Claim Form-John Lee
**Sensitivity:** Confidential

Life Claims- Please find attached a Life claim for AIM3. Please confirm receipt. Thank you!

---

**From:** Karen Maxwell [mailto:kmaxwell@ashinmold.com]
**Sent:** Wednesday, July 22, 2015 8:08 AM
**To:** Cougill, Dean
**Cc:** Johnson, Sue
**Subject:** Ashley Industrial Molding, Inc. AIM 3- Group Life Insurance Claim Form-John Lee
**Sensitivity:** Confidential

1

Good Morning Dean,

Attached is the Group Life Insurance Claim Form- Employer Statement for John Lee.  I appreciate you speaking with Holly Nix from DeHayes in regards to the passing of our employee, John Lee.  I have mailed to his spouse-Vanessa the Beneficiary's Statement forms.  On the cover letter I explained that she can mail them to Lincoln Financial or email the forms once completed.  I also told her that she will need to contact Lincoln if she would elect to convert her voluntary life coverage.

Again, thank you for taking the time to explain the process in regards to the abrupt passing of the employee due to the unforeseen accident.   We will plan to reach out to you if we have any further questions as well if the spouse contacts us.

Best regards,

*Karen Maxwell*
Human Resources Coordinator
**Ashley Industrial Molding, Inc.**
Ph: 260-587-9155 ext. 373
Fax: 260-587-3042

*"AIM" for Excellence*



## Gabrie, Samantha

| | |
|---|---|
| **From:** | Life Claims |
| **Sent:** | Wednesday, July 22, 2015 10:53 AM |
| **To:** | SA-EMLRIP112-P |
| **Subject:** | FW: Ashley Industrial Molding, Inc. AIM 3- Group Life Insurance Claim Form-John Lee |
| **Attachments:** | Group Life Insuarnce Claim Form.John Lee.pdf |
| **Sensitivity:** | Confidential |

---

**From:** Whited, Christopher
**Sent:** Wednesday, July 22, 2015 11:53:24 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Life Claims
**Cc:** Cougill, Dean; Johnson, Sue; Claims
**Subject:** FW: Ashley Industrial Molding, Inc. AIM 3- Group Life Insurance Claim Form-John Lee

Hi Dean,
I am forwarding the claim to Life Claims which is the email address for which to send new claims.   This group information will get the claim entered, however we will need to receive a death certificate to move the claim through to have a claim examiner review.   If this information isn't provided we will reach out to the group or beneficiary to request.
Let me know if any questions.
Thanks!
Chris

---

**From:** Cougill, Dean
**Sent:** Wednesday, July 22, 2015 9:15 AM
**To:** Claims
**Cc:** Whited, Christopher; Johnson, Sue
**Subject:** FW: Ashley Industrial Molding, Inc. AIM 3- Group Life Insurance Claim Form-John Lee
**Sensitivity:** Confidential

Life Claims-  Please find attached a Life claim for AIM3.  Please confirm receipt.  Thank you!

---

**From:** Karen Maxwell [mailto:kmaxwell@ashinmold.com]
**Sent:** Wednesday, July 22, 2015 8:08 AM
**To:** Cougill, Dean
**Cc:** Johnson, Sue
**Subject:** Ashley Industrial Molding, Inc. AIM 3- Group Life Insurance Claim Form-John Lee
**Sensitivity:** Confidential

Good Morning Dean,

Attached is the Group Life Insurance Claim Form- Employer Statement for John Lee.  I appreciate you speaking with Holly Nix from DeHayes in regards to the passing of our employee, John Lee.  I have mailed to his spouse-Vanessa the Beneficiary's Statement forms.  On the cover letter I explained that she can mail them to Lincoln Financial or email the forms once completed.  I also told her that she will need to contact Lincoln if she would elect to convert her voluntary life coverage.

1

Again, thank you for taking the time to explain the process in regards to the abrupt passing of the employee due to the unforeseen accident.   We will plan to reach out to you if we have any further questions as well if the spouse contacts us.

Best regards,

*Karen Maxwell*
Human Resources Coordinator
**Ashley Industrial Molding, Inc.**
Ph: 260-587-9155 ext. 373
Fax: 260-587-3042

***"AIM" for Excellence***



## Gabrie, Samantha

| | |
|---|---|
| **From:** | Life Claims |
| **Sent:** | Thursday, July 30, 2015 3:07 PM |
| **To:** | SA-EMLRIP112-P |
| **Subject:** | FW: Ashley Industrial Molding-Beneficiary Statement for J. Lee |
| **Attachments:** | Scan0046.pdf |

---

**From:** Johnson, Sue
**Sent:** Thursday, July 30, 2015 4:06:43 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Life Claims
**Subject:** FW: Ashley Industrial Molding-Beneficiary Statement for J. Lee

Please see the below and attached.

**Sue Johnson**
**Lincoln Financial Group**
**Sr. Sales Coordinator**

8900 Keystone Crossing, Ste 535
Indianapolis, IN 46240

317-249-6175 direct
317-818-9565 ext. 115
317-818-9570 fax
800-838-6694 Tol Free

---

**From:** Cougill, Dean
**Sent:** Thursday, July 30, 2015 12:58 PM
**To:** Johnson, Sue
**Subject:** FW: Ashley Industrial Molding-Beneficiary Statement for J. Lee

Please forward to Life claims

Sent with Good ([www.good.com](www.good.com))

---

**From:** Janelle Smith
**Sent:** Thursday, July 30, 2015 11:02:27 AM
**To:** Cougill, Dean
**Subject:** Ashley Industrial Molding-Beneficiary Statement for J. Lee

Good Morning!

I am forwarding you the documents completed by Vanessa Lee, wife/beneficiary, of John Lee.. The Employer Statement has already been submitted by Karen Maxwell.

1

Case 6:18-cv-02063-CJW-MAR    Document 26-4    Filed 02/13/19    Page 554 of 555    Lincoln/Lee 642

If you should have any questions regarding the forms or require additional information, please contact me at (319) 283-6627 ext. 427

*Janelle Smith*
*Human Resources*
*Ashley Industrial Molding*
*(319) 283-6627 ext. 427*

*"AIM" for Excellence*